UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.17-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO CONTINUE FINAL PRE-TRIAL AND TRIAL DATES**

NOW COMES the Defendant, BRENDT A. CHRISTENSEN, by and through his attorneys, ROBERT TUCKER, GEORGE TASEFF and ELISABETH POLLOCK, and moves this Court to continue the Final Pre-Trial Hearing and Jury Trial dates in this cause, and in support thereof states as follows:

**Procedural History**

1. On June 30, 2017, a Criminal Complaint was filed against the Defendant in the Central District of Illinois alleging that he committed the kidnapping of Yingying Zhang. (R. 1) He was subsequently detained pending further proceedings. (R. 11)

2. The initial Indictment was returned on July 12, 2017, charging the Defendant with one count of kidnapping in violation of 18 U.S.C. § 1201(a)(1). (R. 13) A plea of not guilty was entered, and the case was set for trial on September 12, 2017. (R. 16)

3. On August 23, 2017, then-defense counsel filed a Motion to Continue Trial based on incomplete discovery and the Government's representation that a superseding

1

indictment would be sought. A continuance was granted, and trial was continued to February 27, 2018. (Docket Entry 8/28/2017)

4. On September 1, 2017, then-defense counsel filed a Motion to Withdraw, citing a lack of funds and an inability to pay for a potential capital defense. (R. 18) At a hearing on September 8, 2017, the Court allowed the Motion to Withdraw, and appointed the Federal Defender's Office for the Central District of Illinois as counsel. (Docket Entry 9/8/2017) Robert Tucker was subsequently appointed as learned counsel on September 14, 2017. (Docket Entry 9/14/2017)

5. The anticipated Superseding Indictment was returned on October 3, 2017, charging Defendant with one count of kidnapping resulting in death in violation of 18 U.S.C. § 1201(a)(1), and two counts of false statements in violation of 18 U.S.C. § 1001(a)(2). It also alleged that the death of the victim was intentional, that it occurred during the commission of kidnapping, that it was committed in an especially heinous, cruel, or depraved manner, and that the Defendant committed the offense after substantial planning and premeditation. (R. 26) It was not until this date that the Defendant faced a charge that could result in capital punishment.

6. At the arraignment on the Superseding Indictment, the final pretrial and trial dates remained set for February of 2018, and remains so as of today's date. (Docket Entry 10/11/2017)

## Capital Litigation – Duties of Defense Counsel

7. The American Bar Association (ABA) released Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases in February

of 2003 (hereinafter "the 2003 Guidelines").[1] The objective of those Guidelines was to set forth a national standard of practice for the defense of capital cases in order to ensure high quality legal representation for all persons facing the possible imposition or execution of a death sentence by any jurisdiction. The ABA also released Supplementary Guidelines in 2008 concerning the Mitigation Function of Defense Teams in Death Penalty Cases (hereinafter "the 2008 Supplement"). These Guidelines are referenced by both the Supreme Court and the Seventh Circuit as the standard for evaluating counsel's performance in a capital case. *See Wiggins v. Smith*, 539 U.S. 510, 524 (2003) (counsel's substandard performance violated ABA Standards for the Appointment and Performance Counsel in Death Penalty Cases, which the Court characterizes as "well-defined norms," [and] which "we long have referred to as 'guides to determining what is reasonable.' [citation omitted]"); *Caanan v. McBride*, 395 F.3d 376, 384 (7th Cir. 2005) (citing ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty case in finding defense counsel ineffective).

8.  In addition to the foregoing, the CJA Guidelines, Guide to Judiciary Policy Vol. 7, Appx. 6A (Recommendations and Commentary Concerning the Cost and Quality of Defense Representation, hereinafter "the CJA Guidelines"),[2] also recommends that all attorneys appointed in federal capital cases should comply with the ABA's 2003 Guidelines and 2008 Supplement.

---

[1] https://www.americanbar.org/groups/committees/death_penalty_representation/resources/aba_guidelines.html (last visited October 20, 2017)
[2] http://www.uscourts.gov/rules-policies/judiciary-policies/criminal-justice-act-cja-guidelines (last visited October 20, 2017)

9. The 2003 Guidelines prescribe a series of ethical obligations for counsel involved in death eligible cases, including but not limited to fully investigating all facts relevant to both the guilt phase and the penalty phase, and independently investigating all evidence, including forensic evidence, purporting to inculpate the client. Guideline 10.7 and its Commentary describe in detail the extensive investigation required in capital cases, including detailed mitigation investigations not ordinarily presented in non-capital cases. In this regard, the Commentary to Guideline 10.2 advises that the mitigation investigation should begin early as the uncovering of mitigation evidence may "convince the prosecutor to forego pursuit of a death sentence," thereby potentially saving resources of the parties and the court. Implicitly acknowledging this concern, the Department of Justice Death Penalty Protocol (Protocol) provides that if the U.S. Attorney is contemplating authorization to seek the death penalty, he or she "shall give counsel for the defendant a *reasonable opportunity* to present information for the consideration of the United States Attorney or Assistant Attorney General which may bear on the decision whether to seek the death penalty." *See United States Attorney's Manual*, § 9-10.080 (emphasis added). Such a reasonable opportunity requires that counsel have sufficient time to conduct the early mitigation investigation contemplated by the ABA Guidelines. The Protocol also provides that the Department normally needs at least ninety (90) days after receipt of the U.S. Attorney's recommendation and supporting memorandum to determine whether a Notice of Intent to Seek Death should be filed. These considerations have been taken into account in proposing the schedules set out below.

10. Based on the foregoing, it is clear that an adequate defense team in a capital case requires not only attorneys, but additional team members, including but not limited to fact investigators, mitigation specialists, mental health experts, and consulting forensic experts. Counsel is also required to investigate and consider any potential legal challenges to the composition of both the grand and petit jury pools. To do otherwise raises the specter of ineffective assistance of counsel.

### Final Pretrial and Trial Settings

11. Given the current trial setting, there is an approximate four-and-a-half-month time period between the death-eligible charge being filed and the trial date. Kevin McNally, Director of the Federal Death Penalty Resource Counsel Project, maintains a comprehensive list of federal death penalty prosecutions and information about those cases. As of June of 2017, Mr. McNally's data collection has found that the average time between indictment and the notice of intent to seek the death penalty is 13.2 months. If the death penalty is authorized, the average time between that date and the trial date is approximately 16.4 months. (See Exhibit "A", Declaration of Kevin McNally)

12. National statistics aside, the four-and-a-half-month time frame between the filing of the Superseding Indictment and the trial date in this cause is unworkable given the ethical standards that defense counsel is required to adhere to under the 2003 Guidelines.

13. Counsel for the Defendant proposes the following deadlines as reasonable given the requirements of the 2003 Guidelines and the CJA Guidelines: 1) all materials

submitted to the Department of Justice Capital Review Committee shall be provided no later than April 1, 2018, with an expected authorization decision within the following 90 days; 2) if authorization is denied, a jury trial may commence in the month of October 2018; and 3) if authorization is granted, a further status conference should be held to determine a trial date, taking into account the additional obligations of counsel under such circumstances.

WHEREFORE, the Defendant respectfully requests that this Court continue the Final Pre-Trial Hearing and Jury Trial dates in this cause as requested, and for any other relief the Court deems appropriate.

Respectfully submitted,

BRENDT A. CHRISTENSEN, Defendant

By: /s/Elisabeth R. Pollock　　　　　/s/ George Taseff
　　Assistant Federal Public Defender　Assistant Federal Public Defender
　　300 West Main Street　　　　　　401 Main Street, Suite 1500
　　Urbana, IL  61801　　　　　　　　Peoria, IL  61602
　　Phone: 217-373-0666　　　　　　Phone: 309-671-7891
　　FAX:   217-373-0667　　　　　　Fax:   309-671-7898
　　Email: Elisabeth_Pollock@fd.org　Email: George_Taseff@fd.org

　　/s/ Robert Tucker
　　Robert L. Tucker, Esq.
　　7114 Washington Ave
　　St. Louis, MO 63130
　　Phone: 703-527-1622
　　Email: roberttuckerlaw@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2017 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorneys Bryan D. Freres and Eugene L. Miller. A copy was also mailed to the defendant.

/s/Elisabeth R. Pollock  
Assistant Federal Public Defender  
300 West Main Street  
Urbana, IL  61801  
Phone: 217-373-0666  
FAX:   217-373-0667  
Email: Elisabeth_Pollock@fd.org

## DECLARATION OF KEVIN McNALLY
## REGARDING PRE-TRIAL PREPARATION TIME

1. I currently serve as the Director of the Federal Death Penalty Resource Counsel Project, assisting court-appointed and defender attorneys charged with the defense of capital cases in the federal courts. I have served as Resource Counsel since the inception of the Resource Counsel Project in January, 1992. The Project is funded and administered under the Criminal Justice Act by the Defender Services Office of the Administrative Office of the United States Courts.

2. My responsibilities as federal resource counsel include the monitoring of all federal capital prosecutions throughout the United States in order to assist in the delivery of adequate defense services to indigent capital defendants in such cases. This effort includes the collection of data on the initiation and prosecution of federal capital cases.[1]

---

[1] The work of the Federal Death Penalty Resource Counsel Project is described in a report prepared by the Subcommittee on Federal Death Penalty Cases, Committee on Defender Services, Judicial Conference of the United States, FEDERAL DEATH PENALTY CASES: RECOMMENDATIONS CONCERNING THE COST AND QUALITY OF DEFENSE REPRESENTATION (May, 1998), at 28-30. www.uscourts.gov/dpenalty/1COVER.htm. The Subcommittee report "urges the judiciary and counsel to maximize the benefits of the Federal Death Penalty Resource Counsel Project ..., which has become essential to the delivery of high quality, cost-effective representation in death penalty cases ...." *Id.* at 50. An update to the Report states: "Many judges and defense counsel spoke with appreciation and admiration about the work of Resource Counsel. Judges emphasized their assistance in recruiting and recommending counsel for appointments and their availability to

3. In order to carry out the duties entrusted to me, I maintain a comprehensive list of federal death penalty prosecutions and information about these cases. I accomplish this by internet news searches, by reviewing dockets and by downloading and obtaining indictments, pleadings of substance, notices of intent to seek or not seek the death penalty, and by telephonic or in-person interviews with defense counsel or consultation with chambers. This information is regularly updated and is checked for accuracy by consulting with defense counsel. The Project's information regarding federal capital prosecutions has been relied upon by the Administrative Office of the United States Courts, by the Federal Judicial Center and by various federal district courts.

4. Resource counsel collect comprehensive, accurate data concerning various practices that have emerged since the federal courts resumed trying capital cases in 1990. This collection of data includes the intervals of time between various pretrial milestones and trial. The federal courts have, with few exceptions, permitted considerable time between the indictment and mitigation submission and between

---

consult on matters relating to the defense, including case budgeting. Defense counsel found their knowledge, national perspective, and case-specific assistance invaluable."
http://www.uscourts.gov/FederalCourts/AppointmentOfCounsel/Publications/UpdateFederalDeathPenaltyCases.aspx

the government's notice of intent to seek the death penalty and the commencement of trial.

5. The average time between indictment and the trial date in federal capital cases is approximately 28.1 months. The average time between indictment and the notice of intent to seek the death penalty is 13.2 months. The average time between the notice of intent to seek the death penalty and the trial date is approximately 16.4 months.[2]

6. Pursuant to declarant's responsibilities as Federal Death Penalty Resource Counsel, declarant has compiled the above information regarding federal capital cases in the regular course of the business of the Federal Death Penalty Resource Counsel Project.

I declare under the penalty of perjury under the laws of the United States of America, 28 U.S.C. §1746, that the foregoing is true and correct. Executed this 9th day of August, 2017.

/s/ Kevin McNally
Kevin McNally

---

[2]The Project has obtained the date for 503 indictments, 491 notices of intent to seek the death penalty and the date or scheduled date for 452 trials. These dates are in the attached report. This accounts for the apparent disparity in the figures above.