E-FILED
Tuesday, 07 November, 2017  05:19:22 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO CONTINUE FINAL PRETRIAL AND TRIAL DATES**

The Defendant, Brendt A. Christensen, through his undersigned attorneys,

submits this Reply to the government's response to his Motion to Continue the Final

Pretrial and Trial Dates (hereinafter "*Motion*"). (R. 29)

I.       **Procedural Background**

On July 12, 2017, a grand jury of this district returned a non-capital indictment,

charging Mr. Christensen with violating 18 U.S.C. § 1201. On August 23, 2017, his then-

retained counsel filed a motion to continue the trial from its then-scheduled date of

September 12, 2017, which the government joined. Five days later the government

informed the Court that it intended to seek a superseding capital-eligible indictment.

Retained counsel then moved to withdraw and on September 8, 2017, the Court

appointed the office of the Federal Public Defender to represent Mr. Christensen. On the

same date the Court set the case for trial on February 27, 2018.

In recognition of the fact that the Superseding Indictment requires that this case be treated as a capital prosecution, the Court promptly appointed learned counsel. On October 24, 2017, new counsel moved the Court for an Order continuing the trial of this presently-presumptive capital case until October 2018, and to establish deadlines relevant to the capital-case authorization process. *See Motion*.

On November 2, 2017, the government filed a Response to the Defendant's Motion to Continue Final Pre-Trial and Trial Dates (hereinafter "*Response*"), opposing the defendant's request at this time. (R. 30) The government argues that the trial date should stand unless it files a Notice of Intent to Seek Death (NOI) and requests that the Court set a date of February 1, 2018, to inform the Defendant and the Court whether it intends to seek the death penalty. The government reasons that the defense will not be prejudiced by such a procedure because: (a) if the NOI is not filed by February 1, the trial can proceed on February 28; and (b) if a NOI is filed, the defendant will not be prejudiced because a new trial date can be set at that time. *Response*, at 8-9.

The government is wrong on both counts.

## II. Regardless of Whether the Government Later Files a NOI, the Ends of Justice Require a Substantial Continuance

Because the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* provides various time limits and exclusions, the immediate issue presented by the defendant's *Motion* is whether "the ends of justice served by [a continuance] outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. 3161(h)(7)(A). In determining whether to continue a trial beyond the otherwise applicable time limits, a court should consider the

unusual nature or complexity of the case, the likely existence of "novel questions of fact or law," whether a failure to do so would result in a "miscarriage of justice" and whether "it is unreasonable to expect adequate preparation for pretrial proceedings or the trial itself within the time limits established by this section." § 3161(h)(7)(B)(i & ii); *see* IV, *infra*.

### A.    In Order to Provide Mr. Christensen with the Effective Assistance of Counsel Required by the Sixth Amendment, Counsel Must Have Sufficient Time to Investigate and Prepare

Setting aside the potential capital aspect of this case, upon conviction this twenty-nine- year old defendant, with no prior criminal history and a recent graduate of a Master's Program at the University of Illinois, faces a *minimum* sentence of life without parole, the "second most serious punishment permitted by law." *Harmelin v. Michigan,* 501 U.S. 957, 1001 (1991). This places an enormous responsibility on defense counsel, two of whom have full caseloads requiring travel throughout the large geographic area of the Central District of Illinois.

The scope of counsel's duty to conduct both factual[1] and legal[2] investigations is

set out in the *ABA Standards for Criminal Justice: Prosecution and Defense Function. See*

---

[1] *See:*  Standard 4-4.1: Duty to Investigate and Engage Investigators

(a)  Defense counsel has *a duty to investigate in all cases, and to determine whether there is a sufficient factual basis* for criminal charges.

(b)  The *duty to investigate is not terminated by* factors such as the apparent force of the prosecution's evidence, a client's alleged admissions to others of facts suggesting guilt, a client's expressed desire to plead guilty or that there should be no investigation, or statements to defense counsel supporting guilt.

(c)  Defense counsel's investigative efforts should commence promptly and should *explore appropriate avenues that reasonably might lead to information relevant to the merits of the matter, consequences of the criminal proceedings, and potential dispositions and penalties.*  Although investigation will vary depending on the circumstances, it should always be shaped by what is in the client's best interests, after consultation with the client.  Defense counsel's investigation of the merits of the criminal charges should include efforts to secure relevant information in the possession of the prosecution, law enforcement authorities, and others, as well as independent investigation.  *Counsel's investigation should also include evaluation of the prosecution's evidence (including possible re-testing or re-evaluation of physical, forensic, and expert evidence) and consideration of inconsistencies, potential avenues of impeachment of prosecution witnesses, and other possible suspects and alternative theories that the evidence may raise.*

(d)  *Defense counsel should determine whether the client's interests would be served by engaging fact investigators, forensic, accounting or other experts, or other professional witnesses* such as sentencing specialists or social workers, and if so, consider, in consultation with the client, whether to engage them.  Counsel should regularly re-evaluate the need for such services throughout the representation. (Emphasis added).


[2] Standard 4-3.7:  Prompt and Thorough Actions to Protect the Client

(f)  For each matter, defense counsel should *consider* what procedural and investigative steps to take and *motions to file*, and *not simply follow rote procedures learned from prior matters*.  Defense counsel should not be deterred from sensible action merely because counsel has not previously seen a tactic used, or because such action might incur criticism or disfavor.  Before acting, defense counsel should discuss novel or unfamiliar matters or issues with colleagues or other experienced counsel, employing safeguards to protect confidentiality and avoid conflicts of interest.  (Emphasis added); *see also* Standard 4-3.3(v)(duty to discuss potential motions with client); 4-5.2(d)(duty to confer with counsel concerning crafting of response to motions).

https://www.americanbar.org/content/dam/aba/publications/criminal_justice_stand

ards/prosecution_defense_function.authcheckdam.pdf. One size doesn't fit all, as the

scope of required investigation and preparation in a misdemeanor case will not be

coextensive with that of a serious felony. Common-sense suggests the seriousness of the

charge and potential penalties are important guideposts to counsel's responsibilities.

"While defense counsel has the obligation to render effective, quality representation in

*all* criminal cases, defense counsel in a capital case must, given this extraordinary

penalty, make extraordinary efforts on behalf of the accused. . . . [and] . . . leave no stone

unturned in the investigation and defense of a capital client." *Id.* Standard 4-1.2, The

Function of Defense Counsel, Commentary, Role of Defense Counsel in a Capital Case.

As this implies, there are no shortcuts to be taken in a potential death penalty

case. In recognition thereof, the ABA has promulgated standards of performance

required in capital cases. *See generally* American Bar Association Guidelines for the

Appointment and Performance of Defense Counsel in Death Penalty Cases (Revised

edition 2003), *reprinted* at 31 Hofstra Law Review 914 (2003) (ABA Death Penalty

Guidelines),

https://www.americanbar.org/content/dam/aba/migrated/2011_build/death_penalt

y_representation/2003guidelines.authcheckdam.pdf. Recognizing that capital cases are

different, these Standards note:

> [D]efense counsel in such cases have duties and functions
> definably different from those of counsel in ordinary criminal
> cases. At every stage of a capital case, counsel must be aware
> of specialized and frequently changing legal principles and
> rules, become educated regarding a wide range of mental

> health issues and scientific technologies, and be able to
> develop strategies for applying them in *pressure-filled*
> *environment of high-stakes, complex litigation. The level of attorney*
> *competence that may be tolerable in non-capital cases can be fatally*
> *inadequate in capital ones.*

*Id*. at 923,[3] Guideline 10.1, Commentary.

While it is unnecessary to itemize these obligations here, it is sufficient to note that a capital case "requires extensive and generally unparalleled investigation into personal and family history," *id.,* Commentary, in addition to counsel's other obligations in non-capital cases.[4] As noted below, it is not enough to imply, as does the government, *Response* at 8, that this extensive required investigation can simply be postponed until the government decides whether it will file a NOI. As both the ABA Guidelines and policy promulgated by the Defender Services Committee of the Administrative Office of the U.S. Courts and the Judicial Conference of the United States recognize, the mitigation investigation should begin as soon as possible with an eye to convincing the government not to seek the death penalty, providing not only a benefit to the defendant but also substantial savings of judicial resources and costs taxed to the public treasury. *See* IV, *infra.*

Further, review of the partial discovery that has been provided suggest uniquely time-consuming avenues of investigation ahead in this case beyond those usually

---

[3]Page cites to these Guidelines and Commentary are to the Hofstra Law Review page numbers.

[4] The daunting breath of the legal and factual investigation and concomitant responsibilities of counsel in a potential capital case are outlined in Guideline 10.7 – Investigation and Commentary, *id*., at 10015-1027, and Guideline 10.8, The Duty to Assert Legal Claims and Commentary. *Id. at* 1028-1034.

encountered, including several purported sights of the alleged victim around the
country, reports that unknown suspicious individuals were lurking around or
surveilling the alleged victim's apartment on the day of or day before her
disappearance, reports that accounts associated with the alleged victim were logged
into after her disappearance, etc. In addition, the government has provided discovery
suggesting possible 404(b) evidence that will require a separate and detailed factual
investigation.

    **B.**    **The Delayed Production of Rule 16 Discovery**

The defendant's already difficult task is complicated by the government's
delayed delivery of Rule 16 discovery. On September 8, 2017, the same day of
appointment, counsel requested, by letter, that the government provide particularized
discovery required by Federal Rule of Criminal Procedure 16. Specifically, counsel
requested:

    a)    to inspect, copy, and photograph any *books, papers, documents, photographs, tangible objects*, buildings or places which are within the possession, custody or control of the government, and which are material to the preparation of the defense or are intended for use by the government as evidence in chief at trial, or were obtained from or belong to the defendant;

    b)    to inspect, copy, and photograph any results or reports of physical or mental examinations, and *of scientific tests or experiments*, or copies thereof, which are within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, which are material to the preparation of the defense or are intended for use by the government as evidence in chief at trial; and

    c)    disclosure of a written summary of testimony the government intends to use under Fed. R. Evid. 702, 703, or 705, during its case in chief at trial, including a description of the witnesses' opinions, the bases and reasons therefore, and the witnesses' qualifications.

Through pretrial discovery, the defense has learned that extensive forensic evidence seized from Mr. Christensen's car, apartment and person has been submitted to various agencies for testing and analyses including:

    a)    DNA testing of known samples from the Defendant, the alleged victim, the alleged victim's father and boyfriend, and the Defendant's wife;

    b)    Forensic computer analyses relating to two laptops and four associated electronic devices belonging to the Defendant and his wife, and the alleged victim's laptop;

    c)    Fingerprint analyses;

    d)    Trace evidence analyses regarding fibers, clothing, shoes, furniture, appliances, and carpet samples recovered from the Defendant's apartment and/or vehicle;

    e)    Forensic analysis of telephone records originating from the Defendant's two cellular telephones, including but not limited to historical cell site location data; and

    f)    Email account information, including but not limited to the contents of all emails originating from the Defendant's two email addresses.

This evidence was seized 4-5 months ago at various times between the middle of June and the middle of July, yet neither the reports, associated raw data[5] nor the summaries required by F. R. Crim. P. 16(a)(1)(G) have been provided. In a capital case,

---

[5] Counsel has not yet requested underlying raw data but will do so promptly after receiving the reports and analyses.

counsel is expected to "aggressively re-examine all of the government's forensic evidence, and conduct appropriate analyses of all other available forensic evidence." *See* ABA Death Penalty Guideline 10.7 – Investigation, Commentary, at 1015. Absent disclosure of this Rule 16 material, counsel is unable to identify particular experts that may be needed to conduct the required independent analyses.

Counsel acknowledges that the government has timely delivered a significant amount of discovery in this case and, in pointing out the delay in providing complete Rule 16 discovery, does not imply a lack of good faith or dilatory action. Counsel assumes that the delay is necessary and occasioned by circumstances beyond government counsel's control, including the schedules and workloads of experts doing the testing and analyses. But, counsel does take issue with the government's apparent assumption that the defense should just be prepared to go forward irrespective of the same problems of delay likely to be encountered by the defense, who, after all, do not have a host of government agencies at its beck and call. As noted, the government has already been examining forensic evidence between four and five months without producing reports and there is no reason to think the defense will be able to proceed on this front any more expeditiously. And, as noted, the forensics are only a piece of the preparation counsel must address in this case. Under the circumstances of its own delay, the government can hardly be heard to complain about the defense's need for adequate time to discharge its obligation to provide Mr. Christensen with the representation required by the Sixth Amendment.

### C.       Counsel Must Treat Case as Capital at this Point

Implicit in the government's position that the Court can reconsider the schedule on February 1 if the government does not file a NOI, is the idea that defense counsel need not treat this case as a capital prosecution unless and until the NOI is filed. Thus, the government apparently assumes that counsel can just proceed on the assumption that this is a non-capital case and the responsibilities inhering in the preparation of a capital case will not come into play unless the NOI is filed. This assumption could not be further from the truth and turns counsel's responsibility on its head. Professional standards require that "once a client is detained under circumstances in which the death penalty is legally possible, counsel should proceed as if it will be sought . . . [and] . . . must continue to treat the case as capital until the imposition of the death penalty is no longer a legal possibility." ABA Death Penalty Guidelines, at 994-995, Guideline 10.1 – Establishment of Performance Standards, Commentary. As discussed more fully below, judicial policy promulgated by the Administrative Office of the U.S. Courts in conjunction with the Judicial Conference also recognizes that immediate attention to the requirements of a capital-case investigation may provide substantial benefits to the Court and the public.

Thus, in addition to the responsibilities of investigating a case where the defendant faces a sentence of life without parole, counsel must also begin preparation of a potential capital case and this cannot be postponed until February 1, as the government apparently envisions. Furthermore, shutting one's eyes to the potential capital nature of this case and foregoing the responsibilities inherent in defense of a

capital case until told otherwise by the government is likely to result in even more delay if a NOI is later filed.

## III.     The Authority Cited by the Government is Inapposite

The cases cited at page 4 of the *Response* illustrate the danger of proffering isolated passages of opinions, divorced from the underlying facts. None of the three cases cited in the first full paragraph of page 4 of the *Response* have any compelling relationship to the issue presented here.

*United States v. Farr,* 297 F.3d 651, 655 (7th Cir. 2002), was a fraud case, where the defendant was seeking a third continuance after deliberately refusing to cooperate with his attorney in the preparation for trial. Not only is the last factor not present here, but the need for a sufficient time to prepare is obviously more compelling in the case of a defendant facing a minimum penalty of incarceration for the rest of his life than of a defendant facing the consequences of an un-aggravated fraud conviction. Further, in a misplaced exercise of adversarial zeal, after quoting an isolated sentence from the opinion, the government chooses to omit the very next sentence, to wit: "At the same time we note that 'myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.' [citation omitted]." *Id.* at 655.

*Morris v. Slappy*, 461 U.S. 1 (1983), was a § 2254 review of a state court conviction where the applicable standard of review for granting relief bears little resemblance to the issue here. In cherry-picking the isolated quotation the government fails to alert the reader that the request in *Morris* was made *by the defendant himself* on the *first day of trial*

11

and that *defendant's counsel informed the Court that a further continuance would not benefit him in preparing the case*. *Id*. at 6-9, 11-12.

Like *Farr*, *United States v. Hanhardt*, 155 F. Supp. 2d 861 (N.D. Ill. 2001), was a property crime involving a conspiracy to commit jewelry theft. Once again, the issue was not remotely similar to that presented here. Counsel there sought a continuance (after several prior extensions had been granted) because of an alleged conflict with a commercial arbitration hearing that was scheduled to commence thirteen days *after* Mr. Hanhardt's trial was to begin. The court denied the requested continuance only after noting that there had been several prior extensions, the indictment had been returned eleven months previously, criminal cases have precedence over civil and arbitrations in any event are not federal or state judicial proceedings, the case involved multiple defendants and counsel had made no showing that he had even attempted to continue the arbitration matter. It is not apparent how this case provides any guidance to the Court.

*Hanhardt* does, however, cite a principle (unreferenced in the *Response)* concerning requests for continuances that no one can reasonably dispute: "[E]ach decision necessarily turns on the facts and circumstances of the case," *Id*. at 867, *quoting United States v. Davis*, 604 F. 474, 480 (7th Cir. 1979). In citing snippets from cases involving far less serious consequences, different standards of review and easily distinguishable factual patterns, the government brushes aside this obvious precept.

The government next spends two pages of its *Response* knocking down a straw man argument it alone creates, citing several cases holding that a defendant cannot

judicially enforce the Department of Justice's death penalty protocol (Protocol). *Response*, at 5-7; *see* U.S.A.M. § 9.10.010 et seq. Attaching itself to this irrelevant proposition, the government argues that in ruling on the requested continuance the Court should therefore not consider the Protocol's contemplation that a defendant facing a potential capital charge should have a "reasonable opportunity to present information to the United States Attorney . . . which may bear on the decision whether to seek the death penalty." *Id.*, § 9.10.080.

In taking this tact, the government wrongfully conflates the issue of the judicial enforceability of the Protocol with the separate issue of whether the Court may consider this provision of the Protocol in appropriate scheduling in a death penalty case. That these two propositions are distinct is actually suggested by the *Response*, wherein the government cites several cases at pages 5 and 6 to support its uncontested non–enforceability argument, while proffering no authority supporting its argument in the first paragraph on page 6 that the Court should not consider this factor in scheduling decisions. And, as noted immediately below, judicial policy guidelines suggest that district courts *should consider* the provisions of the Protocol concerning submissions to the U.S. Attorney and the Department of Justice in setting schedules in a potential capital case.

That the government is unable to cite any such authority is unsurprising inasmuch as this position runs counter to almost unanimous professional opinion, as suggested by the previously-cited Guidelines of the American Bar Association and judicial policy articulated by both the Administrative Office of the U.S. Courts and the

13

Judicial Conference of the United States and intended as a guide to district court judges

in handling the complexity of capital cases.

The Guide to Judiciary Policy, Vol 7 – Defender Services, Part A, Guidelines for

Administering the CJA and Related Statutes, Chapter 6, Representation in Death

Penalty cases, provides:

§ 670 Scheduling of Federal Death Penalty Case Authorization to
Control Costs

(a) Within a reasonable period of time after appointment of counsel
under 18 U.S.C. § 3005(link is external), and only after consultation
with counsel for the government and for the defendant (including, as
appropriate, in an ex parte application or proceeding**),** *the court should
establish a schedule for resolution of whether the government will seek the
death penalty.*

(b) *This schedule should include dates for*:

(1) *the submission by the defendant to the U.S. attorney of any reasons why
the government should not seek the death penalty*;

(2) the submission by the U.S. attorney to the appropriate officials of
the DOJ of a recommendation and any supporting documentation
concerning whether the death penalty should be sought; and

(3) filing of a notice under 18 U.S.C. § 3593(a)(link is external) that the
government will seek the death penalty, or notification to the court
and the defendant that it will not.

(c) *The schedule should be flexible and subject to extension for good cause at
the request of either party* (again, as appropriate, in an ex parte
application or proceeding).

(d) *The schedule should allow reasonable time for counsel for the parties to
discharge their respective duties with respect to the question of whether the
death penalty should be sought, with due regard to:*
• the factual complexity of the case;
• the status of any continuing investigation of the crimes and related
criminal conduct;

- the anticipated or actual progress of discovery;
- the potential for successful plea negotiations; and
- any other relevant factors.

(e) *It is also recognized that scheduling extensions may be necessary because the full development of facts related to guilt and aggravating and mitigating factors may continue even after the case is submitted to the DOJ for review*.

See http://www.uscourts.gov/rules-policies/judiciary-policies/cja-guidelines/chapter-6-ss-670-scheduling-federal-death-penalty (Emphasis added).

Attached as Appendix 6A to this provision of the Judiciary Policy Guide is a report entitled *Federal Death Penalty Cases: Recommendations Concerning the Cost And Quality of Defense Representation*, otherwise known as the Updated Spencer Report (Spencer Report) and also setting forth recommendations for district courts in presiding over capital cases.[6] As to the relationship of scheduling and the decision-making process, the Spencer report notes:

> *Courts should ensure, however, that whatever decision-making timetables are imposed are sufficient to allow for meaningful preauthorization advocacy by counsel for the defendant*. Where authorization to seek the death penalty is significantly likely, *the prosecution and defense should be given every opportunity to explore the reasons for not authorizing* or for negotiating an early disposition of the case.

http://www.uscourts.gov/sites/default/files/vol07a-ch06-appx6a_0.pdf , at 106-107. (Emphasis added).

---

[6] The initial Spencer Report was first approved by the Defender Services Committee of the Administrative Office of the U.S. Courts before its submission to, and approval by, the Judicial Conference.  In 2010, the Defender Services Committee endorsed revised commentary to the 1998 recommendations.  The 2010 recommendations and revised commentary set forth in Appendix 6A to the Judiciary Policy Guide, have not yet been approved by the Judicial Conference. *See* http://www.uscourts.gov/rules-policies/judiciary-policies/cja-guidelines/chapter-6-ss-610-overview, § 610.20 Judicial Conference Recommendations.

Setting a schedule that affords defense counsel full opportunity to conduct a mitigation investigation sufficient to provide meaningful input on the authorization decision is also sound fiscal policy:

> Since an early decision not to seek death is the least costly way to resolve a potential capital charge, a *prompt preliminary investigation leading to effective advocacy with the local U.S. Attorney and with the Justice Department is critical both to a defendant's interests and to sound fiscal management of public funds. And, since the local prosecutor's recommendation most often prevails with the Attorney General, the opportunity to persuade the U.S. Attorney not to request capital authorization is extremely important.*

*Id.* 93. (Emphasis added).

Professional standards similarly caution:

> [E]arly investigation to determine weaknesses in the State's case and uncover mitigating evidence is a necessity and should not put be off in the hope that the death penalty will not be requested, or that the request will be dropped at a later point. . . . *Moreover, early investigation "may uncover mitigating circumstances or other information that will convince the prosecutor to forego pursuit of a death sentence."*

*See* ABA Death Penalty Guidelines, at 913, 994, Guideline 10.2, Commentary.[7]

Finally, these considerations are not only consistent with, but inherent in the Department of Justice's Protocol, which directs the US Attorney to file a memorandum with DOJ analyzing, *inter alia*, both the statutory aggravating and mitigating factors after providing defense counsel a reasonable opportunity to present information. U.S.A.M. § 9-10.080.

---

[7] *See also id*, at 957, n. 97, noting that devoting significant resources to early investigation may result in significant cost savings if the case is "taken off the capital track."

## IV.     Speedy Trial Act and Constitutional Considerations

The government correctly identifies the seven *non-exhaustive* factors the Seventh Circuit has directed district courts to weigh in ruling on continuance motions. *Response*, at 4, *citing U.S. v. Isaacs*, 593 F.3d 517, 525 (7th Cir 2010). But, after listing the factors the government makes no attempt to discuss their applicability, instead reasoning that the analysis can be postponed until the government decides whether to file a NOI. *Response*, at 7-8. For the reasons already stated, a continuance at this time is necessary to meet the ends of justice and avoid a miscarriage of justice irrespective of whether the government ultimately files a NOI. Analysis of these factors also suggests a tactical reason for the government to avoid a particularized analysis of their applicability, as they overwhelming weigh in favor of a substantial continuance at this time:

1) The amount of time available for preparation: the total amount of time necessary for preparation in a serious case with a minimum sentence of life without parole, requiring both a wide-ranging investigation, analysis of potentially numerous items of forensic evidence, selection and preparation of defense experts and extensive motion preparation is significant. And, as noted, counsel must also treat this case as a potential capital prosecution until notified differently by the government. Finally, the government's suggestion that the preparation time should be analyzed from the time Mr. Christensen first appeared with counsel on July 3, 2017, *see Response*, at 2, is unfair, as the government well knows that present counsel had no involvement with this case before September 8, 2017;

2) The likelihood of prejudice from denial:  Without adequate time to prepare, the defendant (even in a non-capital case) risks up to life imprisonment, thus intensifying the risk of prejudice should he be forced into trial unprepared;

3) The defendant's role in shortening the effective preparation time: There is no suggestion that Mr. Christensen has had any role in

delaying the processing of this case. *Compare United States v. Farr*, *supra*, cited by the government, where the delay was caused in large part by the defendant's refusal to cooperate with counsel in preparing the case.

4) The degree of complexity of the case: As noted, this is a complex case, requiring not only extensive factual investigation but also presenting several potential complicated areas of expert evidence and an extensive motion practice not presented in an ordinary case, including potential motions involving the selection of a jury and location of trial due to the extensive publicity that has been generated. Further, the appointment of learned counsel itself is a recognition of the complicated nature of the case.

5) The availability of discovery from the prosecution. This has been discussed in Part II-B above and is another factor weighing heavily in favor of a continuance.

6) The likelihood that a continuance would satisfy the movant's needs: For the reasons stated above, a continuance is necessary for counsel to adequately provide the effective assistance of counsel required by the Sixth Amendment and applicable professional standards and thus a continuance for an appropriate period of time is necessary to satisfy those needs. *Compare Morris v. Slappy*, *supra*, cited by the government, where defense counsel told the Court that the continuance requested by the defendant would not benefit his preparation.

In this regard, counsel notes that they are familiar with and take seriously their ethical responsibilities not to seek delay unless such is necessary to discharge the obligations imposed on them by the Sixth Amendment and the appropriate standards cited above. *See ABA Standards for Criminal Justice: Prosecution and Defense Function*, *supra*, Standard 4-1.3(c & d) (defense counsel should not mislead the court to obtain a continuance or intentionally use procedural devices for delay when there is no legitimate basis); Illinois Rules of Professional Conduct, Rule 3.3(a)(1) (attorney shall not "make a material statement of fact and law to a tribunal which the lawyers knows or reasonably should know is false."); https://www.law.cornell.edu/ethics/il/code/IL_CODE.HTM#Rule_3.3.

7) The inconvenience and burden to the Court and its pending caseload: While the motion for a continuance is untethered to the Court's caseload, the defense has no reason to believe that rescheduling this trial for the fall of 2018 will otherwise burden this Court's caseload.

The defense moves that the trial date be continued until the fall of 2018. This will result in exclusion of any delay for Speedy Trial Act purposes. 18 U.S.C. § 3161(h)(7). Further, the defense anticipates that this case will require numerous motions. Delay from the filing of such motions until their disposition will also be excluded. 18 U.S.C. § 3161(h)(1)(D). In this regard, the defense notes the 7th Circuit's recognition in *United States v. O'Connor*, 656 F.3d 630, 639 (7th Cir. 2011) that the ends of justice provision of § 3161(h)(7) is appropriately invoked to allow defense counsel to "understand the government's case, analyze the evidence, and decide what motions might be appropriate."

Finally, irrespective of whether a NOI is ultimately filed, the potential capital nature of this case implicates Mr. Christensen's Sixth Amendment right to the effective assistance of counsel. *Cf. Rompilla v.Beard*, 545 U.S. 374 (2005); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Strickland v Washington*, 466 U.S. 668 (1984).

## V.    Requested Relief

Mr. Christensen, through his counsel, seeks an Order that:

1)    the trial date be continued until fall of 2018. The defendant suggests a date in October that is consistent with the Court's calendar;

2)  the government provide all discovery required by Rule 16 no later than January 1, 2018, unless it makes a satisfactory showing why it is unable to do so;

3)  the government provide any Notice of Intent to Seek Death no later than July 1, 2018.[8] In the event a NOI is filed, the Court will promptly schedule a hearing to set a schedule taking into account the NOI;

4)  the government promptly notify the defense and the Court in the event that it decides prior to July 1, 2018, *not* to seek the death penalty. In that event, either party may move for reconsideration of the trial date;

5)  the parties meet and confer no later than December 1, 2017, concerning an appropriate schedule for filing non-capital related motions.

A proposed order to this effect is attached hereto. *See* Exhibit A.

---

[8] In its *Motion*, at 6, the defense asks the Court to set a deadline of April 1, 2018, to submit materials to the Capital Case Committee at the Department of Justice, "with an expected authorization decision within the following 90 days." *See* U.S.A.M. 9-10.060 (U.S. Attorney "must submit a capital-eligible case for review no fewer than 90 days before the Government is required, by an order of the court, to file a notice that it intends to seek the death penalty."). Thus, if the Court sets a deadline of July 1, 2018, for the Government to file any NOI, the case must be submitted to the Capital Case Committee by April 1, 2018, as contemplated in the *Motion*.

WHEREFORE, the Defendant respectfully requests that this Court grant the relief requested in his Motion to Continue, and for any other relief the Court deems appropriate.

Respectfully submitted,

BRENDT A. CHRISTENSEN, Defendant

By:  /s/Elisabeth R. Pollock                /s/ George Taseff
     Assistant Federal Public Defender      Assistant Federal Public Defender
     300 West Main Street                   401 Main Street, Suite 1500
     Urbana, IL 61801                       Peoria, IL 61602
     Phone: 217-373-0666                    Phone: 309-671-7891
     FAX:   217-373-0667                    Fax:     309-671-7898
     Email: Elisabeth_Pollock@fd.org        Email: George_Taseff@fd.org

     /s/ Robert Tucker
     Robert L. Tucker, Esq.
     7114 Washington Ave
     St. Louis, MO 63130
     Phone: 703-527-1622
     Email: roberttuckerlaw@gmail.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 7, 2017, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system which will send notification of

such filing to Assistant United States Attorneys Bryan D. Freres and Eugene L. Miller. A

copy was also mailed to the defendant.

<div style="margin-left: 40%;">

<u>/s/Elisabeth R. Pollock</u>
Assistant Federal Public Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org

</div>