IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17-CR-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

**THE UNITED STATES OF AMERICA'S RESPONSE TO THE
DEFENDANT'S MOTION TO BAR EXPERT TESTIMONY**

NOW COMES the United States of America, by John E. Childress, United States Attorney for the Central District of Illinois, and Eugene L. Miller and Bryan D. Freres, Assistant United States Attorneys, and hereby requests that this Court deny the defendant's motion to bar the introduction of any expert testimony by the United States during the trial of this matter (R.35) because (1) the United States has in good faith complied with all applicable discovery rules and this Court's prior orders; and (2) the defendant's requested remedy is unwarranted and would inhibit the jury in its truth-seeking function.

**BACKGROUND**

The allegations in this case are both tragic and serious. On June 30, 2017, the Federal Bureau of Investigation arrested the defendant, Brendt A. Christensen, pursuant to a criminal complaint charging him with the kidnapping of Yingying Zhang. (R.1) The Court ordered the defendant detained pending trial. (R.11) A federal grand jury later

indicted the defendant on one count of kidnapping in violation of 18 U.S.C. § 1201(a)(1). (R.13) On the defendant's motion, which the United States joined, trial was scheduled for February 27, 2018. (d/e 8/28/17)

On October 3, 2017, a federal grand jury returned a superseding indictment charging the defendant with kidnapping resulting in the death of the victim. (R.26) The defendant filed a motion to continue the February trial date to October of 2018 if the United States did not seek a sentence of death, and even later if the United States did seek a sentence of death.[1] (R.29) This Court denied the motion to continue, noting that "[s]hould the Government receive authorization and elect to pursue the death penalty, the court would welcome a renewed motion to continue the trial from Defendant (or the Government) in order for appropriate dates to be established under those circumstances." (R.34) This Court further ordered the United States to provide analysis of forensic evidence and written summaries of expert testimony by December 15, 2017.

---

[1] In his motion to bar experts, the defendant claims that the United States "strenuously objected" to the defendant's second motion to continue, "married itself to the February 27, 2018, trial date . . . with the apparent intent to prejudice the defense's ability to prepare," and "chose to press for an unrealistic trial date." (R.35) The United States takes seriously, and categorically denies, the defendant's claim that it intended to prejudice the defense's ability to prepare. Moreover, the defendant's claims misstate the record. This Court, not the United States, set the February 2018 trial date on the motion of the defendant. (d/e 8/28/17) The date was not proposed by the United States, nor objected to by the defendant at the time it was set by this Court. In its written response to the defendant's second motion to continue, the United States mainly objected to the defendant's request for this Court to allow the defense to set internal DOJ deadlines. (R.30) Moreover, the United States did not object to *any* continuance; it specifically noted that it did not object and expected this Court to continue the February 27, 2018, trial date if a sentence of death were sought "so as to provide the defendant with a reasonable opportunity to prepare his death penalty defense." (R.30) Finally, the United States merely objected to the defendant's requested eight-month continuance if a sentence of death were not sought because it was unnecessary and not justified by the defendant's motion. (R.30) At that time, the defendant did not propose, nor did this Court or United States consider, a shorter continuance.

(R.34) On December 14, 2017, the United States provided the defendant with its disclosure of potential expert witnesses.

On December 31, 2017, the defendant filed a motion to bar introduction of any expert by the United States during the trial of this matter, alleging insufficiencies in the disclosure of the United States. (R.35) Notably, the defendant did not request any alternative relief under Rule 16, such as an order for additional disclosures, additional time to file its pretrial motions, or a renewed motion to continue the trial date. (R.35)

### RELEVANT LAW AND PROCEDURE

Rule 16 of the Federal Rules of Evidence sets forth various disclosure obligations of the prosecution and the defendant in a criminal case. The prosecution's obligations are also informed by case law (*e.g., Brady v. Maryland,* 373 U.S. 83 (1963)) and Local Rule 16.1 regarding pretrial discovery and inspection. The pretrial disclosures required by Rule 16 are limited, and do not include witness statements. *See* 18 U.S.C. § 3500. Nonetheless, in many cases – including this case – the United States provides the defendant with discovery in excess of its legal obligations, including witness statements.

Under the local rule, if a defendant seeks discovery or inspection in addition to the information provided by the United States, his attorneys should confer with the appropriate Assistant United States Attorney "with a view to satisfying those requests in a cooperative atmosphere without recourse to the court." Local Rule 16.1(C). In this case, the United States has responded to every request from defense counsel and believes it has done so in a cooperative manner. Moreover, the Assistant United States Attorneys

assigned to the case have met with defense counsel on each and every occasion they have requested a meeting.

Rule 16(a)(1)(G) governs the prosecution's disclosure of expert witnesses and Rule 16(b)(1)(C) governs the defendant's disclosure of expert witnesses. These rules are "intended to minimize surprise that often results from unexpected expert testimony." Fed. R. Crim. P. 16, Advisory Committee Notes. As this Court and experienced defense counsel are aware, trial experts are identified and expert disclosures are made under the rule once it is determined that a case is proceeding to trial. This is often within a month of trial.[2] This minimizes surprise and permits the opposing party to consider the impact of the potential testimony on their case, prepare cross-examination, consider retaining rebuttal experts, or consider challenging the validity of the expert testimony under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), prior to trial. If a party would like additional information regarding the disclosed expert witness, Local Rule 16.1 encourages a conference with opposing counsel prior to recourse to this Court.

In this case, the United States identified expert witnesses pursuant to Rule 16(a)(1)(G) in a December 14, 2017, letter to defense counsel. After listing the witnesses

---

[2] The Speedy Trial Act, 18 U.S.C. § 3161(c)(1), allots the parties only 70 days for trial preparation. Thus, expert disclosures typically occur close to trial. For example, under the local rules of the Eastern District of Wisconsin, the government's expert summary under Fed. R. Crim. P. 16(a)(1)(G) must be disclosed not less than 15 days before trial, and the defendant must make his expert disclosures "as soon as reasonably practicable after the government's disclosure" but a minimum of five days before trial. *See United States v. Arms*, No. 14-CR-78, 2015 WL 3513991, at *20 (E.D. Wis. June 3, 2015), report and recommendation adopted, No. 14-CR-78, 2015 WL 5022640 (E.D. Wis. Aug. 24, 2015). Due to the vagaries of trial preparation, the parties often obtain additional evidence – and identify additional experts – in the days leading up to trial. When that occurs, the courts have a variety of tools under Rule 16(d) to address and remedy any prejudice to an opposing party.

and the subject matter of their testimony, it stated that a "summary of their testimony, including witness's opinions, the bases and reasons for those opinions, and the witness's qualifications is either contained in the discovery already provided and the curriculums vitae of the witnesses, included herein, or will be provided immediately upon receipt by the United States." The letter continued, "Please do not hesitate to contact us if you require any additional information."

The United States and defense counsel had contact to discuss other matters between the date of the letter (December 14, 2017) and the date of the defendant's motion to bar expert testimony (December 31, 2017). Nonetheless, during that time, defense counsel did not request any additional information regarding any of the expert witnesses identified and disclosed by the United States.[3] Regardless, the defendant's motion to bar "any" expert testimony by the United States at trial should be denied because (1) the United States has in good faith complied with Rule 16(a)(1)(G) and this Court's order; and (2) the defendant's requested remedy is unwarranted and would inhibit the jury in its truth-seeking function.

---

[3] A failure to follow Local Rule 16.1's admonition to confer in a cooperative atmosphere suggests a preference to gain a litigation advantage over actually receiving the additional information.

## THE EXPERT DISCLOSURES OF THE UNITED STATES

**I.    DNA and Serological Expert**

The DNA and serological (blood) evidence is important to the prosecution's case, and thus, the United States has ensured its compliance with Rule 16(a)(1)(G) in disclosing this evidence. In fact, around the time defense counsel first entered their appearance in this case (September 8, 2017), they were verbally informed of preliminary DNA and serological findings related to this case. At the time of this Court's November 15, 2017, Order, the FBI Laboratory still had not completed its DNA and serological analysis, and upon information and belief, it was this DNA and serological testing that was the main impetus for this Court's order that the forensic analysis be disclosed by December 15. The United States, through the FBI, relayed this deadline to the FBI Laboratory in Quantico, Virginia.

On November 20, 2017, FBI Biologist Amanda Bakker authored an 11-page report summarizing her DNA and serological analysis, which is the basis of her expected testimony in this case. The United States Attorney's Office received a copy of the report on Friday, November 24, 2017. It then met in person with defense counsel on Monday, November 27, 2017, and handed them a copy of the report.[4] Moreover, the next day, it provided a bates-stamped copy of the report to the defendant (bates numbers 3305-3315).

---

[4] Thus, the defendant's claim that "not a single summary has been provided which describes these alleged expert's opinions" is incorrect. The defendant cites no authority for the novel proposition that an expert's report does not qualify as a summary of her testimony.

Further, out of an abundance of caution, it sent another copy of the report to the defendant on December 5, 2017 (bates numbers 3986-3996).

Moreover, on December 14, 2017, the United States provided the defendant with the underlying reports (which included still another copy of the DNA and serological report), bench notes, computer printouts, and other specific information regarding the FBI's Short Tandem Repeat (STR) DNA analysis and serological testing (bates numbers 4019-4599). Additionally, the United States provided the defense with the curriculum vitae for Amanda Bakker, specifically setting forth her qualifications (bates numbers 4003-4005).

Finally, on that same date, the United States provided the defense with a letter specifically identifying FBI Biologist Amanda Bakker as an expert witness it intends to call during its case-in-chief at trial. The letter noted that a summary of her testimony, including her opinions, the bases and reasons for those opinions, and her qualifications were contained in the discovery already provided. Thus, as of December 14, 2017, the United States had provided to defense counsel all written information that to its knowledge exists regarding FBI Biologist Amanda Bakker's DNA and serological findings, including a detailed summary of her expected testimony in her written report.

As noted, Rule 16(a)(1)(G) is intended to minimize surprise from *unexpected* expert testimony. In this case, it should be no surprise to the defendant that the United States intends to present the testimony of a DNA and serological expert at trial. In fact, although the defendant did not request it, the United States provided the defendant with approximately 600 pages of discovery detailing the expert's opinions, the bases and

reasons for those opinions, and her qualifications. *See, e.g., United States v. Lindsey*, No. 4:12-CR-40019-SLD, 2013 WL 5275777, at *2 (C.D. Ill. Sept. 18, 2013) (unreported opinion) (finding disclosure satisfied the requirements of Rule 16 because "[t]here is nothing more the United States could provide short of [the expert's] direct examination and the anticipated answers to those questions"). The defendant's claim that the expert testimony of FBI Biologist Amanda Bakker regarding her DNA and serological analysis should be barred for non-disclosure is without merit.

## II. Electronic Evidence Experts

The electronic evidence is also important to the prosecution's case. While most of the evidence speaks for itself, the United States will be required to lay a foundation for admission of the evidence through the testimony of experts. During the FBI investigation, agents seized various items containing electronic information, including phones and computers. Those items have been examined by FBI Computer Forensic Examiners William O'Sullivan and Connie Gummadi, and they have downloaded electronic evidence from those devices. On November 21, 2017, the examiners drafted reports of examination regarding the items examined (bates numbers 3300-3304, 3970-79). On November 28, 2017, the United States provided to defense counsel not only copies of those reports, but a hard disk drive containing the vast amounts of raw electronic evidence downloaded from the identified devices. Although not required to do so, the United States discussed with defense counsel specific evidence located in the electronic downloads that the United States identified as relevant to its case. Additionally, on December 5, 2017, the United States provided the defendant with

Forensic Examiner William O'Sullivan's work product (bates numbers 3463-3466, 3970, 3975), which included a detailed timeline of the defendant's computer-related and online activities.

Moreover, on December 14, 2017, the United States provided the defense with a letter specifically identifying FBI Computer Forensic Examiners William O'Sullivan and Connie Gummadi as expert witnesses it intends to call during its case-in-chief at trial regarding the electronic evidence seized in this case. Thus, the defendant was notified that the United States intended to call these expert witnesses to lay the foundation for the electronic evidence they downloaded and which was provided to defense counsel. Once again, the letter provided by the United States also stated "Please do not hesitate to contact us if you require any additional information," and contained the curriculum vitae of Forensic Examiner O'Sullivan (bates numbers 4006-4009). Defense counsel did not contact the United States prior to filing its motion to bar testimony requesting any additional information regarding the expected testimony of William O'Sullivan or Connie Gummadi.

Based on the disclosures of the United States, it should not be a surprise to the defense that the United States intends to present the testimony of the FBI computer forensic examiners at trial regarding the evidence they downloaded. In fact, going above and beyond its Rule 16 obligations, the United States has provided the defendant with all of the raw electronic data seized from the devices. *See United States v. Kimoto*, 588 F.3d 464, 486 (7th Cir. 2009) (disagreeing with defendant's claim that the government's failure to provide him with complete forensic images of all digital evidence within its

possession constituted a *Brady* violation). The defendant's motion to bar their testimony for non-disclosure is without merit.

### III. Fingerprint Expert

In addition to the DNA and serological analysis, the FBI conducted fingerprint analysis of various items. Frankly, the fingerprint evidence is not particularly important to the prosecution's case, but it does show the thoroughness of the FBI investigation. The items were examined by FBI Fingerprint Analyst Andrew Z. Sites. Unfortunately, FBI Fingerprint Analyst Sites did not complete the analysis until around December 19, 2017. Anticipating completion of this fingerprint analysis, the United States informed the defense in its December 14, 2017, letter that it intended to call Fingerprint Analyst Andrew Z. Sites during the trial of this matter as an expert witness.[5] It provided a copy of his curriculum vitae (bates numbers 4013-4016) and further stated it would provide a summary of his opinion upon receipt by the United States.

After receiving Fingerprint Analyst Sites's reports, the United States provided a copy of the report to defense counsel (bates numbers 4607-4636) on December 27, 2017. Moreover, it provided defense counsel with a copy of a compact disc containing all the reports, bench notes, computer printouts, copies of fingerprint images, and other specific information regarding this case. Thus, the United States provided the defendant with disclosure pursuant to Rule 16(a)(1)(G) of the Federal Rules of Evidence on December 27,

---

[5] The United States identified the examiner by name, although it was not necessarily required to do so: "a generic description of the likely witness and that witness's qualifications may be sufficient, e.g., where a DEA laboratory chemist will testify, but it is not clear which particular chemist will be available." Fed. R. Crim. P. 16, Advisory Committee Notes.

2017, which was necessarily after December 15, 2017, since the report had not yet been completed. By turning over the report as soon as it was prepared, the United States complied with Rule 16. *United States v. Stevens*, 380 F.3d 1021, 1025-26 (7th Cir. 2004).

**IV.  Video and Audio Enhancement Experts**

As part of discovery, the United States has turned over various recorded conversations and video images. To attempt to make portions of the recordings more audible and to make portions of the videos clearer, FBI Forensic Audio, Video, and Image Analysis Unit Electronics Engineer Alysha Jeans Hiller enhanced the audio recordings and FBI Forensic Audio, Video, and Image Analysis Unit Photographic Technologist Christopher W. Iber enhanced the video. These efforts were discussed with defense counsel, and on December 14, 2017, the United States disclosed these two individuals as potential expert witnesses at the upcoming trial and provided copies of their curriculums vitae (bates numbers 4010-12, 4602-06).

Frankly, it is unlikely that either Engineer Hiller or Technologist Iber will be required to testify at trial. If a witness with knowledge testifies that the enhanced recordings and videos are fair and accurate representations of what they purport to depict, no additional authentication will be required. Fed. R. Evid. 901. Nonetheless, the United States disclosed the identities of these potential witnesses to the defendant on December 14, 2017, out of an abundance of caution. Moreover, although they have not yet authored any reports, the summary of testimony need not come from the witness. *See United States v. Plummer*, 581 F.3d 484, 490 (7th Cir. 2009) (summary of expert witness testimony does not need to come from expert). Here, given the brief and limited nature

of their testimony (if even called to testify), the December 14, 2017, disclosure has adequately put the defendant on notice of their potential testimony. *Compare United States v. Strickland*, 113 F. Supp. 2d 1276, 1281 (S.D. Ind. 2000) (government disclosure substantially complied with Rule 16 and discovery orders regarding expert witnesses).

V.     **Canine Experts**

During the investigation, the FBI enlisted McHenry County, Illinois canine handler Jeremy Bruketta and Lake County Sheriff's Office canine handler Dwight Arrowood to conduct canine searches. Those canine searches were documented in law enforcement reports and provided to defense counsel (bates numbers 1479, 1501, 1765-66) on September 13, 2017. On December 14, 2017, the United States then notified the defendant that Deputies Bruketta and Arrowood were potential expert witnesses regarding their use of the canines to conduct the searches referenced in the discovery. As set forth in the reports, two of those searches did not result in any indication by the canines, while one of those searches did. Thus, the December 14, 2017, disclosure has adequately put the defendant on notice of their potential testimony. *Compare Strickland*, 113 F. Supp. 2d at 1281 (government disclosure substantially complied with Rule 16 and discovery orders regarding expert witnesses).

VI.    **Cell Phone Records Expert**

As part of this investigation, FBI Cellular Analysis Survey Team Special Agent Greg Catey obtained certain cellular telephone data and records in this case, which were disclosed to the defense on October 18, 2017 (bates numbers 3182-3299). The United States anticipates calling Special Agent Catey as a witness at trial to explain to the jury

the information contained in the cellular telephone data and records he obtained. On December 14, 2017, the United States identified to the defendant Special Agent Catey as a potential expert witness regarding his analysis of the cellular telephone data and records and provided the defendant with a copy of his curriculum vitae (bates numbers 4600-4601). Use of a law enforcement expert to explain to the jury information contained in cellular telephone data and records, including the general location of a cellphone, has been "widely accepted by numerous federal courts." *United States v. Jones*, 918 F. Supp. 2d 1, 5 (D.D.C. 2013) (admitting expert testimony of member of FBI Cellular Analysis and Survey Team regarding cell phone records).

## VII.   Rebuttal Experts

By its terms, Rule 16(a)(1)(G) only applies to expert witnesses that the United States intends to call during its case-in-chief and not to rebuttal experts. On December 14, 2017, pursuant to Rule 16(b), the United States requested that the defendant provide a written summary of testimony that the defendant intends to use at trial under Rules 702, 703, and 705 of the Federal Rules of Evidence (as well as any expert under Rule 12.2(b) or alibi witnesses under Rule 12.1). To date, the defendant has not provided the United States with any such written summaries. In fact, the defendant has not yet provided the United States with any reciprocal discovery whatsoever pursuant to Rule 16(b).

While the United States has not been made aware of any theory of defense in this case,[6] it is aware that in some cases a defendant attempts to blame the victim for the

---

[6] The United States understands that the burden of proof is on the prosecution, and the defendant has no obligation to present any evidence or defense at trial.

13

defendant's crime. With that in mind, and to give the defendant as much notice as possible, the United States identified two potential rebuttal experts regarding the victim in its December 14, 2017, disclosure: FBI Linguist Mora Golden to testify regarding the Chinese to English translation of writings of the victim in this case, and a University of Illinois professor regarding Chinese culture and the victim's expected actions in this case.[7] FBI Linguist Golden's curriculum vitae was also provided to the defendant (bates numbers 4017-4018). These two expert witnesses would be called if the defense attempts to blame the victim for the defendant's crime during the course of the trial. Because these experts are not expected to testify during the government's case-in-chief and the specific nature of their testimony would be determined by the nature of the defense, disclosure is not require by Rule 16(a)(1)(G), even though it was provided and will continue to be updated by the United States as additional information becomes available.

## THE DEFENDANT'S REQUESTED REMEDY

Despite the United States' compliance with its disclosure obligations, the defendant seeks to bar the United States from presenting any expert testimony during his trial, including highly probative DNA, serological, and computer forensic evidence. Criminal trials are searches for the truth. *See, e.g., United States v. Byrd*, 750 F.2d 585, 592 (7th Cir. 1984) (evidentiary rules must be construed to protect the search for truth, citing

---

[7] The United States had not yet identified the name of the expert witness at the time of the December 14, 2017, disclosure. As noted previously, "a generic description of the likely witness and that witness's qualifications may be sufficient, e.g., where a DEA laboratory chemist will testify, but it is not clear which particular chemist will be available." Fed. R. Crim. P. 16, Advisory Committee Notes.

*United States v. Nixon*, 418 U.S. 683, 710 (1983)). Any remedy that excludes otherwise relevant and competent evidence from a jury's consideration thwarts a jury's truth-seeking function and should be a remedy of last resort:

> Exclusion exacts a heavy toll on both the judicial system and society at large. It almost always requires courts to ignore reliable, trustworthy evidence bearing on guilt or innocence. And its bottom-line effect, in many cases, is to suppress the truth and set the criminal loose in the community without punishment. Our cases hold that society must swallow this bitter pill when necessary, but only as a "last resort."

*Davis v. United States*, 564 U.S. 229, 237 (2011) (citations omitted). *Accord United States v. Gutierrez*, 760 F.3d 750, 754 (7th Cir. 2014) ("exclusion is the option of 'last resort'"). The defendant, however, seeks exclusion of this highly probative evidence as a first resort.

As a threshold matter, the defendant's motion does not establish a violation of Rule 16(a)(1)(G) or this Court's order. The United States has provided the defendant with the information it possesses regarding its potential expert witnesses; the defendant possesses the same discovery that the United States possesses regarding the prosecution experts. For example, FBI Biologist Amanda Bakker's 11-page report summarizes her expected trial testimony, and the defendant possesses over 500 pages of her underlying reports, notes, printouts, and other information.

In the face of all this disclosed evidence, the defendant still claims that he "has been prevented from pursuing or even evaluating the possibility of a *Daubert* challenge based on the government's [alleged] noncompliance," and this "has irreparably prejudiced the defense." The record does not support his bold assertions. First, even though he is unlikely to succeed on a *Daubert* challenge, *see, e.g., Dist. Attorney's Office for*

*Third Judicial Dist. v. Osborne*, 557 U.S. 52, 62 (2009) ("It is now often possible to determine whether a biological tissue matches a suspect with near certainty. . . . there is no technology comparable to DNA testing for matching tissues when such evidence is at issue); *United States v. Havvard*, 260 F.3d 597, 602 (7th Cir. 2001) (affirming admissions of latent fingerprint evidence under *Daubert*); *Jones*, 918 F. Supp. 2d at 5 (admitting expert testimony of FBI cell phone analyst), he has not been prevented from raising a *Daubert* challenge. Second, the disclosure has assisted the defense, not irreparably prejudiced the defense. The defendant knows the names of the proposed experts, their qualifications, and the nature of their proposed testimony. If the defendant believes he requires additional information regarding any of the experts, he need only request it and the United States will attempt to provide it.

To establish prejudice, the defendant first needs to specifically identify what additional details he needs and cannot obtain from the United States. *See United States v. Duvall*, 272 F.3d 825, 829 (7th Cir. 2001) ("Duvall did not identify (to the district court or to this court) any prejudice that could have been avoided by a more detailed notice, and therefore we believe the court was within its discretion in denying Duvall's motion to exclude [the expert's] testimony."). Moreover, a "Rule 16 violation prejudices a defendant only when he is unfairly surprised by the evidence and cannot adequately prepare his defense or when the violation has a substantial influence on the jury." *See also United States v. Smith*, 502 F.3d 680, 689 (7th Cir. 2007). Here, the United States has made timely disclosures and supplemented the disclosures as it received more information – that is not unfair surprise. Moreover, as we are still approximately 50 days from trial, no

"alleged" violation has had a substantial influence on the jury. Thus, the defendant has not and cannot establish prejudice under Rule 16.

Of course, even if the defendant had shown a failure to disclose, Rule 16(d)(2) offers the Court a variety of remedies for a failure to comply, including ordering additional discovery or inspection, granting a continuance, and entering any other order that is just under the circumstances. The Draconian remedy of exclusion sought by the defendant under Rule 16(d)(2)(C) only applies, on its own terms, to *undisclosed* evidence. This is not a case where *no* disclosure was filed and the defendant is surprised at trial. *Cf. United States v. Causey*, 748 F.3d 310, 319 (7th Cir. 2014) ("Because Causey admittedly did not file the required Rule 16 disclosure, the district court was within its discretion to exclude the expert testimony"). This is a case where the United States has made a disclosure approximately 85 days before trial, and the defendant seeks to bar the disclosed expert testimony based on its alleged inadequacy.

By comparison, the Seventh Circuit upheld a district court's refusal to bar fingerprint evidence in a case where the expert was disclosed only 10 days before trial. *United States v. Stevens*, 380 F.3d 1021, 1025 (7th Cir. 2004). As in this case, the prosecution in *Stevens* turned over the report of a fingerprint expert as soon as it was produced, but the defendant argued that the government should have conducted the fingerprint analysis in a more timely manner. The Seventh Circuit found that the government did not violate Rule 16 because it turned over the expert report as soon as it existed. *Id.* at 1025-26.

Moreover, the Seventh Circuit concluded that, even if the government had violated Rule 16, the appropriate remedy was not exclusion of the evidence because the defendant could not show he was prejudiced.[8] *Id.* at 1026. Further, as noted in *Stevens,* any such prejudice that did exist could be addressed through the other means set forth in Rule 16 without interfering with the truth-seeking function of the jury and preventing it from considering relevant evidence. *See In re U.S.,* 614 F.3d 661, 666 (7th Cir. 2010) (issuing writ of mandamus directing district court to admit fingerprint evidence and related expert testimony it had excluded because it was a disproportionate sanction for discovery violation); *United States v. Herrera*, No. 09-3717, 2010 WL 730150, at *2 (7th Cir. Mar. 3, 2010) (holding, in interlocutory appeal, that exclusion of the government's fingerprint evidence was too drastic a remedy for Rule 16 violation).

Just like the Court, the prosecution has a duty to ensure that the defendant receives a fair trial. *See United States v. Smith*, 674 F.3d 722, 729 (7th Cir. 2012) (citing *Berger v. United States*, 295 U.S. 78, 88 (1935)). Therefore, the United States invites any requests for additional information from the defendant and will be more than happy to sit down with defense counsel – as it has already done on several occasions – and ensure the defendant has all the information he needs regarding the expected expert testimony prior to trial. Of course, if the defendant is not satisfied with the prosecution's responses, he may continue to seek remedies from this Court pursuant to Rule 16(d)(2), including

---

[8] Stevens was sentenced to life imprisonment, the same potential sentence faced by the defendant in the current posture of this case.

requesting pretrial voir dire of the experts, *see, e.g., United States v. Beavers*, 756 F.3d 1044, 1054 (7th Cir. 2014) (finding voir dire an appropriate remedy when summaries "sketchy on details"), additional time to file pretrial motions or disclose his own experts,[9] or a continuance of the currently scheduled trial date.[10] Only if these remedies would fail to address the defendant's alleged prejudice would the "last resort" of barring expert testimony and suppressing the truth be warranted.

WHEREFORE, the United States of America respectfully requests that this Court deny the defendant's motion to bar the United States from introducing any expert testimony during the trial of this matter.

Respectfully submitted,

JOHN S. CHILDRESS
UNITED STATES ATTORNEY

s/ Eugene L. Miller
Eugene L. Miller, Bar No. IL 6209521
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone:  217/373-5875
Fax:  217-373-5891
eugene.miller@usdoj.gov

---

[9] This Court has not yet set a deadline for the defendant to comply with the United States' request that he disclose his experts pursuant to Rule 16(b)(1)(C).

[10] As noted, *supra*, an unopposed defense motion to continue is anticipated if the United States files notice that it intends to seek a sentence of death, which would render the prejudice analysis based on the timeliness of the disclosure moot.

19

**CERTIFICATE OF SERVICE**

I hereby certify that on January 9, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to the all CM/ECF participants.

                                        s/ Eugene L. Miller
                                        Eugene L. Miller, Bar No. IL 6209521
                                        Assistant United States Attorney
                                        201 S. Vine St., Suite 226
                                        Urbana, IL 61802
                                        Phone: 217/373-5875
                                        Fax: 217-373-5891
                                        eugene.miller@usdoj.gov