E-FILED
Wednesday, 07 February, 2018  09:48:20 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.17-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION FOR RECUSAL UNDER 28 U.S.C. § 455(a)[1]**

NOW COMES the Defendant, BRENDT A. CHRISTENSEN, by and through his attorneys, ROBERT TUCKER, GEORGE TASEFF and ELISABETH POLLOCK, and moves the Court to recuse itself under 28 U.S.C. § 455(a), and in support thereof states as follows:

**INTRODUCTION**

This motion seeks the Court's recusal under 18 U.S.C. § 455(a), based upon the appearance of partiality that has resulted from the Court's sealing from the parties the letter docketed at Docket Entry #32, the subject matter of the letter, and the Court's subsequent ruling on Mr. Christensen's motion to continue. Section 455(a) states: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." "The goal of

---

[1] This motion is being filed under seal as it discusses in detail the letter docketed at Docket Entry # 32, and that letter remains sealed as of the time of the filing of this motion. Mr. Christensen has contemporaneously filed a motion to unseal Docket Entry # 32 and, if that motion is granted, to unseal this motion as neither meet the requirements to be sealed.

section 455(a) is to avoid even the appearance of partiality." *Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847, 860 (1988) (internal quotations and citations omitted). Accordingly, when there is an appearance of partiality, § 455(a) requires recusal "whether or not the judge is actually biased." *In re U.S.*, 572 F.3d 301, 312 (7th Cir. 2009).

Mr. Christensen is not alleging that the Court is actually biased or partial. This motion is based solely on the appearance of partiality that has resulted from the Court's handling of Docket Entry #32.[2]

## PROCEDURAL BACKGROUND

On the evening of June 9, 2017, Yingying Zhang, a Chinese National and International Scholar at the University of Illinois was reported missing by a colleague from the University. Local police and the FBI began investigating Ms. Zhang's disappearance with the investigation quickly focusing on Mr. Christensen. On June 30, 2017, a criminal complaint was filed against Mr. Christensen charging him with kidnapping Ms. Zhang in violation of 18 U.S.C. § 1201. (R. 1). Mr. Christensen initially hired private counsel. (R. 4). Following a detention hearing, Mr. Christensen was ordered detained pending trial. (R. 11).

On July 12, 2017, a federal grand jury returned an indictment against Mr. Christensen charging him with kidnapping Ms. Zhang in violation of 18 U.S.C. § 1201. (R. 13). On July 20, 2017, United States Magistrate Judge Long arraigned Mr.

---

[2]As the Court did not indicate otherwise in its order granting Mr. Christensen's motion for access to Docket Entry #32, Mr. Christensen has assumed the Court does not personally know the authors of the letter or have any relationship with them personally, professionally, or through any organization or association. If Mr. Christensen is wrong, this would heighten the appearance of partiality, and might raise concerns regarding actual bias.

Christensen and entered a scheduling order setting a pretrial conference for August 28,

2017, and a trial date of September 12, 2017. (R. 16). On August 23, 2017, privately

retained counsel and the government filed an "AGREED MOTION TO CONTINUE,"

asking the trial be continued and the Court hold a status conference rather than a

pretrial conference on August 28, 2017. (R. 18). The Court obliged, holding a hearing on

the motion to continue on August 28, 2017, rather than a pretrial conference. (Minute

Entry dated 08/28/2017) According to the minute entry entered after the hearing, the

parties acknowledged that the government had not yet provided all of the discovery to

the defense, and the government informed the Court of its intent to seek a superseding

indictment. *Id*. The Court granted the motion to continue and set a new pretrial

conference date of February 12, 2018, and a trial date of February 27, 2018.

On September 1, 2017, Mr. Christensen's privately retained counsel filed a

motion to withdraw. (R. 20). The motion was premised on the likelihood of a

superseding indictment charging a death eligible offense being filed in the near future

and Mr. Christensen's inability to pay the attorneys' fees necessary for private counsel

to represent him in a capital case. *Id*. On September 8, 2017, the Court held a hearing on

the motion to withdraw and, after government counsel confirmed they would seek a

superseding indictment charging a death eligible offense, granted private counsels'

motion to withdraw. (Minute Entry dated 09/08/2017). The Court appointed the

Federal Public Defender's Office to represent Mr. Christensen on September 12, and, on

September 14, 2017, appointed Mr. Tucker as Learned Counsel and Lead Counsel.

(Minute Entries dated 09/12 and 09/14/2017).

On October 3, 2017, a superseding indictment was filed against Mr. Christensen charging him with kidnapping resulting in death in violation of 18 U.S.C. § 1201(a)(1) and two counts of making false statements to the F.B.I. in violation of 18 U.S.C. § 1001. (R. 26). The superseding indictment also included a Notice of Special Findings making death an authorized sentence for the kidnapping offense. Magistrate Judge Long arraigned Mr. Christensen on the superseding indictment on October 11, 2017. At the arraignment Judge Long informed the parties that the February 12, 2017, pretrial and February 27, 2018, trial dates remained.

On October 24, 2017, undersigned counsel filed a motion to continue the February 12, 2018, pretrial and the February 27, 2018, trial dates, which provided a period of approximately five months from first meeting their client to the commencement of trial and less than five months from the filing of the capital indictment. (R. 29). The motion to continue cited extensively to the American Bar Association (ABA) Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases issued in February 2003. Mr. Christensen noted that both the Supreme Court of the United States and the Seventh Circuit have relied upon the ABA's guidelines in ruling on claims of ineffective assistance of counsel in death penalty cases, making consideration of the guidelines appropriate. *Id*. Mr. Christensen further informed the Court that appendix 6A to Vol. 7, Part A of the *Guide to Judiciary Policy* recommends that all attorneys appointed in federal capital cases comply with the ABA's 2003 Guidelines. *Id*. at 3.

Mr. Christensen's motion to continue described in detail the ethical obligations of

4

defense counsel representing a defendant potentially facing a sentence of death. Among those duties is the duty to immediately begin an in-depth mitigation investigation as the information gathered during that investigation may "convince the prosecutor to forego pursuit of a death sentence." Additionally, Mr. Christensen pointed out that the Department of Justice Death Penalty Protocol requires prosecutors seeking authorization to seek the death penalty to "give counsel for the defendant a reasonable opportunity to present information for the consideration of the United States Attorney or Assistant Attorney General which may bear on the decision whether to seek the death penalty." *Id*. Further, the motion to continue pointed out that the Department of Justice normally needed at least 90 days from the time it receives the U.S. Attorney's recommendation and supporting memorandum to determine whether a Notice of Intent to Seek Death should be filed. *Id*. Since the scheduled trial date was less than five months from the date of the superseding indictment, and defense counsel had only been assigned Mr. Christensen's case for a month, Mr. Christensen reasonably requested a continuance of the trial date to conduct the necessary mitigation investigation to effectively participate in the authorization process and also prepare for trial.

On November 2, 2017, the government filed a response opposing Mr. Christensen's motion to continue. (R. 30). The government first argued it would be ready to proceed to trial on February 27, 2018, if the Attorney General decided not to seek the death penalty. Second, the government argued Mr. Christensen had no enforceable right to provide information to the Department of Justice under the

Department's Death Penalty Protocol. Third, the government argued that if it did file a notice of its intent to seek death it would not object to a continuance of the February 27, 2018, trial date. *Id*.

The same day the government filed its response to Mr. Christensen's motion to continue Mr. Christensen filed a motion for leave to file a reply to the government's response. (R. 31). On November 3, 2017, the Court granted the motion, giving Mr. Christensen until November 7, 2017, to file a reply. (Text Order 11/03/2017).

On November 7, 2017, before Mr. Christensen filed his reply, a sealed document was filed in the case. (R. 32). After receiving the Notice of Electronic Filing on November 7th, counsel for Mr. Christensen immediately sought to examine the contents of Docket Entry # 32 and was told access was denied. When counsel inquired again at the Clerk's Office at a later time, she was told "Chambers" had instructed the Clerk's Office that neither party was permitted to see the contents of Docket Entry # 32.

Mr. Christensen filed a detailed reply to the government's response to his motion to continue, refuting the government's position that the Court could treat the case as an "ordinary" case unless and until the government filed a notice of intent to seek death. (R. 33). The Reply explained that, as set forth in the ABA Guidelines and the *Guide to Judicial Policy*, neither the Court nor counsel could treat the case as a routine, non-capital case simply because a notice of intent to seek death had not yet been filed. *Id*. at 4-6, 10.

Mr. Christensen pointed the Court to the ABA Guidelines sections that require defense counsel to treat a potentially capital case as a capital case unless and until the government states it is *not* seeking death. *Id*. 10. Additionally, Mr. Christensen's reply

quoted § 670 of Volume 7, Part A, Chapter 6 of the *Guide to Judiciary Policy* which encourages courts handling potential capital cases to be flexible in scheduling to allow the defense to have sufficient time to conduct a mitigation investigation to fully maximize the ability of defense counsel to convince the Department of Justice not to seek death. *Id*. at 14-15. Mr. Christensen highlighted § 670's statements that "[t]he schedule should be flexible and subject to extension for good cause at the request of either party," and that "[t]he schedule should allow reasonable time for counsel for the parties to discharge their respective duties with respect to the question of whether the death penalty should be sought," and that "scheduling extensions may be necessary because the full development of facts related to guilt and aggravating and mitigating factors may continue even after the case is submitted to the DOJ for review." *Id*. at 14-15.

Despite these clear recommendations in the *Guide*, and the ABA Guidelines, the Court ruled on Mr. Christensen's motion as if his case was an ordinary, noncapital felony case. The Court relied upon the seven factor test set forth in *United States v. Miller*, 327 F.3d 598, 601 (7th Cir. 2003), a noncapital case, to determine if a continuance should be granted. (R. 34 at 4). And, in applying those factors the Court stated "[i]mportantly, this case is *not* a death penalty case in its current posture." *Id*. at 5 (emphasis in original). The Court further stated "[b]oth parties should be aware that underlying the court's ruling on Defendant's motion to continue is the premise that the prosecution is not seeking the death penalty. Should the Government receive authorization and elect to pursue the death penalty, the court would welcome a

7

renewed motion to continue the trial from Defendant (or the Government) in order for appropriate dates to be established under those circumstances." *Id.* at 9.

Oddly, and importantly given the content of the letter that is Docket Entry # 32, after examining the *Miller* factors the Court stated "in addition to the *Miller* factors" it had to consider the "spirit and purpose" of the Speedy Trial Act when ruling on a motion to continue a criminal trial. (R. 34 at 8) The Court cited no authority for this proposition. The Court then considered an additional factor, one not contained in *Miller*, the public's interest in a speedy trial. (R. 34 at 8 and n.6). The Court then opined, a trial in February "will recognize the public's interest in a resolution of this case while also protecting Defendant's rights." *Id.* at 9.

The Court's order denying the motion to continue set a scheduling order requiring pre-trial motions to be filed by January 15, 2018. *Id.* at 10. On January 15, 2018, Mr. Christensen filed a "Motion to Permit Counsel to Access Docket Entry # 32." (R. 37). The motion set forth the relevant case law on the procedures courts must follow before sealing documents and the parties' rights to access to documents filed in their case. Mr. Christensen argued the Court had not followed the proper procedures before ordering Docket # 32 sealed, and that he should have access to the document.

On January 18, 2018, the Court entered a sealed order granting Mr. Christensen's motion for access to Docket Entry # 32. (R. 52). The order states as follows:

> The docket entry in question, # 32, is an unsolicited letter (and the accompanying envelope). The documents were sealed from concern over the privacy of the author of the letter. The court unequivocally states that this letter had no impact upon any ruling of the court whatsoever." *Id.*

The letter is from a husband and wife from Champaign, Illinois. After thanking the Court for its "long-time service to our community," the letter asks the Court not to move the trial date out of concern for the victim's family.  The writers state that "[t]he emotional stress of not knowing the state of nor the whereabouts of their beloved daughter has been incredibly heavy on this father, mother, brother, and fiancé." The letter concludes:

> We ask you to hold firm on Christensen's trial date in February. Please do not allow it to be delayed further. Even though the truth will no doubt be painful, these dear people at least need to know what happened so that they can escape the fog of terrible possibilities and find their peace.

(R. 32). The Motion to Continue was denied on November 15, 2017. (R. 34)

## THE CODE OF CONDUCT FOR UNITED STATES JUDGES

The Judicial Conference of the United States adopted the Code of Conduct for United States Judges on April 5, 1973. *Guide to Judicial Policy*, Vol. 2, Pt. A, Ch. 2, Introduction. The Code applies to United States circuit judges, district judges, Court of International Trade judges, Court of Federal Claims judges, bankruptcy judges, and magistrate judges. *Id.*

Canon 3(A)(4) of the Code states:

(4) A judge should accord to every person who has a legal interest in a proceeding, and that person's lawyer, the full right to be heard according to law. Except as set out below, a judge should not initiate, permit, or consider ex parte communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers. *If a judge receives an unauthorized ex parte communication bearing on the substance of a matter, the judge should promptly notify the parties of the subject matter of the communication and allow*

*the parties an opportunity to respond, if requested.* A judge may:

> (a) initiate, permit, or consider ex parte communications as authorized by law;
>
> (b) when circumstances require it, permit ex parte communication for scheduling, administrative, or emergency purposes, but only if the ex parte communication does not address substantive matters and the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication;
>
> (c) obtain the written advice of a disinterested expert on the law, but only after giving advance notice to the parties of the person to be consulted and the subject matter of the advice and affording the parties reasonable opportunity to object and respond to the notice and to the advice received; or
>
> (d) with the consent of the parties, confer separately with the parties and their counsel in an effort to mediate or settle pending matters.

*Guide to Judiciary Policy*, Vol. 2, Part A, Ch. 2, Canon 3(4) (emphasis added).

The letter the Court received and docketed at Docket Entry # 32 is an unauthorized ex parte communication. Once the Court became aware of the contents of the document, Canon 3(A)(4) mandated the Court promptly notify the parties of the subject matter of the document and allow the parties an opportunity to respond. The Court did not do so. Instead, the Court sealed the document and prevented the parties from accessing the document. Thereafter, the Court ruled on Mr. Christensen's motion to continue the trial date, the merits of which were the focus of the unauthorized ex parte communication contained in Docket Entry # 32. The Court denied the motion to continue, as urged by the authors of the letter and in direct conflict with the Judicial Conference policy on scheduling in potential death penalty cases and the ABA

Guidelines. The Court offered as a basis for its ruling the public's interest in a speedy trial.

## THE STANDARDS FOR JUDICIAL RECUSAL

Title 18 U.S.C. § 455(a) states "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Section 455(a) "asks whether a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits." *In Re Mason*, 916 F.2d 384, 385 (7th Cir. 1990). The test is objective. *Liteky v. United States*, 510 U.S. 540, 548 (1994). Recusal is required if a reasonable, well-informed observer would question the judge's partiality. *Hook v. McDade*, 89 F.3d 350, 353-54 (7th Cir. 1996). "The goal of section 455(a) is to avoid even the appearance of partiality." *Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847, 860 (1988) (internal quotations and citations omitted). Since § 455(a) is directed at the appearance of partiality, if such appearance exists recusal is required "whether or not the judge is actually biased.'" *In re U.S.*, 572 F.3d 301, 312 (7th Cir. 2009) (quoting *United States v. Balistrieri*, 779 F.2d 1191, 1204 (7th Cir. 1985), overruled on other grounds by *Fowler v. Butts*, 829 F.3d 788 (7th Cir. 2016)).

Given the Court's handling of Docket Entry # 32, the contents of the letter, and the Court's ruling on Mr. Christensen's motion to continue, a reasonable, well-informed observer would question the Court's impartiality. A reasonable, well-informed observer in this case would see the following: 1) the Court received an ex parte communication specifically asking it not to grant Mr. Christensen's motion to continue; 2) contrary to

11

the Canons of Judicial Conduct, the Court concealed the ex parte communication from Mr. Christensen; 3) the Court denied Mr. Christensen's motion to continue to protect the public's interest in a speedy trial, disregarding the reasoning of the Judicial Conference of the United States and the American Bar Association. That series of events would lead the reasonable, well-informed observer to question the Court's impartiality.

A.     The Court's handling of the ex parte communication.

Given the intense media scrutiny this case has received, it is not surprising the Court received a letter from someone in the community expressing opinions about the case and its proper handling.[3] The local media reported on Mr. Christensen's motion to continue, http://www.news-gazette.com/news/local/2017-10-24/accused-kidnappers-new-attorneys-ask-more-time-prepare-defense.html, and the government's response. http://www.news-gazette.com/news/local/2017-11-02/updated-feds-oppose-postponing-accused-kidnappers-trial-%E2%80%94-now.html. The News-Gazette article reporting on the government's response informed the reader that the Court had given Mr. Christensen until the following Tuesday, November 7, 2017, to file a reply to the government's response. *Id*. The Court received Docket Entry # 32 on the very day Mr. Christensen's reply was due.

While the Court's receipt of an ex parte communication regarding this case is no surprise, the Court's handling of this letter was a departure from what would have been expected under the circumstances. The Code of Judicial Conduct requires a judge who

---

[3]Mr. Christensen set forth the massive amount of media attention this case has received in his Motion to Change Venue. (R. 41).

receives an unauthorized ex parte communication to "promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested." Canon 3(A)(4). A textbook example of the appropriate handling of an ex parte communication is delineated in *In re S.D. Benner III, L.L.C.,* 2014 WL 4536645 *1 (Bankr. W.D. Mich. Sept. 9, 2014). In that case, the judge received three email messages and numerous attachments directly from the debtor in the case. *Id.* The court considered those emails to be unauthorized ex parte communications, and citing to Canon 3(A)(4), undertook curative measures immediately. *Id.* Specifically, the court refrained from viewing the attachments in order to mitigate the adverse effect of the ex parte communication and directed the clerk to enter each email on the docket to give the interested parties "ample notice of the substance of the communications and an opportunity to review them to the same extent the court has reviewed them." It then allowed the parties an opportunity to respond, if they were so inclined. *Id.*

The Court in this case did the opposite of what Canon 3(A)(4) requires. Rather than notifying the parties of the subject matter of the ex parte communication, the Court sealed the document from the parties, and then ruled on the motion that was the subject matter of the ex parte communication. This insistence on secrecy makes "matters worse" as it suggests "knowledge of . . . impropriety." *United States v. Microsoft Corp.,* 253 F.3d 34, 112 (D.C. Cir. 2001). While the Court may have had completely innocent motivation when sealing the ex parte communication from the parties, the appearance of the Court's actions suggests impropriety.

The Court's explanation for its actions, "concern over the privacy of the author of

the letter," does not remove the appearance of partiality. First, the authors of the letter did not ask the Court for privacy. Second, the privacy of the authors could have been protected by simply redacting their names. The authors' address and signatures could have been redacted under Local Rule 49.12. Redacting the authors' names would have protected their identity from being revealed to the public (again, something they did not request), and allowed Mr. Christensen to learn the subject matter of the communication and have an opportunity to respond. Again, the insistence on secrecy makes matters worse; it suggests knowledge of impropriety. *Microsoft Corp.,* 253 F.3d at 112.

The Court's handling of Docket Entry # 32 raises the appearance that the Court did not want Mr. Christensen to know members of the public were directly contacting the Court and advocating denial of Mr. Christensen's motion to continue. That in-and-of-itself raises the appearance of partiality. Coupling the content of the ex parte communication with the Court's actual ruling on the motion to continue, and the reasons given in the ruling, heightens the appearance of partiality.

B.      The Court's Ruling on the Motion to Continue.

The Court based its denial of the motion to continue on the fact that the DOJ had not yet filed a notice of intent to seek death. (R. 34: "Importantly, this case is *not* a death penalty case in its current posture….[B]oth parties should be aware that underlying the court's ruling on Defendant's motion to continue is the premise that the prosecution is not seeking the death penalty."). A reasonable, well-informed observer would be puzzled by the Court's reasoning as it directly contradicts the official policy of the

14

Judicial Conference of the United States.

"The *Guide to Judiciary Policy (Guide)* is a repository of the federal judiciary's administrative policies, as determined by the Judicial Conference of the United States or Director of the Administrative Office of the U.S. Courts (AO), or as mandated by statute or other legal requirement." *Guide*, Vol. 1, Ch. 1, § 110. Volume 7, Part A, Chapter 6 of the *Guide* is solely devoted to Representation in Death Penalty Cases. Section 670 of Vol. 7, Pt. A, Ch. 6 is entitled "Scheduling of Federal Death Penalty Case Authorization to Control Costs" and states:

> (a) Within a reasonable period of time after appointment of counsel under 18 U.S.C. § 3005, and only after consultation with counsel for the government and for the defendant (including, as appropriate, in an ex parte application or proceeding), the court should establish a schedule for resolution of whether the government will seek the death penalty.

> (b) This schedule should include dates for:

>> (1) the submission by the defendant to the U.S. attorney of any reasons why the government should not seek the death penalty;

>> (2) the submission by the U.S. attorney to the appropriate officials of the DOJ of a recommendation and any supporting documentation concerning whether the death penalty should be sought; and

>> (3) filing of a notice under 18 U.S.C. § 3593(a)(link is external) that the government will seek the death penalty, or notification to the court and the defendant that it will not.

> (c) The schedule should be flexible and subject to extension for good cause at the request of either party (again, as appropriate, in an ex parte application or proceeding).

> (d) The schedule should allow reasonable time for counsel for the parties to discharge their respective duties with respect to the question of whether the death penalty should be sought, with due regard to:

  • the factual complexity of the case;
  • the status of any continuing investigation of the crimes and related criminal conduct;
  • the anticipated or actual progress of discovery;
  • the potential for successful plea negotiations; and
  • any other relevant factors.

(e) It is also recognized that scheduling extensions may be necessary because the full development of facts related to guilt and aggravating and mitigating factors may continue even after the case is submitted to the DOJ for review.

The Court's denial of Mr. Christensen's motion to continue because the case was not yet a death penalty case ignores every aspect of § 670. The entire premise of § 670 is that the case must be scheduled as a death penalty case during the authorization process. Furthermore, Appendix 6A to Vol. 7, Pt. A, Recommendations & Commentary Concerning the Cost and Quality of Defense Representation (Updated Spencer Report, September 2010), warns that "Courts should ensure . . . that whatever decision-making timetables are imposed are sufficient to allow for meaningful pre-authorization advocacy by counsel for the defendant. Where authorization to seek the death penalty is significantly likely, the prosecution and defense should be given every opportunity to explore the reasons for not authorizing or for negotiating an early disposition of the case." *Guide*, Vol. 7, Pt. A, Ch. 6, Appx 6A at 106-07.

The Court's actions in ignoring the official policy of the Judicial Conference of the United States would cause any reasonable, well-informed observer to question why the Court ignored that policy. When the observer learned that the Court received a letter from members of the community asking it not to continue the trial date, and that

the Court withheld that information from Mr. Christensen in violation of the Canons of Judicial Conduct, and then denied the motion to continue in part to protect the public's right to a speedy trial, the observer would reasonably conclude the Court is biased against Mr. Christensen. While the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* certainly protects the public's right to a speedy trial, given the Court's handling of Docket Entry # 32 and its subject matter, the Court's prominent reliance on this fact in denying Mr. Christensen's motion to continue sends the message of partiality. The events appear as follows: members of the public make an ex parte request to the Court to deny the motion to continue; the Court, in violation of the Canons of Judicial Conduct conceals the request from the defendant; the Court then denies the motion to continue using reasoning contrary to the official policy of the Judicial Conference, and in so doing highlights the need to protect the public's right to a speedy trial. This series of events would lead any reasonable, well-informed observer to question the Court's partiality.

## CONCLUSION

The fact that the Court is not actually biased against Mr. Christensen is irrelevant. Recusal under § 455(a) is based on the *appearance* of partiality, not actual partiality. Mr. Christensen is not alleging the Court was or is biased against him. This motion is based on the appearance of partiality that has arisen from the Court's handling of Docket Entry # 32, its contents, and the reasons given by the Court for denying the motion to continue. Because there is now an appearance of partiality, the Court must recuse itself.

WHEREFORE, the Defendant respectfully requests that this Court recuse itself

from presiding over this case.

Respectfully submitted,

BRENDT A. CHRISTENSEN, Defendant

By:    /s/Elisabeth R. Pollock                    /s/ George Taseff
       Assistant Federal Public Defender          Assistant Federal Public Defender
       300 West Main Street                        401 Main Street, Suite 1500
       Urbana, IL 61801                            Peoria, IL 61602
       Phone: 217-373-0666                         Phone: 309-671-7891
       FAX:   217-373-0667                         Fax:     309-671-7898
       Email: Elisabeth_Pollock@fd.org            Email: George_Taseff@fd.org

       /s/ Robert Tucker
       Robert L. Tucker, Esq.
       7114 Washington Ave
       St. Louis, MO 63130
       Phone: 703-527-1622
       Email: roberttuckerlaw@gmail.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 7, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system as a Sealed Document, which will send notification of such filing to Assistant United States Attorneys Bryan D. Freres and Eugene L. Miller. A copy will be separately conveyed to the Government as required by local rule.

<u>/s/Elisabeth R. Pollock</u>
Assistant Federal Public Defender
300 West Main Street
Urbana, IL  61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org