UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>)<br>Plaintiff,  )<br>v.  )<br>)<br>BRENDT A. CHRISTENSEN,  )<br>)<br>Defendant.  ) | Case No. 17-CR-20037 |

### ORDER

Defendant, Brendt A. Christensen, filed a Motion to Unseal Docket Entry #32 (#61) and a Motion to Recuse (#63) on February 7, 2018. The government filed its Responses (#68, 69) on February 14, 2018. For the following reasons, Defendant's Motion to Recuse (#63) is DENIED. Defendant's Motion to Unseal Docket Entry #32 (#61) is GRANTED.

### BACKGROUND

On June 30, 2017, a criminal complaint was filed against Defendant alleging that he committed the kidnapping of Yingying Zhang. Defendant was arrested that same day. On July 3, 2017, private counsel entered their appearance on Defendant's behalf. On July 5, 2017, following a hearing, Defendant was ordered to remain detained pending trial. On July 12, 2017, Defendant was indicted on one count of kidnapping in violation of 18 U.S.C. § 1201(a)(1). Defendant entered a plea of not guilty and a jury trial was set for September 12, 2017.

On August 28, 2017, a pretrial conference was held. Defendant had previously filed a Motion to Continue (#18) the trial date, which the government joined. During the hearing, the court granted the motion, vacating the final pretrial and jury trial dates. The court set a new final pretrial date of February 12, 2018, and a jury trial date of February 27, 2018.

On September 8, 2017, twelve days after the previous hearing, the court granted private counsel's Motion to Withdraw (#20) as attorney and appointed the Federal Defender's Office to represent Defendant. The court ordered that, adhering to a previously entered protective order, the government would provide the Federal Defender's Office discovery by the end of the next week. The court also noted that private counsel was authorized to turn over to the Federal Defender everything in their possession.

Due to the possibility of this matter becoming a death penalty case, Defendant moved for the appointment of death penalty certified Learned Counsel. On September 14, 2017, this court granted the motion and appointed Robert L. Tucker as Learned Counsel in this case.

On October 3, 2017, a superseding indictment was filed alleging Defendant committed a kidnapping that resulted in death in violation of 18 U.S.C. § 1201(a)(1), and two counts of providing false statements in violation of 18 U.S.C. § 1001(a)(2). Defendant was arraigned on the superseding indictment on October 11, 2017.

On October 24, 2017, Defendant filed a Motion to Continue Final Pretrial and Trial Dates (#29), seeking to vacate the February 12, 2018 final pretrial, and February 27, 2018 jury trial dates, and to have the trial date moved to October 2018.

Defendant made multiple arguments in support of his motion for a continuance: the ends of justice require a substantial continuance; in order to provide Defendant with effective assistance of counsel, counsel must have sufficient time to investigate and prepare; the government had delayed production of Rule 16 discovery; defense counsel was required to treat the case as capital at that point, because professional standards required that "once a client is detained under circumstances in which the death penalty is legally possible, counsel should proceed as if it will be sought ... [and] must continue to treat the case as capital until the imposition of the death penalty is no longer a legal possibility." Defendant argued that these considerations, when analyzed under the Seventh Circuit's seven non-exhaustive factors for determining whether to grant a continuance motion, required the granting of his motion to continue.

The government filed its Response (#30) on November 2, 2017. The government argued that because the government had not indicated it would seek the death penalty, the trial date of February 27, 2018 should be kept. The government also noted that Defendant had presented no compelling reasons for why, absent the death penalty being sought, the trial should be moved from the February 2018 date.

On November 7, 2017, the court received and opened an unsolicited letter, sent directly to chambers from a community member, asking the court to "hold firm" to the February trial date and "not allow [the trial] to be delayed further." The court ordered the letter docketed, but sealed.[1] That same day, Defendant filed his Reply (#33) to the government's Response.

On November 15, 2017, this court entered an Order (#34) denying Defendant's Motion to Continue Trial. In determining whether to grant the continuance, the court applied the non-exhaustive seven-factor list articulated by the Seventh Circuit in *United States v. Miller*, 327 F.3d 598, 601 (7th Cir. 2003). The court found that, since the case was not a capital case, five and one half months was sufficient time for counsel to prepare for trial in a case of this nature. Along with the *Miller* factors, the court considered the purpose and spirit of the Speedy Trial Act, including the public's interest in the speedy resolution of justice. The court conspicuously noted, however, that were this to become a death penalty case, "the court would welcome a renewed motion to continue the trial from Defendant (or the government) in order for appropriate dates to be established under those circumstances."

---

[1] The court expected that the sealed letter would be electronically provided to the parties. However, through an oversight, the court was unaware that the latest version of the electronic filing system ("ECF") did not automatically provide copies of this sealed filing to the parties. Instead, with this version of ECF, it is necessary for a human to intervene and for the document to be e-mailed to the parties.

On January 15, 2018, Defendant filed a Motion to Permit Counsel to Access Docket Entry #32 (#37), which this court granted as soon as the motion was reviewed three days later.

On February 7, 2018, Defendant filed the instant Motion to Unseal Docket Entry #32 (#61) and Motion to Recuse (#63).

ANALYSIS

Defendant has moved the court to recuse itself under 28 U.S.C. § 455(a), based on the "appearance of partiality that has resulted from the court's sealing from the parties the letter docketed as Docket Entry #32, the subject matter of the letter, and the court's subsequent ruling on the motion to continue."

The Seventh Circuit has written, concerning recusals under § 455(a):

> Section 455(a) of the Judicial Code provides: Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned. 28 U.S.C. § 455(a). The Supreme Court has explained that the goal of section 455(a) is to avoid even the appearance of partiality. Accordingly, we have required recusal whenever there is a reasonable basis for a finding of an appearance of partiality under the facts and circumstances of the case. Recusal is required when a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits.

*In re U.S.*, 572 F.3d 301, 308 (7th Cir. 2009) (internal citations and quotes omitted).

The Seventh Circuit has further warned that "needless recusals exact a significant toll" and judges "therefore should exercise care in determining whether recusal is necessary, especially when proceedings already are underway." *In re U.S.*, 572 F.3d at 308.

Under the case law, there is no reason for the court to recuse itself in this instance. A party seeking recusal must present "compelling evidence" of bias so that a reasonable person would be convinced the judge is biased. *United States v. Modjewski*, 783 F.3d 645, 649 (7th Cir. 2015). Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. *Liteky v. United States*, 510 U.S. 540, 555 (1994). The Supreme Court, when discussing judicial rulings, further elaborated:

> In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal.
>
> Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Liteky*, 510 U.S. at 555.

The only alleged "appearance of partiality" under the facts and circumstances of this case was the court's sealing of an unsolicited, non-party letter from a member of the community that urged the court not to continue the trial while the motion to continue was pending.

The basis for the court's ruling on the motion to continue rested on the dictates of case law, and not in any way on the unsolicited letter. In fact, in its Order (#52) on the Motion to Permit Access to Docket Entry #32, the court made clear that the letter had absolutely no impact on its ruling on the motion to continue.

Nevertheless, Defendant, in his motion for recusal, chose to ignore the court's clear declaration that the letter had no impact, and to claim the appearance of some type of partiality. Defendant's entire argument is premised upon the idea that the court was somehow influenced, by the letter, to deny the motion to continue, or at least *appears* to have been, even if was not influenced. The court will not relitigate the motion to continue in this order. The reasons for the court's ruling denying the motion to continue are fully set forth in its Order (#34) of November 15, 2017.

The facts as stated here do not constitute grounds necessary for recusal under § 455(a). In other cases where there were arguably stronger grounds for recusal due to the judge's relationship with counsel or parties, courts have denied motions to recuse under § 455(a).

For example, in *United States v. Kelhbeck*, 766 F.Supp. 707 (S.D. Ind. 1990), the court found recusal under § 455(a) was not required even though the court was personally acquainted with the defendant and a witness in the case. *Kehlbeck*, 766 F.Supp. 707 at 712-13. *Kehlbeck* collected numerous other similar cases: *Baker v. Detroit*, 458 F.Supp. 374, 375 (E.D. Mich. 1975) (judge's friendship with Mayor, who was nominal party to lawsuit, did not require recusal); *Parrish v. Board of Commissioners of the*

*Alabama State Bar*, 524 F.2d 98, 104 (5th Cir. 1975), cert. denied, 425 U.S. 944 (1976) (the fact that judge was acquainted with witnesses and defense counsel did not require recusal); *Hunt v. Mobil Oil Corp.*, 557 F.Supp. 368, 377 (S.D.N.Y.), aff'd 742 F.2d 1438 (2d Cir. 1983) (judge's friendship with plaintiffs' former counsel, who had a falling out with plaintiffs, did not prejudice judge against plaintiffs); *Miller Indus. Inc. v. Caterpillar Tractor Co.*, 516 F.Supp. 84, 87 (S.D. Ala. 1980) (judge who had pooled investments with former law partners need not recuse himself from case where former law partners' law firm served as plaintiff's counsel); *Smith v. Pepsico, Inc.* 434 F.Supp. 524, 525–26 (S.D. Fla. 1977) (judge refused to recuse from case in which former law clerk served as plaintiff's attorney). The facts of the instant case do not come close to the suggestion of partiality presented by the personal relationships in the cases collected by the *Kehlbeck* court.

Interestingly, it is Defendant himself who is attempting to create the appearance of partiality where there is none, straining to connect the letter, the court's sealing of the letter, and the court's ruling on the motion to continue.[2] The court's ruling was based entirely on case law, statutes, and the interests of justice, and had nothing to do with the content of an unsolicited letter sent in by a private citizen unknown to the court. To try and connect the court's ruling to a completely inconsequential letter (which is of similar

---

[2] Defendant places much importance on being told by the clerk's office, at the time the letter was docketed and sealed, that the court would not allow the parties access to the physical letter. As indicated, this was the result of a misunderstanding by the court as to the operation of the current version of the ECF system since the court believed the letter was previously provided to the parties. Regardless, when Defendant moved for the letter to be unsealed, the court granted the request within days, as it would have at any time prior.

content to letters appearing, for example, in letters to the editor sections of newspapers) is to essentially ignore the Supreme Court's precedent and make the argument that a judicial ruling alone constitutes a valid basis for a bias or partiality motion, which, of course, it does not. See *Liteky*, 510 U.S. at 555.

Furthermore, applying the logic advanced by Defendant, if the court had granted the motion, the government could make the argument that the letter influenced the court in a *negative* direction, and thus the court should recuse itself. What if the letter had advocated granting the motion? What if the court had received two letters, each advocating a different position?

Moreover, a recusal on these grounds would set a dangerous precedent. Imagine a situation where a court observes protestors holding signs outside the courthouse. The signs advocate for a particular outcome on a matter currently pending before the court. The parties may not know that the judge saw these signs, but the judge knows. Should that judge recuse himself because he just happened to see signs containing a message that advocated a particular result? What if the judge overheard a public conversation about some aspect of a case and how it should be decided, or heard a portion of a talk radio program opining about a case? Again, should that judge recuse because of what happened to be overheard?

Following Defendant's logic could lead to the parties or other interested observers being able to game the judicial system. Were the court to recuse for the reasons argued by Defendant, it would give the power to any interested individual to

force a judge off a case by writing a letter to the court, or perhaps even to the local newspaper, advocating one way or the other on a pending motion. If the mere fact that a judge was exposed to such unsolicited communication or opinion could suffice for a recusal based on an appearance of impropriety, nearly every judge in the country would be frequently recusing themselves.

There is a strong presumption that judges are impartial, and this presumption of impartiality grows in large part from the fact that the practice of law is a profession, and the judicial office is one specialized manifestation of that profession. *Kehlbeck*, 766 F.Supp. at 712-13. As a professional, a judge is presumed to be capable of distinguishing his personal life from his professional obligations. *Kehlbeck*, 766 F.Supp. at 713. Judges are exposed to media and outside opinions on matters that may appear in front of them all of the time. Judges hold themselves to a high standard, however, in that those outside opinions, whether in the form of letters to the editor, unsolicited mail, television news, radio talk shows, news on the internet, or protestors holding signs, do not influence a judge's opinion on a legal matter.

The crux of Defendant's argument appears to be a tenuous connection of presumptions and conclusory statements. As best as the court can determine, Defendant argues that the mere sealing of the letter without copies being provided to the parties[3] suggested the court was apparently trying to hide something. This, the

---

[3]As stated, this was the result of a misunderstanding in the operation of the latest version of the ECF and was immediately remedied upon Defendant's filing of a motion seeking access.

argument vaguely suggests, makes the court appear partial because the letter touched on a matter pending before the court and the court subsequently ruled in the way urged by the letter (one of the two ways in which the court could rule).

Defendant's argument makes no logical sense. Indeed, by docketing the letter the court ensured that Defendant was aware of the letter's existence. If the court were truly influenced by the letter, and had become biased or partial against Defendant and wanted to be "secretive" and "conceal" the letter as suggested by Defendant, why would the court have docketed the letter at all, knowing that Defendant would notice the docketing and seek access to the sealed document? The answer is clear: the court did not intend to keep the letter from the parties. Once the court was made aware through the motion that the parties could not access the letter, the court granted the motion and Defendant was able to view the letter.

Defendant cites to the provision in the Code of Judicial Conduct delineating how judges should handle *ex parte* communications. The canon in question states, in relevant part:

> A judge should accord to every person who has a legal interest in a proceeding, and that person's lawyer, the full right to be heard according to law. Except as set out below, a judge should not initiate, permit, or consider *ex parte* communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers. If a judge receives an unauthorized *ex parte* communication bearing on the substance of a matter, the judge should promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested.

Code of Conduct for United States Judges, Canon 3(A)(4).

Defendant spends much of his motion to recuse focusing on whether this court properly handled an "*ex parte*" communication. Defendant, in citing to Canon 3(A)(4), specifically italicized the portion reading "[i]f a judge receives an unauthorized *ex parte* communication bearing on the substance of a matter, the judge should promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested."

Defendant then goes on to cite *In re S.D. Brenner III, LLC*, 2014 WL 4536645 (Bankr. W.D. Mich. Sept. 9, 2014), for an example of how a court should properly handle an *ex parte* communication. In that case, the debtor, without or against the advice of counsel, sent three emails directly to the court regarding his bankruptcy case. In that case, citing Canon 3(A)(4), the court directed the clerk to print each email, scan, and enter each email on the docket, to give the interested parties notice of the substance of the communications and the opportunity to review them.

Defendant's entire argument in this regard is without merit. The situation in the instant case is distinguishable from that presented in *Brenner*. The *ex parte* communication in *Brenner* was *sent by one of the parties*, which fits the traditionally understood definition of the term "*ex parte*."  Indeed, *ex parte* communication is defined as "[a] generally prohibited communication between counsel and the court when opposing counsel is not present." *Black's Law Dictionary* 597 (7th Ed. 1999); *Jordan v. United States Department of Labor*, 273 F.Supp.3d 214, 229 n.19 (D.D.C. 2017).

Unlike the communication in *Brenner* which was sent by a party to the case, the communication in question here, the letter, was a *non-party* communication that did not come from either of the parties in this case, but rather a random member of the public unknown to this court, and thus it is not an *ex parte* communication as that term is traditionally understood.

The Commentary to Canon 3(A)(4) extends the restriction on *ex parte* communications to include "communications from lawyers, law teachers, and others who are not participants in the proceeding[,]" but allows a judge to "consult with other judges or with court personnel whose function is to aid the judge in carrying out adjudicative responsibilities." Here, there was no "consultation" whatsoever between the court and the writers of the letter. Thus, even were Canon 3(A)(4) to apply in this situation, the court's actions did not violate the Canon because the court did not consider the letter in any way in reaching its decision on the motion to continue, nor did the court consult the writers of the letter, and the court later remedied any oversight by promptly making the letter available to counsel upon request by motion.[4]

If the court were to accept the argument advanced by Defendant, every time the court received, saw, or heard any type of communication concerning a case before the court, this would constitute an *ex parte* communication requiring the court to promptly notify the parties about the communication and allow the parties an opportunity to

---

[4] Further, as noted by the government, a violation of the Code of Judicial Conduct does not constitute automatic grounds for recusal. *In re Judicial Misconduct*, 91 F.3d 1416, 1418 (10th Cir. 1996) (the fact that a judge's conduct violates the Canons does not necessarily mean that it constitutes judicial misconduct).

respond, if requested. In short, the court would spend significant time memorializing "communications," notifying parties, and holding hearings in all of its cases unless the court was isolated from all television news programs, radio news programs, newspapers, and news on the internet, and made sure not to listen to anything while in public which could possibly be a "communication" involving any case before it. This makes no sense.

Finally, the defense overstates the court's denial of the motion to continue, acting as though the case was already a capital case at the time the motion was denied. This is simply not true. Indeed, the court stated that if the case became a case in which the government sought the death penalty, the court would welcome another motion to continue, which it did, and the court has granted the motion and continued the case.

To sum, the court received an unsolicited letter from a third party and placed it in the file under seal. Based upon this letter, and blatantly ignoring the court's statement that the letter had no impact on its decision, Defendant asks the court to recuse itself. Defendant has presented no "compelling evidence" of bias besides his own stretched interpretation of some of the facts to create the appearance of partiality out of thin air. The court finds that the motion to recuse amounts to a distraction from the matters at issue in this case. This would be a needless recusal, which the Seventh Circuit has cautioned courts to avoid. See *In re U.S.*, 572 F.3d at 308. This frivolous motion is DENIED.

*Motion to Unseal Docket Entry [32]*

Defendant has filed a Motion to Unseal Docket Entry #32 (#61), arguing that the public has a right to access judicial documents, that the document was relevant to matters pending before the court at the time it was filed, that the document affected the disposition of Defendant's motion to recuse, and that the public cannot understand the motion to recuse without access to the document that forms the basis for the motion. The government replies that it has no opposition to unsealing the letter, provided that pursuant to Federal Rule of Criminal Procedure 49.1(a) and Local Rule 49.12(A), appropriate redactions are made from the letter to address privacy concerns, including redacting any signatures, home addresses, or email addresses of an individual.

A district court has discretion in determining whether to seal portions of the record. *County Materials Corp. v. Allen Block Corp.*, 502 F.3d 730, 739 (7th Cir. 2007). Most documents filed in court are presumptively open to the public. *Bond v. Utreras*, 585 F.3d 1061, 1073 (7th Cir. 2009). However, the public's right to access court records is not unlimited, and a court may shield certain documents from the public when there is good cause to do so. See *Bond*, 585 F.3d at 1074.

The court believed it had good reason to seal the letter when it was received on November 7, 2017. The letter was unsolicited and sent by a random member of the community, whom the court does not know and, to the best of its knowledge, has never met. Because the court opened and read the letter, it decided, out of an abundance of caution, to docket the letter. However, the court also decided to seal the letter, both to protect the identity of the private citizen letter writer, and to avoid inadvertently

encouraging the public to write letters opining on the case in the hopes that their letters will be placed on the official court docket and have their importance (which to the court, again, is zero) inordinately magnified.

The issue the letter was concerned with was resolved by the court's Order (#34) of November 15, 2017. That issue was then subsequently rendered moot once the case became a death penalty case and a new motion to continue was filed and granted. Therefore, the court will grant the motion to unseal with the redactions specified in Rule 49.1(a). However, the court must make a further point regarding the possibility of additional unsolicited non-party letters being sent to the court in the future. The court's docket is not an open forum for people to express their views. The court will not post any unsolicited email, letter, fax, etc. that someone with a personal opinion may send the court without placing the matter under seal until such time as the subject matter of the communication is no longer pending.[5] The court is keen to keep the case docket from becoming a repository for every member of the public to weigh in with their opinion in the misguided belief that their opinion will be magnified, and take on some kind of outsized importance, if they can somehow get it to the court and have it placed on the official court docket. The letter at issue had no influence on this court's decision and concerned a matter that was ruled upon and, in any event, is now moot due to this becoming a capital case.

Defendant's Motion to Unseal Docket Entry #32 (#61) is GRANTED.

---

[5] The court will take steps to ensure the parties promptly receive copies of any unsolicited communications filed under seal.

IT IS THEREFORE ORDERED:

(1)  Defendant's Motion to Unseal Docket Entry #32 (#61) is GRANTED.[6]

(2)  Defendant's Motion to Recuse (#63) is DENIED. The clerk is directed to unseal document (#63) the defendant's Motion to Recuse and the government's Response (#68).

ENTERED this 16th day of March, 2018.

s/ COLIN S. BRUCE
U.S. DISTRICT JUDGE

---

[6] Due to the operation of the latest version of the ECF system, (#32) should remain under seal, but the clerk will redact the name of the letter writer, any signatures, and the home address and designate it as (#32-2), which will be unsealed.