UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Crim. No. 17-20037 |
| ) | |
| BRENDT A. CHRISTENSEN, ) | Hearing Requested |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY TO UNITED STATES RESPONSE TO MOTION TO COMPEL DISCOVERY**

NOW COMES the Defendant, BRENDT A. CHRISTENSEN, by and through his Attorneys, and for his Reply to the Government's Response to the Motion to Compel Discovery states as follows:

I. **THE REQUEST FOR DISCLOSURE OF COMMUNICATIONS BETWEEN THE WHITE HOUSE AND THE DEPARTMENT OF JUSTICE**

"There were no such communications." Five words, twenty-five letters. If that were the case, that is all it would have taken to dispose of the defense's request – preceded perhaps by a few brief inquiries at the Department of Justice to ascertain the existence of any such information.

Instead, the government constructs several non-meritorious procedural roadblocks. In the world beyond those barricades, the Response suggests that the constitutional restraints on the government in the capital authorization process exist only to the extent the government chooses to be bound by them. In the world imagined by the Response, beyond those impenetrable barricades a President could order the

Attorney General to seek the death penalty against all African-American defendants or all Asians or any other constitutionally-protected group if he so chooses and that information could legitimately remain interred in the vaults of the Department of Justice. Or, behind those barricades the President could direct the Attorney General to seek the death penalty based on impermissible political considerations that would offend the non-arbitrariness and narrowing requirements of the Eighth Amendment.

    A.    The Government's Argument that Mr. Christensen's Request Is Based on Mere Speculation and Requires the Government to Engage in a "Fishing Expedition"

The government contends that the defendant's allegations are grounded in unsupported speculation, *Response*, at 7-8, and that compliance would require the government "to engage in a fishing expedition." *Id.*, at 8.

As to the latter, the suggestion is that compliance would be an arduous task requiring investment of significant time and resources. But, the government does not explain why this is so. Mr. Christensen's request does not, for example, present a situation such as that in *United States v. Armstrong*, 517 U.S. 456 (1996), where compliance with the defendant's request (and the Court's order) would have required the government to comb its files for data relating to all prosecutions of cocaine offenses in the preceding three years and provide an analysis of the reasons for prosecuting each case.[1]

---

[1]In *Armstrong*, the court ordered the government: (1) to provide a list of all cases from the preceding three years in which the Government charged both cocaine and firearms offenses; (2) to identify the race of the defendants in those cases; (3) to identify what levels of law enforcement were involved in the investigations of those cases; and (4) to

Here, Mr. Christensen's request is narrowly tailored to his own case and does not presently require the government to explain its prosecutorial decisions or internal deliberations. The request seeks only a very discrete piece of information – that is whether the White House communicated with the Department of Justice concerning this case and the date and substance of such communications.[2] This information is readily available to the United States Attorney's Office and also easily obtainable by trial counsel from the Capital Case Section at the Department of Justice, assigned to this case. The government's "see no evil, hear no evil" approach, *Response*, at 3 (the U.S. Attorneys advised defense they would not "search" for this information outside their own files, knowing such information would not be found in local files), cannot be explained by its overblown assertion that it would be required to engage in a lengthy and cumbersome "fishing expedition."

Nor is Mr. Christensen's request as speculative as the government suggests. The timing of the meeting of Presidents Trump and Xi in early November 2017, coupled with the intense interest in this case in China, the Presidents' apparent willingness to discuss criminal cases of interest to each country and their liberal attitudes toward the

---

explain its criteria for deciding to prosecute those defendants for federal cocaine offenses. *Id.*, at 459.

[2] The *Motion to Compel*, at 11, asks the Court to order the government to disclose the "date, form and substance of any communication between the White House and the Department of Justice" and, if there were such communications, the substance of related communications between President Trump and President Xi. Upon further reflection, the latter issue need not be addressed at this time, as the relevance of the latter would depend on the substance of the former.

3

use of capital punishment, *in toto*, elevate Mr. Christensen's request beyond that of mere speculation. And, these factors must be assessed in the context of the Department of Justice's unusual expedition of the authorization process and refusal to consider defense requests in late November 2017, for additional time to conduct a basic mitigation investigation prior to the authorization decision, even though the capital indictment had only been returned a few weeks earlier on October 16, 2017, and the average time between return of a capital indictment and authorization to seek the death penalty is approximately 13.2 months. *See Defendant's Memorandum in Support of Proposed Scheduling* Order, Dkt. 59, at 9-12; *Motion to Continue*, Dkt. 29, at 5 & Exhibit A.

Finally, as noted in the Introduction, the Court should consider the fact that despite the ease of denial concerning facts that are within its exclusive knowledge,[3] the government has not done so. While the defense does not suggest that this, standing alone, supports an adverse inference as to the underlying claim, the failure to deny that there were any direct communications between the White House and the Department of Justice lends additional weight to Mr. Christensen's request, suggests the request is not

---

[3] *See United States v. Losing*, 539 F.2d 1174, 1180 (8th Cir. 1976)(although defendant's allegation concerning failure to comply with minimization requirement in wiretap case was too general, evidentiary hearing required to permit defendant opportunity develop claim where government had not disclosed information in its exclusive possession which would have permitted defendant to make more specific allegation.); *Giles v. State of Md.*, 386 U.S. 66, 101–02 (1967) (J. Fortas, concurring)("My point relates, not to the defendant's discovery of the prosecution's case for purposes of preparation or avoidance of surprise, which is dealt with in Rule 16, but with the State's constitutional duty, as I see it, voluntarily to disclose material in its *exclusive possession* which is exonerative *or helpful to the defense*—which the State will not affirmatively use to prove guilt—and which it should not conceal")(emphasis added).

4

mere baseless speculation and satisfies the threshold showing of "some evidence" supporting discovery of the information. *Cf. Armstrong*, 517 U.S. at 468 (distilling from various formulations of the Court of Appeals a "consensus" that defendant must cite "some evidence" of his claim to obtain discovery).

    B.    The Government's Claim of Unfettered and Non-Reviewable Discretion of the Attorney General

The government emphasizes the Attorney's General's "broad discretion" in determining whether the government will seek a sentence of death, *Response*, at 5-6, going so far as to label this discretion "unreviewable." *Id.*, at 10. Mr. Christensen does not take issue with the claimed discretion but rejects its unstated premise that the Attorney General has such an exalted position in our constitutional structure that the judiciary cannot inquire upon suggestion that such discretion has been abused or exercised in a manner inconsistent with the Constitution.[4] This is simply not so. Of course, a prosecutor's discretion is "subject to constitutional constraints." *United States v. Batchelder,* 442 U.S. 114, 125, 99 S.Ct. 2198, 2204–2205, 60 L.Ed.2d 755 (1979). One of these constraints, imposed by the equal protection component of the Due

---

[4] The government cites this Circuit's decisions in *United States v. Scott*, 631 F.3d 401, 406-07 (7th Cir. 2011) and *United States v. Ribotta*, 792 F.3d 837, 840 (7th Cir. 2015), as supporting its claim that "prosecutorial discretion is shielded from judicial review." *Rseponse*, at 6. But, neither case travels as far as the government wants. *Scott* merely held that a prosecutor's decision not to prosecute a co-conspirator was not a proper sentencing consideration under 18 U.S.C. § 3553(a), while *Ribotta* involved a claim of prosecutorial vindictiveness when the prosecutor filed new charges after the defendant's successful motion to suppress. Neither stands for the broad proposition that there are no judicial checks when the government seeks the death penalty for constitutionally unacceptable reasons.

Process Clause of the Fifth Amendment, *Bolling v. Sharpe,* 347 U.S. 497, 500, 74 S.Ct. 693, 694–695, 98 L.Ed. 884 (1954), is that the decision whether to prosecute may not be based on "an unjustifiable standard such as race, religion, or other arbitrary classification," *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962). *United States v. Armstrong*, 517 U.S. 456, 464–65 (1996).

Mr. Christensen's request implicates two constitutional protections. First, both the Fourteenth and the Eighth Amendments preclude the arbitrary exercise of that discretion based on considerations of national origin. *See Motion to Compel Discovery*, Dkt 82, at 9; *United States v. Berrios*, 501 F.2d 1207, 1209 (2d Cir. 1974) ("Nothing can corrode respect for a rule of law more than the knowledge that the government looks beyond the law itself to arbitrary considerations, such as race, religion, or control over the defendant's exercise of his constitutional rights, as the basis for determining its applicability."). Second, the Eighth Amendment's narrowing requirement in capital cases constrains the Attorney General's discretion. *See Lowenfeld v. Phelps*, 484 U.S. 231, 244 (1988) ("To pass constitutional muster, a capital sentencing scheme must 'genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder,' "*quoting Zant v. Stephens,* 462 U.S. 862, 877, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983)). Consideration of extraneous political factors is an arbitrary exercise of discretion that does not comply with this narrowing requirement. *Cf.* 18 U.S.C.

3592(c)(statutory aggravating factors performing narrowing function all relate to circumstances of offense or prior criminal conduct of the defendant).[5]

The government's view that the exercise of its discretion is an unassailable bulwark that cannot be pierced and that prosecutorial discretion controls over constitutional substance is inconsistent with the Supreme Court's decision in *Batson v. Kentucky*, 476 U.S. 79 (1986), which requires the prosecution to explain its reason for exercising peremptory challenges in certain circumstances. In so holding, the Court rejected the prosecution's reliance on the long-standing practice of "unfettered discretion" in exercising such challenges as well as its contention that maintaining such unconstrained discretion was of "vital importance." *Id*., at 99. The Court also held that conclusory self-serving assertions by the prosecution, such as that proffered here,[6] are insufficient. *Batson*, 476 U.S. at 94, 98 ("mere general assertions that its officials did not discriminate or that "they properly performed their official duties" is insufficient).

---

[5] N. 7 of the Response attempts to recast Mr. Christensen's argument in two ways. First, Mr. Christensen does not suggest that is would necessarily have been "impermissible" *per se* for the Attorney General to have "discussed" this case with the President. But, if the President communicated a desire that the Attorney General - his subordinate - seek the death penalty or that he or his staff had assured Chinese authorities that they would do so during the November summit where the United States hoped to obtain the cooperation and agreement on matters such as North Korea, trade and other economic matters of significant interest to the United States, that presents a different issue. And, Mr. Christensen is not asserting a claim of prosecutorial vindictiveness or some improper "punitive motivation." Rather, the claim is improper *political motivation* animating the decisions to seek the death penalty. Second, while Mr. Christensen referenced the United States Attorney's Manual in his *Motion to Compel*, at 9, as illustrative of the principle of arbitrariness, he did not suggest there, no does he here, that his request is based on the enforceability of the Manual itself.
[6] E.g. *see Response*, at 5 (citing a so-called "presumption of regularity").

C. Authority for Mr. Christensen's Request

The government argues that Mr. Christensen has "cited no authority that would entitle him to receive the information he has requested." *Response*, at 8. But, it has long been accepted that "there is no right without a remedy to secure it." *Hawkins v. Barney's Lessee*, 30 U.S. 457, 463 (1831). The right to receive information in the government's exclusive possession that would demonstrate the violation of a constitutional protection inheres in that protection itself. Referring back to the introduction, *supra*, surely, the government wouldn't argue, for instance, that it could bury in its files, and thereby conceal from the defendant, the Court and the public, a Presidential order to seek the death penalty against all African-American or all Muslim defendants for capital-eligible offenses on the theory that this information "has nothing to do with any legitimate defense." *See Response*, at 10. That, however, is the logical import of its position.

The government relies heavily on *United States. v. Armstrong*, *supra*, asserting that Mr. Christensen must show that the requested information relates to such a "legitimate defense"[7] and, remarkably, goes so far as to assert that *Armstrong* would bar production *even if* the information tends to demonstrate that constitutionally unacceptable factors infected the authorization process. *Response* at 10-11. As stated in the preceding

---

[7] The government's restricted view as to what constitutes a "legitimate defense" is also inconsistent with the express holding in *Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is *material* either to guilt or *to punishment*, irrespective of the good faith or bad faith of the prosecution.) (Emphasis added). The authorization process is obviously material to punishment in a capital case.

paragraph, Mr. Christensen need not ground his claim in Rule 16, but in any event *Armstrong* is distinguishable in several particulars.

First, as explained above, Mr. Christensen raises an Eighth Amendment claim, which unlike the selective prosecution claim in Armstrong does not require an in-depth analysis of other cases over an extensive period of time – in fact, it does not require examination of any other case, nor at this point an analysis of any type. It only requires that easily accessible information be disclosed. *See also Batson*, 476 U.S. at 96 (noting that court can more easily and accurately determine whether prosecution has engaged in unconstitutional conduct in relation to case before it rather than having to also consider conduct in other cases). Second, Armstrong held that the defendant had not made a threshold showing of his selective prosecution claim. Here, the defense has satisfied *Armstrong*'s "some evidence" standard. *Supra*. Third, contrary to the proposition implicit throughout the government's response, the passage quoted above demonstrates that *Armstrong* was unequivocal that prosecutions based on race, religion or national origin of either the defendant or the victim cannot be magically swept away by incantations of "prosecutorial discretion." *Id.*, at 464-65; *see also U.S. v. Feil*, 2010 WL 3834978, *1 (N.D. California 2010) ("Had the Supreme Court been convinced that no discovery could ever be taken in support of any defense to be raised by pretrial motion, which is how the government appears to construe *Armstrong,* the Supreme Court's lengthy discussion about the adequacy of the defendant's showing would have been unnecessary because defendant would have been entitled to no discovery regardless of the showing.").

D. Conclusion

The *Response* suggests that Mr. Christensen can only present his claim to the Court if he *already has* the information which he seeks. Where this information is within the exclusive knowledge of the government, this *"crippling burden,"* Batson v. Kentucky, 476 U.S. at 92 (characterizing the prior burden placed on defendants in *Swain v. Alabama* (citation omitted)), renders Mr. Christensen defenseless, the Constitution toothless and this Court powerless to ensure its protections.

In light of the above Mr. Christensen asks the Court to enter an Order requiring the prosecutors to make appropriate and timely inquiry and production to the defense.[8]

WHEREFORE, Defendant requests that the Court order the Government to produce the evidence as requested in the Motion to Compel.

---

[8] Alternatively, Mr. Christensen requests that the Court either (1) conduct a hearing and issue a subpoena under Rule 17 (c), requiring the government to produce any records, documents or information reflecting communications between the White House and the Department of Justice in this case; or (2) issue an Order requiring the government to produce any records, documents or information related to Mr. Christensen's request for *in camera* inspection by the Court. *See United States v. Berrios*, 501 F.2d 1207, 1212 (2d Cir. 1974) (Court has authority to conduct hearing and order government to produce documents in its possession pursuant to Rule 17(c), even though not discoverable pursuant to Rule 16).

Respectfully submitted,

/s/Elisabeth R. Pollock
Assistant Federal Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org

/s/ George Taseff
Assistant Federal Defender
401 Main Street, Suite 1500
Peoria, IL 61602
Phone: 309-671-7891
Fax:    309-671-7898
Email: George_Taseff@fd.org

/s/ Robert Tucker
Robert L. Tucker, Esq.
7114 Washington Ave
St. Louis, MO 63130
Phone: 703-527-1622
Email: roberttuckerlaw@gmail.com

/s/ Julie Brain
Julie Brain, Esq.
916 South 2nd Street
Philadelphia, PA 19147
Phone: 267-639-0417
Email: juliebrain1@yahoo.com

CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorneys Bryan D. Freres and Eugene L. Miller and Trial Attorney James B. Nelson. A copy was also mailed to the defendant.

/s/Elisabeth R. Pollock
Assistant Federal Public Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org