E-FILED
Wednesday, 15 August, 2018  11:40:06 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 17-CR-20037** |
| | ) | |
| **BRENDT A. CHRISTENSEN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>ORDER</u>

Defendant, Brendt A. Christensen, filed a Motion to Compel Discovery (#82) on July 13, 2018.  The government filed its Response (#84) on July 27, 2018.  Defendant filed a Reply (#87) on August 3, 2018.  For the following reasons, Defendant's motion (#82) is DENIED.

Defendant makes two requests in his Motion to Compel Discovery (#82).  First, Defendant requests the government be compelled to turn over "the date, form, and substance of any communication between the White House and the Department of Justice concerning this case, and, if any such communications exist, the substance of any communications between Presidents Trump and Xi [of China] or their immediate staffs concerning this case."

Second, Defendant requests the government be compelled to turn over further details on the following aggravating factors regarding the death penalty: the heinous, cruel, or depraved manner of committing the offense; victim impact evidence; future dangerousness; lack of remorse; vulnerability of the victim; and obstruction of justice.

Communications Between the Chinese and American Governments

Defendant seeks "any information that [his] case was discussed when President Donald Trump and Chinese President Xi Jinping met in Beijing, China, in November 2017." Defendant wants to know if the two heads of state, or their staffs, discussed the case, and if any of that discussion was communicated to the Department of Justice, and whether that discussion played any role in the Attorney General's decision to seek the death penalty. Defendant argues that, if a discussion did occur, and if it was communicated to the Department of Justice, and if it played a role in the Attorney General's decision, it would be an improper injection of arbitrary political considerations into the decision to seek the death penalty, which would violate the Eighth Amendment to the U.S. Constitution.

The government responds that, although it was not required to do so, it provided Defendant with all documents and information in its possession reflecting contact between representatives of the Chinese government and the prosecution team. The government contends that the defense request for information about what was discussed between Presidents Trump and Xi is nothing more than a "fishing expedition," "seeking internal, deliberative, work-product of the executive branch that Defendant is not otherwise entitled to receive." The government argues that prosecutorial discretion in charging a defendant is wide, and it is ordinarily shielded

from judicial review.  The government argues Defendant has cited no authority for his request.  Further, the government argues, federal case law has previously refused to compel the production of the type of evidence Defendant is seeking.

The Attorney General of the United States has broad discretion to enforce this nation's criminal laws and, as a result, the presumption of regularity supports the executive branch's prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties. *United States v. Armstrong*, 517 U.S. 456, 464 (1996).  The Seventh Circuit has held that prosecutorial decisions at the charging stage are particularly ill-suited to judicial review because factors such as the strength of the case, the prosecution's general deterrence value, the government's enforcement priorities, and the case's relationship to the government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake.  *United States v. Scott*, 631 F.3d 401, 406 (7th Cir. 2011), citing *Wayte v. United States*, 470 U.S. 598 (1985).  The Seventh Circuit's case law embodies the long-settled principle that courts safeguard prosecutorial discretion by shielding it from judicial review that either forces the prosecutor to act in a prescribed manner or penalizes the prosecutor for acting in his preferred manner.  *Scott*, 631 F.3d at 407.

Of course, this prosecutorial discretion is subject to constitutional constraints, one of which is that the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification, such as national origin. *Armstrong*, 517 U.S. at 464.[1]

Courts have extended this deference to prosecutorial discretion to the government's decision to seek the death penalty. In fact, at least one district court has gone so far as to hold that the Department of Justice's decision to pursue a death sentence is within the Department's "unreviewable discretion." *United States v. Slone*, 969 F.Supp.2d 830, 837 (E.D. Ky. 2013); see also *United States v. Tsarnaev*, 2013 WL 5701582, at *2 (D. Mass. Oct. 18, 2013). Indeed, in *United States v. Fernandez*, 231 F.3d 1240 (9th Cir. 2000), the Ninth Circuit Court of Appeals found that Department of

---

[1]To the extent that Defendant is arguing for discovery based on alleged violations of the Department of Justice's internal policies via the United States Attorneys' Manual (USAM), such an argument is a non-starter. The Manual provides only internal Department of Justice guidance, and is not intended to, and does not and may not be relied upon to create, any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal. United States Attorneys' Manual, § 1-1.200. Further, courts have held that defendants do not have enforceable rights based on Department of Justice internal policy. See *United States v. Gillespie*, 974 F.2d 796, 801 (7th Cir. 1992) (prosecutor's failure to follow internal DOJ guidelines was "not error of the nature that calls for the exercise of [the court's] supervisory powers."); *United States v. Lee*, 274 F.3d 485, 493 (8th Cir. 2001) (USAM does not create an enforceable right for defendants in internal DOJ policies and procedures, such as death penalty protocol). Defendant admits in his Reply that "he did not suggest...that his request is based on the enforceability of the Manual itself."

4

Justice death penalty evaluation forms and prosecution memoranda were undiscoverable because they were protected by the deliberative process and work product privileges.  *Fernandez*, 231 F.3d at 1246.

Further, even if the alleged communications occurred (and they are absolute speculation at this point), the court could not order the government to produce them. Defendant can cite to no federal rule requiring it.  On the other hand, prosecutorial charging and penalty decisions are covered by multiple privileges.  See *In re U.S.*, 398 F.3d 615, 618 (7th Cir. 2005) (prosecutors' intra-office conversations and memoranda are covered by multiple privileges); *United States v. Zingsheim*, 384 F.3d 867, 871-72 (7th Cir. 2004) (attorney-client privilege covers conversations between prosecutors and client agencies within government, work product privilege covers conversations between prosecutors and investigating agents of federal or local jurisdiction, deliberative process privilege covers memoranda and discussions within the executive branch leading up to the formulation of an official position, and privilege shields recommendations to high-ranking officials); *Fernandez*, 231 F.3d at 1246-47; *Slone*, 969 F.Supp.2d at 837; *Tsarnaev*, 2013 WL 5701582, at *2.

The U.S. Supreme Court has addressed discovery of prosecutorial decisions in the "selective prosecution" context.  In *Armstrong*, a selective prosecution case, the defendants assumed that law enforcement agents arrested all those they found dealing in crack cocaine, and the defendants suspected that the federal prosecutor was charging the black suspects while letting the white suspects go free.  *Armstrong*, 517 U.S. at 458-

5

59.  The Supreme Court held that the standard of proving a claim of selective

prosecution is a demanding one, and the showing necessary to obtain discovery on such

an issue "should itself be a significant barrier to the litigation of insubstantial claims."

*Armstrong*, 517 U.S. at 463-64.  The Court, while noting that a prosecutor's discretion

was subject to constitutional restraints, stated that prosecutors had broad discretion to

enforce the law and that the presumption of regularity supported their decisions and,

"in the clear absence of evidence to the contrary, courts presume that they have

properly discharged their official duties."  *Armstrong*, 517 U.S. at 464.  Thus, in order to

dispel the presumption that a prosecutor had not violated equal protection, the Court

held that criminal defendants must "present clear evidence to the contrary."  *Armstrong*,

517 U.S. at 465.  Defendants had to present "some evidence tending to show the

existence of the discriminatory effect element."  *Armstrong*, 517 U.S. at 468.

In selective prosecution cases, this means the defendant must make a credible

showing that persons of a different race, but otherwise comparable in criminal

behavior, were presented to the U.S. Attorney for prosecution, but that prosecution was

declined.  *Armstrong*, 517 U.S. at 469-70; *United States v. Davis*, 793 F.3d 712, 720 (7th Cir.

2015).  The Court later extended this ruling to apply to claims regarding prosecutorial

decisions to seek the death penalty.  *United States v. Bass*, 536 U.S. 862 (2002); *Davis*, 793

F.3d at 720.

6

Thus, after *Armstrong*, the bar is *very high* for a defendant seeking discovery on prosecutorial charging and penalty decisions.  See *Davis*, 793 F.3d at 720 (noting that, to the extent the defendant wanted information about how the U.S. Attorney exercised prosecutorial discretion, the U.S. Supreme Court's decision in *Armstrong* was an "insuperable obstacle"); *Bond v. Atkinson*, 728 F.3d 690, 694 (7th Cir. 2013) (*Armstrong* sets a high evidentiary standard before a court may order discovery into law enforcement practices); *United States v. Johnson*, 900 F.Supp.2d 949, 972 (N.D. Iowa 2012) (defendant provided no evidence of discriminatory intent behind prosecution's decision to seek death penalty, so the court would not order discovery) . The Supreme Court's holding in *Armstrong* has also been extended by district courts to deny discovery of prosecutorial decisionmaking in death penalty cases where the defendant alleges that the decision to seek the death penalty was "arbitrary and capricious."  *United States v. Taylor*, 2008 WL 217115, at *4 (E.D. Tenn. Jan. 24, 2008).

The court sees no reason why the Supreme Court's reasoning in *Armstrong* should not be applied to the argument Defendant is making in this case.  In order for the court to order discovery of the nature requested by Defendant, Defendant must make a showing of *some* evidence that the two presidents discussed this case, then that the U.S. President decided the death penalty should be imposed, then that he ordered the Attorney General to seek the death penalty, and then that the Attorney General made his decision based on that command (and presumably, that the decision would otherwise have been not to seek the death penalty).  Defendant, however, has provided

no such evidence.  Rather, Defendant has provided only speculation upon speculation

that the issue *might* have been discussed, and then *might* have been communicated to

the Department of Justice and Attorney General, and then *might* have been central to the

decision to seek the death penalty.  This is the definition of a "fishing expedition."  Pure

speculation, without any evidence, does not amount to a "credible showing," and has

certainly not met the high standard required before a court may order discovery into

law enforcement practices.  See *Bond*, 728 F.3d at 694.[2]

      The court realizes that Defendant's request, on its face, is not "onerous" in the

sense that it will require a large expenditure of time and manpower on the

government's part to fulfill.  However, this request goes straight to the heart of

prosecutorial discretion and the decisionmaking process, which has been held to be

broad and ill-suited to judicial review.  *Armstrong*, 517 U.S. at 464; *Scott*, 631 F.3d at 406.

Defendant, in his Reply, argues that the government's failure to deny that there were

any direct communications between the White House and Department of Justice "lends

additional weight to [Defendant's] request, suggests the request is not mere baseless

speculation and satisfies the threshold showing of 'some evidence' supporting

---

     [2]Even were the court to order discovery on this issue, there remains the question of what, if anything, regarding the Attorney General's decisionmaking process would even be discoverable, and not covered by the various privileges.  One of the privileges at issue would be the deliberative process privilege, which would bar the discovery of documents that contained opinions, recommendations, and/or advice about DOJ policies designed to help the Attorney General decide whether the death penalty is appropriate in any case in which the death penalty is a potential sentence, and could be said to play an integral role in the government's deliberative process.  *Fernandez*, 231 F.3d at 1246-47; *Zingsheim*, 384 F.3d at 871-72.

discovery of the information."  This sort of argument is disingenuous, akin to asking an

attorney if his client committed a crime, and then claiming some sort of evidentiary

showing to justify accessing privileged material when the attorney refuses to answer

either way.  Defendant cannot use the government's silence and opposition to the

motion to create, out of whole cloth, evidence constituting a "credible showing." The

consideration of such silence as "evidence" clearly conflicts with the stringent

requirements of *Armstrong*.  Essentially, it would make asking the question itself the

only evidence necessary to overcome the strong presumption of regularity that attaches

to prosecutorial decisionmaking.[3]

---

[3]The court must also note that, once again, Defendant has slipped into hyperbole
throughout his argument.  For example, Defendant argues in his Reply that "[i]n the
world imagined by the Response, beyond those impenetrable barricades a President
could order the Attorney General to seek the death penalty against all African-
American defendants or all Asians or any other constitutionally-protected group if he
so chooses and that information could legitimately remain interred in the vaults of the
Department of Justice."  Defendant later makes this same argument with regard to
Muslims.  Putting aside that the Supreme Court has already held that information
related to such heinous decisions would be discoverable upon a credible showing (*Bass*,
536 U.S. at 863-64), this sort of hyperbole has no place in this case or filings with this
court.  Further, this argument has no connection to the actual facts of this case:
Defendant is not a member of a minority group, nor is there any evidence whatsoever
that race played a role in the government's decision to seek the death penalty.  Indeed,
accepting Defendant's argument in this case would expose the Department of Justice's
decisionmaking process to discovery in just about every federal criminal case, thereby
completely vitiating the concept of prosecutorial discretion and privilege.  This court
has already, in a prior order, noted and suggested to Defendant to avoid such rhetorical
flourishes, especially ones that have no legal or factual relevance to the issues at hand.
The court again gently reminds Defendant, hopefully with more impact, to focus his
arguments on the law and facts relevant to the issues before the court.

For the reasons stated above, Defendant's motion is DENIED on this ground.[4]

<u>Aggravating Factors in the Notice of Intent to Seek the Death Penalty</u>

Defendant next argues that the government's May 18, 2018, letter purporting to comply with the court's order that it disclose all expected evidence in support of the alleged aggravating factors in the Notice of Intent to Seek Death Penalty (NOI), is insufficient.  Defendant notes that the government provided 11,500 pages of written discovery, 58 disks containing audio and video recordings, photographs, computer and telephone forensics, telephone records, and hundreds (if not thousands) of jail calls and text messages.  Defendant requests the disclosure of all expected evidence in support of the alleged aggravating factors, in a form that is usable.  Defendant argues the government's disclosure in the May 18, 2018, letter satisfies the court's order "mainly in the breach," because "it provides no guidance where within the thousands of pages and mountains of electronic data counsel is expected to find the information that the government intends to use to prove each of the alleged aggravating factors."  Defendant

---

[4]The court would also note that Defendant, on the last page of his Reply, in a footnote, added an entirely new, undeveloped (except for a citation to one Second Circuit case from 1974) alternative request that the court either conduct a hearing and issue a subpoena under Federal Rule of Criminal Procedure 17(c) requiring the government to produce records reflecting communication between the White House and DOJ, or issue an order requiring production of said records for the court to review *in camera*.  The argument is rejected.  First, arguments raised for the first time in a reply brief are waived.  *United States v. Hughes*, 970 F.2d 227, 235 n.6 (7th Cir. 1992).  Second, undeveloped and unsupported arguments are deemed waived.  *United States v. Thornton*, 642 F.3d 599, 606 (7th Cir. 2011).

requests a more detailed outline for each of the statutory and non-statutory aggravating factors the government disclosed in its NOI, specifying an outline of the exact evidence the government intends to use.

The government responds that the May 18, 2018, notice of aggravating evidence satisfies the court's order and exceeds both the letter and spirit of the law.  The NOI, argues the government, is the only notice to which Defendant is entitled regarding aggravating factors, a position supported by the weight of the case law on this subject.  Thus, the government has gone above and beyond its obligation on this front, and any further information would be requiring the government to preview its trial strategy and evidence presentation for Defendant.  The government further argues that it would be unduly burdensome.

The Federal Death Penalty Act (FDPA) provides as follows:

> (a) Notice by the government.--If, in a case involving an offense described in section 3591, the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified under this chapter, the attorney shall, a reasonable time before the trial or before acceptance by the court of a plea of guilty, sign and file with the court, and serve on the defendant, a notice--
> (1) stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter and that the government will seek the sentence of death; and
> (2) setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.
> The factors for which notice is provided under this subsection may include factors concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and

11

any other relevant information. The court may permit the attorney for the government to amend the notice upon a showing of good cause.

18 U.S.C. § 3593(a).

Notably, the FDPA is silent as to the level of detail required to be disclosed by the government.  Thus, it is left to case law to provide guidance as to just how much detail the government must provide.

Defendant cites to several district court cases in support of his argument that a more specific, detailed outline regarding evidence in support of aggravating factors must be disclosed by the government.  In *United States v. Llera Plaza*, 179 F.Supp.2d 464 (E.D. Penn. 2001), the defendants challenged the sufficiency of the government's NOIs. The government's NOIs listed the aggravating factors (both statutory and non-statutory) the government proposed to establish for each count against all defendants. The defendants argued the NOIs failed to "provide sufficient notice to them of what facts the government intends to prove during the sentencing phase of the trial" and that "because the NOIs merely list the aggravating factors the government intends to prove, they fail to inform the defendants of precisely what evidence the government will attempt to introduce during the sentencing phase." *Llera Plaza*, 179 F.Supp.2d at 470.

The court surveyed the existing case law, specifically *United States v. Kaczynski*, 1997 WL 34626785 (E.D. Cal. Nov. 7, 1997), finding that "[o]ther courts have ordered prosecutors to provide greater specificity in NOIs in order to allow the defendant to prepare adequately for sentencing proceedings and to allow the court to ensure the reliability of the evidence presented." *Llera Plaza*, 179 F.Supp.2d at 470.  But, the court

also noted that "[o]ther courts, however, have differed, suggesting instead that NOIs need do no more than recite the aggravating factors the government intends to prove." *Llera Plaza*, 179 F.Supp.2d at 471. Ultimately, the court concluded that, while 18 U.S.C. § 3593(a) did not require the government to produce the details of its sentencing phase evidence, the U.S. Constitution *did* require that the defendants be given some notice of the type of evidence the government intended to introduce at the sentencing phase. *Llera Plaza*, 179 F.Supp.2d at 472. The Constitution, the court noted, promised defendants a meaningful opportunity to present a complete defense, and that opportunity would hardly be "meaningful" if the defense was forced to confront sentencing phase evidence without any notice of what that evidence might be. *Llera Plaza*, 179 F.Supp.2d at 472. Thus, the court concluded, "[i]n order for the government's evidence to be subjected to 'the crucible of meaningful adversarial testing,' [citation omitted] the NOIs, in conjunction with the indictment, must inform the defendants of the theories and facts that the government will use to establish each aggravating factor in this case." *Llera Plaza*, 179 F.Supp.2d at 472. The court found that while some of the aggravating factors alleged in the indictment were sufficient to provide adequate notice to the defense, for other factors, the government was ordered to provide an outline of the evidence it intended to present to prove said factors. *Llera Plaza*, 179 F.Supp.2d at 472-75.

One of the cases cited by both Defendant and the court in *Llera Paza* is *United States v. Glover*, 43 F.Supp.2d 1217 (D. Kan. 1999). In *Glover*, the government provided a NOI, listing the statutory and non-statutory aggravating factors it intended to pursue.

13

The court, exercising its "inherent authority," ordered the government to be more specific on many of the aggravating factors listed in the NOI.  *Glover*, 43 F.Supp.2d at 1222-27.  The court concluded on one factor, for example:

> Without more information, the court is unable to assess whether submission of this factor to the jury would be proper in this case. Consequently, the court, in the exercise of its inherent authority, directs the government, by March 12, 1999, to more specifically articulate the nature of this aggravator by setting out the factual basis on which it intends to show Mr. Glover's lack of remorse. After the government has fully specified the factual basis and the evidence it intends to use to prove this factor, the court will consider whether a pretrial evidentiary hearing is warranted.

*Glover*, 43 F.Supp.2d at 1227.

> The court also ordered on another factor:

> The court finds that Mr. Glover should have notice of the unadjudicated acts, both to avoid surprise and so that any appropriate motions can be filed. Accordingly, as in *Kaczynski*, the government is directed to amplify its notice by providing a written list identifying the particular unadjudicated acts that it will seek to introduce during sentencing on this factor, as well as the dates of the unadjudicated acts. The government is further directed to list the witnesses and exhibits the government intends to present to prove the unadjudicated acts. The court finds such supplementation should adequately apprise Mr. Glover of the nature of the evidence on which the government will rely. Such amendment to the notice should be filed with the court by March 12, 1999.

*Glover*, 43 F.Supp.2d at 1227-28.

Defendant also cites to *United States v. Taylor*, 316 F.Supp.2d 730 (N.D. Ind. 2004). In *Taylor*, the defendants argued that the government's NOIs were insufficient because some aggravating factors were unconstitutionally vague while others were inapplicable to the case because of the lack of evidence to support the factors.  The government disagreed, arguing that the aggravating factors in the NOIs were proper and satisfied

14

all constitutional and statutory threshold requirements.  The court rejected the

defendants' arguments for more specificity, but did state, regarding the "unadjudicated

conduct" factor:

> Following the procedures utilized by other courts in federal death
> penalty cases, the Court finds that prior to the penalty phase, should
> one be necessary, the Government will be required to present to the Court and
> the specific Defendant the information which it intends to introduce as
> unadjudicated conduct. At such time, the Court will determine whether
> the information is reliable. The evidence will be presented to the jury only
> if the Government is able to satisfy that threshold determination and the
> evidence satisfies the exclusionary provision provided in § 3593(c).  Such
> procedures will ensure that any evidence regarding unadjudicated
> criminal conduct satisfies the heightened reliability and relevancy
> requirements. Defendants' requests to strike evidence of unadjudicated
> conduct at this juncture are DENIED.

*Taylor*, 316 F.Supp.2d at 742.

Defendant also cites to *United States v. Lujan*, 530 F.Supp.2d 1224 (D.N.M. 2008).

In *Lujan*, the defendant argued that the Fifth, Sixth, and Eighth Amendments required

disclosure of all information which supported each of the various threshold statutory

findings as well as the statutory and non-statutory aggravating factors, contending that

he had a due process right to notice of the evidence that would be submitted against

him at the capital sentencing trial and that denial of this motion would interfere with

his right to effective assistance of counsel.  The government responded that it had

already provided constitutionally sufficient notice and that neither *Brady v. Maryland*,

373 U.S. 83 (1963) nor Rule 16 nor 18 U.S.C. § 3593 required more because the FDPA

required adequate notice of aggravating factors, but did not require the disclosure of all

evidence in support of those factors.

The *Lujan* court, surveying case law, found that adequate notice under the FDPA was satisfied where the government set forth the aggravating factors that it intended to prove, because § 3593 does not convey additional discovery rights.  The court also found that pretrial discovery of evidence supporting aggravating factors is also not required by the Constitution, insofar as the requests go beyond the requirements of *Brady*.  *Lujan*, 530 F.Supp.2d at 1268.  The court went on to note, however, that "[d]espite the lack of pretrial discovery rights in the Constitution and FDPA, many courts have nonetheless granted a capital defendant broader discovery of evidence in aggravation.  These courts generally used their inherent powers to order the government to provide additional information on certain aggravating factors in order to ensure a meaningful opportunity to prepare a defense."  *Lujan*, 530 F.Supp.2d at 1269. The court concluded that  statutory threshold findings, statutory aggravating factors, and all the non-statutory aggravating factors alleged in the NOI warranted additional discovery in order to more fully enable Defendant to prepare his case and to avoid trial delays by minimizing surprise, writing:

> I adopt the reasoning of those courts that have used their inherent powers to order the government to provide additional information on certain aggravating factors in order to ensure a meaningful opportunity to prepare a defense. See, e.g., *Llera Plaza*, 179 F.Supp.2d at 470–75. The severity of the penalty sought in this case warrants special efforts to ensure the fairness of the proceedings. Greater notice improves the truth-seeking process. Accordingly, in the exercise of the inherent authority given to the Court, I will order the Government to provide to Mr. Lujan a written informative outline on certain statutory threshold findings and aggravating factors, as detailed below, on or before May 1, 2008. The document need not reveal evidentiary detail but should address the general nature of the information it will introduce to prove the following statutory threshold findings and aggravating factors. The

16

United States will have a continuing duty to supplement its outline. Thus, if new information becomes known to the United States, I will permit the United States to supplement its informative outline within a reasonable time before trial. I stress that this order does not contemplate amendment of the Notice.

*Lujan*, 530 F.Supp.2d at 1269-70.

The government, in support of its argument that the listing of the aggravating factors in the NOI is sufficient notice, cites to four circuit court cases. In *United States v. Battle*, 173 F.3d 1343 (11th Cir. 1999), the Eleventh Circuit rejected a defense request that the government show good cause to amend the NOI. The defendant argued that the trial court erred by allowing the government to amend the NOI on the eve of trial, in violation of the FDPA and the Fifth, Sixth, and Eighth Amendments to the U.S. Constitution. The government countered that it was only amending the notice to include specific evidence supporting an aggravating factor that was already in the original notice. The Eleventh Circuit agreed with the government that nothing in the federal statute or Constitution prevented such an amendment, and that new aggravating factors could be added upon a showing of good cause. *Battle*, 173 F.3d at 1347. However, the court noted, notice of aggravating factors is different than notice of "specific evidence," and the government is not required to provide specific evidence in its notice of intent. *Battle*, 173 F.3d at 1347. Thus, when the government sought to amend the NOI to add only specific evidence, and not new "factors", it did not need to show good cause and, if anything, was helping the defendant some by forewarning him of the evidence to be used against him. *Battle*, 173 F.3d at 1347.

A few years later, the Eighth Circuit issued its opinion in *United States v. Lee*, 274 F.3d 485 (8th Cir. 2001), where it held that, while a defendant had a right to advance notice of the aggravating factors the government sought to prove at sentencing, he had no right to advance notice of the specific evidence the government would use to prove those factors. *Lee*, 274 F.3d at 495.

In *United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003), the Fourth Circuit addressed a defendant's argument that the trial court erred in admitting certain testimony because the defendant did not receive pretrial notice that the government intended to introduce evidence concerning a shooting in support of a non-statutory aggravating factor.  The Fourth Circuit rejected the defendant's argument as plainly "without merit" because the "FDPA and the Constitution require that the defendant receive adequate notice of the aggravating factor, which [the defendant] admittedly received in this case, not notice of the specific evidence that will be used to support it." *Higgs*, 353 F.3d at 325.

The Eleventh Circuit revisited this issue seven years after *Battle* in *United States v. LeCroy*, 441 F.3d 914 (11th Cir. 2006).  In *LeCroy*, the government, pursuant to the FDPA, served notice on the defendant of its intent to seek the death penalty.  The NOI listed statutory and non-statutory aggravating factors, including "future dangerousness."  In the NOI, for the future dangerousness factor, the government stated that the defendant represented a "continuing danger to the lives and safety" of others, and that the defendant has committed the instant crimes and also "has committed and exhibited acts and characteristics including, but not limited to, the following: (a) specific threats of

18

violence; (b) risk of escape; (c) low rehabilitative potential." To prove this factor at trial the government called four witnesses who testified to the defendant's prior crimes and bad acts. The defendant argued this evidence should have been excluded because it was not included as an aggravating factor in the NOI and was not relevant to any aggravating circumstance included in the NOI.

The Eleventh Circuit construed the defendant's argument as being that there is an obligation to provide notice not only of the aggravating factor, but also of the evidence supporting the same. The court noted it had expressly rejected this argument in *Battle,* finding that the government is not required to provide specific evidence in its § 3593 NOI. *LeCroy*, 441 F.3d at 929. The court also cited to the U.S. Supreme Court's decision in *Gray v. Netherland*, 518 U.S. 152 (1996), which held that although there is a right to advance notice of the charges, there is no extant constitutional right to advance notice of the evidence to prove such charges in a capital sentencing hearing. *LeCroy*, 441 F.3d at 929, citing *Gray*, 518 U.S. at 167-68. The court concluded that the government satisfied its constitutional and statutory obligations by informing the defendant of what aggravating factors it intended to prove at trial, and that it was not obligated to outline what specific pieces of evidence it planned to use to support the aggravating factors. *LeCroy*, 441 F.3d at 930.

The government also cited to several district court cases in support of its position. In those cases, the district courts held that the government was not required to produce detailed outlines to defendants of the aggravating factors contained in the NOI. *United States v. Montgomery*, 10 F.Supp.3d 801, 823 (W.D. Tenn. 2014); *United States v.*

*Solomon*, 513 F.Supp.2d 520, 538-39 (W.D. Pa. 2007) (denying defense motion to strike the NOI or require a bill of particulars, finding that the NOI fully apprised the defendant of the nature of the aggravating factors upon which the government would rely to sentence him); *United States v. Gooch*, 2006 WL 3780781, at *21 (D.D.C. Dec. 20, 2006) (disagreeing with *Glover* and finding that the government was not required to outline the factual basis underlying the mental state in the NOI, concluding that the defendant was "not really asking for the underlying factual basis for each gateway factor-he already has all the facts-but, instead, for how the government plans to use the evidence it has amassed" and that "[t]he government has no obligation to give him a preview of its evidentiary presentation.").

The court would also note a district court opinion from the Northern District of Indiana, *United States v. Briseno*, 2014 WL 12682281 (N.D. Ind. Nov. 14, 2014).  In *Briseno*, the government, in its NOI, set out the aggravating factors, including "future dangerousness," alleging that the defendant was likely to commit future acts of criminal violence because he had (1) a low potential for rehabilitation; (2) a willingness to take human life and a lack of remorse for his acts of violence as demonstrated by statements he made following the violent acts; and (3) his stated desire to impose a rule requiring fellow gang members to shoot rivals on sight.  The defendant filed a motion for "informative outline of the government's factual basis" for the future dangerousness factor.  The district court rejected this argument, finding the government's NOI satisfied the requirements of the FDPA and that, beyond that, the government was not required to preview its evidentiary support for the aggravating factors it has disclosed by

outlining what specific pieces of evidence it planned to use to support the aggravating factors. *Briseno*, 2014 WL 12682281, at *2. In support of its position, the court cited to the decisions in *LeCroy*, *Higgs*, and *Battle.*

The court acknowledges that the cases discussed above are not binding, but rather merely persuasive, and that there is no binding precedent on this specific issue from the Seventh Circuit. However, the court finds important the fact that all four of the circuit court decisions on this issue come down on the side of *not* requiring the government to provide an informational outline detailing the specific evidence it intends to present in support of the aggravating factors. Rather, all the circuit court decisions hold that the listing of the aggravating factors in the NOI is enough to satisfy the requirements of the Constitution and the statutory requirements of the FDPA. The court finds the circuit court decisions in *Battle*, *Lee*, *Higgs*, and *LeCroy* to be more persuasive than those district court cases cited by Defendant. The circuit court cases present a more reasoned analysis of the requirements of the FDPA and the Constitution. Therefore, the government is not required to preview its evidentiary support for the aggravating factors it has disclosed by providing a detailed outline for each factor. See *Briseno*, 2014 WL 12682281, at *2.

The court also notes that in this case, the government has provided Defendant far more than just a bare listing of aggravating factors in the NOI. On May 18, 2018, the government sent a letter to defense counsel disclosing evidence in support of aggravating factors during the penalty phase (attached as an exhibit to Defendant's motion). The court will not repeat what evidence the government discussed in its letter.

Suffice to say that the information provided in the letter, in the court's opinion, disclosed a reasonably detailed outline, a preview, of the evidence it intends to introduce in support of each of the listed aggravating factors. Moreover, this outline is certainly beyond what is required under the FDPA as held by the Circuit Courts of Appeal.  Thus, Defendant's motion is DENIED.[5]

IT IS THEREFORE ORDERED:

Defendant's Motion to Compel Discovery (#82) is DENIED.

ENTERED this 15th  day of August, 2018.


s/ COLIN S. BRUCE

U.S. DISTRICT JUDGE

---

[5]The court would note that Defendant, in his motion, mentioned the parties have been meeting concerning the possible use of Federal Rule of Evidence 404(b) evidence. Defendant states that the government has turned over a sealed motion detailing the Rule 404(b) evidence it intends to introduce at trial and that, as of the parties' meeting on June 19, 2018, the government did not have any additional evidence to supplement the motion.  The court encourages the parties to continue to cooperate on work together on such matters pursuant to Local Rule 16.1.