E-FILED
Friday, 17 August, 2018  12:01:30 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Crim. No. 17-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO THE GOVERNMENT RESPONSE TO THE
MOTION FOR DISCOVERY OF INFORMATION CONCERNING THE GRAND AND
PETIT JURY VENIRE

NOW COMES the Defendant, BRENDT A. CHRISTENSEN, by and through his

attorneys, and files his Reply to the Government's Response to his Motion for Discovery

of Information Concerning the Grand and Petit Jury Venire.

> **1.**    **An electronic copy of the "voter registration lists" provided to the Clerk
> of Court that ultimately resulted in the creation of the Master Jury
> Wheel from which the grand jurors were drawn and the petit jurors will
> be drawn, and all attendant/attached information including but not
> limited to racial, ethnic, age, voting status provided to the Clerk of
> Court by the State Board of Elections.**

The government claims Mr. Christensen is not entitled to the voter registration

lists provided to the Clerk's office as the source list for the qualified jury wheel,

claiming "[t]he defendant does not require, and is not entitled to, information about

every single registered voter in the Central District of Illinois in order to determine

whether the Court is properly implementing its Plan." Gov. Resp. at 6. The government

is wrong.

1

The Jury Selection Plan for the Central District of Illinois ("the Plan" or "Plan") uses voter registration lists as the sole source of jurors. Plan at 5. According to the Plan, "[t]he judges . . . find that such lists represent a fair cross section of the communities in the district." *Id*. There is no citation to any document or research that supports that "finding." That being said, the Jury Selection and Service Act ("JSSA") requires that the "names of prospective jurors shall be selected from the voter registration lists or the lists of actual voters of the political subdivisions within the district or division." 28 U.S.C. § 1863(b)(2). While a jury selection plan must use voter registration lists as the primary source of jurors, "[t]he plan shall prescribe some other source or sources of names in addition to voter lists where necessary to foster the policy and protect the rights secured by sections 1861 and 1862 of this title." *Id*.

Section 1861 of the JSSA establishes the policy "that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes. It is further the policy of the United States that all citizens shall have the opportunity to be considered for service on grand and petit juries in the district courts of the United States, and shall have an obligation to serve as jurors when summoned for that purpose." Section 1862 of the Act  mandates that "no citizen shall be excluded from service as a grand or petit juror in the district courts of the United States or in the Court of International Trade on account of race, color, religion, sex, national origin, or economic status."

Mr. Christensen may move "to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury. 18 U.S.C. § 1867(a). To effectuate this right, Mr. Christensen has "an unqualified right to inspect jury lists." *Test v. United States*, 420 U.S. 28, 30 (1975).

For Mr. Christensen to determine whether he has a valid challenge under the JSSA to the composition of the grand jury that indicted him and the petit jury that will decide if he is guilty, and if so, whether he should be put to death, he must have access to the voting lists provided to the Clerk's office. The Act mandates that if the voter registration lists do not ensure a jury selected from a fair cross section of the community "[t]he plan *shall* prescribe some other source or sources of names in addition to voter lists." 28 U.S.C. § 1863(b)(2). The only way to determine if the voter registration lists do present a fair cross section of the community is to compare the jury registration lists to demographic information concerning the counties constituting the Urbana Division of the Central District of Illinois. The government recognized this fact in *Test*, conceding the defense needed access to the voter registration lists.

In *Test* the defendant filed a motion to dismiss the indictment arguing the Colorado voter registration lists used to create the master jury wheel excluded Hispanics, students, and Blacks. Brief of United States, at *3 (attached as Exhibit A). To support the motion the defense asked to inspect jury lists, including the voter registration lists. *Id*. The district court denied the motion to inspect and the motion to

dismiss, finding the defendants had not made a *prima facia* case of intentional discrimination. The Tenth Circuit affirmed. The United States confessed error.

The government first conceded the defense did not need to prove intentional discrimination to prove a violation of the Act, let alone be allowed to review jury lists. *Id*. at *14-15. Second, the United States conceded a defendant need only make a timely request to review jury lists to be accorded the right to inspect the lists to determine if there was a basis to challenge the local jury selection plan as violating the Act. Id. at *9. Third, the government acknowledge that review of the voter registration lists provided to the court must be reviewable by the defense. This was true because while the Act requires voter registration lists be the primary source of jurors "the Act also specifies (28 U.S.C. 1863(b)(2)) that '[t]he plan shall prescribe some other source or sources of names in addition to voter lists where necessary to foster the policy and protect the rights secured by sections 1861 and 1862 of [the Act]'" *Id*. at 11. "In short, Congress intended that voter lists be supplemented by other sources where the use of voter lists results in substantial failure to achieve the cross sectional goal of Section 1861. Since, on this record, it is not possible to know the degree of underrepresentation, if any, of various groups on Colorado's voting lists, and thus the possible deviation of Colorado federal juries from the community cross section, we believe that petitioner was entitled to inspect the jury lists." *Id*.

As the government brief in *Test* admits, to determine if the voter registration lists must be supplemented to ensure a fair cross section of the community is considered for jury service a defendant must have access to the voter registration lists

provided to the court for use in creating the master wheel. Those lists can then be compared to demographic information from the relevant counties making up the division. There is no other way to ensure compliance with the Act.

Additionally, the Plan requires that "[t]he number of names drawn from each county shall be substantially in the same proportion to the total number drawn from all counties within the division as the number of names on the county's voter registration list bears to the total number of names on the voter registration lists for each county within the division." To ensure compliance with this requirement, which helps to ensure a fair cross section of the entire division rather than a cross section heavily weighted in favor of counties with larger populations, Mr. Christensen needs access to the voter registration lists to compare to the master wheel. Again, without the lists there is no way to ensure juries are actually representing a fair cross section of the community.

*Test*, the government's brief in *Test*, and the Seventh Circuit's opinion in *United States v. Davenport*, 824 F.2d 1511, 1514 (7th Cir. 1987), establish that the phrase "jury lists" includes the voter registration lists that form the source of all potential jurors. Accordingly, the government's citation to district court cases from outside the Seventh Circuit are meaningless. Gov. Resp. at 7.

The government seems concerned that Mr. Christensen will have access to "information about every single registered voter in the Central District of Illinois." Gov. Resp. at 6. The Court already has this information and the State of Illinois makes the information available "to state political committees registered pursuant to the

Illinois Campaign Finance Act or the Federal Election Campaign Act and to

governmental entities, at their request." 10 ILCS 5/4-8 (counties with populations

under 500,000); 5-7 (counties with populations over 500,000); 6-23 (certain cities,

villages and incorporated towns) (footnotes omitted). Additionally,

> subject to security measures adopted by the State Board of Elections
> which, at a minimum, shall include the keeping of a catalog or database,
> available for public view, including the name, address, and telephone
> number of the person viewing the list as well as the time of that viewing,
> any person may view the centralized statewide voter registration list on a
> computer screen at the Springfield office of the State Board of Elections,
> during normal business hours other than during the 27 days before an
> election, but the person viewing the list under this exception may not
> print, duplicate, transmit, or alter the list.

*Id*. So, Mr. Christensen's lawyers, or any person, can go to the State Board of Elections

office at 2329 S. MacArthur Blvd in Springfield and look up the voter registration

information of any individual in the State; judges, and law enforcement officers

included. Gov. Resp. at 6 n.2. This is of no use to Mr. Christensen, as he cannot print,

duplicate, or transmit the information making it impossible to use the information to

potentially challenge compliance with the Plan.

Additionally, each registered voter's registration record card, which must

include the person's name, sex, residence, term of residence in the state, nativity,

citizenship, date of application for registration, age, any physical disability, county and

state in which the applicant was last registered, email address, and signature, is also a

public record and open to inspection at the State Board of Elections office, except during

the 27 days immediately preceding any election. The reality is that a registered voter's

personal information is already made available to the general public. Accordingly,

providing the information to Mr. Christensen does not unduly pry into a voter's personal life.

      **2.**      **An electronic copy of the Master Jury Wheel data including names and addresses, racial, ethnic, gender and age information, and other data in any way associated with the individuals in the jury pool from which the grand jury that issued Mr. Christensen's indictment was selected and the pool from which the petit jurors will be selected.**

The government does not object to Mr. Christensen receiving a copy of the Master Jury Wheel. The government objects to Mr. Christensen receiving the names and addresses of the individual on the Master Jury Wheel, but does not provide any legal basis for redacting this information. *Test* establishes beyond any doubt a defendant's right to inspect and copy "jury lists" which includes the Master Jury Wheel which is the "jury list" from which all potential grand and petit jurors are drawn. The names and addresses of the individuals on the Master Jury Wheel are needed for comparison against the voter registration list to ensure the number of jurors from each county on the Master Wheel is proportionate to the county's population relative to the total population of the Urbana Division. And, as explained *supra*, the voters' personal information is already available to the general public.

      **3.**      **An electronic copy of the Qualified Jury Wheel data including names and addresses, racial, ethnic, gender and age information, and other data associated with the individuals in the jury pool, as well as information on when the name was added to the Qualified Jury Wheel for the pool from which the grand jury that issued Mr. Christensen's indictment was selected.**

The government's position with regard to the Qualified Wheel mirrors its position with regard to the Master Wheel. Mr. Christensen has the same reply.

4.      **All surveys or reports regarding the composition of the Master or Qualified Jury Wheel (typically compiled on Forms AO-12 and formerly JS-12) for the preceding ten years and any other periodic reports of statistical sampling compiled in the proceeding ten years.**

The government does not object to Mr. Christensen receiving AO-12 forms for the Master Jury Wheel for the Urbana Division but questions the need for previous AO-12 forms and any other reports of statistical sampling from the proceeding ten years. Information from previous jury wheels can be compared to the current Master Wheel and AO-12 reports from that wheel to help determine if the current plan is both capturing a fair cross section of the Urbana Division and not discriminating against any potential juror based on race color, religion, sex, national origin, or economic status. A substantial change in statistics from previous jury plans and jury wheels created under that plan could be evidence that the current Plan is not working.

Additionally, Part IV of the AO-12 form has a statistical comparison of the jury wheel to the "citizen population" of the district or division. Exhibit B. The "Data Collection Instructions" state "[t]o assist you with these comparisons, the Administrative Office will provide specially programmed Census Bureau information that show racial, ethnic, and sex data and percentages to the citizen population by county for every federal jury division of your district." *Id.* at 3. As the government repeatedly claims the information on the AO-12 form is adequate for Mr. Christensen to determine if he potentially has a meritorious motion to dismiss for violation of the Act's fair cross section requirement, Mr. Christensen requests a copy of the "specially programmed Census Bureau information."

5.      **The completed juror qualification forms of all persons qualified for service as described on pages 8 and 9 of Plan for the selection of grand jurors for the pool from which the grand jury that issued Mr. Christensen's indictment was selected.**

The government objects to Mr. Christensen receiving juror qualification forms or juror questionnaires, citing to *United States v. Davenport*, 824 F.2d 1511 (7th Cir. 1987). While it is true that in *Davenport* the Seventh Circuit found access to juror questionnaires was not necessary in that case as the defense was only challenging whether the jury plan was drawing jurors from a fair cross section of the community. *Id*. at 1514-1515. But the Act has two goals: drawing juries from a fair cross section of the community, 28 U.S.C. § 1861; and prohibiting discrimination by ensuring "no citizen shall be excluded from service as a grand or petit juror in the district courts of the United States or in the Court of International Trade on account of race, color, religion, sex, national origin, or economic status." 28 U.S.C. § 1862.

The Act embodies two important general principles:

> (1) random selection of juror names from the voter lists of the district or division in which court is held; and (2) determination of juror disqualifications, excuses, exemptions, and exclusions on the basis of objective criteria only. These principles provide the best method for obtaining jury lists that represent a cross section of the relevant community and for establishing an effective bulwark against impermissible forms of discrimination and arbitrariness.

H.R.Rep. No. 1076, 90th Cong., 2d Sess. (1968), reprinted in 1968 U.S.Code Cong. & Admin.News 1792, 1793 (hereinafter House Report).

Inspection of juror questionnaires and the process used by courts to qualify jurors based on those questionnaires address the prohibition on discrimination, not the

right to have a jury pulled from a fair cross section of the community. The need for

access to juror questionnaires is made clear by the Plan's explanation of how the

qualified wheel is created.

> The court uses a two-step process to select jurors. First, a master jury
> wheel is created by selecting names at random from the registered voter
> lists in each gubernatorial general election. Then names are randomly
> drawn periodically from the master jury wheel to complete juror
> qualification questionnaires. *Individuals' answers to these questionnaires
> determine whether they are legally qualified to serve. If so, the names of those
> persons are put in a second wheel, a qualified jury wheel.* As prospective jurors
> are needed for a specific trial or grand jury, juror summonses are sent to
> persons randomly selected from the qualified wheel.

Plan at 4.

The juror qualification process is governed by the Act. 28 U.S.C. § 1865. That

section requires the chief judge of the district or his designee to "determine solely on the

basis of information provided on the juror qualification form and other competent

evidence whether a person is unqualified for , or exempt, or to be excused for jury

service." *Id*. A prospective juror is deemed qualified unless: 1) he is not a citizen at least

eighteen years old and resided for a period of one year within the judicial district; 2) is

unable to read, write, and understand English sufficiently to fill out the juror

qualification form; is unable to speak English; has a mental or physical infirmity making

him incapable of rendering satisfactory jury service; or 5 has been convicted of a felony,

or has a pending felony charge. *Id*.

The local Plan exempts from service "members in active service full-time in the

armed forces of the United States, full-time members of state and local fire or police

departments, and public officers in the executive, legislative, or judicial branches of the

United States or the State of Illinois, who are actively engaged full-time in the performance of official duties." Plan at 8. The Plan excuses from jury service upon individual request: 1) persons over 70 years of age; 2) Persons who have served on a grand or petit jury with in the past two years; persons having active care of a child under 10 years of age whose health or safety would be jeopardized by jury service; or a person who is essential to the care of aged or infirm persons; 4) any person whose services are so essential to the operation of a business, commercial, or agricultural enterprise that the enterprise must close if the person is required to perform jury service; 5) full-time attorneys and physicians; and volunteer safety personnel. Plan at 8-9.

"The presiding district judge or judges in each division, on their own initiative or upon recommendation of the clerk, shall determine solely on the basis of the information provided on the juror qualification questionnaire and other competent evidence whether a person is qualified, exempt, or to be excused from jury service." Plan at 9. The clerk of court may determine whether persons are qualified, exempt or excused from jury service, with the exception of "(1) determining whether a person will be excused because his or her services are essential to the operation of a business, commercial or agricultural enterprise; (2) determining whether a person is disqualified because he or she is incapable by reason of mental or physical infirmity of rendering satisfactory jury service; and (3) any other determinations requiring the exercise of discretion. All matters of discretion are reserved for determination by the presiding

judge unless the presiding judge specifically authorizes the clerk to make such
determinations." *Id*.

The Act and the Plan make clear the importance of juror questionnaires. They
provided the information used to determine if a juror is qualified and, if qualified,
whether the juror is exempt from service, or will be excused from service. Without
access to the questionnaires Mr. Christensen cannot determine whether he has a
potentially meritorious jury challenged based on failure to objectively apply objective
criteria when qualifying jurors.

A prime example of how defense access to juror questionnaires can lead to the
discovery of violations of the Act is *United States v. Northside Realty Associates, Inc.*, 510
F.Supp. 668 (N.D. GA. 1981), *overruled by United States v. Bearden*, 659 F.2d 590 (5th Cir.
1981). Review of the juror questionnaires revealed numerous examples of potential
jurors being improperly exempted or excused from jury service. *Bearden*, 659 F.2d at
604-607. While the Fifth Circuit ultimately found the wrongful exclusions did not
amount to a substantial violation of the Act, that determination could only be made
after the defense had an opportunity to review juror questionnaires to determine if
there were errors in granting exemptions and exclusions and then file a motion setting
forth their arguments as to why those errors amounted to a substantial violation of the
Act. "[W]ithout inspection, a party almost invariably would be unable to determine
whether he has a potentially meritorious jury challenge." *Test*, 420 U.S. at 750.

Neither *Davenport* nor any of the other district court cases cited by the
government denying access to juror questionnaires address this issue. They are all

based on the notion that juror questionnaires are not necessary to establish a fair cross

section challenge. *Davenport*, 842 F.2d at 1515 (discussing only right under the Act to

fair cross section); *United States v. Savage*, 2012 WL 4616099, *4 (E.D. Pa. 2012) ("the

Sixth Amendment and the JSSA guarantee defendants a trial by a jury selected from a

fair cross-section of the community" with no discussion of Act's purpose that

determination of juror disqualifications, excuses, exemptions, and exclusions on the

basis of objective criteria only); *United States v. Rice*, 489 F.Supp.2d 1312, 1319 (S.D. Ala.

2007) (refusing to provide questionnaires given "the apparent unhelpfulness of such

questionnaires in assessing the viability of any fair cross-section challenge."); *United

States v. Nichols*, 248 F.Supp.2d 1027, 1035 (D. Kan. 2003) ("It is not the actual selection

of the grand jury which would constitute the violation, but rather whether the jury was

selected 'at random from a fair cross section of the community.'").

  Arguably, *United States v. Diaz*, 236 F.R.D. 470 (N.D. Cal. 2006), discusses the need

for juror questionnaires to determine if the implementation of a local plan is in

substantial violation of the Act due to improper exclusions or exemptions. We say

arguably because at one point in the opinion the district court states the only purpose

of the Act is to ensure a jury drawn from a fair cross section of the community. *Id*. at

476. And, the district court denied access to the juror questionnaires for the grand jury

members who indicted the defendants on the basis that data kept by the clerk's office

contained the demographic data needed to make a fair cross section challenge. *Id*. at

482.

The district court denied access to juror questionnaires "of those persons not qualifying for service" because "defendant have not shown that this district's jury-selection plan provides for disqualification, exclusion, excusal or exemption inconsistently with the Act." *Id*. at 482. That is the same mistake made by the district judge in *Test*. A court cannot deny access to jury information under the Act because they have not yet been able to prove a violation of the Act. Again, the Supreme Court in *Test* explained "without inspection, a party almost invariably would be unable to determine whether he has a potentially meritorious jury challenge." *Test*, 420 U.S. at 750. Access to juror questionnaires is essential for determining if there is a potentially meritorious jury challenge on the basis that the execution of the Plan exempts or excuses potential jurors based on nonobjective factors or based on subjective interpretation or application of otherwise objective factors.

6.    **The completed juror qualification forms of, or an electronic database detailing, all persons disqualified, excused, or exempted from service, and any other materials or information concerning these determinations (including requests for excusal and exemption and orders or notations concerning excusals, exemptions, and disqualifications)**

The government objects to Mr. Christensen receiving this information based on the grounds that he is not entitled to receive the juror questionnaires. Gov. Resp. at 13. Mr. Christensen has already explained why that assertion is wrong. The government relies upon *Diaz* to support its claim but, again, Mr. Christensen has already explained why *Diaz* is wrong. Denying access to jury records because you have not yet established a violation of the Act violates the Act. The Supreme Court so held in *Test*, based, in part,

on the government's concession that that was the only reasonable interpretation of the

Act. *Test*, 420 U.S. at 750.

**7.      All documents, materials and information concerning the delegation of responsibility for determining whether persons are qualified, exempt or excused from jury service and standards**

The government objects to Mr. Christensen receiving this information because he

has not made "any showing that the presiding Judge or Clerk of Court are not

following the Court's Plan" and claims Mr. Christensen has not cited any cases

establishing that "the Court must turn over internal documents to a defendant." Gov.

Resp. at 15. Both assertions are wrong.

At the risk of being repetitive, Mr. Christensen does not need to prove a violation

of the Plan to gain access to "records or papers used by the jury commission or clerk in

connection with the jury selection process" as authorized by 28 U.S.C. § 1867(a) and (f).

Here is how *the government* made the argument in *Test*:

> Section 1867(f) governs the disclosure of records used in the jury
> selection process, and that Section expressly provides that "[t]he parties in
> a case shall be allowed to inspect, reproduce, and copy such records of
> papers at all reasonable times during the preparation and pendency of [a
> motion to dismiss] * * * ." Section 1867(f) on its face thus confers a right of
> access to jury records without any required showing by the requesting
> party, and this literal reading of the statute has been adopted by several
> courts of appeals.

> Indeed, such an unqualified right of discovery appears to be
> necessary to the effective use of the challenge procedures specified in the
> Act . . . , and nothing in the Act's legislative history suggests that Congress
> intended that a party's right to inspect jury records be qualified in any
> manner.

Gov. Brief, *Test v. United States*, 420 U.S. 28 (1975), 1974 WL 186121 at *8 (internal citations omitted) (footnote omitted).

As for case law, *Test* provides all the support Mr. Christensen needs. But in addition to *Test* the government's own case law shows Mr. Christensen is entitled to this category of records. In *Diaz*, the district court acknowledged "[c]lerks may made determinations in the jury-questionnaire screening process that are neither 'subjective' nor 'extrastatutory.'" *Diaz*, 236 F.R.D. at 482. The Diaz court then found that under the plan at issue "[d]iscretionary determinations are made by the chief judge." *Id*. The Plan here states: "All matters of discretion are reserved for determination by the presiding judge unless the presiding judge specifically authorizes the clerk to make such determinations." Plan at 9. Given the Plan's authorization for the presiding judge to authorize the clerk to make discretionary decisions as to juror qualifications and exclusions and exemption, Mr. Christensen must have access to the records documenting any such delegation of authority.

   8.    **The date that the Master Jury Wheel and Qualified Jury Wheel for the grand jury that issued the indictment in this case was filled, when the Master Jury Wheel and Qualified Jury Wheel is scheduled to be emptied and refilled, and information regarding whether the Master Jury Wheel and Qualified Jury Wheel for the grand jury that issued the indictment in this case will be the same wheels used in selection of the petit jury selection process.**

The government does not seriously challenge Mr. Christensen's right to access to this information.

16

Finally, Mr. Christensen does not object to the Court entering an order preventing defense counsel and government counsel form contacting any individuals whose names and personal information are provided pursuant to this request.

Respectfully submitted,

BRENDT A. CHRISTENSEN, Defendant

/s/Elisabeth R. Pollock
Assistant Federal Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org

/s/ George Taseff
Assistant Federal Defender
401 Main Street, Suite 1500
Peoria, IL 61602
Phone: 309-671-7891
Fax:      309-671-7898
Email: George_Taseff@fd.org

/s/ Robert Tucker
Robert L. Tucker, Esq.
7114 Washington Ave
St. Louis, MO 63130
Phone: 703-527-1622
Email: roberttuckerlaw@gmail.com

/s/ Julie Brain
Julie Brain, Esq.
916 South 2nd Street
Philadelphia, PA 19147
Phone: 267-639-0417
Email: juliebrain1@yahoo.com

17

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 17, 2018, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system which will send notification of such

filing to Assistant United States Attorneys Bryan D. Freres and Eugene L. Miller and

Trial Attorney James B. Nelson. A copy was also mailed to the defendant.

<u>/s/Elisabeth R. Pollock</u>
Assistant Federal Public Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org