E-FILED
Friday, 24 August, 2018  05:15:54 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.17-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | Hearing Requested |

DEFENDANT'S MOTION TO SUPRESS STATEMENTS
SURREPTITIOUSLY RECORDED BY T.E.B.

Defendant, BRENDT A. CHRISTENSEN, by and through his attorneys, moves

this Court to suppress all statements surreptitiously recorded by T.E.B. between June

16, 2017, and June 29, 2017, and in support thereof states as follows:

**Background**

On the evening of June 9, 2017, Yingying Zhang, an International Scholar at the

University of Illinois, was reported missing by a colleague from the University. Police

and FBI investigation revealed video of Ms. Zhang entering a black Saturn Astra at

about 2:00 p.m. on June 9, 2017. A search of motor vehicle records eventually revealed

that Brendt Christensen owned a black Saturn Astra. On June 12, 2017, police spoke

with Mr. Christensen at his apartment. Mr. Christensen gave consent for the police to

search his vehicle and told police that he had been home either sleeping or playing

video games on the afternoon of June 9, 2017.

Review of additional video of Ms. Zhang entering the black Saturn Astra

1

revealed that the passenger side front hubcap of the car was cracked. Police returned to Mr. Christensen's apartment on June 14, 2017, and confirmed his vehicle's passenger side front hubcap was cracked in a manner consistent with the crack shown on the video. A day later FBI Agents obtained a federal search warrant for Mr. Christensen's car. Agents executed the warrant at 11:45 p.m. on June 15, 2017. While the Agents were searching the car Mr. Christensen was taken to the local FBI office.

Mr. Christensen initially waived his right to remain silent and told Agents that when he had spoken with them on June 12, 2017, and denied seeing Ms. Zhang or giving her a ride on June 9, 2017, he had been confused as to the day the Agents were speaking about and admitted that on June 9, 2017, he had given Ms. Zhang a ride. Mr. Christensen told the agents he only drove Ms. Zhang a short distance before she became panicked causing him to let her out of the car a short distance from where he picked her up. Mr. Christensen then invoked his right to speak with a lawyer. Agents arrested Mr. Christensen for making false statements, booking him into the Ford County Jail. About a day later, June 16, 2017, at 12:35 a.m., Mr. Christensen was released with no charges being filed. From that time forward Mr. Christensen was under constant surveillance by the FBI.

As part of the FBI's investigation Agents interviewed Mr. Christensen's girlfriend, T.E.B. On June 16, 2017, T.E.B. signed an FBI 472 authorizing the FBI to utilize recording devices "for the purpose of monitoring, viewing, listening to and/or recording any activity I may have with Brendt A. Christensen and others as yet unknown which I may have on or about 6/16/2017 and continuing thereafter until such

a time as either I revoke my permission or the FBI terminates the investigation." Exhibit

A. The form further states T.E.B.'s consent to record her conversations with Mr.

Christensen was given "voluntarily, and without threats or promises of any kind." *Id*.

The form contains the following limitation on T.E.B.'s authority to use any recording

device:

> I understand that I must be a party to any communication in order to
> record or monitor that communication. I therefore agree not to leave the
> recording or monitoring equipment unattended or take any action which
> is likely to result in the recording or monitoring of communications to
> which I am not a party.

See Exhibit A.

T.E.B. subsequently recorded multiple conversations with Mr. Christensen.

Recordings were made of T.E.B.'s and Mr. Christensen's private meetings on June 19,

20, 21, 22, 2017. Recordings were made of both a telephone call and an in-person

meeting between T.E.B. and Mr. Christensen on June 23, 2017. Finally, a recording of

T.E.B.'s and Mr. Christensen's conversation, along with the conversations of many other

people, was made on June 29, 2017, at a benefit walk held for Ms. Zhang.

**Applicable Law**

It is a federal crime subject to fine and up to five years of imprisonment to use an

electronic or mechanical or other device to intercept any oral communication if the

device transmits communications by radio or the device or any component thereof has

been sent through the mail or transported in interstate or foreign commerce or to

disclose the content of any oral communication knowing or having reason to know that

the information was obtained through the interception of a wire, oral, or electronic

communication in violation of this subsection." 18 U.S.C. § 2511(1)(b) and 4(a). No part of an intercepted oral communication "may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter." 18 U.S.C. § 2515.

There are exceptions to § 2511(1)(b)'s prohibition on intercepting oral communications. Section 2511(2)(c) states: "It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(c). Presumably, the government will argue T.E.B. was acting under color of law when she intercepted and recorded her conversations with Mr. Christensen. That argument fails, however, unless the government can prove T.E.B. knowingly, intelligently, and voluntarily consented to the government recording her conversations with Mr. Christensen.

To prove a cooperating witness voluntarily consented to the recording of her conversations "it will normally suffice for the Government to show that the informer went ahead with a call (or other recorded activity) knowing what the law enforcement officials were about." *United States v. Horton*, 601 F.2d 319, 322 (7th Cir. 1979) (quoting *United States v. Bonanno*, 487 F.2d 654, 658 (2nd Cir. 1973)). The fact the witness may receive some benefit from her cooperation, including avoiding potential criminal

4

penalties, does not necessarily vitiate the cooperating witness' consent. "Once it is shown that the cooperation has been undertaken, barring some affirmative evidence of will-overbearing coercive threats, we believe . . . that the participation in monitoring or recording a telephone or other conversation in which the informant is a participant is merely incidental to the previously determined course of cooperation with law enforcement officials." *Id*. at 323.

There are limits to the voluntariness of consent obtained through the promises of benefits or the threat of penalties. "The situation of consent, of course, might well be different if the consensual cooperation had been secured by actual threats of a physical nature or of prosecutorial action which had no realistic foundation." *Horton*, 601 F.2d at 322-323.

## Analysis

### A.    T.E.B.'s consent to having her and Mr. Christensen's conversations recorded.

There is no doubt T.E.B. surreptitiously intercepted and recorded her oral and wire communications with Mr. Christensen between June 19, 2017, and June 29, 2017. T.E.B. recorded six in-person conversations and one telephone conversation. Her actions violated 18 U.S.C. § 2511 unless she was in fact acting under color of law and had voluntarily consented to the recording of her conversations with Mr. Christensen.

T.E.B. appears to have signed an FBI "FD-472" form stating that she consented to the FBI recording her conversations with Mr. Christensen. Exhibit A. The form states that T.E.B.'s consent was made "voluntarily and without threats or promises of any

kind." Exhibit A. But a signature on a consent form, even a form that claims the consent is freely given, can be obtained involuntarily through threats or promises. *United States v. Ivy*, 165 F.3d 397, 402-404 (6th Cir. 1998) (consent to search house involuntary even though defendant signed a written consent to search as officers coerced defendant into signing form); *United States v. Tatman*, 397 Fed.Appx. 152, 165 (6th Cir. 2010) (despite wife's signature on consent form consent not voluntary under the circumstances). Additionally, "the existence of a signed consent form is not, without more, always sufficient proof of voluntary consent" though it is "strong evidence that consent was freely and knowingly given." *United States v. Gaviria*, 775 F.Supp. 495, 500 (D.R.I. 1991).

In several text messages from and to T.E.B.'s cellular telephone on June 16, 2017, the date she signed the FBI FD-472, T.E.B. complains of not feeling well. Specifically, in numerous different text messages T.E.B. says she "blacked out," she "feels sick," she "went into shock and passed out," she was "in and out emotionally," her "heart [was] pounding . . . I'm just upset," and she "went into shock and passed out while talking to [Mr. Christensen]." Additionally, T.E.B. stated the "FBI is going to take me in again soon," and "the FBI are taking me in for more questioning."

The government bears the burden of proving T.E.B. consented to the recording of her conversations with Mr. Christensen. The FD-472 Form is not in-and-of-itself sufficient proof of that consent. T.E.B.'s text messages from June 16, 2017, show an emotionally unstable individual who appears to lack the mental capacity to knowingly and voluntarily agree to anything, let alone something as serious as cooperating with the FBI in a kidnapping investigation. Her statements about the FBI "tak[ing] me in

again soon," and "taking me in for more questioning" also raise the question of whether T.E.B. was threatened with baseless criminal charges if she did not agree to consent to the recording of her communications with Mr. Christensen. A hearing is necessary to test the voluntariness of T.E.B.'s consent.

**B.     T.E.B.'s recording of the memorial walk conversation was not under color of law.**

If T.E.B. did consent to the recording of her and Mr. Christensen's conversations as purported in her agreement with the FBI, she was not acting under color of law when she recorded her and Mr. Christensen's conversation at the memorial walk on June 29, 2017. T.E.B.'s agreement to record her conversations with Mr. Christensen specifically limited the recording activities she was authorized to conduct. Specifically, the FD-472 form states:

> I understand that I must be a party to any communication in order to record or monitor that communication. I therefore agree not to leave the recording or monitoring equipment unattended or take any action which is likely to result in the recording or monitoring of communications to which I am not a party.

Exhibit A.

T.E.B. violated this limitation on her authority to intercept and record her conversations with Mr. Christensen when she activated her recording device on June 29, 2017, just before meeting Mr. Christensen at the memorial walk. T.E.B. obviously knew many people would attend the memorial walk and having her recording device activated while walking among the crowd would "likely [] result in the recording or monitoring of communications to which [she was] not a party."

If T.E.B. could have had any doubt about intercepting conversations to which she was not a party (and she could not), that doubt would have been removed when Mr. Christensen told her via text message that he was on the steps of the Krannert Center for the Performing Arts "by people." That text occurred at 6:34:44 p.m. Central Standard Time and T.E.B. activated the recording device at 6: 46 p.m. CST. Furthermore, once T.E.B. met Mr. Christensen they were in a large crowd, Exhibits B and C, making it a certainty that T.E.B.'s actions in activating her recording device would result "in the recording or monitoring of communications to which [she was] not a party."

Given this situation it is no surprise that T.E.B. did, in fact, monitor and record conversations to which she was not a party. The recording T.E.B. created on June 29, 2017, contains innumerable conversations to which she was not a party. These include conversations of unidentified individuals attending the memorial walk and several telephone conversations Mr. Christensen participated in to which T.E.B. was not a party.

"[W]hen assessing whether someone acted under 'color of law' for the wiretap statute, the question is whether the witness was acting under the government's direction when making the recording." *United States v. Andreas*, 216 F.3d 645, 660 (7th Cir. 2000). T.E.B. could not have been acting under the government's direction when making the memorial walk recording as she was engaging in conduct the government has specifically told her she was forbidden to engage in.

It's no wonder the government's FD-472 form warns cooperating witnesses not to record conversations to which they are not a party. The law enforcement exception

8

contained in 18 U.S.C. § 2511(c)(2) only allows a cooperator "acting under color of law to intercept a wire, oral, or electronic communication, *where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception*." 18 U.S.C. § 2511(2)(c) (emphasis added). Other than her conversation with Mr. Christensen, T.E.B. was not a party to the many conversations she recorded on June 29, 2017, and none of the recorded individuals had consented to the interception of their conversations. T.E.B. committed a crime when she intercepted and recorded the numerous conversations on the June 29, 2017, to which she was not a party. That is why the FBI tells its cooperating witnesses not to "take any action which is likely to result in the recording or monitoring of communications to which [they are] not a party." Each of the individuals who had their conversations recorded by T.E.B. has a civil cause of action against her for violating § 2511. 18 U.S.C. § 2520.

No part of an intercepted oral communication "may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter." 18 U.S.C. § 2515. As T.E.B.'s June 29, 2017, recording of her conversation with Mr. Christensen was made in violation of § 2511, that recording is not admissible at Mr. Christensen's trial.

WHEREFORE, the Defendant respectfully requests that this Court suppress all statements surreptitiously recorded by T.E.B.

Respectfully submitted,

/s/Elisabeth R. Pollock
Assistant Federal Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org

/s/ George Taseff
Assistant Federal Defender
401 Main Street, Suite 1500
Peoria, IL 61602
Phone: 309-671-7891
Fax:     309-671-7898
Email: George_Taseff@fd.org

/s/ Robert Tucker
Robert L. Tucker, Esq.
7114 Washington Ave
St. Louis, MO 63130
Phone: 703-527-1622
Email: roberttuckerlaw@gmail.com

/s/ Julie Brain
Julie Brain, Esq.
916 South 2nd Street
Philadelphia, PA 19147
Phone: 267-639-0417
Email: juliebrain1@yahoo.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 24, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorneys Bryan D. Freres and Eugene L. Miller and Trial Attorney James B. Nelson. A copy was also mailed to the defendant.

<u>/s/Elisabeth R. Pollock</u>
Assistant Federal Public Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:    217-373-0667
Email: Elisabeth_Pollock@fd.org

FD-472 (Rev.10-20-2015)

6/16/2017
(Date)

Champaign, IL
(Location)

I. _____ , authorize
(Name)

Special Agents Andrew M. Huckstadt and Brian Schurkulberg

of the Federal Bureau of Investigation, United States Department of Justice, to utilize the following

(initial all that apply):

☑ TB X Body Recorder, microphone, or other recording device on or in the vicinity of my person;

☑ TB X Transmitter on or in the vicinity of my person;

☑ TB X Recording device or other equipment to capture and record telephone communications, including conversations (voice), text messages, e-mails, Internet, or other communications made or received over any telephone used by me;

_____ Utilize Closed Circuit Television (CCTV) or other video equipment located at

_____ to view
(List address, Name/Location of Hotel, or Description of vehicle etc., or state "on consenting party")

_____
(If not "on consenting party," describe area to be viewed (i.e. residence kitchen area, restaurant rear table etc.))

and/or

_____ Other (Specify): _____
(Note: "Other" category may not be used to document consent for the monitoring of computer electronic communications. For consent/authorization to monitor computer communications, including the communications of a computer trespasser, refer to the FD-1070 and/or FD-1071, as appropriate.)

for the purpose of monitoring, viewing, listening to, and/or recording any activity I may have with

Brandt A. Christensen _____ and others as yet unknown
(Name of Subject(s))

which I may have on or about 6/16/2017 and continuing thereafter until such a time as
(Date)

either I revoke my permission or the FBI terminates the investigation.

I understand that I must be a party to any communication in order to record or monitor that communication. I therefore agree not to leave the recording or monitoring equipment unattended or take any action which is likely to result in the recording or monitoring of communications to which I am not a party.

**AND/OR**

_____ Install a Pen Register and/or Trap and Trace device in conjunction with the appropriate provider(s) of electronic or wire communications service and/or long distance carrier for the purpose of identifying telephone numbers calling and being called by telephone number _____ located at/subscribed to by _____

_____ which is used by me.

(Address)

I have given this written permission to the above-named Special Agents voluntarily, and without threats or promises of any kind.

Witnessed

_____

_____
(Signature)

Privacy Act Statement: Any information collected from you on this form, along with any other device provided to you for use on your person, vehicle, or other object, or for use at the designated location listed on this form, will collect information about you, as authorized by law, and will be used to support FBI activities. Your consent to providing information on this form and to the subsequent collection of information in the manner outlined on this form is voluntary. This information is maintained in the system of records FBI-002, FBI Central Records System, and may be disclosed in accordance with published routine uses for the system. The text of FBI-002 and its routine uses may be found on the FBI internet site at http://www.fbi.gov/foia/privacy-act/systems-records.

GOV00841

Christensen-000841





Exhibit C