UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Crim. No. 17-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | <u>Hearing Requested</u> |
| | ) | |
| Defendant. | ) | |

<u>MOTION TO SUPPRESS STATEMENTS</u>

Now comes the Defendant, BRENDT A. CHRISTENSEN, by and through his attorneys, and pursuant to Fed. R. Crim. P. 12(b)(3)(C), moves this Court for the entry of an Order suppressing all statements, whether written or oral, and whether inculpatory or exculpatory, which are alleged to have been made by Mr. Christensen to officers and agents of the Federal Bureau of Investigation, the University of Illinois Police Department, and to an individual identified in discovery as an FBI "Confidential Human Source" and referred to herein as "TLB," on or about June 14-15, 2017, June 17, 2017, June 23, 2017, and June 29, 2017, and in support thereof states as follows:

**Factual Background**

1.  On June 14, 2017, at approximately 11:45 p.m., multiple agents of the Federal Bureau of Investigation proceeded to Mr. Christensen's residence located at 2503 Springfield Avenue, Apartment B2 in Champaign, Illinois, to execute a federal search warrant for a 2008 Saturn Astra automobile that was registered to Mr.

Christensen and the his wife. Once at Mr. Christensen's residence, the agents presented him with a copy of the warrant and asked if he would be willing to answer some questions at the FBI office, to which Mr. Christensen stated, "I should probably ask for a lawyer in situations like this." The agents then took Mr. Christensen into custody and transported him to the Champaign Resident Agency Office located at 2117 West Park Court in Champaign, Illinois, for questioning.

2. Upon arriving at the Champaign Resident Agency Office shortly after 12:00 a.m. on June 15, 2017, FBI Special Agent Anthony Manganaro and University of Illinois Police Department Detective Eric Stiverson took Mr. Christensen to a small, closed, and windowless interrogation room where they advised him of his rights and questioned him at length concerning the disappearance of an Asian female graduate student at the University of Illinois at Champaign-Urbana that was reported to law enforcement authorities on June 9, 2017. As a result of the agents' interrogation of Mr. Christensen, Mr. Christensen is alleged to have made various statements which the Government will seek to use as evidence against him.

3. During the course of the custodial interrogation session, at approximately 1:26 a.m., however, Mr. Christensen again specifically and unequivocally invoked his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), by advising Agent Manganaro and Detective Stiverson that "I really don't want to talk no more without a lawyer."

4. In response thereto, Agent Manganaro and Detective Stiverson terminated their interrogation of Mr. Christensen at approximately 1:30 a.m., and left him alone in

the room. Agent Manganaro telephoned an Assistant United States Attorney to report the results of the interrogation, and the Assistant United States Attorney advised Agent Manganaro to hold Mr. Christensen in custody for review of violations of Title 18 U.S.C. §1001, and to transport him to the Ford County Detention Facility in Paxton, Illinois, pending that review.

5. While Mr. Christensen was waiting in the interrogation room at the FBI Office to be transported to the Ford County Detention Facility, FBI Special Agent Harvey Pettry entered the interview room "to keep [Mr. Christensen] company" while the transport was being arranged. At the time he entered the interrogation room, Agent Pettry knew that Mr. Christensen previously had invoked his *Miranda* rights during his interrogation by Agent Manganaro and Detective Stiverson. Notwithstanding that fact, Agent Pettry initiated a second round of interrogating Mr. Christensen without counsel present, and as a result thereof, Mr. Christensen is alleged to have made various oral statements to Agent Pettry which the Government will seek to use as evidence against him.

6. On June 15, 2017, at 2:36 a.m., Mr. Christensen departed the FBI Resident Agency Office in Champaign in the custody of three law enforcement officers and arrived at the Ford County Detention Facility in Paxton, Illinois, at 3:04 a.m., where Mr. Christensen was booked into the jail.

7. On June 16, 2017, at or shortly after midnight, Mr. Christensen was released from custody at the Ford County Detention Facility in Paxton, Illinois, and was

driven directly to the Super 8 Hotel in Rantoul, Illinois, by two or more federal agents, where he arrived at approximately 1:00 a.m. on June 16, 2017, and checked into the hotel for the night.

8.  Later, on June 16, 2017, FBI Special Agents Andrew Huckstadt and Brian Schenkelberg met with a female associate of Mr. Christensen (who is hereinafter referred to "TLB") at the FBI Champaign Resident Agency. As a result of that meeting, "TLB" agreed to serve as a documented "confidential human source" for the FBI and executed a Form FD-472 wherein she agreed to wear or utilize a body recorder, microphone, transmitter, or other recording device "for the purpose of monitoring, viewing, listening to, and/or recording any activity I may have with Brendt A. Christensen….which I may have on or about 6/16/2017 and continuing thereafter until such time as either I revoke my permission or the FBI terminates the investigation."

9.  Between June 16-17, 2017, FBI Special Agent Katherine Tenaglia initiated a series of phone conversations and text messages with Mr. Christensen's wife for the purpose of obtaining incriminating information from Mr. Christensen through his wife's questioning of him. Special Agent Tenaglia also solicited Mr. Christensen's wife to encourage and insist that Mr. Christensen contact the FBI and agree to speak with them to clear things up, notwithstanding the fact that Special Agent Tenaglia knew or should have known that Mr. Christensen had specifically invoked his right to counsel and had refused to speak to the FBI on two previous occasions. On information and belief, Mr. Christensen's wife agreed to follow Special Agent Tenaglia's suggestions,

4

and thereafter strongly encouraged, pressured, and insisted that Mr. Christensen contact the FBI and go speak with them to answer questions and clear things up.

10. Accordingly, on June 17, 2017, at 1:52 p.m., FBI Special Agents Michael Carter, Brian Schenkelberg, and Katherine Tenaglia initiated contact with Mr. Christensen for an interview at the FBI Resident Agency Office in Champaign, Illinois, notwithstanding the fact that said agents knew, or should have known, that Mr. Christensen previously had twice invoked his *Miranda* rights when confronted by the agents at his residence on June 14, 2017, and during his interrogation by Agent Manganaro and Detective Stiverson on June 15, 2017. As a result of that interview, Mr. Christensen was questioned at length by Agents Carter and Schenkelberg without counsel present and is alleged to have various statements which the Government will seek to use as evidence against him.

11. On June 23, 2017, pursuant to her role as an FBI Confidential Human Source, and acting under the supervision, direction and control of the FBI agents, "TLB" initiated a series of telephone text messages with Mr. Christensen and deliberately engaged in surreptitious questioning of Mr. Christensen for the purpose of eliciting incriminating statements from him. Again, "TLB" was directed and authorized to engage in such investigative conduct by the very same FBI agents who knew, or should have known, that Mr. Christensen had twice invoked his *Miranda* rights when confronted by the agents at his residence on June 14, 2017, and during his interrogation by Agent Manganaro and Detective Stiverson on June 15, 2017. As a result of "TLB's"

text messages with Mr. Christensen on June 23, 2017, Mr. Christensen is alleged to have made various written statements which the Government will seek to use as evidence against him.

12. On June 29, 2017, from approximately 6:30 p.m. to 8:45 p.m., "TLB," pursuant to her role as an FBI Confidential Human Source, and wearing a recording device, and acting under the supervision, direction and control of the FBI agents, initiated a number of conversations and communications with Mr. Christensen, and thereby deliberately engaged in surreptitious questioning and recording of Mr. Christensen for the purpose of eliciting incriminating statements from him. Again, "TLB" was directed and authorized to engage in such investigative conduct by the very same FBI agents who knew, or should have known, that Mr. Christensen had twice previously invoked his *Miranda* rights during when confronted by the agents at his residence on June 14, 2017, and during his interrogation by Agent Manganaro and Detective Stiverson on June 15, 2017. As a result of "TLB's" conversations and communications with Mr. Christensen on June 29, 2017, Mr. Christensen is alleged to have made various statements which the Government will seek to use as evidence against him.

**Argument**

13. All of Mr. Christensen's statements which are alleged to have been made by him to officers and agents of the Federal Bureau of Investigation, the University of Illinois Police Department, and to "TLB," the FBI's Confidential Human Source, on June

14-15, 2017, June 17, 2017, June 23, 2017, and June 29, 2017, were involuntary and were obtained in violation of Mr. Christensen's rights secured under the Fifth and Sixth Amendments to the United States Constitution. *Miranda v. Arizona*, 384 U.S. 436 (1966); *United States v. Dickerson*, 520 U.S. 428 (2000).

14. In *Miranda v. Arizona*, 384 U.S. 436, 469-73 (1966), the Supreme Court held that before the police can interrogate a suspect who is in police custody, the officers must first advise the suspect of his right to consult with an attorney and to have counsel present during the interrogation. Under *Miranda* and its progeny, if the suspect invokes his right to have counsel present with him during the interrogation, the suspect is not subject to further interrogation until counsel is present or until the suspect himself initiates further discussions. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981); *Arizona v. Roberson*, 486 U.S. 675, 682 (1988); *McNeil v. Wisconsin*, 501 U.S. 171, 176-77 (1991); *United States v. McKinley*, 84 F.3d 904, 908 (7th Cir. 1996) ("If a suspect invokes his right to counsel as to one offense, he may not be reapproached and interrogated about that or a separate offense unless counsel is present").

15. In *Edwards v. Arizona, supra*, the Supreme Court established a presumption that once a suspect invokes his right to counsel during a custodial interrogation, any subsequent *Miranda* waiver is involuntary until counsel is present or the suspect himself initiates communication, exchanges, or conversation. *Arizona v. Roberson*, 486 U.S. 675, 680–81 (1988). The *Edwards* presumption "is not offense specific." *McNeil v. Wisconsin*, 501 U.S. 171, 177 (1991) (citing *Roberson*, 486 U.S. at 682–83). Accordingly, "[o]nce a

7

suspect invokes the *Miranda* right to counsel for interrogation regarding one offense, he may not be reapproached regarding any offense unless counsel is present." *Id.*

16.     Even if the suspect is alleged to have reinitiated a conversation with the police, the burden "remains upon the prosecution to show that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation." *United States v. Huerta*, 239 F.3d 865, 873 (7th Cir. 2001); citing *Oregon v. Bradshaw*, 462 U.S. 1039, 1044 (1983). To establish a valid waiver, the government must show that the waiver was knowing, intelligent, and voluntary under the "high standar[d] of proof for the waiver of constitutional rights [set forth in] *Johnson v. Zerbst*, 304 U.S. 458 (1938)." *Miranda*, 384 U.S. at 444.  But it is important to note in reference to this case that "an *Edwards* initiation occurs when, **without influence by the authorities,** the suspect shows a willingness and a desire to talk generally about his case through a third person…what is important is the impetus for discussion comes from the suspect himself." *Van Hook v. Anderson*, 488 F.3d 411, 418 (6th Cir. 2007) (emphasis added); *see also United States v. Whaley*, 13 F.3d 963, 966-67 (6th Cir. 1994).

17.     In *Maryland v. Shatzer*, 559 U.S. 98 (2010), the Court delineated the scope of the *Edwards* presumption by holding that its protections to the suspect cannot extend into perpetuity. In *Shatzer*, the Court considered whether, and under what circumstances, a break in custody terminates *Edwards'* protections. The Court held that, when a suspect invokes the right to counsel during custodial interrogation, but is subsequently released from *Miranda* custody for a period of 14 days or more, the

8

*Edwards* presumption dissolves, and the police may reinitiate questioning so long as the suspect gives a valid waiver of his Fifth Amendment rights. *Shatzer*, 559 U.S. at 109–10.

18.     In this case, Mr. Christensen clearly and unequivocally invoked his right to counsel under *Miranda* two times: first, on June 14, 2017, at 11:45 p.m., when confronted by the FBI agents at this residence with the warrant to search his vehicle, by stating, "I should probably ask for a lawyer in situations like this;" and second, on June 15, 2015, approximately 1:26 a.m., at the Champaign Resident Agency Office by advising Agent Manganaro and Detective Stiverson that, "I really don't want to talk no more without a lawyer."

19.     Notwithstanding his invocation of his *Miranda* rights, Mr. Christensen was subject to police-initiated interrogation in the absence of counsel on June 14-15, 2017, and June 17, 2017, and police-initiated, surreptitious interrogation in the absence of counsel by FBI confidential human source "TLB" on June 23, 2017, and June 29, 2017, within the 14 day window of his release from *Miranda* custody from the Ford County Jail on June 16, 2017. Under *Edwards, supra*, and its progeny, all of the statements which Mr. Christensen is alleged to have made on those four occasions should be suppressed as having been obtained by government agents in violation of Mr. Christensen's rights secured under the Fifth and Sixth Amendments to the United States Constitution.

WHEREFORE, Defendant requests the entry of an Order suppressing all statements, whether written or oral, and whether inculpatory or exculpatory, which are alleged to have been made by Mr. Christensen to officers and agents of the Federal Bureau of Investigation, the University of Illinois Police Department, and to an individual identified in discovery as an FBI "Confidential Human Source" and referred to herein as "TLB," on or about June 14-15, 2017, June 17, 2017, June 23, 2017, and June 29, 2017.

Respectfully submitted,

BRENDT A. CHRISTENSEN, Defendant

By: /s/ Elisabeth R. Pollock  
Assistant Federal Public Defender  
300 West Main Street  
Urbana, IL 61801  
Phone: 217-373-0666  
FAX:  217-373-0667  
Email: Elisabeth_Pollock@fd.org

/s/ George Taseff  
Assistant Federal Public Defender  
401 Main Street, Suite 1500  
Peoria, IL 61602  
Phone: 309-671-7891  
Fax:   309-671-7898  
Email: George_Taseff@fd.org

/s/ Robert Tucker  
Robert L. Tucker, Esq.  
7114 Washington Ave  
St. Louis, MO 63130  
Phone: 703-527-1622  
Email: roberttuckerlaw@gmail.com

/s/ Julie Brain  
Julie Brain, Esq.  
916 South 2nd Street  
Philadelphia, PA 19147  
Phone: 267-639-0417  
Email: juliebrain1@yahoo.com

CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the filing: Mr. Eugene Miller and Mr. Bryan Freres, Assistant United States Attorneys, 201 South Vine Street, Urbana, IL 61801, and Mr. James B. Nelson, Trial Attorney, Capital Case Section, 1351 F Street NW, Room 625, Washington, D.C. 20004. A copy was also mailed to Mr. Christensen.

/s/Elisabeth R. Pollock
Assistant Federal Public Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org