UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Crim. No. 17-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | Hearing Requested |
| | ) | |
| Defendant. | ) | |

**MOTION TO STRIKE ALL
NON-STATUTORY AGGRAVATING FACTORS IN THEIR ENTIRETY**

NOW COMES the Defendant, BRENDT A. CHRISTENSEN, by and through his attorneys, and pursuant to the Fifth, Sixth, and Eighth Amendments to the United States Constitution, moves this Court to Strike All Non-Statutory Aggravating Factors, and in support states as follows:

**I.     Procedural History**

On July 12, 2017, Defendant BRENDT A. CHRISTENSEN was charged by Indictment with one count of kidnapping in violation of 18 U.S.C. § 1201(a)(1). (R. 13) A Superseding Indictment was filed on October 3, 2017, alleging one count of kidnapping resulting in death in violation of 18 U.S.C. § 1201(a)(1) and two counts of false statements in violation of 18 U.S.C. § 1001(a)(2). The Superseding Indictment also contained a Notice of Special Findings listing four gateway intent factors under 18 U.S.C. § 3591(a)(2) and three statutory aggravating factors under 18 U.S.C. § 3592(c): that Y.Z.'s death occurred during the commission of a kidnapping (Section 3592(c)(1));

1

that the defendant committed the offense in an especially heinous, cruel or depraved manner (Section 3592(c)(6)); and that the defendant committed the offense after substantial planning and premeditation (Section 3592(c)(9)). (R. 26)

Count 1 of the Superseding Indictment was a death-eligible charge, and on January 19, 2018, the government filed its Notice of Intent to seek the death penalty (NOI). (R. 54) The NOI re-alleged the four intent factors as well as the three statutory aggravating factors contained in the Superseding Indictment, and added six non-statutory aggravating factors: victim impact evidence, future dangerousness, lack of remorse, other serious acts of violence, vulnerable victim, and obstruction of justice. (R. 54)

II.     **Argument**

Non-statutory aggravating factors play a specialized role in the jury's decision-making process in a federal death penalty case. The first decision a jury must make in the penalty phase is whether any of the gateway mental state elements set out at § 3591(a)(2) are present in the case. The (a)(2) elements involve state-of-mind determinations that require the government to prove that the killing at issue was intentional. If the government fails to prove to the jury's unanimous satisfaction and beyond a reasonable doubt that one (and only one) of the (a)(2) elements is present, the jury goes no further and the death penalty may not be imposed. If, however, the government does succeed in establishing an (a)(2) element, the jury proceeds to its second decision, whether one or more of the specific statutory aggravating factors set

out at § 3592(c)(1) through (16) has been established unanimously and beyond a reasonable doubt.

It is only if the government establishes, in sequence, both the existence of an (a)(2) element and one or more of the (c)(2) through (16) factors that the jury may consider so-called non-statutory aggravating factors.[1] At that point in the process, the statute permits the jury to return a special finding identifying "any other aggravating factor for which notice has been provided under subsection (a) which is found to exist." 18 U.S.C. § 3593(d). In this case, as summarized above, the government has put the defendant on notice that it will seek to prove, as the basis for the death penalty, both statutory and non-statutory aggravating factors.

### A. By its terms, the FDPA does not authorize the utilization of non-statutory aggravating factors

As interpreted by the government in this case, the FDPA allows the government, at virtual whim, to utilize non-statutory aggravating factors in pursuit of a death sentence. In this case the government has now set forth 6 non-statutory aggravating factors. However, a close reading of the FDPA reveals that the statute does not allow the Government to pursue non-statutory factors beyond victim-impact.

---

[1] The government's failure to establish either category of aggravating factor means that the sentence may not be death and the jury, therefore, need not reach the issue of mitigating circumstances and does not engage in weighing.

The FDPA statutory scheme requires the government, as part of its notice obligations, to file with the Court, and serve upon the defendant, a notice of intent to seek the death penalty that sets forth:

> [T]he aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.
>
> The factors for which notice is provided under this subsection may include factors concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim, and the victim's family, and any other relevant information.

18 U.S.C. § 3593(a). The statute also sets out 16 specific aggravating factors as relevant to this kind of case. 18 U.S.C. § 3592(c). The use of non-statutory aggravating factors – with the possible exception of victim-impact evidence – is simply not authorized by the statute. This is so because § 3592(c) of the statute contradicts § 3591(a) of the statute. The former provides that the jury "may consider whether any other aggravating factor for which notice has been given exists." 18 U.S.C. § 3592(c). But § 3591(a) provides that a defendant may be sentenced to death only after a consideration by the jury of "the factors set forth in § 3592 . . . ." Section 3592(c) contains, as noted above, a listing of 16 statutory aggravating factors and 16 such

factors only. Therefore, non- statutory factors may not be considered by a jury since they are not – and could not be – set out in § 3592.[2]

In *United States v. Nguyen,* 928 F.Supp. 1525, 1535 (D. Kan. 1996), the trial judge described, and rejected, the above-stated statutory argument as "hyper-literal." Yet, if Congress is going to go into the business of authorizing death sentences and executions, it has a concomitant responsibility to speak in language which is clear and unambiguous. Whatever political capital there is to be made in pursuit of the death penalty must be earned by clear legislative direction. Because the statute does not authorize non-statutory aggravating factors – except in the case of victim-impact – the non-statutory aggravating factors in this case must be dismissed.

> **B.    Non-statutory aggravating factors do not constitutionally limit and guide the discretion of the jury, thus permitting wholly arbitrary and capricious death sentences in violation of the Eighth and Fourteenth Amendments**

The Eighth Amendment requires that "where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Gregg v. Georgia*, 428 U.S. 153, 189 (1976). In particular, the Supreme Court's Eighth Amendment jurisprudence since *Gregg* has explained that while sentencers may not be prevented from considering any relevant information offered as a reason for sparing a defendant's life, the decision to

---

[2] This view of the requirements of the FDPA is reinforced by the fact that the section of the Act concerning appellate review, § 3595, makes reference only to aggravating factors considered by the jury under § 3592.

impose death must be guided by "carefully defined standards that must narrow a sentencer's discretion." *McClesky v. Kemp*, 481 U.S. 279, 304 (1987). By simultaneously promoting both individualized sentencing decisions and uniform application of the death penalty, these two principles are designed to provide a "meaningful basis for distinguishing the few cases in which it is imposed from the many cases in which it is not." *Furman v. Georgia*, 408 U.S.238, 313(1972) (White, J., concurring). By contrast, construing section 3592(c) as authorizing the government to unilaterally expand the list of aggravating factors on a case-by-case basis injects into capital proceedings precisely the uncertainty and disparate case results that *Furman* found to violate the Eighth Amendment. The statute provides no guidance to prosecutors in determining how to define or select non-statutory aggravating circumstances factors in a particular case. Under such a scheme, the factors that could be used to persuade jurors in any given case to impose death are not limited to "clear and objective" criteria, *Gregg*, 428 U.S. at 197, but are restricted only by the imagination of the prosecutor. Particularly in conjunction with the evidentiary free-for-all created by the scope of "information" admissible at the penalty phase, the statute's standard-less procedure creates an impermissible risk that the death penalty will be imposed arbitrarily and capriciously, in violation of the Eighth Amendment.

   The arbitrariness this procedure injects into the weighing process mandated by the statute is clear. The government's unconstrained ability to allege various non-statutory aggravating factors injects impermissible randomness into the process. To permit different prosecutors, in each individual case, to create and select the factors

that may be placed on "death's side of the scale," injects the very arbitrariness and capriciousness into the sentencing process that *Furman* sought to eradicate. Cf., *Stringer v. Black*, 503 U.S. 222, 232 (1992) (When the sentencing body is asked to weigh a factor twice in its decision, a reviewing court cannot "assume it would have made no difference if the thumb had been removed from death's side of the scale.").

    **C.    Permitting the Department of Justice to define non-statutory aggravating circumstances after the crime but before trial violates the ban on ex post facto laws**

Article I, Section 9, clause 3 of the United States Constitution states: "No . . . ex post facto law shall be passed." But Section 3592 permits the prosecution to manufacture out of whole cloth aggravating factors to be applied retroactively to crimes committed before the aggravating factors are identified. A defendant's right to notice and to fair warning of the conduct that impacts upon his liberty or his life is a basic principle long recognized by the Supreme Court. *See, e.g., Bouie v. City of Columbia*, 378 U.S. 347, 350-51 (1964); *In re Oliver*, 333 U.S. 257, 273 (1948). The statutory scheme which the government hopes to use to deprive Mr. Fell of his life "makes more burdensome the punishment for a crime, after its commission . . . ." *Beazell v. Ohio*, 269 U.S. 167 (1925). *See Lindsey v. Washington*, 301 U.S. 397 (1937) (statutory change from discretionary to mandatory death penalty held barred by ex post facto clause when retroactively applied).

In *Apprendi v. New Jersey*, the Supreme Court held that any fact that "expose[s] the defendant to a greater punishment than that authorized by the jury's guilty

verdict" is an "element" that must be submitted to a jury. 530 U. S. 466, 494 n. 19 (2000). Two years later, in *Ring v. Arizona*, 536 U.S. 584 (2002) the Court recognized the import of *Apprendi* in the context of capital-sentencing proceedings. There, the Court held that aggravating circumstances that make a defendant eligible for the death penalty "operate as 'the functional equivalent of an element of a *greater offense*.' " *Id.*, at 609 (emphasis added). That is to say, for purposes of the Sixth Amendment's jury-trial guarantee, the underlying offense of "murder" is a distinct, lesser included offense of "murder plus one or more aggravating circumstances": Whereas the former exposes a defendant to a maximum penalty of life imprisonment, the latter increases the maximum permissible sentence to death. Accordingly, the Court held that the Sixth Amendment requires that a jury, and not a judge, find the existence of any aggravating circumstances, and that they be found, not by a mere preponderance of the evidence, but beyond a reasonable doubt. Id., at 608-609.

      The Eighth and Fourth Circuits have rejected the argument that nonstatutory aggravating factors are the functional equivalents of elements of the crime. *See United States v. Higgs,* 353 F.3d 281, 322 (4th Cir. 2003) (non-statutory aggravators are not elements because "[t]hey do not increase the possible punishment or alter the elements of the offense."; *United States v. Allen,* 247 F.3d 741, 759 (8th Cir. 2001), *vacated on other grounds*, 536 U.S. 953 (2002).

      There is also respectable authority that non-statutory aggravating factors are elements. See, *United States v. Concepcion Sablan*, 555 F. Supp. 2d 1205, 1221 (D. Colo.

2007) (Under the FDPA, "the existence of all the aggravating factors are constitutionally significant facts that should be found by the jury."); *United States v. Mills*, 446 F. Supp. 2d 1115, 1130-31 (C.D. Cal. 2006) (same); *United States v. Green*, 372 F.Supp.2d 168, 175 (D. Mass. 2005) (same). The conflict in the cases has recently been resolved in *Hurst v. Florida*, 136 S. Ct. 616 (2016) ruled that Florida's statute was constitutionally flawed because "Florida does not require the jury to make the critical finding*s* necessary to impose the death penalty," including "the existence *and* weight of aggravating circumstances." *Hurst*, 136 S. Ct at 622-623 (emphasis added).

The non-statutory aggravating factors a jury finds at the prosecutor's urging are just as necessary to a jury's finding that the death penalty shall apply as are statutory aggravating factors. As Judge Gertner explained in *United States v. Green*, 372 F. Supp. 2d 168, 177-178 (D.Mass. 2005):

> [A]ny aggravating factor is 'legally essential to punishment' because, while not linearly triggering a higher sentence within the statutory maximum, as Federal Sentencing Guidelines factors do, it may effectively tip the scale from life to death in combination with the other factors at play.....Because we will never know exactly how each factor influences the jurors' ultimate punishment determination, logic dictates that all aggravating factors – together – be considered legally essential to the punishment. Indeed, the government's argument that non-statutory factors are not essential is disingenuous; if the government does not require additional evidence to convince the jury to vote for death, why is it invoking non-statutory factors at all?

*See also*, United States v. Mills, 446 F.Supp.2d 1115 (C.D. Ca. 2006) (non-statutory aggravating factors were elements because they involved "constitutionally significant fact finding").

Because their use in the jury's weighing process in penalty deliberations violates the Eighth and Fourteenth Amendments, the ex-post facto clause of the United States Constitution, and the very face of the FDPA, the non-statutory aggravating factors should be stricken from the government's Amended Notice of Intent to Seek the Death Penalty.

Respectfully submitted,

/s/Elisabeth R. Pollock  
Assistant Federal Defender  
300 West Main Street  
Urbana, IL 61801  
Phone: 217-373-0666  
FAX:   217-373-0667  
Email: Elisabeth_Pollock@fd.org  

/s/ George Taseff  
Assistant Federal Defender  
401 Main Street, Suite 1500  
Peoria, IL 61602  
Phone: 309-671-7891  
Fax:    309-671-7898  
Email: George_Taseff@fd.org  

/s/ Robert Tucker  
Robert L. Tucker, Esq.  
7114 Washington Ave  
St. Louis, MO 63130  
Phone: 703-527-1622  
Email: roberttuckerlaw@gmail.com  

/s/ Julie Brain  
Julie Brain, Esq.  
916 South 2nd Street  
Philadelphia, PA 19147  
Phone: 267-639-0417  
Email: juliebrain1@yahoo.com

CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorneys Bryan D. Freres and Eugene L. Miller and Trial Attorney James B. Nelson. A copy was also mailed to the defendant.

/s/Elisabeth R. Pollock
Assistant Federal Public Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org