UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Crim. No. 17-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | Hearing Requested |
| | ) | |
| Defendant. | ) | |

MOTION TO STRIKE NON-STATUTORY AGGRAVATING FACTOR
OF "VULNERABILITY OF VICTIM"

NOW COMES the Defendant, BRENDT A. CHRISTENSEN, by and through his attorneys, and for his Motion to Strike the Non-Statutory Aggravating Factor of "Vulnerability of Victim" states as follows:

I.  **Procedural History**

On July 12, 2017, Defendant BRENDT A. CHRISTENSEN was charged by Indictment with one count of kidnapping in violation of 18 U.S.C. § 1201(a)(1). (R. 13) A Superseding Indictment was filed on October 3, 2017, alleging one count of kidnapping resulting in death in violation of 18 U.S.C. § 1201(a)(1) and two counts of false statements in violation of 18 U.S.C. § 1001(a)(2). The Superseding Indictment also contained a Notice of Special Findings listing four gateway intent factors under 18 U.S.C. § 3591(a)(2) and three statutory aggravating factors under 18 U.S.C. § 3592(c): that Y.Z.'s death occurred during the commission of a kidnapping (Section 3592(c)(1));

that the defendant committed the offense in an especially heinous, cruel or depraved manner (Section 3592(c)(6)); and that the defendant committed the offense after substantial planning and premeditation (Section 3592(c)(9)). (R. 26)

Count 1 of the Superseding Indictment was a death-eligible charge, and on January 19, 2018, the government filed its Notice of Intent to seek the death penalty (NOI). (R. 54) The NOI re-alleged the four intent factors as well as the three statutory aggravating factors contained in the Superseding Indictment, and added six non-statutory aggravating factors: victim impact evidence, future dangerousness, lack of remorse, other serious acts of violence, vulnerable victim, and obstruction of justice. (R. 54)

II.  **Argument**

In the NOI, the government has alleged that "[t]he victim, Y.Z., was particularly vulnerable due to her small stature and limited ability to communicate in English." (R. 54) Notably, the government did *not* allege the statutory aggravating factor of vulnerability of the victim, which requires that the victim be particularly vulnerable due to old age, youth, or infirmity. 18 U.S.C. § 3592(c)(11). Instead, it couches the vulnerability in terms related to Y.Z.'s a) small size and b) linguistic capability. For the reasons stated below, the aggravating factor should be stricken.

   A. **The two components alleged as the victim's vulnerabilities, small stature and limited English capability, are vague and overbroad.**

      i. **Vagueness and Overbreadth Defined**

2

The Constitution cannot tolerate the infliction of a sentence of death "under legal systems that permit this unique penalty to be . . . wantonly and . . . freakishly imposed." *United States v. Grande,* 353 F. Supp. 2d 623, 629 (E.D. Va. 2005)(citing *Lewis v. Jeffers,* 497 U.S. 764, 774 (1990)). "Consequently, it is essential that a capital sentencing body's discretion 'be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action.'" *Id.* To accomplish this goal, the sentencer's discretion must be channeled by clear and objective standards that provide specific and detailed guidance. *Id.* at 629-30 (citing *Godfrey v. Georgia,* 446 U.S. 420, 428 (1980)).

It is the court's role to ensure that sentencing is carried out in a manner consistent with the requirements of the Constitution. This includes the screening of aggravating factors ensure that they channel, direct and limit the sentencer's discretion to prevent arbitrary and capricious imposition of the death penalty. *Id.* at 630 (citing *Arave v. Creech,* 507 U.S. 463, 470-71 (1993)). Vague and overbroad aggravating circumstances are impermissible. An overbroad aggravating factor is one where "the sentencer fairly could conclude that an aggravating circumstance applies to *every* defendant eligible for the death penalty." *Id.* (citing *Arave,* 507 U.S. at 474). A vague aggravating factor is one that lacks a "commonsense core of meaning . . .that criminal juries should be capable of understanding." *Id.* at 631 (citing *Tuilaepa v. California,* 512 U.S. 967, 973 (1994)). "Claims of vagueness directed at aggravating circumstances defined in capital punishment statutes are analyzed under the Eighth Amendment and characteristically assert that the challenged provision fails adequately to inform juries

3

what they must find to impose the death penalty and as a result leaves them and appellate courts with the kind of open-ended discretion which was held invalid in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972)." *Maynard v. Cartwright,* 486 U.S. 356, 362 (1988).

### ii. The small stature component is vague and overbroad.

According to the Missing Person's Documentation Form filed on June 10, 2017, Y.Z. was approximately 5'4" tall and weighed 160 pounds. (Gov't. Bates No. 000010).[1] The average height for a woman in the United States is 5'4".[2] So what, then, does small stature mean? Does it encompass every average-sized woman in the United States? Can the factor be applied to every female victim who is within a certain height range? A person of "ordinary sensibility could fairly characterize" almost every female victim as being of small stature as compared to a male defendant. *Cartwright,* 486 U.S. at 363 ("A person of ordinary sensibility could fairly characterize almost every murder as 'outrageously or wantonly vile, horrible and inhuman.'") (citing *Godfrey*, 446 U.S. at 428-29).

The phrase "small stature" fails adequately to inform the jury what it must find to impose the death penalty and fails to channel the jury's discretion; it is therefore unconstitutionally vague. Additionally, because the factor could feasibly be found in

---

[1] The figure given for Y.Z.'s weight would appear to be an overestimate based upon photographs that have also been disclosed. However, those same photographs also show that Y.Z. was certainly not significantly underweight for her height.

[2] https://www.healthline.com/health/womens-health/average-height-for-women (last visited 8/7/2018)

every case with a female victim, it is overbroad. Based on the foregoing, the nonstatutory aggravating factor based on Y.Z.'s alleged small stature should be stricken.

    **ii.    The limited English capability component is vague and should be stricken**

The government alleged that a "limited ability to communicate in English" is sufficient to sustain the non-statutory aggravating factor of victim vulnerability, but this factor is also extremely vague. What constitutes a "limited" ability to communicate? Must a person be wholly incapable of speaking English? Does the communication refer to verbal or written communication? How deficient does the person need to be to qualify as having a "limited ability?" Just as with the "small stature" component, this one does nothing to provide adequate guidance to the sentencer and must be stricken as unconstitutionally vague.

    **B.  The limited English capability component lacks any nexus to the crime and is without factual basis; it should therefore be stricken.**

    **i.  Y.Z.'s Alleged Limited English Capacity Lacks Any Nexus to the Crime**

The plain language of the government's proposed non-statutory aggravating factor, as with its statutory counterpart, requires that there be a nexus between the alleged vulnerability and the particular crime to which the victim allegedly succumbed. In other words, the alleged "vulnerability" must have in fact rendered the victim "particularly vulnerable" given the circumstances under, and means by, which the crime was allegedly committed. *See United States v. Johnson*, 136 F. Supp. 2d 553, 560

(W.D. Va. 2001) (granting defendant's motion to strike vulnerable victim aggravator due to lack of nexus between victim's vulnerability, i.e. pregnancy, and the victim's death by an explosive device because "nothing about Ms. Baker's physical condition weakened her capacity to resist the fatal blast"); *United States v. Jacques*, No. 2:08-cr-117 at 53-54 (D. Vt. May 4, 2011) (holding that "in order for an aggravating factor alleging that the victim was vulnerable to be put before a jury, there must be a 'connection between the victim's vulnerability and the offense committed upon the victim'") (quoting 1 Leonard Sand, *Modern Federal Jury Instructions*, ¶ 9A.14); *United States v. Savage*, No. 2:07-cr-550 at 16-17 (E.D. Pa. May 10, 2013) (same).

    Cases in which a sufficient nexus between the vulnerability and the crime has been found to exist include: *United States v. Mikos*, 539 F.3d 706, 717 (7th Cir. 2008) (upholding vulnerable victim aggravator where victim "was immobile and could neither run nor fight back when an intruder broke into her apartment"); *United States v. Sampson*, 486 F.3d 13, 49 (1st Cir. 2007) (upholding vulnerable victim aggravator where victim had had a quintuple bypass, was overweight and had difficulty walking very far because "he would have had a more difficult time escaping from his assailant than the average person"); *United States v. Paul*, 217 F.3d 989, 1001 (8th Cir. 1999) (upholding vulnerable victim aggravating factor where victim was 82 years old and less physically able to resist his attackers); *Jacques*, No. 2:08-cr-117 at 54 (holding that evidence including "text messages allegedly used to lure [12 year-old victim] the Defendant's house by telling her there was to be a pool party there and that a boy she was fond of

would attend" alleges "a sufficient nexus between the victim's youth and the offense of kidnapping resulting in death").

In this case, in contrast to those cited above, there exists no evidence whatsoever that Y.Z's alleged limited English ability contributed to her kidnapping or death. *See United States v. Esterman*, 324 F.3d 565, 573-74 (7th Cir. 2003 (holding that district court erred in applying vulnerable victim enhancement under sentencing guidelines in wire fraud case where, despite limited language ability, there was no evidence that victim "had a lower than normal ability to protect himself").

It is certainly possible to imagine cases in which a victim's limited English ability could render them vulnerable to becoming a victim of a crime. For example, in *United States v. Johnson*, 874 F. 3d 990, 1003-04 (7th Cir. 2017), the court upheld the enhancement of the defendants' sentences for crimes including wire fraud under the "vulnerable victim" enhancement contained in the United States Sentencing Guidelines § 3A1.1(b)(1). The defendants had engaged in fraudulent real estate transactions with 14 families who spoke little or no English. *Id.* The court found that the victim's lack of English was one of the factors that rendered them particularly vulnerable to being defrauded in such a manner. *Id. See also United States v. Monsalve*, 342 Fed. Appx. 451 (11th Cir. 2009) (upholding enhancement where victims were particularly vulnerable to being forced into prostitution due to, inter alia, their limited ability to speak English and lack of family or another place to live). This, however, is not such a case.

> **ii. The government cannot show that Y.Z. struggled to communicate in English, therefore this non-statutory aggravating factor is irrelevant.**

As represented in the discovery received from the government, Y.Z. was employed by the University of Illinois as a visiting scholar in the Department of Natural Resources and Environmental Science. Her tenure here was part of the J-1 Program administered by the U.S. State Department, which allows international scholars to conduct research or teach at sponsoring institutions. A short-term scholar may stay for up to six months, a research scholar/professor for up to five years, a student intern for one year, and a trainee for 18 months.[3]

Prior to entering the United States, any J-1 scholar must meet certain guidelines for English Language Proficiency. The University of Illinois Guidelines for Assessment of English Language Proficiency state as follows:

> Effective January 5, 2015, the Department of State will require program sponsors to assess *and document* the English language proficiency of each incoming J scholar before issuing a DS-2019 for him or her . . . At UIUC, the faculty host is required to conduct the English assessment unless there are extenuating circumstances, in which case the assessment may be conducted by the department head. As part of the DS-2019 application, the faculty host must provide information about and documentation of the assessment, and confirm that the prospective scholar has sufficient proficiency in the English language to successfully participate in his or her program and to function on a day-to-day basis in the United States.[4]

---

[3] http://isss.illinois.edu/scholars/j1/index.html (last visited 8/7/2018)

https://isss.illinois.edu/.../j1_english_proficiency_guidelines.pdf (last visited 8/7/2018) (emphasis added). Among the acceptable methods of assessment are an interview, a recognized English language test such as the TOEFL or IELTS, and documentation from an academic institution or English language school. *Id.*

It is clear that Y.Z. was quite proficient in English. The discovery contains multiple written emails between herself and others in which she corresponds very effectively. For example, on June 5, 2017, she wrote an email to her lab supervisor, Kaiyu Guan, in which she stated the following:

> Kaiyu,
>
> Last week I've done:
> l) **SIF in Energy Farm:** worked with Guofang for SIF system installation in Energy Farm, and plan to finish 6th, June (Tuesday)
> 2) **Portable SIF:** tried to figure out the methods to put Portable SIF at 5 meters, I found a good thing in Taobao may fit for the request (https://item.taobao.com/item.htm?spm=a230r.l.14.55.Sz2tFf&id=39691216674&ns= J.&abbucket=20#detail ), unluckily, I do not find similar thing in Amazon or ebay; Guofang and I also consider to use wood material and make it by ourselves.
> 3) **Reading:** read 1/3rd of "How a corn plant develops?" (Guofang send me), knew more details of corn growth.
>
> Plan for this week:
> I) **SIF in Energy Farm:** help Guofang to finish that and make sure it can run smoothly;
> 2) **Portable SIF:** do some test for problem splitter fiber, and Guofang will send it back to Ocean optics to fix them; make pole with Sm; make plan to learn LAI2000 and LI6800 (Guofang said she will invite some guys to give a training for that);
> 3) Reading: "Remote sensing of vegetation" chapter 3; finish" How a com plant develops?"
>
> By the way, here are some suggestions for our lab meeting. I think lab meeting can not only solve problems but also share ideas and learn from each other, so I

suggest that every month or every three weeks, one of us can carefully prepare a PPT to introduce our project, told why we want to do that and how? The PPT can also talk about interesting paper reading. It is a good way for us to know well about each other, and for speaker, it's also a good chance to make a summary for project and learn how to present ideas.

Enjoy your trip in DC!

(Gov't. Bates No. 000964-000965)

Y.Z. clearly felt comfortable with technical, scientific terms, and was secure enough in her position in the lab to participate in group meetings (in English) and to make suggestions to her superior as to how to improve them. Additionally, she was able to navigate a complicated public transportation system, take the necessary steps to secure an apartment, and open a bank account.

Just as with the alleged victim in *Esterman*, Y.Z.'s command of the English language cannot be examined in a vacuum. The totality of the circumstances clearly show that she was qualified to work at the University as a visiting scholar, and whatever limitations she had did not have a significant effect on her daily life in the United States. Fundamentally, then, the government intends to present evidence that she spoke with an accent and perhaps did not possess as substantial a vocabulary as a native English speaker. In all other respects, she was not linguistically impaired. As such, the jury should not be permitted to consider the "limited ability to communicate in English" component.

WHEREFORE, Defendant requests that this Court strike the non-statutory aggravating factor of "Vulnerability of the Victim" for the reasons stated herein.

Respectfully submitted,

/s/Elisabeth R. Pollock
Assistant Federal Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org

/s/ George Taseff
Assistant Federal Defender
401 Main Street, Suite 1500
Peoria, IL 61602
Phone: 309-671-7891
Fax:    309-671-7898
Email: George_Taseff@fd.org

/s/ Robert Tucker
Robert L. Tucker, Esq.
7114 Washington Ave
St. Louis, MO 63130
Phone: 703-527-1622
Email: roberttuckerlaw@gmail.com

/s/ Julie Brain
Julie Brain, Esq.
916 South 2nd Street
Philadelphia, PA 19147
Phone: 267-639-0417
Email: juliebrain1@yahoo.com

CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorneys Bryan D. Freres and Eugene L. Miller and Trial Attorney James B. Nelson. A copy was also mailed to the defendant.

/s/Elisabeth R. Pollock
Assistant Federal Public Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org