UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Crim. No. 17-20037 |
| ) | |
| BRENDT A. CHRISTENSEN, ) | Hearing Requested |
| ) | |
| Defendant. ) | |

MOTION TO STRIKE NON-STATUTORY AGRRAVATING FACTOR
OF VICTIM IMPACT EVIDENCE

NOW COMES the Defendant, BRENDT A. CHRISTENSEN, by and through his attorneys, and for his Motion to Strike Non-Statutory Aggravating Factor of Victim Impact Evidence states as follows:

I.  **Procedural History**

On July 12, 2017, Defendant BRENDT A. CHRISTENSEN was charged by Indictment with one count of kidnapping in violation of 18 U.S.C. § 1201(a)(1). (R. 13) A Superseding Indictment was filed on October 3, 2017, alleging one count of kidnapping resulting in death in violation of 18 U.S.C. § 1201(a)(1) and two counts of false statements in violation of 18 U.S.C. § 1001(a)(2). The Superseding Indictment also contained a Notice of Special Findings listing four gateway intent factors under 18 U.S.C. § 3591(a)(2) and three statutory aggravating factors under 18 U.S.C. § 3592(c): that Y.Z.'s death occurred during the commission of a kidnapping (Section 3592(c)(1));

1

that the defendant committed the offense in an especially heinous, cruel or depraved manner (Section 3592(c)(6)); and that the defendant committed the offense after substantial planning and premeditation (Section 3592(c)(9)). (R. 26)

Count 1 of the Superseding Indictment was a death-eligible charge, and on January 19, 2018, the government filed its Notice of Intent to seek the death penalty (NOI). (R. 54) The NOI re-alleged the four intent factors as well as the three statutory aggravating factors contained in the Superseding Indictment and added six non-statutory aggravating factors: victim impact evidence, future dangerousness, lack of remorse, other serious acts of violence, vulnerable victim, and obstruction of justice. (R. 54)

## II.   The Introduction of Victim Impact Evidence at the Penalty Phase of a Capital Trial Violates the Eighth Amendment

The Eighth Amendment prohibits the consideration of victim impact evidence at the penalty phase of a capital trial. The Supreme Court's decision in *Payne v. Tennessee*, 501 U.S. 808 (1991), which overruled the Court's prior decision in *Booth v. Maryland*, 482 U.S. 496 (1987), and permitted the introduction of certain types of victim impact evidence, was wrongly decided and should be itself reversed.

"[D]eath is a 'punishment different from all other sanctions.'" *Booth*, 482 U.S. at 509 n.12 (quoting *Woodson v. North Carolina*, 428 U.S. 280, 303-304, 305 (1976) (plurality opinion of Stewart, Powell and Stevens, JJ.)) Accordingly, the considerations that inform the capital sentencing determination may be different from those in other liability or sentencing decisions. *Id.* For instance, "[i]t is well settled that a jury's discretion to

impose the death sentence must be 'suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action.'" *Id*. at 502 (quoting *Gregg v. Georgia*, 428 U.S. 153, 189 (1976) (joint opinion of Stewart, Powell and Stevens, JJ.)). That means that a jury must make an "individualized determination" of whether a particular defendant should be executed that is "based on the character of the individual and the circumstances of the crime." *Zant v. Stephens*, 462 U.S. 862, 879 (1983).

As the Court correctly held in *Booth*, these unbending principles require that the evidence presented in support of a sentence of death must have "some bearing on the defendant's 'personal responsibility and moral guilt.'" *Id*.at 502 (quoting *Enmund v. Florida*, 458 U.S. 782, 801 (1982)). Victim impact evidence has no such bearing; it is evidence that concerns the victim and his or her family, not the defendant, and in the majority of cases that defendant will have no knowledge of the personal characteristics of the victim nor the impact of the loss on his or her relatives. *Id.* at 504. Such evidence is therefore "wholly unrelated to the blameworthiness of a particular defendant." *Id.*

Victim impact evidence also injects constitutionally intolerable risks of arbitrariness into the capital sentencing decision in at least two ways. Allowing the jury to consider the personal characteristics of the victim invites them to conclude that a defendant who kills an upstanding, productive and well-liked victim is deserving of more punishment than a defendant whose victim is of questionable character or deemed by the jury to be of less value to society. *Id.* at 506. Inevitably, some jurors' judgments regarding the relative worth of the victim will turn on constitutionally

3

repugnant factors such as race, religion or ethnicity. *See id.* at n.8 ("We are troubled by the implication that defendants whose victims were assets to their community are more deserving of punishment than those whose victims are perceived to be less worthy. Of course, our system of justice does not tolerate such distinctions.")

The use of victim impact evidence also invites randomness and arbitrariness into the capital sentencing process by permitting the strength of the government's case for death to turn on factors such as how many family members a victim happened to have, or how able those family members are to compellingly articulate the impact of their loss in front of a jury. *Id.* at 505. Neither of these circumstances provides "a 'principled way to distinguish [cases] in which the death penalty was imposed, from the many cases in which it was not.'" *Id*. at 506 (quoting *Godfrey v. Georgia*, 446 U.S. 420, 433 (1980) (opinion of Stewart, J.)). Neither, therefore, are proper considerations in capital sentencing. *Id.* at 507.

It is true, of course, as the dissenting justices complained in *Booth*, that elsewhere in the criminal justice system the prescribed punishment for certain acts may change depending on the actual consequences that flowed from those acts, even though the defendant's mental state was the same in each instance. *Id*. at 516 (White, J., dissenting), 519 (Scalia, J., dissenting). Justice White gave the example of a driver who recklessly ignores a stoplight. *Id.* at 516. As he correctly stated, if the driver unintentionally kills a pedestrian, he will be eligible for significantly more serious punishment that if he got lucky and no one was injured. *Id.* Justice Scalia cited the armed bank robber who points

4

his gun at a security guard and pulls the trigger. *Id.* at 519. If the gun fires and kills the guard, he may get the death sentence; if the gun jams, he will not. *Id.*

There is a crucial difference, however, between these situations and the jury's determination in a capital sentencing proceeding. When the law proscribes a more severe punishment for vehicular homicide than for reckless driving it reflects a legislative judgment that, in all cases involving bad drivers, the harm caused by actually hitting and killing someone – anyone - justifies a greater punishment. When the law allows for the death penalty for homicide but not for attempted bank robbery, no matter who the defendant or the victim is, once again it reflects the legislative embodiment of a consensus regarding societal values. Both laws are straightforward and relatively easy for juries to understand and apply. If the driver killed a pedestrian, he may be found guilty of vehicular homicide. If no one was hit, reckless driving is the most serious offense of which he may be convicted.

What juries are asked to do in a capital sentencing proceeding is a totally different matter. They must consider a great deal of evidence about the defendant, some of it related to the offense, some of it not, and make sense of it in a way that enables them to come to a determination of whether the person should live or die. And they must do so in accordance with the standard of heightened reliability that applies in capital cases, relying upon reason rather than emotion in cases in which emotions always run high.  That is why it is so critical that their discretion be guided in as rational a way as possible and that the relevance of the evidence that they may consider

5

be carefully calibrated to lessen the risk of arbitrariness. *See id.* at 504 ("While the full range of foreseeable consequences of a defendant's actions may be relevant in other criminal and civil contexts, we cannot agree that it is relevant in the unique circumstances of a capital sentencing hearing.")

The principal basis for the reversal of *Booth* by the sharply divided *Payne* Court was the misguided belief that there is some inherent unfairness in allowing the jury to consider any mitigating evidence that the defendant may put forth but not evidence of the impact of the crime on the victim's family. *See Payne*, 501 U.S. at 822 (*Booth* has "unfairly weighted the scales in a capital trial; while virtually no limits are placed on the relevant mitigating evidence a capital defendant may introduce concerning his own circumstances, the State is barred from offering a glimpse of the life which a defendant chose to extinguish, or demonstrating the loss to the victim's family and to society which have resulted from the defendant's homicide") (internal citations omitted); *id.* at 826 (quoting with approval the lower court's denouncement of the rule of *Booth* as permitting "a parade of witnesses [who] may praise the background, character and good deeds of Defendant . . . without limitation as to relevancy, but nothing may be said that bears upon the character of, or the harm imposed, upon the victims").

This argument is based upon a false equivalency, an attempted conflation of apples and oranges. Mitigating evidence concerning the defendant's background is quintessentially that which permits a jury to make the constitutionally required "individualized determination" of whether a particular defendant should be executed.

*Stephens*, 462 U.S. at 879. It self-evidently has "some bearing on the defendant's 'personal responsibility and moral guilt,'" *Booth*, 482 U.S. at 502 (quoting *Enmund*, 458 U.S. at 801), and thus it is unquestionably a proper – indeed a required – consideration at the penalty phase. Victim impact evidence does not. The purpose of a constitutionally adequate capital sentencing proceeding is not to weigh the relative worth of the defendant and the victim, or to compare and contrast the emotional losses and hardships suffered on each side. Rather, it is to promote, in every way humanly possible, a decision by the jury that is based upon reason and evidence that is truly relevant to whether a human being should live or die. The decision in *Payne* is antithetical to that goal and it should be overruled.

### III. At the Proper Time, Mr. Christensen Will Move *In Limine* to Exclude Improper Victim Impact Evidence

Even if the Court denies the motion to strike the victim impact evidence aggravating factor in its entirety, it must still carefully scrutinize the government's proposed evidence to ensure that it will stay within constitutional and statutory bounds. While *Payne* overruled the Eighth Amendment's *per se* bar to victim impact evidence, it left in place several significant restrictions upon the type of evidence that may be presented that had been established in *Booth*.

The opinion in *Payne* permitted the introduction of victim impact evidence in the form of "evidence relating to the personal characteristics of the victim and the emotional impact of the crimes on the victim's family." *Id*. at 817; *see also Bosse v.*

7


*Oklahoma*, 137 S. Ct. 1 (2016) (per curiam). It did not open the door to unlimited amounts of such evidence; rather, it approved the presentation of "a glimpse of the life" of the victim. *Payne*, 501 U.S. at 822; *see also id.* at 830 (O'Connor, J., concurring) (a state may decide that the jury should see "a quick glimpse" of victim's life). The opinion left intact the prohibition on the admission of "characterizations and opinions from a victim's family members about the crime, the defendant, and the appropriate sentence." *Bosse*, 137 S. Ct. at 2. The decision also maintained the limitation of permissible evidence to the impact on the victim's "family." *Payne*, 482 U.S. at 817; *see also* 18 U.S.C. § 3593(a)(2); *United States v. Fields*, 516 F. 3d 923, 946-47 (10th Cir. 2008) (holding that victim impact evidence should have been limited to the victim's family and it was error to permit testimony regarding co-workers)

  *Payne* also in no way abrogated the well-settled principle that the admission of any evidence, including victim impact evidence, that is "so unduly prejudicial that it renders the trial fundamentally unfair," violates the Due Process Clause. *Id.* at 825; *see also id.* at 836 (Souter, J., concurring) (noting that "[e]vidence about the victim and survivors, and of course any jury argument predicated on it, can of course be so inflammatory as to risk a verdict impermissibly based on passion, not deliberation," in violation of due process); 18 U.S.C. § 3593(c) (evidence may be excluded from penalty phase proceeding "if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury"). Victim impact evidence must also be relevant and not consist of "a 'mere emotional plea,'" unrelated to the impact of

the crime on the victims or their families. *United States v. Sampson,* 335 F. Supp. 2d 166 (D. Mass. 2004) (citing *Hain v. Gibson*, 287 F.3d 1224, 1237-38 (10th Cir. 2002)).

At the appropriate time, Mr. Christensen will file a motion *in limine* to exclude any victim impact evidence the government seeks to present that exceeds the limitations outlined above. *See* (R. 67) (ordering that motions *in limine* be filed by February 8, 2019) At this juncture, Mr. Christensen is unable to discern whether the government's proposed evidence exceeds these well-established bounds. Despite the fact that the Court has previously ordered the government to disclose to Mr. Christensen its "expected evidence in support of aggravating factors," (R. 67) the only notice beyond the bare-bones Notice of Intent to Seek the Death Penalty that has been provided is contained in two letters to defense counsel, one written on May 18, 2018, and a second on July 11, 2018. The May 18 letter states:

> Accordingly, the Government expects to present victim-impact evidence as follows:
>
> A. Photographs, video, journals, essays, or other documentation detailing Y.Z.'s life in China, her matriculation to the University of Illinois, and her plans for the future.
>
> B. Testimony from family members and friends of Y.Z.
>
> C. Christensen's admissions as to victim impact.

(footnote omitted).

In the July 11, 2018, letter, the government added that it intends to present evidence regarding personal characteristics of Y.Z. that "include, but are not limited to,

the victim's personality, character, work ethic, educational background, future plans, gender, race, national origin, immigration status, physical stature and appearance, marital status, family of origin, economic status, English as a second language, cultural experiences, and relationships with family, friends, colleagues, other students, and faculty."

Without significantly more information regarding the witnesses who will be called to testify about this aggravating factor, the substance of what they will say and the particular documents or other exhibits that will be offered, Mr. Christensen is in no position to meaningfully challenge any aspects of the government's that exceed constitutional and statutory limits.[1] *See, e.g., United States v. Taylor*, 316 F. Supp. 2d 730, 743 (N.D. Ind. 2004) (directing government to file detailed notice of its evidence,

---

[1] There are, however, indications that the proposed evidence will be significantly more extensive than is constitutionally and statutorily permitted. In its Notice of Intent to Seek the Death Penalty the government asserts that it intends to present evidence of the impact of Zhang's death not only on her family but also on her "friends and co-workers." (R. 54 at 3) In the May 18, 2018, letter to defense counsel, the government again states that seeks to present victim impact testimony from Y.Z.'s friends in addition to her family. The May 18 letter also asserts an intent to present "photographs, video, journals, essays, or other documentation detailing Y.Z.'s life in China, her matriculation to the University of Illinois, and her plans for the future," to which the July 11, 2018, letter adds Y.Z.'s "work ethic, educational background . . . gender, race, national origin, immigration status, physical stature and appearance, marital status, family of origin, economic status, English as a second language, cultural experiences, and relationships with family, friends, colleagues, other students, and faculty." On its face, this description sounds like significantly more than the "quick glimpse" of her life that is permitted under the Eighth Amendment and the Due Process Clause. References to Y.Z.'s gender, race, national origin would also violate the express statutory directive that the jury shall be instructed that, in considering whether a sentence of death is justified, "it shall not consider the race, color, religious beliefs, national origin, or sex" of the victim. 18 U.S.C. § 3593(f).

Additionally, the May 18, 2018, letter asserts an intention to introduce "Christensen's admissions as to victim impact." Given that there is no allegation that Mr. Christensen knew either Ms. Zhang or her family, it is difficult to discern how any such "admissions" could possibly be relevant evidence of victim impact.

including "who will offer victim impact evidence, the relation the witness is to the victim, the form of testimony (i.e., written or oral statement) and a summary of the anticipated testimony"). Nor is the Court in a position to perform its gatekeeping duty to scrutinize proposed evidence in aggravation and ensure that it meets applicable requirements. *See id.* (noting that, absent the ordered disclosure, "the Court is not in a position at this juncture to evaluate such evidence"); *United States v. Karake*, 370 F. Supp. 2d 275, 280 (D.D.C. 2005) (recognizing inherent authority to direct government to provide specifics regarding its aggravating evidence to, inter alia, "provide the court with some frame of reference for ruling on objections to the death penalty notice"). Accordingly, Mr. Christensen has moved to compel the government to provide additional information in this case. (R. 82) (filed under seal).

In its Response to that Motion, the government asserts that it has no obligation to provide any further information regarding any of its proposed aggravating factors. (R. 84 at 12-18) For the reasons stated in the Motion to Compel, (R. 82 at 12-18) this assertion is incorrect as a general matter. It is particularly inapposite in the case of a victim impact evidence aggravating factor. Courts have recognized that victim impact testimony is perhaps the most inflammatory, emotional and potentially prejudicial evidence that could possibly be presented at a capital sentencing proceeding. *See, e.g., United States v. McVeigh*, 944 F. Supp. 1478, 1491 (D. Col. 1996) (noting that victim impact evidence is "the most problematical of all of the aggravating factors and may

present the greatest difficulty in determining the nature and scope of the information to be considered").

Once heard, it is virtually impossible for a listener to forget such evidence. *See United States v. Johnson*, 362 F. Supp. 2d 1043, 1107 (N.D. Iowa 2005) (noting that victim impact testimony "was the most forceful, emotionally powerful, and emotionally draining evidence that I have heard in any kind of proceeding in any case, civil or criminal, in my entire career as a practicing trial attorney and federal judge spanning nearly 30 years. . . It has now been over four months since I heard this testimony . . . and the juror's sobbing during the victim impact testimony still rings in my ears"). It is therefore critical that victim impact testimony be carefully scrutinized ahead of time, before something inadmissible and inflammatory is blurted out in front of the jury. This cannot be achieved without pretrial disclosure by the government of the evidence it seeks to present.

In its Response to Mr. Christensen's Motion to Compel, the government acknowledges that courts have ordered pre-trial disclosure of the evidence that the government will seek to use in support of a victim impact aggravating factor. (R. 84 at 15-16) (citing *United States v. Llera Plaza*, 179 F. Supp. 2d 464, 473-74 (E.D. Pa. 2001). It fails to mention, however, that *Llera Plaza* is far from the only district court decision ordering such disclosure. Indeed, in all but two of the six district court cases that the government cites for the proposition that the notice of intent to seek the death penalty is the only notice to which a defendant is entitled regarding aggravating factors, (R. 84 at

13-14), disclosure of victim impact evidence was ordered. *See United States v. Savage*, No. 07-550-03 (E.D. Pa. filed May 10, 2013) (directing government to disclose "all victim impact statements, or, in the alternative, an outline of the evidence it intends to present with respect to each victim witness"); *United States v. Solomon*, 513 F. Supp. 2d 520, 535 (W. D. Pa. 2007) (ordering government to "outline the type and scope of the 'devastating effect' suffered by each victim, his or her family members, and other individuals as relevant, and the 'personal characteristics' of each victim"); *United States v. Gooch*, No. 1:04-cr-128-RMC (D.D.C. filed Dec. 20, 2006 at 45-46 (same); *Taylor*, 316 F. Supp. 2d at 743 (directing government to disclose "who will offer victim impact evidence, the relation the witness is to the victim, the form of testimony (i.e., written or oral statement) and a summary of the anticipated testimony"). And none of the three circuit court decisions cited, (R. 83 at 13), involved a victim impact aggravating factor. The Court should therefore grant Mr. Christensen's Motion to Compel (R. 82).

WHEREFORE, Defendant requests that this Court strike the non-statutory aggravating factor of victim impact evidence.

Respectfully submitted,

/s/Elisabeth R. Pollock
Assistant Federal Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org

/s/ George Taseff
Assistant Federal Defender
401 Main Street, Suite 1500
Peoria, IL 61602
Phone: 309-671-7891
Fax:    309-671-7898
Email: George_Taseff@fd.org

/s/ Robert Tucker
Robert L. Tucker, Esq.
7114 Washington Ave
St. Louis, MO 63130
Phone: 703-527-1622
Email: roberttuckerlaw@gmail.com

/s/ Julie Brain
Julie Brain, Esq.
916 South 2nd Street
Philadelphia, PA 19147
Phone: 267-639-0417
Email: juliebrain1@yahoo.com

CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorneys Bryan D. Freres and Eugene L. Miller and Trial Attorney James B. Nelson. A copy was also mailed to the defendant.

/s/Elisabeth R. Pollock
Assistant Federal Public Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org