UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Crim. No. 17-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | Hearing Requested |
| | ) | |
| Defendant. | ) | |

MOTION TO STRIKE NON-STATUTORY AGRRAVATING FACTOR
OF "OTHER SERIOUS ACTS OF VIOLENCE"

NOW COMES the Defendant, BRENDT A. CHRISTENSEN, by and through his attorneys, and for his Motion to Strike the Non-Statutory Aggravating Factor of Other Serious Acts of Violence states as follows:

I.     **Procedural History**

On July 12, 2017, Defendant BRENDT A. CHRISTENSEN was charged by Indictment with one count of kidnapping in violation of 18 U.S.C. § 1201(a)(1). (R. 13) A Superseding Indictment was filed on October 3, 2017, alleging one count of kidnapping resulting in death in violation of 18 U.S.C. § 1201(a)(1) and two counts of false statements in violation of 18 U.S.C. § 1001(a)(2). The Superseding Indictment also contained a Notice of Special Findings listing four gateway intent factors under 18 U.S.C. § 3591(a)(2) and three statutory aggravating factors under 18 U.S.C. § 3592(c): that Y.Z.'s death occurred during the commission of a kidnapping (Section 3592(c)(1));

1

that the defendant committed the offense in an especially heinous, cruel or depraved manner (Section 3592(c)(6)); and that the defendant committed the offense after substantial planning and premeditation (Section 3592(c)(9)). (R. 26)

Count 1 of the Superseding Indictment was a death-eligible charge, and on January 19, 2018, the government filed its Notice of Intent to seek the death penalty (NOI). (R. 54) The NOI re-alleged the four intent factors as well as the three statutory aggravating factors contained in the Superseding Indictment and added six non-statutory aggravating factors: victim impact evidence, future dangerousness, lack of remorse, other serious acts of violence, vulnerable victim, and obstruction of justice. (R. 54)

II. **The Evidence of Unadjudicated Conduct that the Government Seeks to Introduce in Support of the Other Serious Acts of Violence Aggravator is False and Unreliable and its Presentation During a Capital Sentencing Proceeding Would Violate the Fifth and Eighth Amendments**

The Eighth Amendment Cruel and Unusual Punishment Clause and the Fifth Amendment guarantee of due process prohibit the presentation of unreliable evidence at the penalty phase of a capital trial. Indeed, the Eighth Amendment imposes "a heightened 'need for reliability in the determination that death is the appropriate punishment in a specific case.'" *Caldwell v. Mississippi*, 472 U.S. 320, 323 (1985) (quoting *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976) (plurality opinion)). A capital sentencing proceeding must also "satisfy the requirements of the Due Process Clause." *Gardner v. Florida*, 430 U.S. 349, 358 (1977). While courts have held that there is no per se bar on the use of unadjudicated criminal conduct in a capital sentencing proceeding,

2

"[t]hat does not mean that such conduct may be considered in all cases." *United States v. Corley*, 519 F.3d 716, 724 (7th Cir. 2008). In determining whether this type of evidence may be considered in a particular case, a court "must consider a number of factors, including the reliability of the evidence, the prejudicial and probative impact of the evidence, and the burden of proof both for determining reliability and for a jury to determine whether the conduct may be considered." *Id. See also United States v. Beckford*, 964 F. Supp. 993, 1000 (E.D. Va. 1997) (holding that "unadjudicated criminal conduct may be presented to the jury only if the Court has determined that it meets the threshold test of reliability"); *United States v Gilbert*, 120 F. Supp. 2d 147, 151 (D. Mass. 2000) (same).  Before a court may admit such evidence, it must determine that it is "sufficient to allow a reasonable jury to find beyond a reasonable doubt" that the defendant in fact committed the alleged crimes. *United States v. Corley*, 348 F. Supp. 2d 970, 974 (N.D. Ind. 2004).

In its NOI, the government states the following with regard to its proposed non-statutory aggravator:

> 4.     **Other serious acts of violence.**  The defendant has committed other serious acts of violence including, at least, the following:  in or about 2013, the defendant choked and sexually assaulted M.D., in the Central District of Illinois.

(R. 54 at 3). The government has orally informed defense counsel that the only other "serious act of violence" that it intends to present in support of this aggravator is Mr. Christensen's alleged mistreatment of a guinea pig. Both of these allegations are false

and unreliable and thus the government is constitutionally and statutorily prohibited from presenting them in a capital sentencing proceeding.

    **A.    The Allegations of Sexual Assault Made Against Mr. Christensen by M.D. are False and Unreliable**

The allegations of sexual assault made by M.D. against Mr. Christensen are so riddled with inconsistency, implausibility and contradictions of objective facts as to be incredible on their face. M.D. inserted herself into this case on June 30, 2017, the day of Mr. Christensen's arrest, by placing a call to the FBI Public Access Line. During that call, she reported that she had met Mr. Christensen four years previously on the dating site OKcupid.com. She claimed that they went on a date together to get coffee, following which Mr. Christensen drove her to a cemetery, choked and threatened her and forced her to perform sexual acts. Thereafter, Mr. Christensen drove her home and she never reported what had happened. M.D. stated that she had seen on Facebook that Mr. Christensen had been arrested for the kidnapping of Yingying Zhang and wanted to relay her story in case it could be of any assistance in the case.

Thereafter, M.D. was interviewed by law enforcement officers on four separate occasions to undersigned counsel's knowledge. The first was a telephonic interview conducted on the same day that she called the PAL, June 30, 2017, by Special Federal Officer Barbara A. Robbins. On July 21, 2017, Special Agents Robert Christian and Karla Brainerd interviewed M.D. at her home in Denton, Texas. The next interview was on April 30, 2018, conducted by Special Agent Andrew Huckstadt and DOJ Attorney James

Nelson at the Denton Police Department. Finally, on May 8, 2018, M.D. telephoned Agent Huckstedt to provide him with further information she had gleaned from doing "online research."

### 1. M.D.'s Allegations are False and Refuted by Objective Facts

Key portions of M.D.'s allegations against Mr. Christensen are readily revealed to be false by objective and reliable sources of information.

#### a. Mr. Christensen had no OKcupid Account at the time that M.D. says that she met him on the site

M.D. has told law enforcement on at least three occasions that the alleged assault occurred in September or October of 2013. However, she has consistently asserted that the assault happened when she was 17 years old and a senior in high school. M.D.'s age, her high school yearbook and some of her messages on the OKcupid website establish that her senior year of high school was the 2012-13 school year. She turned 18 in December of 2012, and so the alleged assault could only have happened in September or October of 2012, not 2013.

M.D. has maintained throughout that she met Mr. Christensen through the OKcupid dating website. Records subpoenaed by the government from the company that operates the website reveal that M.D. has had an OKcupid account continuously since September 21, 2012, the day that she first opened it. However, those same records show that Mr. Christensen did not sign up to use the site until March 28, 2017. It is therefore impossible that M.D. could have contacted Mr. Christensen and arranged to date him via Okcupid in the Fall of 2012.

b. **Mr. Christensen was living in Wisconsin when M.D. claims she went on a date with him in Illinois**

Moreover, Mr. Christensen was not even in living in the State of Illinois during the Fall of 2012. During that period he was an undergraduate student at the University of Wisconsin in Madison, Wisconsin, taking a full course load and engaging in research projects for one of his professors. He did not move to Champaign-Urbana until August of 2013, when he enrolled in the University of Illinois to pursue a Ph.D. in Physics.

c. **M.D.'s belated admission that she had a Fetlife.com account listing one of her preferences as abduction/rape fantasy, and her deletion of that account before informing law enforcement of its existence, seriously undermines her credibility**

On May 8, 2018, almost a year after she first began speaking with law enforcement in this case, M.D. called Agent Huckstadt to tell him that "she had been doing some online research regarding the Yingying Zhang kidnapping case" and had learned that Mr. Christensen had had an account with Fetlife.com, the self-described "Social Network for the BDSM, Fetish and Kinky Community." She told the agent that she had recognized the profile picture Mr. Christensen had attached to his Fetlife account, thereby revealing that she herself was a member of the site. Again, this is an impossibility; Mr. Christensen's profile picture was not a photograph of him personally, but rather an image of a piece of artwork. She further admitted, however, that she had deleted her account on May 4, 2018, four days before making the call to Agent

Huckstadt. When the agent asked M.D. to try to reinstate the account, she stated that she was unable to do so.[1]

M.D. did admit that one of her listed preferences on her Fetlife account was "abduction/rape fantasy." She stated, however, that she did not really fantasize about such things; rather, it was a way for her to deal with things that had happened to her in real life, including the alleged assault by Mr. Christensen. This latter assertion is demonstrably untrue. M.D. opened her Fetlife account on the same day that she opened her OKcupid account, namely September 21, 2012. Given that she supposedly met Mr. Christensen on OKcupid after she opened her account, necessarily she opened her Fetlife account before the alleged assault on her by Mr. Christensen could ever have taken place.

### d. M.D. has been diagnosed with major mental illness and has made several other claims of sexual assault in the past

Undersigned counsel have requested from the government, but have not yet received, records documenting mental health diagnoses and treatment that M.D. has undergone. Counsel are therefore not yet aware of the full extent of such evidence that may exist. However, there are indications in the discovery that has been provided that M.D. has serious mental health issues. She reported to law enforcement during her April 30, 2018, interview that she attempted suicide approximately two years previously and that she has been medicated for Bipolar Disorder. Bipolar Disorder is a

---

[1] Undersigned counsel have requested copies of M.D.'s Fetlife records from the government but have yet to receive a response.

major mental illness that can produce symptoms such as inflated self-esteem or grandiosity, delusions and hallucinations.

There are also indications, both in documents disclosed by the government and in documents independently obtained by the defense, that M.D. has a history of making allegations of sexual assault, none of which appear to have resulted in a conviction of the alleged perpetrator. On May 10, 2018, when Agent Huckstadt called M.D. to follow up on her May 8, 2018, call to him, she stated that she had been the victim of another sexual assault a few months before the alleged assault by Mr. Christensen. M.D. claimed that the perpetrator of that assault was a grade school teacher who she also says she met on Okcupid. That she could have been the victim of a true sexual assault that was the direct result of online dating activities, and then within a few months resume those same activities including going on a date with a stranger, strains credulity.

Undersigned counsel are aware of two additional claims By M.D. that she was sexually assaulted. On August 3, 2014, in McLean County, IL, M.D.'s boyfriend filed a missing person report about her when she failed to return home one night. During the course of making the report, the boyfriend stated that M.D. had told him about a former boyfriend who had raped her and was now stalking her. M.D. ultimately returned home unharmed the following day. And on March 19, 2015, M.D. reported to police in Denton, Texas, that she had been raped by an acquaintance. In sum, the allegations of

sexual assault by M.D. are utterly incredible and unreliable and the government should be precluded from presenting evidence of them for any purpose.

### e. Additional evidence

At a hearing on this motion, the defense will introduce additional evidence conclusively establishing that Ms. Downer's factual account of the circumstances of her alleged meeting with Mr. Christensen are not true and that she has misrepresented actions she claimed to have taken after the alleged incident

### B. The Alleged Maltreatment of a Guinea Pig is Insufficiently Serious to be Relevant to the Capital Sentencing Determination

The alleged maltreatment of a rodent is insufficiently serious to be relevant to the determination of whether a person should live or die at a capital sentencing proceeding. "The courts must ensure that the evidence presented to the jury in capital sentencing hearings is truly worthy of consideration in a decision as grave as this." *Gilbert*, 120 F. Supp. 2d at 149.  Aggravating factors must be "'particularly relevant to the sentencing decision,' not merely relevant, in some generalized sense, to whether defendant might be considered a bad person." *Id*. at 150 (quoting *Gregg v. Georgia*, 428 U.S. 153, 192 (1976)). "Consideration of relatively minor misbehavior, however disturbing, would undermine the seriousness of the death penalty decision." *Id*. at 153 (finding that alleged acts of scalding a child with hot bath water and assaulting husband with large kitchen knife lack sufficient gravity to be relevant to capital sentencing). *See also United States v. Pleau*, No. 10-184-1 (D.R.I. 2013) (finding that burglary, absent any violence or threat of violence against a person, is insufficiently relevant to determination of whether

defendant should live or die; *United States v. Basciano*, 763 F. Supp. 2d 303, 358 (E.D.N.Y. 2011 (expressing concern that arson-related and assault-related conduct may not rise to the level of sufficient seriousness to be introduced to a death penalty jury).

The introduction of evidence concerning alleged maltreatment of a guinea pig, especially under the mantle of "other serious acts of violence," is beneath the dignity of the capital sentencing process. The idea that a jury should be permitted to decide that one defendant is more deserving of the death sentence than another based upon such a trivial consideration is constitutionally and statutorily intolerable. The Court should preclude the government from offering this evidence.

WHEREFORE, Defendant requests that this Court strike the non-statutory aggravating factor of other serious acts of violence.

Respectfully submitted,

/s/Elisabeth R. Pollock
Assistant Federal Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org

/s/ George Taseff
Assistant Federal Defender
401 Main Street, Suite 1500
Peoria, IL 61602
Phone: 309-671-7891
Fax:    309-671-7898
Email: George_Taseff@fd.org

/s/ Robert Tucker
Robert L. Tucker, Esq.
7114 Washington Ave
St. Louis, MO 63130
Phone: 703-527-1622
Email: roberttuckerlaw@gmail.com

/s/ Julie Brain
Julie Brain, Esq.
916 South 2nd Street
Philadelphia, PA 19147
Phone: 267-639-0417
Email: juliebrain1@yahoo.com

CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorneys Bryan D. Freres and Eugene L. Miller and Trial Attorney James B. Nelson. A copy was also mailed to the defendant.

/s/Elisabeth R. Pollock
Assistant Federal Public Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org