E-FILED
Friday, 14 September, 2018  06:33:05 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17-CR-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

**THE UNITED STATES OF AMERICA'S RESPONSE TO THE DEENDANT'S MOTION TO STRIKE THE NOTICE OF INTENT TO SEEK THE DEATH PENALTY ON THE GROUNDS THAT THE FEDERAL DEATH PENALTY ACT IS <u>UNCONSITUTIONAL AS APPLIED TO THIS CASE</u>**

NOW COMES the United States of America, by John E. Childress, United States Attorney for the Central District of Illinois, Eugene L. Miller and Bryan Freres, Assistant United States Attorneys, and Department of Justice Trial Attorney James B. Nelson, and respectfully requests that this Court deny, without an evidentiary hearing, the Defendant's Motion to Strike the Notice of Intent to Seek the Death Penalty on the Grounds that the Federal Death Penalty Act is Unconstitutional As Applied to this Case. (R.102)

## <u>INTRODUCTION</u>

The defendant asks this Court to declare that the Federal Death Penalty Act (FDPA) is unconstitutional as applied to this case. As with his motion seeking to have the Court to declare that the death penalty is unconstitutional under the Eighth Amendment, the instant motion is but one of many stock motions filed in every federal

death penalty case to preserve issues for later review despite controlling precedent from

the United States Supreme Court and the United States Courts of Appeal that forecloses

the defendant's arguments. Thus far, no trial court has accepted these arguments in light

of contrary precedent, and the United States respectfully suggests that this Court should

not either. Because the defendant's legal arguments are uniformly without merit, no

evidentiary hearing is necessary.

**RESPONSE**

I.      **STANDARD OF REVIEW**

Though styled as an "as applied" motion, most of the defendant's claims actually

assert the facial unconstitutionality of the FDPA. The defendant bears the burden of

establishing that the FDPA is unconstitutional. *See e.g., Lujan v. G & G Fire Sprinklers, Inc.*,

532 U.S. 189, 198 (2001). This is a weighty burden because a "facial challenge to a

legislative Act is . . . the most difficult challenge to mount successfully, since the

challenger must establish that no set of circumstances exists under which the Act would

be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Moreover, facial challenges are

disfavored because they often rest on speculation, run contrary to the principle of

judicial restraint, and short circuit the democratic process by preventing laws

embodying the will of the people. *Center for Individual Freedom v. Madigan*, 697 F.3d 464,

476 (7th Cir. 2012) (citing *Washington State Grange v. Wash. State Republican Party*, 552 U.S.

442, 450–51 (2008)).

The defendant's challenge is all the more difficult because, under the canons of

statutory construction, a statute must be construed to give it constitutional effect if

possible. *Salerno*, 481 U.S. at 745, citing *INS v. St. Cyr*, 533 U.S. 289, 299–300 (2001).

Where a statute is susceptible of both constitutional and unconstitutional construction, a

court is obligated to adopt the construction that avoids "grave and doubtful questions."

*Jones v. United States*, 526 U.S. 227, 239 (1999).

## II.    THE SUPERSEDING INDICTMENT IN THIS CASE COMPLIES WITH *RING*.

In the first two sections of his motion, the defendant argues that "aggravating

factors necessary to imposition of the death penalty under the FDPA must be

charged in the indictment, and proved to the satisfaction of a jury beyond a reasonable

doubt." (Def.Mot.7-15) To the extent the defendant limits his argument to the threshold

intent factors and at least one *statutory* aggravating factor, the United States does not

disagree with this statement of law.

The FDPA essentially codified various Supreme Court decisions, starting with

*Furman v. Georgia*, 408 U.S. 238 (1972), that required a capital punishment statute to

contain two critical phases to be constitutional: (i) the eligibility phase, which genuinely

narrows or channels the class of defendants eligible for the death penalty, such as

murderers, by means of statutory aggravating factors that provide principled guidance

to distinguish between those who received the death penalty and those who did not;

and (ii) the selection phase, which individualizes the jury's capital sentencing decisions

for those defendants who fall within the narrowed, eligible class of defendants, on the

basis of the character of the defendant and the circumstances of the crime. *Jones v. United*

*States*, 526 U.S. 373, 381 (1999); *Buchanan v. Angelone*, 522 U.S. 269, 275 (1998); *Maynard*

*v. Cartwright*, 486 U.S. 356, 361-62 (1988).

3

Mechanically, the process under the FDPA unfolds as follows:

First, the jury must decide whether [the defendant] had the requisite intent to commit the death eligible offense. 18 U.S.C. § 3591(a). If the jury unanimously finds beyond a reasonable doubt that intent is established, it moves to the next step in the penalty process. If the jury does not so find, the deliberations are over and the death penalty may not be imposed.

Assuming the jury finds the requisite intent, it must then consider the statutory aggravating factors alleged by the government in its notice to seek the death penalty. The statutory aggravating factors from which the government may choose are listed at 18 U.S.C. §§ 3592(c)(1)-(16). The jury must determine whether the government has proven at least one of the statutory factors alleged beyond a reasonable doubt. 18 U.S.C. § 3593(c). If the jury unanimously so finds, it moves to the next step of the penalty process. If not, the deliberations are over and the death penalty may not be imposed. 18 U.S.C. § 3593(d).

Assuming the jury finds at least one statutory aggravating factor, it must then consider that factor or factors, plus "any other aggravating factor for which notice has been provided," 18 U.S.C. § 3593 (d) ("non-statutory aggravating factors"), and weigh them against any mitigating factors to determine whether the death penalty is appropriate. 18 U.S.C. § 3593(e).

Non-statutory aggravating factors, like their statutory counterparts, must be unanimously found by the jury beyond a reasonable doubt, while mitigating factors need only be established by a preponderance of the evidence. Further, any juror persuaded that a mitigating factor exists may consider it in reaching a sentencing decision; unanimity is not required. 18 U.S.C. § 3593(c), (d).

*United States v. Nguyen*, 928 F. Supp. 1525, 1532 (D. Kan. 1996).

In *Ring v. Arizona*, the Court extended *Apprendi v. New Jersey*, 530 U.S. 466 (2000), to the capital sentencing context. 536 U.S. 584, 609 (2002). *Ring* held that, under the Sixth Amendment, the facts that are necessary to render a defendant eligible for a death sentence – which under the FDPA are the requisite threshold intent factors under 18 U.S.C. § 3591(a)(2), and at least one statutory aggravating factor under 18 U.S.C. §3592(c)

(collectively "eligibility factors") – "operate[] as 'the functional equivalent of an element of a greater offense.'" *Id.* (quoting *Apprendi*, 530 U.S. at 494); *see also Jones v. United States*, 526 U.S. 227, 243 n. 6 (1999) (recognizing that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and found beyond a reasonable doubt"). Accordingly, like the statutory elements of a crime, *eligibility*-defining factors in a capital sentencing statute, such as the FDPA, are subject to the Jury Trial Clause of the Sixth Amendment and must be proved to a jury beyond a reasonable doubt. *Ring*, 536 U.S. at 602 ("If a state makes an increase in punishment contingent on the finding of a fact, that fact – no matter how the State labels it – must be found by a jury beyond a reasonable doubt.").

Although the Supreme Court itself has not extended *Ring* to require grand jury findings of eligibility factors pursuant to the Indictment Clause of the Fifth Amendment, lower courts, including the Seventh Circuit, have held that the FDPA eligibility factors must be charged in the indictment and found by the grand jury to comport with *Ring* and that an indictment that does so passes constitutional muster. *See, e.g., United States v. Mikos*, 539 F.3d 706, 715-16 (7th Cir. 2008); *United States v. Sampson*, 486 F.3d 13, 20 (1st Cir. 2007); *United States v. Odeh*, 552 F.3d 93, 109 (2d Cir. 2008); *United States v. Higgs*, 353 F.3d 281, 298 (4th Cir. 2003); *United States v. Robinson*, 367 F.3d 278, 284 (5th Cir. 2004); *United States v. Purkey*, 428 F.3d 738, 749 (8th Cir. 2006); *United States v. Mitchell*, 502 F.3d 931, 979 (9th Cir. 2007); *United States v. Brown*, 441 F.3d 1330, 1367 (11th Cir. 2006).

Moreover, to ensure compliance with *Ring*, the Department of Justice enforces a

policy that requires federal prosecutors to present special findings to the grand jury in a

potential capital case. The special findings must include at least one threshold intent

factor and at least one statutory aggravating factor.

Assuming, then, that *Ring* requires a grand jury finding as to eligibility factors, the

Superseding Indictment in this case was fully compliant with that constitutional

mandate.  The Superseding Indictment alleged and the grand jury found probable cause

that the defendant committed the death-eligible offense of Kidnapping Resulting in

Death, as well as all four of the threshold intent factors contained in 18 U.S.C. §§

3591(a)(2)(A)-(D). (R.26) The Superseding Indictment also charged the statutory

aggravating factors contained in 18 U.S.C. §§ 3592(c)(1), (6), and (9).  The Indictment

Clause requires nothing more. *Mikos*, 539 F.3d at 715 ("[A]ggravating factors that make a

crime death-eligible (though not those used in a later balancing procedure) must be

charged in the indictment. The indictment of [the defendant] includes several [statutory]

aggravating factors. All requirements of *Ring* and *Apprendi* have been satisfied").

## III.   THE FDPA ALLOWS THE UNITED STATES TO PRESENT THE *RING*-REQUIRED ELIGIBILITY FACTORS TO A GRAND JURY, AND THUS, LEGISLATIVE REDRAFTING OF THE STATUTE IS NOT NECESSARY.

The defendant also mounts a series of facial challenges to the  FDPA, asserting  in

related arguments that there is a conflict between the FDPA and *Ring* –- namely, that the

statute requires prosecutors, not grand juries, to allege death penalty eligibility factors,

and that curing the problem would require impermissible redrafting of the statute by the

Executive and Judicial Branches. (Def.Mot.9-34) The defendant fails to acknowledge and

advise the Court that his arguments are foreclosed by binding Seventh Circuit precedent

6

– which is, itself, in concert with the unanimous view of the Courts of Appeal. *Mikos*, 539 F.3d at 715-16; *Sampson*, 486 F.3d at 21; *United States v. Brown*, 441 F.3d 1330, 1367 (11th Cir. 2006); *United States v. Allen*, 406 F.3d 940, 849 (8th Cir. 2005) (*en banc*); *United States v. Barnette*, 390 F.3d 775, 788-90 (4th Cir. 2004), *vacated on other grounds*, 546 U.S. 803 (2005); Robinson, 367 F.3d at 290.

### A.   The FDPA Does Not Preclude Prosecutors From Presenting Eligibility Factors To A Grand Jury.

The defendant first argues that the FDPA is facially unconstitutional because it "neither contemplates affording, nor permits, the grand jury any role in determining which aggravating factors are to be alleged in a capital prosecution." (Def.Mot.14) This argument is foreclosed by both binding and persuasive precedent.

As has been recognized by every United States Court of Appeals to consider the issue, the flaw in the defendants' reasoning is the "assumption that the FDPA precludes the grand jury from charging aggravating factors in the indictment." *Barnette*, 390 F.3d at 789 (emphasis added).  Contrary to this flawed assumption, nothing in the FDPA prohibits a grand jury from considering eligibility factors, and furthermore, no provision in the FDPA grants exclusive authority to the prosecutor for determining the likely existence of eligibility factors.[1]

--------------------------------------

[1] While the FDPA does explicitly require the prosecutor to file a Notice of Intent to Seek the Death Penalty (NOI), which must include the eligibility factors the prosecutor intends to pursue, this NOI requirement is separate from a constitutional requirement to present the eligibility factors in the indictment. Nothing in the sections covering the NOI requirement prevents the prosecutor from also presenting the eligibility factors to a grand jury as part of the indictment.

The FDPA is silent with respect to the function of the grand jury.[2] Thus, the statute is not rendered facially unconstitutional by *Ring*. Most importantly for this Court's purposes, the Seventh Circuit has already rejected this exact argument, explaining as follows:

> Mikos insists that the [FDPA] must be declared unconstitutional because it does not demand that the grand jury find the aggravating factors. He then contends that the statute is not severable, so that to find one constitutional flaw is to knock out the basis of all capital punishment. The argument goes wrong at the first step (and we need not decide whether the severability step is wrong as well), because *Ring* does not hold or imply that any part of the Federal Death Penalty Act is unconstitutional.

> *Ring* does say that the Constitution demands that certain things be in an indictment if a capital sentence is to be valid, but the federal statute does not forbid aggravating factors in an indictment. It is silent on whether they are included. If the indictment complies with *Ring,* no constitutional error occurs. There is nothing to sever. As long as a defendant's rights under *Ring* are honored (as Mikos's were), *it is a matter of indifference whether the rights were honored as a matter of statutory command or prosecutorial precaution.* We have held much the same thing for 21 U.S.C. § 841. Defendants argued after *Apprendi* that § 841 is un-constitutional because it does not require drug quantities to be charged in indictments. We held, to the contrary, that § 841 is silent on the subject, and that *prosecutors are free to include all allegations needed to comply with Apprendi. Putting in the indictment more than the statutory floor does not imply that any law is unconstitutional. See United States v. Brough,* 243 F.3d 1078 (7th Cir. 2001). *Cf. United States v. Cotton,* 535 U.S. 625, 122 S. Ct. 1781, 152 L.Ed.2d 860 (2002).

> Just so with the Federal Death Penalty Act. Title 18 says what must be proved, and sometimes it says how; other sources, including the Constitution, the Federal Rules of Criminal Procedure, and the common law, add details about which tasks fall to prosecutors, judges, grand juries, and petit juries. That one source of law is silent on a procedural issue, such as what an indictment must contain, just leaves it to another source. Look

---

[2] The Fourth Circuit has noted that the legislative history of the FDPA does not indicate an intent by Congress to restrict the United States from presenting the eligibility factors to a grand jury. *Barnette*, 390 F.3d at 789. Conversely, the defendant's arguments that Congress intended the eligibility factors to be a sentencing determination rather than elements of the offense, are unsupported.

at 18 U.S.C. § 1347, the Medicare-fraud statute that Mikos has been convicted of violating. There is not a peep in § 1347 (or almost any other statute) about what must be in an indictment, but no one would say that this makes the whole Criminal Code a rollicking violation of the Indictment Clause. Other sources of law supply details about what indictments (and other legal documents) contain, so that defendants' constitutional rights are fully respected.

*Mikos*, 539 F.3d at 715-16 (emphasis added).

Far from being an outlier, the Seventh Circuit is joined by every other circuit court to have addressed the issue. *Sampson*, 486 F.3d at 22 (holding that there is no irredeemable conflict between the FDPA and *Ring*); *Barnette*, 390 F.3d at 789 (no language in the statute "restricts the government from submitting aggravating factors to the grand jury"); *Allen*, 406 F.3d at 949; *Brown*, 441 F.3d at 1367 (there is nothing in the FDPA that inhibits prosecutors from charging aggravating factors in an indictment); *United States v. LeCroy*, 441 F.3d 914, 921 (11th Cir. 2006) ("nothing in the [FDPA] forbids, or is inconsistent with, prosecutors taking the additional step of including the statutory aggravating factors in the indictment"); *United States v. Fell*, 217 F. Supp. 2d 469, 484 (D. Vt. 2002) ("That the FDPA is silent concerning the grand jury's role in charging death-eligibility factors does not suggest that Congress intended to forbid grand jury participation or to exclude these factors from an indictment. On the contrary, Congress has provided for the grand jury's involvement in charging federal capital offenses in Rule 7. . . .").

## B. *Ring* Does Not Compel Congressional Redrafting Of The FDPA.

The defendant next argues that the application of *Ring* to the FDPA requires impermissible judicial or executive redrafting of the statute. (Def.Mot.16) Again, the

defendant fails to advise the Court that this claim, and the reasoning behind it, has been repeatedly rejected – including in the Seventh Circuit. *Mikos*, 539 F.3d at 715-716; *see also Sampson*, 486 F.3d at 789; *Barnette*, 390 F.3d at 789 (rejecting argument that *Ring* and FDPA are in conflict); *LeCroy*, 441 F.3d at 921 (same); *United States v. Diaz*, 2007 WL 656831 at *5 (N.D. Cal. Feb. 28, 2007) (expressly following the other courts that have held that *Ring* does not require rewriting of the FDPA); *United States v. Rodriguez*, 380 F. Supp. 2d 1041, 1047 (D.N.D. 2005) ("*Ring* does not require that any provision of the FDPA be rewritten."); *United States v. Williams*, 2007 WL 2916123, *7 (D. Haw. Oct. 2, 2007) (rejecting argument that FDPA must be rewritten by Congress in light of *Ring*).

As noted above, the Seventh Circuit held that:

> Putting in the indictment more than the statutory floor does not imply that any law is unconstitutional. . . Title 18 says what must be proved, and sometimes it says how; other sources, including the Constitution, the Federal Rules of Criminal Procedure, and the common law, add details about which tasks fall to prosecutors, judges, grand juries, and petit juries. That one source of law is silent on a procedural issue, such as what an indictment must contain, just leaves it to another source.

*Mikos*, 539 F.3d at 715-16 (citation omitted).

The universal rejection of defendant's argument by the courts is premised on the recognition that *Ring* involves a matter of procedure, not of substantive definition. *See, e.g., Sampson*, 486 F.3d at 21. The Supreme Court set the groundwork for this conclusion in *Jones*, a precursor to *Apprendi* and *Ring*, where it explained that "[t]he constitutional guarantees that g[a]ve rise to [its] concern in no way restrict the ability of legislatures to identify the conduct they wish to characterize as criminal or to define the facts whose proof is essential to the establishment of criminal liability." 526 U.S. at 243, n. 6.

To comply with *Ring*, the Department of Justice has enacted a policy for all federal prosecutors to present the eligibility factors to the grand jury in death penalty cases and charge the eligibility factors in the indictment. The United States followed these procedures in this case. These recognized mechanisms for complying with *Ring* do not amount to unconstitutional redrafting of the FDPA because, as the Supreme Court itself has held, *Ring* set forth a procedural, not substantive, rule. *Schriro v. Summerlin*, 542 U.S. 348, 358 (2004).[3] It follows then, that the rule against massive judicial rewriting of statutes simply is not implicated here. It is well established that adhering to a court crafted rule of criminal procedure when applying the FDPA does not constitute impermissible statutory redrafting.

**C.    The Defendant's Reliance On *Jackson* And *Booker* Is Misplaced.**

In an effort to avoid the overwhelming authority on this issue, and as other capital defendants routinely do, defendant attempts to wedge his argument under the umbrella of *United States v. Jackson*, 390 U.S. 570 (1968) and *United States v. Booker*, 543 U.S. 220 (2005).  *See* (Def.Mot.15-25) However, as the courts who have considered this issue previously have held, neither of those two cases support the defendant's claim.

In *Jackson*, the Court invalidated a provision of the Federal Kidnaping Act, under

---

[3] The defendant's reliance on *Sattazahn v. Pennsylvania*, 537 U.S. 101 (2003) for the proposition that *Ring* announced a substantive rule is unpersuasive. (Def.Mot.9) *Sattazahn* is a plurality opinion, it does not carry the precedential weight of a majority opinion. The defendant's claim that the plurality opinion and the dissent are "arguably similar" on the issue does not change the analysis. *Id.* at 9-10. In any event, defendant's argument is in direct conflict with the Supreme Court's decision in *Schriro*. As the First Circuit noted in *Sampson*, the circuits are in agreement that *Ring* is a matter of procedure. *Sampson*, 486 F.3d at 21-22 (citing decisions from the 1st, 4th, 5th, 10th, 8th, 9th, and 11th).

which only a jury could impose a death sentence. 390 U.S. at 591. The defendant argued

there that the statute violated his right to a jury trial by effectively encouraging either a

guilty plea or waiver of the right to a jury trial in order to avoid a death sentence. *Id*. at

572-73. *Jackson* rejected a proposal that the statute could be saved by adopting

procedures for a "special jury" that would determine whether death was warranted. *Id*.

at 580.

In *Booker*, the Court declared that the federal sentencing guidelines must be

rendered advisory, because they included provisions allowing for a defendant's sentence

to be increased using facts that had not been found by a jury. 543 U.S. at 245-46. Instead,

the Court severed from the guidelines the provision making mandatory the effect of

sentencing factors not found by a jury. *Id*. at 245. To do otherwise, it held, "would [have]

so transform[ed] the scheme that Congress created that Congress likely would not have

intended the Act as so modified to stand." *Id*. at 249.

What *Jackson* and *Booker* have in common is that, in both cases, they involved

statutes which could not be "saved" once a portion of them was declared

unconstitutional. Put another way, both opinions found that Congress' intentions in

enacting the legislation could not be carried out, but-for the objectionable portion. *Booker*,

543 U.S. at 245-49; *Jackson*, 390 U.S. at 572-73, 580.[4]  By contrast, grand jury presentment

---

[4] This similarity also applies to *Hurst v. Florida*, which is another inapt case cited by the
defendant. (Def.Mot.10-12 & 46-47, n.13) In *Hurst*, the Supreme Court rejected Florida's capital
sentencing provision that called for the jury to "recommend" either death or life imprisonment,
and allowed the judge to ultimately sentence the defendant in whatever way he saw fit. 136 S.
Ct. 616, 622-24 (2016). The Court held that Hurst's right to an impartial jury included the right to
have his eligibility for the death penalty determined by a jury's fact-finding, not a judge's. *Id*.
Notably, the FDPA provides for the jury to have the ultimate discretion in determining a

and indictment does not transform the FDPA's scheme or contravene Congress's

intentions in enacting the statute. As was spelled out by the First Circuit, which rejected

an identical challenge to the FDPA:

> The statute in question in [] *Booker*, like the statute in *Jackson*, w[as]
> incompatible with constitutional requirements. Saving [the] statute, as
> proposed by the government, while at the same time complying with
> constitutional mandates, would have required the Court to perform a
> complete statutory rewrite, which is a legislative and not a judicial
> function. In contrast, allowing a grand jury to consider and charge
> aggravating factors under the FDPA does not have any effect either on the
> substantive aspects of the statute or on the discrete roles that the statute
> assigns to the judge, the prosecutor, and the jury respectively.

*Sampson*, 486 F.3d at 23 (citations omitted); *see also Barnette*, 390 F.2d at 789 (holding that

the legislative history of the FDPA does not indicate an intent to restrict the government

from presenting eligibility factors to the grand jury).[5]

The processes used to comply with *Ring* –- presentation to the grand jury of

eligibility factors, and proof to a jury beyond a reasonable doubt of facts that increase the

sentence beyond the statutory maximum –- are in no way analogous to the issues

discussed in *Booker* and *Jackson*. The grand jury's role in the criminal justice system —to

find and charge the elements of a criminal offense —is enshrined in the Fifth

Amendment ("[n]o person shall be held to answer for a capital, or otherwise infamous

---

sentence – the exact opposite of the infirmity found in *Hurst*. Thus, the defendant's reliance on
*Hurst*, like his reliance on *Ring*, *Jackson*, and *Booker*, is misplaced.

[5] The defendant's citation to *Blount v. Rizzi*, 400 U.S. 410, 419 (1971) is likewise misplaced.
(Def.Mot.20) In that case, the Court refused to make a substantive change to the statute, namely
to eliminate its provision requiring the Postmaster General to determine whether material was
obscene. Grand Jury presentment of elements of an offense punishable under the FDPA entails
no such substantive revision of the statute. *Sampson*, 486 F.3d at 22 (deeming *Blount* inapposite to
this argument).

crime, unless on presentment or indictment of a Grand Jury"), and well-recognized in the common law and statutory law. There is nothing new or complicated about presenting elements of an offense to a grand jury – this is the procedure followed in every felony case.

Likewise, the Department of Justice's requirement that prosecutors properly plead and prove the relevant facts is exactly what the United States should be doing. It is hard to imagine a circumstance in which a criminal defense attorney would object to comprehensive pleading and proof outside the context of their opposition to capital punishment. Perhaps this is why the defendant cannot cite to a single case in which this attack on the FDPA has been adopted by any court, anywhere.

> **D.    The FDPA Does Not Unconstitutionally Delegate Legislative Power To The Executive Branch.**

As a corollary to his *Ring* arguments, the defendant claims that the FDPA violates the non-delegation doctrine of Article I of the Constitution by authorizing federal prosecutors or the judiciary to "substitute[] either's judgment for that of Congress in relation to prescribing the elements and the procedures for application of the federal death penalty." (Def.Mot.23) This argument is without either merit or legal support.

Although it is not clear from his motion, it would seem that "new procedures" is a reference to grand jury presentment of eligibility factors. As outlined above, this procedure is venerable, not "new," and involves no exercise of legislative power by the Executive.

Likewise, although defendant does not specify what "new elements" with which he takes issue, the United States assumes he is referring to non-statutory aggravating factors. This claim is also foreclosed by opinions of the federal courts of appeals, as set forth below.

### 1.    The non-delegation doctrine.

The Tenth Circuit recently summarized the relevant law of the non-delegation:

> The non-delegation doctrine arises from the constitutional principle of separation of powers, specifically Article I, § 1, which provides that 'all legislative Powers herein granted shall be vested in a Congress of the United States.'" *United States v. Jones*, 132 F.3d 232, 239 (5th Cir. 1998) (*citing Touby v. United States*, 500 U.S. 160, 165 (1991), and *United States v. Mistretta*, 488 U.S. 361, 371 (1989). "Under the non-delegation doctrine, Congress may not constitutionally delegate its legislative power to another branch of government." *Id.* (*citing Mistretta*, 488 U.S. at 372). "Congress, however, may seek assistance, within limits, from coordinate branches of government." *Id.* "So long as Congress formulates 'an intelligible principle to which the person or body authorized to exercise the delegated authority is directed to conform, such legislative action is not a forbidden delegation of legislative power.'" *Id.* (*quoting Mistretta*, 488 U.S. at 372).

*United States v. Barrett*, 496 F.3d 1079, 1108 (10th Cir. 2007).

### 2.    The FDPA does not delegate legislative function.

First, the FDPA does not delegate a legislative function to the prosecutor. *Higgs*, 353 F.3d at 321. The prosecutor's discretion in defining what is a death-eligible offense is wholly circumscribed by the statute's requirement that the jury must unanimously find at least one intent factor and one statutory aggravating factor before the defendant becomes eligible for the death penalty. *Id.* Only after the prosecutor selects and proves those critical, legislatively-defined eligibility factors may he argue that additional, non-statutory aggravators combine with the statutory aggravators to outweigh any

15

mitigating factors that have been submitted for consideration. *Id*.  The non-statutory

aggravators, which the prosecutor may define, merely assist the jury in its task of

determining whether a death-eligible defendant should indeed receive the maximum

sentence, and must be found by the jury beyond a reasonable doubt. *Id*.; *see also United*

*States v. Jones*, 132 F.3d 232, 239-40 (5th Cir. 1998) (holding that government's authority

to define non-statutory aggravating factors is not an unconstitutional delegation);

*Barrett*, 496 F.3d at 1108; *Mitchell*, 502 F.2d at 978.

As support for his argument, defendant cites only the dissent in *Mistretta v. United*

*States*, 488 U.S. 361 (1989), a case in which the Supreme Court upheld a delegation of

congressional power to the United States Sentencing Commission. Thus, the Court need

look no further than the majority opinion of the defendant's own case to reject his non-

delegation argument. Again, the circuits that have addressed the issue are in accord that

the FDPA does not delegate a legislative function to the prosecutor by allowing the

prosecutor to define and select non-statutory aggravating factors.

### 3. If there is a delegation of legislative function, it is properly guided by intelligible principles.

Assuming for the sake of argument that the discretion vested in prosecutors by

the FDPA to define and pursue non-statutory aggravating factors could be viewed as a

delegation of legislative power, such delegation is constitutionally permissible. *Higgs*,

353 F.3d at 321. Any delegation involved is sufficiently circumscribed by intelligible

principles to avoid violating separation of powers. *Id*. at 322; *Mitchell*, 502 F.3d at 979.

Limitations on the prosecutor's power include: (1) the defendant must be given notice of

the factor(s), §§ 3592(c) and 3593(a); (2) constitutional limitations on the use of

aggravating factors established by the Supreme Court; (3) judicial review by the district

court of the relevance, reliability, and constitutionality of proposed non-statutory factors;

and (4) the requirement that the jury must find the eligibility factors beyond a reasonable

doubt before it may consider the non-statutory aggravating factors. *See Mitchell*, 502 F.3d

at 979 (*citing Jones*, 132 F.3d at 239-40); *see also Taylor*, 2008 WL 217115, at *9 ("The

statutory list of aggravating and mitigating factors focuses on circumstances of the crime

and the character of the offender, including his past criminal history, his capacity and

relative culpability in the offense. Proposed non-statutory aggravating factors should be

consistent with the type and severity of the statutory factors").

Accordingly, to the extent that the prosecutor's authority to define non-statutory

aggravating factors constitutes a delegation of legislative power, that delegation is a

constitutionally-permissible one. *Higgs*, 353 F.3d at 321; *Barrett*, 496 F.3d at 1108 (holding

in response to a challenge to analogous provisions of the Anti-Drug Abuse Act that

"prosecutorial discretion to promulgate non-statutory aggravating factors falls squarely

within the permissible delegation of power to the Executive branch"). For either of the

reasons stated, the Court should reject the defendant's non-delegation doctrine claim.

### E.      There Is No Constitutional Error In Alleging Eligibility Factors In A Special Finding Section Of The Indictment.

Defendant next takes issue with the Superseding Indictment's "Notice of Special

Findings," alleging FDPA eligibility factors. (Def.Mot.25) The defendant contends that

"nothing in the text of [Rule 7 of the Federal Rules of Criminal Procedure] and nothing

in the Indictment Clause of the Fifth Amendment[] contemplates or permits a grand jury to make 'Special Findings' that serve the function of the triggering requirements of the FDPA that are now invalid in light of *Ring* . . . . [and] the principles established in Jackson continue to apply and the statute remains controlling and dispositive."

This argument, which the defendant does not support with a single citation, amounts to nothing more than a repackaging of his *Ring* and *Jackson* claims. Moreover, as with all of the claims in the instant motion, it "is entirely without merit." *Sampson*, 486 F.3d at 23, n.2. Accordingly, the United States incorporates its arguments and citation to authority from above.

Courts have consistently approved Special Findings as a vehicle to allege aggravating factors under the FDPA. *See, e.g., Fell*, 217 F. Supp. 2d at 484. As the district court noted in *United States v. Haynes*:

> the Court rejects Defendant's contention that a grand jury has no authority to make "special findings" concerning death-eligibility factors. As the government points out, the federal criminal code, outside of a few unrelated provisions, "contains virtually no rules governing grand jury practice." . . . The grand jury, born out of the Common Law, "is a constitutional fixture in its own right," *United States v. Williams*, 504 U.S. 36, 47, (1992), with "functional independence ... to initiate investigations, examine witnesses and to conduct its deliberations." *Id*. at 48. "Given the grand jury's operational separateness [, the Supreme Court has been averse to] prescribing modes of grand jury procedure." *Id*. at 49-50. As a result, the Court will not prohibit the grand jury, absent express Congressional action, from returning superceding indictments in capital cases. *Accord Regan*, 221 F.Supp.2d at 680 ("the form chosen by the Government in presenting these facts in the superseding indictment-the 'Notice of Special Findings'-is permissible. Neither the Fifth Amendment nor Fed.R.Crim.P. 7 prohibits the presentation of such information in this manner."); *Lentz*, 225 F.Supp.2d at 681 (same); *cf. United States v. Kirtman*, 33 Fed.Appx. 401 (10th Cir.2002) (allowing the use of a superceding indictment to cure an *Apprendi*-based defect in the original indictment for a drug offense). . .

18

269 F. Supp. 2d 970, 981-82 (W.D. Tn. 2003).

     **F.**     **The Defendant Fails To Distinguish Contrary Appellate Decisions.**

     The defendant's attempt to maneuver around the avalanche of adverse circuit court precedent is unavailing. He argues, with respect to these decisions that "each has been fatally flawed for two principal reasons: (1) the decisions all fail to address *Jackson*, and/or to distinguish its clearly applicable holding and principles; and (2) the decisions ignore the plain language of the FDPA with respect to whether the grand jury is authorized to allege aggravating factors." (Def.Mot.26)

     To the extent that the defendant is advising the Court that it should disregard the Seventh Circuit's binding precedent in *Mikos*, such a contention merits little more comment than pointing out that the defendant is imploring the Court to do that which it simply cannot do. In regard to other precedents cited herein, the defendant's first point is incorrect, insofar as the First Circuit in *Sampson* dealt squarely with the implications of *Jackson*, a point that defendant concedes, as he must. (Def.Mot.27)

     The second point is also incorrect. The mountain of case law undercutting the defendant's reliance upon *Ring* explicitly addresses the plain language of the FDPA. *See*, *e.g.*, *Mikos*, 539 F.3d at 715 ("[T]he [FDPA] does not forbid aggravating factors in an indictment. It is silent on whether they are included. If the indictment complies with *Ring*, no constitutional error occurs."); *Barnette*, 390 F.3d at 789 ("A review of the statute itself reveals no language that restricts the government from submitting aggravating factors to the grand jury").

In the final analysis, the defendant simply disagrees with the unanimous
conclusion of multiple federal courts concerning the application of *Jackson* to the FDPA.
He insists – the weight of authority notwithstanding – that the absence of express
language in the FDPA instructing prosecutors to present aggravating factors to the
grand jury precludes them from doing so. The practical implications of this view
underscore its absurdity. Prosecutors routinely present the elements of crimes to grand
juries to obtain indictments that comport with the Fifth Amendment, but criminal
statutes "seldom expressly provide for submitting elements of an offense to a grand
jury." *LeCroy*, 441 F.3d at 921.

The defendant's reasoning defies both logic and over 200 years of criminal
jurisprudence and would grind the wheels of the criminal justice system to a halt. The
defendant's logic would require that any indictment charging a violation of the bank
robbery statute (18 U.S.C. § 2113) or the mail fraud statute (18 U.S.C. § 1341), neither of
which expressly direct prosecutors to present the offense's elements to the grand jury,
must be dismissed if it could be shown that the prosecutor presented the grand jury with
the elements. Given such an absurd result, it is not surprising that no court has accepted
this argument.[6]

---

[6] Because the United States does not rely on post-*Apprendi* drug quantity cases,
severability analysis, or the doctrine of "constitutional avoidance," it will not address the
defendant's preemptive answer to such reliance. (Def.Mot.28-30) As noted by the Seventh Circuit
in *Mikos*, "[i]f the indictment complies with *Ring*, no constitutional error occurs. There is nothing
to sever").

IV.     **THE UNITED STATES IS NOT CONSTITUTIONALLY REQUIRED TO INFORM THE GRAND JURY THAT SPECIAL FINDINGS COULD RESULT IN A DEATH SENTENCE.**

In the first of his actual "as applied" challenges, the defendant asserts that the Superseding Indictment in this case is constitutionally deficient because the United States might not have informed the grand jury that the charge carried a possible death sentence. (Def.Mot.35-41) The defendant cites no authority, however, adopting this viewpoint.  Regardless, the defendant's claim is both unpersuasive and contrary to the decisions of multiple federal courts that have considered identical claims.

A.      **Courts Have Routinely Concluded That The United States Is Not Constitutionally Required To Inform A Grand Jury That The Death Penalty Is A Possible Consequence Arising Out Of The Special Findings.**

The Fifth Amendment states, "no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. Amend. V. As the Supreme Court explained:

> [T]he grand jury is a central component of the criminal justice process. The Fifth Amendment requires the Federal Government to use a grand jury to initiate a prosecution. . .  The grand jury, like the petit jury, "acts as a vital check against the wrongful exercise of power by the State and its prosecutors."  It controls not only the initial decision to indict, but also significant decisions such as how many counts to charge and whether to charge a greater or lesser offense, including the important decision to charge a capital crime."

*Campbell v. Louisiana*, 523 U.S. 392, 398-99 (1998) (quotations and citations omitted); *see also* Fed. R. Crim. P. 7(a)(1)(A) (capital offenses shall be charged by indictment); *Vasquez v. Hillery*, 474 U.S. 254, 263 (1986) (the power to charge capital or noncapital offense lies in hands of grand jury).

There is no question that the grand jury plays a crucial role in the charging of a capital offense. The defendant contends that the grand jury was not fully informed of the consequences of their decision to indict the defendant for capital offenses and that the United States' failure to inform grand jurors of the sentencing significance of their special findings usurps the grand jury's role in acting as "'a vital check against the wrongful exercise of power by the State and its prosecutors.'" (Def.Mot.41 (quoting *Campbell*, 523 U.S. at 398)). The defendant's argument is contrary to Supreme Court precedent, as applied in various federal courts. That case law makes clear that the Indictment Clause does not require the United States to inform the grand jurors of the potential penalties that attach to their special findings.

The Supreme Court has made abundantly clear that an indictment need only charge the elements necessary to constitute the offense, and need not charge the ultimate punishment sought for the offense committed. *Hamling v. United States*, 418 U.S. 87, 117 (1974). Specifically, *Hamling* stated, "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'these words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *Id.* (quoting *United States v. Carll*, 105 U.S. 611, 612 (1881)). Thus, an indictment is sufficient if first, it contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling*, 418 U.S. at 117. The Superseding Indictment in this case informs the defendant that he is charged with a capital crime,

22

specifies the factors that render him eligible for a death sentence, and allow him to protect himself with the Double Jeopardy provisions of the Constitution. Nothing more is required.

Unsurprisingly, the defendant fails to cite to a single case which holds – in the context of the FDPA or otherwise – that the prosecutor must inform a grand jury that the inclusion of special findings in an indictment indicates that the defendant may face the death penalty if convicted. Rather, the defendant cites a host of precedents establishing the unremarkable and uncontested propositions that (1) the Fifth Amendment requires the United States to use a grand jury to initiate a prosecution, including a prosecution for capital crimes; and (2) the grand jury serves as a "vital check" on United States overreaching in its decisions to charge crimes, including capital crimes. (Def.Mot.35-41)

As with his previous arguments, the position advanced by the defendant here has been universally rejected by the courts. The unsoundness of the defendant's position was best presented by the district court in *Haynes*, an opinion which has been echoed by all other courts to have addressed the issue:

> [t]he grand jury's role is not to decide whether probable cause supports the imposition of a particular sentence against a charged individual; rather the grand jury check on prosecutorial power stems from its independent factual determination of the existence of probable cause for the essential elements of the charged offense.  Moreover . . . grand juries do not make findings or recommendations concerning punishment or sentencing and such considerations should not influence their decision. It is for the petit jury to make that determination. The role of the grand jury is to investigate possible crimes against the sovereign so that it can make a judgment whether a trial on specific charges is necessary.

*Haynes*, 269 F .Supp. 2d at 981; *see also United States v. Sanders*, 2014 WL 3122418, *6 (W.D. La. 2014) ("Similar arguments have been rejected by a number of courts, and we find their reasoning persuasive"); *United States v. Savage*, 2013 WL 1934531, *7 (E.D. Pa. 2013) ("Defendants' argument reveals their misunderstanding of the role of the grand jury. Grand juries do not make findings or recommendations concerning punishment or sentencing. . . .") (internal quotations omitted); *United States v. Williams*, 2013 WL 1335599, *15 (M.D. Pa. 2013) (holding that the grand jury "was able to fulfill its constitutional role in determining whether probable cause existed to charge defendant with the crime in the indictment without consideration of the possible sentences"); *United States v. Jacques*, 2011 WL 1675417, *10 (D. Vt. 2011); *United States v. Troya,* 2008 WL 4327004, *7 (S.D. Fla. 2008) ("[T]he case law is clear that there is no constitutional requirement that the grand jury be informed of the potential punishment arising out of the Special Findings."); *Lecco*, 2007 WL 1074775 at **2-3 (noting that "the Supreme Court has made clear that the Indictment clause of the Fifth Amendment does not require the government to inform the grand jury of the potential penalties that might attach as a result of any special findings"); *United States v. Diaz*, 2007 WL 656831, *6 (N.D. Cal. 2007) (finding no reason for the grand jury to be informed of the potential punishment arising out of the special findings); *Untied States v. Talik*, 2007 WL 4570704, *7 (N.D. W. Va. 2007); *United States v. Williams*, 2007 WL 2916123, *4 (D. Haw. 2007). The defendant's claim that the Superseding Indictment is constitutionally inadequate because the United States did not inform the grand jury that this is a capital case is simply incorrect.

B.      **The Defendant's Historical References Are Unpersuasive.**

Again, the purpose of the Indictment Clause of the Fifth Amendment is to ensure that the defendant is subject to criminal charges that have been approved by a group of citizens acting independently of the prosecutor or judiciary. *Stirone v. United States*, 361 U.S. 212, 218 (1960). In modern criminal practice, it is the petit jury, not the grand jury, whose function is to decide the defendant's ultimate fate—it is the petit jury that convicts or acquits, and in the capital sentencing context, it is the petit jury that contemplates the morally appropriate sentence upon conviction of a capital crime. S*ee United States v. Matthews*, 246 F. Supp. 2d 137, 147 (N.D.N.Y. 2002). The grand jury's check on prosecutorial power "stems from its independent factual determination of the existence of probable cause for the essential elements of the charged offense." *Haynes*, 269 F. Supp.2d at 981. The determination of an appropriate sentence under the FDPA is a moral one, not a factual one. *See Fields*, 483 F.3d at 346.

Even assuming that the grand jury – a creature of the common law and not an innovation of the Fifth Amendment – historically knew when it was charging a capital offense, as the defendant suggests, nothing in the Indictment Clause obliges the United States to advise modern grand juries of the possible range of penalties. Indeed, at common law, grand juries charging certain offenses would have had no need to be specially informed of the punitive consequences of charging certain offenses because, as the defendant points out, those offenses carried mandatory death sentences as the exclusive available punishment. *See Woodson v. North Carolina*, 428 U.S. 280, 289-90 (1976). This is not so today: first, mandatory death sentences are unconstitutional after

25

*Woodson*; and second, and perhaps most importantly, this rule has evolved because the Constitution requires highly individualized consideration to impose a death sentence. *See Lockett v. Ohio*, 438 U.S. 586, 605 (1978) ("we cannot avoid the conclusion that an individualized decision is essential in capital cases"). Moreover, the Supreme Court has never incorporated the Indictment Clause against the States, which suggests that the Fifth Amendment did not institute a static vision of the grand jury's role or an unalterable system of charging criminal offenses.

The modern capital sentencing regime militates against giving grand juries a role in deliberating on factors that bear only upon the appropriate punishment. Grand juries will not have access to the same scope of, and context for, evidence as the petit jury. Grand jurors are not informed of mitigation evidence, nor are they informed about additional aggravating factors beyond those that are required to establish eligibility. Thus, they are not positioned to give full and proper individualized consideration to either the relevant evidence concerning the facts and circumstances of the crime or the character and background of the defendant, as is required in modern capital sentencing jurisprudence. *See Marsh*, 548 U.S. at 173-74; *Zant*, 462 U.S. at 8. Accordingly, the defendant's historical arguments that the Superseding Indictment violates the Fifth Amendment are inapposite.

## V. THE SUPERSEDING INDICTMENT ALLEGES ALL OF THE CONSTITUTIONALLY AND STATUTORILY NECESSARY ELEMENTS.

In his final two "as applied" challenges, the defendant claims that the Superseding Indictment is constitutionally deficient because the United States (1) did not present non-statutory aggravating factors to the grand jury; and (2) did not permit the grand jury to determine whether aggravating factors outweighed mitigating factors, and, if so, whether they justified a capital sentence. (Def.Mot.43-49) Again, the defendant's arguments are foreclosed by the unanimous consensus of federal Courts of Appeal, including the Seventh Circuit, and the vast majority of district courts to have addressed these issues.

### A. FDPA Indictments Are Not Constitutionally Required To Charge Non-Statutory Aggravating Factors.

All circuit courts to have addressed the issue, including the Seventh Circuit, have held that failure to include non-statutory aggravating factors in the indictment does not violate the Fifth Amendment. *See Mikos*, 539 F.3d at 715 (citing *Fell* and stating that "aggravating factors that make a crime death-eligible (though not those used in a later balancing procedure) must be charged in the indictment. . . . All requirements of *Ring* and *Apprendi* have been satisfied"); *see also United States v. Lawrence*, 735 F.3d 385, 420 (6th Cir. 2013); *United States v. Lighty*, 616 F.3d 321, 367-68 (4th Cir. 2010); *United States v. Fell*, 531 F.3d 197, 237-38 (2nd Cir. 2008) (adopting conclusion of other courts that "only those factors which comprise death eligibility - intent and statutory aggravation - must be found before imposition of the maximum penalty"); *Higgs*, 353 F.3d at 299; *Mitchell*,

27

502 F.3d at 979; *Brown*, 441 F.3d at 1368; *Purkey*, 428 F.3d at 749-50; *United States v. Bourgeois*, 423 F.3d 501, 507 (5th Cir. 2005).

These courts, and a multitude of district courts following their lead, have recognized the fundamental difference between the eligibility factors, which must be included in the indictment, and the non-statutory aggravating factors, which need not be alleged in the indictment. The Eleventh Circuit explained the distinction:

> The non-statutory aggravating factors, although relevant to determining whether a jury decides to impose the death penalty, do not make a defendant statutorily eligible for any sentence that could not be otherwise imposed in their absence. They are neither sufficient nor necessary under the FDPA for a sentence of death. This rule comports with recent Supreme Court precedent because a non-statutory aggravating factor does not "increase the penalty for a crime beyond the prescribed statutory maximum," see *Apprendi*, 530 U.S. at 490, nor does it somehow allow the imposition of a more severe sentence than could have been imposed without it. *See Blakely v. Washington*, 542 U.S. 296, 303-04 (2004). Thus a non-statutory aggravating factor is not one of those "facts legally essential to the punishment" that must be included within the indictment.

*Brown*, 441 F.3d at 1368; *see also Fell*, 531 F.3d at 237-38; *Higgs*, 353 F.3d at 299 ("Because non-statutory aggravating factors do not increase the available punishment to which a defendant might be subjected, they are not required to be alleged in the indictment"); *Sanders*, 2014 WL 3122418 at *5 (rejecting Fifth Amendment challenges to capital indictment); *Merriweather*, 2014 WL 2890632 at *11 (holding that non-statutory aggravating factor need not be included in indictment); *United States v. Montgomery*, 2014 WL 1347156, *17 (W.D. Tenn. 2014) (denying motion to strike non-statutory aggravating factors for failure to include them in indictment).

These decisions are consistent with the recent Supreme Court cases cited by the defendant, including *Blakely*. A non-statutory aggravating factor does not allow for the imposition of a more severe sentence than could have been imposed without the presence of the factor. Thus, a non-statutory aggravating factor is not one of those facts legally essential to the punishment that must be included in the indictment. *Lighty*, 616 F.3d at 368.

The defendant relies on, and quotes at length from, *United States v. Green*, 372 F. Supp. 2d 168, 174 (D. Mass. 2005), where the district court held that certain non-statutory aggravating factors, namely "prior unadjudicated crimes," must be presented to the grand jury. (Def.Mot.43-48) *Green*, however, is unpersuasive to the extent that it conflicts with the Courts of Appeals' opinions cited above. Moreover, numerous district courts have also declined to follow *Green. See*, *e.g.*, *Montgomery*, 2014 WL 1347156 at *17; *Merriweather*, 2014 WL 2890632 at *11; *United States v. Pleau*, 2013 WL 1673109, *2, n. 2 (D.R.I. 2013); *Williams*, 2013 WL 1335599, at *16 (M.D. Pa. 2013); *United States v. Jacques*, 2011 WL 1675417, at *10 (D. Vt. 2011), *vacated on other grounds*, 684 F.3d 324 (2nd Cir. 2012); *United States v. Troya*, 2008 WL 4327004, at *8-*9 (S.D. Fla. 2008), *report and recommendation adopted sub nom. United States v. Varela*, 2008 WL 5109257 (S.D. Fla. 2008); *Diaz*, 2007 WL 656831, at *3 n. 1 (N.D. Cal. 2007). In any event, this Court is, of course, bound by the Seventh Circuit's holding in *Mikos* on this issue. Accordingly, the defendant's argument must fail.

**B.      The Indictment Is Not Constitutionally Required To Include An Allegation That There Is Probable Cause That The Aggravating Factors Sufficiently Outweigh The Potential Mitigating Factors To Justify A Death Sentence.**

In this comparatively perfunctory challenge, the defendant asserts that the United States was constitutionally required to present the weighing "consideration" required by 18 U.S.C. § 3593(e) to the grand jury. (Def.Mot.41-43) The defendant's argument is without merit as the weighing consideration required by § 3593(e) is not an element of the crime; rather, the consideration bears only on the jury's decision to recommend or not recommend a death sentence. *Talik*, 2007 WL 4570704, at *7; *Diaz*, 2007 WL 656831, *3.

The defendant's claim is based on a false premise—namely, that the weighing determination is a finding of fact that must be made by the petit jury beyond a reasonable doubt. Virtually every court to have addressed the issue has found that because the weighing determination is a "process," and not a finding of fact, it does not follow that the grand jury must make any findings relating to the weighing determination. *See, e.g.*, *Barrett*, 496 F.3d at 1107; *Fields*, 483 F.3d at 346; *Purkey*, 428 F.3d at 750; *Sanders*, 2014 WL 3122418 at *5. As the court noted in *Purkey*:

> [I]t makes no sense to speak of the weighing process mandated by 18 U.S.C. § 3593(e) as an elemental fact for which a grand jury must find probable cause.  In the words of the statute, it is a "consideration," 18 U.S.C. § 3593(e), – that is, the lens through which the [petit] jury must focus the facts that it has found to produce an individualized determination regarding "whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser sentence." *Id*.

428 F.3d at 750.

30

Further, it is beyond dispute that the grand jury is ill-equipped to receive mitigation information and conduct even a preliminary weighing determination. S*ee Mitchell*, 502 F.3d at 993-94 (stating "the grand jury has no way of knowing what mitigating factors the defendant will urge"); *accord United States v. Aquart*, 2010 WL 4363414, *2 (D. Conn. 2010) (denying motion that capital indictment was constitutionally deficient because grand jury was not presented evidence of mitigating factors). Accordingly, the defendant's motion in this regard must also be rejected.

## VI.   THE DEFENDANT'S "SYSTEMATIC IMPAIRMENT" ARGUMENT REQUIRES A PRESUMPTION THAT IS CONTRARY TO LAW.

Finally, the defendant asserts that the FDPA violates the Fourth, Fifth, Sixth, and Eighth Amendments to the United States Constitution. (Def.Mot.49-57) This claim rests on the stock argument that the FDPA's sentencing scheme is so incomprehensible that it deprives jurors of the ability to make a reasoned and informed choice between a death sentence and a life sentence. *Id*. In making this argument, the defendant overlooks the universally accepted assumption underlying the system of trial by jury—that juries will follow the instructions given to them. More importantly, as with all of the arguments presented by the defendant in this motion, this claim has been rejected by the courts.

### A.   Juries Are Presumed To Follow The Court's Legal Instructions.

The defendant's claim is contrary to law. The '"crucial assumption' underlying the system of trial by jury is that juries will follow the instructions given them by the trial judge." *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983) (quoting *Parker v. Randolph*, 442 U.S. 62, 73 (1979)); *United States v. Miller*, 276 F.3d 370, 374 (7th Cir. 2002). That

assumption is "'rooted . . . in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process.'" *United States v. Casamento*, 887 F.2d 1141, 1151 (2d Cir. 1989) (quoting *Richardson*, 481 U.S. at 206). The presumption is, therefore, "almost invariabl[e]." *United States v. Jass*, 569 F.3d 47, 55 & n.4 (2d Cir. 2009); *see also, e.g., Francis v. Franklin*, 471 U.S. 307, 325 n.9 (1985)); *Zafiro v. United States*, 506 U.S. 534, 540-41 (1993); *Bell v. Evatt*, 72 F.3d 421, 434 (4th Cir. 1995).

In a capital case, instructions are constitutionally defective if there is a "reasonable likelihood" that they misled the jury into sentencing the defendant to death. *Boyde v. California*, 494 U.S. 370, 380 (1990) (holding there was no reasonable likelihood that jurors misinterpreted allegedly ambiguous jury instruction in death penalty case).[7] Instructions that are only arguably ambiguous or create "only a possibility of . . . [jury] inhibition" do not fall into this category. *Id*. at 379-84; *see also Tuilaepa v. California*, 512 U.S. 967, 975-76 (1994) (instructions in penalty phase of capital case were constitutional because they were "phrased in conventional and understandable terms" and had a "commonsense core of meaning"). The defendant provides no evidence that the jury empaneled in this

---

[7] Ordinarily, the presumption that juries follow a trial court's instructions is overcome only if there is an "'overwhelming probability' that the jury will be unable to follow the court's instructions . . . and a strong likelihood that the effect of the evidence would be devastating' to the defendant." *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987) (citing *Richardson*, 481 U.S. at 208, and *Bruton v. United States*, 391 U.S. 123, 135 (1968); *see also United States v. Ford*, 88 F.3d 1350, 1364 (4th Cir. 1996); *United States v. Stone*, 9 F.3d 934, 938 (11th Cir. 1993); *United States v. Perone*, 936 F.2d 1403, 1410 (2d Cir. 1991); *United States v. Colombo*, 909 F.2d 711, 715 (2d Cir. 1990).

case will be unable to comprehend either the provisions of the FDPA or this Court's instructions.

## B.    The Federal Courts Have Rejected The Defendant's Argument.

The defendant cites studies and law review articles in support of his view,[8] but provides no federal case law to support his claim that the FDPA scheme is so confusing as to negate the presumption of juror understanding. To the contrary, federal courts have uniformly rejected this argument. *See United States v. Mikos*, 2003 WL 22110948, at *17–19 (N.D. Ill. Sept. 11, 2003) ("There is no justification prior to trial for this court to hold that the sentencing jury will be unable to comprehend the provisions of the FDPA or the instructions provided by the court or counsel."), *aff'd Mikos*, 539 F.3d at 706; *see also United States v. Taylor*, 635 F. Supp. 2d 1243, 1247 (D.N.M. 2009); *United States v. Regan*, 228 F. Supp.2d 742, 746 (E.D. Va. 2002); *United States v. Llera Plaza*, 179 F. Supp.2d 444, 450 (E.D. Pa. 2001) (holding cited studies "do not establish that the concepts of aggravating and mitigating factor as used in the FDPA bear such a degree of intrinsic 'incomprehensibility' as to render them incapable of clarification through adequate jury instructions"); *Williams*, 2013 WL 1335599, at ** 17–18 (denying motion and evidentiary hearing request); *Jacques*, 2011 WL 1675417, *11-13; *United States v. Hammer*, 2011 WL 6020164, at *2–3 (M.D. Pa. 2011); *United States v. Runyon*, 2009 WL 87506, at *2 (E.D. Va. 2009); *United States v. Duncan*, 2008 WL 544847, at *1 (D. Idaho 2008) (holding that the

---

[8] The defendant relies primarily on a study by the Capital Jury Project, which conducted interviews of capital jurors in reaching its conclusions.  The United States is aware of one federal case that agreed with defendant's view, *Free v. Peters*, 806 F. Supp. 705 (N.D. Ill. 1992), which was overturned by the Seventh Circuit in *Free v. Peters*, 12 F.3d 700 (7th Cir. 1993).

Capital Jury Project's findings fail to provide a basis for finding the FDPA

unconstitutional); *United States v. Green*, 2008 WL 4000901, at *2 (W.D. Ky. 2008); *United*

*States v. Sablan*, 2006 WL 1028780, at *7–8 (D. Colo. 2006) (finding no support for the

assertion that the FDPA's penalty scheme is so confusing that a jury will never be able to

comprehend the concepts, regardless of the instructions given); *United States v. Perez*,

2004 WL 935260, at *2–3 (D. Conn. 2004) (finding "the empirical evidence presented by

the defendants is too speculative to make assumptions about what a properly instructed

jury might understand or misunderstand in this case" and that the "common areas of

confusion" could be remedied through better jury instructions).

In *Green*, *supra*, the defendant moved the court to declare the FDPA

unconstitutional due to the findings of the Capital Jury Project. The court held that "[t]he

findings of the CJP are not precedent and are not binding upon this Court. Further, the

Defendant makes no attempt to connect the findings of the CJP to the FDPA and has not

shown that the FDPA produces any of the seven characteristics [discussed therein]."

2008 WL 4000901, at *2. The court further held that "the CJP provides no basis for

undermining the constitutionality of the FDPA, a statute that has withstood innumerable

attacks since its passage in 1994." *Id.*

Here, the defendant relies almost exclusively on that same CJP study to assert that

all capital sentencing juries under the FDPA, regardless of the instructions given by the

Court, will engage in premature decision making, fail to understand instructions

(particularly regarding mitigating factors), and underestimate alternative sentencing

options. This argument, unsupported by either controlling or persuasive case law, is no

more availing now than it was when it was rejected out of hand by all of the courts listed above. The defendant cannot know, and does not purport to suppose, what instructions this Court will give the jury at his trial. As the court in *Llera Plaza* noted:

> If the case at bar proceeds to a sentencing phase, counsel for the defendants and counsel for the government will have the opportunity to participate fully in the process of formulating the instructions which will frame the jury's deliberations. There is no reason to believe that the jury will find the collaborative handiwork of court and counsel to be incomprehensible.

179 F. Supp.2d at 450.

This Court should follow the uniform authority established by other federal courts previously addressing this issue and reject the defendant's motion. Regardless of the findings of the cited studies, they simply do not establish that the FDPA cannot be valid under any circumstances. As the *Mikos* court noted, the juror studies on which the defendant relies are not based upon the FDPA and instructions given in federal capital trials, but rather on state penalty schemes. 2003 WL 22110948, at *17. Accordingly, the defendant's argument must be rejected.

<u>CONCLUSION</u>

The defendant has failed to meet his substantial burden of proving that the FDPA is facially unconstitutional or unconstitutional as applied to this case. Every argument presented in the defendant's motion has been rejected by every United States Court of Appeal, including the Seventh Circuit, that has considered it. Given that none of the defendant's legal arguments are viable, no evidentiary hearing is required.

WHEREFORE, the United States of America respectfully requests that this Court deny, without an evidentiary hearing, the Defendant's Motion To Strike the Notice of Intent to Seek the Death Penalty on the Grounds that the Federal Death Penalty Act is Unconstitutional As Applied to this Case.


Respectfully submitted,

JOHN E. CHILDRESS
UNITED STATES ATTORNEY

s/ Eugene L. Miller                           
Eugene L. Miller, Bar No. IL 6209521
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone:  217/373-5875
Fax:  217-373-5891
eugene.miller@usdoj.gov


s/ Bryan D. Freres                           
Bryan D. Freres
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone:  217/373-5875
Fax:  217-373-5891
bryan.freres@usdoj.gov

s/ James B. Nelson                               
James B. Nelson
Trial Attorney
Capital Case Section
United States Department of Justice
Washington, DC 20004
1331 F St. NW, Room 625
Washington, DC 20004
Phone: 202/598-2972
james.nelson@usdoj.gov

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 14, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to all CM/ECF participants.

s/ Eugene L. Miller
Eugene L. Miller, Bar No. IL 6209521
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone:  217/373-5875
Fax:  217-373-5891
eugene.miller@usdoj.gov
