E-FILED
Monday, 08 October, 2018  04:59:21 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-CR-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

## THE UNITED STATES OF AMERICA'S RESPONSE TO THE DEFENDANT'S MOTION FOR ADEQUATE TIME TO SUBMIT 12.2 NOTICE

NOW COMES the United States of America, by John E. Childress, United States Attorney for the Central District of Illinois, Eugene L. Miller and Bryan Freres, Assistant United States Attorneys, and Department of Justice Trial Attorney James B. Nelson, and files this Response to the Defendant's Motion for Adequate Time to Submit 12.2 Notice. (R. 129) (hereinafter "Def.Mot."). For the reasons stated below, the United States respectfully submits that the Court should deny the defendant's request to indefinitely excuse him from providing the required Rule 12.2 notice, thereby necessitating a continuance of the April 2019 trial date. Instead, the Court should grant the defendant a reasonable extension of time.

## FACTUAL AND PROCEDURAL HISTORY

On June 30, 2017, federal agents arrested defendant Brendt A. Christensen pursuant to a criminal complaint that charged him with kidnapping Yingying Zhang in violation of Title 18, United States Code, Section 1201(a)(1). (R.1) A federal grand jury

later indicted the defendant on the same kidnapping charge outlined in the complaint. (R.13) Well over a year ago, the Federal Public Defender's office (Federal Defender Thomas Patton from Peoria and Assistant Federal Defender Elisabeth Pollock from Urbana) entered their appearance on behalf of the defendant and requested the additional appointment of "death penalty qualified counsel," which the Court granted. (R.23; d/e 9/8/17) Days later, Assistant Federal Defender George Taseff from Rock Island entered his appearance on behalf of the defendant. (R.24) Soon thereafter, the Court appointed "death penalty qualified" counsel Robert Tucker from St. Louis as a fourth attorney and lead counsel on behalf of the defendant. (d/e 9/14/17) The Court later appointed a fifth attorney, "death penalty qualified" counsel Julie Brain, to represent the defendant. (d/e 5/18/18)

On October 3, 2017, the grand jury returned a superseding indictment charging the defendant with kidnapping resulting in death, and two counts of making false statements to FBI agents during the investigation. (R.26) By October 24, 2017, the defendant requested a continuance of the existing pretrial and trial dates because, *inter alia,* (1) "the mitigation investigation should begin early"; and (2) "an adequate defense team requires . . . mental health experts." (R.29) The defendant also represented that his counsel were required to treat the case as a capital case at this early date, regardless of whether a notice of intent to seek the death penalty had been filed. (R.33) He also requested sufficient time to conduct a mitigation investigation to present to the Attorney General and argued that the appropriate date for such notice would be July 1, 2018. (R.33) Thus, by October of 2017, the defendant represented he was already treating this

as a capital case, was conducting a mitigation investigation, would retain mental health experts, and implicitly, would complete the mitigation investigation to present to the Attorney General by July 1, 2018. (R.29,33)

On January 19, 2018, the United States filed notice of its notice intent to seek the death penalty. (R.54) Thereafter, the defendant requested a continuance of the trial date, requesting that jury *voir dire* begin on June 4, 2019. (R.59) On February 14, 2018, after substantial briefing by both the defendant (R.55,59,64,65) and the United States (R.57,58), the Court issued a scheduling order that set *voir dire* to begin on April 3, 2019, (only two months before the defendant's suggested trial date) and established a number of filing deadlines for both parties. (R.67) Among those deadlines was a requirement that the defendant give notice not later than September 21, 2018, of his intent to raise an *Atkins* defense or present evidence pursuant to Federal Rule of Criminal Procedure 12.2 in either the guilt or penalty phase. (R.67) The scheduling order provided that, following that notice, the United States must file any motion to examine the defendant pursuant to the defendant's *Atkins* or Rule 12.2 notice not later than September 28, 2018. (R.67)

After the Court entered its scheduling order, the United States has complied with numerous disclosure deadlines, including disclosing Rule 16 material, *Brady* and *Giglio* material, its expert witnesses, and expected evidence in support of aggravating factors. On August 24, 2018, this Court's order required the defendant to disclose to the United States its non-Rule 12.2 expert witnesses. On that date, the defendant provided the United States with a letter listing five expected "subject matter areas" of expert testimony, but identified only two experts. Moreover, the defendant failed to provide

any written summaries of any expert testimony. The defendant promised to disclose the required information as soon as it was available. Over six weeks after the defendant's disclosure deadline, the United States still has not received any of the required non-Rule 12.2 expert witness information from the defendant. Similarly, to date, the United States has not received any reciprocal discovery from the defendant pursuant to Rule 16(b)(1) of the Federal Rules of Criminal Procedure.

Then, seven months after the Court set its scheduling order, during a status conference on September 4, 2018, the defendant informed the Court and the United States that he would not meet the Court's Rule 12.2 notice deadline either. The Court instructed the parties to meet to attempt to resolve the issue. The parties met and conferred on September 17, 2018, to discuss – among other things – the September 21, 2018, Rule 12.2 notice deadline. Prior to that meeting, the defendant gave notice to the United States that he will not raise an *Atkins* defense,[1] so the focus of the meeting was on the defendant's Rule 12.2 notice.

During that meeting, counsel for the defendant stated that the social history investigation was almost done, and that it should be complete by mid-October. Counsel for the defendant stated that their experts would begin examining the defendant at that time. Counsel for the defendant conceded that their Rule 12.2 notice would most likely

---

[1] It took defense counsel 11 months of representing the defendant, who had recently obtained a master's degree in physics from the University of Illinois, to determine and inform the United States that they would not be asserting an *Atkins* defense, *i.e.,* a claim that the defendant should not be executed because he is mentally retarded. *Atkins v. Virginia,* 536 U.S. 304, 321 (2002).

4

relate to a mitigation presentation during the penalty phase. Given that conversation, the United States proposed an agreement that would "bifurcate" the Rule 12.2 deadline to require immediate notice of guilt phase evidence but allow a reasonable extension of time to give notice of any penalty phase evidence. The defendant rejected that proposal, and on the day his disclosure was due, he filed the instant motion requesting to be indefinitely excused from providing the required Rule 12.2 notice. The Court ordered the United States to respond to this motion by October 8, 2018.

## **ARGUMENT**

The defendant claims that the September 21, 2018, deadline for Rule 12.2 notice is unfairly prejudicial because he has not had time to complete a "social history" investigation, and suggests that the Rule 12.2 deadline should have been "no more than 60 days prior to trial." (Def.Mot.10-11) Instead, he requests a status conference in December of 2018 – three months after the original disclosure deadline -- for the purpose of resetting the defense's Rule 12.2 notice deadline. (Def.Mot.30) In other words, the defendant requests more than 15 months to investigate and prepare a mental health defense, recognizing this will grant him a continuance of the scheduled trial date (Def.Mot.12,n.2), and all the while claiming the United States should be given no more than 60 days to respond to such a defense. The defendant's requested relief, which is both a self-help motion to continue and an attempt to gain a strategic litigation advantage, should be denied. Instead, the Court should maintain the long-scheduled trial date and set a reasonable date for disclosure of the defendant's Rule 12.2 notice prior to trial.

A.    **The Defendant's Attempt to Delay the Proceedings Will Result in a Continuance of the Trial Date in Violation of the Public's Right to a Speedy Trial.**

The defendant asserts that he knew that the Rule 12.2 deadline was unreasonable as soon as the scheduling order was filed, even though the trial date was only two months earlier than he himself had requested. (Def.Mot.10-12,n.2) In the seven months that elapsed between the scheduling order and the instant motion, however, the defendant neither objected to the scheduling order, asked the Court to reconsider the Rule 12.2 deadline, nor filed for an extension of the Rule 12.2 deadline. The defendant did not request additional time to prepare his Rule 12.2 notice until the case was transferred to a different judge,[2] and even then he waited until 13 days before the deadline.

The scheduling order in this case is part of a nationwide trend to require *Atkins* and Rule 12.2 notices at a reasonable point in the litigation schedule, so as not to unreasonably delay the proceedings on the eve of trial. *See, e.g., United States v. Smith*, Case No. 3:16-cr-00086-SLG-1, Docket Entry 192 (July 30, 2018); *United States v. Duran-Gomez*, Case No. 4:10-cr-00459, Docket Entry 358 (October 4, 2017). This trend makes sense, given that the purpose of Rule 12.2 is to "give the government an opportunity to obtain the expert witnesses they ordinarily will need." *United States v. Hudson*, 566 F.2d

_____

[2] The United States notes that the transfer of a case from one judge to another does not give rise to a re-litigation of the original judge's rulings. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988) (noting that the "law of the case" doctrine "'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case'") (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983) (dictum)).

889, 890 (4th Cir. 1977); *see also United States v. Buchbinder*, 796 F.2d 910, 915 (7th Cir.

1986).

In some sense, the defendant appears to recognize the policy underpinning the

requirement of timely Rule 12.2 notice. He concedes that his motion – though not styled

as such – is, in fact, a motion to continue the trial date.[3] (Def.Mot.12 n.2). Although this

concession is contained in a footnote, it is the most telling sentence in the defendant's

motion. If, as he suggests, the defendant's request "will necessitate" a continuance of the

trial date, this Court must deny the motion unless the defendant can show, on the

existing record, that the need to continue investigating the defendant's social history

prior to disclosing his mental health experts outweighs both the public interest in a

speedy trial and the right of Yingying Zhang's family to "proceedings free from

unreasonable delay." 18 U.S.C. §§ 3161(h)(7)(A), 3771(a)(7).

The Speedy Trial Act, 18 U.S.C. § 3161(c)(1), generally requires that a criminal trial

commence within 70 days from the filing date of the indictment. The purpose of the Act

is to protect both "the defendant from excessive pre-trial delay and incarceration by the

government and to protect the public's interest in the speedy resolution of justice."

*United States v. Larson*, 417 F.3d 741, 746 (7th Cir. 2005). This is a purpose that the

Seventh Circuit takes seriously. *See United States v. Ramirez*, 788 F.3d 732, 736 (7th Cir.

2015) (vacating conviction, with prejudice to government, for six-month trial delay).

---

[3] The defendant asserts that "[g]iven the unreasonableness of the scheduling of this case from its inception . . . the April 3, 2019, trial date was never realistic." (Def.Mot.12 n.2). Yet, the months delay that the defendant now seeks would continue the trial date well past the June 4, 2019, trial date he himself previously recommended as reasonable. (R.59 at 30)

Additionally, the Crime Victims' Rights Act, Title 18, United States Code, Section 3771(a)(7), confers on crime victims (which include family members of a deceased victim) "[t]he right to proceedings free from unreasonable delay."

For these reasons, the Seventh Circuit has cautioned that "a trial date once set must be adhered to unless there are compelling reasons for granting a continuance." *United States v. Farr*, 297 F.3d 651, 655 (7th Cir. 2002) (quoting *United States v. Reynolds*, 189 F.3d 521, 527 (7th Cir.1999)); *see also Morris v. Slappy*, 461 U.S. 1, 11 (1983) (trial judge's burden of coordinating a trial date "counsels against continuances except for compelling reasons."); *United States v. Hanhardt*, 155 F. Supp. 2d 861, 867 (N.D. Ill. 2001) ("This basic tenet cannot be overstated. Respect for the judiciary demands that the court sets its schedule pursuant to the salient circumstances, and that that decision not be disturbed absent compelling reasons to do so.").

As the Court acknowledged during the status conference on September 7, 2018, both the public and the victim's family have an interest in seeing this case resolved without unnecessary delay – indeed, they have already been waiting for more than a year to see justice done in this case. The victim's family has long made plans to travel to Urbana in April of 2019 to attend the trial of their daughter's and sister's alleged murderer. Furthermore, while the defendant waited until the very date of his deadline to request additional time, the United States has complied with the scheduling order and diligently prepared for trial.  The ends of justice weigh heavily against a continuance of the trial date.

**B.     The Defendant's Request for an Extensive Delay to Give Notice of His Intent to Present Rule 12.2. Evidence During the Guilt Phase is Unjustified.**

**1.     The defendant has had more than a year to conduct a sanity examination, for which a "social history" is not required.**

Federal Rule of Criminal Procedure 12.2(a) requires prior notice that a defendant will raise a defense of not guilty by reason of insanity at trial. It provides that "[a] defendant who intends to assert a defense of insanity at the time of the alleged offense must so notify an attorney for the government in writing within the time provided," and that "[a] defendant who fails to do so cannot rely on an insanity defense." Fed. R. Crim. P. 12.2(a). If the defendant gives notice of his intent to raise an insanity defense, the court must allow the United States to have its expert witnesses examine the defendant. Fed. R. Crim. P. 12.2(c)(1)(B). The insanity defense places the burden on the defendant to prove that he suffered from a severe mental disease or defect at the time of the offense, and that the disease or defect rendered him unable to appreciate the nature and quality or the wrongfulness of his acts. *United States v. Reed*, 997 F.2d 332, 334 (7th Cir. 1993); *United States v. Salava*, 978 F.2d 320, 322 (7th Cir. 1992); *United States v. West*, 962 F.2d 1243 (7th Cir. 1992).

During the status conference on September 4, 2018, the defendant asserted that he was not yet in a position to notify the Court whether he would raise an insanity defense. This inability rested on the fact that the defense had not yet completed a sufficient "social history" to have the defendant tested by a mental health expert. The defendant repeats this claim in the instant motion. (Def.Mot.13-18)

This argument fails, however, because a "social history" is unnecessary to determine legal insanity. The psychological literature is clear: the question for determining legal insanity is not whether the defendant has a mental illness – which may or may not be demonstrable in a social history – because the presence of mental illness in the record is not sufficient to determine sanity. Rather, a determination of legal insanity requires a specific examination of the defendant's behavior and thinking at the time of the alleged offense. R.L. Denney, *Criminal Responsibility and other Criminal Forensic Issues*, published in FORENSIC NEUROPSYCHOLOGY: A SCIENTIFIC APPROACH, 475 (G.J. Larrabee, ed., 2nd ed. 2012, Oxford University Press); *see also* G.B. Melton, J. Petrila, N.G. Pythress, C. Slobogin, R.K. Otto, D. Mossman, & L.O. Condie, PSYCHOLOGICAL EVALUATIONS FOR THE COURTS: *A handbook for mental health professionals and lawyers* (4th ed. 2018, Guilford Press); D.L. Shapiro, CRIMINAL RESPONSIBILITY EVALUATIONS: *A manual for practice* (1999, Professional Resource Press); D.L. Shapiro, FORENSIC PSYCHOLOGICAL ASSESSMENT (1991 Allyn & Bacon).

In accord with the scientific literature, legal sanity examinations are routinely performed within weeks of a defendant's arrest and without the benefit of a year-long "social history" investigation. In fact, the defendant's prior filings were restricted to the necessity of a social history for penalty phase mitigation, not an insanity defense. (R.59 at 13) (noting the "penalty phase preparation requires extensive and generally unparalleled investigation into personal and family history.") (internal quotation omitted). The defendant has had more than sufficient time to obtain a psychological examination and

determine the viability of an insanity defense and, as the literature makes clear, a year-long "social history" is not required for that determination.

Anecdotally, one of the undersigned has tried two insanity cases in the Central District of Illinois involving current defense counsel. In *United States v. Clayton Waagner,* the defendant's counsel (then-AFPD Thomas Patton) filed the Rule 12.2 notice of insanity defense two months after the defendant's arrest and only 40 days after his indictment. (R.8 in CDIL Case No. 99-CR-20042) In *United States v. John Ewing,* the defendant's counsel (AFPD George Taseff) filed the Rule 12.2 notice of insanity defense three months after the defendant's indictment. (R.39 in CDIL Case No. 02-CR-20008) In those cases, counsel apparently did not believe a year-long social history was necessary prior to asserting an insanity defense or having the defendant examined by a mental health expert.

There is no legal or factual justification for the lengthy delay requested by the defendant to disclose notice of intent to offer an insanity defense. Thus, the United States respectfully requests that the Court issue an order requiring the defendant to disclose his intent to raise an insanity defense not later than October 22, 2018, with the understanding that the defendant's failure to meet this deadline may result in him being barred him from raising this insanity defense at trial.

**2.      The defendant has had more than a year to conduct an examination to determine if he has a mental condition that affects the guilt determination.**

Federal Rule of Criminal Procedure 12.2(b)(1) requires the defendant to give timely notice if he "intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on the issue of guilt." Though not limited to purely mental disorders, such evidence is limited to conditions that interfere with the ability to be held criminally liable. *See*, *e.g.*, *United States v. Rahm*, 993 F.2d 1405, 1410-12 (9th Cir. 1993).

The Seventh Circuit has held that a defendant may not satisfy the provisions of Rule 12(b)(1) by giving notice that he "'intend[s] to explore the possibility of a psychiatric examination'" and then waiting until the eve of trial to give notice of his intended witnesses. *Buchbinder*, 796 F.2d at 915. The defendant's motion would allow precisely this sort of impermissible ambush. Rule 12.2(b)(1), like Rule 12.2(a), applies to the defendant's condition on the date of the offense. The defendant has been in custody since June 30, 2017 – more than enough time to investigate the defendant's mental condition on the date of the offense.

The defendant's reliance on the "social history" investigation is no more compelling in this context than it is with regard to the insanity defense. The scientific literature is clear that that a "social history" is not a useful tool in determining whether the defendant's mental condition *at the time of the offense* raises a defense that he cannot legally be held responsible for his actions. *See supra* pp. 6-7.

As with the insanity defense, there is no legal or factual justification for the lengthy delay requested by the defendant with regard to Rule 12.2(b)(1). Thus, the United States respectfully requests that the Court issue an order requiring the defendant to disclose his intent to present such evidence during the guilt phase not later than October 22, 2018, with the understanding that the defendant's failure to meet this deadline may result in him being barred him from presenting such evidence at trial.

C.     **The Defendant's Request for an Indefinite Extension to Give Notice of His Intent to Rely on Rule 12.2 Evidence During the Penalty Phase is Unreasonable.**

Federal Rule of Criminal Procedure 12.2(b)(2) provides that the defendant must give timely notice if he intends "to introduce expert evidence relating to a mental disease or defect or any other mental condition [bearing on] the issue of punishment in a capital case." If the defendant gives notice that he will present such evidence, the United States can move to have its own expert witnesses examine the defendant. Fed. R. Crim. P. 12.2(c)(1)(B). Although that examination would take place before trial, the experts' report may not be provided to trial counsel until after the defendant is found guilty. Fed. R. Crim. P. 12.2(c)(2). The defendant's statements are only admissible through the expert witnesses to the extent that they relate to "the asserted mental condition." Fed. R. Crim. P. 12.2(c)(4).

The defendant may present penalty phase evidence pursuant to Rule 12.2(b)(2) even though he cannot satisfy the elements of an insanity defense. *See* 18 U.S.C. § 3592(a)(1) & (6); *Lockett v. Ohio*, 438 U.S. 586, 604 (1978) (plurality opinion). Further, unlike with an insanity defense, a detailed social history of the defendant might

potentially be relevant to determining the defendant's penalty phase strategy. This is true, quite simply, because the universe of admissible penalty-phase mitigation is as broad as the insanity defense is narrow.

In considering the requested extension for the notice deadline under Rule 12.2(b)(2), the United States asserts that the following facts support a finding that a reasonable extension of the defendant's Rule 12.2 expert disclosure deadline for the penalty phase would be approximately 45 days, to November 6, 2018:

1. By October of 2017, when the defendant was already represented by learned counsel and three members of the Federal Defender's Office, he was already treating this matter as a capital case, was conducting a mitigation investigation, considered mental health experts as necessary parts of the defense team, and expected to complete the mitigation investigation to present to the Attorney General by July 1, 2018;

2. When this Court entered the existing scheduling order in this case on February 14, 2018, four of the defendant's attorneys had represented the defendant for five months;

3. A second learned counsel was added three months later, bringing the defense team to five attorneys;

4. At the time he filed the instant motion, the defendant had four attorneys working on his behalf for more than a year, and a fifth attorney had been working for more than 120 days;

5. The defendant made no attempt to extend the Rule 12.2 deadline during the seven months between the issuance of the scheduling order on February 14, 2018, and the disclosure deadline of September 21, 2018; and

6. Defense counsel stated on September 17, 2018, that the social history investigation was almost done and should be complete by mid-October.

Considering all of the above, the defendant's suggestion that the Court grant him an extra 90 days to decide how much additional time he will subsequently request is

unwarranted. This proposal essentially requires the United States to choose between having insufficient notice of a substantial trial defense or acceding to a trial continuance. It also allows the defendant to unilaterally amend the scheduling order that has been in effect for seven months – and was, itself, the result of substantial litigation. More to the point, it premises the supposed need for additional, and wholly unlimited, time on the need to continue a year-long social history investigation that the defendant has represented will be completed by mid-October. Even on its face, the defendant's requested remedy far exceeds the facts he represents in support thereof.

The United States seeks to preserve the trial date and avoid any prejudice and inconvenience to the victim's family, the trial witnesses, the public, and its trial preparations. The United States is, however, conscious of the defendant's need to prepare his penalty-phase defense. In weighing the needs of both parties, as well as the facts as described above, the United States respectfully suggests that a deadline of November 6, 2018, will allow the defendant to have sufficient time to give notice of his intent to raise 12.2 evidence during the penalty phase without affecting the trial date.

## CONCLUSION

Based on the foregoing, the United States respectfully requests that the defendant's Motion for Adequate Time to Submit 12.2 Notice (R.129) be denied to the extent it requests an indefinite extension of the defendant's mental health expert disclosure deadlines. The United States further respectfully requests that the Court issue an Order requiring the defendant to disclose any experts and evidence he intends to offer pursuant to Rule 12.2(a) and (b)(1) during the guilt phase of trial by October 22,

2018, and further requiring the defendant to give notice of his intent to present evidence pursuant to Rule 12.2(b)(2) during the penalty phase not later than November 6, 2018. The United States respectfully submits that the Court's scheduling order should also be amended to provide the United States seven days from each of those deadlines to file a motion to examine the defendant.

Respectfully submitted,

JOHN E. CHILDRESS
UNITED STATES ATTORNEY

s/ Eugene L. Miller
Eugene L. Miller, Bar No. IL 6209521
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone:  217/373-5875
Fax:  217-373-5891
eugene.miller@usdoj.gov

s/ James B. Nelson
James B. Nelson
Trial Attorney
Capital Case Section
United States Department of Justice
Washington, DC 20004
1331 F St. NW, Room 625
Washington, DC 20004
Phone: 202/598-2972
james.nelson@usdoj.gov

s/ Bryan D. Freres
Bryan D. Freres
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone:  217/373-5875
Fax:  217-373-5891
bryan.freres@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2018, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system, which will send notification of such

filing to counsel of record.

s/ Eugene L. Miller
Eugene L. Miller, Bar No. IL 6209521
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone:  217/373-5875
Fax:  217-373-5891
eugene.miller@usdoj.gov
