E-FILED
Tuesday, 16 October, 2018  08:42:56 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17-CR-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

## THE UNITED STATES OF AMERICA'S RESPONSE TO THE DEFENDANT'S MOTION TO DECLARE THE FEDERAL DEATH PENALTY ACT UNCONSTITUTIONAL UNDER THE TENTH AMENDMENT

NOW COMES the United States of America, by John E. Childress, United States

Attorney for the Central District of Illinois, Eugene L. Miller and Bryan D. Freres,

Assistant United States Attorneys, and James B. Nelson, Department of Justice Trial

Attorney, and hereby requests that this Court deny the Defendant's Motion to Declare

the Federal Death Penalty Act Unconstitutional (R.117) because the Federal Death

Penalty Act does not violate the Tenth Amendment.

## BACKGROUND

A federal grand jury charged the defendant, Brendt A. Christensen, with

kidnapping Yingying Zhang, and further alleged that he intentionally killed her in an

especially heinous, cruel, and depraved manner after substantial planning and

premeditation. (R.26) The United States later filed Notice of Intent to Seek a Sentence of

Death (NOI) for that offense pursuant to the Federal Death Penalty Act (FDPA), 18

U.S.C. § 3591, et seq. (R.54) The defendant has filed a motion to declare the FDPA

unconstitutional under the Tenth Amendment. (R.117) The defendant's argument is fundamentally flawed and his motion must be denied.

## RESPONSE

The defendant concedes, as he must, that the FDPA is constitutional on its face and that the Tenth Amendment does not "categorically" prohibit Congress from applying the FDPA in a state that does not currently provide for a death penalty. (Def.Mot.4) Nonetheless, the defendant argues that the FDPA "as applied in this case" violates the Tenth Amendment because (1) state and local law enforcement assisted the Federal Bureau of Investigation in the search for Yingying Zhang (a Chinese national), and state resources, such as voter lists, may be incidentally used in prosecuting the defendant; (Def.Mot.25-33) and (2) the interest of the State of Illinois in "protecting" Brendt Christensen (born in Wisconsin) from a sentence of death outweighs the interest of the United States in seeking justice for Yingying Zhang (born in China). (Def.Mot.34-52) This argument is unripe, and in any event, without merit.

The United States Constitution, including its Commerce and Supremacy Clauses, allows Congress to prohibit kidnapping resulting in death in the several states and to choose the appropriate punishment for such an offense. If the defendant's argument were accepted, it (1) would prevent states from assisting in federal law enforcement, including prohibiting local authorities from assisting the FBI in the search for missing persons, at the risk of forfeiting federal jurisdiction; and (2) would allow states to prohibit the federal government from choosing the appropriate punishment for violations of federal criminal law committed by U.S. citizens, as long as the state claimed

2

a superior "interest" in doing so. The State of Illinois can no more shield Brendt Christensen from the congressionally determined punishment for his federal kidnapping and murder of Yingying Zhang than a state could shield a member of the Ku Klux Klan from punishment for lynching someone in violation of federal law.

## I.  The Defendant's "As Applied" Tenth Amendment Challenge is Not Ripe.

The defendant stresses that his Tenth Amendment challenge to the FDPA is only based on its application to this case. (Def.Mot.4) At the core of his argument is his questionable claim that the State of Illinois has a strong interest in ensuring he does not receive the death penalty under these circumstances. The circumstances of this case, however, have not yet been developed at trial, nor has the defendant received a sentence of death. Therefore, his claim is not ripe.

A court should not address arguments that are grounded on contingent future events that may not occur as anticipated, or indeed may not occur at all. *Corey H. v. Bd. of Educ. of City of Chicago*, 534 F.3d 683, 689 (7th Cir. 2008) (dismissing appeal as unripe) (citing *Texas v. United States*, 523 U.S. 296, 300 (1998)). Thus, any ruling by this Court on the constitutionality of the FDPA under the Tenth Amendment as applied in this case would be an advisory opinion. *See Wisconsin's Envtl. Decade, Inc. v. State Bar of Wisconsin*, 747 F.2d 407, 411 (7th Cir. 1984) ("the considered practice of the . . . federal courts [is] not to decide any constitutional question in advance of the necessity for its decision").

In fact, district courts around the country faced with pretrial "as-applied" Tenth Amendment challenges have found that those challenges were not ripe. *See, e.g., United States v. Madison*, 2018 WL 4907698, at *6 (M.D. Fla. Oct. 10, 2018) (finding that the

3

defendant's Tenth Amendment "argument is not ripe, rooted in speculation, as the Court is still in the pre-trial posture and no death sentence has been imposed. As such, the Court can neither address nor strike down these FDPA provisions as unconstitutional."); *United States v. Sampson*, 2017 WL 3495703, at *32 n.45 (D. Mass. Aug. 15, 2017) (rejecting on ripeness grounds the defendant's Tenth Amendment challenge to the FDPA based on the theory that it commandeers state officials and state facilities).

II.   **The Federal Death Penalty Act Does Not Violate the Tenth Amendment.**

    A.   **The Tenth Amendment does not apply here because the power to enact the FDPA was delegated to the United States by the Constitution.**

The defendant argues that the federal interest in this case "pales" compared to the interest of the State of Illinois. (Def.Mot.43-50) The defendant's Tenth Amendment argument relies entirely on his arguments (set forth more fully in his other filings) that the FDPA, as applied to the federal kidnapping statute in this case, violates the Eighth Amendment as "cruel and unusual punishment" (R.113) and exceeds Congress's power under the Commerce Clause. (R.114,115) As thoroughly shown in the government's responses to these filings (which are incorporated herein by reference), however, it is well-established that the FDPA does not violate the Eighth Amendment and that application of the federal kidnapping statute in this case is a valid exercise of congressional power under the Commerce Clause. Once this faulty support for the defendant's Tenth Amendment claim is removed, his argument collapses under its own weight.

The defendant's argument is ostensibly premised upon the Tenth Amendment, which provides that all "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, and to the people." U.S. CONST. amend. X. The defendant's Tenth Amendment argument fails *ab initio*, however, because the power that the United States exercises in this prosecution is expressly delegated to the United States by Article I.

It is well-established that, pursuant to the Commerce Clause, Congress can regulate the instrumentalities of interstate commerce and that the federal kidnapping statute as applied in this case falls under this reach of the Commerce Clause. *United States v. Lopez*, 514 U.S. 549, 558 (1995); *United States v. Chambers*, 681 F. App'x 72, 80-81 (2d Cir. 2017), *cert. granted, judgment vacated on other grounds*, 138 S. Ct. 2705 (2018), *reaffirmed* 2018 WL 4523607, at *4 (2d Cir. Sept. 21, 2018); *United States v. Morgan*, 748 F.3d 1024, 1031 (10th Cir. 2014); *United States v. Dais*, 559 F. App'x 438, 445 (6th Cir. 2014); *United States v. Renteria*, 2014 WL 2616630, *6 (E.D.N.C. June 12, 2014); *United States v. Graves*, 2014 WL 2589428, *4 (N.D. Ga. June 9, 2014); *United States v. Mitchell*, 2013 WL 5377869, *7 (N.D. Tex. Sept. 26, 2013); *United States v. Taylor*, 2012 WL 3522528, *2 (S.D. Ala. Aug. 14, 2012); *United States v. Jacques*, 2011 WL 1706765, *7 (D. Vt. May 4, 2011); *United States v. Ochoa*, 2009 WL 3878520, *3 n.5 (D.N.M. Nov. 12, 2009).[1]

---

[1] Additional authority in support of this established law is contained in the contemporaneously filed United States of America's Response to the Defendant's Motion to Dismiss Count One Due to Lack of Jurisdiction (R.114,115).

Because Congress may criminalize the act of using an instrumentality of interstate commerce to commit or further a kidnapping, it follows that Congress may fix the punishment for that offense. *See Mistretta v. United States*, 488 U.S. 361, 364 (1989) (recognizing that Congress "of course" has the power to fix the punishment for a federal crime); see also U.S. CONST. art. I, § 8 ("The Congress shall have Power . . . To make all Laws which shall be necessary and proper for carrying into Execution the foregoing powers."). The power to regulate the use of instrumentalities of interstate commerce to prevent their use to commit kidnappings would be meaningless if Congress could not also impose a punishment for committing the proscribed act.

One of the punishments that Congress is permitted to impose under the Constitution is a sentence of death. *Gregg v. Georgia*, 428 U.S. 153, 187 (1976); *see also Glossip v. Gross*, 135 S. Ct. 2726, 2732–33 (2015) (quoting *Baze v. Rees*, 553 U.S. 35, 47 (2008) ("We begin with the principle, settled by *Gregg*, that capital punishment is constitutional.")).

Because the power to proscribe and impose a sentence of death for this kidnapping offense has been delegated to the United States by the Constitution, by its own terms, there is no Tenth Amendment violation:

> While McCluskey's argument is both fascinating and creative, ultimately it is unpersuasive. To the extent that McCluskey argues that Congress' "federalization" of the offense of kidnaping violates the Tenth Amendment, that argument fails. Under the Tenth Amendment, "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people. . . . Here, because the federal government is acting within its constitutionally delegated power under the Commerce Clause, there is no violation of the Tenth Amendment.

*United States v. McCluskey*, 2012 WL 13076173, at *10 (D.N.M. Sept. 24, 2012). The

defendant's lengthy discussion regarding the events leading to the current state of

Illinois law regarding capital punishment[2] (Def.Mot.5-21) and Illinois's interest in

prosecuting crimes (Def.Mot.21-25,35-43) is an exercise in futility.[3] The Tenth

Amendment does not apply here because the FDPA is a valid exercise of congressional

power, and the defendant's argument to the contrary is frivolous.

**B.      The defendant's Tenth Amendment argument is contrary to the
         Supremacy Clause and the dual sovereignty doctrine.**

The United States Constitution recognizes that the United States and the several

states are dual and separate sovereigns. *Alden v. Maine*, 527 U.S. 706, 714–15 (1999);

*Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991). The dual sovereignty doctrine has been "a

fixture of constitutional law for decades." *United States v. Robinson*, 42 F.3d 433, 434 (7th

Cir. 1994) (quoting *United States v. Bafia*, 949 F.2d 1465, 1478 (7th Cir. 1991)). Accordingly,

the United States respects Illinois's decision at this current time to forgo capital

punishment as a matter of State law. The principle of dual and separate sovereignty,

---

[2] The defendant's recitation severely skews or ignores numerous facts, including the motives for then-Governor Ryan's decision to impose a moratorium on the death penalty, the questionable pardon of Anthony Porter, and a recent proposal by current Governor Rauner to re-enact the Illinois death penalty for certain classes of cases. Because the defendant's discussion is irrelevant to a correct Tenth Amendment analysis, however, further elaboration is unnecessary.

[3] Most of the defendant's diatribe against capital punishment is legally irrelevant to a Tenth Amendment analysis in this case and should be addressed to Congress, not this Court. *See McCleskey v. Kemp*, 481 U.S. 279, 319 (1987) ("McCleskey's arguments are best presented to the legislative bodies. It is not the responsibility—or indeed even the right—of this Court to determine the appropriate punishment for particular crimes. It is the legislatures, the elected representatives of the people, that are 'constituted to respond to the will and consequently the moral values of the people.'").

however, permits the United States and its member states to simultaneously define and enforce their own criminal law, consistent with their own interests and independent constitutional constraints. *See Heath v. Alabama*, 474 U.S. 82, 88 (1985) (recognizing that when a defendant commits a criminal act that is proscribed by two sovereigns, he has committed two distinct offenses and may be criminally liable to each sovereign); *Alden*, 527 U.S. at 713 (recognizing that the United States has broad, "often plenary authority over matters within its recognized competence," but that States retain their own sovereignty).

From the existence of this constitutional structure follows the possibility that laws can be in conflict or at cross-purposes. *Arizona v. United States*, 132 S. Ct. 2492, 2500 (2012). The Supremacy Clause provides a clear rule that federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. Art. VI, cl. 2. Thus, it is beyond dispute that, under ordinary conflict pre-emption principles, a "state law [that] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" is void. *See Williamson v. Mazda Motor of Am,, Inc.*, 562 U.S. 323, 330 (2011); *Edgar v. Mite Corp.*, 457 U.S. 624 (1982). Thus, courts must not give effect to state laws that conflict with federal laws. *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1383 (2015).

Therefore, not only does the Tenth Amendment not apply here, but the Supremacy Clause precludes the defendant's theory. The alleged current Illinois sentiment against the death penalty, if construed as precluding the FDPA, would stand

as an obstacle to Congress's objectives, would frustrate "accomplishment and execution of the full purposes and objectives of Congress," and therefore, would be void under the Supremacy Clause. *Armstrong,* 135 S. Ct. 1383; *Williamson,* 562 U.S. at 330.

Applying the Supremacy Clause, federal courts have unanimously rejected the stock capital defense argument that the FDPA infringes on state sovereignty and is unconstitutional under the Tenth Amendment if applied in a state that does not currently have the death penalty. For example, even though the Puerto Rican Constitution expressly prohibits the death penalty, the First Circuit, noting that "Congress maintains similar powers over Puerto Rico as it possesses over the federal states," held that the federal death penalty applied to federal crimes committed in Puerto Rico because the federal interest in punishing violations of federal law is manifest. *United States v. Acosta-Martinez*, 252 F.3d 13, 18-20 (1st Cir. 2001) ("The [federal] death penalty is intended to apply to Puerto Rico federal criminal defendants just as it applies to such defendants in the various states.").

A district court in Vermont rejected the very argument made by the defendant here that the "federalization" of kidnapping violated state sovereignty and the Tenth Amendment because Vermont did not have the death penalty. *Jacques,* 2011 WL 3881033, at *2-3 (holding that doctrine of dual sovereignty allowed United States to determine appropriate punishment for federal crime independent of Vermont). District courts similarly rejected almost identical Tenth Amendment arguments by capital defendants in Iowa, *United States v. Johnson*, 900 F. Supp. 2d 949, 961–63 (N.D. Iowa 2012) (rejecting argument that federalization of state-law offenses when Iowa did not allow for capital

punishment violated Tenth Amendment), Hawaii, *United States v. Tuck Chong*, 123 F. Supp. 2d 563 (D. Haw. 1999) (finding that sentencing a defendant according to federal law for a federal crime does not violate Hawaii's sovereignty nor the Tenth Amendment), and Michigan. *United States v. O'Reilly*, 2007 WL 2421378, at *3-4 (E.D. Mich. Aug. 23, 2007) (rejecting argument that FDPA violated Michigan sovereignty where crime was not "uniquely" federal).

In his motion, the defendant attempts to distinguish these cases by suggesting that, unlike those states, Illinois *really* does not support the death penalty, and unlike those crimes, Congress *really* did not intend for the federal kidnapping statute to apply here, even if it technically does. The defendant cites no authority for the quite novel proposition that the strength of a state's purported opposition to the death penalty or the particular jurisdictional basis of a federal crime can render the FDPA unconstitutional under the Tenth Amendment. As is obvious from the defendant's meandering motion, there is no reliable standard by which a court could gauge varying levels of state opposition or the jurisdictional "strength" of a case. The defendant's suggestion that this case is distinguishable from all the other capital cases rejecting a Tenth Amendment argument is without merit.

Moreover, it is worth noting that the United States has sought and obtained the death penalty in a number of federal jurisdictions within States that do not enforce capital punishment as a matter of state law. *See e.g.*, *United States v. Gabrion*, 719 F.3d 511 (6th Cir. 2013) (Michigan); *United States v. Rodriguez*, 581 F.3d 775 (8th Cir. 2009) (North Dakota); *United States v. Fell*, 531 F.3d 197 (2d Cir. 2008), *United States v. Johnson*, 495 F.3d

951 (8th Cir. 2007) (Iowa); *United States v. Tsarnaev*, 157 F. Supp. 3d 57 (D. Mass. 2016);

*United States v. Wilson*, 967 F. Supp. 2d 673 (E.D.N.Y. 2013). No court has determined that

those prosecutions were unconstitutional because they were brought in a federal

jurisdiction within a state that did not employ the death penalty.

C.    **The Tenth Amendment "anti-commandeering" principle does not apply
here because the FDPA does not require states or state officials to
comply with its requirements or assign them enforcement of the FDPA.**

In addition to these failed arguments, the defendant also raises what he refers to

as an "anti-commandeering" argument regarding the use of state resources during the

federal investigation and prosecution of this case as violating principles of federalism

and the Tenth Amendment. (Def.Mot.25-33) Although, as argued *supra*, this argument is

not ripe, it is also without merit. The Supremacy Clause precludes any effort by states to

divorce themselves from the application of federal law when they choose to act, and the

Tenth Amendment's anti-commandeering principle only prevents Congress from

assigning the enforcement duty to state or local officials, rather than federal officials. *See*

*Travis v. Reno*, 163 F.3d 1000, 1003 (7th Cir. 1998).

Here, the FDPA does not compel states or state officials to comply with its

requirements, nor does it assign to them the enforcement of the FDPA. The FDPA did

not require state authorities to assist the FBI in the search for Yingying Zhang; they

willingly choose to do so. The FDPA does not assign or require states or state officials to

provide voter rolls to federal authorities to determine potential federal jurors. A federal

court's mere use of data from state voter rolls does not implicate the anti-

11

commandeering rule.[4] *Id.* at 1004–05 (holding that "anti-commandeering rule comes into play only when the federal government calls on the states to use their sovereign powers as regulators of their citizens" and rejecting Tenth Amendment challenge to Driver's Privacy Protection Act because it only "affects states as owners of data"). Thus, a Tenth Amendment anti-commandeering argument is not viable here. *Id.*; *compare United States v. Richardson*, 754 F.3d 1143, 1146 (9th Cir. 2014) (holding SORNA does not violate the Tenth Amendment's anti-commandeering principle because it does not compel states or state officials to comply with its requirements); *United States v. White,* 782 F.3d 1118, 1128 (10th Cir. 2015) (same); *United States v. Felts*, 674 F.3d 599, 606–08 (6th Cir. 2012) (same); *United States v. Johnson*, 632 F.3d 912, 920 (5th Cir. 2011) (same); *Kennedy v. Allera*, 612 F.3d 261, 269 (4th Cir. 2010) (same).

Additionally, the natural consequence of the defendant's anti-commandeering argument, if accepted, would be that, in federal capital cases, both the voluntary cooperation of local authorities with the FBI and the use of data from state voter rolls during the jury selection process in federal courts would be permitted in states without a death penalty, but not permitted in states with a death penalty. The argument that the Constitution applies differently in different states is untenable.

The application of the Constitution does not change from state to state. "Plainly, the Constitution must apply equally throughout the states." *United States v. Fell*, 571 F.3d

---

[4] Notably, if the defendant's argument were accepted on this point, the absurd result would be that all federal criminal trials would be in violation of the Tenth Amendment's anti-commandeering principle.

264, 271 (2d Cir. 2009). Thus, the Second Circuit rejected the capital defendant's assertion that federal jury selection must take into account the state's purported opposition to the death penalty:

> The selection of a federal jury to hear a case arising under federal law involved the exercise of exclusive federal power. It does not intrude on any state *function*; much less does it trench on the exercise of any state *power*. It poses no interference with legitimate state *activities*.

*Id.* at 269 (emphasis in original). The Court noted it was "hard pressed to know how we might explain to a capital defendant in Texas that he is entitled to any less rigorous *voir dire* of a potential juror who expresses opposition to the death penalty (because Texas law authorizes capital punishment) than we would insist on for a capital defendant in Vermont (because Vermont law proscribes capital punishment)." *Id.* at 271; *see also McCluskey,* 2012 WL 13076173, at *11 ("Indeed, McCluskey points to no case in which a federal court has applied a state-by-state analysis to [a constitutional determination in a capital case]. Such a conclusion would lead to disparate application of federal law depending on the state in which the law was violated.").

WHEREFORE, the United States of America respectfully requests that this Court deny the Defendant's Motion to Declare the Federal Death Penalty Act Unconstitutional As Applied on the Ground That . . . Its Application Here Violates the Tenth Amendment and Principles of Federalism.

Respectfully submitted,

JOHN E. CHILDRESS
UNITED STATES ATTORNEY

s/ Eugene L. Miller
Eugene L. Miller, Bar No. IL 6209521
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone:  217/373-5875
Fax:  217-373-5891
eugene.miller@usdoj.gov

s/ James B. Nelson
James B. Nelson
Trial Attorney
Capital Case Section
United States Department of Justice
Washington, DC 20004
1331 F St. NW, Room 625
Washington, DC 20004
Phone: 202/598-2972
james.nelson@usdoj.gov

s/ Bryan D. Freres
Bryan D. Freres
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone:  217/373-5875
Fax:  217-373-5891
bryan.freres@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2018, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system, which will send notification of the

filing to all CM/ECF participants.

s/ Eugene L. Miller
Eugene L. Miller, Bar No. IL 6209521
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone:  217/373-5875
Fax:  217-373-5891
eugene.miller@usdoj.gov