IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17-CR-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

**THE UNITED STATES OF AMERICA'S RESPONSE TO THE DEFENDANT'S
MOTION TO SUPPRESS STATEMENTS MADE TO FELLOW DETAINEE**

NOW COMES the United States of America, by John E. Childress, United States Attorney for the Central District of Illinois, Eugene L. Miller and Bryan D. Freres, Assistant United States Attorneys, and James B. Nelson, Department of Justice Trial Attorney, and hereby requests that this Court deny the Defendant's Motion to Suppress Statements Made to Informant (R.95) because controlling Supreme Court precedent establishes that a defendant's voluntary statements made to a fellow detainee are admissible without violating the Sixth Amendment.

## BACKGROUND

On June 30, 2017, federal agents arrested defendant Brendt A. Christensen pursuant to a criminal complaint that charged him with kidnapping Yingying Zhang in violation of Title 18, United States Code, Section 1201(a)(1). (R.1) On July 3, 2017, the defendant appeared in Court with retained counsel, moved to continue his detention hearing, and was temporarily detained in custody by the Court. (R.6; d/e 7/3/17) On

July 5, 2017, the Court ordered the defendant detained pending trial because it found that the weight of evidence against the defendant was strong and that clear and convincing evidence demonstrated that the defendant presented a risk of danger to the community. (R.11) The Court remanded the defendant to the custody of the U.S. Marshals Service. (d/e 7/5/18)

From early July 2017 until September 2017,[1] the U.S. Marshals Service placed the defendant in the Macon County Jail while he awaited trial.[2] Shortly after arriving at the Macon County Jail, the Macon County Sheriff's Office corrections staff designated the defendant as "protective custody" status. Thus, for the defendant's protection, he was held in a designated wing of the Macon County Jail away from the general jail population. The defendant remained in protective custody at the Macon County Jail until August 27, 2017.

The Macon County Jail protected the defendant and others under such status by keeping them alone in their own cells, except for an hour each day. During that hour, the defendant could interact and speak with other detainees, if he so chose. In fact, during the time he was held in protective custody, the defendant chose to speak with another

---

[1] The United States obtained the information herein from consulting with relevant law enforcement agencies. The events relevant to the defendant's motion to suppress all occurred prior to this formally becoming a capital case. The defendant was not formally charged with causing the death of Ms. Zhang until October 3, 2017. (R.26) The United States did not file Notice of Intent to Seek a Sentence of Death (NOI) until January 19, 2018. (R.54)

[2] The U.S. Marshal's Service houses some federal detainees in the Central District of Illinois at the Macon County Jail in Decatur, Illinois, pursuant to an intergovernmental agreement. 18 U.S.C. §§ 4002, 4086. The determination as to where to house a federal prisoner falls under the discretion of the U.S. Marshals Service. *See Lipsey v. United States*, 879 F.3d 249, 255 (7th Cir. 2018), *reh'g denied* (Feb. 22, 2018).

detainee also held in protective custody. Throughout July and August, during the one hour per day he could leave his cell, the defendant spoke with this detainee. During those discussions, the defendant made various statements.

The detainee with whom the defendant voluntarily spoke later ended up being a source of information (SOI)[3] for Federal Bureau of Investigation agents investigating Ms. Zhang's kidnapping. At the time of the SOI's conversations with the defendant, however, no federal, state, or local law enforcement officer or agency directed or requested that the SOI gather information from any inmate, including the defendant. Moreover, no law enforcement agent or agency arranged for the SOI and defendant to be housed next to each other for the purpose of obtaining information about the kidnapping.[4] Although FBI agents learned around July 22, 2017, from a review of the

---

[3] Throughout his motion, the defendant refers to the jailhouse informant as the "Confidential Source" or "CS." (R.95) The use of this term in the defendant's motion is confusing, if not misleading, because the term typically refers to vetted individuals who are actively and covertly cooperating with law enforcement to assist ongoing investigations. Individuals that simply provide information to law enforcement after the fact, as is the case here, are more aptly described as a source of information or cooperating witness. Thus, for clarity, "SOI" will be used herein.

[4] The defendant contends "upon information and belief" that, at the time, the SOI was "a documented confidential source working under the supervision direction and control of the Decatur Police Department, Macon County Sheriff's Departmen [sic] and/or, the Illinois State Police" and was deliberately housed next to the defendant "for the purpose of his engaging [the defendant] in conversation concerning [the defendant's] pending federal case, and for reporting any information obtained from [the defendant] to said law enforcement officers and agents for use as evidence against" the defendant. (R.95 at 3) It appears this "information and belief" is the defendant's speculation that "it cannot be a coincidence that" the SOI and defendant were placed together. (R.95 at 7) This conclusion is illogical. Every detainee is housed with other detainees. Thus, unless the defense has information of which the United States is unaware, these allegations are not supported by a scintilla of evidence and are not well-grounded in fact. Moreover, based on the information obtained by the United States and provided to the defendant in discovery, the claim is false in its entirety. Other than an irrelevant occasion in 2004 where the SOI approached

3

defendant's recorded jail calls, that the defendant and the SOI had formed a relationship, the FBI did not take any steps to meet with the SOI at any time that the defendant and the SOI were housed together in protective custody at the Macon County Jail.

Near the end of August 2017, the SOI notified a Macon County Sheriff's Office corrections officer of the defendant's incriminating statements. Around September 4, 2017, the corrections officer relayed the SOI's account of discussions with the defendant to Macon County Sheriff's Office investigators. Thereafter, a Macon County Sheriff's Office investigator contacted the FBI agents investigating Ms. Zhang's kidnapping.

On September 6, 2017, ten days after the defendant left the protective custody wing of the Macon County Jail, FBI Special Agent Anthony Manganaro and Task Force Officers Trevor Stalets and Barbara Robbins first met with and interviewed the SOI regarding statements made by the defendant to the SOI, as well as the SOI's observations of the defendant. The United States provided the defense with an FBI-302 summarizing the SOI's statements (Bates No. 3460), well in advance of the requirements of the *Jencks Act* and this Court's scheduling order. (R.67 (requiring disclosure of *Jencks* material on March 11, 2019)) After the interview, no law enforcement agent or agency requested the SOI to obtain any additional information from the defendant.

The defendant has filed a motion to suppress the defendant's voluntary statements to the SOI, alleging that they were obtained in violation of the defendant's

---

the Decatur Police Department, but never became an active confidential source, no evidence supports any of the defendant's allegations.

rights secured under the Sixth Amendment to the United States Constitution. (R.95 at 4) The defendant's motion must be denied because his argument is without legal merit.

## RESPONSE

Both parties agree that the defendant's statements to the SOI were made after the defendant was held in custody and had retained counsel for the kidnapping charges. These facts alone, however, do not implicate any rights under the Sixth Amendment.[5] As the Supreme Court has held, where a defendant simply makes voluntary statements to a fellow detainee, the Sixth Amendment is not violated. Moreover, the defendant's claim that the SOI was housed next to the defendant for the purpose of obtaining information from the defendant is untrue and without any evidentiary support.

---

[5] Twice in his motion, the defendant claims that his statements were obtained in violation of the "Fifth and Sixth Amendments." (R.95 at 4, 8) His entire argument, however, including all of the cases that he cites, focuses solely on the Sixth Amendment right to counsel. He articulates no basis for a Fifth Amendment argument. The United States is unable to respond to an entirely undeveloped Fifth Amendment argument, nor should it be required to do so. *See e.g., Marcatante v. City of Chicago,* 657 F.3d 433, 444 n.3 (7th Cir. 2011) (holding that plaintiffs' passing reference to a procedural due process claim was "completely undeveloped and so is waived."); *United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)."); *see also Cromeens, Holloman, Sibert, Inc. v. AB Volvo,* 349 F.3d 376, 389 (7th Cir. 2003) (where litigant first raised issue in its reply, the district court was entitled to find that it waived the issue).

I.  **Admission at Trial of the Defendant's Voluntary Statements to a Fellow Detainee Does Not Violate the Sixth Amendment.**

   A.  **Supreme Court and Seventh Circuit precedent establishes that the Sixth Amendment does not preclude the admission at trial of the defendant's voluntary statements to another detainee.**

Even if the defendant's allegations were true that agents placed the SOI in close proximity to the defendant, the defendant's argument that the Sixth Amendment forbids admission of the defendant's statements to the SOI under these circumstances has been expressly rejected by the United States Supreme Court. *Kuhlmann v. Wilson*, 477 U.S. 436, 459 (1986). Unfortunately, the defendant fails to cite this controlling precedent, which is adverse to his argument. Instead, the defendant's argument relies heavily on the Supreme Court's prior decision in *United States v. Henry*, 447 U.S. 264 (1980), which established that the Sixth Amendment required a defendant to "demonstrate that the police and their informant took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks." *Id.* at 276 (Powell, J., concurring).

*Henry,* however, "left open the question whether the Sixth Amendment forbids admission in evidence of an accused's statements to a jailhouse informant who was 'placed in close proximity but [made] no effort to stimulate conversations about the crime charged.'" *Kuhlmann*, 477 U.S. at 456. *Kuhlmann* resolved this question and held that the Sixth Amendment did *not* forbid admission under these circumstances. *Id.* at 456-59.

In *Kuhlmann*, the investigating officer instructed the jailhouse informant "to listen to [the defendant] for the purpose of determining the identities of the other participants

6

in the robbery and murder." *Id*. at 460. The Supreme Court, in reversing the Court of Appeals, held that the defendant's Sixth Amendment right to counsel was not violated by admission of these statements at trial. *Id*. at 459. When faced with confessions heard by jailhouse informants, courts are primarily concerned with "secret interrogation by investigatory techniques that are the equivalent of direct police interrogation." *Id*. (discussing *United States v. Massiah,* 307 F.2d 62, 72-73 (1962) and its progeny).

The defendant has not alleged, let alone come forward with evidence to establish, that the SOI's conversations with the defendant were "the equivalent of direct police interrogation." Thus, these voluntary conversations did not violate the Sixth Amendment right to counsel. The SOI only came forward *after* the defendant made the statements and *after* the Macon County corrections staff separated the defendant from the SOI. Where law enforcement investigating the case and the SOI did not have contact with one another until after the statements were made, there was no deliberate design to elicit incriminating remarks. Moreover, even if the defendant's baseless allegation that the defendant and SOI were deliberately housed together were true, there still would be no Sixth Amendment violation:

> [T]he primary concern of the *Massiah* line of decisions is secret interrogation by investigatory techniques that are the equivalent of direct police interrogation. Since the Sixth Amendment is not violated whenever — by luck or happenstance — the State obtains incriminating statements from the accused after the right to counsel has attached, a defendant does not make out a violation of that right simply by showing that an informant, either through prior arrangement or voluntarily, reported his incriminating statements to the police. Rather, the defendant must demonstrate that the police and their informant took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks.

*Kuhlmann*, 477 U.S. at 459 (citations and internal quotations omitted).

The Seventh Circuit has applied *Kuhlmann* in an analogous case and found no Sixth Amendment violation. *See United States v. York*, 933 F.2d 1343, 1356 (7th Cir. 1991), *overruled on other grounds by Wilson v. Williams*, 182 F.3d 562, 567 (7th Cir. 1999). Just like this case, there was no evidence the detainee was placed within the institution for the purpose of obtaining information from the defendant, and the FBI only learned of the defendant's statements when the informant came to the FBI. *York,* 933 F.2d at 1356. The Seventh Circuit concluded that the detainee "did nothing to deliberately elicit the statements, so York's sixth amendment right to counsel was not violated by their admission into evidence." *Id*. at 1360.

Additionally, in a *habeas corpus* capital murder case where the police "deliberately placed [the informant] in Gibson's cell in order to obtain incriminating statements from Gibson," a court in the Central District of Illinois applied *Kuhlmann* and found no Sixth Amendment violation. *United States ex rel. Gibson v. McGinnis*, 793 F. Supp. 173, 177 (C.D.Ill. 1992). In that case, the informant was instructed that if the defendant "talked to him or admitted or related or volunteered any information that he may talk back to the man in response to that in normal conversation manner . . . ." *Id*. at 176 (quoting *People v. Gibson*, 109 Ill.App.3d 316, 323 (Ill.App.Ct. 1982)). This Court found that Gibson's case was "virtually indistinguishable" from the facts in *Henry* and *Kuhlmann*, and that because *Kuhlmann* governed, there was no Sixth Amendment violation. *Gibson*, 793 F.Supp. at 177.

The SOI merely reported the defendant's voluntary statements to the police after he made them, which does not offend the Sixth Amendment. No evidence exists demonstrating that law enforcement and the SOI took actions designed to deliberately elicit incriminating remarks beyond mere listening. Applying *Kuhlmann, York,* and *Gibson* to the facts of the instant case, the Sixth Amendment does not prohibit admission at trial of the defendant's voluntary statements to the SOI.

### B. The cases cited by the defendant in his motion are distinguishable from the facts of this case.

The defendant's motion to suppress contends that six cases involved "similar circumstances," where the courts found Sixth Amendment violations. (R.95 at 6-7) Five of those six cases, addressed in turn below, are so distinguishable from the facts of the instant case that they are inapposite. The sixth case supports the admission of the defendant's statement in this case. *See United States v. Lentz*, 524 F.3d 501 (4th Cir. 2008).

In *Lentz,* the informant was initially told to only serve as a "listening post" and "not directly solicit any information" from the defendant. *Id*. at 517. With those directions, the defendant's statements to the jail informant were properly admitted at trial. *Id*. at 521. Later, however, law enforcement agents instructed the informant to "get as much information as he could" such that law enforcement could learn where the defendant buried his victim's body. *Id*. All statements made thereafter were deemed inadmissible, because the subsequent instructions converted the informant into an agent of the government. *Id*. Here, the SOI was not acting at the behest of law enforcement at

9

all and served only as a listening post. Therefore, the defendant's statements to the SOI are admissible just like the first round of statements in *Lentz.*

The other five cases cited by the defendant each involved circumstances, like in *Henry,* and unlike this case and *Kuhlmann,* where the police deliberately used a confidential source or an undercover officer to elicit incriminating information from a represented defendant. *United States v. O'Dell*, 1995 WL 765231, at *1 (7th Cir. 1995) (prior CS paid $500 for providing information and given direction from police while obtaining information); *Ayers v. Hudson*, 623 F.3d 301, 305 (6th Cir. 2010) (informant deliberately elicited information *after* meeting with detectives); *Randolph v. California*, 380 F.3d 1133, 1144 (9th Cir. 2004) (informant acting as agent when placed in defendant's cell after meeting with prosecutor and detective, but still insufficient evidence to determine if Sixth Amendment violation occurred); *Manning v. Bowersox*, 310 F.3d 571, 576 (8th Cir. 2002) (law enforcement planted an informant in the defendant's cell who was encouraged to gather information about pending charges); *United States v. Bender*, 221 F.3d 265, 267 (1st Cir. 2000) (undercover law enforcement officer posed as an inmate to obtain incriminating information from the defendant).

Unlike each of those cases, law enforcement here did not use the SOI to elicit incriminating information from the defendant. In fact, they did not meet with the SOI to discuss the information until *after* the defendant was removed from protective custody with the SOI. No one paid the SOI for his information.[6] After their first and only

---

[6] The defendant states that the SOI entered into a plea agreement with the Macon County State's Attorney's Office for an agreed sentence in March of 2018 and then implies this is

10

encounter with the SOI, federal investigators provided no direction or suggestion to the SOI to gather additional information.

## **CONCLUSION**

In August and July of 2017, the defendant made voluntary statements during conversations with a fellow detainee in the Macon County Jail. The fellow detainee was not placed there by law enforcement to obtain statements from the defendant. After the defendant made those admissions, the fellow detainee reported them to the Federal Bureau of Investigation and became a source of information. At the time the defendant made the admissions, the source of information was not working with law enforcement, and law enforcement did not take any actions designed to deliberately elicit incriminating remarks from the defendant in violation of his right to counsel under the Sixth Amendment. Therefore, the defendant's motion must be denied.

---

evidence that the SOI was working for "his law enforcement principals" when he was "strategically" placed next to the defendant's cell. (R.95 at 7-8) Again, the SOI was not strategically placed next to the defendant's cell, nor was he working at the direction of law enforcement when he engaged in consensual conversations with the defendant in July and August of 2017. Moreover, given the ubiquitous nature of plea agreements in state court proceedings, the SOI's March 2018 plea agreement provides no evidence in support of the defendant's false claim.

WHEREFORE, the United States of America respectfully requests that this Court deny the Defendant's Motion to Suppress Statements Made to an Informant.

Respectfully submitted,

JOHN E. CHILDRESS
UNITED STATES ATTORNEY

s/ Eugene L. Miller
Eugene L. Miller, Bar No. IL 6209521
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone:  217/373-5875
Fax:  217-373-5891
eugene.miller@usdoj.gov

s/ James B. Nelson
James B. Nelson
Trial Attorney
Capital Case Section
United States Department of Justice
Washington, DC 20004
1331 F St. NW, Room 625
Washington, DC 20004
Phone: 202/598-2972
james.nelson@usdoj.gov

s/ Bryan D. Freres
Bryan D. Freres
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone:  217/373-5875
Fax:  217-373-5891
bryan.freres@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to all CM/ECF participants.

s/ Eugene L. Miller
Eugene L. Miller, Bar No. IL 6209521
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone:  217/373-5875
Fax:  217-373-5891
eugene.miller@usdoj.gov
