E-FILED
Tuesday, 16 October, 2018  08:54:05 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17-CR-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

## THE UNITED STATES OF AMERICA'S RESPONSE
## TO THE DEFENDANT'S MOTION TO SUPPRESS
## STATEMENTS SURREPTITIOUSLY RECORDED BY T.E.B.

COMES NOW the United States of America, by John E. Childress, United States Attorney for the Central District of Illinois, and Eugene L. Miller and Bryan D. Freres, Assistant United States Attorneys, and James B. Nelson, Department of Justice Trial Attorney, and hereby requests that this Court deny the Defendant's Motion to Suppress Statements Surreptitiously Recorded by T.E.B. (R.96) for the reasons stated herein.

## BACKGROUND

### I.    Procedural Background.

On June 30, 2017, federal agents arrested the defendant, Brendt A. Christensen, pursuant to a criminal complaint that charged him with kidnapping Yingying Zhang in violation of Title 18, United States Code, Section 1201(a)(1). (R.1) A federal grand jury later indicted the defendant on the same kidnapping charge outlined in the complaint. (R.13)

On October 3, 2017, the grand jury returned a superseding indictment charging the defendant with kidnapping resulting in Ms. Zhang's death, and two counts charging that he made false statements to FBI agents investigating the kidnapping. (R.26) On January 19, 2018, the United States filed its notice of intent to seek the death penalty. (R.54) On August 24, 2018, the defendant filed the present motion along with a host of additional motions. (R.94-122) The case is currently set for trial on April 3, 2019. (R.67)

## II.    Factual Background.

On June 9, 2017, the defendant kidnapped Yingying Zhang from a bus stop as she was traveling to sign an apartment lease. A closed-circuit camera captured Ms. Zhang entering the defendant's black Saturn Astra, and she has been missing ever since. Ms. Zhang's co-workers at the University of Illinois reported her missing when she failed to respond to phone calls and uncharacteristically missed a scheduled meeting. The University of Illinois Police department (hereinafter "UIPD") and Federal Bureau of Investigation (hereinafter "FBI") began investigating Ms. Zhang's disappearance shortly thereafter.

On June 12, FBI special agents interviewed the defendant at his apartment after public records showed he owned the same type of vehicle (a black Saturn Astra) used in Ms. Zhang's kidnapping. When agents inquired about his whereabouts during Ms. Zhang's abduction, the defendant claimed he was sleeping and playing video games all day on June 9.

On June 14, law enforcement officers determined the Saturn Astra that Ms. Zhang entered had a unique hubcap deformity. FBI special agents determined that the

defendant's Saturn Astra had a matching hubcap deformity. That evening, agents obtained a federal search warrant for the defendant's Astra. The defendant agreed to speak with FBI agents that evening.[1] During this second interview, the defendant admitted to picking Ms. Zhang up in his Astra, but claimed he dropped her off in a residential neighborhood after she "freaked out." After this second interview, law enforcement began round-the-clock surveillance of the defendant.

Shortly after the defendant's second interview, on June 15, FBI agents separately interviewed T.B. (referred to as "T.E.B." in defendant's motion) about the defendant. T.B. maintained regular communication with the defendant at the time. After a second interview with T.B. on June 16, T.B. freely and voluntarily agreed to record her conversations and encounters with the defendant. T.B. signed an FD-472 form, wherein she agreed to record "any activity [T.B.] may have with Brendt A. Christensen and others as yet unknown which [T.B.] may have on or about 6/16/2017 and continuing thereafter until such a time as either [T.B.] revoke her permission or the FBI terminates the investigation." T.B. was not under investigation for this offense or any other. Her cooperation in the investigation was voluntary and revocable at any time. T.B. maintained regular contact with FBI Special Agent Andrew Huckstadt from June 16 through the defendant's arrest and beyond. T.B. never revoked her consent to engage in recordings, nor expressed any hesitation about engaging in the recordings.

---

[1] The details of this are addressed in greater detail in the United States' Response to Defendant's Motion to Suppress Evidence Seized from His Apartment on June 15, 2007 (R.100), and that response is incorporated herein by reference as necessary for context.

After voluntarily consenting to record the meetings, agents gave T.B. a recording device and instructed her on how to use it. T.B. used the device to record a phone conversation with the defendant later on June 16. After the call, T.B. contacted Agent Huckstadt to advise him of the conversation and recording. Agent Huckstadt directed T.B. to keep the device until the following day, as T.B. expected to meet the defendant in person at that time.

On June 17, T.B. and the defendant met on the front porch area of T.B.'s residence. T.B. recorded this conversation as well. The agents surveilled this meeting and all others between the defendant and T.B. from this point on. After the meeting, T.B. contacted Agent Huckstadt to advise of what transpired.  They met in person so Agent Huckstadt could collect the recording device, download the contents, and replace the batteries. Agent Huckstadt then returned a recording device to T.B.  Thereafter, they maintained regular contact.

On June 19, T.B. recorded another conversation with the defendant near T.B.'s front porch. T.B. advised Agent Huckstadt that the meeting would be happening before it transpired she contacted Agent Huckstadt after the meeting to recount what had happened. That afternoon, Agent Huckstadt met with T.B. to collect the recording device, download the recording, and replace the batteries on the device. He returned the recording device to T.B. shortly thereafter.

T.B. recorded another conversation with the defendant on June 20. This conversation also occurred on T.B.'s front porch, and surveillance officers monitored the meeting. T.B. contacted Special Agent Huckstadt before the meeting to advise him of the

expected contact with the defendant and called him again after the meeting. Agent Huckstadt met with T.B. to download the recording of this meeting and refresh the recording device on the morning of June 21. T.B. then recorded another conversation with the defendant on June 21. For the second time on the same day, Special Agent Huckstadt met with T.B., downloaded the recording, replaced the batteries on the recording device, and returned the device to T.B. shortly thereafter.

T.B. recorded another in-person conversation with the defendant on June 22. Just as before, T.B. notified Agent Huckstadt of the contact before it happened and contacted him thereafter when it was complete. Agent Huckstadt collected the device on the morning of June 23. He downloaded the recording, refreshed the batteries, and gave T.B. the device that day. T.B. then recorded a telephone call with the defendant later on June 23. During a meeting with T.B., T.B. told Agent Huckstadt that her next expected meeting with the defendant would be three or four days later. Agent Huckstadt and T.B. maintained contact during that time.

On June 27, T.B. told Agent Huckstadt she expected in-person contact with the defendant that day. T.B. recorded her conversation with the defendant during a walk on public sidewalks and streets. Their movements were surveilled by law enforcement. After the meeting, T.B. again contacted Agent Huckstadt.  They met on the morning of June 28 so Agent Huckstadt could download the recording and refresh the device.

On June 29, the defendant told T.B. he wanted to attend a memorial walk for Ms. Zhang in Champaign and Urbana and instructed T.B. to join him at the walk. FBI agents met with T.B. for a detailed conversation about the expected contact and again provided

T.B. with a recording device. T.B. met the defendant at the memorial walk and recorded a lengthy conversation with the defendant. The conversation occurred as they walked on public streets and sidewalks, with several people around. At one point during the conversation, the defendant commented on the number of people attending the walk. The recording captures street traffic noises, as well as voices engaging in largely indecipherable conversations in the background of the defendant and T.B.'s conversation. News media and cameras covered the event extensively.  If fact, a camera only a few feet behind the defendant filmed him while he was walking at the event. The defendant also posed in multiple pictures with several other people while at the event. Agents surveilled the defendant's movements the entire time.

T.B. contacted Agent Huckstadt immediately after the event and met in person with Special Agents Huckstadt and Joel Smith that evening. Agent Huckstadt downloaded and reviewed the recording. The agents arrested Christensen on the afternoon of June 30 for kidnapping Ms. Zhang.

T.B. maintained close contact with agents throughout the investigation and beyond. She never expressed any hesitation about voluntarily recording her meetings with the defendant. T.B. notified Agent Huckstadt prior to every single meeting with the defendant, and they met that same day or shortly after the meetings.

<u>ANALYSIS</u>

In his motion, the defendant seeks to suppress all of his recorded conversations with T.B. because: (1) he questions her voluntariness to engage in the recordings; and (2) he claims she was not acting under color of law. In essence, the defendant claims the recordings must be suppressed as violations of federal wiretapping law. The defendant's positions are entirely speculative, with no foundation or basis. T.B.'s consent to engage in the recordings was voluntary.  Moreover, her regular meetings with agents throughout this time establish that she was acting under color of law. Additionally, many of the recorded conversations, most notably the recording of the defendant and T.B. at Ms. Zhang's memorial walk, occurred in public with other people nearby. As such, these recordings are not "oral communications" under the federal law cited by the defendant. Thus, they are not subject to suppression even if the Court were to find T.B. acted involuntarily or not under color of law. For these reasons, no evidentiary hearing is necessary, and this Court should deny defendant's motion.

I.     **Relevant Law.**

The defendant alleges that all of T.B.'s recordings were made in violation of the federal wiretapping statute. *See* 18 U.S.C. §§ 2510-2515. As such, he argues the recordings must be excluded based on 18 U.S.C. § 2515, which prohibits the evidentiary use of illegally obtained recordings. *Id.* The wiretapping statute, however, offers multiple exceptions to the evidentiary prohibition. *United States v. Andreas*, 216 F.3d 645, 660 (7th Cir. 2000). One such exception, at issue here, is outlined in 18 U.S.C. § 2511(2)(c):

It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

*Id.* Another exception, also at issue (though not addressed by the defendant), is outlined in 18 U.S.C. § 2511(2)(d):

It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

*Id.* "[W]hen assessing whether someone acted under 'color of law' for the wiretap statute, the question is whether the witness was acting under the government's direction when making the recording." *Andreas*, 216 F.3d at 660. In making this determination, what courts "find essential is that the government requested or authorized the taping with the intent of using it in an investigation and that they monitored the progress of the covert surveillance activities." *Id.* at 661.

By its terms, the federal wiretapping statute's evidentiary prohibition also does not apply unless the recordings are "wire or oral communication[s]." *See* 18 U.S.C. § 2515. The statute defines "wire communication," in relevant part, as "any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception[.]" 18 U.S.C. § 2510(1). The statute defines "oral communication" as "any oral communication uttered by a person exhibiting an

8

expectation that such communication is not subject to interception under circumstances

justifying such expectation[.]" 18 U.S.C. § 2510(2). "[T]o be an oral communication that is

protected by Title III, the speaker must have had a subjective expectation that the

communication was not subject to interception, and this expectation must have been

objectively reasonable." *United States v. Willoughby*, 860 F.2d 15, 22 (2d Cir. 1988); *see In

The Matter of John Doe Trader Number One*, 894 F.2d 240, 244-45 (7th Cir. 1990) (statements

cannot be considered "oral communications" for purposes of Title III if they were not

uttered under circumstances justifying an expectation of privacy).

## II.    T.B. Voluntarily Agreed to Record Conversations With the Defendant.

The defendant first questions whether T.B. voluntarily consented to engage in the

recorded conversations with the defendant. Despite acknowledging that T.B. signed the

FD-472 form, which outlines T.B.'s voluntarily consent to record conversations, the

defendant questions T.B.'s consent based on out-of-context statements from the

recordings.  For example, the defendant refers to statements indicating T.B. was dealing

with health issues. The defendant also refers to two statements from the recordings

where T.B. states the "FBI is going to take me in again soon," and "the FBI are taking me

in for more questioning."

Based solely on these comments and significant speculative leaps, the defendant

suggests T.B. is "an emotionally unstable individual who appears to lack the mental

capacity to knowingly and voluntarily agree to anything." The defendant's rhetoric is

overstated.  He does not, and cannot, offer any evidence to support his speculation. *E.g.,

United States v. Coleman*, 149 F.3d 674, 677 (7th Cir. 1998) ("Evidentiary hearings on

motions to suppress are not granted as a matter of course but are held only when the defendant alleges sufficient facts which if proven would justify relief."); *United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir. 1992) ("Reliance on vague, conclusory allegations is insufficient. A defendant must present 'definite, specific, detailed, and nonconjectural' facts that justify relief before a district court will grant a suppression hearing."). Therefore, his claim fails, and no evidentiary hearing is necessary.

As the defendant correctly notes in his motion, a signed consent form, such as the form T.B. signed here, is "strong evidence that consent was freely and knowingly given." *United States v. Gaviria*, 775 F. Supp. 495, 500 (D.R.I. 1991); *see United States v. Navarro*, 90 F.3d 1245, 1257 (7th Cir. 1996) (signed consent form is "clear evidence of the voluntariness" of consent) (citing other cases). The defendant counters this strong evidence with unfounded speculation about T.B.'s "mental capacity" and emotional stability. The defendant does not explain how T.B.'s out-of-context statements about physical ailments and anxiety during the recordings show a lack of consent. He offers no affidavits or other evidence to support his assertion. *See United States v. Calderon*, 77 F.3d 6, 9 (1st Cir. 1996) (upholding denial of evidentiary hearing where defendant "filed no affidavits" and "presented no evidence at all [that a third party he claimed could not have consented to a search had their will] 'overborne' or that she suffered a 'critically impaired capacity for self-determination.'").

Any person recording conversations with a suspected murderer would likely have some anxiety about doing so. That in no way suggests the recording was involuntary. To the contrary, it suggests the person was willing to overcome the

nervousness and anxiety to assist law enforcement in an important function. This is

particularly apparent in the context of T.B.'s extensive contact with FBI agents. *E.g.*,

*United States v. Horton*, 601 F.2d 319, 322 (7th Cir. 1979) (voluntariness may be shown

when "informer went ahead with a call (or other recorded activity) knowing what the

law enforcement officials were about."). Thus, the defendant's unfounded allegation of

mental instability is insufficient to merit an evidentiary hearing. *See United States v.

Longo*, 70 F. Supp. 2d 225, 262-63 (W.D.N.Y. 1999) ("Defendant's allegations of coercion,

lenient treatment, and [the third party consenter's] impaired ability to consent […]

constitute unsupported speculation and are therefore insufficient to warrant an

evidentiary hearing.").

    The defendant also alleges, with no foundation, that T.B.'s statements about the

FBI questioning her somehow suggests T.B. may have been "threatened with baseless

criminal charges if [T.B.] did not agree to consent to the recording[s]." From the

discovery the defendant has received, it is evident that there are no potential criminal

charges with which to threaten T.B. The defendant offers no affidavit or other evidence

from himself, T.B., or anyone else to support this conjecture.[2]  This lack of support is fatal

to his request for an evidentiary hearing. *Coleman*, 149 F.3d at 677; *Randle*, 966 F.2d at

1212; *Calderon*, 77 F.3d at 9; *Longo*, 70 F. Supp. 2d at 262-63; *United States v. Porter*, Case

No. 09-CR-55, 2009 WL 1744545, at *1 (E.D. Wis. June 19, 2009) (denying evidentiary

---

[2]After the defendant's arrest, investigators with the defense team approached T.B.
unexpectedly at T.B.'s residence. When they did not leave at T.B.'s request, T.B. contacted Agent
Huckstadt. Had law enforcement previously threatened or coerced T.B., T.B. had the
opportunity to tell the defense. Instead, T.B. contacted the same agent that the defendant alleges
threatened or coerced T.B. to tell him that the defense team would not leave T.B.'s property.

hearing because defendant's allegation that third party's consent was involuntary was entirely conjectural, even when consenter filed affidavit claiming she thought she was signing a search warrant, not a consent form).

T.B. voluntarily engaged in these recordings as a concerned citizen. Even if the defendant could credibly claim that T.B. only consented because she sought leniency or some other benefit, however, no remedy is appropriate. "[A]ny benefits that an informant might receive for cooperating with Government investigations would not vitiate [] voluntary consent to the electronic recording of [] conversations." *Horton*, 601 F.2d at 322; *see also United States v. Jones*, 839 F.2d 1041, 1050 (5th Cir. 1988); *United States v. Scaife*, 749 F.2d 338, 345 (6th Cir. 1984); *United States v. Dowdy*, 479 F.2d 213 (4th Cir. 1973).

In sum, the selected statements about T.B.'s health issues and conversations with FBI agents in no way imply or suggest involuntariness, mental instability, or coercion. Therefore, they do no merit an evidentiary hearing on the matter. The defendant's speculation about T.B.'s consent is unfounded. As the defendant well knows, T.B. is not an "emotionally unstable individual" who "lack[s] the mental capacity to knowingly and voluntarily agree to anything[,]" she is a concerned citizen who voluntarily assisted agents in investigating a suspected kidnapper and murderer.

III.    **T.B. Acted Under Color of Law.**

The defendant next posits that T.B. was not acting "under color of law" when recording their conversation at Ms. Zhang's memorial walk on June 29 because she incidentally recorded other conversations in the background of their own conversation. The defendant contends that this incidental recording violated a clause in the FD-472 agreement, which reads:

> I understand that I must be a party to any communication in order to record or monitor that communication. I therefore agree not to leave the recording or monitoring equipment unattended or take any action which is likely to result in the recording of communications to which I am not a party.

The defendant's argument misunderstands or misinterprets this clause.

First, as discussed in more detail below, a recording that captures a conversation in public amidst a group of several people removes the recording from the "oral communication" definition under the federal wiretapping statutes. As such, the remedy defendant seeks is unavailable irrespective of whether T.B. acted under color of law. *See* 18 U.S.C. § 2515 (only "oral communication[s]" subject to suppression); *Willoughby*, 860 F.2d at 22 (recorded conversation captured as people were speaking in public not an "oral communication" because parties had no reasonable expectation of privacy)*; In The Matter of John Doe Trader Number One*, 894 F.2d at 244-45 (same).

Second, this clause is irrelevant to whether someone was acting under color of law. "[W]hen assessing whether someone acted under 'color of law' for the wiretap statute, the question is whether the witness was acting under the government's direction when making the recording." *Andreas*, 216 F.3d at 660. "No cases demand that the

13

government's supervision of its cooperating witnesses and informants need be flawless." *Id.* at 661 (citing cases and examples). Rather, the "essential" question is whether "the government requested or authorized the taping with the intent of using it in an investigation and that they monitored the progress of the covert surveillance activities." *Id.*

There can be no dispute that the FBI requested that T.B. record the conversations for use in investigating the defendant. Law enforcement closely monitored T.B. throughout the consensual recordings. T.B. contacted Agent Huckstadt prior to every contact with the defendant. He met with T.B. shortly after each encounter so he could download the recordings, speak with T.B. about the encounters, and refresh the recording devices. All recordings were captured using FBI equipment. FBI surveillance teams closely monitored every in-person meeting between T.B. and the defendant. Moreover, T.B. maintained voluntary contact with Agent Huckstadt and other FBI agents throughout the investigation.

Under these circumstances, it is clear that T.B. was acting "under color or law" pursuant to government agents' directives. *See Andreas*, 216 F.3d at 660-61 (despite several flaws, none of which are present in this case, court found government witness who was the subject of the movie "The Informant!" was acting under color of law during recorded conversations with other business executives); *see also Obron Atlantic Corp. v. Barr*, 990 F.2d 861, 864-65 (6th Cir. 1993); *United States v. Haimowitz*, 725 F.2d 1561, 1581-82 (11th Cir. 1984); *United States v. Tousant*, 619 F.2d 810 (9th Cir. 1980); *United States v. Rich*, 518 F.2d 980 (8th Cir. 1975).

14

Third, the defendant is incorrect in asserting that T.B. violated the FD-472 clause mentioned above. This is true because, notwithstanding that the recording captured other conversations in the background of the conversation between T.B. and the defendant, T.B. was a party to the conversation the entire time. The clause is meant to mitigate unwarranted intrusions to random conversations that did not involve the source. Regardless, neither a violation of the FD-472 agreement nor other flaws during the cooperation determine whether someone was acting under color of law. *E.g.*, *Andreas*, 216 F.3d at 660-61.

Finally, even if the Court were to determine T.B. was not acting under color of law, the defendant's requested remedy would be unavailable under the exception outlined in 18 U.S.C. § 2511(2)(d). Because T.B. voluntarily consented to the recording, and was not recording the conversation "for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State," the recording falls within the exception to the wiretapping act noted in § 2511(2)(d) regardless of the "color of law" analysis. *See* 18 U.S.C. § 2511(2)(d).

For these and other reasons cited herein, defendant's motion should be denied.

## IV.    The Memorial Walk Recording is Not an "Oral Communication."

The fact that T.B. incidentally captured other conversations while recording the defendant on June 29 does not support the defendant's suppression request; instead, it renders the requested remedy impermissible because it shows the conversation with the defendant was not an "oral communication." The federal wiretapping statute's evidentiary prohibition does not apply unless the recordings are "wire or oral

communication[s]."[3] *See* 18 U.S.C. § 2515. To qualify as an "oral communication," the speaker "must have had a subjective expectation that the communication was not subject to interception, and this expectation must have been objectively reasonable." *Willoughby*, 860 F.2d at 22; *In The Matter of John Doe Trader Number One*, 894 F.2d at 244-45; *see also United States v. Paxton*, 848 F.3d 803, 807-08 (7th Cir. 2017) (Title III "oral communication" definition meant to mirror "reasonable expectation of privacy" test).

Courts across the country have frequently held there is no reasonable expectation of privacy in conversations held in public places when other people are present. Therefore, such recorded conversations do not offend the federal wiretapping statutes. *E.g.*, *Willoughby*, 860 F.2d at 22-23 (recorded conversation in public-accessible area of prison not "oral communication"); *In The Matter of John Doe Trader Number One*, 894 F.2d at 244-45 (recorded conversation in crowded mercantile exchange pit had no reasonable expectation of privacy, and therefore was not an "oral communication"); *Paxton*, 848 F.3d at 807-08 (no reasonable expectation of privacy in back of unmarked police car); *United States v. Scott*, Case No. 1:09-CR-98, 2011 WL 2413821, at *7-8 (N.D. Ind. June 10, 2011) (conversation in defendant's driveway when others were about carried no reasonable expectation of privacy), *aff'd on other grounds*, 731 F.3d 659, 664 (7th Cir. 2013); *Aldrich v. Ruano*, 952 F. Supp. 2d 295, 303-04 (D. Mass. 2013) (recorded conversation in public courtroom did not violate federal wiretap statute); *Jarmuth v. Waters*, Case No. 1:04-CV-63, 2005 WL 5715172, at *6 (N.D.W.V. Mar. 31, 2005) (unreasonable to expect privacy in

---

[3] The recorded conversation at the June 29 memorial walk was in-person, so it does not qualify as a "wire communication." 18 U.S.C. § 2510(1).

conversation in public restaurant); *see also United States v. McLeod*, 493 F.2d 1186, 1188

(7th Cir. 1974) (conversations audible to others in a public place are knowingly exposed

to the public).

The June 29 conversation occurred at a public memorial walk for Ms. Zhang

attended by dozens of people. As the defendant readily admits, the conversation

occurred within earshot of many of these people. In fact, the recording device

incidentally captured several nearby conversations. The defendant and T.B. traversed

public sidewalks and roadways throughout the conversation. The defendant posed for

pictures during the walk, and news crews as close as a few feet away filmed him

walking at the vigil. He clearly knew (and even reveled in the fact) that so many people

were about, yet he carried on the conversation with T.B. anyway. Since he exposed the

conversation to the potential earshot of many people in public that evening, there was no

reasonable expectation of privacy, and no part of the conversations qualifies as an "oral

communication" under Title III. *E.g.*, *Willoughby*, 860 F.2d at 22-23; *In The Matter of John

Doe Trader Number One*, 894 F.2d at 244-45; *Paxton*, 848 F.3d at 807-08; *Scott*, 2011 WL

2413821, at *7-8; *Aldrich*, 952 F. Supp. 2d at 303-04; *Jarmuth*, 2005 WL 5715172, at *6. As

such, the memorial walk recording is not subject to suppression pursuant to 18 U.S.C.

§ 2515 regardless of T.B.'s consent or whether she acted under color of law.

WHEREFORE, the United States of America respectfully requests that this Court deny the Motion to Suppress Statements Surreptitiously Recorded by T.E.B.

Respectfully submitted,

JOHN E. CHILDRESS
UNITED STATES ATTORNEY

s/ Eugene L. Miller
Eugene L. Miller, Bar No. IL 6209521
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone:  217-373-5875
Fax:  217-373-5891
eugene.miller@usdoj.gov

s/ Bryan D. Freres
Bryan D. Freres
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone:  217-373-5875
Fax:  217-373-5891
bryan.freres@usdoj.gov

s/ James B. Nelson
James B. Nelson
Trial Attorney
Capital Case Section
United States Department of Justice
Washington, DC 20004
1331 F St. NW, Room 625
Washington, DC 20004
Phone: 202/598-2972
james.nelson@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 16, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to all CM/ECF participants.

s/ Bryan D. Freres
Bryan D. Freres
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone:  217/373-5875
Fax:  217-373-5891
bryan.freres@usdoj.gov