# IN THE UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17-CR-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

## THE UNITED STATES OF AMERICA'S RESPONSE
## TO THE DEFENDANT'S MOTION TO BAR AND SUPPRESS
## IDENTIFICATION TESTMONY AND EVIDENCE

NOW COMES the United States of America, by John E. Childress, United States Attorney for the Central District of Illinois, Eugene L. Miller and Bryan D. Freres, Assistant United States Attorneys, and James B. Nelson, Department of Justice Trial Attorney, and hereby requests that this Court deny without a hearing the Defendant's Motion to Bar and Suppress Identification Testimony and Evidence (R.99) because the testimony and evidence is relevant, and the identification procedure was not unduly suggestive.

## BACKGROUND

A criminal complaint charged the defendant Brendt A. Christensen with kidnapping Yingying Zhang in violation of Title 18, United States Code, Section 1201(a)(1). (R.1) The criminal complaint further alleged that around 2:00 p.m. on Friday, June 9, 2017, the defendant pulled his black Saturn Astra sedan alongside Ms. Zhang, a visiting Chinese scholar, on Goodwin Avenue in Urbana on the University of Illinois

campus. After a brief discussion, Ms. Zhang entered the passenger side of the defendant's car, and the defendant drove away. No one has had contact with Ms. Zhang since she entered the defendant's car. The defendant later admitted to a cellmate that he lured Ms. Zhang into his car by showing her a badge and telling her he was a police officer.[1]

### A.     E.H.'s police report.

Around 9:29 a.m., the morning of, but prior to, Ms. Zhang's kidnapping, a female graduate student (E.H.) made a report of someone impersonating a police officer to the University of Illinois Police Department (UIPD). E.H. stated that while she was walking on the University of Illinois campus she was approached near Green Street in Urbana (not far from where Ms. Zhang was later abducted) by a white male wearing sunglasses and driving a black sedan. E.H. said that the driver identified himself as an undercover cop, displayed a badge, and asked her to get in the black sedan for questioning. She refused and within minutes called the UIPD to make a report. The UIPD confirmed there was no actual undercover police officer in the area at that time.

### B.     K.K.'s police report.

On June 13, 2017, K.K. contacted the UIPD. She believed she had seen the same vehicle (the defendant's black Saturn Astra) that she had seen posted on the UIPD's Facebook Page and associated with Ms. Zhang's disappearance on June 9. K.K. said that on June 7 (two days before Ms. Zhang's disappearance) she had left the Mechanical

---

[1] The defendant has moved to suppress this statement in a separate filing. (R.95)

Engineering Building on the University of Illinois campus and was walking north of University Avenue in Urbana. She said between 3:52 p.m. and 4:31 p.m. a white male with short brown hair, probably in his thirties, wearing dark sunglasses, had called out to her from a black hatchback. She believed he was trying to get her to come to his car. She said she gave him a mean stare and walked away. She said she did not report the incident at the time because she has been "cat called" before, but after seeing the UIPD Facebook Page, she believed the white male was driving the same car.

### C. The sequential photographic array.

By June 13, 2017, the defendant was a suspect in the kidnapping of Ms. Zhang. Therefore, FBI case agent Anthony Manganaro obtained six color photographs of white, male individuals, aged 25-35 years old with dark hair, including the defendant. Each of the six photographs was selected from an Illinois Secretary of State driver's license and contained similar characteristics (hair color, gender, age, ethnicity, and background). On June 14, 2017, K.K. (around 6:58 p.m.) and E.H. (around 7:49 p.m.) came to the FBI office in Champaign, Illinois to view the sequential photographic array.

Because Agent Manganaro was involved in the investigation, he requested FBI Special Agent Martin Jerge to present the photographic array in a sequential order to E.H. and K.K. Agent Jerge had not been involved in the investigation and had no knowledge as to which of the six photographs was the defendant's. FBI Special Agent Katherine Tenaglia was present when Agent Jerge conducted the photographic array. E.H. and K.K. were each shown the array independent of one another. Prior to presenting the photographic array, Agent Jerge admonished E.H. and K.K., respectively,

that the individual each had seen may or may not be in the photographs shown. E.H. and K.K. were each given as much time as they felt they needed to determine if they recognized any of the individuals.

K.K. stated that she believed that individual #6 (not the defendant) may have shared the most characteristics with the individual who approached her in the car due to his short hair and tan face. She was not positive, however, and could not say for certain if the individual she saw was depicted. She said it was difficult due to the individual wearing sunglasses at the time.

E.H. stated that she believed that individual #3 (the defendant) may have shared the most characteristics with the individual who approached her in the car due to his short dark hair, thin lips, and skin tone. She also was not positive, however, and could not say for certain if the individual she saw was depicted. She also said it was difficult due to the individual wearing sunglasses at the time.

## RESPONSE

I.  **The Expected Testimony of E.H. and K.K., Including E.H.'s Out-of-Court Identification of the Defendant, Is Admissible at Trial Under the Federal Rules of Evidence.**

  A.  **Their testimony is relevant.**

Rule 402 of the Federal Rules of Evidence generally provides that relevant evidence is admissible. Evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence. Fed. R. Evid. 401. Any evidence that tends to show the defendant lured Yingying Zhang into his black Saturn Astra is directly relevant to proving an the element of the kidnapping offense. *See*

4

18 U.S.C. § 1201 ("Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts or carries away . . .").

Evidence of the defendant's recent, prior attempts to lure other women into his car has a tendency to make several facts of consequence to this case more probable than they would be without the evidence, including but not limited to, (1) connecting the defendant to the black Saturn Astra during the relevant time period; (2) establishing his preparation and plan of driving around campus looking for female student victims; and (3) showing the defendant's method of inveiglement by pretending to be a police officer (which tends to show that his intent in picking up Ms. Zhang was to kidnap, abduct, and carry her away, not merely to give her a ride, as he claimed to the FBI). *See, e.g., United States v. Romero*, 189 F.3d 576, 588 (7th Cir. 1999) (finding prior conversations with other potential victims "highly probative of Romero's intent" and classic evidence used to respond to defense argument that the defendant had only innocent intentions and wanted to help victim); *see also United States v. Diekhoff*, 535 F.3d 611, 618 (7th Cir. 2008) (evidence of prior kidnapping relevant because it bore directly on the defendant's state of mind).

Moreover this evidence is also relevant to the false statement charges in Counts Two and Three of the superseding indictment. It tends to show that the defendant did not stay home and play video games all day on Friday, June 9, 2017, as he told FBI agents on June 12, 2017. It also tends to show that the defendant did not drop Ms. Zhang off shortly after picking her up, as he claimed to the FBI on June 15, 2017.

**B.  The probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.**

While a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice," Fed. R. Evid. 403, there is no unfair prejudice in admitting this evidence. "Evidence is unduly prejudicial if it creates a genuine risk that the emotions of the jury will be excited to irrational behavior, and the risk is disproportionate to the probative value of the offered evidence." *United States v. Miller*, 688 F.3d 322, 327 (7th Cir. 2012); *United States v. Loughry*, 660 F.3d 965, 971 (7th Cir. 2011). The allegations against the defendant are that he kidnapped Ms. Zhang and caused her death in an especially heinous, cruel, and depraved manner, in that it involved torture and serious physical abuse to Ms. Zhang. In light of these capital allegations, evidence that he approached two female students during the same time frame in the same black car pretending to be a police officer is mild and will not appeal to the juror's emotions or excite irrational behavior.

**C.  E.H.'s prior identification of the defendant is not hearsay.**

E.H.'s prior identification of the defendant is not only relevant and probative, it is not excluded from evidence by the hearsay rule. A witness's prior out-of-court identification of a person, including a defendant, is not hearsay as long as the witness testifies and is subject to cross-examination about the prior identification. Fed. R. Evid. Rule 801(d)(1)(C) (prior statement that "identifies a person as someone the declarant perceived earlier" is not hearsay). Therefore, the testimony of K.K. and E.H., including E.H.'s prior identification of the defendant, is admissible at trial under the Federal Rules

of Evidence. In fact, the FBI agents who observed the identification may testify about E.H.'s prior statement of identification, as long as E.H. also testifies. *United States v. Foster*, 652 F.3d 776, 788 (7th Cir. 2011). The defendant's criticisms under the Federal Rules of Evidence regarding the reliability of this evidence goes only to its weight, not its admissibility. *See United States v. Cardena*, 842 F.3d 959, 985 (7th Cir. 2016), *cert. denied*, 138 S. Ct. 247 (2017).

## II.    The Defendant's Request to Bar and Suppress E.H.'s Identification Must Be Denied Because the Identification Procedure Was Not Unduly Suggestive.

"[D]ue process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, 565 U.S. 228, 238–39 (2012). Thus, before a court will examine the totality of the circumstances to determine whether other indicia of reliability outweigh a suggestive lineup, a defendant first must establish that the procedure was both suggestive and unnecessary. *United States v. Jones*, 872 F.3d 483, 490 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 936 (2018), and *cert. denied*, 138 S. Ct. 1023 (2018). If a court determines the procedure was not suggestive, the inquiry ends and no further hearing is warranted. *United States v. Johnson*, 745 F.3d 227, 229 (7th Cir. 2014) ("After finding the array not suggestive, the judge stopped the analysis, for she did not need to consider other questions"). "[T]he Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances . . . ." *Perry*, 565 U.S. at 248. The defendant has

not met and cannot meet his burden of establishing that the identification procedure used by the FBI was suggestive and unnecessary.

      A.      **The identification procedure in this case was not unduly suggestive.**

<u>Similar characteristics of photographs</u>: First, the FBI obtained a color photograph of the defendant from the Illinois Secretary of State. Because the defendant was a white male between 25 and 35 years old with short dark hair and facial hair in the photo,[2] Special Agent Manganaro obtained Secretary of State driver's license photographs of five other individuals sharing those same characteristics. *Cf. Johnson,* 745 F.3d at 230 ("Johnson's lawyer observes that the men have different skin coloration, but that is inevitable in any array or sequence of photos—just as it is inevitable that the facial hair, ear sizes, and chin shapes will not be identical"); *United States v. Ford*, 683 F.3d 761, 766 (7th Cir. 2012) ("Of course it's impossible to find photos of persons who are identical to a suspect (unless he has an identical twin)—and also undesirable, because then the witness wouldn't be able to identify the suspect."); *United States v. Arrington*, 159 F.3d 1069, 1073 (7th Cir. 1998) (a "lineup of clones is not required"). Contrary to the defendant's claims, there was nothing about the six photographs used in the array that

---

[2] The defendant complains that K.K. and E.H. did not identify the suspect as having facial hair, but the defendant did have facial hair in his driver's license photo. This fact, however, much like the fact the defendant wore sunglasses during his attempted abductions, made the photographic array even less suggestive of the defendant, not more so. Moreover, employing the defendant's driver's license photograph was necessary, as it was the only generic photograph of the defendant readily available to the FBI. If the FBI had attempted to independently photograph the defendant and use that photo in the array, the defendant no doubt would complain that the features of that photograph (angle, lighting, size, *etc.*) when compared to the other photographs made the lineup unduly suggestive. *Cf. Johnson,* 745 F.3d at 230 (finding array not unduly suggestive where "[a]ll six men also were in the same clothing and photographed against the same background").

8

suggested that the defendant was the suspect. In fact, securing photographs that shared the same essential characteristics of the defendant's photograph, the agent ensured the photographs were not unduly suggestive.

Shown sequentially: Next, the photographs were shown sequentially, rather than as part of an array. Although this is not required, *see Johnson*, 745 F.3d at 229 (noting the Supreme Court's approach to identifications precludes a federal court from requiring sequential presentation), many courts have found that this is the "best approach." *Id.*; *Ford*, 683 F.3d at 765 ("The array would have been less suggestive had the manager been shown the photos one by one (a "sequential" array")"); *United States v. Brown*, 471 F.3d 802, 804 (7th Cir. 2006) (noting that a sequential display is a "better method"). Thus, by showing the photographs sequentially, the FBI followed the "best" practice to ensure their presentation was not suggestive.

Shown by agent not familiar with defendant: The photographic lineup was also presented by Special Agent Martin Jerge, who was not involved in the investigation and had no knowledge as to which of the six photographs was the defendant. This is also a best practice to avoid an unduly suggestive procedure. *See, e.g., Ford*, 683 F.3d at 765 (noting that assigning non-investigating officer to show photos to witness would have reduced the likelihood of it being unduly suggestive); *Brown*, 471 F.3d at 805 ("sequential display most reliable . . . when the officer conducting the process does not know which, if any, is a suspect"). While the defendant complains that an FBI agent who had worked on the case, Special Agent Katherine Tenaglia, was present during the identification

9

procedure, there is no evidence that she consciously or sub-consciously influenced the procedure.

<u>Witness admonished that suspect may not be in photographs</u>: Additionally, Agent Jerge admonished E.H. and K.K., separately, not to assume that a photo of the suspect would be in the photos shown to them. This is another "best practice" that is not required, but encouraged. *Johnson*, 745 F.3d at 228 ("Careful officers tell a witness that a photo spread does not necessarily include any suspect"); *Ford*, 683 F.3d at 764 (this is "a disclaimer that the cases recommend"); *United States v. Williams*, 522 F.3d 809, 811 (7th Cir. 2008).

In fact, the identification procedures used in this case were less suggestive than *Johnson*. In that case, as in this case, all six photographs shared the same characteristics as the defendant – a bald black man with a small amount of facial hair. 745 F.3d at 229. Nonetheless, they had different skin coloration and different degrees of facial hair *Id.* at 230. Moreover, the witness was shown all six photographs at the same time, rather than sequentially. *Id.* at 228. Additionally, there was no indication that the lineup was conducted by an officer unfamiliar with the defendant or that the witness was instructed that the suspect may not be in the lineup. Nonetheless, the Seventh Circuit found that "[n]othing about this array makes the photograph of Johnson (#3) stand out. The array was not suggestive, and it is therefore unnecessary to consider the remainder of the analysis . . ." *Id.* at 230.

Tellingly, the defendant does not cite one single case holding that the photographs or identification procedure used in this case was unduly suggestive.

10

Instead, in support of his argument that the lineup procedure was unduly suggestive, the defendant relies almost exclusively on an internal Department of Justice memorandum from a former Deputy Attorney General that the defendant attaches to his motion. This memorandum, however, only sets forward then-DAG Sally Yates's opinion as to "best practices."

Moreover, as the United States pointed out to the defendant during the discovery process, the internal memorandum specifically states,

> This document is not intended to create, does not create, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal. *Nothing in these procedures implies than an identification not done in accordance with them is unreliable or inadmissible in court.*

(R.99 Exhibit 2-3 n.1) (emphasis added). Nonetheless, the defendant improperly attaches this internal DOJ memorandum as an exhibit to his motion, claims it creates rights enforceable in this criminal proceeding, and argues that non-compliance with the "best practices" renders the identification unreliable and inadmissible. (R.99 at 10-16)

The DOJ's internal memoranda simply do not create any substantive or procedural rights for criminal defendants. *See United States v. Gillespie,* 974 F.2d 796, 801 (7th Cir. 1992) (DOJ's internal policy did not justify exercise of court's supervisory powers); *see also United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000) (capital case holding internal DOJ guidance does not create any rights for criminal defendant); *Nichols v. Reno*, 124 F.3d 1376, 1376 (10th Cir. 1997) (rejecting the plaintiff's premise that internal DOJ guidance provided him a protectable interest); *United States v. Myers*, 123 F.3d 350, 355–56 (6th Cir. 1997) (finding that a violation by the government of internal DOJ

11

guidance no basis for a remedy). Moreover, the failure to follow "best practices" does not render a lineup unduly suggestive. *See Johnson*, 745 F3d at 229 (noting the Supreme Court has precluded federal courts from "requiring" best practices).

The photographic array and identification procedures used in this case were much less suggestive than the array and procedures found not to be unduly suggestive in *Johnson*. The photographs shared the same general characteristics as the defendant's photograph; the witnesses were admonished the suspect may not be in the photographic array; and the photographs were shown sequentially by an agent unfamiliar with the defendant or the case. The defendant's argument that the procedure was unduly suggestive is without merit. No further analysis is required.

    **B.**    **Under these circumstances, suppression of the identification is not warranted.**

Of course, even if agents had used an identification procedure that was suggestive and unnecessary, suppression of the resulting identification is not required. *Perry,* 565 U.S. at 239. Suppression of an identification is "a Draconian sanction" that may result "in the guilty going free." *Manson v. Brathwaite*, 432 U.S. 98, 113 (1977) (noting that "a suggestive preindictment identification procedure does not in itself intrude upon a constitutionally protected interest"). The identification evidence should be submitted to the jury unless the witness's ability to make an accurate identification was "outweighed by the corrupting effect" of law enforcement suggestion. *Perry,* 565 U.S. at 239 (quoting *Brathwaite,* 43 U.S. at 114). "This is a demanding test for exclusion." *Ford*, 683 F.3d at 766.

For example, in *Brown* the Seventh Circuit held that an identification was not unreliable, even though the witnesses were shown a single mugshot of the defendant and concluded that it matched the person they had seen. 471 F.3d at 804. The Seventh Circuit affirmed the district court's belief that "the jury could evaluate any effect of the photograph." *Id.* at 804-05 (finding "the process did not create a pointless risk of misidentification").

Here, the danger of a misleading misidentification does not outweigh the witness's ability to make an accurate identification. First, the defendant's identification argument only applies to the testimony of E.H., because K.K. did not identify the photograph of the defendant. Second, the reliability of E.H.'s testimony was not outweighed by any alleged "corrupting effect" of the identification procedure, assuming the Court even finds such an effect.

Thus, the jury should be allowed to determine the reliability of this evidence, subject to the safeguards built into our system to question the reliability of identification evidence, such as: the Sixth Amendment right to confront the eyewitness; the right to cross-examine the witness;, the right of counsel to focus the jury's attention on the reliability of the identification during opening statement and closing argument; and the requirement that the United States prove the defendant's guilt beyond a reasonable doubt. *See Perry,* 132 S. Ct. at 728-29 (holding introduction of identification testimony without preliminary judicial assessment of reliability did not render trial unfair given safeguards generally applicable in criminal trials).

## CONCLUSION

The testimony of E.H. and K.K. is relevant, not unfairly prejudicial, and permissible under the Rules of Federal Evidence. Moreover, the identification procedure employed by the FBI was not unduly suggestive, nor did it corrupt the reliability of E.H.'s identification such that it should not be admitted into evidence.

WHEREFORE, the United States of America respectfully requests that this Court deny the Defendant's Motion to Bar and Suppress Identification Testimony and Evidence.

Respectfully submitted,

JOHN E. CHILDRESS
UNITED STATES ATTORNEY

s/ Eugene L. Miller
Eugene L. Miller, Bar No. IL 6209521
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone:  217/373-5875
Fax:  217-373-5891
eugene.miller@usdoj.gov

s/ James B. Nelson
James B. Nelson
Trial Attorney
Capital Case Section
United States Department of Justice
Washington, DC 20004
1331 F St. NW, Room 625
Washington, DC 20004
Phone: 202/598-2972
james.nelson@usdoj.gov

s/ Bryan D. Freres
Bryan D. Freres
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone:  217/373-5875
Fax:  217-373-5891
bryan.freres@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to all CM/ECF participants.

s/ Eugene L. Miller
Eugene L. Miller, Bar No. IL 6209521
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone: 217/373-5875
Fax: 217-373-5891
eugene.miller@usdoj.gov
