E-FILED
Tuesday, 16 October, 2018  09:14:39 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BRENDT A. CHRISTENSEN, )<br>)<br>Defendant. ) | Case No. 17-CR-20037 |

**UNITED STATES' OMNIBUS RESPONSE TO DEFENDANT'S MOTIONS TO
STRIKE NON-STATUTORY AGGRAVATORS**

NOW COMES the United States of America, by John E. Childress, United States

Attorney for the Central District of Illinois, Eugene L. Miller and Bryan D. Freres,

Assistant United States Attorneys, and James B. Nelson, Department of Justice Trial

Attorney, and respectfully files this Omnibus Response in Opposition to the Defendant's

Motions to Strike the Non-Statutory Aggravating Factors. (R.101,105,106,108,109,122) For

the reasons stated below, the United States respectfully submits that defendant's

motions should be denied without a hearing.

**RELEVANT FACTS**

On June 30, 2017, federal agents arrested the defendant Brendt A. Christensen

pursuant to a criminal complaint that charged him with kidnapping Yingying Zhang in

violation of Title 18, United States Code, Section 1201(a)(1). (R.1) A federal grand jury

later indicted the defendant on the kidnapping charge alleged in the complaint. (R.13)

On October 3, 2017, the grand jury returned a superseding indictment charging the

defendant with kidnapping resulting in death, and two counts of making false statements to FBI agents. (R.26) On January 19, 2018, the United States filed notice of its notice intent to seek the death penalty ("NOI"). (R.54)

Among its other provisions, the NOI alleges six non-statutory aggravating factors, as follows:

1. ***Victim impact evidence***. The defendant caused injury, harm, and loss to Y.Z. and loss to her family, friends, and co-workers. The injury, harm, and loss caused by the defendant is evidenced by Y.Z.'s personal characteristics and by the impact of her death upon her family, friends, and co-workers.

2. ***Future dangerousness of the defendant***. The defendant is likely to commit criminal acts of violence in the future that would constitute a continuing and serious threat to the lives and safety of others, as evidenced by, at least, his demonstrated lack of remorse for his acts of violence; his other serious acts of violence; his expressed desire to be known as a killer; and his claims of additional victims and expertise in avoiding detection.

3. ***Lack of remorse***. The defendant has demonstrated, by statements he made following the offense, that he lacked remorse for the kidnapping resulting in the death of Y.Z.

4. ***Other serious acts of violence***. The defendant has committed other serious acts of violence including, at least, the following: in or about 2013, the defendant choked and sexually assaulted M.D., in the Central District of Illinois.

5. ***Vulnerability of victim***. The victim, Y.Z., was particularly vulnerable due to her small stature and limited ability to communicate in English.

6. ***Obstruction***. The defendant attempted to obstruct the investigation of this offense by, at least, making false statements to investigators; destroying or concealing the victim's remains; and sanitizing the crime scene.

*Id.* On August 24, 2018, the defendant separately moved the Court to strike all six of the alleged non-statutory aggravating factors. (R.101,105,106,108,109,122) For the Court's

ease of organization, this omnibus response responds to those motions in the order in which they were filed, rather the order in which the non-statutory aggravating factors are alleged in the NOI.

## ARGUMENT

### I.    The Roles of, and Differences Between, Statutory and Non-Statutory Aggravating Factors.

The Supreme Court has held "it desirable for the jury to have as much information before it as possible when it makes the sentencing decision." *Gregg v. Georgia*, 428 U.S. 153, 204 (1976). In capital cases, aggravating factors narrow the class of death-eligible defendants and assist the jury in reaching an individualized sentencing decision based on the facts of the offense and the character and background of the offender. *See Zant v. Stephens*, 462 U.S. 862, 878 (1983). Despite any possible narrowing function, aggravators may duplicate one or more elements of an offense found at the guilt phase. *United States v. Higgs*, 353 F.3d 281, 315 (4th Cir. 2003) (approving an aggravator that the killings occurred during a kidnaping though one of substantive offense was kidnaping resulting in death) (citing *Lowenfield v. Phelps*, 484 U.S. 231, 246 (1988)); *United States v. Hall*, 152 F.3d 381, 416-17 (5th Cir. 1998) (upholding submission of § 3592(c)(1) statutory factor in prosecution for kidnapping resulting in death).

The Federal Death Penalty Act (18 U.S.C. § 3591-3599 ("FDPA")) authorizes statutory and non-statutory aggravating factors, which serve separate and distinct purposes. Statutory aggravating factors serve the dual purpose outlined in *Zant* – narrowing the class of defendants eligible for the death penalty, and individualizing the

sentence. *Zant*, 462 U.S. at 878-79. Non-statutory aggravating factors, on the other hand, serve only to individualize the sentence. *Id*. at 879.

Aggravating factors must be capable of surviving challenges for: (1) relevance; (2) vagueness; and (3) overbreadth.

### A.     Relevance of aggravating factors.

Aggravating factors must be "particularly relevant to the sentencing decision," not "merely relevant, in some generalized sense, to whether the defendant might be considered a bad person."*Gregg*, 428 U.S. at 192. "[A]ggravating circumstances must be construed to permit the sentencer to make a principled distinction between those who deserve the death penalty and those who do not." *Lewis v. Jeffers*, 497 U.S. 764, 776 (1990). Moreover, statutory aggravators must be relevant to the process of narrowing the class of offenders eligible for capital punishment. *Stephens*, 462 U.S. at 878. Non-statutory aggravating factors, on the other hand, need not be relevant to the narrowing function and are proper if relevant to the character of the defendant or the circumstances of the crime. *Barclay v. Florida*, 463 U.S. 939, 967 (1983).

### B.     Vagueness of aggravating factors.

The language of an aggravating factor must be specific enough to furnish adequate guidance to the fact-finder. *Arave v. Creech*, 507 U.S. 463, 470 (1993). This requirement is satisfied when the factor, as expressed, furnishes a commonsense core of meaning that a fact-finder can understand. *Jones v. United States*, 527 U.S. 373, 402 (1999); *Tuilaepa v. California*, 512 U.S. 967, 972-73 (1994); *see also United States v. Fields*, 516 F.3d

923, 944 (10th Cir. 2008) (holding a non-statutory aggravator must give the fact-finder sufficient guidance to determine its presence).

### C.     Overbreadth of aggravating factors.

Statutory aggravating factors must provide a principled basis for distinguishing between those who are particularly morally blameworthy, and thus deserve capital punishment, and those who do not. *See Arave*, 507 U.S. at 474; *see also Gregg*, 428 U.S. at 192. In short, a statutory aggravator cannot apply to every defendant convicted of murder: it must apply to only a subclass of offenders. *Tuilaepa*, 512 U.S. at 972. In contrast, non-statutory aggravating factors, which are concerned with the "individualized circumstances of the case," are not overbroad as long as they "direct the jury to the evidence specific to this case." *Fields*, 516 F.3d at 945 (quoting *Jones*, 527 U.S. at 400). A more liberal standard applies to non-statutory – as opposed to statutory – factors because they will "only be considered after a defendant has become death-eligible by the jury's finding of at least one statutory aggravating factor and serve only to individualize the jury's sentencing determination. . . ." *United States v. Montgomery*, 10 F. Supp. 3d 801, 832 (W.D. Tenn. 2014) (internal quotation and citation omitted).

## II.     "Obstruction Of Investigation" Is A Valid Non-Statutory Aggravator. (R.101)

The defendant contends that the Court should strike the non-statutory aggravating factor "Obstruction of Investigation" from the NOI. (R.101) This argument rests on the defendant's assertion that this aggravating factor is vague, overbroad, and irrelevant to the jury's decision. *Id.* at 5-10. These arguments rely on misapprehensions of the applicable law.

A. **The "obstruction" aggravator is not overbroad.**

i.      **The defendant's misunderstands his own authority.**

The defendant cites *United States v. Jacques*, No. 2:08-cr-117 at 58 (D. Vt. May 4, 2011) for the proposition that pre-arrest obstruction of justice should not be alleged as a non-statutory aggravator, because "[r]are, indeed, is the perpetrator of a murder who is indifferent to his chances of being apprehended and punished by authorities and who does not take steps to attempt to avoid that outcome." (R.101 at 5) This assertion misrepresents the holding of the order cited by the defendant and the procedural history of *Jacques*.

Though he cites to a page number, the defendant does not cite a particular document – only a date. Based on that date, it appears the defendant refers to *United States v. Jacques*, 2011 WL 1675417, * 22-23 (D. Vt. May 4, 2011). Although unmentioned by the defendant, the order that he cites was also considered by the Second Circuit. *United States v. Jacques*, 684 F.3d 324 (2d Cir. 2012).

Moreover, the cited portion of the *Jacques* order is inapposite. The *Jacques* court struck a non-statutory aggravating factor for "manipulation and deception of the justice system." The factor alleged that, for a time period between two and five years prior to the charged capital offense, Jacques "manipulated and deceived representatives of the State of Vermont's criminal justice system into believing that, in the wake of completing a term of imprisonment and Vermont's sex offender treatment program, he had been rehabilitated." *Jacques*, 2011 WL 1675417 at *22. Thus, *Jacques* does not hold that a murderer would naturally take steps to avoid being caught and, therefore, such conduct

cannot be alleged in an aggravator. Rather, the order concerns an aggravator premised on allegedly false statements made about unrelated facts. The scenario is patently distinguishable from the conduct alleged in the NOI. More to the point, however, the *Jacques* court denied the motion to strike the non-statutory aggravator, and held the aggravator could be argued to the jury. *Id*. at **27-28 (citing *Zant*, 462 U.S. at 878). Thus, *Jacques* supports the United States' reliance on obstruction.

Further compounding the defendant's error, the Second Circuit vacated, as overly restrictive, limitations imposed by the *Jacques* order. 684 F.3d at 326-32. Noting that "'*more* evidence, not less, should be admitted on the presence or absence of aggravating and mitigating factors' in the penalty phase of a capital case[,]" the Second Circuit permitted admission of prior, uncharged rape allegations. *Id.* at 327 (quoting *United States v. Fell*, 531 F.3d 197, 219 n. 12 (2d Cir. 2008); and *United States v. Fell*, 360 F.3d 135, 143 (2d Cir.2004)) (original emphasis). The Second Circuit also vacated the order excluding evidence of post-arrest obstruction of justice. *Id.* at 330-32.

In toto, the *Jacques* jurisprudence clearly supports the government's intention to offer evidence of obstruction.

### ii.     The obstruction aggravator is not overbroad.

The defendant asserts that the obstruction aggravator is overbroad, because it does not narrow the field of murders who are deserving of the death penalty. (R.101 at 5-6). This standard applies to statutory aggravators, not non-statutory aggravators. *Arave*, 507 U.S. at 474. As noted above, non-statutory aggravating factors pass overbreadth

muster if they "direct the jury to the evidence specific to this case." *Fields*, 516 F.3d at 945 (quoting *Jones*, 527 U.S. at 400).

As the United States has informed the defendant, its evidence in support of this aggravating factor combines his own descriptions of efforts to obstruct justice and videotaped interviews in which he actively obstructed justice. This material does what the law requires -- it directs the jury to specific evidence that shows the acts taken to obstruct the investigation of this crime. Assuming, *arguendo*, this Court were inclined to follow the minority view that non-statutory aggravators must serve some narrowing function, the obstruction factor would still survive muster because not every murderer takes affirmative steps to mislead the investigation and prosecution of the crime. *See United States v. Lentz*, 225 F. Supp. 2d 666, 670-71 (E.D. Va. 2002).

**B. The obstruction aggravator is not vague.**

The defendant next contends that this aggravator must be stricken because it is vague. (R.101 at 6-7). In making this argument, he fails to analyze the language of the aggravator itself.

As the Supreme Court has held, "a factor is not unconstitutional if it has some 'common-sense core of meaning . . . that criminal juries should be capable of understanding.'" *Tuilaepa*, 512 U.S. at 974 (quoting *Jurek v. Texas*, 428 U.S. 252, 279 (1976)). The Court recognized that it had "found only a few factors vague" and further observed that courts "rely upon the jury, in its sound judgment, to exercise wide discretion." *Id*. (citing *Arave*, 507 U.S. at 472–73 (question whether the defendant was a "cold-blooded, pitiless slayer" not unconstitutionally vague); *Walton v. Arizona*, 497 U.S.

8

639, 654 (1990) (question whether "perpetrator inflict[ed] mental anguish or physical abuse before the victim's death" with "[m]ental anguish includ[ing] a victim's uncertainty as to his ultimate fate" is not unconstitutionally vague); *Proffitt v. Florida*, 428 U.S. 242, 255–58 (question whether the crime was a "conscienceless or pitiless crime which [wa]s unnecessarily torturous to the victim" not unconstitutionally vague); *Jurek*, 428 U.S. at 274–76 (question "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society" is not unconstitutionally vague).

The obstruction aggravator is not vague. "Obstruction" has a commonsense meaning that is easily understood by jurors. Indeed, federal courts have consistently allowed juries to hear evidence of various forms of "obstruction" as a non-statutory aggravator. *See, e.g.*, *See also United States v. Bolden*, 545 F.3d 609, 624 (8th Cir. 2008); *Fell*, 531 F.3d at 234, 236; *Higgs*, 353 F.3d at 322-23; *United States v. Basciano*, 763 F. Supp. 2d 303, 354-55 (E.D.N.Y. 2011); *United States v. Edelin*, 134 F. Supp. 2d 59, 76-77 (D.D.C. 2001); *United States v. Cooper*, 91 F. Supp. 2d 90, 106-07 (D.D.C. 2000) (citing cases); *Jacques*, 2011 WL 1675417 at **27-28, *vacated in part* 684 F.3d at 324. This Court should do the same.

### C.  The obstruction aggravator is relevant to the jury's determination.

Finally, the defendant contends the obstruction aggravator is irrelevant to the jury's determination. (R.101 at 7-8) The defendant asserts that the "alleged conduct is insufficient to establish the crime of obstruction" and that "the alleged conduct is

insufficient to justify an enhancement of a non-capital sentence under the U.S. Sentencing Guidelines." *Id*. Neither assertion survives scrutiny.

As the Supreme Court has held, a non-statutory aggravating factor is proper if it is relevant to the character of the defendant or the circumstances of the crime. *Barclay*, 463 U.S. at 967. The defendant's affirmative acts to obstruct the investigation are obviously relevant to his character and the circumstances of the crime. As such, they satisfy the Supreme Court's standard.

Nevertheless, the defendant objects to the "obstruction" aggravator because there was no "pending proceeding" when he engaged in his obstructive acts, a fact that would preclude conviction for obstruction of justice. (R.101 at 7-8) (citing *United States v. Friend*, 92 F. Supp. 2d 534, 544 (E.D. Va. 2000)). This assertion is wrong as a matter of law. The crime of Obstruction of Justice is not limited to the offense prescribed in 18 U.S.C. § 1503. Rather, the entirety of Title 18, Chapter 73, of the United States Code relates to "Obstruction of Justice." 18 U.S.C. §§ 1501-21. Thus, "obstruction of justice" includes the crime of killing a person to prevent him or her from reporting a federal crime to a law enforcement officer. *Id*. at § 1512(a)(1)(C). "Obstruction of justice" also includes the crime of destroying, mutilating, or concealing an object (such as a victim's body) "with the intent to impair the object's integrity or availability for use in an official proceeding." *Id*. at § 1512(c)(1). To violate § 1512, under its own terms, "*an official proceeding need not be pending . . . at the time of the offense*." *Id*. at § 1512(f)(1) (emphasis added).

Thus, the defendant could, indeed, have been charged with obstruction of justice had the United States exercised its discretion to do so. More importantly, courts have

specifically upheld the relevance of obstruction of justice non-statutory aggravators. *See*, *e.g.*, *Bolden*, 545 F.3d at 624 (allowing the aggravator based on lies to police, threats to co-conspirators, destruction of evidence, and murder of a witness); *Fell*, 531 F.3d at 234, 236 (allowing the aggravator based on the murder of a carjacking victim); *Higgs*, 353 F.3d at 322-23 (allowing the aggravator based on the disposal of the murder weapon, the destruction of evidence, and the subornation of false statements by a witness).

The "obstruction" aggravator is directly relevant to the crimes charged and is neither vague nor overbroad. As such, the defendant's motion to strike this non-statutory aggravating factor should be denied.

## III.     "Vulnerability of the Victim" is a Valid Non-Statutory Aggravator. (R.105)

The NOI alleges the vulnerability of the victim, Ms. Zhang, as a non-statutory aggravator.[1] Specifically, the NOI alleges that Ms. Zhang was "particularly vulnerable due to her small stature and limited ability to communicate in English."(R.54) In a letter to defense counsel dated May 18, 2018, the United States supplemented that notice by informing the defendant that it would prove this aggravating factor by introducing the following evidence:

A.     Testimony from family members of Yingying Zhang;

B.     Testimony of friends of Yingying Zhang;

C.     Evidence of other crimes or acts which demonstrate the defendant's *modus operandi* regarding vulnerable victims;

---

[1] The FDPA prescribes a vulnerable victim statutory aggravating factor premised on "old age, youth, or infirmity." 18 U.S.C. § 3592(c)(11). Here, the United States alleged a non-statutory "vulnerable victim" aggravator because Yingying Zhang's vulnerability did not fall within the ambit of the statute.

    D.    Expert testimony regarding the Chinese culture of complying with authority figures; and

    E.    The defendant's admissions regarding Yingying Zhang's vulnerability.

The defendant asks the Court to strike the factor, arguing it is vague, overbroad, and lacks a sufficient nexus to the crime charged. (R.105 at 2-10) These arguments all fail, because they rest on inapplicable legal standards.

### A.    The "vulnerability" aggravator is not overbroad.

Citing *Arave v. Creech*, the defendant argues the vulnerable victim aggravator is overbroad. *Id.* at 3-4. As noted above, *Arave* applies only to statutory aggravators. *Arave*, 507 U.S. at 474. The proper standard for non-statutory aggravating factors is whether or not they "direct the jury to the evidence specific to this case." *Fields*, 516 F.3d at 945 (quoting *Jones*, 527 U.S. at 400). The "vulnerability" factor, and the evidence that the United States will introduce in support of it, will show that the defendant employed a ruse to lure vulnerable victims into his car, and that Ms. Zhang was particularly susceptible to his subterfuge. Assuming, *arguendo*, the aggravator had to serve some narrowing function, the vulnerable victim factor would survive because not every murder involves some exploitation of a victim's weaknesses. *See Lentz*, 225 F. Supp. 2d at 670-71.

### B.    The "vulnerability" aggravator is not vague.

The defendant next contends that the "vulnerability" aggravator must be stricken because the terms "small stature" and "limited ability to communicate in English" are unconstitutionally vague. (R.105 at 4-5) The defendant is incorrect.

As noted, aggravating factors are sufficiently specific if they furnish a common-sense core of meaning that a juror can understand and be guided by. *Jones*, 527 U.S. at 402. Terms such as "vulnerability," "small stature," and "limited ability to communicate in English" have common-sense meanings that the jury will be able apply in their deliberations. As such, the factor is not vague.

    **C.**    **The "vulnerability" component is directly related to the crime.**

Finally, the defendant argues that the vulnerability aggravator should be stricken because it lacks a factual nexus to the crime. In the alternative, he contends the United States cannot prove the aggravator. (R.105 at 5-10) This argument, again, overlooks the applicable legal standard.

A non-statutory aggravating factor is proper if it is relevant to the character of the defendant or the circumstances of the crime. *Barclay*, 463 U.S. at 967. As noted, the United States will prove the defendant employed a specific method to lure vulnerable victims into his car, and that Ms. Zhang was particularly susceptible to his methods. This theory will clearly satisfy the standard set forth in *Barclay*.

The defendant may, of course, argue that Ms. Zhang was not a vulnerable victim. The potential for competing arguments does not invalidate a sentencing factor in advance of trial. *Tuilaepa*, 512 U.S. at 976-77. Indeed, "the Supreme Court has . . . made clear that in order to achieve . . . heightened reliability, *more* evidence, not less, should be admitted on the presence or absence of aggravating and mitigating factors." *Fell*, 360 F.3d at 143 (original emphasis); *see also United States v. Lee*, 374 F.3d 637, 648 (8th Cir. 2004) (noting that "the admission of more rather than less evidence during the penalty

13

phase increases reliability by providing full and complete information about the defendant and allowing for an individualized inquiry into the appropriate sentence for the offense").

The vulnerability aggravator is directly related to the crimes charged and is neither vague nor overbroad. As such, the defendant's motion to strike this non-statutory aggravator should be denied without a hearing.

## IV.    "Victim Impact Evidence" Is A Valid Non-Statutory Aggravator. (R.106)

The defendant contends the Court should strike the non-statutory victim impact aggravating factor. (R.106) The defendant's argument rests on his assertion that the Court should overrule Supreme Court precedent which, he claims, was wrongly decided. (R.106 at 2.) This, the Court may not do.

The FDPA describes victim impact evidence as "factors concerning the effect of the offense on the victim and the victim's family." 18 U.S.C. § 3593(a). The Act permits evidence in the form of testimony, a victim impact statement, "and any other relevant information." *Id.*; *see also United States v. Lawrence*, 735 F.3d 385, 405 (6th Cir. 2013) (allowing eight witnesses – including a police officer who served with the victim – to testify as to their relationship with the victim and the effect of his death); *United States v. Barnette*, 211 F.3d 803, 818 (4th Cir. 2000) (allowing seven victim impact witnesses).

"The Eighth Amendment . . . permits capital sentencing juries to consider evidence relating to the victim's personal characteristics and the emotional impact of the murder on the victim's family in deciding whether an eligible defendant should receive a death sentence." *Jones*, 527 U.S. at 395. "'[T]he State has a legitimate interest in

14

counteracting the mitigating evidence . . .  by reminding the sentencer that just as the murderer should be considered as an individual, so too the victim is an individual whose death represents a unique loss to society and in particular to his family.'" *Payne v. Tennessee*, 501 U.S. 808, 825 (1991). In order "to assess meaningfully the defendant's moral culpability and blameworthiness," the jury should be permitted to consider the specific harm caused by the crime. *Id*.

In this case, the NOI alleges the non-statutory aggravating factor of Victim Impact as follows:

> The defendant caused injury, harm, and loss to Y.Z. and loss to her family, friends, and co-workers. The injury, harm, and loss caused by the defendant is evidenced by Y.Z.'s personal characteristics and by the impact of her death upon her family, friends, and co-workers.

(R.54 at 3). In a letter to defense counsel dated May 18, 2018, the United States supplemented that notice by informing the defendant that it would prove this aggravating factor by introducing the following evidence:

A.   Photographs, video, journals, essays, or other documentation detailing Y.Z.'s life in China, her matriculation to the University of Illinois, and her plans for the future;

B.   Testimony from family members and friends of Y.Z.;[2] and

C.   Christensen's admissions as to victim impact.

Recognizing that victim impact evidence may violate due process if it is "so unduly prejudicial that it renders the trial fundamentally unfair," no court has ever

---

[2] Victim impact evidence is not limited to relatives. *Lawrence*, 735 F.3d at 405.

reversed a conviction on those grounds. *Barnette*, 211 F.3d at 818 (quoting *Payne*, 501 U.S. at 825). Indeed, the Supreme Court refused to grant certiorari to consider an alleged due process violation based on a "20–minute video consisting of a montage of still photographs and video footage . . . narrated by the victim's mother with soft music playing in the background . . . [which] ended with a view of her grave marker and footage of people riding horseback in Alberta, Canada—the 'kind of heaven' in which her mother said she belonged." *Kelly v. California*, 555 U.S. 1020, 1020 (2008).

The proof for this factor lies well-within the heartland of victim impact evidence approved by the Supreme Court. As such, there is no basis for striking the "Victim Impact" aggravator or the evidence the government has proffered in support of it.

## V. "Other Serious Acts Of Violence" Is A Valid Non-Statutory Aggravator. (R.108)

The defendant contends that the Court should strike the non-statutory aggravating factor of "Other Serious Acts of Violence" from the NOI.[3] (R.108) The defendant's arguments are premised on an inapplicable standard and without merit.

### A. The "heightened reliability" standard does not apply to individual factors.

The Seventh Circuit has acknowledged the repeated judicial rejections of "[t]he notion that consideration of unadjudicated conduct is inherently unconstitutional." *United States v. Corley*, 519 F.3d 716, 723 (7th Cir. 2008) (citing *Nichols v. United States*, 511 U.S. 738, 747 (1994) (noting the Constitution permits evidence of a defendant's past

_____

[3] This Response is limited to the defendant's assault of M.D., which is the "other serious act of violence" alleged in the NOI.

criminal behavior even if no conviction resulted)); *see also Cummings v. Polk*, 475 F.3d 230, 238 (4th Cir. 2007) (noting authority that evidence of unadjudicated crimes may be utilized in a capital sentencing); *Brown v. Dretke*, 419 F.3d 365, 376-77 (5th Cir. 2005) (holding "admission of unadjudicated offenses in the sentencing phase . . . does not violate the eighth and fourteenth amendments"); *Lee*, 274 F.3d at 494 (holding "the admission of evidence of unadjudicated prior offenses at a capital sentencing hearing is constitutionally permissible and not inherently prejudicial"); *Pitsonbarger v. Gramley*, 141 F.3d 728, 735-36 (7th Cir. 1998) (holding the due process clause does not require a jury to find that uncharged criminal conduct occurred beyond a reasonable doubt); *Cooper*, 91 F. Supp. 2d at 106-08 (noting numerous federal courts and most states have permitted the use of unadjudicated criminal activity). Thus, the admissibility of unadjudicated conduct evidence hinges on "a number of factors, including the reliability of the evidence, the prejudicial and probative impact of the evidence, and the burden of proof both for determining reliability and for a jury to determine whether the conduct may be considered." *Corley*, 519 F.3d at 724.

The defendant asserts a single basis for excluding evidence of his assault of M.D. – it supposedly fails to meet the "heightened reliability standard."(R.108 at 2-9) The defendant suggests that the terms "heightened need for reliability" and "due process" prohibit the United States from presenting contested evidence during the penalty phase. (R.108 at 2-3) The defendant misunderstands this standard.

The question before the Court is whether this evidence is reliable enough to be presented to a jury so that it can decide whether the defendant committed the alleged

act, and if so, whether it supports imposition of a death sentence. As courts have stated,

"the heightened reliability standard in the Supreme Court's death penalty jurisprudence

is actually a reminder that the decision to sentence a person to death must be

individualized. It is, in that sense, a call for heightened reliability in ascertaining that this

individual should be put to death." *United States v. Frank*, 8 F. Supp. 2d 253, 280

(S.D.N.Y. 1998) (citing *United States v. Beckford,* 964 F. Supp. 993, 997–1000 (E.D. Va.

1997); *Davis,* 912 F. Supp. at 948–49). This individualized determination depends, in turn,

on the jury receiving "*more* evidence, not less." *Fell*, 360 F.3d at 143 (citing *Gregg*, 428 U.S.

at 203-04) (original emphasis). "[T]he admission of more rather than less evidence during

the penalty phase increases reliability by providing full and complete information about

the defendant and allowing for an individualized inquiry into the appropriate sentence

for the offense." *Lee*, 374 F.3d at 648; *Montgomery*, 10 F. Supp. 3d at 813-14; *Basciano*, 763

F. Supp. 2d at 358 n. 41. Moreover, individualized sentencing determination "must

permit consideration of the 'character and record of the individual offender and the

circumstances of the particular offense as a constitutionally indispensable part of the

process of inflicting the penalty of death . . . ." *Lockett v. Ohio*, 438 U.S. 586, 601 (1978).

The fact that the defendant previously committed a sexual assault similar to the

one he inflicted upon Ms. Zhang informs the question of his "character and record." As

such, the "heightened reliability" appears to demand presentation of that evidence to the

jury.

### B. The defendant may challenge the reliability of the evidence in cross-examination.

The defendant describes, at length, his anticipated cross-examination of M.D.'s testimony. *Id.* at 4-9. He may confront her testimony at trial, but the fact that he denies the assault does not foreclose the government's proof of the allegation. *Tuilaepa*, 512 U.S. at 976 (noting that the potential for "[c]ompeting arguments by adversary parties . . . provid[es] guidance . . . to jurors," but does not dictate that a sentencing factor should be deemed invalid.").

In the estimation of the United States, this Court should not permit the defendant to attack M.D.'s allegation by manufacturing innuendos regarding her past sexual behavior or the fact that she was previously assaulted. *See* 18 U.S.C. § 3593(c) (permitting exclusion of evidence "if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury").[4] Such scurrilous and immaterial allegations would be no more probative or less prejudicial during a penalty phase trial than Congress has adjudged them for purposes of any other proceeding under the Federal Rule of Evidence 412.

In accordance with Rule 412, this Court should, likewise, deny any sort of hearing to judge the credibility of the witness. Such a hearing could only serve to provide the

---

[4] The local press has reported on the significant events and pleadings in this case. (R.131, 132) As such, it was entirely foreseeable that the defendant's scurrilous attack would be restated in the press, which it was. Paul Wood, "*More motions: defense also seeks to bar sex-assault claim*," *The News Gazette*, (August 26, 2018), available at *http://www.news-gazette.com/news/local/2018-08-26/more-motions-defense-also-seeks-bar-sex-assault-claim.html* (last visited October 9, 2018). That the defendant chose not to file his motion under seal suggests that he intended it to be reported in the press – thus contributing to the very situation he complains about in his motions to transfer venue. (R.131,132)

defendant with an opportunity to observe M.D.'s testimony, and obtain a "dry run" at cross-examining her. The Court has already ruled that the defendant is not entitled to a preview of the United States' evidence. (R.91 at 21) He certainly should not have the opportunity to preview evidence at the expense of stigmatizing a government witness.

The defendant's motion to strike this aggravator rests on a misapplication of the "heightened reliability" standard and an effort to undermine the reliability of a witness with threats of patently prejudicial and embarrassing information, rather than evidence that might speak to her credibility. Indeed, this motion ventures into territory that could garner sensational publicity or taint the jury pool. Lacking any legal merit, the motion should be denied without a hearing.

## VI.    "Lack of Remorse" is a Valid Non-Statutory Aggravator (R.109)

The defendant contends that the Court should strike the non-statutory aggravating factor of "Lack of Remorse" from the NOI. (R.109) The defendant's only stated objection to this aggravator is the concern that the United States will base its argument on his silence or his "failure to apologize, or to show regret, or to acknowledge blameworthiness." *Id*. at 3, 7. The defendant's fears are unwarranted. The United States' evidence in support of this factor will rest on the defendant's affirmative statement and actions. As such, the defendant's motion should be denied as speculative and moot.

## VII.   "Future Dangerousness" is a Valid Non-Statutory Aggravator. (R.122)

Finally, the defendant contends that the Court should strike the future dangerousness non-statutory aggravating factor. (R.122) In so doing, he invites this

Court to ignore binding Supreme Court precedent and to require the United States to disclose its evidence prior to trial. As such, it should be denied without a hearing.

### A.    The "future dangerousness" aggravator does not violate the Eighth Amendment.

The defendant contends the future dangerousness aggravator violates the Eighth Amendment. Ironically, while making that claim, he acknowledges that numerous courts – including the Supreme Court – have held that the factor is constitutional. (R.22 at 3-5) (citing *Barefoot v. Estelle*, 463 U.S. 883, 898 (1983); *Jurek*, 428 U.S. at 269, 274-75); *see also California v. Ramos*, 463 U.S. 992, 1002-03 (1983) (holding the penalty phase jury could properly consider whether the defendant's probable future behavior made it desirable for him to have the possibility of returning to society). Numerous other cases have also held that future dangerousness is an appropriate aggravator. *See, e.g., Basciano*, 763 F. Supp. 2d at 352 ("'lower courts have uniformly upheld future dangerousness as a non-statutory aggravating factor in capital cases under the FDPA'") (citing *United States v. Bin Laden*, 126 F. Supp.2d 290, 303-04 (S.D.N.Y. 2001); *United States v. Llera Plaza*, 179 F. Supp. 2d 464, 473-74 (E.D. Pa 2001); *United States v. Hammer,* 2011 WL 6027771 at *4-5 (M.D. Pa. 2011)). The "future dangerousness" aggravator is relevant, even if the defendant will spend the rest of his life in prison, because he "is still a risk to prison officials and to other inmates, and even though a life sentence without the possibility of parole greatly reduces the future danger to society . . . there is still a chance that the defendant might escape from prison or receive a pardon or commutation." *United States v. Allen*, 247 F.3d 741, 788 (8th Cir. 2001).

Given the inarguable constitutionality of the future dangerousness aggravator, the defendant's contention devolves into an assertion that the United States cannot prove this factor. He remains free to dispute the state of the evidence at trial; the potential for competing arguments by adversarial parties provides guidance to jurors, but does not require the invalidation of a sentencing factor. *Tuilaepa*, 512 U.S. at 976-77.

Apart from thisn complaints about the factual premise of the government's allegation, the defendant offers distinguishable cases and articles written by death penalty abolitionists. Neither species of material provides a basis for this Court to deviate from the cited authority of the Supreme Court precedent or the Courts of Appeals. In short, the defendant has failed to cite any legal basis upon which this Court could or should strike the future dangerousness aggravator as a matter of law.

**B.    The "future dangerousness" aggravator is not vague.**

The defendant next contends the "future dangerousness" aggravator is so vague that it violates the Fifth Amendment. (R.122 at 11-15) In support of his argument, he cites *Johnson v. United States*, a case that, does not: (a) apply the FDPA; (b) involve the death penalty; (c) discuss non- statutory aggravators; (d) mention future dangerousness; (e) interpret any other Supreme Court case concerning future dangerousness; or (f) overrule any death penalty jurisprudence from any jurisdiction. 135 S. Ct. 2551 (2015); (R.122 at 11-15) *Johnson* merely makes mention of a sentence fragment that also appears in the United States' future dangerousness allegation. Because *Johnson* concerns the vagueness of statutorily-defined offenses, rather than non-statutory sentencing allegations, the case is of no moment.

Under the applicable legal standard, the "future dangerousness" aggravator is not vague. The terms "future" and "dangerousness" have commonsense meanings that jurors can understand and be guided by. *Jones*, 527 U.S. at 402; *see also Fields*, 516 F.3d at 944. Putting aside the exquisite rarity with which the Supreme Court has found aggravators unconstitutionally vague, it has specifically approved the future dangerousness factor. <u>Tuilaepa</u>, 512 U.S. at 974; *Jurek*, 428 U.S. at 275-76.

The defendant also revives his assertion of the "heightened standard of reliability" in an effort to demonstrate the unconstitutionality of the future dangerousness aggravator, 42 years after *Jurek*. (R.122 at 15) Once again, the defendant misapplies this standard. Contrary to the defendant's repeated, false assertions, "heightened reliability" references the "call for heightened reliability in ascertaining that this individual should be put to death." *Frank*, 8 F. Supp. 2d at 280 (citing *Beckford,* 964 F. Supp. at 997–1000; *Davis,* 912 F. Supp. at 948–49). As noted above, this determination depends, itself, on the jury being presented with "*more* evidence, not less." *Fell*, 360 F.3d at 143 (citing *Gregg*, 428 U.S. at 203-04) (original emphasis). "[T]he admission of more rather than less evidence during the penalty phase increases reliability by providing full and complete information about the defendant and allowing for an individualized inquiry into the appropriate sentence for the offense" *Lee*, 374 F.3d at 648 (noting that); *Montgomery*, 10 F. Supp. 3d at 813-14; *Basciano*, 763 F. Supp. 2d at 358 n. 41.

Accordingly, the heightened reliability standard appears to support the continued vitality of the future dangerousness allegation in this, and other, cases.

### C. The "future dangerousness" aggravator should not be excluded under 18 U.S.C. § 3593(c).

Finally, the defendant contends the future dangerousness aggravator should be excluded because the probative value of the supporting evidence is "'outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.'" (R.122 at 15) (quoting. § 3593(c)). The defendant has failed to provide any basis to conclude that he would suffer unfair prejudice if the jury heard evidence of his own words and deeds indicating a proclivity for violence. *See United States v. Lujan*, 603 F.3d 850, 858 (10th Cir. 2010) (noting "Section 3593(c) permits balancing of probative value against 'unfair prejudice,' not all prejudice").

Moreover, a close reading of the defendant's motion indicates that he is engaging in another fishing expedition to discover the United States' trial strategy. The motion is replete with suggestions that the United States' "enigmatic" notices and responses to inquiries make it impossible for him to know how it will prove the aggravating factors. (R.122 at 17-22) The Court has already ruled that such fishing expeditions are improper, and the United States has no obligation to preview its strategy to the defendant. (R.91 at 8, 21) The defendant is not entitled to revive his fishing expedition under the guise of an "evidentiary hearing."

<u>CONCLUSION</u>

Based on the foregoing reasoning and authority, this Court should find that the non-statutory aggravators alleged in the NOI are not vague, overbroad, or irrelevant. As

such it should deny and dismiss without evidentiary development the motions to strike the non-statutory aggravators (R.101,105,106,108,109,122).

WHEREFORE, the United States of America respectfully requests that this Court deny each of the defendant's Motions to Strike the Non-Statutory Aggravating Factors.

Respectfully submitted,

JOHN E. CHILDRESS
UNITED STATES ATTORNEY

s/ Eugene L. Miller
Eugene L. Miller, Bar No. IL 6209521
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone:  217-373-5875
Fax:  217-373-5891
eugene.miller@usdoj.gov

s/ Bryan D. Freres
Bryan D. Freres
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone:  217-373-5875
Fax:  217-373-5891
bryan.freres@usdoj.gov

s/ James B. Nelson
James B. Nelson
Trial Attorney
Capital Case Section
United States Department of Justice
Washington, DC 20004
1331 F St. NW, Room 625
Washington, DC 20004
Phone: 202/598-2972
james.nelson@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2018, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system, which will send notification of the

filing to all CM/ECF participants.

s/ James B. Nelson
James B. Nelson
Trial Attorney
Capital Case Section
United States Department of Justice
Washington, DC 20004
1331 F St. NW, Room 625
Washington, DC 20004
Phone: 202/598-2972
james.nelson@usdoj.gov