UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Crim. No. 17-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | <u>Hearing Requested</u> |
| | ) | |
| Defendant. | ) | |

<u>MOTION FOR ORDER ESTABLISHING PROCEDURES PURSUANT
TO FED. R. CRIM. P. 12.2(c) AND MEMORANDUM OF LAW IN SUPPORT</u>

NOW COMES the Defendant, BRENDT A. CHRISTENSEN, by and through his attorneys, and for his Motion for Order Establishing Procedures Pursuant to Fed. R. Crim. P. 12.2(c), states as follows:

## I.    Introduction

Pursuant to the Court's previous Order of October 11, 2018, Mr. Christensen has today filed his Notice of Intent to Introduce Expert Evidence Relating to a Mental Disease or Defect on the Issue of Punishment (R. 161). At the most recent status conference, the government stated its intention to move the Court to order Mr. Christensen to be examined by its own expert. Mr. Christensen therefore moves the Court to set in place procedures for such an evaluation that provide the government with a reasonable opportunity to obtain rebuttal evidence while ensuring that Mr.

Christensen's rights under the Fifth and Sixth Amendments to the United States Constitution are fully protected.

## II.    Requested Procedures

Mr. Christensen respectfully requests that the Court order as follows:

1.    Now that Mr. Christensen has filed his Notice of Intent to Introduce Expert Evidence Relating to Mental Condition under Fed. R. Crim. P. 12.2(b)(2), (R. 161), the government may move the Court for an order permitting a rebuttal examination of Mr. Christensen for the sole purpose of confirming or rebutting the expert evidence of mental condition outlined in the Notice.

2.    If the Court grants the government's request and orders a rebuttal examination, the government shall file a notice with the Court advising Mr. Christensen of the date and time that the examination will occur; the identity of the expert who will perform the examination; the expert's qualifications; the referral question that the expert is directed to answer; and the names of any tests that the expert proposes to administer. This notice is to be filed at least two weeks prior to the date of the proposed examination.

3.    Mr. Christensen may file objections to the government's proposed expert and/or the scope of the rebuttal examination and any proposed tests within one week of the filing of the government's notice as described in paragraph 2, above. No rebuttal examination or testing shall be conducted until the Court has held a hearing and made a final decision on all disputed issues.

4.	The scope of the government's evaluation shall be limited to rebutting or confirming that Mr. Christensen suffers from a Schizophrenia Spectrum or Other Psychotic Disorder as defined in the American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, pp. 87-122 (5th ed. 2013), and that he exhibits neurocognitive deficits consistent with a psychotic disorder. Under no circumstances shall the government's rebuttal expert question or otherwise assess Mr. Christensen on any of the following topics:

(a)	The facts and circumstances of the kidnapping and/or death of Ms. Zhang;

(b)	Mr. Christensen's feelings of remorse or lack thereof for the kidnapping and/or death of Ms. Zhang;

(c)	The likelihood that Mr. Christensen will be a danger to others in the future;

(d)	The facts and circumstances of any of the government's alleged unadjudicated acts of violence;

(e)	Any other questions or topics designed to induce statements by Mr. Christensen that may be used to support the government's alleged statutory and non-statutory aggravating factors;

5.	One attorney member of Mr. Christensen's defense team shall be permitted to be present during his examination by the government's rebuttal expert. No video or audio recording of the examination may be made.

6.	The government's rebuttal expert must prepare a report that addresses the components of his/her evaluation and the results of the evaluation, including diagnostic impressions and professional opinions.

7.      The government's rebuttal expert must file his/her results, in the form of the report described in paragraph 4, above, with the Court, under seal.

8.      The government's rebuttal expert's results and report will be released to neither the government nor the defense unless and until the jury reaches a verdict of guilty on a capital charge at the conclusion of the culpability phase of the trial and Mr. Christensen thereafter confirms his continuing intent to offer expert evidence of his mental condition during the penalty phase.

9.      The government's rebuttal expert shall not discuss his/her examination, the results thereof or any information derived therefrom with any person unless and until the expert's report has been unsealed and released to both Mr. Christensen and the government.

10.     Before conducting his/her examination, the government's rebuttal expert shall sign a written confirmation demonstrating that he/she understands the obligation not to discuss the examination, the results thereof or any information derived therefrom with any person unless and until the expert's report has been unsealed and released to both Mr. Christensen and the government.

11.     If the jury reaches a verdict of guilty on a capital charge at the conclusion of the culpability phase of the trial, Mr. Christensen shall have 24 hours in which to file a pleading with the Court either confirming or disavowing his intent to offer expert evidence of his mental condition during the penalty phase. If Mr. Christensen disavows

his continuing intent to offer such expert evidence, the report of the government's rebuttal expert shall remain sealed and will not be disclosed to either party.

12.    If, after the jury reaches a verdict of guilty on a capital charge, Mr. Christensen confirms his continuing intent to offer such expert evidence, the report of the government's rebuttal expert shall be immediately unsealed and released only to defense counsel. The defense shall then have 24 hours in which to withdraw its notice of intent to offer expert evidence of his mental condition. If the defense does not withdraw its notice during that 24-hour period, at the conclusion of that period the report of the government's rebuttal expert shall be immediately released to the government. Additionally, the defense shall immediately release to the government the reports from all experts whose testimony regarding Mr. Christensen's mental condition the defense intends to present during the penalty phase.

13.    At any time following the disclosures set forth in paragraph 10, above, and before the presentation of his expert testimony regarding mental condition, Mr. Christensen may withdraw his notice of intent to present such expert testimony. In that event, neither the fact of the notice nor the results or reports of any mental examination, nor any facts contained therein, shall be admissible against Mr. Christensen.

## MEMORANDUM OF LAW IN SUPPORT OF REQUESTED PROCEDURES

### III. COMPELLING A DEFENDANT TO UNDERGO A MENTAL HEATH EVALUATION BY A GOVERNMENT EXPERT IMPLICATES IMPORTANT CONSTITUTIONAL GUARANTEES.

A court order directing Mr. Christensen to submit to a mental health examination by an expert retained by the government implicates his constitutional rights under both the Fifth and Sixth Amendments. "The Fifth Amendment . . . commands that no person shall be compelled in any criminal case to be a witness against himself." *Estelle v. Smith*, 451 U.S. 454, 462 (1981) (internal alterations omitted). The availability of the Fifth Amendment privilege depends not on the setting in which the statements are compelled, but on the nature of those statements and the consequences that may flow from making them. *Id.* In *Smith*, as will likely be the case here, the statements the defendant made during an examination by the prosecution's expert were used against him in the penalty phase of his capital trial. *Id.* The potential consequence of what he told the prosecution's expert was thus "the ultimate penalty of death." *Id.* The Fifth Amendment thus applies with equal force to a compelled mental health evaluation as to forced testimony by the defendant at trial, *id.* at 463, and custodial interrogation by police, *id.* at 467.

To be sure, a defendant can be deemed to have at least partially waived his Fifth Amendment privilege under some circumstances. One such circumstance is when he asserts and exercises his right to present expert mental health evidence on his own behalf. *Kansas v. Cheever*, 134 S. Ct. 596, 601 (2013); *Buchanan v. Kentucky*, 483 U.S. 402,

423-24 (1987). In such a case, the Fifth Amendment is not violated by the use of a compelled government examination for "the limited purpose of rebutting the defendant's evidence." *Cheever*, 134 S. Ct. at 603. *See also Buchanan*, 483 U.S. at 424 (finding no Fifth Amendment violation where excerpts of report were used for "limited rebuttal purpose").

The scope of the defendant's waiver, and therefore what constitutes appropriately limited rebuttal, is determined in the same way that courts determine the scope of the waiver when a defendant elects to take the stand at trial and testify on his own behalf. *Powell v. Texas*, 492 U.S. 680, 684 (1989) (per curiam) (holding that "defendant's use of psychiatric testimony might constitute a waiver of the Fifth Amendment privilege, just as the privilege would be waived if the defendant himself took the stand"); *Cheever*, 134 S. Ct. at 601 (allowing government to present limited rebuttal testimony "harmonizes with the principle that when a defendant chooses to testify in a criminal case, the Fifth Amendment does not allow him to refuse to answer related questions on cross- examination").

Accordingly, a defendant waives the privilege "as to matters he himself has put in dispute." *Brown v. United States*, 356 U.S. 148, 156 (1958). The defendant "determines the area of disclosure and therefore of inquiry." *Id.* at 155. The "breadth of his waiver is determined by the scope of the relevant cross-examination." *Id.* at 154-55. In the case of psychiatric testimony, a defendant waives his Fifth Amendment privilege with respect to those issues that his own experts' testimony put in dispute. The Constitution then

permits the government to use its own expert witness to the extent necessary to rebut those issues.

A compelled examination by a government expert must also separately comport with the strictures imposed by the Sixth Amendment right to the assistance of counsel. It is well-established that a criminal defendant has "a Sixth Amendment right to the assistance of counsel before submitting to [a] pretrial psychiatric interview." *Smith*, 451 U.S. at 469. He is entitled to counsel's assistance "in making the significant decision of whether to submit to the examination and to what end the psychiatrist's findings could be employed." *Id.* at 471. The Supreme Court recognizes that, in a capital case, this decision "is literally a life or death matter that is 'difficult even for an attorney,'" and that a defendant may therefore not be forced to resolve such an important issue without the advice of counsel. *Id.* (internal quotations omitted). *See also Powell*, 287 U.S. at 681 (quoting *Satterwhite v. Texas*, 486 U.S. 249, 254 (1988)).

The right to the assistance of counsel in this context means that a defendant has the right to discuss the examination and its scope with his lawyers prior to deciding whether to submit to the procedure. *Buchanan*, 483 U.S. at 424. Additionally, in order to ensure that counsel's advice is effective, it must be "based on counsel's being informed about the scope and nature of the proceeding . . . [and] counsel's awareness of the possible used to which [defendant's] statements in the proceeding could be put." *Id.* at 424-25. *See Powell*, 287 U.S. at 685-86 (finding Sixth Amendment violation where prosecution used defendant's statements from a psychiatric evaluation addressing

future dangerousness when neither defendant nor his counsel were informed that the evaluation would encompass the topic).

IV.  **FED. R. CRIM. P. 12.2(b)(2) & (c) SET FORTH THE PROCEDURAL FRAMEWORK THAT MUST BE FOLLOWED IN A CAPITAL CASE REGARDING SEALING AND DISCLOSURE OF EXPERT MENTAL CONDITION RESULTS AND REPORTS.**

By promulgating Fed. R. Crim. P. 12.2(b)(2) and (c), the United States Supreme Court and Congress delineated the procedures regarding sealing and disclosure of expert reports that must be followed in a capital case in order to permit the government a reasonable opportunity to obtain information rebutting a defendant's expert evidence of mental condition whilst ensuring that the defendant's constitutional rights are fully protected. These provisions, added to Rule 12.2 by amendment in 2002, state in relevant part:

(b) NOTICE OF EXPERT EVIDENCE OF A MENTAL CONDITION.

If a defendant intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on . . . (2) the issue of punishment in a capital case, the defendant must – within the time provided for filing a pretrial motion or at any later time the court sets – notify an attorney for the government in writing of this intention and file a copy of the notice with the clerk. The court may, for good cause, allow the defendant to file the notice late, grant the parties additional trial-preparation time, or make other appropriate orders.

(c) MENTAL EXAMINATION.

(1) *Authority to Order an Examination; Procedures.*

. . .

(B) . . . If the defendant provides notice under Rule 12.2(b) the court may, upon the government's motion, order the defendant to be examined under procedures ordered by the court.

(2) *Disclosing Results and Reports of Capital Sentencing Examination.* The results and reports or any examination conducted solely under 12.2(c)(1) after notice under Rule 12.2(b)(2) must be sealed and must not be disclosed to any attorney for the government or the defendant unless the defendant is found guilty of one or more capital crimes and the defendant confirms an intent to offer during sentencing proceedings expert evidence on mental condition.

(3) *Disclosing Results and Reports of the Defendant's Expert Examination.* After disclosure under Rule 12.2(c)(2) of the results and reports of the government's examination, the defendant must disclose to the government the results and reports of any examination on mental condition conducted by the defendant's expert about which the defendant intends to introduce expert evidence.

(4) *Inadmissibility of a Defendant's Statements.* No statement made by a defendant in the course of any examination conducted under this rule (whether conducted with or without the defendant's consent), no

testimony by the expert based on the statement, and no other fruits of the statement may be admitted into evidence against the defendant in any criminal proceeding except on an issue regarding mental condition on which the defendant:

. . .

(B) has introduced expert evidence in a capital sentencing proceeding requiring notice under Rule 12.2(b)(2).

Fed. R. Crim. P. 12.2.

Thus, the procedures required by the Rule are triggered when the defendant files notice of his intent to present expert evidence of mental condition at the penalty phase, 12.2(b)(2), and the government moves for an exam, 12.2(c)(1)(B). Thereafter, if the court exercises its discretion and grants the government's motion, the government's rebuttal expert must file his or her report with the court under seal and may not discuss any aspect of the examination or its results with either counsel for the government or counsel for the defense. 12.2(c)(2). *See also United States v. Roof*, No. 15-472 (D.S.C. July 19, 2016) (so ordering); *United States v. Ciancia*, 13-cr-902 (C.D. Cal. May 13, 15) (same); *United States v. O'Reilly*, No. 05-cr-80025 (E.D. Mich. February 19, 2010) (same); *United States v. Richardson*, No. 08-CR-139 (N.D. Ga. July 12, 2010) (same). Only if the jury returns a verdict of guilty on a capital charge is the report of the government's rebuttal expert disclosed to anyone. *Id.* In order to ensure that the government's expert understands these restrictions upon disclosure, the expert should ordered to sign a

written confirmation demonstrating that he/she understands the obligation not to discuss the examination, the results thereof or any information derived therefrom with any person unless and until the expert's report has been unsealed and released to both Mr. Christensen and the government. Section II, para. 10. *See O'Reilly*, No. 05-cr-80025; *Ciancia*, 13-cr-902.

Upon the return of a verdict of guilt, if the defendant reaffirms his intention to present expert evidence of mental condition, the report of the government's rebuttal expert is disclosed to counsel for the defendant only. Section II, para. 12. *See O'Reilly*, No. 05-cr-80025; *Ciancia*, 13-cr-902. If, after counsel review the report, the defendant again reaffirms his continued intention to present expert mental health evidence, the rebuttal expert's report is disclosed to the government along with the results and reports of the defense experts. Mr. Christensen's requested procedures regarding sealing and disclosure or results and reports fully comport with the requirements of Rule 12.2(b)(2) and (c).

## V. THE GOVERNMENT'S REBUTTAL EXAMINATION OF MR. CHRISTENSEN SHOULD TAKE PLACE UPON THE RETURN OF A VERDICT OF GUILTY ON A CAPITAL CHARGE.

Rule 12.2 is silent on when the government's rebuttal expert's examination may be conducted in relation to the trial. The Court must therefore determine the appropriate time pursuant to Rule 12.2(c)(B) (providing that the court may order a government rebuttal examination of defendant "under procedures ordered by the court"). Mr. Christensen respectfully urges the Court to follow the ruling in *United*

*States v. Taveras*, 233 F.R.D. 318 (E.D.N.Y. 2006), and order that the government's rebuttal examination may not take place unless and until the jury returns a verdict of guilty on a capital charge.

After careful consideration, the court in *Taveras* determined that both the constitutional and practical interests at stake would be best served by directing the government's examination to take place immediately upon the return of a guilty verdict. The court found that "[p]re-trial examination of the defendant would greatly complicate these proceedings," and that the prospect had already engendered significant, ultimately unnecessary, litigation. *Id.* at 320. It further noted that the risk of premature leakage of information from the government's rebuttal expert to the prosecution team, the allegation of which may at least require a hearing and could threaten the integrity of the conviction and/or sentence, would be entirely eliminated by conducting the examination at the conclusion of the guilt phase. *Id.* at 322.

While noting that the uniform practice amongst the district courts thus far had been to order that the government's rebuttal examination should take place before trial, the court found that these rulings appeared to be "based on unwarranted comparisons to nondiscretionary examination under the Rules pursuant to an insanity defense." *Id.* at 321. It also rejected the concern that a post-verdict examination would delay the start of the penalty phase, predicting that "[p]ostponing the examination of the defendant until after a possible guilty verdict will create little delay between the verdict and the pronouncement of sentence." *Id.* at 323. And the court was right; the jury returned a

verdict of guilty on October 20, 2008, *United States v. Taveras*, No. 04-CR-156 at ECF No. 614 (E.D.N.Y October 20, 2008), and the penalty phase commenced – as scheduled – on October 29, 2008, *id.* at ECF No. 617. There is no reason to anticipate a different outcome in this case.

In the event that the Court is disinclined to follow the reasoning of *Taveras* and directs that the government's rebuttal examination may take place prior to the return of a guilty verdict, the procedures required by Rule 12.2(c)(2) must still be followed. Thus, the government's rebuttal expert should be ordered to file the results and report of his evaluation with the Court under seal and he/she must further be ordered not to discuss any aspect of his evaluation with any person unless and until his/her report is unsealed by the Court. *See, e,g, Roof*, No. 15-472 at ECF Nos. 260, 280 (granting government's request for pretrial examination of defendant but directing it be conducted in accordance with Rule 12.2(c)); *Ciancia*, No. 13-cr-902 at ECF No. 139 (directing that government's rebuttal examination, if any, take place pre-trial and in accordance with Rule 12.2(c)); *O'Reilly*, No. 05-cr-80025 at ECF No. 444 (same); *Richardson*, No. 08-CR-139 at ECF No. 319 (same).

## VI. THE COURT SHOULD DIRECT THE GOVERNMENT TO DISCLOSE THE NATURE AND SCOPE OF ITS PROPOSED REBUTTAL EXAMINATION TO THE DEFENSE IN ADVANCE.

As noted above the Sixth Amendment requires that, before deciding whether to submit to a mental health evaluation by a government expert, a defendant be afforded the opportunity to discuss the nature and scope of the proposed evaluation with his

counsel. *Smith*, 451 U.S. at 469; *Buchanan,* 483 U.S. at 424. In order to facilitate this constitutionally-mandated consultation, the government should be directed to disclose to defense counsel, in advance of the proposed evaluation, the following information: (1) the names, professions and qualifications of its expert; (2) the referral question that the expert has been directed to answer; and (3) the names of any tests that the expert proposes to administer in order to respond to the referral question. *See* Section II, para. 2, *supra.* Within one week of the required disclosure, Mr. Christensen should be permitted to file any objections to the government's chosen expert, the scope of the evaluation as defined by the referral question, and/or any of the tests that the expert proposes to give. *See* Section II, para. 3, *supra.*

### 1. Name and Qualifications of Government's Expert

The government should be required to disclose the name and qualifications of the expert it selects to conduct the rebuttal evaluation. *See e.g., O'Reilly*, No. 05-cr-80025 at ECF No. 444, p.7 ("The Government must provide defense counsel with at least five days advance notice of the name(s) and profession(s) of the Government expert(s) who will perform rebuttal examinations"); *Ciancia*, No. 13-cr-902 at ECF No. 139, p.2 ("the government shall file a notice with the Court advising the defense of . . . the identity of its expert(s), his/her/their qualifications, education and experience in criminal cases . . . at least two weeks in advance of the proposed examination").

As the Supreme Court held in *Smith*, 451 U.S. at 471, the "life or death" decision of whether to submit to a government mental health evaluation requires, inter alia,

"knowledge of the particular psychiatrist's biases and predilections." This information

is particularly important in a federal capital case because of the United States' repeated

use in such cases of unscrupulous experts who willfully violate court orders, issue

unscientific and unreliable diagnoses and submit inappropriate reports evincing serious

biases against capital defendants. *See, e.g., United States v. Fell*, No. 01-cr-00012 (D. Vt.

April 24, 2006) (finding that government expert Dr. Michael Welner engineered an end

run around the court's order limiting his involvement in the case by feeding his

questions to the examiner and purporting to score impermissible tests based on the

answers); *Richardson*, No. 08-CR-139 at ECF No. 903 at p. 28 (finding that government,

Dr. Welner and members of his firm violated the defendant's constitutional rights and

precluding any testimony by any member of the firm); *Sampson II*, No. 01-10384 at ECF

No. 2459, pp. 39-40, 49, 53, 56, 58 (excluding Welner's proposed testimony that the

defendant is a psychopath because "substantial questions exist as to the reliability and

validity of psychopathy as a diagnosis" and excluding his "overtly inaccurate or

inflammatory characterizations of the facts," previously excluded topics that "Welner

has once again included in his reports," his opinions regarding the defendant's

supposed "intentional or motivated lying" that failed to satisfy *Daubert* standards for

admissibility and attacks upon the veracity of defense experts that were "beyond the

pale" and had "no place in these or any other legal proceedings"). *See also Wilson*, No.

04-CR-1016 at ECF No. **, pp. 13-14 (defense motion to preclude Welner from testifying

based, inter alia, on fact that his firm had breached confidentiality requirements of Rule 12.2 by posting boastful information about their role in the case on the firm's website).

If the government were to seek to retain any expert with a similar track history, Mr. Christensen will move the Court to disqualify them from participating in this case. He should therefore be provided with the names of the government's proposed expert in advance of the rebuttal examination. Any motion may therefore be made and resolved in a timely fashion rather than waiting until the expert's work is concluded and his report is disclosed at the commencement of the penalty phase.

2.    **Referral Question**

Mr. Christensen is also entitled to know in advance the scope of the government's proposed rebuttal examination, as defined by the referral question that the expert has been instructed to answer, in order to ensure that the examination does not veer off into territory into which the government is not permitted to go. As noted, when a defendant decides to introduce mental health evidence at the penalty phase of a capital case, he may be deemed to have waived his rights under the Fifth Amendment with respect to an examination by a government expert, but "'that waiver is not limitless; it only allows the prosecution to use the interview to provide rebuttal to the psychiatric defense.'" *United States v. Williams*, 731 F. Supp. 2d 1012, 1019 (D. Haw. 2010) (quoting *Gibbs v. Frank*, 387 F.3d 268, 274 (3d Cir. 2004)).

The district court in *Williams* rejected the government's argument that the defendant's 12.2 notice opened the door for it to assert diagnoses or defects other than

those specifically placed in issue by the defendant. *Id*. Rather, it held, the government's experts are limited to rebutting the defendant's mental health evidence, "*not ascertaining another possible motive for Defendant's actions." Id*. at 1017 (emphasis in original). The court wrote:

> To allow the Government experts to go beyond rebutting Defendant's expert testimony that he has [borderline intellectual functioning] and affirmatively assert that Defendant suffers from psychosis or Anti-Social Personality Disorder and that either of those conditions actually caused him to commit the alleged acts, is tantamount to using Defendant's own statements, for which he has not waived his Fifth Amendment rights, against him in a criminal proceeding. The Government may *rebut* the Defendant's mental status defense, not *prosecute* based upon Defendant's mental health. Accordingly, the Court finds that the Government's rebuttal expert testimony must be limited in scope to that which directly rebuts Defendant's assertion of borderline intellectual functioning and which is based upon expert examinations that parallel the exploration of the examinations conducted by defense experts.

*Id.* at 1020 (emphases in original).

Here, we have given explicit notice that the defense intends to present expert evidence that Mr. Christensen suffers from a Schizophrenia Spectrum or Other Psychotic Disorder as defined in the American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, pp. 87-122 (5th ed. 2013). We have further given explicit notice that we intend to present expert evidence that Mr. Christensen exhibits neurocognitive deficits consistent with a psychotic disorder. The government's examination is therefore limited to confirming or refuting that class of diagnoses. Mr. Christensen is entitled to advance notice of the referral question put to the

government's rebuttal expert so that he may enter his objection if the proposed examination exceeds this narrow scope.

3. **Tests**

Just as the government's rebuttal evaluation overall is limited to issues made relevant by the defendant's own expert mental health evidence, so too must any tests employed be appropriate to answering the precise question at issue. In *Taylor*, 320 F. Supp. 2d at 791, the defendant gave notice under Rule 12.2(b)(2) that he intended to introduce expert evidence at the penalty phase regarding his developmental history and mental condition relating to substance abuse. He further noted that one of his experts had performed three specific testing instruments relating to substance abuse. *Id.*at n.1. In response, the government filed notice that it wished to have its rebuttal expert administer three broad-ranging personality assessment inventories – the Minnesota Multiphasic Personality Inventory ("MMPI"), the Personality Assessment Inventory ("PAI") and the Millon Clinical Multiaxial Inventory ("MCMI") – and a fourth measure, the Interview Schedule for the Psychopathy Checklist Revised ("PCL-R"), that is designed to determine whether or not an individual is a "psychopath." *Id.* at 794.

The court rejected the government's attempt to use the PCL-R out of hand, noting that uncertainty regarding the instrument's validity and reliability precluded its use in capital sentencing proceedings for any purpose. *Id.* Additionally, the court ruled that the government's expert "must be limited to a parallel testing of substance abuse rather than allowing the government to use [the defendant's] limited notice as an open

door for any type of mental testing." *Id.* It therefore ordered that the government was permitted to use the tests it identified only to the extent that they contained testing scales for substance abuse and that it would be precluded from introducing any materials outside the scope of testing as it relates to substance abuse. *Id. See also Williams*, 731 F. Supp. 2d at 1023-24 (disallowing use of PCL-R by government rebuttal expert as any diagnosis made as a result would exceed the scope of permissible rebuttal).

In order to afford Mr. Christensen an adequate opportunity to raise any objections to the tests, if any, that the government's rebuttal expert intends to use, this Court should join every other district court to have considered the matter and direct the government to submit in advance a list of all tests that its expert proposes to use. *See, e.g., United States v. Sampson*, 335 F. Supp. 2d 166, 245-46 (D. Mass. 2004) ("*Sampson I*") (directing government to file notice of tests its experts planned to perform at least five days prior to examination); *United States v. Sampson*, 82 F. Supp. 3d 502, 518 (D. Mass. 2014) ("*Sampson II*") (same); *United States v. Johnson*, 362 F. Supp. 2d 1043, 1085 (N.D. Iowa 2005) (same); *O'Reilly*, 05-cr-80025 at ECF No. 444, p.7) (same); *Roof*, 15-472 at ECF No. 260, p. 2 (same);*United States v. Basham*, No. 02-cr-992 (D.S.C. January 8, 2004) (requiring government to disclose its list of tests); *Taylor*, 320 F. Supp. 2d at 791 (same); *Richardson*, No. 08-CR-139 at ECF No. 319, p. 16 (same); *Ciancia*, 13-cr-902 at ECF No. 139 at p. 2 (directing government to file list of tests at least two weeks in advance of examination).

The Court should order that the list of tests be disclosed no later than two weeks prior to the date of the government's rebuttal examination. *See* Section II, para. 2. The Court should further order that, in the event that Mr. Christensen files objections within one week of receiving the list of tests, no examination or testing shall be performed by the government's expert until those objections have been ruled upon by the Court. *See* Section II, para. 3. *See, e.g., O'Reilly*, 05-cr-80025 at ECF No. 444, p.7; *Ciancia*, 13-cr-902 at ECF No. 139 at p. 2.

## VII. THE GOVERNMENT'S REBUTTAL EXAMINATION SHOULD BE APPROPRIATELY LIMITED IN SCOPE.

In accordance with the principal that the scope of a government rebuttal evaluation is limited, it is apparent from the outset that there are some topics that are outside the scope of what is permissible under Rule 12.2 and the Fifth Amendment and the Court should therefore preclude the government's expert from questioning Mr. Christensen on those subjects. *See* Section II, para. 4. These topics fall into two categories: (1) questions regarding the facts and circumstances of the kidnapping and/or death of Ms. Zhang; and (2) questions to develop evidence in support of the government's alleged statutory and non-statutory aggravating factors including, but not limited to, lack of remorse, future dangerousness and other serious acts of violence.

### 1. The Government's Rebuttal Expert Must be Precluded from Questioning Mr. Christensen About the Facts and Circumstances of Ms. Zhang's Kidnapping and/or Death.

The government's rebuttal expert must be instructed not to question Mr. Christensen regarding any aspect of the facts and circumstances of Ms. Zhang's

kidnapping and/or death during his/her examination. Such questioning is beyond the scope of what is necessary to rebut Mr. Christensen's own expert evidence of his mental condition, *see* Rule 12.2(c)(4), and constitutes evidence from the defendant on subjects other than "matters he himself has put in dispute," in violation of the Fifth Amendment privilege against self-incrimination. *Brown*, 356 U.S. at 156. Mr. Christensen has instructed each of his experts not to question him on that subject and so "neither need nor fairness requires such inquiries" by the government's expert. *United States v. Johnson*, 383 F. Supp. 2d 1145, 1165 (N.D. Iowa 2005) (internal quotations omitted). The court in *Johnson* reached this conclusion under circumstances indistinguishable from those present here. The defendant had specifically instructed her own experts not to question her about the crimes with which she was charged or her mental state at the time they were committed. *Id.* at 1164. While recognizing that a defendant could be compelled to submit to such questioning if she had discussed offense-specific information with her own experts, or else face exclusion of her own evidence, the court appropriately found that the defendant could validly assert the privilege if the subject fell outside of the scope of the evidence that she herself would present. *Id.* at 1163-65. The same result should obtain here.

2. **The Government's Rebuttal Expert Must be Precluded from Questioning Mr. Christensen to Develop Evidence in Support of the Government's Alleged Aggravating Factors.**

The government's rebuttal expert must also be instructed not to question Mr. Christensen on subjects that may develop evidence affirmatively supporting the

government's alleged statutory and non-statutory aggravating factors. Again, Rule 12.2(c)(4) limits the government to obtaining and presenting evidence rebutting "an issue regarding mental condition on which the defendant . . . has introduced expert evidence in a capital sentencing proceeding." The Fifth Amendment limits the government from obtaining and presenting evidence from the defendant on subjects other than "matters he himself has put in dispute." *Brown*, 356 U.S. at 156. Accordingly, the government may not use its rebuttal expert as a tool to gather evidence in support of its alleged aggravating factors if, as is the case here, Mr. Christensen will introduce no expert mental health evidence regarding those factors.

The district court in *Sampson I* so held with respect to the government's attempt to use evidence gleaned from its rebuttal evaluation in support of the aggravating factor of future dangerousness. "Dr. Michael Welner was engaged by the government to examine Sampson pursuant to the Federal Rules of Criminal Procedure 12.2. The information that he obtained in that process could only be used in connection with his testimony on Sampson's mental condition. *See* Fed. R. Crim. P. 12.2(c)(4) ('[n]o statement made by a defendant in the course of any examination conducted under this Rule . . . and no other fruits of the statement may be admitted into evidence against the defendant except on an issue regarding mental condition.'). It could not be used on the issue of future dangerousness." 335 F. Supp. 2d at 222, n.27.

Similarly, in *Williams*, 731 F. Supp. 2d at 1024, the court precluded the government's rebuttal expert from administering the PCL-R to the defendant as part of

his evaluation. Finding the government's argument that evidence of psychopathy or anti-social personality was an appropriate rebuttal to the defendant's expert evidence of borderline intellectual functioning to be "not tenable," *id.* at 1023, the court noted that the instrument was also inappropriate because it necessarily addressed issues such as "Lack of Remorse or Guilt," *id.* at 1024. Such a topic was found to be outside of the scope of an examination necessary to rebut the defendant's expert evidence and the test was therefore deemed inadmissible. *Id.* As the court wrote, "any diagnosis which requires a broader examination of Defendant, or which is used to assert a theory of prosecution not just to rebut the Defendant's mental status defense, is inadmissible." *Id.* at 1022.

And in *Basham*, No. 02-cr-992 at ECF No. 248, p. 10 the defendant urged the court to preclude the government's expert from questioning him regarding uncharged misconduct that could then be used to establish aggravating factors. The defendant argued that, where the government uses its rebuttal examination to build its own case for aggravating factors, it has gone beyond what is permissible under 12.2. *Id.* at 10-11. The court appropriately held that the scope of the defendant's own expert evaluation determined whether the government's expert could delve into that area. *Id.*at 11. If the defense expert's evaluations were "purely diagnostic," there would be no occasion for the government's expert to address uncharged offenses. *Id.*

The government has alleged all three of the aggravating factors at issue in *Sampson I, Williams* and *Basham* in Mr. Christensen's case. The Court should therefore

order the government's rebuttal expert to refrain from questioning Mr. Christensen on any topics related to these, or any other, aggravating factors.

Respectfully submitted,

/s/Elisabeth R. Pollock
Assistant Federal Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org

/s/ Robert Tucker
Robert L. Tucker, Esq.
7114 Washington Ave
St. Louis, MO 63130
Phone: 703-527-1622
Email: roberttuckerlaw@gmail.com

/s/ George Taseff
Assistant Federal Defender
401 Main Street, Suite 1500
Peoria, IL 61602
Phone: 309-671-7891
Fax:     309-671-7898
Email: George_Taseff@fd.org

/s/ Julie Brain
Julie Brain, Esq.
916 South 2nd Street
Philadelphia, PA 19147
Phone: 267-639-0417
Email: juliebrain1@yahoo.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 3, 2018, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system which will send notification of such

filing to Assistant United States Attorneys Bryan D. Freres and Eugene L. Miller and

Trial Attorney James B. Nelson. A copy was also mailed to the defendant.

<div style="margin-left:40%;">

<u>/s/Elisabeth R. Pollock</u>
Assistant Federal Public Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org

</div>