UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 17-cr-20037-JES-JEH |
| BRENDT A. CHRISTENSEN, | ) ) ) |
| Defendant. | ) ) |

## ORDER AND OPINION

Now before the Court are Defendant Brendt A. Christensen's Motion (Doc. 131) to Change Venue, Defendant's Motion (Doc. 132) for Intradistrict Transfer of Case, and the United States' Response (Doc. 153). For the reasons set forth below, Defendant's Motion (Doc. 132) for Intradistrict Transfer of Case is GRANTED and this matter is transferred to the Peoria Division for further proceedings. Defendant's Motion (Doc. 131) to Change Venue is DENIED as MOOT.

### BACKGROUND

Defendant Brendt A. Christensen was arrested by federal agents on June 30, 2017, pursuant to a criminal complaint which charged him with the kidnapping of Y.Z., a female Chinese national, in violation of 18 U.S.C. § 1201. Doc. 1. Christensen was later indicted by a federal grand jury sitting in the Urbana Division of the Central District of Illinois. *See* Doc. 13 (Indictment), Doc. 26 (Superseding Indictment). The Superseding Indictment charges Christensen with kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1) (Count 1), and making false statements to FBI agents investigating Y.Z.'s disappearance, in violation of 18 U.S.C. § 1001(a)(2) (Counts 2, 3). Doc. 26. The Superseding Indictment returned by the grand jury also included a notice of special findings regarding the nature of the offense charged in Count 1, including that the death of the victim was intentional, that it occurred during the

1

commission of kidnapping, that it was committed in an especially heinous, cruel, or depraved manner, and that Defendant committed the offense after substantial planning and premeditation. *Id*. The special findings alleged in the Superseding Indictment made the case eligible for capital punishment. *See* 18 U.S.C. § 3591 *et seq.* On January 19, 2018, the United States filed its Notice of Intent to Seek a Sentence of Death. Doc. 54; *see also* 18 U.S.C. §3593(a). On August 17, 2018, this case was reassigned to Chief District Judge James E. Shadid.

Relevant to this Order are two Motions by Defendant. In his Motion to Change Venue, Defendant asks the Court, pursuant to the Fifth and Sixth Amendments and Rule 21 of the Federal Rules of Criminal Procedure, to change the venue for trial in this case from the Urbana Division of the Central District of Illinois to the Peoria Division. Doc. 131. The focus of Defendant's Motion is on prejudicial pretrial publicity that he believes will prevent him from obtaining a fair trial in the Urbana Division, and analysis of the *Skilling* factors courts consider when ruling on motions to change venue based on prejudicial pretrial publicity. *See Skilling v. United States*, 561 U.S. 358 (2010).

Similarly, in Defendant's Motion for Intradistrict Transfer of Case, Defendant argues that, under Rule 18 of the Federal Rules of Criminal Procedure, the Court should enter an order transferring venue for prosecution and trial of this case from the Urbana Division of the Central District of Illinois to the Peoria Division. Doc. 132. Defendant asserts that the analysis for a transfer under Rules 18 and 21 are similar and proceeds to discuss those factors with an emphasis on prejudicial pretrial publicity.

The United States has filed a combined Response to both Motions. Doc. 153. Therein, the United States argues that the Defendant's Motions are premature and insufficient. Specifically, the United States takes the position that the issue of venue should not be decided until voir dire

of prospective jurors so that the Court may assess the impact of pretrial publicity. Thus, the United States argues that a change of venue should be granted only if the Court is unable to select a fair and impartial jury. The United States then analyzes the *Skilling* factors and argues that they weigh against transferring the case to the Peoria Division. Lastly, the United States argues that the Court should not transfer the case under Rule 18 because the Peoria Division would be inconvenient to victim's family and witnesses. This Order follows.

## LEGAL STANDARD

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law[.]" U.S. Const. amend. VI. Rule 21 of the Federal Rules of Criminal Procedure provides:

> Rule 21. Transfer for Trial
> **(a) For Prejudice.** Upon the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there.
> **(b) For Convenience.** Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice.

Fed. R. Crim. P. 21. While Rule 21 governs interdistrict transfers, Rule 18 provides for transfers within a district:

> Rule 18. Place of Prosecution and Trial
> Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed. The court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice.

Fed. R. Crim. P. 18. When deciding whether the interests of justice require a transfer of venue, courts consider: "(1) location of [the] ... defendant; (2) location of possible witnesses; (3)

location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of [the] place of trial; (9) docket condition of each district ... involved; and (10) any other special elements which might affect the transfer." *In re U.S.*, 273 F.3d at 387–88 (quoting *Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240, 244 (1964)).

### DISCUSSION

In both of his Motions, Defendant asks the Court to change the venue for trial in this case from the Urbana Division of the Central District of Illinois to the Peoria Division. The Peoria Division is also part of the Central District of Illinois; thus, Defendant's requests for an intradistrict transfer are more appropriately analyzed under Rule 18 of the Federal Rules of Criminal Procedure. "[A] trial court has broad discretion in deciding where to fix the location of the trial which will not be overridden on appeal as long as the court gives 'due consideration' to the factors listed in Rule 18." *United States v. Balistrieri*, 778 F.2d 1226, 1229 (7th Cir. 1985). Moreover, "[a]lthough the text of Rule 18 refers only to convenience and prompt administration, the district court may consider other factors." *United States v. Lipscomb*, 299 F.3d 303, 340 (5th Cir. 2002). Additional factors district courts may consider are: (1) convenience of the defendant and witnesses; (2) speedy trial considerations; (3) docket management; (4) courthouse space and security; and (5) pretrial publicity. *Lipscomb*, 299 F.3d at 339–42.

Here, Defendant's Motions focus largely on one consideration—pretrial publicity. *See* Docs. 131, 132. However, considerations of docket management, courthouse space, and prompt administration of justice persuade the Court that, "all relevant things considered, the case would be better off transferred" to the Peoria Division. *See In re U.S.*, 273 F.3d 380, 388 (3d Cir. 2001).

In order to fully appreciate these considerations, a review of the facts peculiar to this District and this case is in order.

*(1) History of the Case and Characteristics of the District*

This criminal case was commenced on June 30, 2017, when the United States filed a criminal complaint charging Defendant with kidnapping. Doc. 1. The case was filed in the Urbana Division of the Central District of Illinois and assigned to District Judge Colin Bruce, the sole active district judge within the Urbana Division. On August 17, 2018, after over a year of pretrial proceedings, the undersigned, in my capacity as Chief District Judge for the Central District of Illinois, reassigned this case and other cases on Judge Bruce's docket to other district judges for reasons unrelated to this case. Since that time, the undersigned has presided over criminal cases in both the Peoria Division and Urbana Division. The parties estimate that trial of this matter, which is currently scheduled for April 4, 2018 in Urbana, may exceed five weeks. *See* Docs. 58, 64. During this time, the undersigned will also endeavor to manage his regular criminal and civil docket in the Peoria Division as well as a portion of the criminal docket in the Urbana Division.

The Peoria courthouse has four courtrooms, which accommodate the undersigned as well as two senior district judges and a magistrate judge. Parking for prospective jurors is available in three parking decks with a combined capacity of roughly 1,500 parking spaces. The Urbana courthouse has three courtrooms—one is currently being renovated, the other two are suitable for jury trials—which accommodate an active district judge, a senior district judge, and a magistrate judge. Parking for prospective jurors is available in one municipal parking lot with about 180 total parking spaces. Senior District Judge Baker currently has four jury trials scheduled for April 2018 in the Urbana courthouse. District Judge Bruce currently has seven trials scheduled for

5

April 2018 in the Urbana courthouse. With the above facts in mind, the Court proceeds to analyze district and appellate court decisions applying Rule 18 to intradistrict transfers.

*(2) Review of Applicable Case Law*

The Court relies principally on three cases in support of its decision to transfer this case to the Peoria Division. The first case is *United States v. Balistrieri*, 778 F.2d 1226 (7th Cir. 1985). In *Balistrieri*, the district judge decided *sua sponte* to move the jury selection from the Milwaukee Division of the Eastern District of Wisconsin to the Green Bay Division of the Eastern District of Wisconsin. The district judge based his decision to conduct jury selection in a different division on difficulties in selecting a jury in a previous related case in the Milwaukee Division, pretrial publicity in the Milwaukee Division, and the reduced exposure to pretrial publicity from potential jurors in the Green Bay Division. *Id*. at 1229. On appeal, the defendant argued that the district court erred in moving jury selection to the Green Bay Division. In affirming the district court's decision, the Seventh Circuit stated:

> We begin our analysis by recognizing that a trial court has broad discretion in deciding where to fix the location of the trial which will not be overridden on appeal as long as the court gives "due consideration" to the factors listed in Rule 18. *United States v. Truglio*, 731 F.2d 1123, 1130 (4th Cir. 1984). We think that the facts and considerations recited by the district court evidence that such due consideration was given. The only inconvenience to the defendant in this case was that the jury was selected in Green Bay without the inclusion of Milwaukee jurors in the venire. But the jury is not required to be selected either from the entire district or from the division in which the crime was committed. *Zicarelli v. Dietz*, 633 F.2d 312, 317 (3d Cir. 1980), *cert. denied,* 449 U.S. 1083, 101 S.Ct. 868, 66 L.Ed.2d 807 (1981). Moreover, the fact that the Green Bay venire may have been more "rural" than a Milwaukee jury venire might have been does not violate a defendant's right to a jury drawn from a cross-section of the community. *Zicarelli v. Gray,* 543 F.2d 466 (3d Cir. 1976).

*Balistrieri*, 778 F.2d at 1229.

The second case is *In re Chesson*, 897 F.2d 156 (5th Cir. 1990). In *Chesson*, an indictment was returned in Lake Charles, Louisiana, where the district judge originally assigned

to the case resided. The district judge handled several pretrial motions and set the case for trial in Lake Charles before health issues forced him to take senior status. *Id*. at 158. The case was then reassigned to another district judge in the Western District of Louisiana residing in Monroe, roughly 150 miles away from Lake Charles. After learning the number of witnesses the parties planned on calling at trial and the anticipated length of trial—3 weeks—the newly assigned district judge ordered the case transferred to Monroe over the defendants' objection. In reaching that decision, the district judge considered that the case was reassigned to him on short notice because of the retirement of the previous judge, that he had other civil and criminal matters on his docket requiring his attention, that a lengthy trial in Lake Charles would negatively impact the other cases assigned to his docket, and the negative impact could be reduced by being available in Monroe before court sessions, during recesses, and after adjournment. *Id*. In a mandamus proceeding in the Fifth Circuit Court of Appeals, the defendants challenged the district court's decision to transfer the case to Monroe. Denying the petition, the Fifth Circuit reasoned:

> As we have signaled in earlier cases, *Dickie* and *United States v. Kaufman*, 858 F.2d 994 (5th Cir. 1988), the prompt administration of justice includes more than the case at bar; the phrase includes the state of the court's docket generally. The court must balance not only the effect the location of the trial will have upon the defendants and their witnesses, but it must weigh the impact the trial location will have on the timely disposition of the instant case and other cases. Willingness of a defendant to waive Speedy Trial Act rights "does not alter a court's duty to consider the prompt administration of justice as a factor." *Dickie,* 775 F.2d at 610. In *Kaufman* the district court transferred the trial from Austin to Waco because it concluded that to hold a lengthy trial in Austin the judge would have to ignore his responsibilities to the court's docket in Waco. We perceived no error and held that "[i]n the best interests of judicial economy and efficiency, the district court held that the trial should be conducted in Waco, and in so holding did not abuse its discretion." *Kaufman,* 858 F.2d at 1006.
> In the case at bar considerations of the Monroe docket tipped the scale for Judge Walter. On the record before us we are not prepared to say that this decision was the product of a clear and indisputable abuse of discretion.

*In re Chesson*, 897 F.2d at 159.

The third case is *United States v. Taylor*, 316 F. Supp. 2d 722 (N.D. Ind. 2004). In *Taylor*, the defendants were charged with capital offenses relating to robbery and murder at a firearm shop in Hammond, Indiana. The district judge originally assigned to the case was located in the Hammond Division of the Northern District of Indiana. However, the original district judge later took senior status, and the other two district judges in the Hammond Division were unable to hear the case. The case was therefore reassigned to a district judge in the South Bend Division of the Northern District of Indiana. Following the reassignment, the United States moved for a determination of venue, and the defendants responded by indicating that they were ready to proceed to trial in the South Bend Division. *Id*. at 724.

The district court found that the transfer to the South Bend Division was proper, reasoning that "the transfer of this matter from the Hammond Division to South Bend was done in the interest of expeditious administration of justice and necessitated by the fact that there were no available district judges to try this complex case." *Id*. at 726. The court also found that the capital nature of the prosecution did not change the analysis:

> The Court finds that Section 3235 does not require that this case be tried in the Hammond Division due to fact that neither Defendant has raised the statutory provision in an attempt to have the case tried in Hammond—thus, effectively waiving any statutory rights they have under the provision. Furthermore, the Court finds that even if either Defendant had invoked the provision, the circumstances that precipitated the reassignment to the South Bend Division equated to "great inconvenience" and therefore a trial of this matter in South Bend would be proper.

*Id*. at 728.

*(3) The Expeditious Administration of Justice Supports Transfer to the Peoria Division*

    (a) Convenience of the Defendant, Witnesses, and the Victim's Family

In deciding Defendant's Motion, the Court has considered the convenience of the Defendant, witnesses, and the victim's family. *See, e.g., Lipscomb*, 229 F.3d at 340–41 (additional facts courts may consider include convenience of the defendant and witnesses). The convenience of Defendant carries little weight in this particular case because Defendant is the one requesting a change of venue to the Peoria Division. As to the convenience of witnesses, the United States argues that the law enforcement, academic, and other witnesses will be inconvenienced by traveling from Urbana to Peoria in the early spring, and forcing the witnesses to travel and wait to testify will cause inconvenience for each of them and additional expense for the government.[1] Doc. 153, at 32. However, as Defendant points out in his Motion, the majority of the witnesses at trial are likely to be law enforcement officers who regularly travel throughout the District as part of their law enforcement duties. Doc. 132. Moreover, the Peoria courthouse is only about 92 miles—an hour and a half drive—from the Urbana courthouse. The Court does not believe that the witnesses in this case will be unduly inconvenienced by traveling to Peoria to testify.

The factor which weighs most heavily against transfer of this case to the Peoria Division is the fact that the victim's family will likely be somewhat inconvenienced if the trial of this case takes place in the Peoria Division. As the United States recounts in its Response, the victim's family intends to be present at trial, and a trial in the Urbana Division would be more convenient for them. *See* Doc. 153, at 5, 32. The victim's family has received great support from the University of Illinois community and has developed strong bonds with the local Chinese community during this difficult time. However, although inconvenience to the victim's family is

---

[1] *But see United States v. Kaufman*, 858 F.2d 994, 1006 (5th Cir. 1988) ("The parties clearly suffered only minor inconvenience in having to attend trial in Waco rather than Austin. This court has held that travel and lodging expenses for lawyers and witnesses do not constitute prejudice sufficient to overcome a district court's determination regarding the place of trial.") (citing *United States v. Fagan*, 821 F.2d 1002, 1008 (5th Cir. 1987)).

a factor to consider in deciding on a change of venue, the Court remains persuaded that other factors, such as docket management, courthouse space, and the prompt administration of justice, tip the scales in favor of transferring this matter to the Peoria Division. In addition, the Court believes the timely ruling on this issue five months ahead of the scheduled trial will allow the United States to assist the victim's family in developing support and ties to the Peoria community as well.

(b) Docket Management, Courthouse Space, and Prompt Administration of Justice

Considerations of docket management, courthouse space, and prompt administration of justice are relevant factors for courts to consider when ruling upon a motion to change venue within a district. *Lipscomb*, 299 F.3d at 339–42. Consideration of the "prompt administration of justice" encompasses not only the instant case, but also other trials on the Court's docket. *Id*. at 342. Thus, "[a] district court may consider docket management in its Rule 18 balancing, and docket issues may even outweigh convenience factors that point entirely the other way." *Id*. The Court's concerns regarding docket management and the prompt administration of justice are similar to the concerns expressed by the judges in *Chesson* and *Taylor*. Like the judges in *Chesson* and *Taylor*, this case was originally assigned to a district judge located in the division where the indictment was filed. *In re Chesson*, 897 F.2d 156 (5th Cir. 1990); *United States v. Taylor*, 316 F. Supp. 2d 722 (N.D. Ind. 2004). Just as in *Chesson* and *Taylor*, subsequent events caused the judge originally assigned to this case to become unavailable, thus necessitating reassignment to a district judge from a different division. *Taylor*, 316 F. Supp. 2d at 726 ("A clear distinction can be drawn from the facts found in *Fernandez* from those at issue in the case at bar since the transfer of this matter from the Hammond Division to South Bend was done in the interest of expeditious administration of justice and necessitated by the fact that there were no

available district judges to try this complex case."); *In re Chesson*, 897 F.2d at 159 ("In the case at bar considerations of the Monroe docket tipped the scale for Judge Walter. On the record before us we are not prepared to say that this decision was the product of a clear and indisputable abuse of discretion.").

As discussed above, the undersigned continues to preside over criminal cases in both the Peoria Division and Urbana Division. The parties estimate that trial of this matter, which is currently scheduled for April 4, 2018 in Urbana, may exceed five weeks. *See* Docs. 58, 64. During that time, the undersigned must also manage his regular criminal and civil docket in the Peoria Division as well as a portion of the criminal docket in the Urbana Division. Thus, this Court shares the same docket management concerns as the district judge in *Chesson* expressed. *See In re Chesson*, 897 F.2d at 158 ("In ordering the transfer Judge Walter recounted that this case was reassigned to him on short notice because of the disability retirement of Judge Veron, that he has other civil and criminal cases on his docket which require his attention, that a three-week, and perhaps longer, trial in Lake Charles would seriously impact on the cases previously assigned to his docket, an impact he could lessen by being available in Monroe before court sessions, during recesses, and after court adjourned."); *see also United States v. Schock*, No. 16-CR-30061, 2016 WL 7156461, at *4 (C.D. Ill. Dec. 7, 2016) (denying Rule 18 motion to transfer venue to another division and noting, "this Court's docket will also be affected because the Court will have to reschedule court hearings in the Court's other cases which, if the trial remains in the Springfield Division, could be addressed before this trial begins for the day, during recesses, and after court has adjourned for the day."). Here, a Peoria trial setting will allow the undersigned to attend to other civil and criminal matters before, during, and after the Court adjourns for the day, whereas an Urbana trial setting would require the undersigned to reschedule hearings in other

cases that could otherwise be addressed during breaks in this trial. Given the anticipated length of this trial and the other matters currently pending before the undersigned, concerns of docket management thus weigh heavily in favor of transferring this matter to the Peoria Division.

In addition to docket management, the Court has also considered the available courthouse space in the Urbana Division and Peoria Division. *See Lipscomb*, 299 F.3d at 339–42 (listing courthouse space and security as an additional factor courts may consider). As discussed above, the Peoria courthouse has four courtrooms, which accommodate the undersigned as well as two senior district judges and a magistrate judge. Parking for prospective jurors is available in three parking decks with a combined capacity of roughly 1,500 parking spaces. The Urbana courthouse has three courtrooms—one is currently being renovated, the other two are suitable for jury trials—which accommodate an active district judge, a senior district judge, and a magistrate judge. Parking for prospective jurors is available in one municipal parking lot with about 180 total parking spaces. Senior District Judge Baker currently has four jury trials scheduled for April 2018 in the Urbana courthouse. District Judge Bruce currently has seven trials scheduled for April 2018 in the Urbana courthouse.

A five-week or more trial in this matter in the Urbana Division would leave the active and senior district judges and magistrate judge with only one available courtroom suitable for jury trials during a time where at least 11 trials are currently scheduled to take place. In contrast, the availability of additional courtrooms in the Peoria Division would allow this matter to be tried without significantly inconveniencing the other judges or delaying other trial settings. Moreover, the increased size of the Peoria courthouse and significantly greater parking accommodations are particularly beneficial in this case, where the parties anticipate summoning a large pool of

potential jurors for extensive voir dire. Thus, the Court's concerns regarding courthouse space also weigh heavily in favor of transferring this matter to the Peoria Division.

The Court has considered the convenience of Defendant, witnesses, and the victim's family. In addition, the Court has considered docket management, courthouse space, and the prompt administration of justice. *Lipscomb*, 299 F.3d at 339–42. For the reasons stated above, the Court finds that these factors weigh in favor of transferring this matter to the Peoria Division. In reaching this decision, the Court has not addressed the factor of pretrial publicity. The United States has strongly argued against finding that prejudicial pretrial publicity necessitates a change of venue in this case. *See* Doc. 153. If the Court were to consider pretrial publicity, it would likely only add further support for transferring this matter to the Peoria Division. However, even if the Court were to find a complete absence of prejudicial pretrial publicity—an unlikely finding given the significant public interest in this case—the Court's balancing of the Rule 18 factors would still weigh in favor of transfer to the Peoria Division. Therefore, Defendant's Motion for Intradistrict Transfer of Case is granted and this matter is transferred to the Peoria Division for further proceedings.[2]

## CONCLUSION

For the reasons set forth above, Defendant's Motion (Doc. 132) for Intradistrict Transfer of Case is GRANTED and this matter is transferred to the Peoria Division for further proceedings. Defendant's Motion (Doc. 131) to Change Venue is DENIED as MOOT.

Signed on this 6th day of December, 2018.

s/ James E. Shadid  
James E. Shadid  
Chief United States District Judge

---

[2] This Order does not affect the currently scheduled hearings set for December 17–19 in Urbana.