E-FILED
Friday, 07 December, 2018  04:24:34 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17-CR-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

**THE UNITED STATES OF AMERICA'S OBJECTIONS TO THE DEFENDANT'S
PROPOSED SUPPLEMENT TO THE JOINT JURY QUESTIONNAIRE**

NOW COMES the United States of America, by John C. Milhiser, United States

Attorney for the Central District of Illinois, Eugene L. Miller and Bryan D. Freres,

Assistant United States Attorneys, and Department of Justice Trial Attorney James B.

Nelson, and respectfully files its Objections to the Defendant's Proposed Supplement to

the Joint Jury Questionnaire.

## PROCEDURAL HISTORY

The parties separately filed proposed jury questionnaires on November 28 and

29, 2018. (R.157, 160) On November 30, 2018, the Court ordered the parties to file an

agreed, proposed questionnaire by December 6, 2018. Pursuant to the Court's Order, the

parties filed an Agreed, Proposed Jury Questionnaire on December 6, 2018. (R.164)[1] That

_____

[1] The United States is satisfied with the contents of this questionnaire, and has no
additional questions to propose – except, in the alternative, to proposed questions that
the defendant has proffered under seal.

same day, the defendant filed a proposed supplement to the agreed, proposed jury

questionnaire. (R.165)

## **LEGAL FRAMEWORK**

Jury selection must be adequate to assure the defendant receives a jury whose

members are able to impartially follow the Court's instructions and evaluate the

evidence. *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981). The exact scope of

questioning is committed to the broad discretion of the Court. *United States v. Tipton*, 90

F.3d 861, 877 (4th Cir. 1996) (citing *Rosales-Lopez*, 451 U.S. at 188 and *Ham v. South

Carolina*, 409 U.S. 524, 527 (1973)); *accord* Fed. R. Crim. P. 24(a). With limited exceptions,

no particular questions are constitutionally required, unless a failure to ask them would

"render the trial fundamentally unfair." *See Mu'Min v. Virginia*, 500 U.S. 415, 425-26

(1991) (rejecting any requirement to ask questions about the content of pretrial publicity

to which prospective jurors were exposed). Fed. R. Crim. P. 24 does not even mandate

that a jury questionnaire be used.

Nevertheless, certain areas of inquiry are required in capital cases. Questioning

must consist of more than general fairness and "follow the law" questions. *Morgan v.

Illinois*, 504 U.S. 719, 734-35 (1992). General inquiries are inadequate to determine if a

venire member has views about the death penalty that would prevent him or her from

following the law and considering all aggravating and mitigating evidence. *Id*. at 735.

Upon a capital defendant's request, the Court must ask if a venire member would

automatically vote for the death penalty, regardless of the facts, if the defendant was

convicted of a capital offense. *Id*. at 726-27. That inquiry is the converse of the

2

*Witherspoon* inquiry. Thus, the Court should permit direct questions to determine if prospective jurors would automatically vote for or against the death penalty. *See Morgan*, 504 U.S. at 733-34, 738; *Tipton*, 90 F.3d at 878 (stating the best method for determining if a prospective juror would automatically vote for the death penalty is to ask directly).

Increasingly, however, capital jury questionnaires and *voir dire* have grown into an endless morass in which every kind of question or statement is allowed in the interest of a generalized concept of "fundamental fairness." Perhaps more disturbingly, potential jurors' answers to questions contained in questionnaires have led to extensive post-conviction attempts to uncover misstatements or mistakes in an attempt to overturn convictions. Recent examples of motions to set aside federal capital verdicts and sentences based upon responses contained in jury questionnaires include *Sampson v. United States*, 724 F.3d 150 (1st Cir. 2013) and *Fell v. United States*, No. 5:01-cr-00012-GWC (D. Vt. March 21, 2011). (R.301)

In fact, a specialized defense jury selection procedure identified as the "Colorado Method" was developed by defense counsel in capital cases to "conduct capital voir dire in a manner that maximizes the opportunity to obtain life verdicts." *See* Rubenstein, *Overview of the Colorado Method of Capital Voir Dire*, 34 Champion 18 (2010). The Colorado Method advocates that "attorneys should discourage the court from using language that suggests the voir dire process is designed to identify jurors who can be "fair" or "appropriate" for the case." *Id*. at 21.

When *voir dire* is preceded by a comprehensive jury questionnaire, there may be a broad spectrum of case-specific questions that pose unique challenges peculiar to capital cases. These type of juror questionnaire case specific questions include "abstract questions" concerning the death penalty, the "defendant's status" questions, "case-categorization" questions, "case-specific" questions, and "stake-out questions." *See United States v. Johnson*, 366 F. Supp. 2d 822 (N.D. Iowa 2005).

"Abstract questions" include such questions as "If you found the defendant guilty, would you automatically vote to impose the death penalty no matter what the facts are?"*Id*. at 835.

"Defendant status" questions include questions such as those related to racial bias. *Id*. at 836.

"Case-categorization" questions ask a prospective juror about his or her ability to consider a life or death sentence, or both, in the particular category of capital case, such as murder-for-hire, felony-murder, or rape-murder, that the jurors would hear. *Id*. at 838.

"Case-specific" questions are "questions that ask whether or not jurors can consider or would vote to impose a life sentence or a death sentence in a case involving stated facts, either mitigating or aggravating, that are or might be actually at issue in the case that the jurors would hear." *Id*. at 840.

Finally, "stake-out" questions are certain case-specific questions that seek "to ask a juror to speculate or pre-commit to how that juror might vote based on any particular facts" *Id*. at 842.

These "stake-out" or "pre-committal" questions are also at the heart of the

Colorado Method. For example, Rubenstein states:

> Capital defense lawyers use leading questions with the goal of building a record that establishes the juror is impaired under the standard of *Wainwright v. Witt*. They seek to establish that the juror believes that the death penalty is the only appropriate punishment ("case-specific penalty bias"), cannot give meaningful consideration to life imprisonment without release, cannot give meaningful consideration and effect to mitigating circumstances ("case-relevant mitigating evidence bias"), will "burden shift" on the life or death issue and vote for death unless presented with compelling evidence to do otherwise by the defense, and will impose a death sentence based on an illegal basis (such as a concern about the cost of incarcerating an offender for life).

Rubenstein at 24. The goal of the Colorado Method is to create an incomplete and

misleading record to paint a pro-death leaning juror as "impaired" and strike them for

cause. *Id. This* purpose is made clear as follows:

> The defense seeks to develop multiple impairments to support the challenge for cause; however, the defense attorney must consider the strategic implications of seeking to develop additional impairments if the attorney believes the effort may ultimately detract from the argument that the juror is impaired. For example, if a prospective juror has made statements suggesting that the juror believes that a death sentence is the only appropriate sentence for a defendant who has committed the category of case charged in the case (e.g., a kidnapping-murder, murder of two people, or murder in prison, etc.), but the juror has made statements that lead the defense to believe the juror may indicate that he is interested in hearing about a defendant's background, the defense avoids unnecessary risk and skips questioning designed to develop a "mitigation impairment."

*Id.* (emphasis added).

In addition, the jury questionnaire is used as a precursor to facilitate and expand

*voir dire* and jury instructions beyond what is constitutionally or pragmatically required.

In fact, as noted below, many of the jury questionnaire's judicial admonishments are

contrary to well-established Supreme Court precedent concerning jury deliberations and the jury deliberative process. These admonishments are tailor-made and calculated to encourage nullification.

For example, in *United States v. Con-Ui*, a federal death penalty prosecution involving the prison murder of a guard, the court published a sweeping and expansive jury questionnaire suggested by the defense.[2] The questionnaire is in many respects identical to the supplemental requests by the defendant here. The questionnaire stated, in part:

> If, and only if, all twelve jurors unanimously find that death is the appropriate sentence for Mr. Con-Ui, will a death sentence be imposed. On the other hand, if one or more jurors find that a sentence of life imprisonment without the possibility of release is the appropriate sentence for Mr. Con-Ui, the judge will impose a sentence of life imprisonment without the possibility of release.

*United States v. Con-Ui*, 3:CR-13-123 (M.D. Pa. Aug. 18, 2016) (R. 911-3 at 28). The defendant's proposed addition contains the identical language. (R. 165 at 22)

This instruction is improper. In *Jones v. United States*, 527 U.S. 373 (1999), the Supreme Court expressly upheld the district court's refusal to inform the jury of the "consequences of jury deadlock." *Id.* at 381. The Court held that "The truth of the matter is that the proposed instruction has no bearing on the jury's role in the sentencing process." *Id.* Nevertheless, in *Con-Ui*, when the government objected to just such an instruction to the jury in *voir dire*, the defense pointed out:

---

[2] The United States apparently choose not to litigate this issue in *Con-Ui.*

Respectfully, that horse has left the barn. In the juror questionnaire jointly proposed and adopted by the court (ECF Doc. 911-3)—and now reviewed and completed by over 600 potential jurors—that very topic is discussed several times.

*Con-Ui*, 3:CR-13-123 (M.D. Pa.) (R. 994, 1003) Although the instruction was contrary to law, the defense was able to include the improper language in the jury questionnaire. The defense then promptly filed a motion to use a three foot by five foot chart during *voir dire* to convey the improper language to the jury. *Con-Ui*, 3:CR-13-123 (M.D. Pa) (R. 1029) This chart, another improper teaching of the Colorado Method, is part and parcel of the capital defense attorney's attack on *voir dire*. What begins with the pinprick of an improper question eventually becomes a mineshaft from which all manner of nullification questions are raised in *voir dire* and throughout trial.

The Eighth Circuit considered the scope of appropriate jury questions in *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998). In *Ramsey*, the defendant challenged his death sentence by claiming that the court impermissibly refused to ask jurors the following questions:

1.  Could each of you consider the death penalty in this case with the understanding that under Missouri law you are never required to impose it?

2.  If Roy Ramsey is convicted of first-degree murder, are there any of you who feel he should get the death penalty regardless of any mitigation circumstances?

3.  If you are convinced beyond a reasonable doubt, that Roy Ramsey is guilty of first-degree murder, would the defense have to convince you that he should not get the death penalty?

4.   Would your views on the death penalty prevent or substantially impair your ability to follow the following instruction: You are not compelled to fix death as the punishment, even if you do not find the existence of one or more mitigating circumstances, sufficient to outweigh the aggravating circumstances or circumstances which you find to exist. You must consider all of the circumstances in deciding whether to assess and declare the punishment at death. Whether that is to be your final decision rests with you. If you find one or all of the aggravating circumstances exist beyond a reasonable doubt, could you still consider life without parole as a possible punishment?

5.   If you find aggravating circumstances beyond a reasonable doubt and find that the mitigating circumstances do not outweigh the aggravating circumstances, would you still consider life without probation or parole as a possible punishment?

*Ramsey*, 149 F. 3d at 757. Instead, the court told jurors "If you were selected as a juror in this case, you must be able to vote for both of the punishments authorized by law. My question is would you be capable of voting for a sentence of death? Would you be capable of voting for a sentence of life without parole?" *Id*. The Eighth Circuit rejected the defendant's claims holding:

The trial court's queries were more direct and succinct than Ramsey's proposed questions, and addressed the crucial disqualification issue of whether the prospective jurors would automatically vote for or against the death penalty in every case. Because the trial court's questioning reasonably assured Ramsey of a chance to detect a potential juror's prejudice about the death penalty, Ramsey was not denied his rights to due process and a fair trial.

*Id.* (citation omitted).

The United States suggests that the supplemental questions offered by the defendant are calculated to achieve the goals espoused by the Colorado Method of jury selection:  to impair prospective jurors by getting them to pre-commit to stake out

8

questions. The admonishments and questions are also contrary to well-established

Supreme Court precedent. While this is not a prohibited purpose for capital defense

counsel, it is also neither constitutionally-mandated, nor calculated to achieve a fair trial

for all parties. *Morgan v. Illinois*, 504 U.S. 719 (1992); *Witherspoon v. Illinois*, 391 U.S. 510

(1968); or *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998). Further, the defendant's

supplemental questions include admonishments concerning penalties for perjury,

genuine interest in "learning your views and feelings on a variety of issues," and each

juror making a "unique individual personal judgement." Such admonishments run

counter to established law which proclaims that "the very object of the jury system is to

secure unanimity by a comparison of views, and by arguments among the jurors

themselves." *Allen* v. *United States*, 164 U.S. 492, 501 (1896).

## ARGUMENT

1.   THE DEFENDANT'S PROPOSED ORDER INSTRUCTING POTENTIAL
     JURORS

     The defendant has drafted a proposed order for instructing potential jurors. (R.

165, at 2-4). The United States respectfully defers to the Court on the proper wording of

the instructional order to potential jurors.

2.   THE DEFENDANT'S PROPOSED STATEMENTS REGARDING THE
     INDICTMENT AND SUMMARY OF THE CASE

     The defendant's proposed supplement includes a statement of the indictment

and a statement of the case. *Id*. at 5. The United States submits that the language of the

statement of the indictment is acceptable as written, but respectfully requests that this

statement be included in the instructional order rather than the questionnaire.

The United States objects to the wording of the statement of the case. This statement is an abbreviated version of the events peppered with confusing use of legal terminology such as "inveigled," "otherwise held for his own benefit and purpose," and "instrumentality of interstate commerce" – all of which are subject to further instruction by the Court. The United States respectfully submits that no statement of the case should be included in the questionnaire. To the extent that such a statement is included, it should be a brief, neutral statement of the allegations written in layman's terms.

3.      THE DEFENDANT'S PROPOSED POLITICS QUESTION

The defendant proposes to add single question about politics. *Id*. at 5. The United States objects to the inclusion of this question. Though the information elicited might be interesting to learn in another context, it is irrelevant to whether or not prospective jurors will be capable of impartially following the law and the question adds nothing to the questions about politics that were agreed to. (R.164-1 at 10-11)

4.      THE DEFENDANT'S PROPOSED CRIMINAL JUSTICE EXPERIENCE
         QUESTIONS

The defendant next proposes two questions with regard to Criminal Justice Experience. (R.165 at 6) The United States objects to these questions as they are inflammatory and improper. There is no basis in the law for asking whether potential jurors believe women who claim to have been sexually assaulted, and the inclusion of these questions cheapens both the decorum of this Court and the allegations in this case. Should this issue become relevant in this case, the defendant will have ample

opportunity to explore the area in cross-examination with regard to the relevant facts of this case.

To the extent that the Court is inclined to include these questions, the United States respectfully submits that the following counterpoint questions must also be submitted:

A. Do you believe that men sometimes deny having sexually assaulted a woman, even when they did, in fact, sexually assault the woman? ❑ Yes   ❑ No

B. When a man is accused of sexual assault, and he claims that the sex was consensual, do you feel your first instinct is to:
_____ Believe Him
_____ Doubt Him
_____ Wait and see what evidence there is to support his denial.

C. When a man is accused of sexual assault, and he claims that he never had sex with the woman, do you feel your first instinct is to:
_____ Believe Him
_____ Doubt Him
_____ Wait and see what evidence there is to support his denial.

The necessity of including these counterpoint questions in the jury questionnaire highlights the inappropriateness of the defendant's proposed questions.

5.     THE DEFENDANT'S PROPOSED CRIMINAL JUSTICE ISSUE QUESTION

The defendant proposes a single "Criminal Justice Issue" question in supplement to the agreed questionnaire. *Id.* This question is redundant and irrelevant.

The issue of the defendant's right to silence is addressed in the agreed questionnaire. (R.164 at 21).[3] This agreed-to question accurately states a potential juror's

---

[3] There is a typographical error in proposed question 88, which deals with this issue. The word "objection" in the first sentence should be "obligation." Undersigned counsel apologizes for this error.

obligation to respect the defendant's right to silence, asks if they will be able do so, and gives them an opportunity to explain their answer. The proposed question adds nothing, other than a confusing opportunity to check one of four boxes as to whether or not they "agree" or "disagree," "strongly agree" or "strongly disagree" that the defendant is entitled to exercise his Constitutional rights.

6.   THE DEFENDANT'S PROPOSED STATEMENT AND QUESTIONS REGARDING KNOWLEDGE OF THE CASE

The defendant next seeks to supplement the agreed jury questionnaire with regard to potential jurors' knowledge of the case. (R.165 at 6-7) The first paragraph of the defendant's proposed statement is inflammatory and objectionable. It is also redundant. The statement contained within Question 89 of the agreed questionnaire is sufficient to determine whether a potential juror is aware of the case. (R.164-1 at 22)

The defendant also proposes two supplemental questions regarding knowledge of the case. These questions are based on whether the potential juror is aware, or has discussed the case and whether, if so, they have formed an opinion about the case. (R.165 at 6) These questions are redundant and unnecessary. The exact same information is discussed in joint, proposed questions 89-90. (R.164-1 at 22-23)

7.   THE DEFENDANT'S PROPOSED STATEMENT AND QUESTIONS CONCERNING PUNISHMENT ARE INFLAMMATORY EXAMPLES OF THE IMPROPER COLORADO METHOD AND SHOULD BE EXCLUDED FROM THE FINAL JURY QUESTIONNAIRE

a.   Statement "Concerning Punishment"

The defendant next submits a proposed statement "concerning punishment." (R.165 at 7-9) This "statement" both exaggerates and misstates key statements regarding

the process and should be stricken on that basis alone. More troubling to the United

States, this statement begins a series of Colorado Method insinuations designed to

discourage jurors from their duty to deliberate. Multiple times, this statement mentions

a juror's "unique moral judgment" and states that "the law sets up a presumption of a

life sentence." *Id*. at 8-9. These statements appear to be a premature rendition of the

defendant's penalty-phase closing argument.

      As the Court is aware, the law requires jurors to deliberate on the facts and law –

not their unique moral judgment. Indeed, jurors are instructed to:

> [M]ake every reasonable effort to reach a verdict. In doing so, you should
> consult with each other, express your own views, and listen to your fellow
> jurors' opinions. Discuss your differences with an open mind. Do not
> hesitate to re-examine your own view and change your opinion if you come
> to believe it is wrong. But you should not surrender your honest beliefs
> about the weight or effect of evidence just because of the opinions of your
> fellow jurors or just so that there can be a unanimous verdict.
> . . .
> You should deliberate with the goal of reaching an agreement that is
> consistent with the individual judgment of each juror.

Seventh Circuit Pattern Criminal Jury Instruction 7.03. Thus, the defendant's attempt to

use the Colorado Method to encourage potential jurors not to fully deliberate is in direct

contradiction with the Seventh Circuit's Pattern Instruction.

      Even more importantly, the notion that jurors may substitute their own moral

code or "sympathy" in lieu of the evidence is contrary to law. "[F]ederal courts have

consistently held that jury instructions admonishing the jury to base its penalty

determination on mitigating or aggravating evidence, not on sympathy for the

defendant, pass constitutional muster." *Mayfield v. Woodford*, 270 F.3d 915, 923–24 (9th

Cir. 2001) (citing V*ictor v. Nebraska*, 511 U.S. 1, 13 (1994) (holding that an instruction not to be swayed by mere sympathy correctly pointed the jurors' attention to the evidence before them); *Johnson v. Texas*, 509 U.S. 350, 371–72 (1993) (holding that the constitution does not require that a capital jury be able to dispense mercy solely on the basis of a "sympathetic response to the defendant"); *California v. Brown*, 479 U.S. 538, 542–43 (1987) (permitting an instruction that the jury could not base its sentencing decision on sympathy); *Williams v. Calderon*, 52 F.3d 1465, 1481 (9th Cir. 1995) (observing that "'no sympathy' instructions have been held by the Supreme Court to be consistent with its mandate . . . that the sentencer be permitted to consider all mitigating evidence") (citations omitted)).

The defendant's proposed, supplemental questions 36-39 and 44-49 should all be stricken for the same reason. In addition to being redundant of each other, they encourage jurors to ignore their duty to deliberate and make emotional decisions rather than legal ones. As such, the Court should reject these proposed, supplemental questions as well as the defendant's "statement concerning punishment."

b.  Proposed Question 7 is Irrelevant and Vague

The defendant has proposed to inquire of the potential jurors what their personal feelings are regarding the "harshness" of life imprisonment. (R.165 at 9) This instruction is redundant to the numerous questions about imprisonment that have been agreed to. (R.164 at 19, 26)

Furthermore, this proposed question is vague. There is no definition for what the term "harsh" means within the confines of the questionnaire, and the answer to

14

whether something is "harsh" is subjective. Moreover, given that the defendant is facing the death penalty, a rational person might answer "no" to this question, even if they think life imprisonment is the second-harshest thing they could imagine. This question is no more likely to elicit useful information or the parties in jury selection than the questions that are already agreed to.

Most importantly, however, this question is irrelevant. The purpose of this trial is not to find a suitably "harsh" or "not harsh" punishment – this is a trial to determine whether or not the defendant, if convicted, should be put to death for his crimes. That is a decision that should be made based on a consideration of aggravation and mitigation. V*ictor*, 511 U.S. at 13; *Johnson*, 509 U.S. at 371–72; *Brown*, 479 U.S. at 542–43; *Mayfield*, 270 F.3d at 923–24; *Williams*, 52 F.3d at 1481.

   c.  The Defendant's Proposed "Stakeout" Questions are Improper and Should
        Not Be Included in the Jury Questionnaire

Continuing with the "Colorado Method," the defendant next proposes a series of "stakeout" questions that are intentionally inflammatory and offered in an effort to force potential jurors to pre-commit to an outcome so that they may be stricken for cause. Rubenstein, at 24. These inflammatory questions are routinely offered in federal capital cases, and they are routinely rejected by the Courts. *See, e.g.,* <u>Order Denying Request for Additional Questions in Juror Questionnaire</u> (R. 297), *United States v. Ulysses Jones, Jr.*, Case No. 6:10-cr-3090-DGK (W.D. Mo. June 27, 2017) (rejecting the defendant's proposed stakeout questions because they were "not necessary and, in fact, may be unfair in that some of the questions would 'pre-commit' perspective jurors to

certain propositions which would make them less likely to vote for the death penalty based on the specific facts of this case"); <u>Final Jury Questionnaire</u> (R. 449-1 at 1, 27-29), *Watts*, Case No. 4:14-cr-40063-JPG (S.D. Ill. Nov. 2, 2016).

The stakeout questions proposed by *Jones* and *Watts* are substantively identical to those proposed by the defendant here. As in *Jones* and *Watts*, the defendant's stakeout questions should be excluded from the final jury questionnaire. Specifically, the United States requests that proposed questions 8-10, and 14-19, and 22-30 should be excluded on this basis.[4]

The United States agrees that potential jurors should be questioned with regard to their specific views on the death penalty. In lieu of the defendant's Proposed Supplemental Questions 14 and 15, however, the United States respectfully recommends that the Court insert its proposed question 45, which reads as follows:

45.   Which of the following best describes your feelings about the death penalty? Please read all of the statements carefully, take some time to think, and then mark all of the choices which you believe describe your feelings.

    a.   I am opposed to the death penalty, and I will never vote to impose the death penalty in any case, no matter what the facts.

    b.   I am opposed to the death penalty, and I would have a difficult time voting to impose the death penalty.

    c.   I am opposed to the death penalty, but could vote to impose the death penalty if I believed that the death penalty was called for in light of the facts and the law in the case.

---

[4] These questions should also be stricken because they introduce facts that may or may not be introduced at trial, unless the defendant is willing to stipulate that he did, in fact, commit all of the acts mentioned.

d.    I have no definite opinions for or against the death penalty. I could vote to impose the death penalty, or I could vote to impose a sentence of life imprisonment without possibility of parole, whichever I believed was called for in light of the facts and the law in the case.

e.    I am in favor of the death penalty, but I could vote for a sentence of life imprisonment without possibility of parole if I believed that a sentence of life imprisonment without possibility of parole was called for in light of the facts and the law in the case.

f.    I am strongly in favor of the death penalty, and I would have a difficult time voting for a sentence of life imprisonment without possibility of parole.

g.    I am strongly in favor of the death penalty, and I would vote for the death penalty in every case in which the person charged is eligible for a death sentence.

h.    None of the statements above correctly describes my feelings about the death penalty.

(R.157 at 13-14) This question has the benefit of providing the parties with useful additional information without being worded in such an inflammatory way as to require inadvertent "pre-committal." This question was approved by the Southern District of Illinois in *Watts*. <u>Final Jury Questionnaire</u> (R.449-1 at 1, 27-29), Case No. 4:14-cr-40063-JPG (S.D. Ill. Nov. 2, 2016).

d.  The defendant's proposed questions about potential jurors' feelings on the death penalty are redundant and unnecessar<u>y</u>

The defendant next proposes to add five questions that are redundant to questions that have already been agreed to. (R.165 at 10, 12-13) Proposed supplemental questions 11-13 ask the potential jurors to describe their views on the death penalty and

state whether those views have changed in the last 10 years and, if so, how and why. (R.165 at 10) These questions are redundant to agreed-to question 97. (R.164 at 25)

Proposed supplemental questions 20 and 21 ask the potential juror to opine on whether there ought to be a death penalty, and if so, whether it is imposed frequently enough. (R.165 at 12-13) These questions are redundant to agreed-to questions 97 and 103. In addition to being redundant, these questions take an improper "next step" from asking the jurors about their potential biases and asks them to weigh in on matters of policy and legislation. The proper question for jury selection is whether the potential jurors can impartially apply the evidence presented to the law as it currently exists. This information is properly elicited from agreed-to questions 97 and 103.

e.  The defendant's proposed inquiry into potential jurors' feelings is redundant and irrelevant

The defendant next seeks to supplement the agreed-to questionnaire with a question about the potential jurors' "opinions and feelings" about the case. (R.165 at 18) This question is both redundant and improper.

To the extent that this question is asking whether the potential juror has heard about the case and/or formulated an opinion as to either guilt or punishment, that question is already asked in numerous ways. (R.164-1 at 22-23) The proposed question adds nothing to the questions that have already been agreed to.

Moreover, the question is an improper example of using the Colorado Method to encourage a potential juror to pre-commit to having opinions or feelings. By suggesting that "there is nothing wrong or improper with having feelings" and including it in a

document issued by the Court, the implication is that the Court thinks that the potential juror probably *does* have feelings about the case and *should* commit to writing them down. This is especially prejudicial considering that no option is given for indicating that the potential juror has no feelings or opinions regarding the case.

   f.   The defendant's proposed "state law" questions are improper

   The defendant next seeks to introduce into the "technical" defense that he should be acquitted because his case should have been brought in Illinois state court where there is no death penalty. (R.165 at 19) These questions are improper and should be excluded.

   First, it matters little what jurors think about a change in Illinois law. The potential jurors will not be sitting in Illinois state court or pledging to impartially apply Illinois law to the evidence in this case. Indeed, the potential jurors will not hear a single instruction on Illinois law at any point in the trial. This question, and those that follow in the defendant's proposed supplement, are improper Colorado Method questions designed to plant the idea that juror nullification is acceptable and that jurors need not perform their duty to deliberate.

   The defendant's next question about whether jurors think defendants "often go free because of so-called 'technical' defenses," while inflammatory, would be less objectionable in a vacuum. Considering, however, that it is part of the defendant's attempt to create a "technical" and legally-incorrect defense in the jury questionnaire, it should be stricken.

The final two questions in this series – asking the jury if they can follow an instruction to acquit the defendant because the case is not properly in federal court, even if they believe he committed the crimes -- is also improper. This case is only "not properly brought in federal court" if the United States fails to prove the elements of the Kidnapping charge. In that event, the jury will not be acquitting the defendant because of a difference between state law and federal law – they will, as the Court will instruct them, be acquitting him because he is not guilty.

Planting a seed in the potential juror's mind that they can sit on a federal jury and acquit the defendant because they think the case should be in State court is improper and could result in a miscarriage of justice. These questions must be stricken for the same reason that we are not asking jurors how they feel about the fact that the defendant – a married man with a girlfriend – could be executed in Saudi Arabia solely for having committed adultery, and whether they had thoughts and feelings about the justification of that punishment.

8.    THE DEFENDANT'S PROPOSED QUESTIONS CONCERNING LEGAL
PRINCIPLES AND EVIDENCE ARE REDUNDANT AND SHOULD BE
EXCLUDED FROM THE FINAL JURY QUESTIONNAIRE

The defendant next seeks to supplement the agreed jury questionnaire with redundant questions about certain legal principles. (R.165 at 20-21) Given their redundancy, these questions are unnecessary.

The defendant's proposed supplemental Questions 40 and 41 inquire about the potential jurors' ability to follow the presumption of innocence instruction. *Id*. The agreed jury questionnaire poses these questions in specific fashion. (R.164-1 at 21) The

agreed instructions are better phrased than the defendant's proposed supplemental questions because they call for written answers rather than the checking of boxes, which will require the jurors to think about their answer and give more information.

The defendant's proposed supplemental Questions 42 and 43 inquire about the potential jurors' ability to follow the right to silence instruction. (R.165 at 21) The agreed jury questionnaire poses these questions in specific fashion. (R.164-1 at 21) The defendant's proposed supplemental questions add nothing to the agreed questions.

The United States objects to the inclusion of the defendant's proposed supplemental questions 45-49, as noted *supra* in Section 7(a).

9.    THE DEFENDANT'S PROPOSED CONCLUDING QUESTION IS BOTH
      REDUNDANT AND IMPROPER AND SHOULD BE EXCLUDED

Finally, the defendant seeks to add a "concluding" question regarding the potential jurors' opinion on the defendant's ultimate sentence. (R.165 at 23) As with prior Colorado Method questions, this question includes the prodding that "there is nothing wrong or inappropriate" with having an opinion about the case. As noted above, this is a calculated technique to encourage a potential juror to pre-commit to having opinions or feelings regarding the case. Rubenstein, at 24. This suggestion, which would be included in a document issued by the Court, implies that the Court thinks the potential juror probably *does* have an opinion about the case and *should* commit to writing it down.

This question is also redundant. The agreed jury questionnaire poses numerous questions about the potential jurors' knowledge of the case and opinions about

punishment. (R.164-1 at 21-27) This proposed question adds nothing to those pages, save the potential for confusion and forced"pre-committal." As such, this question should not be included.

## **CONCLUSION**

The Agreed, Proposed Jury Questionnaire (R.164-1) is a result of the parties meeting, conferring, and compromising on questions that are both legally accurate and factually appropriate as a first step in jury selection. The defendant's Proposed Supplemental Jury Questions (R.165) are inflammatory, redundant, and specifically designed not to identify and select fair and impartial jurors, but to identify and select jurors who are predisposed in the defendant's favor and to create reasons to strike jurors who are not so predisposed and to later appeal if any are selected. As such, the Court should follow the lead of *Jones* and *Watts* in excluding the defendant's supplemental questions from the final jury questionnaire.

Respectfully submitted,

JOHN C. MILHISER
UNITED STATES ATTORNEY

*/s/Eugene L. Miller*
Eugene L. Miller
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone: 217/373-5875
Fax: 217/373-5891
eugene.miller@usdoj.gov

*/s/ James B. Nelson*
James B. Nelson
Trial Attorney
Capital Case Section
United States Department of Justice
1331 F. Street NW, Room 625
Washington, DC 20004
 Phone: 202/598-2972
james.nelson@usdoj.gov

*/s/Bryan D. Freres*
Bryan D. Freres
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone: 217/373-5875
Fax: 217/373-5891
bryan.freres@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2018, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system which will send notification of such

filing to counsel of record.

*/s/ James B. Nelson*
James B. Nelson, Bar No. NV 9134
Trial Attorney
Capital Case Section
United States Department of Justice
1331 F. Street NW, Room 625
Washington, DC 20004
Tel: (202) 598-2872
james.nelson@usdoj.gov