UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Crim. No. 17-20037 |
| BRENDT A. CHRISTENSEN, | ) ) | Hearing Requested |
| Defendant. | ) ) | |

<u>REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO BAR AND
SUPPRESS IDENTIFICATION TESTIMONY AND EVIDENCE (R. 146)</u>

Now comes the Defendant, BRENDT A. CHRISTENSEN, by and through his attorneys, and for his Reply to the Government's Response to his Motion to Bar and Suppress Identification Testimony and Evidence (R #146), states as follows:

**I.  The expected testimony of E.H. and K.K. is not relevant, and admissible, under the Federal Rules of Evidence.**

In its response, the Government contends that "evidence of the defendant's recent, prior attempts to lure other women into his car…" is relevant and admissible to "…(1) connecting the defendant to the black Saturn Astra during the relevant time period; (2) establishing his preparation and plan of driving around campus looking for female student victims; and (3) showing the defendant's method of inveiglement by pretending to be a police officer…".  (R. #146, p. 5).  It is also relevant, the Government argues, to the false statement charges in Counts 1 and 2 of the Superseding Indictment, because "it

1

tends to show that the defendant did not stay home and play video games all day on Friday, June 9, 2017, as he told the FBI agents on June 12, 2017." *Id.*

The Government's arguments, however, are specious, and should be rejected by this Court, as there is no basis for either E.H's or K.K.'s expected testimony as having any tendency of proving that it was the defendant, Brendt A. Christensen, who approached E.H. in the "black sedan" on June 9, 2017, or K.K. in the "dark, older hatchback" on June 7, 2017, and either attempted to induce E.H. to get into the vehicle, or who "cat called" to K.K. while the vehicle was stationary in traffic on the street.

Moreover, E.H.'s utterly vague description of the "white male in the black four-door sedan" whom she encountered on the morning of June 9, 2017, and her selection of photograph #3 from the array on June 14, 2017, at the FBI field office in Champaign, because the person depicted therein "shared the most characteristics with the individual who approached her in the car," even though she was not positive and could not say for certain that the man she observed was depicted in the photos, is so general and nondescript as to amount to no identification of Mr. Christensen at all.

And K.K.'s identification of another individual's photo from that of Mr. Christensen from the same photo array, and her equally vague and non-descript description of the man, strongly establishes that Mr. Christensen was **not** the man who "cat called" to her from his car on June 7, 2017. Because such evidence does not come close to proving, by any reliable means, that Mr. Christensen was the man who approached E.H. on June 9, 2017, or K.K. on June 7, 2017, while seated in a vehicle and

2

wearing sunglasses, this Court should bar the Government from making any use of it as evidence at the trial of this case.

It is telling that the Government doesn't address or even mention *United States v. Westmoreland*, 312 F.3d 302, 311 (7th Cir. 2002), in its response. In that case, the Seventh Circuit found that it was error for the district court to admit into evidence a false letter that was purportedly authored by the defendant's wife and submitted at the sentencing hearing of the defendant's earlier drug trial. According to the court, the relevance of the letter was questionable, given the letter's true author was never established, and there was no evidence that the defendant knew of or authorized the letter being submitted to the court in an effort or attempt to obstruct justice.

Instead, the Government cites *United States v. Romero*, 189 F.3d 576, 588 (7th Cir. 1999)(finding defendant's prior recorded phone conversations with other potential victims "highly probative of Romero's intent), and *United States v. Diekhoff*, 535 F.3d 611 (7th Cir. 2008)(evidence of defendant's prior kidnapping relevant as bearing directly on defendant's state of mind), cases that are completely inapposite, where, as in *Romero*, the evidence established beyond any doubt that it was the defendant who engaged in prior recorded phone conversations with other potential victims (*Romero*), and where, as in *Diekhoff*, it was undisputed that the defendant was previously convicted of kidnapping.

Here, on the other hand, the expected testimony of E.H. and K.K. concerning their vague descriptions of the white male wearing dark sunglasses who approached or

3

"cat called" them from his vehicle on separate dates and locations falls far short of establishing that it was Mr. Christensen who did what they described to the police. And finally, whatever probative value, if any, such evidence may have, it is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury that would result to Mr. Christensen if such evidence is admitted at trial in a case where he is charged with kidnapping resulting in death and is facing the death penalty if convicted.

For all of the foregoing reasons, this Court should bar the Government from using this evidence in any manner against Mr. Christensen at trial under Rules 401, 403, and 404(b), Fed.R.Evid.

**II.    The expected testimony of E.H. and K.K. should be suppressed as the result of unnecessarily suggestive identification procedures that give rise to a substantial likelihood of irreparable misidentification.**

This Court has ruled that it will schedule a hearing on Mr. Christensen's motion to bar and suppress identification testimony and evidence sometime in January, 2019, to accommodate an expert witness for the defense who resides out of state and is not available to travel to the Central District of Illinois during the month of December, 2018. At that hearing, the defense will present evidence and argument that the FBI's composition of the photographic array, and the manner in which it was presented to E.H. and K.K. and June 14, 2017, was unnecessarily suggestive and conducive to substantial likelihood of irreparable misidentification. *Perry v. New Hampshire*, 565 U.S. 228 232 (2012) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)).

4

As the Supreme Court has long recognized, "reliability is the linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite,* 432 U.S. 98, 114 (1977). In assessing whether an identification was reliable, a court should consider the following factors: (1) the opportunity of the witness to view the criminal at the time of the crime (or prior to the identification), (2) the witness's degree of attention during such an opportunity, (3) the accuracy of the witness's prior description of the criminal, if he made one, (4) the level of certainty demonstrated at the time of the identification, and (5) the time between the crime and the identification. I*d*. at 114; *United States v. Curry*, 187 F.3d at 768. Therefore, because of the fact-intensive nature of the "reliability factors" for determining the admissibility of identification testimony, an evidentiary hearing is necessary for this Court to make appropriate findings on the issues raised in Mr. Christensen's motion to bar and suppress.

In *United States v. Ford*, 683 F.3d 761, 766 (7th Cir. 2012), the Seventh Circuit observed that, "[a]s awareness of the frequency of mistakes in eyewitness identification has grown (see, e.g., Jon B. Gould & Richard A. Leo, "One Hundred Years Later: Wrongful Convictions After a Century of Research," 100 J. Crim. L. & Criminology 825, 841–42 (2010); Innocence Project, "Reevaluating Lineups: Why Witnesses Make Mistakes and How to Reduce the Chance of a Misidentification" 3–4 (2009), www. innocence project. org/docs/Eyewitness_ ID_ Report. pdf (visited May 31, 2012); Richard A. Wise et al., "How to Analyze the Accuracy of Eyewitness Testimony in a Criminal Case," 42 Conn. L. Rev. 435, 440–41 (2009); Sandra Guerra Thompson,

"Beyond a Reasonable Doubt? Reconsidering Uncorroborated Eyewitness Identification Testimony," 41 U.C. Davis L. Rev. 1487, 1490–91, 1497–98 (2008); Brandon L. Garrett, "Judging Innocence," 108 Colum. L. Rev. 55, 60 (2008); Samuel R. Gross et al., "Exonerations in the United States 1989 Through 2003," 95 J. Crim. L. & Criminology 523, 542 (2005)), so has the need for judges to be especially wary about suggestive arrays shown potential witnesses." This is so, because"[e]ven under the best circumstances, the probability of erroneous identification of a stranger seen briefly is uncomfortably high." *United States v. Brown*, 471 F.3d 802, 804 (7th Cir. 2006). And yet, "despite its inherent unreliability, much eyewitness identification evidence has a powerful impact on juries." *Watkins v. Sowders,* 449 U.S. 341, 352 (1981) (Brennan, J., dissenting).

      In recognition of such concerns, former Deputy Attorney General Sally Q. Yates, in her Memorandum to all heads of Department of Justice Law Enforcement Agencies and all federal prosecutors concerning "Eyewitness Identification: Procedures for Conducting Photo Arrays," issued January 6, 2017, stated, "[e]yewitness identifications play an important role in our criminal justice system, both by helping officers and agents identify suspects during an investigation and by helping juries determine guilt at trial. It is therefore crucial that the procedures law enforcement officers follow in conducting those identifications ensure the accuracy and reliability of evidence elicited from eyewitnesses." And to promote sound professional practices and consistency across the Department's law enforcement efforts, the memorandum outlines the various procedures that federal law enforcement agents are required to employ in composing

and administering photo arrays in criminal investigations effective January 6, 2017. A copy of the DOJ policy is attached to the Mr. Christensen's motion as Exhibit A and is referenced throughout his argument to suppress E.H. and K.K.'s expected testimony.

That DOJ policy, which was in effect for over six months before Mr. Christensen's arrest, and which defense counsel obtained from the DOJ Office of Public Affairs via the internet at https://www.justice.gov/opa/pr/justice-department-announces-department-wide-procedures-eyewitness-identification, applies to agents at FBI, Drug Enforcement Administration (DEA), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and the U.S. Marshals Service, and is intended to guide federal prosecutors when deciding whether to charge a case involving an eyewitness identification. (See Exhibit A)

In view of such serious and well-founded concerns about the reliability of eyewitness identification procedures, and the pressing need for uniform standards and protocols for federal law enforcement agencies in conducting their investigations, it is disconcerting, to say the least, that the Government chides Mr. Christensen and his defense counsel in its response for "improperly attaching this internal DOJ memorandum as an exhibit to his motion, claims it creates rights enforceable in this criminal proceeding, and argues that non-compliance with the 'best practices' renders the identification unreliable and inadmissible." (R. #146, p. 11).

Whatever "impropriety" the Government is referring to is unclear from its response. What is readily apparent, however, is that the Government's implicit

acknowledgment that it "didn't get the memo," and that it didn't follow the memo's directives in Mr. Christensen's case, is all in derogation of the DOJ department-wide policy that was in effect on June 14, 2017, and that has not since been rescinded or revoked and that requires:

> except in exceptional circumstances, agents should administer photo arrays using either "blind" procedures (where the administrator is not involved in the investigation and does not know what the suspect looks like) or "blinded" procedures (where the administrator takes steps to ensure he or she cannot see the order or arrangement of the photographs viewed by the witness). In addition, the new policy stresses the importance of documenting a witness's self-reported confidence at the moment of the initial identification, reflecting a growing body of research that such confidence is often a more reliable predictor of eyewitness accuracy that a witness's confidence at the time of trial. The department's new procedures call on agents to document the identification either by video- or audio-recording the test, or by having the administrator transcribe the witness's statement as close to verbatim as possible.

(See attached Exhibit A).

Mr. Christensen and his defense team intend to present evidence and testimony at the hearing on this motion to prove that the corrupting effect of the FBI's composition and administration of the photographic array to E.H. and K.K. makes any photographic identification and testimony at trial by E.H. and K.K. both unreliable and inadmissible as evidence.

Accordingly, because the evidence at the hearing on this motion will show that the Government employed a photographic array that was both unnecessarily suggestive and conducive to giving rise to a very substantial likelihood of irreparable misidentification, this Court should bar the Government from introducing any

identification testimony and evidence of E.H. and K.K. at trial. *Perry,* 565 U.S. at 232; *Ford*, 683 F.3d at 766.

                                      Respectfully submitted,

                                      BRENDT A. CHRISTENSEN, Defendant

| | | |
|---|---|---|
| By: | /s/ Elisabeth R. Pollock<br>Assistant Federal Public Defender<br>300 West Main Street<br>Urbana, IL  61801<br>Phone: 217-373-0666<br>FAX:   217-373-0667<br>Email: Elisabeth_Pollock@fd.org | /s/ George Taseff<br>Assistant Federal Public Defender<br>401 Main Street, Suite 1500<br>Peoria, IL  61602<br>Phone: 309-671-7891<br>Fax:    309-671-7898<br>Email: George_Taseff@fd.org |
| | /s/ Robert Tucker<br>Robert L. Tucker, Esq.<br>7114 Washington Ave<br>St. Louis, MO 63130<br>Phone: 703-527-1622<br>Email: roberttuckerlaw@gmail.com | /s/ Julie Brain<br>Julie Brain, Esq.<br>916 South 2nd Street<br>Philadelphia, PA 19147<br>Phone: 267-639-0417<br>Email: juliebrain1@yahoo.com |

CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the filing: Mr. Eugene Miller and Bryan David Freres, Assistant United States Attorneys, 201 South Vine Street, Urbana, IL 61801, and Mr. James B. Nelson, Trial Attorney, Capital Case Section, 1351 F Street NW, Room 625, Washington, D.C. 20004. A copy was also mailed to Mr. Christensen.

/s/Elisabeth R. Pollock
Assistant Federal Public Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org

JUSTICE NEWS

**Department of Justice**

Office of Public Affairs

FOR IMMEDIATE RELEASE                                    Friday, January 6, 2017

## Justice Department Announces Department-Wide Procedures for Eyewitness Identification

Deputy Attorney General Sally Q. Yates announced today that the Justice Department is issuing, for the first time, department-wide procedures on eyewitness identification, which will apply to agents at FBI, Drug Enforcement Administration (DEA), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and the U.S. Marshals Service, and which will guide federal prosecutors when deciding whether to charge a case involving an eyewitness identification. The new procedures were outlined in a memo from Yates to the heads of the department's law enforcement agencies. The procedures address the use of "photo arrays," the most common methods used by law enforcement to determine whether a witness can identify the perpetrator of a crime, and are designed to ensure that law enforcement personnel do not suggest to a witness, even unintentionally, that they know which photograph contains the image of the suspect.

"Eyewitness identifications play an important role in our criminal justice system, and it's important that we get them right," said Deputy Attorney General Yates. "With today's procedures, we're taking one more step to ensure that law enforcement officers obtain the most reliable evidence possible during a criminal investigation and that all Americans can have confidence in the fairness of our criminal justice system."

The memo issued today establishes a department-wide policy directing that, except in exceptional circumstances, agents should administer photo arrays using either "blind" procedures (where the administrator is not involved in the investigation and does not know what the suspect looks like) or "blinded" procedures (where the administrator takes steps to ensure he or she cannot see the order or arrangement of the photographs viewed by the witness). In addition, the new policy stresses the importance of documenting a witness's self-reported confidence at the moment of the initial identification, reflecting a growing body of research that such confidence is often a more reliable predictor of eyewitness accuracy that a witness's confidence at the time of trial. The department's new procedures call on agents to document the identification either by video- or audio-recording the test, or by having the administrator transcribe the witness's statement as close to verbatim as possible.

In the memorandum, Yates directed the heads of the department's law enforcement agencies to update their internal policies to reflect the new guidance and called on all department prosecutors to review the procedures prior to making a decision about whether to charge a

EXHIBIT A

suspect who was identified in part through the use of a photo array, whether obtained by federal, state, or local law enforcement officers.

DAG Memo - Procedures for Photo Arrays

**Component(s):**
Office of the Deputy Attorney General

**Press Release Number:**
17-013

*Updated January 6, 2017*