E-FILED
Friday, 07 December, 2018 05:10:26 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Crim. No. 17-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | Hearing Requested |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO RESPONSE TO MOTION TO STRIKE AGGRAVATING FACTOR ALLEGING FUTURE DANGEROUSNESS (R. 122)

Mr. Christensen submits this reply to the government's response to his *Motion to Strike Aggravating Factor Alleging Future Dangerousness* (*Motion*), Dkt 122. The government's response is found at pages 20-24 of the *United States' Omnibus Response to Defendant's Motions to Strike Non-Statutory Aggravators*, Dkt. 150. (*Response*).

The *Response*, at 21, begins by citing cases holding future dangerousness evidence is admissible in a capital case, including the seminal decisions of the Supreme Court in *Jurek v. Texas*, 428 U.S. 262, 274-75 (1976), and *Barefoot v. Estelle*, 463 U.S. 880, 898 (1963). *Id*. 21. Pointing to the language in *Jurek* acknowledging the difficulty in predicting future dangerousness, 428 U.S. at 274-75, and that in *Barefoot* 463 U.S. at 898, suggesting that future developments might shed more information on the reliability of such predictions, *Motion* at 3-5, Mr. Christensen cited a host of studies, finding that neither prosecutors nor jurors are able to reliably assess future dangerousness. Mr. Christensen

thus contends such evidence should be excluded under the Eighth Amendment. *Motion, at* 6-9.

The *Response* discards the significance of these arguments, stating "the defendant offers distinguishable cases and articles written by death penalty abolitionists." *Response*, at 22. As to the latter, the *Response* offers no evidence supporting its characterization of the authors of the numerous studies cited in the *Motion*, and, more tellingly, offers none questioning their methodology or the accuracy of the results of the studies. Nor does the *Response* cite any similar studies reaching contrary conclusions. As to the former, the *Response* makes no effort to identify the cases which it cites as "distinguishable," much less to actually point out the alleged distinctions.

Mr. Christensen argues that the future dangerousness allegation in ¶ III-2 of the Notice of Intent (NOI) is essentially identical to that recently found unconstitutionally vague in *Johnson v. United States*, 135 S. Ct. 2551 (2017), and that the reasoning underlying *Johnson* applies with even more force here. *Motion*, at 11-15. In response, the government sets out six distinguishing factors between this case and *Johnson*, all of which are obvious – such as *Johnson* was not a capital case and did not directly discuss the issue of future dangerousness or non-statutory aggravators, etc. *Response*, at 22. But, the *Response* makes no effort to explain why any of these differences, many of which are of the type present when comparing any two cases, have any constitutional significance as to the principles announced in, and the reasoning of, *Johnson*. The *Response* grudgingly admits that the Supreme Court has held that aggravating factors cannot be

unconstitutionally vague, *id*. at 23,[1] but attempts to distinguish *Johnson* because it "concerns the vagueness of statutorily-defined offenses, rather than non-statutory sentencing allegations." *Id*. at 22. Why this distinction would be of any importance the *Response* does not deign to explain. Regardless of whether non-statutory aggravating factors are considered elements of the offense, they must be proven beyond a reasonable doubt, 18 U.S.C. § 3593(c), and non-statutory aggravating factors are subject to the same vagueness restrictions as statutory aggravators. *See United States v. Barrett,* 496 F.3d 1079, 1110 (10th Cir. 2007) ("[A] defendant always retains the right to challenge, as unconstitutionally vague, any particular non-statutory factor."); *United States v. Stone*, 2013 WL 5934349, at *2 (E.D. Cal. 2013)(striking vague non-statutory aggravating factor); *see generally Reply to Response to Motion to Strike Non-Statutory Aggravating Factor of "Obstruction of Investigation,"* at 3-5 (filed December 7, 2018) (collecting cases hold that non-statutory aggravating factors must satisfy the same foundational constitutional prerequisites as aggravating factors).

As the *Motion* discusses, the very same problems identified in *Johnson* are present to an even greater degree here, including the lack of standards as to how a jury is to measure the risk of future dangerousness; how much risk is sufficient – particularly problematic in light of the difficulty in attaching meaning to the term "acts of violence" in the context of prisons; and the fact that, unlike *Johnson*, which considered past

---

[1]While the *Response's* use of the term "exquisite rarity," *id*., at 23, is unclear, the Supreme Court has found aggravating factor unconstitutionally vague. *See Maynard v. Cartwright*, 486 U.S. 356 (1988) ("especially heinous, atrocious, or cruel" aggravating circumstance was unconstitutionally vague, as it did not offer sufficient guidance to the jury in deciding whether to impose the death penalty); *Godfrey v. Georgia*, 446 U.S. 420 (1980) ("outrageously or wantonly vile, horrible or inhuman").

identifiable conduct, here the jury is asked to make a much more speculative assessment concerning *future* conduct. *Motion*, at 12-14. The *Response* addresses none of these points.

The *Response* does not take issue with the "heightened reliability" standard applicable to the admission of evidence at a capital sentencing hearing, but, in a non-sequitur, discounts its relevance because the standard only "call[s] for heightened reliability in ascertaining that this individual should be put to death." *Id*. 23 (citation omitted). The significance of this purported distinction is blurry, at best, as the purpose of the future dangerousness allegation in this case is to ascertain whether Mr. Christensen should be put to death. Further, as applied to aggravating factors, the *Response*'s argument that "more rather than less" evidence is consistent with heightened reliability is counterintuitive when the evidence is unreliable.[2] Vague allegations are unconstitutional, not only because of problems with notice but because the attempt to apply such standards leads to unreliable results. *See Johnson*, 135 S. Ct. at 2558 ("The residual clause offers no reliable way to choose between . . .").

Paragraph III-2 of the NOI lists four categories of evidence, alleged to constitute future dangerousness. Mr. Christensen, alternatively, argues that evidence concerning

[2]Each of the three cases cited by the *Response*, at 23, merely state the general proposition that more rather than less evidence brings more reliability to the sentencing process in a capital case. *Lee*, 374 U.S., at 648, and *Montgomery*, 10 F. Supp. 3d., at 813-14, recited this proposition in the context of a general issue concerning the application of the balancing test in § 3593, not as applied to any particular evidentiary issue. *Basciano*, 763 F. Supp. 3d 358, n. 41, recited this principle in a paragraph generally reviewing principles governing the admission of uncharged prior criminal conduct. In none of the cases was the idea invoked as justification to admit a particular piece or category of otherwise unreliable evidence. An argument that an item or category of unreliable evidence should be admitted because simply because "more is better" would likely be summarily rejected as unreasonable and capricious.

each should be excluded pursuant to 18 U.S.C. ¶ 3593, because the dangers of "unfair prejudice, confusing the issues, or misleading the jury" outweigh their probative value. In support of the argument, the *Motion* analyzed each factor in the context both of its probative value, or lack thereof, and its potential for unfair prejudice. *Motion*, at 15-22.

The *Response* makes no attempt to demonstrate why the probative value of the evidence outweighs its prejudicial effect. Instead, it flips the burden by stating that "[t]he defendant has failed to provide any basis to conclude that he would suffer unfair prejudice." *Id*. 24. This tactic ignores the fact that "[t]he proponent of the evidence bears the burden of persuading the district court that the proposed testimony is sufficiently reliable and that its probative value outweighs its prejudicial effect." *United States v. Kimberlin*, 805 F.2d 210, 254 (7th Cir. 1986). It is the government who is attempting to introduce the evidence of future dangerousness and it has the burden of demonstrating that the proposed evidence satisfies the standard of § 3593(c).

The purported justification for not directly addressing the issues is a misconceived and incorrect allegation that, in raising this issue, Mr. Christensen is engaging in a "fishing expedition to discover the United States' trial strategy. " *Response*, at 24. The *Response* does not explain exactly why this is so. The *Motion* sets out the evidence that the defense alleges should be excluded, so the defense is not seeking to discover the government's evidence. To the extent that the "fishing" allegation is meant to refer to the government's theory as to why the evidence is admissible, the allegation is unsubstantial, as these types of issues are normally raised pretrial through motions *in limine*, a procedure favored by most courts. The *Response* cites no authority,

and the defense is aware of none, suggesting that when an issue is raised under either Fed. R. Evid. 403 or its counterpart in § 3593(c), the government can avoid engaging the merits of the issue by merely claiming that the defense is engaging in a "fishing expedition."

As discussed, the *Motion*'s recital of the e-mails between the prosecutors and the jails and between the prosecutors was far from "gratuitous," as these communications were integral to Mr. Christensen's legal argument. Nonetheless, apparently miffed at the light in which the e-mails show the participants, or perhaps seeking to redirect the issues, the government unleashes a barrage of accusations at pages 8-10 of the Response. In one respect this is more of the same, as throughout its pleadings the government repeatedly injects disparaging characterizations such as, for example, describing defense arguments as "a diatribe against capital punishment," "meandering," or nothing more than "stock capital defense arguments," unmindful or uncaring of the obligations imposed on defense counsel in capital cases to "consider all legal claims potentially available" and "present the claim as forcibly as possible." *See American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases* (February 2003), Guideline 10.8, 31 Hofstra Law Review 913 (2003).

Sensitive to the professional obligation of advocates to demonstrate respect for other attorneys,[3] recognizing that the government attorneys have the same obligation to

[3]*See* Illinois Rules of Professional Conduct of 2010: Preamble, Par. 5: "A lawyer should demonstrate respect for the legal system and all who participate in it."

zealously represent their client as defense counsel, and proceeding on the assumption that the Court is not interested in these sorts of exchanges between counsel, we would normally just assign such tactics to misplaced adversarial zeal and not comment further. But, because the tone and substance of the harangue of the Response's closing escalates prior false accusations unfairly suggesting misconduct by counsel,[4] and, more important, appears to be designed to prejudice the defense in the eyes of this Court and infect the record, thereby potentially harming Mr. Christensen, they cannot go unanswered.

a. The Accusation that Counsel Violated the Protective Order

The *Response* claims that the defense was specifically informed that the e-mails were "work product," protected by Rule 16(a)(2), and that counsel violated a Protective Order prohibiting the dissemination of discovery material. *Id*. 10. Neither charge is correct.

It is true that the defense signed a Protective Order agreeing not to "allow it [discovery] out of [their] custody" nor "allow it to be disseminated in any way." it is commonly understood that such provisions in Protective Orders do not apply to the use

---

[4]For instance, in its *Response to the Defendant's Motion to Bar and Suppress Identification Testimony and Evidence*, Dkt. 146, at 11, the government suggests that the defense "*improperly attache[d]* [an] *internal DOJ memorandum* to his motion. The document in question is a January 2017 memorandum from Deputy Attorney General Sally Yates setting out recommendations for identification procedures in criminal cases. *See* Dkt. 99, Exhibit 2-1. While the government's legal arguments concerning the significance of the memorandum are fair enough, not content with simply presenting the same, the government tosses in this implied accusation that the defense has improperly pilfered or revealed some confidential document of the Department of Justice *despite the fact that the memorandum was the subject of a press release and is published on the Department's website. See* *https://www.justice.gov/archives/opa/press-release/file/923201/download*.

of the discovery materials in connection with the criminal case and certainly do not prohibit their use in proceedings before the Court. The Protective Order we signed reflects, in essence, the requirements of Local Criminal Rule 16.2(B), which prohibits the dissemination of discovery "for any purpose other than in *direct relationship to the criminal case* to which the discovery pertains." (emphasis added). Obviously, the use of this material was directly related to the criminal case and was consistent with the commonly understood meaning of such language in Protective Orders.

Additional reasons suggest the unreasonableness of the allegation. First, the government itself has repeatedly indicated that it "intends to use the materials and recordings it has provided to the defense pursuant to Rule 16 during the trial" despite requests by the defense to more specifically identify the evidence it intends to use. Letter to Defense Counsel, July 11, 2018, at 5, Request # 9. The government has made the same representation to the Court in its response to the defense's Rule 12(b)(4)(B) motion. Dkt. 85, at 7 ("[T]he United States has also advised the defendant that it is considering using *all* of the Rule 16 evidence in its *case-in-chief* at this time." (emphasis added). Stated otherwise, the government has repeatedly said that it intends to "disseminate" part or all of the discovery during the proceedings in this case at its pleasure. There is no logical distinction between such "dissemination" during pretrial proceedings and trial and defense counsel are unaware of any provision in the rules that permits the government to use discovery that it is required to turn over under Rule 16, while the defense is somehow limited to its use only at the direction and permission of the government.

Further, none of the four defense counsel who met with the government to discuss discovery requests recall the government asking the defense to treat this discovery as protected work product under Rule 16(a)(2), as alleged in the *Response*, and no such request was made in the letter transmitting the material. Had such a request been made, counsel would have filed the material under seal to accommodate the government.

b. The Suggestion that Defense Counsel was Attempting to Influence Press Coverage

The most feigned outrage was saved for footnote 4, at 9-10, where the government suggests the need to take care in pleadings because of their "potential to taint the jury pool." This remark elevates irony and chutzpah[5] to a new level in light of prior events in this case. On February 7, 2018, the defense filed a *Sealed Exhibit D* to its *Memorandum in Support of Proposed Scheduling Order* that referenced a confidential matter that had the potential to taint the jury pool in the most fundamental way. *See* Dkt. 60. Apparently sensing a possible advantage to having this confidential matter made public, the government filed a motion to strike the Exhibit or unseal it, allegedly to permit the government to file a response (which it could have done without the requested unsealing). Dkt. 69. After the defense filed a response pointing out the potential prejudice and violations of ethical canons entailed in the government's request, Dkt. 72, the Court denied the government's motion to unseal (and to strike).

[5] For a legal definition of "chutzpah," *see Harbor Ins. Co. v. Schnabel Foundation Co., Inc.*, 946 F.2d 930, 938, n.5 (1991)("a young man convicted of murdering his parents, who argues for mercy, on the ground that he is an orphan.").

Sealed Dkt. 75. In light of these events, the Court should give no weight to the government's claims of misconduct and gently remind the government that such claims should not be made lightly.

Respectfully submitted,

BRENDT A. CHRISTENSEN, Defendant

By: /s/Elisabeth R. Pollock
Assistant Federal Public Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX: 217-373-0667
Email: Elisabeth_Pollock@fd.org

/s/ George Taseff
Assistant Federal Public Defender
401 Main Street, Suite 1500
Peoria, IL 61602
Phone: 309-671-7891
Fax: 309-671-7898
Email: George_Taseff@fd.org

/s/ Robert Tucker
Robert L. Tucker, Esq.
7114 Washington Ave.
St. Louis, MO 63130
Phone: 703-527-1622
Email: roberttuckerlaw@gmail.com

/s/ Julie Brain
Julie Brain
916 South 2nd
Philadelphia, Pa. 19147
Phone: 267-639-0417
juliebrain1@yahoo.com

CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorneys Bryan D. Freres and Eugene L. Miller and Trial Attorney James B. Nelson. A copy was also mailed to the defendant.

/s/Elisabeth R. Pollock
Assistant Federal Public Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX: 217-373-0667
Email: Elisabeth_Pollock@fd.org