UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Crim. No. 17-20037 |
| ) | |
| BRENDT A. CHRISTENSEN, ) | Hearing Requested |
| ) | |
| Defendant. ) | |

REPLY TO RESPONSE TO MOTION TO STRIKE NON-STATUTORY AGRRAVATING FACTOR OF "OTHER SERIOUS ACTS OF VIOLENCE" (R. 108)

NOW COMES the Defendant, BRENDT A. CHRISTENSEN, by and through his attorneys, and for his Reply to the government's Response to his Motion to Strike the Non-Statutory Aggravating Factor of Other Serious Acts of Violence states as follows:

I. **The Fifth and Eighth Amendments to the Constitution and 18 U.S.C. § 3593(c) Require the Court to Find the Government's Evidence to be Reliable Before it May be Presented to the Jury**

Both the Constitution and the Federal Death Penalty Act require district courts to examine evidence of alleged unadjudicated criminal acts prior to its submission to the jury and to exclude it if it is found to be unreliable.

A. **The Constitution**

As the Seventh Circuit held in *United States v. Corley*, 519 F.3d 716, 724 (7th Cir. 2008), the Fifth and Eighth Amendments require the district court to determine whether such information may be considered by the jury based upon a number of factors,

1

including its reliability and its prejudicial and probative impact. This is so because the issue of the admissibility of unadjudicated criminal conduct lies at the intersection of "[t]wo sometimes competing, but nonetheless fundamental, constitutional principles." *United States v. Beckford*, 964 F. Supp. 993, 999 (E.D. Va. 1997). The first principle "requires courts to assure heightened reliability in capital sentencing because capital punishment is qualitatively different from other punishments." *Id.* (citing *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976)). The second principle "emphasizes the importance of presenting the sentencing jury with all relevant evidence." *Id.* (citing *Jurek v. Texas*, 428 U.S. 262, 276 (1976)).

> As the court in *Beckford* went on to say:
>
> Absent the reliability factor, the 'all relevant evidence' principle clearly would permit the Government to present evidence relating to the defendants' unadjudicated criminal acts . . . However, **it is Constitutionally essential to assure that the principle of heightened reliability serves as a meaningful limit to the admission of 'all relevant evidence'** in order to prevent the less stringent concept of relevance from predominating over the cardinal principal of reliability. This necessarily requires a balance to be struck between these two competing doctrines. To effectuate that balance, **the proffered unadjudicated criminal conduct may be presented to the jury only if the Court has determined that it meets the threshold test of reliability**.

*Id.* at 999-1000 (emphasis added). *See also United States v. Davis*, 912 F. Supp. 938, 948 (E.D. La. 1996) ("Once information is determined to be probative of a relevant aggravating factor, and is not found to be unfairly prejudicial, it must additionally be shown to be 'reliable.' Reliable is synonymous with accurate . . . The need for a greater degree of reliability is particularly acute [where] the of the government's 'facts' consist

2

of crimes allegedly committed by the defendants of which they have not in fact been convicted"); *United States v. Gilbert*, 120 F. Supp. 2d 147, 151 (D. Mass. 2000) (noting that information in support of a nonstatutory aggravator must not only be relevant but must also be reliable).

While the government pays lip service to this requirement in its Response, (R. 150 at 17), in reality it urges the Court to ignore it and to simply allow it to present its evidence at trial, give Mr. Christensen the opportunity to cross examine and rebut it, and let the chips fall where they may.[1] Indeed, it does not even attempt to defend the reliability of its evidence against the devastating critique contained in the Motion, (R. 108 at 4-9). The Constitution demands more.

Further, its argument that the requirement of heightened reliability in a capital sentencing proceeding "appears to demand presentation" of its evidence to the jury is an insupportable conflation of the fundamental constitutional principles discussed in *Beckford*. Contrary to the government's position, as stated above, the Constitution requires *both* an individualized sentencing determination based upon all relevant evidence *and* heightened reliability of the evidence that is presented. *Beckford*, 964 F. Supp. at 999-1000. The admission of more rather than less evidence plainly serves these

---

[1] The government's citation to *Tuilaepa v. California*, 512 U.S. 967, 976 (1994), (R. 150 at 19), offers no support for its position. The quoted material actually appears on page 977 of the opinion, where the court is discussing a vagueness challenge to a provision of the State of California's sentencing scheme that requires the jury to consider the defendant's age when deciding whether or not he should be sentenced to death. In rejecting the defendant's argument, the Court merely noted the unremarkable fact that counsel for the parties could each argue their respective positions on the significance of the factor to the jury. *Id.* at 977. The reliability of the evidence supporting the factor was not in issue.

ends only if that evidence is reliable, but the government nevertheless attempts to read that requirement out of the decades of capital sentencing jurisprudence that establish it. Its argument must be rejected.

**B.      18 U.S.C § 3593(c)**

In addition to the constitutional requirements, 18 U.S.C. § 3593(c) requires the Court to exclude evidence at the penalty phase if "its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." This provision affords the Court greater discretion to exclude evidence than the balancing test of Fed. R. Evid. 403, which requires exclusion only where the probative value of the evidence is "substantially" outweighed by competing concerns.

Few categories of evidence have a greater potential to cause severe prejudice to a defendant than evidence of alleged unadjudicated criminal acts. *See, e.g., United States v. Corley*, 348 F. Supp. 2d 970, 977 (N.D. Ind. 2004) ("evidence of unadjudicated criminal conduct brings with it an 'increased danger of unfair prejudice'") (quoting *Beckford*, 964 F. Supp. at 1003). This especially so where, as here, the facts of the alleged unadjudicated conduct are similar to the facts underlying the charged offense. *See Corley*, 519 F. 3d at 725; *United States v. Gonzalez*, 2004 WL 1920492 at * 6 (D. Conn.) ("When the unadjudicated crimes are unrelated to but not easily compartmentalized from the facts of the underlying crime, the risk of unfair prejudice may be unacceptable.").

4

In *Gonzalez*, the district court granted the defendant's motion to exclude under 18 U.S.C. § 3593(c) evidence of four unadjudicated homicides that the government sought to present at sentencing. *Id*. at *2. It based its ruling that the probative value of the evidence was outweighed by the danger of unfair prejudice in part on the fact that the alleged homicides, while unrelated to the charged offense, had fact patterns similar to that crime. *Id*. at *4. Without even reaching the question of whether the evidence of the uncharged crimes was otherwise reliable, the court therefore excluded the evidence in its entirety. *Id.* The same result should obtain in this case.

II. **Before it May Be Presented to the Jury, the Court Must Find that a Reasonable Jury Could Find the Allegation to be True Beyond a Reasonable Doubt**

Under the circumstances of this case, the standard for assessing whether evidence of the alleged unadjudicated criminal act[2] is sufficiently reliable to be admissible is whether a reasonable jury could find beyond a reasonable doubt that the crime occurred and that the defendant committed it. The Federal Death Penalty Act requires that all aggravating factors, both statutory and nonstatutory, be proven beyond a reasonable doubt. 18 U.S.C. § 3593(c). In some circumstances, courts have held that evidence offered as part of the support for an aggravating factor need not be proven beyond a reasonable doubt. *See, e.g., United States v. Edelin*, 134 F. Supp. 2d 59, 76 n.18

---

[2] In its Response, the government states that its arguments are limited to the alleged assault of M.D. that is included in the notice of intent to seek the death penalty. (R. 150 at 16, n.3.) Mr. Christensen understands this statement to mean that the government will not seek to introduce any evidence relating to alleged mistreatment of a guinea pig.

(D.D.C. 2001) (holding that, when used to support other aggravating factors, unadjudicated criminal conduct need not be proven beyond a reasonable doubt).

However, no court has held that unadjudicated criminal conduct, when it is itself alleged as an aggravating factor, need not be proven beyond a reasonable doubt. *See United States v. Cooper*, 91 F. Supp. 2d 90, 108 (D.D.C. 2000) ("if the government intends to use [unadjudicated criminal acts] as aggravating factors in and of themselves, the government will have to prove such acts beyond a reasonable doubt"); *United States v. Rodriguez*, 2006 WL 487117 at \*4 (D.N.D.) ("[un]like a factor like 'future dangerousness,' which relies on making inferences from evidence to determine the existence of the aggravating factor, 'additional serious acts of violence' is simply a direct reference to the evidence . . For all practical purposes then, the conduct and the aggravating factor are one in [sic] the same. This requires proving the conduct beyond a reasonable doubt").

The reasonable doubt standard is especially apt where, as in this case, there is but a single unadjudicated act supporting the aggravating factor. *See Corley*, 348 F. Supp. 2d at 973 (noting that parties agreed that court should assess the reliability of evidence of additional uncharged homicide by considering whether a reasonable jury could find the defendant guilty of the act). It would, after all, be a logical impossibility for the Court to find that the aggravating factor of other serious acts of violence could be proven beyond a reasonable doubt even though the evidence of single act at issue is insufficiently reliable to meet that standard.

### III. The Court Should Follow the Procedures Adopted by the District Court in *Corley* to Make the Required Determination of the Reliability of the Government's Evidence of An Alleged Unadjudicated Criminal Act

As noted above, the Court should grant the Motion to strike the other serious acts of violence aggravating factor under 18 U.S.C. § 3593(c) without the presentation of additional evidence, just as the court did in *Gonzalez.* If, however, the Court is inclined to proceed to the constitutionally required determination of reliability, it should do so in accordance with the procedures adopted by the district court in *Corley*.[3]

In *Corley*, as the Seventh Circuit later found, "the district court was cognizant of the perils of reliance on unadjudicated conduct, and the procedures utilized by the district court insured that only reliable evidence that convinced a jury of guilt beyond a reasonable doubt was considered." *Corley*, 519 F.3d at 726. Those procedures included conducting a reliability hearing to ensure that the evidence was sufficiently reliable to be presented to the jury at the penalty phase. *Corley*, 348 F. Supp. 2d at 972. The hearing was conducted under seal. *Id.* The actual witnesses to the alleged incident, for a total of eight, testified at the hearing; the court denied the government's request to present evidence through summary, hearsay witnesses. *Id*. at 977-78. It did so because it found that it could not "analyze [the] components of credibility if the Government's witnesses'

---

[3] Mr. Christensen asks the Court to deviate from the *Corley* procedures in one respect, and that is to conduct the reliability hearing prior to the start of trial in this case, rather than waiting until the entry of a guilty verdict as the *Corley* court did. *Id* at 972. The reasons for this are (1) because the government has expressed an intent to use the alleged assault on M.D. as 404(b) evidence at the guilt/innocence phase and thus a hearing at the end of the guilt/innocence phase will be too late, and (2) given the explosively prejudicial nature of this evidence, if it is to be admitted Mr. Christensen must have the opportunity to address it with potential jurors in both the jury questionnaire that will be completed before trial and during voir dire.

7

accounts are filtered through a law enforcement official who summarizes their statements." *Id.* at 977. Accordingly, the court found, it "must have a direct opportunity to observe each witness and assess his/her credibility. When reliability is at issue and the fairness of Defendant's penalty phase is at stake, there can be no substitute for live testimony from direct occurrence witnesses." *Id.* at 978.

The court found these procedures especially necessary because of "inherent problems with the government's . . . evidence" of the alleged uncharged misconduct, including possibly exculpatory statements by the victim and problems with the testimony of other witnesses. *Id* at 979. Even more serious problems are readily apparent with the government's evidence in this case. (R. 108 at 4-9.) The Motion does not just make a broad-based, general challenge to the credibility of the allegation against Mr. Christensen; rather, it sets forth objective facts that show that important aspects of M.D.'s various accounts of the alleged incident cannot be true. *Cf. Napue v. Illinois*, 360 U.S. 264, 269 (1959) (holding that the knowing presentation of material false testimony by the prosecutor violates the Due Process Clause).

For example, M.D. has claimed both that the alleged assault occurred in her senior year of high school when she was 17 years old, and that it occurred during September or October of 2013. One or both of those statements is false; M.D.'s senior year of high school was the 2012-13 school year. M.D.'s claim that she met Mr. Christensen online through the website OkCupid.com is also false. Not only did Mr. Christensen not have an OkCupid account at either of the times M.D. has said the

alleged assault occurred, but also there is nothing in M.D.'s own OkCupid records from the relevant time periods that connects in any way to Mr. Christensen. Perhaps most significantly, M.D.'s allegation that Mr. Christensen is the individual who assaulted her could only possibly be true if virtually every other detail of her accounts of what happened is false, because Mr. Christensen was not even living in the State of Illinois when the alleged assault occurred. Numerous other facts that severely undermine the credibility of M.D.'s allegation still further are set forth in the Motion.

Accordingly, the necessity that the Court conduct a thorough hearing to tests the reliability of the government's evidence and determine whether it comports with constitutional requirements before it is presented to the jury could not be more acute. As the district court in *Corley* concluded,

> In the end, this Court's analysis is informed not just by the inherent requirements of a reliability hearing and the strictures of the Confrontation Clause, but also by the grave risk of injustice involved in presenting untested and highly prejudicial evidence to a penalty-phase jury. The Court will not gamble with Defendant's right to a fair and impartial jury in a capital case by allowing what may be questionable evidence/information of possible unadjudicated criminal acts to reach the jury in the penalty phase without first testing the reliability of that information through live testimony. To require any less would be to risk a mistrial or a defective death verdict in this case through the introduction of possibly faulty yet inflammatory testimony. Justice demands more.

*Corley*, 348 F. Supp. 2d at 981. *See also Beckford*, 964 F. Supp. at 1006 ("Of course, the Government risks the consequence of a mistrial if it offers frail evidence of unadjudicated conduct.").

9

While the risks posed by this evidence to Mr. Christensen's constitutional rights and the longevity of any conviction and death sentence that may be obtained are enormous, the prejudice to the government of conducting a pretrial hearing is negligible. Such a hearing can and should be conducted under seal, as in *Corley*. Mr. Christensen has no intention of "stigmatizing" M.D., "manufacturing innuendos regarding her past sexual behavior" or of making "threats of patently prejudicial and embarrassing information, rather than evidence that might speak to her credibility," (R. 150 at 19-20), and he is confident the Court would shut him down immediately were he to try. And if, at the conclusion of the reliability hearing, the Court finds M.D.'s allegation meets constitutional standards of reliability, the government is free to present it at trial, just as it did in *Corley*, 348 F. Supp. 2d at 974, without risk of appellate reversal.

## IV.     Fed. R. Evid. 412 Has No Applicability to This Case

In its Response, (R. 150 at 19), the government makes vague references to Fed. R. Evid. 412. To the extent that the government is arguing that Rule 412 precludes Mr. Christensen from introducing any of the facts outlined in his Motion with regard to prior incredible allegations of sexual assault by M.D., it is mistaken. In cases involving alleged sexual misconduct, Rule 412 prohibits the use of evidence "(1) offered to prove that a victim engaged in other sexual behavior; or (2) evidence offered to prove a victim's sexual predisposition." Fed. R. Evid. 412(a). Evidence of prior *false* allegations of sexual assault plainly falls into neither category of inadmissible evidence. Indeed, the

10

Advisory Committee Notes to the 1994 amendment to the Rule specifically exempt such evidence from the scope of the Rule. Fed. R. Evid. 412 advisory committee's note to 1994 amendment ("Evidence offered to prove allegedly false prior claims by the victim is not barred by Rule 412."). *See also United States v. Willoughby*, 742 F.3d 229, 234 (6th Cir. 2014) (holding that Rule 412 as amended in 1994 makes clear that such evidence is not barred by the Rule and the district court erred by excluding it).

    Not only does Rule 412 not preclude evidence of prior allegedly false claims of sexual assault, then, it expressly recognizes such evidence as relevant and proper. The government is therefore incorrect when it refers to Mr. Christensen's evidence as "scurrilous and immaterial," (R. 150 at 19).  Additionally, given that it does not apply to Mr. Christensen's evidence, it follows that Rule 412 has nothing to say about whether the Court should conduct "any sort of hearing" to determine the reliability of M.D.'s allegation, (R. 150 at 19.)

Respectfully submitted,

/s/Elisabeth R. Pollock
Assistant Federal Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org

/s/ George Taseff
Assistant Federal Defender
401 Main Street, Suite 1500
Peoria, IL 61602
Phone: 309-671-7891
Fax:     309-671-7898
Email: George_Taseff@fd.org

/s/ Robert Tucker
Robert L. Tucker, Esq.
7114 Washington Ave
St. Louis, MO 63130
Phone: 703-527-1622
Email: roberttuckerlaw@gmail.com

/s/ Julie Brain
Julie Brain, Esq.
916 South 2nd Street
Philadelphia, PA 19147
Phone: 267-639-0417
Email: juliebrain1@yahoo.com

CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorneys Bryan D. Freres and Eugene L. Miller and Trial Attorney James B. Nelson. A copy was also mailed to the defendant.

/s/Elisabeth R. Pollock
Assistant Federal Public Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org