# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 17-cr-20037-JES-JEH |
| ) | |
| BRENDT A. CHRISTENSEN, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Now before the Court is Defendant Brendt A. Christensen's Motion (Doc. 83) for Discovery of Information Concerning the Grand and Petit Jury Venire. The United States has filed a Response (Doc. 89), and Defendant has filed a Reply (Doc. 93). For the reasons set forth below, Defendant's Motion (Doc. 83) is GRANTED in part and DENIED in part.

### BACKGROUND

Defendant Brendt A. Christensen was arrested by federal agents on June 30, 2017, pursuant to a criminal complaint which charged him with the kidnapping of Y.Z., a female Chinese national, in violation of 18 U.S.C. § 1201. Doc. 1. Christensen was later indicted by a federal grand jury sitting in the Urbana Division of the Central District of Illinois. *See* Doc. 13 (Indictment), Doc. 26 (Superseding Indictment). The Superseding Indictment charges Christensen with kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1) (Count 1), and making false statements to FBI agents investigating Y.Z.'s disappearance, in violation of 18 U.S.C. § 1001(a)(2) (Counts 2, 3). Doc. 26. The Superseding Indictment returned by the grand jury also included a notice of special findings regarding the nature of the offense charged in Count 1, including that the death of the victim was intentional, that it occurred during the commission of kidnapping, that it was committed in an especially heinous, cruel, or depraved

manner, and that Defendant committed the offense after substantial planning and premeditation. *Id*. The special findings alleged in the Superseding Indictment made the case eligible for capital punishment. *See* 18 U.S.C. § 3591 *et seq.* On January 19, 2018, the United States filed its Notice of Intent to Seek a Sentence of Death. Doc. 54; *see also* 18 U.S.C. §3593(a). On August 17, 2018, this case was reassigned to Chief District Judge James E. Shadid. On December 6, 2018, the Court transferred this matter to the Peoria Division for trial. *See* Doc. 163.

On July 23, 2018, Defendant filed a Motion for Discovery of Information Concerning the Grand and Petit Jury Venire. Doc. 83. Therein, Defendant requests access to certain jury selection records and materials in preparation for an anticipated motion to quash the grand and petit jury venires. *Id*. at 4. The United States filed a Response agreeing that Defendant is entitled to limited information regarding the confection of the jury venires, but objecting to the scope of Defendant's request. Doc. 89. Defendant has filed a Reply, and this Order follows.

## LEGAL STANDARD

The Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 *et seq.* (the "JSSA"), was enacted to ensure that "all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. The JSSA specifically prohibits the exclusion of jurors from the opportunity to serve on grand or petit juries "on account of race, color, religion, sex, national origin, or economic status." 28 U.S.C. § 1862. Under the JSSA, a "defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury." 28 U.S.C. § 1867(a). The JSSA also gives litigants the right to inspect, reproduce, and copy certain records necessary for the preparation of such motions:

> The contents of records or papers used by the jury commission or clerk in connection with the jury selection process shall not be disclosed, except pursuant to the district court plan or as may be necessary in the preparation or presentation of a motion under subsection (a), (b), or (c) of this section, until after the master jury wheel has been emptied and refilled pursuant to section 1863(b)(4) of this title and all persons selected to serve as jurors before the master wheel was emptied have completed such service. The parties in a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion. Any person who discloses the contents of any record or paper in violation of this subsection may be fined not more than $1,000 or imprisoned not more than one year, or both.

28 U.S.C. § 1867(f). Thus, § 1867(f) "makes clear that a litigant has essentially an unqualified right to inspect jury lists." *Test v. United States*, 420 U.S. 28, 30 (1975) (per curiam) (noting that "an unqualified right to inspection is required not only by the plain text of the statute, but also by the statute's overall purpose of insuring grand and petit juries selected at random from a fair cross section of the community") (internal quotations omitted).

The JSSA requires "[e]ach United States district court [to] devise and place into operation a written plan for random selection of grand and petit jurors that shall be designed to achieve the objectives of sections 1861 and 1862 of this title, and that shall otherwise comply with the provisions of this title." 28 U.S.C. § 1863(a). The current version of the Jury Selection Plan of the United States District Court for the Central District of Illinois for the Random Selection of Grand and Petit Jurors ("the 2015 Jury Selection Plan") went into effect on June 1, 2015. It is available on the Court's website under the "Jury Information" tab at http://www.ilcd.uscourts.gov/jury-information. The Jury Selection Plan is also attached as an exhibit to the United States' Response to Defendant's Motion. *See* Doc. 89-1.

## DISCUSSION

In their Motion for Discovery of Information Concerning the Grand and Petit Jury Venire, counsel for Defendant request the following information:

3

1. An electronic copy of the "voter registration lists" provided to the Clerk of Court that ultimately resulted in the creation of the Master Jury Wheel from which the grand jurors were drawn and the petit jurors will be drawn, and all attendant/attached information including but not limited to racial, ethnic, age, voting status provided to the Clerk of Court by the State Board of Elections.

2. An electronic copy of the Master Jury Wheel data including names and addresses, racial, ethnic, gender and age information, and other data in any way associated with the individuals in the jury pool from which the grand jury that issued Mr. Christensen's indictment was selected and the pool from which the petit jurors will be selected.

3. An electronic copy of the Qualified Jury Wheel data including names and addresses, racial, ethnic, gender and age information, and other data associated with the individuals in the jury pool, as well as information on when the name was added to the Qualified Jury Wheel for the pool from which the grand jury that issued Mr. Christensen's indictment was selected.

4. All surveys or reports regarding the composition of the Master or Qualified Jury Wheel (typically compiled on Forms AO-12 and formerly JS-12) for the preceding ten years and any other periodic reports of statistical sampling compiled in the proceeding ten years.

5. The completed juror qualification forms of all persons qualified for service as described on pages 8 and 9 of Plan for the selection of grand jurors for the pool from which the grand jury that issued Mr. Christensen's indictment was selected.

6. The completed juror qualification forms of, or an electronic database detailing, all persons disqualified, excused, or exempted from service, and any other materials or information concerning these determinations (including requests for excusal and exemption and orders or notations concerning excusals, exemptions, and disqualifications).

7. All documents, materials and information concerning the delegation of responsibility for determining whether persons are qualified, exempt or excused from jury service and standards.

8. The date that the Master Jury Wheel and Qualified Jury Wheel for the grand jury that issued the indictment in this case was filled, when the Master Jury Wheel and Qualified Jury Wheel is scheduled to be emptied and refilled, and information regarding whether the Master Jury Wheel and Qualified Jury Wheel for the grand jury that issued the indictment in this case will be the same wheels used in selection of the petit jury selection process.

Doc. 83, at 4–7. The Court will address each request, as well as the United States' objections, in turn.

1. **An electronic copy of the "voter registration lists" provided to the Clerk of Court that ultimately resulted in the creation of the Master Jury Wheel from which the grand jurors were drawn and the petit jurors will be drawn, and all attendant/attached information including but not limited to racial, ethnic, age, voting status provided to the Clerk of Court by the State Board of Elections.**

The United States objects to Defendant's request for voter registration lists or "source" lists that are used to populate the master jury wheel. The United States takes the position that producing the Court's AO-12 form, which provides basic demographic information about the master jury wheel, is sufficient to allow Defendant to determine whether a fair cross-section of the population from the Urbana Division has been included in the master jury wheel. Doc. 89, at 10. Defendant asserts in his Reply that "the only way to determine if the voter registrations lists do present a fair cross section of the community is to compare the jury registration lists to demographic information concerning the counties constituting the Urbana Division of the Central District of Illinois." Doc. 93, at 3. The voter registration lists received by the Court contain only the name, address, date of birth, sex, and last four digits of the social security numbers for registered voters in the Central District of Illinois.

The United States' position enjoys support from case law. It is unclear why Defendant believes that production of the voter registration lists is "necessary in the preparation or presentation of a motion" challenging compliance with selection procedures under the JSSA given that the AO-12 form appears to provide the same data. *See* 28 U.S.C. § 1867(f); *Test v. United States*, 420 U.S. 28, 29–30 (1975); *United States v. Diaz*, 236 F.R.D. 470, 483 (N.D. Cal. 2006) ("The [AO]-12 forms … provide[] defendants with demographic data relating to the pertinent grand jury and qualified jury wheels. The raw data contained in the original source list

is not *necessary* to the preparation of defendants' fair cross-section challenge.") (emphasis original). Nonetheless, the United States' concerns about the risks of turning over personal data to the defense are overstated. First, the voter registration lists received by the Court contain only the name, address, date of birth, sex, and last four digits of the social security numbers of registered voters in the Central District of Illinois. Second, the same statutory provision of the JSSA that gives Defendant a right to access certain jury related materials also provides criminal penalties for improperly disclosing such materials. *See* 28 U.S.C. § 1867(f) ("Any person who discloses the contents of any record or paper in violation of this subsection may be fined not more than $1,000 or imprisoned not more than one year, or both."). Third, the materials provided to Defendant's counsel in connection with this Order are subject to the terms of the Protective Order accompanying this disposition. Together, these limitations address the United States' privacy concerns while also providing Defendant with the requested information.

The Court therefore **GRANTS** the Defendant's first request, subject to the limitations set forth in the Protective Order and with the understanding that the column containing the last four digits of the individuals' social security numbers will be redacted.[1] The Court will also provide the Defendant with the letter from the Clerk of Court to the Illinois State Board of Elections requesting the voter registration data[2] and the letter from the Clerk of Court to Sutera Data Systems[3] with directions for creating the master jury wheel database.

2. **An electronic copy of the Master Jury Wheel data including names and addresses, racial, ethnic, gender and age information, and other data in any way associated with the individuals in the jury pool from which the grand jury that issued Mr. Christensen's indictment was selected and the pool from which the petit jurors will be selected.**

---

[1] The voter registration list will be provided to the parties on a compact disk and titled "Exhibit 1."
[2] The ISBE Letter will be provided to the parties on a compact disk and titled "Exhibit 2."
[3] The Sutera Letter will be provided to the parties on a compact disk and titled "Exhibit 3."

The Defendant's second request seeks demographic information relating to the master jury wheel. The United States agrees that Defendant is entitled to information from the master jury wheel database for the Urbana Division, but objects to the inclusion of individual names and complete addresses in the request. Doc. 89, at 10–11. Defendant argues in his Reply that the United States does not provide any legal basis for such redactions, and the names and addresses of the individuals included in the master jury wheel are necessary for comparison against the voter registration list to ensure the number of jurors from each county on the master wheel is proportionate to the county's population relative to the total population of the Urbana Division. Doc. 93, at 7.

The United States does not provide any legal authority in support of their objection to the inclusion of individual names and complete addresses in the jury lists for the master jury wheel. *Test* grants litigants an "essentially unqualified right to inspect jury lists." 420 U.S. at 30. The United States' position appears to place qualifications on that right without explanation. Moreover, the district court in *Diaz*, which the United States cites approvingly elsewhere in their brief, appeared to disclose juror names and addresses for the master and qualified jury wheels. *See United States v. Diaz*, 236 F.R.D. 470, 481 (N.D. Cal. 2006) ("Because the Supreme Court has expressly held that jury lists are required to raise a fair cross-section challenge, defendants' request for disclosure of the jury lists of the grand jury that indicted them is Granted *with a prohibition against disclosure of the addresses and other personal information of those individuals*.") (emphasis added).

The Court therefore **GRANTS** the Defendant's second request, subject to the limitations set forth in the Protective Order. Because the 2015 Jury Selection Plan provides that prospective grand jurors summoned to the Springfield Division shall be drawn from the Springfield and

Urbana qualified wheels, the Court will provide the parties with a database containing the master jury wheel information for both the Springfield and Urbana Divisions.[4] *See* 2015 Jury Selection Plan, at 10. Additionally, because this matter was transferred to the Peoria Division for trial, the database will also include the master jury wheel information for the Peoria Division. Because the Court's database contains significant juror information (e.g., telephone numbers, email addresses, social security numbers) in addition to the information contained in the master jury wheel itself and outside the scope of the information Defendant is entitled to under the JSSA, the database the Court provides to the parties will be limited to the information contained in the master jury wheel. *See* 28 U.S.C. § 1867(f); *Test v. United States*, 420 U.S. 28, 29–30 (1975); *United States v. Diaz*, 236 F.R.D. 470, 483 (N.D. Cal. 2006).

3. **An electronic copy of the Qualified Jury Wheel data including names and addresses, racial, ethnic, gender and age information, and other data associated with the individuals in the jury pool, as well as information on when the name was added to the Qualified Jury Wheel for the pool from which the grand jury that issued Mr. Christensen's indictment was selected.**

The parties raise the same arguments with respect to Defendant's request for the jury list for the qualified jury wheel for the pool from which the grand jurors were selected. For the same reasons, the Court **GRANTS** the Defendant's third request, subject to the limitations set forth in the Protective Order. Because the 2015 Jury Selection Plan provides that prospective grand jurors summoned to the Springfield Division shall be drawn from the Springfield and Urbana qualified wheels, the Court will provide the parties with a database containing the qualified jury wheel information for both the Springfield and Urbana Divisions.[5] *See* 2015 Jury Selection Plan, at 10. Because the Court's database contains significant juror information (e.g., telephone numbers,

---

[4] The master jury wheel database will be provided to the parties on a compact disk and titled "Exhibit 4."
[5] The qualified jury wheel database for the pool from which the grand jurors were selected will be provided to the parties on a compact disk and titled "Exhibit 5." A separate document identifying and describing the fields in the qualified jury wheel will be provided to the parties on a compact disk and titled "Exhibit 5.1."

8

email addresses, social security numbers) in addition to the information contained in the qualified jury wheel itself and outside the scope of the information Defendant is entitled to under the JSSA, the database the Court provides to the parties will be limited to the information contained in the qualified jury wheel. *See* 28 U.S.C. § 1867(f); *Test v. United States*, 420 U.S. 28, 29–30 (1975); *United States v. Diaz*, 236 F.R.D. 470, 483 (N.D. Cal. 2006). Finally, because the Court's database is continuously updated, the Court has provided the entire qualified wheel, rather than just the qualified wheel for the pool from which the grand jury that issued Christensen's indictment was selected.

4. **All surveys or reports regarding the composition of the Master or Qualified Jury Wheel (typically compiled on Forms AO-12 and formerly JS-12) for the preceding ten years and any other periodic reports of statistical sampling compiled in the proceeding ten years.**

Defendant next requests the AO-12 forms for the preceding ten years and proceeding ten years. The Court's AO-12 form provides demographic information relating the composition of the master and qualified jury wheels from which the grand jurors were selected and the petit jurors will be selected. The United States does not object to Defendant's request for the AO-12 reports from the master jury wheel from which the grand jurors who issued Christensen's indictment were drawn, but questions the need for AO-12 reports from prior or future wheels.

Defendant is not entitled under the JSSA to information from wheels other than those used to select his grand or petit jury. *See United States v. Diaz*, 236 F.R.D. 470, 482 (N.D. Cal. 2006) ("Movants point to several decisions requiring defendants to demonstrate that data of discrimination exists "over an extended period of time" and, therefore, defendants should be allowed to inspect jury records of past grand and petit juries.… Defendants confuse the requirements for disclosure under the Act and disclosure for a constitutional claim. The decisions cited involved *constitutional* fair cross-section challenges. Defendants may be permitted to

9

inspect the records of past and petit juries in preparation of a constitutional claim, but defendants must first present some evidence tending to show the existence of the essential elements of their challenge.") (citations omitted).

The Court thus **GRANTS** Defendant's fourth request as it relates to the 2015 AO-12 forms for the District,[6] the Urbana Division,[7] the Springfield Division,[8] and the Peoria Division.[9] Finally, Defendant asks in his Reply for a copy of the "specially programmed Census Bureau information." Doc. 93, at 8. The Court's understanding is that this information is supplied by the Administrative Office and not in possession of the Clerk. The Court does not have a duty to provide information it does not possess.

5. **The completed juror qualification forms of all persons qualified for service as described on pages 8 and 9 of Plan for the selection of grand jurors for the pool from which the grand jury that issued Mr. Christensen's indictment was selected.**

Defendant also requests the completed juror qualification forms (jury questionnaires) for the pool from which the grand jury that issued Defendant's indictment was selected. The United States objects to this request, citing the Seventh Circuit's decision in *Davenport* in support. Doc. 89, at 12–13. In *Davenport*, the Seventh Circuit held that the defendant was not entitled to completed juror questionnaires:

> Defendant is making a claim that appears to us to lack any bona fide basis, a frivolous exploration. What defendant really desires, and what he particularly asked for in his motion, were the juror questionnaires completed and returned to the clerk. Those questionnaires contain prospective jurors' home addresses and other personal information. To give the defendant an absolute right of routine access to all materials would be an amendment of the Act. The defendant may be seeking those forms as an aid for voir dire examination purposes, but that is not the purpose of the questionnaires. If these completed judicial jury forms were released to

---

[6] The AO-12 form for the District will be provided to the parties on a compact disk and titled "Exhibit 6."
[7] The AO-12 form for the Urbana Division will be provided to the parties on a compact disk and titled "Exhibit 7."
[8] The AO-12 form for the Springfield Division will be provided to the parties on a compact disk and titled "Exhibit 8."
[9] The AO-12 form for the Peoria Division will be provided to the parties on a compact disk and titled "Exhibit 9.

> defendants generally there would exist the possibility of substantial abuse of the information the forms contain, which could have serious consequences for individual jurors and the system.

*United States v. Davenport*, 824 F.2d 1511, 1515 (7th Cir. 1987). *See also United States v. Diaz*, 236 F.R.D. 470, 482 (N.D. Cal. 2006) ("Because JS-12 forms supply the relevant demographic data (such as racial, ethnic and gender statistics) required to challenge this district's jury-selection procedures, defendants do not need the questionnaires in preparation of their motion.").

Defendant attempts to distinguish *Davenport* by arguing that access to the questionnaires is necessary to "determine whether he has a potentially meritorious jury challenged [*sic*] based on failure to objectively apply objective criteria when qualifying jurors." Doc. 93, at 12. However, in addition to *Davenport*, other courts have denied defendants' requests for juror questionnaires and related information on specific excusals, exemptions, and disqualifications. *See, e.g.*, *United States v. Savage*, 2012 WL 4616099, at *6 (E.D. Pa. Oct. 2, 2012) (denying request for "all records related to the summoning of jurors for grand jury or petit jury service, including all records or documents relating to the excusal or disqualification of any potential grand or petit juror summoned" and providing only jury plan); *United States v. Diaz*, 236 F.R.D. 470, 482–83 (N.D. Cal. 2006) ("The Clerk of this Court makes his qualification determinations in accordance with the Northern District's selection plan, consistent with the Jury Selection Act.… Discretionary determinations are made by the chief judge. Disclosure of jury questionnaires and jurors' personal and private information cannot therefore assist in the preparation of defendants' motion, and is not necessary."); *Rice*, 489 F.Supp.2d at 1320 ("any marginal benefits of disclosure would be greatly outweighed by the risks associated with dissemination of personal information contained on those questionnaires and by the burden on

the Clerk of Court in providing (and presumably supervising) defendant's access to ... [the] confidential questionnaires."). Defendant's fifth request is therefore **DENIED**.

6. **The completed juror qualification forms of, or an electronic database detailing, all persons disqualified, excused, or exempted from service, and any other materials or information concerning these determinations (including requests for excusal and exemption and orders or notations concerning excusals, exemptions, and disqualifications).**

Defendant's sixth request asks for the Court for the completed juror qualification forms for all persons disqualified, excused, or exempted from service. For the same reasons stated in the previous request, Defendant's sixth request is **DENIED**.

7. **All documents, materials and information concerning the delegation of responsibility for determining whether persons are qualified, exempt or excused from jury service and standards.**

Defendant's seventh request asks for information concerning the delegation of responsibility for determining whether persons are qualified, exempt, or excused from jury service. The Court **GRANTS** Defendant's seventh request to the extent that it requests inspection of the 2015 Jury Selection Plan, which sets forth the procedures utilized by the Clerk for determining whether persons are qualified, exempt, or excused from jury service. The Plan is available on the Court's website under the "Jury Information" tab at http://www.ilcd.uscourts.gov/jury-information. Pages seven through nine of the Plan cover the procedures for determining whether persons are qualified, exempt, or excused from jury service.

8. **The date that the Master Jury Wheel and Qualified Jury Wheel for the grand jury that issued the indictment in this case was filled, when the Master Jury Wheel and Qualified Jury Wheel is scheduled to be emptied and refilled, and information regarding whether the Master Jury Wheel and Qualified Jury Wheel for the grand jury that issued the indictment in this case will be the same wheels used in selection of the petit jury selection process.**

Defendant's eighth request asks for the dates that the master and qualified jury wheels were filled and when those wheels are scheduled to be emptied and refilled. The 2015 jury wheel

was loaded on April 1, 2015, and qualification questionnaires were first mailed on April 6, 2015. The Court began using jurors from this wheel in June of 2015. The qualified jury wheel is periodically updated by the Clerk to ensure that an adequate number of names are contained in each qualified wheel at all times. *See* 2015 Jury Selection Plan, at 9. The 2019 jury wheel will likely follow a similar schedule. Thus, the Court would begin using jurors from the new wheel in June of 2019. If the current scheduling order remains in effect, the same wheel would be used for selection of the grand and petit juries.

## CONCLUSION

For the reasons set forth above, Defendant's Motion (Doc. 83) is **GRANTED** in part and **DENIED** in part. The parties' access to the materials granted above are subject to the accompanying Protective Order.[10]

Signed on this 11th day of December, 2018.

s/ James E. Shadid<br>
James E. Shadid<br>
Chief United States District Judge

---

[10] The Protective Order will be included on the compact disk provided to the parties and titled "Exhibit 10."