IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17-CR-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

### THE UNITED STATES OF AMERICA'S MOTION TO QUASH SUBPOENA

NOW COMES the United States of America, by John C. Milhiser, United States Attorney for the Central District of Illinois, Eugene L. Miller and Bryan D. Freres, Assistant United States Attorneys, and Department of Justice Trial Attorney James B. Nelson, and hereby files this Motion to Quash the Rule 17 Subpoena commanding T.B. to appear and testify at the suppression hearing scheduled for December 17, 2018. In support of its motion, the United States submits the following:

### PROCEDURAL AND FACTUAL BACKGROUND

On November 26, 2018, the Court notified the parties that it would hold evidentiary hearings on the defendant's various motions to suppress – including the defendant's motion to suppress statements surreptitiously recorded by T.B. (R.96) The parties discussed possible witnesses for the hearing, and the United States agreed to make available at the hearings certain witnesses requested by the defendant, reserving the right to object to their testimony. The defendant did not request the United States to produce T.B. at the evidentiary hearings.

During proceedings before the Court on December 14, 2018, the United States learned for the first time that the defendant had obtained a subpoena for T.B. and intended to call her as a witness. During a subsequent discussion of the matter in chambers, the United States objected to the subpoena – which was requested and granted *ex parte* and under seal – on the basis that it was improper for the defendant to call T.B. to testify because the defendant did not believe she would offer favorable testimony, but merely wanted to depose her and impeach her in preparation for trial. The defendant responded that he anticipated three lines of questioning for T.B.'s testimony:

1. T.B. lacked the capacity to knowingly consent to recording her conversations with the defendant.

2. T.B.'s conversations with the defendant violated *Miranda v. Arizona*.

3. T.B. violated her consent agreement and broke the law.

As noted more fully below, none of these is a valid basis for the defendant to call T.B. as a defense witness, and therefore, the Court should quash her subpoena, or in the alternative, conduct pre-testimony *voir dire* and/or limit her questioning by the defendant.

## RELEVANT LAW

To prevent litigants from calling witnesses as mere vehicles to introduce otherwise inadmissible impeachment evidence, courts have employed a number of prophylactic tools to prevent abuse of the evidentiary process. In this case, and for the reasons explained below, the United States requests the Court to adopt appropriate

measures to prevent the defendant from abusing the evidentiary process by calling T.B. as a defense witness. A defendant must have a good faith basis to call a cooperating government witness to testify and cannot call such a witness merely as a subterfuge to obtain or introduce otherwise inadmissible impeachment.

As then District Judge Rovner stated in *United States v. Finley*, 708 F.Supp. 906, 909 (N.D.Ill. 1989), "a party may not call a witness for the sole purpose of impeaching him." (citing *United States v. Webster*, 734 F.2d 1191, 1192 (7th Cir. 1984); *United States v. Gorny*, 732 F.2d 597, 604 (7th Cir. 1984); *United States v. Morlang*, 531 F.2d 183, 189 (4th Cir. 1975)). As a corollary to this principle, the Seventh Circuit has repeatedly warned against allowing a party to call a witness it knows will not give useful evidence, just so the party may then otherwise impeach them. *See Webster*, 734 F.2d at 1192; *accord United States v. Medley*, 913 F.2d 1248, 1257 (7th Cir. 1990) (prohibiting calling a witness to impeach where it is a "subterfuge to get . . . evidence otherwise not admissible"). It is also beyond question that a witness such as a confidential informant may not be called by the defense for the purpose of sullying the prosecution by association. *See United States v. Silva*, 71 F.3d 667, 670 (7th Cir. 1995) ("[N]otwithstanding [defendant's] assertion . . . that 'a confidential informant with a sordid history . . . is always beneficial to the defense in front of a jury,' the unsavory nature of an informant is not admissible into evidence merely to make the prosecution appear dissolute by association.").

A defendant should be required to make a pre-hearing showing of the relevance of any expected testimony from a CI if the defendant intends to call her as a witness, so the United States may challenge the relevance of such testimony. Judge Rovner used

such a procedure in the *Finley* case to address such a situation, where she required the defense to make a proffer of the relevance of any expected testimony that the CI might give two weeks before the CI might be called as a defense witness, so the United States could challenge the relevance of such testimony. *See Finley*, 708 F. Supp. at 910. Where a defendant proffers a viable basis by which to call a CI as a defense witness, the court should conduct a preliminary *voir dire* of such witness so as to assure the CI will offer favorable testimony rather than being called as a subterfuge to obtain or interject otherwise inadmissible impeachment. *See, e.g., Medley*, 913 F.2d at 1257; *Webster*, 734 F.2d at 1192; *Morlang*, 531 F.2d at 189 ("[I]]t has never been the rule that a party may call a witness where his testimony is known to be adverse for the purpose of impeaching him.").

Finally, in the event a court determines that the defendant has established a proper, affirmative, evidentiary basis by which to call a CI as a defense witness, the court still should restrict impeachment to any prior inconsistent statements to the events at issue. This rule fulfills the important prophylactic purpose of ensuring that the defense truly has an affirmative purpose for calling the witness--as opposed to using the witness as a pretext by which to obtain or introduce otherwise inadmissible impeachment. Specifically, in *Finley*, Judge Rovner specified that if the defense called the CI (who was not called by the United States) as a defense witness, the defendant could not "impeach [the CI] except insofar as [the CI's] specific testimony might contradict prior statements" of the CI. *United States v. McClain*, 934 F.2d 822, 832 (7th Cir. 1991). In *Finley*, this simple prophylactic measure required the defense to scrutinize

its actual purpose in calling the CI, and unsurprisingly, once the defendant recognized that he was precluded from using the CI as a ruse to introduce otherwise inadmissible impeachment evidence, the defense elected not to call the CI. On appeal, when the defense claimed that the impeachment restriction was improper, the restriction was approved by the Seventh Circuit. *See id.* (affirming the district court's cross-examination rule); *accord Silva*, 71 F.3d at 671 ("[The informant's sordid] history would have been inadmissible for impeachment purposes" if he were called to give purported favorable testimony in relation to an entrapment claim).

The Seventh Circuit has repeatedly emphasized that district courts retain "wide latitude to impose reasonable limits on the scope and extent of cross-examination 'based on concerns about, among other things, . . . prejudice, confusion of the issues . . . or interrogation that is . . . only marginally relevant.'" *United States v. Sasson*, 62 F.3d 874, 882 (7th Cir. 1995) (quoting *Delaware v. VanArsdall*, 475 U.S. 673, 678 (1986)); *accord, e.g., United States v. Wellman*, 830 F.2d 1453, 1465 (7th Cir. 1987) ("A trial court has wide discretion to limit cross-examination"). Accordingly, in the unlikely event that a defendant can properly call a government CI to offer relevant and helpful testimony to the defense following *voir dire* by the court, a court should restrict the defense to the same type of impeachment permitted in *Finley*--i.e., impeachment by prior inconsistent statements as to the events at issue. This prevents defendants from using a witness simply as a vehicle by which to introduce otherwise inadmissible impeachment. Such a restriction is consistent with Seventh Circuit law. *See McClain*, 934 F.2d at 832.

## ARGUMENT

1. **The Defendant Has No Good Faith Basis To Believe That T.B. Will Testify Consistent With The Arguments Advanced In His Motion To Suppress**

The defendant asserts that he should be permitted to call T.B. to testify at the suppression hearing because T.B. will provide testimony that shows that she lacked the capacity to consent to recording her conversations with the defendant. This assertion is without merit.

In cases such as this one, where the defendant has subpoenaed a cooperating government witness who was not otherwise scheduled to testify, the defendant must make a good faith showing that the witness will offer testimony that will support the defendant's position. *United States v. Lewis*, 2008 WL 5083131, at *8 (N.D. Ill. 2008), *aff'd* 641 F.3d 773 (7th Cir. 2011). This is true because it is improper for a party to subpoena a witness that will testify contrary to that party's position, simply so that the witness may be impeached. *United States v. Giles*, 246 F.3d 966, 974 (7th Cir. 2001) (the district court properly refused to let the defendant call a witness when he could make no good faith basis as to the witness' expected testimony). The defendant has not, and cannot, make a good faith showing that T.B. will testify that she did not consent to recording the defendant. Upon information and belief, T.B.'s testimony will be that she knowingly and voluntarily consented to recording conversations with the defendant.

T.B. signed a consent form to participate in the recordings, in which she informed the Federal Bureau of Investigation that she gave "written permission to the above-named Special Agents voluntarily, and without threats or promises of any kind."

(R.96 at 13) The Seventh Circuit has repeatedly held that a signed waiver indicating voluntary consent is "clear evidence of the voluntariness of [the] consent." *United States v. Navarro*, 90 F.3d 1245, 1257 (7th Cir. 1996); *see also United States v. Saadeh*, 61 F.3d 510, 518 (7th Cir. 1995); *United States v. Duran*, 957 F.2d 499, 502 (7th Cir. 1992) (holding that a signed consent form with such warnings "weighs heavily toward finding that her consent was voluntary") (citing *United States v. Mendenhall*, 446 U.S. 544, 558–59 (1980)); *United States v. Valencia*, 913 F.2d 378, 381 (7th Cir. 1990); *United States v. Morgan*, 725 F.2d 56, 58 (7th Cir. 1984)).

Not long after signing the consent, T.B. voluntarily recorded dozens of conversations with the defendant. Each of those recordings demonstrates a separate, voluntary consent by T.B. to be recorded. As has been the law in the Seventh Circuit for nearly 40 years, the voluntariness of a cooperator's consent is proven when the "'informer went ahead with a call (or other recorded activity) knowing what the law enforcement officials were about.'" *United States v. Horton*, 601 F.2d 319, 322 (7th Cir. 1979) (quoting *United States v. Bonnano*, 487 F.2d 654, 658 (2d Cir. 1973)).

Here, T.B. knew exactly what the FBI agents were asking her to do – they suspected that the defendant had kidnapped Yingying Zhang, and they believed that he might tell T.B. whether she was still alive, and if so, where she was – and T.B. volunteered to help. The voluntariness of T.B.'s consent is clear throughout the agents' reports of their conversations with her, and it is confirmed by the fact that she recorded dozens of separate conversations with the defendant after signing the consent form. T.B.'s consent is not negated just because she understandably experienced emotional

7

difficulty while recording numerous conversations wherein the defendant, her boyfriend, admitted to kidnapping and killing Yingying Zhang in a heinous and depraved manner.[1]

The defendant's allegation regarding the voluntariness of T.B.'s consent is contradicted by his own conduct in sending investigators to her house to interview a person allegedly lacking the capacity to consent. Upon information and belief, at that time, T.B. reiterated the voluntariness of her cooperation with the United States and refused to be interviewed by the defendant's investigators. If T.B. had not voluntarily consented to cooperate with the FBI, she could have said so. She did not.

There is no good faith basis to believe that T.B. will testify that she did anything other than knowingly and voluntarily consent to cooperate with the FBI and record conversations with the defendant. The defendant's stated justification for requiring T.B. to testify in a pretrial hearing -- so counsel could ask questions about T.B.'s text messages that, according to counsel, suggest T.B. lacked the capacity to consent – establishes that the defendant does not expect favorable testimony in support of his motion to suppress. Rather, the defendant wants to require T.B. to testify so that defense counsel can impeach her expected testimony that she *did* voluntarily consent and have

---

[1] Notably, it is believed that the defendant continued to engage in sexual contact with T.B. during the same time period that she was recording their conversations. If, as the defendant suggests, T.B. lacked "the mental capacity to knowingly and voluntarily agree to anything," (R.96 at 15), then she was unable to legally consent to sexual contact with the defendant. Thus, if the defendant's allegations were true, he has admitted to repeatedly sexually assaulting T.B. Fed. R. Evid. 801(d)(2)(C); 720 Ill. Comp. Stat. Ann. 5/11-1.20(a)(2), (b) (noting that is a Class 1 felony in Illinois to engage in sexual penetration with a person who is "unable to give knowing consent"). Of course, the United States submits that the defendant's claim that T.B. could not consent to "anything" is without merit.

an improper opportunity to cross-examine her prior to trial. The law forbids the defendant from calling T.B. as a witness solely for this purpose. *Giles*, 246 F.3d 966, 974.

Therefore, the defendant's subpoena for T.B. should be quashed. Alternatively, the Court should *voir dire* T.B. prior to the defendant being allowed to ask any questions. If T.B. testifies that she voluntarily consented to the recordings, that will establish that the defendant has no good faith basis for calling her during the suppression hearing and she should be dismissed. *Id.*; *Lewis*, 2008 WL 5083131, at *8 (N.D. Ill. 2008). At the very least, the Court should restrict any questioning of T.B. by the defendant to the issue of consent raised in the defendant's motion and any impeachment to any prior inconsistent statements regarding the issue of consent.

2. **The Defendant's Argument That The "Memorial Walk" Recording Violated The Wiretap Act Is Without Basis In Fact Or Law**

The defendant also argues that he is entitled to call T.B. as a defense witness because she allegedly broke the law by recording conversations to which she was not a party. On its face, it is clear that such testimony would tend only to impeach T.B., not to support any legitimate argument for suppression of the recordings. The defendant's attempt to subpoena T.B. to the stand for this purpose is improper. *Giles*, 246 F.3d 966, 974.

This is especially true considering that the defendant's assertion that T.B. broke the law by engaging in such conduct is incorrect. The conversation to which defense counsel refers, the conversation during the "memorial walk" for the victim, is not subject to the wiretap statute because it occurred in a place where there was no

9

reasonable expectation of privacy. *The Matter of John Doe Trader Number One*, 894 F.2d 240, 244-45 (7th Cir. 1990); *see also United States v. Willoughby*, 860 F.2d 15, 22 (2d Cir. 1988) (same). It is not disputed that the "memorial walk" conversation took place outside on the University of Illinois campus. The memorial walk was a well-attended event – numerous media outlets were photographing and videotaping the event. Indeed, the defendant and T.B. were photographed while engaging in the "memorial walk" conversation.[2]

Given that this is a legal, not a factual, dispute, T.B.'s testimony is unnecessary as to this specific issue. It is not disputed that the conversation was recorded and that it took place outside on the University of Illinois campus. The only reason to call T.B. as a defense witness regarding the memorial walk conversation is to attempt to impeach her with a false allegation of wrongdoing. This does not establish a good faith basis to call her as a defense witness. *Giles*, 246 F.3d 966, 974.

3. **T.B.'S Conversations With The Defendant Did Not Violate** *Miranda V. Arizona*.

The defendant's final stated basis for subpoenaing T.B. is to address alleged *Miranda* issues regarding these conversations. This argument is also without merit.

The law on this issue is well-settled: conversations between a suspect and a cooperating witness do not implicate *Miranda*. "A person is not entitled to warnings

---

[2] Jessica Chia, "'Killer' in the Crowd: Grad Student who is charged with kidnapping missing Chinese student and is feared to have murdered her was at rally in support of her family," The Daily Mail (July 3, 2017), *available at https://www.dailymail.co.uk/news/article-4660192/Man-kidnapped-Chinese-student-went-rally.html* (last visited December 15, 2018).

10

simply because an investigation has focused upon him. The test is not focus alone, but rather, focus plus custodial interrogation." *United States v. Craig*, 573 F.2d 455, 474 (7th Cir. 1977) (holding that a cooperating witness' recorded conversations with a suspect did not constitute custodial interrogation, and therefore *Miranda* warnings were not required); *see also United States v. Cook*, 599 F.3d 1208, 1216 (10th Cir. 2010) (defendant's confession to cooperating witness was not an "interrogation," even when made in custodial setting); *United States v. Ingle*, 157 F.3d 1147, 1150 (8th Cir. 1998) (the fact that the government encouraged the cooperating witness to talk to the defendant did not establish "the kind of coercive police activity that renders a confession involuntary"); *United States v. Muzychka*, 725 F.2d 1061, 1069 (3d Cir. 1984) (no *Miranda* violation where the defendant confessed to an informant).

Here, it is undisputed that the defendant was not in custody during any of the recorded statements he made to T.B. Moreover, the defendant was not being interrogated by law enforcement; he was talking to his girlfriend about his kidnapping of Yingying Zhang and the FBI's investigation. Therefore, as a matter of law, T.B.'s recorded conversations with the defendant do not implicate *Miranda*. Absent any legitimate legal basis for their argument, there is no good faith basis to call T.B. to testify as a defense witness at the suppression hearing as to this issue. *Giles*, 246 F.3d 966, 974.

## **CONCLUSION**

The defendant cannot articulate a good faith basis to call T.B. as a defense witness in support of his motion to suppress because her expected testimony does not support the assertions in the defendant's motion. Thus, the only reason to call her is to obtain and interject improper impeachment evidence into the proceeding. Under these circumstances, the Court should quash the subpoena. In the alternative, the Court should conduct preliminary *voir dire* of T.B. to determine if the defendant has a good faith basis to call her. If not, she should be dismissed. If so, the Court should limit the defendant's inquiry to the relevant issues and any impeachment to prior inconsistent statements related to the relevant inquiry.

Respectfully submitted,

JOHN C. MILHISER
UNITED STATES ATTORNEY

| | |
|---|---|
| /s/Eugene L. Miller | /s/ James B. Nelson |
| Eugene L. Miller | James B. Nelson |
| Assistant United States Attorney | Trial Attorney |
| 201 S. Vine St., Suite 226 | Capital Case Section |
| Urbana, IL 61802 | United States Department of Justice |
| Phone: 217/373-5875 | 1331 F. Street NW, Room 625 |
| Fax: 217/373-5891 | Washington, DC 20004 |
| eugene.miller@usdoj.gov | Phone: 202/598-2972 |
| | james.nelson@usdoj.gov |

/s/Bryan D. Freres
Bryan D. Freres, Bar No. IL 6294791
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone: 217/373-5875
Fax: 217/373-5891
bryan.freres@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on December 16, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

> */s/ James B. Nelson*
> James B. Nelson, Bar No. NV 9134
> Trial Attorney
> Capital Case Section
> United States Department of Justice
> 1331 F. Street NW, Room 625
> Washington, DC  20004
> Tel: (202) 598-2872
> james.nelson@usdoj.gov