UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Crim. No. 17-20037 |
| | ) |
| BRENDT A. CHRISTENSEN, | ) |
| | ) |
| Defendant. | ) |

**MOTION TO DISMISS INDICTMENT AND NOI FOR UNCONSTITUTIONAL
DISCRIMINATION IN THE DECISIONS TO BRING FEDERAL CHARGES
AGAINST DEFENDANT AND TO SEEK THE DEATH PENALTY,
AND FOR DISCOVERY**

NOW COMES the Defendant, BRENDT A. CHRISTENSEN, by and through his attorneys, and for his Motion to Dismiss Indictment and NOI for Unconstitutional Discrimination in the Decision to Bring Federal Charges Against Defendant, and for Discovery, states as follows:

**I.    Introduction.**

At a hearing before this Court on December 14, 2018, the government admitted that the decision to bring federal charges against Mr. Christensen in this case was based upon the fact that the victim, Yingying Zhang, was a Chinese national. National origin is a constitutionally impermissible consideration in a charging decision, and initiating a prosecution based on the victim's national origin is a clear violation of the Equal Protection Clause. The indictment obtained against Mr. Christensen must therefore be

dismissed. Additionally, in light of the government's admission, as well as its previous invocations of the fact that the victim was Chinese, the conclusion that the victim's national origin also unconstitutionally influenced the decision to seek the death penalty against Mr. Christensen is inescapable. Accordingly, the Notice of Intent to Seek the Death Penalty ("NOI") must also be dismissed. Finally, in light of the government's admission Mr. Christensen is entitled to discovery in order to obtain additional evidence in support of his selective prosecution claims.

## II. The Government's Decision to Charge Mr. Christensen Federally Based on the Victim's National Origin Violated the Equal Protection Clause.

The government's admitted reliance on the victim's national origin in its decision to charge Mr. Christensen in federal court for a crime that otherwise would have been prosecuted in the Illinois state courts violated the Equal Protection Clause. As a general matter, "[t]he Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotations omitted). Indeed, there is a presumption of regularity that attends prosecutorial decisions such that "'in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.'" *Id.* (quoting *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14-15 (1926)).

Prosecutorial discretion is not entirely boundless, however. It is subject to "constitutional constraints." *Id.* (quoting *United States v. Batchelder*, 442 U.S. 114, 125 (1979)). Those constraints include the requirement under the equal protection

component of the Due Process Clause that "the decision whether to prosecute may not be based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Id.* (quoting *Oyler v. Boyles*, 368 U.S. 448, 456 (1962)). This prohibition applies whether the "arbitrary classification" is based on the status of the defendant or of the victim. *See McCleskey v. Kemp*, 481 U.S. 279, 291 n.8 (1987) (holding that defendant had standing to raise claim of unlawful discrimination under Equal Protection Clause based upon race of victim); *Belmontes v. Brown*, 414 F.3d 1094, 1126-27 (9th Cir. 2005), *rev'd on other grounds sub nom. Ayers v. Belmontes*, 549 U.S. 7 (2007) (adjudicating claim of selective prosecution based upon race of victim); *United States v. Watts*, No. 14-cr-400063 (S.D. Ill. January 25, 2016) (recognizing defendant's claim of selective prosecution based on race of victim).

In order to make out an equal protection clause violation, a defendant must demonstrate that the federal prosecution decision "'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Armstrong*, 517 U.S. at 465 (quoting *United States v. Wayte*, 470 U.S. 598, 608 (1985)). To show discriminatory purpose, a defendant must show that the decisionmaker "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *McCleskey*, 481 U.S. at 298 (quoting *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)). And he must also show that the decisionmaker "in *his* case" acted with discriminatory purpose. *Id.* at 292 (emphasis in original).

A defendant may meet this burden and establish a prima facie case using either direct or circumstantial evidence. *See Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 266 (1977). In the overwhelming majority of cases, defendants are limited to alleging discriminatory purpose based upon statistical analyses of seemingly disparate treatment of similarly situated individuals. *See, e.g., Armstrong*, 517 U.S. at 459 (noting that defendants' selective prosecution claim supported solely by study of race of defendant in 24 cases involving prosecutions for cocaine or crack); *McCleskey*, 481 U.S. at 286-87 (noting defendant's claim of racial discrimination in death penalty sentencing based upon Baldus statistical study of thousands of cases state-wide).

In rare situations, however, a defendant can show direct evidence of discrimination. *See United States v. Falk*, 479 F.2d 616, 624 (7th Cir. 1973) (en banc) (finding prima facie case of discriminatory prosecution for draft evasion on First Amendment grounds where defendant showed, inter alia, that AUSA admitted to defense attorney that defendant's protected draft counseling activity was one of reasons prosecution was brought). Once a prima facie case has been established, the presumption of regularity that otherwise attends prosecutorial decision-making is overcome and "the burden of going forward with proof of non-discrimination will then rest on the government." *Falk*, 479 F.2d at 624.

Like *Fulk*, this case presents one of the rare situations in which there exists direct evidence of discriminatory purpose in the government's decision to bring federal

4

charges in the form of the government's own admission. At the hearing before this Court on December 14, 2018, the government refuted the defense's assertion that it decided to prosecute Mr. Christensen in federal court because it wished to secure a death sentence against him by admitting instead that the decision was made because his alleged victim was Chinese:

> Mr. Tucker will have a chance to respond, to answer how he knows that this case is in federal court because we want to seek the death penalty against the defendant, because that's not true . . . This case was initially investigated by the FBI from the outset. The U.S. Attorney's Office is involved when the FBI gets involved in an investigation. We have a Chinese national who, it is alleged, this defendant kidnapped and killed. And to suggest that the only reason the United States is involved in this case, not only to suggest the only reason we are involved is to seek the death penalty, but he knows that; when we know that not to be true.

12/14/18 Tr. at 27-28. The government repeated the admission again, later in its argument:

> I think that explains why we are in federal court. We have a Chinese national, not an Illinois citizen, who is alleged to have been kidnapped and killed. And to suggest government doesn't have any interest at all in protecting the lives of people who might come from foreign countries to visit the United States; that we don't have any interest in that; Illinois has more of an interest in Brendt Christensen not having to face the legal penalty for his crime than in protecting the life of Yingying Zhang suggests this case is precisely where it should be, which is in federal court.

12/14/18 Tr. at 71.

This straightforward, unambiguous admission that the federal prosecution of Mr. Christensen was brought because of the victim's national origin, indubitably an "unjustifiable standard for selectivity in prosecution," *Falk*, 479 F. 2d at 619, readily

5

establishes a prima facie case of a violation of equal protection. The burden thus shifts to the government to attempt to prove nondiscrimination. *Id.* at 624.

### III. Mr. Christensen has Also Made a Prima Facie Case that the Decision to Seek the Death Penalty Against Him was Unconstitutionally Based on the Victim's National Origin.

The government's admission, at the December 14, 2018, hearing, together with other statements it has made in pleadings and documents filed in this case, also establishes a prima facie case that the decision to seek the death penalty against Mr. Christensen was motivated by the improper consideration of the victim's national origin. Equal protection jurisprudence applies not only to the government's decision to file charges against a defendant, but also to its determination of whether to seek a death sentence against him. *See McCleskey*, 481 U.S. at 291 (noting that defendant's claim is that administration of state capital punishment statute violates Equal Protection Clause); *United States v. Bass*, 536 U.S. 862 (2002) (per curiam) (ruling upon a discovery matter in case raising selective prosecution claim regarding alleged discrimination in decision to seek death penalty).

Given the government's admission that the decision to prosecute Mr. Christensen in federal court was based upon the victim's national origin, it strains credulity to imagine that the decision to seek the death penalty was not similarly improperly influenced. Moreover, in discovery documents and pleadings previously filed in this case the government has expressed its belief that the national origin of the victim is an appropriate basis upon which to sentence an individual to death.

In response to Mr. Christensen's request for specific information regarding the type of victim impact evidence that it intends to present in aggravation at the penalty phase, the government sent a letter to defense counsel on July 11, 2018. In that letter, the government stated that its penalty phase evidence would include the victim's personal characteristics, "including, but not limited to, the victim's . . . gender, race, national origin, [and] immigration status." In a subsequent Motion to Strike Non-Statutory Aggravator of Victim Impact Evidence, Mr. Christensen pointed out that urging the jury to vote for a death sentence based upon the victim's gender, race and national origin would violate the express statutory directive that the jury be instructed that, in considering whether a sentence of death is justified, "it shall not consider the race, color, religious beliefs, national origin, or sex" of the victim. 18 U.S.C. § 3593(f). (R. 106 at 10 n.1)

In response to this truism, the government merely stated that (1) no court has reversed a conviction on grounds of improper victim impact evidence, and (2) that its evidence "lies well-within the heartland of victim impact evidence approved by the Supreme Court." (R. 150 at 16.) Its apparent failure to recognize that considerations such as the victim's national origin have no place in the federal capital punishment scheme strongly supports Mr. Christensen's prima facie showing that the government's decision to seek the death penalty in this case rested upon an unconstitutionally discriminatory basis.

**IV.     Mr. Christensen is Entitled to Discovery of Information Pertaining to the Government's Decisions to Prosecute him Federally and to Seek the Death Penalty Against Him.**

Having established a prima facie case that both the government's decision to bring federal charges against him and its decision to seek the death penalty were based upon impermissible considerations in violation of the equal protection doctrine, Mr. Christensen is entitled to discover information relevant to those decisions. In *Armstrong*, 517 U.S. at 468, the Supreme Court held that a defendant is entitled to discovery on a selective prosecution claim upon a showing of "some evidence tending to show the existence of the essential elements of the defense, discriminatory effect and discriminatory intent." *See also Bass*, 536 U.S. at 863 (same). The government's admission on December 14, 2018, together with its previous statements regarding the victim's national origin, readily satisfies this standard.

Mr. Christensen therefore requests that the government be ordered to produce the following:

A.      All correspondence, including emails, notes and internal memoranda regarding telephone calls or verbal conversations, by employees of the United States Attorney's Office for the Central District of Illinois, including the United States Attorney, regarding the decision to charge Mr. Christensen in the United States District Court for the Central District of Illinois.

B. A list of all criminal cases involving kidnapping and/or kidnapping resulting in death that were filed by the United States Attorney's Office for the Central District of Illinois from 2006 to date.

C. A list of all criminal cases involving kidnapping and/or kidnapping resulting in death in which the United States Attorney's Office for the Central District of Illinois declined prosecution, from 2006 to date.

D. Any documents drafted, reviewed or considered concerning the decision to accept or decline prosecution of a case involving kidnapping and/or kidnapping resulting in death by the United States Attorney's Office for the Central District of Illinois from 2006 to date.

E. All correspondence, including emails, notes and internal memoranda regarding telephone calls or verbal conversations, by employees of the United States Attorney's Office for the Central District of Illinois, including the United States Attorney, and the Department of Justice, regarding the decision to seek the death penalty against Mr. Christensen.

F. Any and all documents drafted, reviewed or considered as part of the death penalty authorization process in Mr. Christensen's case, including drafts and final versions of:

a. Any documents drafted, reviewed or considered as part of the mandatory pre-indictment consultation between the United States Attorney and the Department of Justice, *see* United States Attorneys Manual § 9-10.060 ["USAM"];

  b. Any documents drafted, reviewed or considered in connection with the United States Attorney's recommendation to the Department of Justice as to whether to seek the death penalty, including:

    i. The prosecution memorandum;

    ii. The death penalty evaluation form;

    iii. The non-decisional information form;

    iv. The draft notice of intent to seek the death penalty, *see* USAM § 9-10.080;

  c. Any documents drafted, reviewed or considered by the Department of Justice Capital Review Committee in connection with its recommendation to the Attorney General on whether to authorize the seeking of the death penalty, *see* USAM § 9-10.130.

  WHEREFORE, the Defendant requests that this Court order requested discovery and thereafter dismiss the indictment and the Notice of Intent to Seek the Death Penalty filed in this case.

  Respectfully submitted,

/s/Elisabeth R. Pollock  
Assistant Federal Defender  
300 West Main Street  
Urbana, IL 61801  
Phone: 217-373-0666  
FAX:   217-373-0667  
Email: Elisabeth_Pollock@fd.org

/s/ George Taseff  
Assistant Federal Defender  
401 Main Street, Suite 1500  
Peoria, IL 61602  
Phone: 309-671-7891  
Fax:    309-671-7898  
Email: George_Taseff@fd.org

|  |  |
|---|---|
| /s/ Robert Tucker | /s/ Julie Brain |
| Robert L. Tucker, Esq. | Julie Brain, Esq. |
| 7114 Washington Ave | 916 South 2nd Street |
| St. Louis, MO 63130 | Philadelphia, PA 19147 |
| Phone: 703-527-1622 | Phone: 267-639-0417 |
| Email: roberttuckerlaw@gmail.com | Email: juliebrain1@yahoo.com |

CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorneys Bryan D. Freres and Eugene L. Miller and Trial Attorney James B. Nelson. A copy was also mailed to the defendant.

/s/Elisabeth R. Pollock
Assistant Federal Public Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org