UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. 17-cr-20037-JES-JEH |
| | ) |
| BRENDT A. CHRISTENSEN, | ) |
| | ) |
| Defendant. | ) |

### ORDER AND OPINION

Now before the Court is Defendant Brendt A. Christensen's Motion (Doc. 114) to Dismiss Count One Due to Lack of Jurisdiction. The United States has filed a Response (Doc. 140), and Defendant has filed a Reply (Doc. 172). The Court heard arguments on the Motion on December 14, 2018. For the reasons set forth below, Defendant's Motion (Doc. 114) is DENIED.

### BACKGROUND

Defendant Brendt A. Christensen was arrested by federal agents on June 30, 2017, pursuant to a criminal complaint which charged him with the kidnapping of Yingying Zhang, a female Chinese national, in violation of 18 U.S.C. § 1201. Doc. 1. Christensen was later indicted by a federal grand jury sitting in the Urbana Division of the Central District of Illinois. *See* Doc. 13 (Indictment), Doc. 26 (Superseding Indictment). The Superseding Indictment charges Christensen with kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1) (Count 1), and making false statements to FBI agents investigating Yingying Zhang's disappearance, in violation of 18 U.S.C. § 1001(a)(2) (Counts 2, 3). Doc. 26. The Superseding Indictment returned by the grand jury also included a notice of special findings regarding the nature of the offense charged in Count 1, including that the death of the victim was intentional, that it occurred during the commission of kidnapping, that it was committed in an especially heinous, cruel, or depraved

manner, and that Defendant committed the offense after substantial planning and premeditation. *Id*. The special findings alleged in the Superseding Indictment made the case eligible for capital punishment. *See* 18 U.S.C. § 3591 *et seq.* On January 19, 2018, the United States filed its Notice of Intent to Seek a Sentence of Death. Doc. 54; *see also* 18 U.S.C. §3593(a).

> The federal kidnapping statute, 18 U.S.C. § 1201, provides:
>
> (a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when--
> (1) the person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary, <u>or the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense</u> …. shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.

18 U.S.C. § 1201 (emphasis added). In Count One the Superseding Indictment, the grand jury alleged that Defendant

> [w]illfully and unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted, and carried away Y.Z., and otherwise held her for his own benefit and purpose, <u>and used and caused to be used a means, facility, and instrumentality of interstate commerce, namely, a Motorola cellular telephone and a Saturn Astra motor vehicle, in committing and in furtherance of the commission of the offense</u>, which resulted in the death of Y.Z. In violation of Tile 18, United States Code, Section 1201(a)(1).

Doc. 26, at 1 (emphasis added).

In the instant Motion, Defendant argues that the offense charged in Count One of the Superseding Indictment—kidnapping, in violation of 18 U.S.C. § 1201(a)(1)—should be dismissed because the jurisdictional elements of § 1201(a)(1) are not satisfied. Doc. 114, at 1. Alternatively, Defendant argues that application of the phrase "means, facility, [or] instrumentality of interstate commerce" to the facts of this case exceeds Congress's authority under the Commerce Clause of the United States Constitution. *Id*. The United States filed a

2

Response objecting to Defendant's Motion, arguing that the Superseding Indictment sufficiently alleged the jurisdictional basis for the offense and that § 1201 is constitutional as applied to this case. Doc. 140.

As will be discussed below, cell phones and automobiles are instrumentalities of interstate commerce under § 1201, and the Superseding Indictment sufficiently alleges that Defendant used those instrumentalities of interstate commerce in furtherance of the offense of kidnapping. Therefore, the Court finds that the Superseding Indictment sufficiently alleges a jurisdictional basis for the kidnapping offense. Further, the Court finds that § 1201 is constitutional as applied to this case. This Order follows.

## LEGAL STANDARD

An indictment is sufficient when it states all elements of the charged offense, informs the defendant of the nature of the charge such that he may prepare a defense, and enables the defendant to plead the judgment as a bar to a subsequent identical prosecution. *United States v. Anderson*, 280 F.3d 1121, 1124 (7th Cir. 2002). Courts examine the sufficiency of an indictment "on a practical basis and in its entirety, rather than in a hypertechnical manner." *United States v. McLeczynsky*, 296 F.3d 634, 636 (7th Cir. 2002) (quoting *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000)). Indictments may generally track the words of the statute itself, "so long as those words expressly set forth all the elements necessary to constitute the offense intended to be punished." *Smith*, 230 F.3d at 305. The statute at issue in this case, 18 U.S.C. § 1201, includes an element that implicates the Commerce Clause.

Congress may enact a statute that includes a jurisdictional element to ensure that the regulation comports with its authority under the Commerce Clause. *See, e.g., United States v. Lemons*, 302 F.3d 769, 772 (7th Cir. 2002) ("Because 922(g) itself contains a jurisdictional

element, and because the Supreme Court in *Bass* and *Scarborough* suggested that prior movement of the firearm in interstate commerce would suffice to meet that element, we have, in the wake of *Lopez,* repeatedly rejected Commerce Clause challenges to application of the felon-in-possession statute."). Indeed, the Supreme Court has identified three broad categories of activity that Congress may regulate under the Constitution's Commerce Clause: (1) use of the channels of interstate commerce; (2) the instrumentalities of commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities; and (3) activities that substantially affect interstate commerce. *United States v. Lopez*, 514 U.S. 549, 558–59 (1995). The provision of the federal kidnapping statute at issue in this case is aimed at the second category, prohibiting the use of the instrumentalities of interstate commerce in committing or in furtherance of the commission of the offense of kidnapping. 18 U.S.C. § 1201.

## DISCUSSION

*(1) Defendant's Sufficiency of the Evidence Argument is Premature*

Defendant first argues that Christensen did not use a cell phone to commit or further the commission of the alleged kidnapping. Doc. 114, at 9. According to Defendant,

> [a]lthough the Superseding Indictment does not hint how the Motorola phone was used to further the kidnapping of Ms. Zhang, discovery provided by the government … suggest that the government will likely cite two lines of usage as satisfying the "in furtherance of" element: (1) searches for information relating to serial killers; and (2) visits to a website known as FetLife, a social media site for individuals with what might be colloquially described as "kinky" interests. An analysis of the data in Attachment 1 shows that neither theory is sufficient to establish jurisdiction[.]

*Id*. at 14. Defendant proceeds to argue that the United States' proffered evidence is insufficient to establish that Christensen used the cell phone in furtherance of the alleged kidnapping, and offers alternative explanations for his internet activity. *Id*. at 14–26. The United States argues that

4

Defendant's sufficiency of the evidence argument is premature. Doc. 140, at 5, n. 3 (collecting cases).

The requirement that a defendant use an instrumentality of interstate commerce in commission of or in furtherance of the offense of kidnapping is a jurisdictional element that must be proven beyond a reasonable doubt at trial. *See Torres v. Lynch*, 136 S. Ct. 1619, 1624–25 (2016). Thus, at least to the extent that Defendant challenges the allegation in the Superseding Indictment that Christensen "used and caused to be used a … Motorola cellular telephone and a Saturn Astra motor vehicle, in committing and in furtherance of the commission of the offense[,]" (Doc. 26, at 1), such an argument is premature. *See, e.g., United States v. Hill*, 700 F. App'x 235, 237 (4th Cir. 2017) ("Because this is an as-applied challenge, whether Hill's conduct sufficiently affects interstate commerce as to satisfy the constitutional limitations placed on Congress' Commerce Clause power may well depend on a consideration of facts, and because the facts proffered here may or may not be developed at trial, it is premature to determine the constitutional issues."); *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009) ("[W]hen evaluating the sufficiency of an indictment, we focus on its allegations, which we accept as true."). Accordingly, the Court declines to resolve pre-trial contested issues of fact regarding whether Christensen's use of a cell phone was "in furtherance of" the alleged kidnapping.

*(2) Automobiles and Cell Phones are Instrumentalities of Interstate Commerce Under § 1201*

*(a) A Cell Phone is an Instrumentality of Interstate Commerce Under § 1201*

As Defendant essentially concedes in his Motion, a cell phone is an instrumentality of interstate commerce as that term is used in § 1201. *See* Doc. 114, at 12 (collecting cases); *United States v. Faris*, 583 F.3d 756, 759 (11th Cir. 2009) ("Even if none of Faris' communications were routed over state lines, the internet and telephone he used to contact the undercover officer were

still 'instrumentalities of interstate commerce.' "); *United States v. Richeson*, 338 F.3d 653, 660–61 (7th Cir. 2003) (telephone is an instrumentality of interstate commerce under murder for hire statute); *United States v. Marek*, 238 F.3d 310, 318–19 (5th Cir. 2001) ("Interstate commerce facilities that have created a criminal federal jurisdictional nexus during intrastate use include telephones, automobiles, and airplanes."); *United States v. Morgan*, 748 F.3d 1024, 1032 (10th Cir. 2014) (cell phone, internet, and GPS tracking devices are instrumentalities of interstate commerce under kidnapping statute); *United States v. Dais*, 559 Fed. App'x 438, 445 (6th Cir. 2014) ("Our caselaw unequivocally holds that cellular telephones, even in the absence of evidence that they were used to make interstate calls, have been held to be instrumentalities of interstate commerce.") (internal quotations omitted); *United States v. Mitchell*, 2013 WL 5377869, at *7 (N.D. Tex. 2013) ("A car and a telephone, both of which were allegedly used in the kidnapping, can be classified as a means, facility, or instrumentality of interstate commerce."). Thus, the Superseding Indictment sufficiently alleges the jurisdictional element of § 1201 by claiming that Defendant used a cell phone in furtherance of the offense.

*(b) An Automobile is an Instrumentality of Interstate Commerce Under § 1201*

Next, Defendant argues that Congress did not intend to establish jurisdiction under § 1201(a)(1) by the mere intrastate use of an automobile in an intrastate kidnapping. Doc. 114, at 26. Specifically, Defendant argues that, "while Congress was concerned with the kidnapping of children, there is no suggestion that it intended to expand the jurisdictional basis for kidnappings other than to include language that would expand liability under § 1201(a)(1) when the internet and other electronic means of communications are used to target children." *Id*. at 27. According to Defendant, "interpreting the phrase 'means, facilities or instrument of interstate commerce' in the amended § 1201(a)(1) to include cars or other vehicles goes well beyond pre-existing law

6

that required that the victim be moved across state lines and would work a wholesale change in settled doctrine." *Id*. at 30.

In support of this argument, Defendant points to a list of Seventh Circuit and Eighth Circuit decisions since 2006 involving the use of cars or other vehicles in § 1201 kidnapping prosecutions and asserts that each case involved the transportation of the victim across state lines. *Id*. at 40 (collecting cases). Distinguishing those cases, Defendant asserts that,

> [w]hile these post-2006 cases do not conclusively establish that the use of a vehicle in an intrastate kidnapping is not contemplated by the 2006 Amendment, coupled with lack of cases prosecuted on such a theory they demonstrate a general understanding that a vehicle's only jurisdictional significance in a § 1201(a) prosecution is when used as a mode of interstate transportation in relation to the kidnapping.

*Id*. at 41.

In its Response, the United States argues that § 1201's plain language includes any use, including the intrastate use, of instrumentalities of interstate commerce, and courts have routinely held that automobiles qualify as instrumentalities of interstate commerce in similar contexts. Doc. 140, at 8–11. The United States thus argues that § 1201 is unambiguous and therefore the Court need not entertain Defendant's host of arguments about legislative history, canons of statutory interpretation, and federalism. *Id*. at 11.

The best indicator of congressional intent is the plain language of the statute, and absent a clearly expressed legislative intention to the contrary, the statutory language is generally conclusive. *Fed. Nat'l Mortg. Ass'n v. City of Chicago*, 874 F.3d 959, 962 (7th Cir. 2017) (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980)). Here, the plain language of § 1201 prohibits the use of instrumentalities of interstate commerce in furtherance of the offense of kidnapping. 18 U.S.C. § 1201. Because § 1201 does not define the

term "instrumentality of interstate commerce," the Court's analysis is guided by judicial opinions that have addressed the issue in similar contexts.

Courts have consistently interpreted the term "instrumentality of interstate commerce" to include automobiles. *See, e.g., United States v. Mandel*, 647 F.3d 710, 722 (7th Cir. 2011) (automobiles are instrumentalities of interstate commerce); *United States v. Cobb*, 144 F.3d 319, 322 (4th Cir. 1998) (same); *United States v. Marek*, 238 F.3d 310, 318–19 (5th Cir. 2001) ("Interstate commerce facilities that have created a criminal federal jurisdictional nexus during intrastate use include telephones, automobiles, and airplanes."); *United States v. Bishop*, 66 F.3d 569, 589 (3d Cir. 1995) (federal jurisdiction to criminalize intrastate carjacking supplied by automobiles' status as instrumentality of interstate commerce); *United States v. Oliver*, 60 F.3d 547, 550 (9th Cir. 1995) ("[C]ars are themselves instrumentalities of commerce, which Congress may protect."); *United States v. Mitchell*, 2013 WL 5377869, at *7 (N.D. Tex. 2013) ("A car and a telephone, both of which were allegedly used in the kidnapping, can be classified as a means, facility, or instrumentality of interstate commerce."). Here, the Court joins the overwhelming weight of authority that holds that automobiles are instrumentalities of interstate commerce.

The plain language of federal kidnapping statute prohibits the use of instrumentalities of interstate commerce in furtherance of the kidnapping offense. As discussed above, automobiles are instrumentalities of interstate commerce under § 1201. When Congress regulates instrumentalities of interstate commerce, "federal jurisdiction is supplied by the nature of the instrumentality or facility used, not by separate proof of interstate movement." *United States v. Richeson*, 338 F.3d 653, 661 (7th Cir. 2003). Thus, contrary to Defendant's assertions, the United States need not allege that Defendant used the automobile in an interstate fashion in order to sufficiently allege jurisdiction under § 1201. *See, e.g., United States v. Jenkins*, 909 F. Supp. 2d

758, 772 (E.D. Ky. 2012) ("Though the intrastate use of a highway to affect a violent act also seems attenuated from interstate commerce, most courts conclude that when Congress limits its regulation to cover activity that involves the use of a channel of interstate commerce, like a highway, it is inherently acting within its power to regulate interstate commerce.").

As discussed above, both automobiles and cell phones qualify as instrumentalities of interstate commerce under § 1201. Therefore, the Superseding Indictment sufficiently alleges the jurisdictional element of § 1201 by claiming that Defendant used an automobile and cell phone in furtherance of the offense.

*(3) The Commerce Clause Gives Congress the Authority to Regulate Instrumentalities of Interstate Commerce*

Finally, Defendant argues that application of § 1201 to the facts of this case would exceed Congress's authority under the Commerce Clause. Doc. 114, at 47. According to Defendant, § 1201 is not "a regulation of the instrumentalities of interstate commerce in the sense used in the second *Lopez* category," despite its use of the term "instrumentality of interstate commerce," because it is not targeted at an instrumentality itself, unlike statutes criminalizing theft or damage to instrumentalities of interstate commerce. Doc. 114, at 52. *See United States v. Morrison*, 529 U.S. 598, 618 (2000) ("The regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States.") (citing *Cohens v. Virginia*, 6 Wheat. 264, 426, 428 (1821) (Marshall, C.J.)). Rather, Defendant argues that § 1201 regulates an activity—kidnapping—and therefore must be analyzed under the third *Lopez* category, i.e., those activities which substantially affect interstate commerce. *Id.*; *see United States v. Lopez,* 514 U.S. 549, 558 (1995). Defendant proceeds to analyze § 1201 under the third *Lopez* category and concludes that the intrastate use

of an automobile in an intrastate kidnapping lacks any substantial effect on interstate commerce. Thus, Defendant claims that application of § 1201 to the facts of this case goes beyond Congress's authority to regulate under the Commerce Clause. In its Response, the United States argues that § 1201 regulates activity under the second *Lopez* category rather than the third, and because Congress may constitutionally regulate instrumentalities of interstate commerce, § 1201 does not exceed Congress's Commerce Clause authority. In support of this argument, the United States relies principally on the Seventh Circuit's decision in *United States v. Mandel*, 647 F.3d 710 (7th Cir. 2011).

As an initial matter, Congress's use of the term "instrumentality of interstate commerce" in § 1201 indicates that it is in fact a regulation of the instrumentalities of interstate commerce, and thus falls under the second *Lopez* category rather than the third. Defendant attempts to distinguish between a statute that "makes it a crime to use such an instrumentality to effect the bad purpose" and a statute that "makes it a crime to effect the bad purpose by using the instrumentality." The Court agrees with the United States that the difference between the two is nothing more than an "empty semantic distinction." Doc. 140, at 14 (quoting *United States v. Taylor*, No. CRIM. 12-0056-WS, 2012 WL 3522528, at *3 (S.D. Ala. Aug. 14, 2012); *United States v. Ballinger*, 395 F.3d 1218, 1228 (11th Cir. 2005)). The regulation of instrumentalities of interstate commerce under the federal kidnapping statute plainly falls under the second *Lopez* category.

In *United States v. Mandel*, a case which was also analyzed under the second *Lopez* category, the Seventh Circuit addressed a defendant's jurisdictional challenge to a conviction under the murder for hire statute, 18 U.S.C. § 1958(a). In order to sustain a conviction under the murder for hire statute, the United States was required to show: "(1) the defendant knowingly

used or caused another to use a facility of interstate commerce, (2) the facility of interstate commerce was used with the intent that a murder be committed in violation of state law, and (3) something of pecuniary value was promised or agreed to be paid in consideration for the murder." *Id*. at 717. On appeal, Mandel argued, *inter alia*, that his intrastate use of a personal automobile fell outside of Congress's Commerce Clause power and was thus an insufficient basis for federal jurisdiction. First, the Seventh Circuit noted that the murder for hire statute fell under the second *Lopez* category of activity that Congress may regulate under the Commerce Clause because it prohibits the use of instrumentalities of interstate commerce with the intent that murder be committed for financial or other remuneration. *Id*. at 720–21. The court held that,

> [a]s applied to Mandel's intrastate use of his automobile, the statute does not plainly exceed the scope of Congress's Commerce Clause authority. *Lopez* recognizes that Congress may regulate the facilities and instrumentalities of interstate commerce, "even though the threat may come only from intrastate activities." 514 U.S. at 558, 115 S.Ct. at 1629. Thus, as we observed in *Richeson,* "[W]hen Congress elects to regulate under the second prong of *Lopez,* 'federal jurisdiction is supplied by the nature of the instrumentality or facility used, not by separate proof of interstate movement.' " 338 F.3d at 660–61 (quoting *Marek,* 238 F.3d at 317). Automobiles are designed to move people and goods over distances both long and short, and as such they play a crucial role in interstate commerce.

*Mandel*, 647 F.3d at 722.

In reaching its decision, the Seventh Circuit acknowledged that Eleventh Circuit may have reached a different conclusion in *Garcia v. Vanguard Car Rental USA, Inc.*

> Mandel's contrary position, that a private automobile must actually be used in interstate commerce in order for it to come within the scope of the commerce power, is not wholly without support. The Eleventh Circuit, in *Garcia v. Vanguard Car Rental USA, Inc.,* 540 F.3d 1242, 1249–50 (11th Cir. 2008), declined to sustain the Graves Amendment, 49 U.S.C. § 30106, which shields car rental and leasing firms from vicarious liability for injuries to persons or property arising from their customers' use of the lent vehicles, as a valid regulation of instrumentalities of interstate commerce. The court was concerned that if a car's status as an instrumentality of interstate commerce were by itself sufficient to support the exercise of the commerce power, there would be no limit to the aspects of automobile use that Congress could regulate. "If cars are always instrumentalities

11

> of interstate commerce ... Congress would have plenary power not only over the commercial rental car market, but over many aspects of automobile use" including "such quintessentially state law matters as traffic rules and licensing drivers." *Id.* at 1250. The court instead upheld the statute on the basis of the third category of activities identified in *Lopez:* activities that substantially affect interstate commerce. *Id.* at 1251–53. For similar reasons, the late Judge Edward R. Becker dissented from the Third Circuit's decision in *Bishop,* noting that whereas rail, plane, and commercial truck traffic is almost always commercial in character, the use of private automobiles is often neither interstate nor commercial; the mere fact that private cars *can* be used in interstate commerce thus was insufficient, in his view, to justify the exercise of the commerce power. 66 F.3d at 598.

*Mandel*, 647 F.3d at 722. However, the court reasoned that cases like *Garcia* "merely demonstrate a difference of opinion as to the reach of federal authority vis-à-vis automobiles, not plain error." *Id*. at 722–23. The court decided that its own prior decision in *Richeson*, 338 F.3d 653, the Fifth Circuit's decision in *United States v. Marek*, 238 F.3d 310 (5th Cir. 2001), and the Third Circuit's decision in *United States v. Bishop*, 66 F.3d 569 (3d Cir. 1995), *as amended* (Sept. 29, 1995), all supported Mandel's convictions, and thus found no plain error. *Mandel*, 647 F.3d at 722–23.

Although Defendant did not discuss the Seventh Circuit's decision in *Mandel* or the Eleventh Circuit's decision in *Garcia* in its Motion, the Defendant's Reply attempts to distinguish *Mandel* for several reasons. First, Defendant notes that, while the "facility or instrumentality of interstate commerce" language in the murder for hire statute and the kidnapping statute are substantively identical, the murder for hire statute has an intrinsic commercial aspect to it, requiring an agreement to pay something of pecuniary value. Doc. 172, at 15. Second, Defendant correctly notes that the murder for hire statute in *Mandel*, unlike the kidnapping statute here, included a statutory definition of "facility or instrumentality of interstate or foreign commerce," which specifically included a "means of transportation or communication." *Id*. at 17, 18 U.S.C. § 1958(a). Third, the Defendant explains that *Mandel* was

decided on plain error review and asserts that the *Mandel* opinion "pointedly recognized a contrary decision from the Eleventh Circuit, while giving no indication that it disagreed with the logic of its reasoning." *Id*.

However, the Seventh Circuit's reasoning in *Mandel* and its prior decision in *Richeson* appear to extend beyond the murder for hire statute and apply equally to the federal kidnapping statute. First, although the murder for hire statute had an intrinsic commercial aspect, requiring an agreement to pay something of pecuniary value, nothing in the *Richeson* or *Mandel* opinions indicates that the court relied on the pecuniary value requirement in finding that the murder for hire statute was a permissible exercise of Congress's authority to regulate instrumentalities of interstate commerce. *See Richeson*, 338 F.3d at 660 ("We wholly agree with the Fifth Circuit that § 1958's construction, plain language, context in the realm of commerce clause jurisprudence, and legislative history all lead to the conclusion that 'it is sufficient [under § 1958] that the defendant used an interstate commerce facility in an *intra* state fashion.' "); *see also Jenkins*, 909 F.Supp.2d at 771 (the use of a car to commit a non-pecuniary hate crime sufficed to form federal jurisdiction).

Second, although it is true that the murder for hire statute in *Mandel* included a statutory definition of "facility or instrumentality of interstate or foreign commerce" that specifically included a "means of transportation or communication," it does not follow that the lack of such a definition in the kidnapping statute means that Congress intended a more narrow definition of the term. To the contrary, by declining to include a statutory definition of "instrumentality of interstate commerce" in the kidnapping statute, the Court presumes that Congress sought to regulate the use of instrumentalities of interstate commerce in kidnappings to the fullest extent of its Commerce Clause power. *See United States v. Wells*, 519 U.S. 482, 491 (1997) (courts

presume that Congress incorporates the common law meaning of the terms it uses if those "terms have accumulated settled meaning under the common law" and "the statute does not otherwise dictate") (internal quotations omitted). Finally, while *Mandel* was decided on plain error review, there is no indication that the Seventh Circuit would have decided the issue differently if the case reached that court in a different posture. Rather, the court recognized that the Eleventh Circuit may have reached a different result but found that its prior decision in *Richeson* and two other circuit court decisions supported its conclusion.

Defendant has raised genuine concerns about the breadth of the Commerce Clause. The Court's finding here, that instrumentalities of interstate commerce in § 1201 includes intrastate use of automobiles, may further raise valid concerns about Congress's intrusion into areas of traditional state authority. But the state of the law in the Seventh Circuit indicates strongly that prohibitions on the use of instrumentalities of interstate commerce in furtherance of violent crimes are permissible applications of federal power, and that automobiles are instrumentalities of interstate commerce for the purposes of such statutes. Accordingly, the Court finds that, as applied to Defendant's intrastate use of an automobile, the federal kidnapping statute does not exceed the scope of Congress's Commerce Clause authority.

## CONCLUSION

For the reasons set forth above, Defendant's Motion (Doc. 114) to Dismiss Count One Due to Lack of Jurisdiction is DENIED.

Signed on this 14th day of January, 2019.

s/ James E. Shadid
James E. Shadid
Chief United States District Judge
