E-FILED
Monday, 14 January, 2019  02:50:50 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-cr-20037-JES-JEH |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION

Now before the Court is Defendant Brendt A. Christensen's Motion (Doc. 96) to Suppress Statements Surreptitiously Recorded by T.E.B. The United States has filed a Response (Doc. 144) to the Motion. An evidentiary hearing was held on December 17 and 18, 2018. For the reasons set forth below, the Motion (Doc. 96) is DENIED.

### BACKGROUND

Federal agents arrested Defendant Brendt A. Christensen on June 30, 2017, pursuant to a criminal complaint charging him with the kidnapping of Yingying Zhang, a female Chinese national, in violation of 18 U.S.C. § 1201(a)(1). Doc. 1. Christensen was later indicted by a federal grand jury sitting in the Urbana Division of the Central District of Illinois. *See* Doc. 13 (Indictment), Doc. 26 (Superseding Indictment). The Superseding Indictment charged Christensen with kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1) (Count 1), and with making false statements to FBI agents investigating Ms. Zhang's disappearance, in violation of 18 U.S.C. § 1001(a)(2) (Counts 2, 3). Doc. 26. The Superseding Indictment also included a notice of special findings regarding the nature of the offense charged in Count 1, including that the death of the victim was intentional, that it occurred during the commission of kidnapping, that it was committed in an especially heinous, cruel, or depraved manner, and that

1

Defendant committed the offense after substantial planning and premeditation. *Id*. The special

findings alleged in the Superseding Indictment made the case eligible for capital punishment. *See*

18 U.S.C. § 3591 *et seq.* On January 19, 2018, the United States filed its Notice of Intent to Seek

a Sentence of Death ("NOI"). Doc. 54; *see also* 18 U.S.C. §3593(a).

      This Motion concerns a series of statements Defendant made to his girlfriend (referred to

herein as "T.B.") between June 16, 2017 and June 29, 2017, before his arrest. The parties agree

that on June 16, 2017, T.B. agreed to record her interactions with Defendant for the FBI. Doc.

97, at 4. At that time, she signed an FD-472 form that indicated that her consent to record

Defendant was given "voluntarily, and without threats or promises of any kind." That form also

indicated that she agreed not to "take any action which is likely to result in the recording or

monitoring of communications to which I am not a party." She then recorded in-person

conversations with Defendant on June 19 through 23, and 29. On June 23, she recorded a

telephone call with Defendant and exchanged text messages with him. The in-person

conversation she recorded on June 29, 2017 took place in public, at a benefit walk being held for

the victim in this case, Ms. Zhang. Doc. 96, at 3. Defendant claims T.B. was not acting under

color of law (and thus was in violation of the Federal Wiretap Act) when she recorded the June

29 conversation because the recording could pick up conversations by other people, where T.B.

was not a party to those other conversations. Doc. 96, at 7–9.

      Defendant further claims that T.B.'s consent to make these recordings was not voluntary

because she lacked the mental capacity to consent and because the FBI was threatening her with

charges if she did not agree. In support of these assertions, Defendant notes that T.B. sent a

number of texts indicating anxiety and distress the day she signed the form, and that she referred

to the FBI "taking me in for more questioning." Doc. 96, at 6. At the evidentiary hearing,

Defendant was unable to produce T.B. to testify. In lieu of her testimony, Defendant introduced

documentation indicating that T.B. was admonished not to take any action likely to result in

recording a conversation to which she was not a party. Defendant also introduced text messages

from T.B. that referenced her having mental health difficulties, with symptoms including loss of

appetite, vomiting, and losing consciousness. The messages also referenced alcohol and drug use

directed at reducing her anxiety and depression. Special Agent Huckstadt testified that the FBI

spent approximately $7,000 on T.B. for expenses like counseling assistance.[1] However, in their

Response, the United States notes that T.B. was never under FBI investigation for this or any

other offense, and that she actively kept in contact with FBI agents without expressing any

hesitation about recording her interactions with Defendant. Doc. 144, at 3. Special Agent

Huckstadt testified consistently with this account, describing T.B. as "resolute" in assisting the

FBI with their investigation. At the hearing, the United States also introduced T.B.'s consent

forms to search her phone and to record her conversations with Defendant.

## LEGAL STANDARD

The voluntariness of consent by an informant is evaluated under a lesser standard than,

for example, the voluntariness of an agreement to search one's property. *See United States v.*

*Horton*, 601 F.2d 319, 322 (7th Cir. 1979) ("[T]he standard, applicable to the present case, [is]

that 'it will normally suffice for the Government to show that the informer went ahead with a call

(or other recorded activity) knowing what the law enforcement officials were about.'") (quoting

*United States v. Bonanno*, 487 F.2d 654, 658 (2d Cir. 1973)). Most circuits have adopted the

"easy" test that the government can demonstrate consent by showing the informer knew what

---

[1] Defense has not raised any claims that the FBI paid T.B. on a contingent basis for the information she reported to them, nor that such payment vitiated her consent. As such, this Order does not address legal issues involving the payment referenced at the evidentiary hearing.

government agents were up to when she agreed to record conversations—the Seventh Circuit is not an exception. *See Horton*, 601 F.2d at 322; *United States v. Phelan*, 1999 WL 1009869 at *5 (collecting cases from the First, Fifth, Eighth, Ninth, Tenth, and Eleventh Circuits that adopt the same Second Circuit rule as *Horton*).

One component of the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.*, generally prohibits the evidentiary use of intercepted oral communications. 18 U.S.C. § 2515. When a person is a party to the communication (or has the consent of a party to the communication), communications they intercept are exempted from this prohibition if 1. the person is acting under color of law, or 2. the person is not acting under color of law, but the purpose of the interception is not a crime or tort. 18 U.S.C. § 2511(2)(c, d). A person acts "under color of law" for the purposes of this statute when they act "under the government's direction when making the recording." *See United States v. Andreas*, 216 F.3d 645, 660 (7th Cir. 2000). Additionally, "oral communications" for the purposes of the Federal Wiretap Act are "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 U.S.C. § 2510(2). As such, statements are not considered "oral communications" under this statute when they are given without an expectation of privacy. *See In The Matter of John Doe Trader Number One*, 894 F.2d 240, 244–45 (7th Cir. 1990).

## DISCUSSION

Defendant argues that the government has not shown T.B.'s consent to be voluntary, in light of the evidence that she was mentally unstable at the time. However, the United States has shown that T.B. knew what government agents were up to when she agreed to record her conversations with Defendant—Special Agent Huckstadt testified that T.B. voluntarily agreed,

4

and that she actively continued cooperating with the FBI agents in this case by keeping in touch about when she was likely to see Defendant, getting the batteries in her recording device replaced, and giving Special Agent Huckstadt the recordings soon after each conversation. She signed a consent form indicating that her agreement was voluntary. Under *Horton*, her awareness of the situation and her active participation in recording Defendant suffice to show voluntary consent. *See Horton*, 601 F.2d at 322. Furthermore, even if the Court gave significant weight to the evidence of T.B.'s mental and physical ailments at the time, these would not vitiate consent— under all of the circumstances, including the consent form, her ongoing communications with agents, testimony from Special Agent Huckstadt about her demeanor, and her status as an adult, it appears that T.B. was capable of consent and granted it freely. *See, e.g., United States v. Navarro*, 90 F.3d 1245, 1257 (7th Cir. 1996) (the consent form alone would be "clear evidence of the voluntariness" of consent); *United States v. Grap*, 403 F.3d 439, 443 (7th Cir. 2005) (applying more stringent consent-to-search standard and finding voluntary consent by woman with serious psychosis) (citing *United States v. Strache*, 202 F.3d 980, 985 (7th Cir. 2000) (mentally ill, suicidal man gave voluntary consent to search at a time when he appeared lucid, relaxed, and cooperative)). T.B. may have been nervous, even terrified, about secretly recording her boyfriend, wondering whether he might be a violent criminal, but the record shows she was determined to do just that. Defendant's motion to suppress the statements she recorded on the grounds that she could not consent to the recording is therefore DENIED.

Defendant further argues that his recorded statements to T.B. between June 16, 2017 and June 29, 2017 should be suppressed because they violate the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq*. One section of that Act, 18 U.S.C. § 2515, prohibits the evidentiary use of certain

recordings. However, that prohibition has multiple exceptions, and either § 2511(2)(c),

§ 2510(1), or § 2511(2)(d) would permit the evidentiary use of the recordings in this case.

First, § 2511(2)(c) states that it is not unlawful for a person acting under color of law to

intercept an oral communication when the person is a party to the communication. Defendant

argues that this does not apply because T.B. was not acting under color of law: the June 29

recording violated the instructions given to her by the FBI. However, this argument fails. A

person acts "under color of law" for the purposes of § 2511 when they act "under the

government's direction when making the recording." *United States v. Andreas*, 216 F.3d 645, 660

(7th Cir. 2000). T.B. clearly made the June 29 recording after consulting with Special Agent

Huckstadt, with his knowledge and direction. Furthermore, even if the written instructions were

relevant to T.B.'s status as acting under color of law, Special Agent Huckstadt testified that the

prohibition on recording others' conversations referred to actions like leaving the recording

device on and walking out of a room, rather than accidentally picking up other voices when

walking in public.

Second, although the June 29 recording picked up conversations to which T.B. was not a

party, these are not "oral communications" under the definition of the statute because the

statements picked up by the device were not made with an expectation of privacy. *See* 18 U.S.C.

§ 2510(1); *In the Matter of John Doe*, 894 F.2d at 244–45. Rather, the statements picked up by

the device were made in public, surrounded by people, at an event with news media present.

Because T.B. acted under color of law and was a party to her communications with Defendant,

the recordings should not be excluded, even if they happened to pick up some audio beyond T.B.

and Defendant's conversation at a public venue.

Third, even if T.B. had not been acting under color of law, her status as a party to the communications (between herself and Defendant), together with her lack of intent to use the recordings to commit a crime or tort, would mean that the evidence is permissible under the Wiretap Act as well. 18 U.S.C. § 2511(2)(d). Under any of these rationales, Defendant's Motion to Suppress the statements recorded by T.B. based on the Wiretap Act must be DENIED.

## CONCLUSION

For the reasons set forth above, Defendant's Motion (Doc. 96) to Suppress Statements Surreptitiously Recorded by T.E.B. is DENIED.


Signed on this 14th day of January, 2019.

/s James E. Shadid
James E. Shadid
Chief United States District Judge

7