UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 17-cr-20037-JES-JEH |
| ) | |
| BRENDT A. CHRISTENSEN, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION

Now before the Court is Defendant Brendt A. Christensen's Motion (Doc. 98) to Suppress Jail Communications and Fruits Thereof. The United States has filed a Response (Doc. 142), and Defendant has filed a Reply (Doc. 171). Oral argument was held on December 18, 2018. For the reasons set forth below, Defendant's Motion (Doc. 98) is DENIED.

### BACKGROUND

Defendant Brendt A. Christensen was arrested by federal agents on June 30, 2017, pursuant to a criminal complaint which charged him with the kidnapping of Yingying Zhang, a female Chinese national, in violation of 18 U.S.C. § 1201. Doc. 1. Christensen was later indicted by a federal grand jury sitting in the Urbana Division of the Central District of Illinois. *See* Doc. 13 (Indictment), Doc. 26 (Superseding Indictment). The Superseding Indictment charges Christensen with kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1) (Count 1), and making false statements to FBI agents investigating Yingying Zhang's disappearance, in violation of 18 U.S.C. § 1001(a)(2) (Counts 2, 3). Doc. 26. The Superseding Indictment returned by the grand jury also included a notice of special findings regarding the nature of the offense charged in Count 1, including that the death of the victim was intentional, that it occurred during the commission of kidnapping, that it was committed in an especially heinous, cruel, or depraved

1

manner, and that Defendant committed the offense after substantial planning and premeditation. *Id*. The special findings alleged in the Superseding Indictment made the case eligible for capital punishment. *See* 18 U.S.C. § 3591 *et seq*. On January 19, 2018, the United States filed its Notice of Intent to Seek a Sentence of Death. Doc. 54; *see also* 18 U.S.C. §3593(a). On August 17, 2018, this case was reassigned to Chief District Judge James E. Shadid.

In the instant Motion, Defendant seeks suppression of all evidence the United States obtained by listening to recordings of Christensen's phone calls while detained at the Macon County and Livingston County jails, asserting that the United States' use of such recordings violates the Fourth and Fifth Amendments to the United States Constitution.[1] Doc. 98. Defendant asserts that, although jails may generally record phone conversations of pretrial detainees for purposes of security, the phone calls at issue here were not recorded for that purpose, but rather were turned over to the prosecution solely for the purpose of bolstering the prosecution's case during the penalty phase of the trial. *Id*. at 2–3.

Defendant asserts the following as a factual basis in support of his motion. After Christensen's arrest, University of Illinois Police Department Task Force Officer ("TFO") Barbra Robbins contacted officials at the Macon County Jail to request access to Christensen's communications through the inmate monitoring system, and TFO Trevor Stalets subsequently provided Robins with log-in information to access the recordings. Robbins then sent an email to FBI agents informing them that she would catalogue the contents of Christensen's phone calls and prepare summaries. When Christensen was transferred to the Livingston County Jail, his phone conversations continued to be recorded. *Id*. at 3–4.

---

[1] Defendant does not allege that his phone conversations with counsel were recorded. Thus, the Court's reference to phone conversations throughout this Order refers exclusively to Christensen's phone conversations with those other than his counsel.

On November 27, 2017, FBI Intelligence Analyst Alex Wedderspoon requested electronic copies of all of Christensen's incoming and outgoing mail. Livingston County Jail Administrator Inman replied to Wedderspoon informing him that Livingston County did not copy incoming or outgoing mail unless requested. Wedderspoon then formally requested copies of all future mail and particularly asked for a copy of a letter Christensen wrote on November 24, 2017. On January 17, 2018, Wedderspoon notified FBI Agent Anthony Manganaro that he had identified an expert, Lt. Kris Thompson, who could serve as an expert witness with respect to the jail call monitoring system. On January 31, 2018, Wedderspoon contacted Livingston County Jail Administrator Inman and stated that he had only received an electronic copy of one incoming letter from Christensen's mother. Wedderman also requested copies of visitor logs and noted the FBI could access "Ctel Skype visits." A Livingston County Jail official responded to Wedderman's request in an email to the three prosecutors asking them to contact Administrator Inman. Attorney Nelson from the Capital Case Section of the Department of Justice emailed Inman and stated that the information was needed "for Mr. Christensen's trial, in particular the death penalty phase." *Id*. at 4–5.

On February 18, 2018, Nelson emailed his fellow counsel and FBI agents that Inman had "set me up with an account on Smart Jail, because Livingston County is going to an electronic system for inmates [which] allows for instant messages, postal mail, and photographs, and records them all so that we can look at them at any time." Mr. Nelson sent the login information and password and wished his colleagues "Happy Hunting!" Defendant asserts that the United States is in possession of over 500 recordings of Christensen's phone conversations, and that neither the jail nor the United States has produced any formal agreement or memoranda concerning the routine disclosure of inmate communications to the prosecution. *Id*. at 6.

Defendant also asserts the seizure and search of Christensen's phone calls violated his Fifth Amendment due process rights. *Id*. at 17–21. He argues that the recording of his phone conversations amounted to punishment, and was thus prohibited under *Bell v. Wolfish*, 441 U.S. 520 (1979).

In its Response, the United States argues that (1) Defendant had no legitimate or reasonable expectation of privacy in his recorded jails calls, and (2) he impliedly consented to their monitoring and recording. Doc. 142, at 2. Defendant's Reply discusses, *inter alia*, Supreme Court cases about drunk driving. *See* Doc. 171. This Order follows.

## LEGAL STANDARD

"A search within the protection of the Fourth Amendment occurs when the government intrudes upon an individual's legitimate expectation of privacy in the object of the search." *United States v. Paxton*, 848 F.3d 803, 807 (7th Cir. 2017) (citing *Katz v. United States*, 389 U.S. 347, 352–53 (1967)). The Fourth Amendment's protections "extend to government eavesdropping upon one's conversations with others, in circumstances where he has a reasonable expectation that the conversation is not subject to interception." *Id*. (citing *Katz*, 389 U.S. at 353). In order to establish a protected privacy interest in an intercepted conversation, a defendant must show (1) that he manifested a subjective expectation of privacy in that conversation, and (2) that his subjective expectation is one that society is prepared to recognize as reasonable. *Id*. at 808. If the defendant makes the required showings, the conversation will be deemed an unlawful unauthorized search unless an exception to the warrant requirement justifies the intrusion. *Id*. (citing *Katz*, 389 U.S. at 354–59).

### DISCUSSION

*(a) Defendant's Fourth Amendment Challenge*

In his Motion, Defendant first asserts that his rights under the Fourth Amendment were violated when federal prosecutors and law enforcement officers obtained recordings of Christensen's phone conversations for purposes other than jail security. Doc. 98. Defendant recognizes that the privacy rights of pretrial detainees are curtailed, *see Bell v. Wolfish*, 441 U.S. 520 (1979), but argues that Christensen had a "reasonable expectation of privacy in not having his communications handed over by jail officials *en masse* to prosecutors[.]" Doc. 98, at 8. Whether Christensen had a protectable Fourth Amendment privacy interest in his jail communications depends on whether he manifested a subjective expectation of privacy in his conversations, and if so, whether that subjective expectation is one that society is prepared to recognize as reasonable. *See Paxton*, 848 F.3d at 808 (citing *Katz*, 389 U.S. at 353).

The defense must first show that Christensen, a pretrial detainee, had a subjective expectation of privacy in his phone conversations. *See Katz*, 389 U.S. at 351 ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.") (internal citations omitted). Here, each of Christensen's phone calls at the Macon and Livingston County jails were preceded by a recording informing both participants that the call was being recorded. Doc. 142, at 2. Moreover, the United States immediately and routinely handed over the recordings to the defense. *Id*. Thus, at the outset of each phone call, Christensen was aware that his conversations were not private. He therefore lacked a subjective expectation of privacy in his recorded jail calls. *See United States v. Doyle*, No. 06 CR 224, 2007 WL 707023, at *1 (E.D. Wis. Feb. 16, 2007) ("[W]here, as

here, a jail provides notice that calls will be monitored, there is no reasonable expectation of privacy in such communications, *United States v. Sababu,* 891 F.2d 1308, 1329 (7th Cir. 1989). In the present case, defendant was plainly advised in several ways that his calls were being monitored and recorded. He cannot claim a legitimate expectation of privacy under such circumstances.").

Even if Christensen had a subjective expectation of privacy in his jail phone calls, the expectation must be one that society is prepared to recognize as reasonable. *Katz*, 389 U.S. at 808. In *Hudson v. Palmer*, the Supreme Court addressed a prisoner's expectation of privacy in his prison cell:

> Notwithstanding our caution in approaching claims that the Fourth Amendment is inapplicable in a given context, we hold that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.

*Hudson v. Palmer*, 468 U.S. 517, 525–26 (1984). The concerns that justify curtailing prisoner's Fourth Amendment rights are also present with pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("There is no basis for concluding that pretrial detainees pose any lesser security risk than convicted inmates. Indeed, it may be that in certain circumstances they present a greater risk to jail security and order."). Thus, in *United States v. Paxton*, the Seventh Circuit held that individuals detained in the back of a police van lacked an objectively reasonable expectation of privacy in conversations that were surreptitiously recorded by law enforcement. *United States v. Paxton*, 848 F.3d 803, 811 (7th Cir. 2017).

In the specific context of a prisoner or detainee's recorded phone calls, the Seventh Circuit has similarly held that an expectation of privacy in such calls is unreasonable. *See United*

6

*States v. Sababu*, 891 F.2d 1308, 1329 (7th Cir. 1989) ("We believe that it was unreasonable for her to expect that telephone calls she placed to an inmate in a high-security federal penitentiary would be private."); *United States v. Madoch*, 149 F.3d 596, 602 (7th Cir. 1998) (marital communications privilege does not apply to recorded telephone conversations between defendant and her incarcerated spouse because privilege only applies to communications made in confidence, and there is no expectation of privacy in jail telephone calls). Applying *Madoch*, *Sababu*, and *Paxton* to the facts of the present case, the Court agrees with the United States that Christensen did not have a reasonable expectation of privacy in his recorded jail calls. Accordingly, the Court finds that Christensen did not have a protectable Fourth Amendment privacy interest in his jail communications.

The United States also argues that, even if Christensen did have a Fourth Amendment interest in his recorded calls, the recordings would still be admissible at trial because he impliedly consented to the recording of his phone conversations. Doc. 142, at 7–8. This justification was alluded to by the Seventh Circuit in *Sababu*. 891 F.2d at 1329 (non-prisoner caller had no reasonable expectation of privacy when speaking on prison phone in part because CFR placed her on constructive notice that prison officials could legally monitor calls). Likewise, in *United States v. Novak*, the First Circuit held that a prisoner consented to the recording of phone conversations *with his attorney*, and that the consent was valid "nothwithstanding the smaller number of choices that an inmate in that circumstance has."

> Holyoke was made aware, both through posted signs and recorded messages, that his calls would be monitored and recorded. He did not ask prison officials if there was a way to communicate with his attorney without having his calls monitored, nor did he ask either his Federal Defender or Novak himself how to avoid the monitoring of calls. He did not choose alternate means to communicate with Novak, such as by letter or in person. Instead, Holyoke initiated telephone calls to Novak and discussed sensitive legal issues, despite the fact that every call he initiated started with a recording stating that the call was subject to monitoring and

7

recording. Under these circumstances, we hold that Holyoke consented to monitoring of his calls.

*United States v. Novak*, 531 F.3d 99, 103 (1st Cir. 2008) (O'Connor, J., sitting by designation). Here, the Court agrees with the United States that Christensen impliedly consented to the recording of his jail phone calls when he proceeded to make the calls after being placed on notice that his calls were being recorded.

Lastly, Defendant argues that, although jails may record and monitor Christensen's communications for the purposes of security, the review of Christensen's communications was not done for that purpose. Rather, Defendant argues that Christensen's communications were reviewed by the FBI solely for the purpose of gathering evidence against him. Doc. 95, at 3. In its Response, the United States argues that the Supreme Court's decision in *California v. Greenwood* forecloses such an argument. Doc. 142, at 5. In *Greenwood*, the Supreme Court held that the respondents did not have a reasonable expectation of privacy under the Fourth Amendment in garbage bags left on the curb:

> Here, we conclude that respondents exposed their garbage to the public sufficiently to defeat their claim to Fourth Amendment protection. It is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public. See *Krivda, supra,* 5 Cal.3d, at 367, 96 Cal.Rptr., at 69, 486 P.2d, at 1269. Moreover, respondents placed their refuse at the curb for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through respondents' trash or permitted others, such as the police, to do so. Accordingly, having deposited their garbage "in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it," *United States v. Reicherter,* 647 F.2d 397, 399 (CA3 1981), respondents could have had no reasonable expectation of privacy in the inculpatory items that they discarded.

*California v. Greenwood*, 486 U.S. 35, 40–41 (1988).

In *United States v. Doyle*, the United States District Court for the Eastern District of Wisconsin applied *Greenwood* to a factual situation almost identical to the instant case. In *Doyle*,

8

the pretrial detainee defendant argued that jailer's passing along of his intercepted jail phone conversations to prosecutors violated his Fourth Amendment privacy interests. *United States v. Doyle*, No. 06 CR 224, 2007 WL 707023, at *1–2 (E.D. Wis. Feb. 16, 2007). The district court rejected this argument, reasoning:

> Defendant further argues that even if the notices provided by the jail informed him of call recording, the passing of the tapes on to prosecutors was unjustified and unexpected. However, he cites no authority for the proposition that jailers may not share evidence with prosecutors, or that he may claim an expectation of privacy against his prosecutors if not his jailers. *Cf. California v. Greenwood,* 486 U.S. 35, 40-41, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988) (rejecting claim that citizen has legitimate expectation of privacy in garbage which she expects to be picked up by sanitation workers, rather than police).

*Doyle*, No. 06 CR 224, 2007 WL 707023, at *2. In sum, the court in *Doyle* rejected the argument that a defendant who does not have a legitimate expectation of privacy in his jail calls being reviewed by jail officials may nevertheless have an expectation of privacy when those jail calls are forwarded to outside law enforcement or prosecutors. *Id*.

Similarly, in *Paxton*, the Seventh Circuit recently rejected the argument that the legitimacy of a defendant's expectation of privacy depends on the subjective intentions of law enforcement:

> Officers also have a significant interest in security that warrants the monitoring of detainees in their custody, to ensure that detainees are not harming one another or attempting escape, or that a detainee has not fallen ill, for example. *See, e.g., Virginia v. Moore*, 553 U.S. 164, 177, 128 S.Ct. 1598, 1607–08, 170 L.Ed.2d 559 (2008) (describing safety rationale for permitting police searches incident to arrest); *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 330–34, 132 S.Ct. 1510, 1518–20, 182 L.Ed.2d 566 (2012) (noting safety and health interests that justify intrusive searches of detainees upon admission to jail). The government stresses this latter interest in its briefs. We agree with the defendants that it is somewhat ironic for the government to invoke this interest, given that it did not use its surveillance equipment to monitor them in real time during their transport to the ATF office (which would have enabled agents to detect and address any safety problems as they arose) and instead only recorded their conversations for later use. But the material point, in terms of the defendants' expectation of privacy, is that the government has legitimate reasons, wholly

9

>consistent with the public interest, for monitoring individuals it has taken into its custody and placed into a transport vehicle. <u>Regardless of the agents' actual motivations for monitoring the defendants during transport, these legitimate interests reinforce our conclusion that society is not prepared to recognize as reasonable whatever subjective expectations of privacy the defendants may have harbored in their conversations within the van.</u> *See Illinois v. Lafayette*, 462 U.S. 640, 646–47, 103 S.Ct. 2605, 2609–10, 77 L.Ed.2d 65 (1983) (conducting inventory search of arrested person's belongings is reasonable regardless of particular officer's subjective motivations for search).

*Paxton*, 848 F.3d at 812–13 (emphasis added).

Applying *Greenwood*, *Doyle*, and *Paxton* to the instant case, the Court agrees with the United States that the motivations for recording Christensen's jail calls are not relevant to whether he harbored a legitimate expectation of privacy in those calls. *See also Whren v. United States*, 517 U.S. 806, 813 (1996) ("We think these cases foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved…. Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."). Accordingly, Defendant's Fourth Amendment challenge to the recording of his jail phone calls is denied.

*(b) Defendant's Fifth Amendment Challenge*

Next, Defendant argues that the seizure and search of Christensen's phone calls violated his Fifth Amendment due process rights. Doc. 98, at 17–21. Specifically, Defendant argues that the recording of his phone conversations amounted to punishment, and was thus prohibited under *Bell v. Wolfish*, 441 U.S. 520 (1979). In *Bell*, the Supreme Court addressed whether certain search policies at a detention center constituted punishment under the Fifth Amendment. Answering in the negative, the Supreme Court reasoned,

>Neither the District Court nor the Court of Appeals suggested that these restrictions and practices were employed by MCC officials with an intent to punish the pretrial detainees housed there. Respondents do not even make such a suggestion; they simply argue that the restrictions were greater than necessary to satisfy petitioners'

> legitimate interest in maintaining security. Therefore, the determination whether these restrictions and practices constitute punishment in the constitutional sense depends on whether they are rationally related to a legitimate nonpunitive governmental purpose and whether they appear excessive in relation to that purpose. Ensuring security and order at the institution is a permissible nonpunitive objective, whether the facility houses pretrial detainees, convicted inmates, or both. For the reasons set forth in Part III, *supra*, we think that these particular restrictions and practices were reasonable responses by MCC officials to legitimate security concerns.

*Bell v. Wolfish*, 441 U.S. 520, 561 (1979) (internal citations omitted). Defendant argues that attorney Nelson's email to Inman and "Happy Hunting!" email to co-counsel show an "express intent to punish" Christensen. Doc. 98, at 19. Further, Defendant asserts that "the indiscriminate monitoring, rummaging through and sharing of all of Mr. Christensen's communications by FBI agents, Task Force Officers and the prosecutors in this case had no rational relationship to the security of the Macon County and Livingston County Jails and was, in any event, an exaggerated response to any issues of security." *Id*. at 20. The United States did not respond to this portion of Defendant's Motion.

    The Court believes that Defendant's reading of *Bell* strains the definition of "punishment" too far. *Bell* discussed restrictions and procedures such as body cavity searches of detainees and prisoners, and upheld those procedures as legitimate responses to security concerns. 441 U.S. at 561. If the body cavity searches in *Bell* did not amount to punishment, it is difficult to imagine any set of circumstances where the monitoring and recording of a detainee's jail phone calls would. Moreover, the monitoring and recording of jail phone calls is a common policy not only at the Macon County and Livingston County jails, but of detention facilities generally. "Loss of freedom of choice and privacy are inherent incidents of confinement in such a facility." *Id*. at 537. Thus, as a pretrial detainee, the officials at the Macon and Livingston County jails may "subject him to the restricts and conditions of the detention facility so long as those conditions

11

and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell*, 441 U.S. at 536–37. The Court finds that the recording of Christensen's phone calls did not amount to punishment and therefore denies Defendant's Fifth Amendment challenge.

## CONCLUSION

For the reasons set forth above, Defendant's Motion (Doc. 98) is DENIED.

Signed on this 14th day of January, 2019.

s/ James E. Shadid
James E. Shadid
Chief United States District Judge
