IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17-CR-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

**THE UNITED STATES OF AMERICA'S RESPONSE TO THE
DEFENDANT'S MOTION TO DISMISS THE INDICTMENT
AND NOTICE OF INTENT BASED ON SELECTIVE PROSECUTION**

NOW COMES the United States of America, by John C. Milhiser, United States Attorney for the Central District of Illinois, Eugene L. Miller and Bryan D. Freres, Assistant United States Attorneys, and James B. Nelson, Department of Justice Trial Attorney, and hereby requests that this Court deny the Defendant's Motion to Dismiss Indictment and Notice of Intent for Unconstitutional Discrimination in the Decisions to Bring Federal Charges Against Defendant and to Seek the Death Penalty and for Discovery (R.201) because the defendant's motion is without merit.

## BACKGROUND

A federal grand jury charged the defendant, Brendt A. Christensen, with kidnapping Yingying Zhang, and further alleged that he intentionally killed her in an especially heinous, cruel, and depraved manner after substantial planning and premeditation. (R.26) The United States later filed a Notice of Intent to Seek a Sentence of Death (NOI) for that offense pursuant to the Federal Death Penalty Act (FDPA),

18 U.S.C. § 3591, et seq. (R.54) Thereafter, the defendant filed a motion to compel the United States to provide the defendant with certain internal, deliberative executive branch documents to attempt to prove racial discrimination. (R.82) The Court held the defendant's request was barred by *United States v. Armstrong*, 517 U.S. 456, 463-64 (1996), after finding the defendant's arguments were "disingenuous" and filled with "hyperbole." (R.91 at 9)

The defendant has now filed a motion to dismiss both the indictment and the NOI based on his claim that the United States selectively prosecuted the defendant based on the national origin of the victim. (R.201) Moreover, he once again seeks to require the United States to disclose its internal, deliberative documents. (R.201) The defendant's motion is without factual or legal merit, and in fact, his discovery request is prohibited by Rule 16(a)(2) of the Federal Rules of Criminal Procedure and *Armstrong*. Therefore, he is not entitled to his requested relief, and his motion should be denied without a hearing.

## APPLICABLE LAW

I. **Elements of a Selective Prosecution Claim.**

Prosecutorial decisions are afforded a presumption of regularity, and thus, the elements necessary to prove a claim of selective prosecution are demanding so as to impose a significant barrier to the litigation of insubstantial claims. *United States v. Armstrong*, 517 U.S. at 463-64. A criminal defendant must present clear evidence that federal prosecutorial policy had a discriminatory effect and was motivated by a discriminatory purpose. *Id.* at 465; *see also United States v. Barlow*, 310 F.3d 1007, 1012 (7th Cir. 2002) (affirming district court's denial of discovery motion in selective prosecution

claim because no "evidence of *both* discriminatory effect and discriminatory intent" to make threshold showing required by *Armstrong*) (emphasis added). To establish discriminatory effect based on the victim's national origin, the defendant must show that the United States did not prosecute similar cases involving victims of different national origins. *Armstrong,* 517 U.S. at 465.

## II.     Discovery to Pursue a Selective Prosecution Claim.

Rule 16(a)(2) of the Federal Rules of Criminal Procedure specifically excludes the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Moreover, discovery regarding a selective prosecution claim is not material to preparing a defense under Rule 16(a)(1)(E)(i). *Id.* at 462-63.

Applying these rules, it is well established that a defendant is not entitled to memoranda and discussions within the Executive Branch leading up to the formulation of an official position, including a decision to charge a case or seek a sentence of death. *See, e.g., Wayte v. United States*, 470 U.S. 598, 607–08 (1985) ("Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy. All these are substantial concerns that make the courts properly hesitant to examine the decision whether to prosecute"); *United States v. Ribota*, 792 F.3d 837, 840 (7th Cir. 2015) ("we are mindful that government prosecutors must necessarily have

3

wide discretion over whether, how, and when to bring a case"); *United States v. Scott*, 631 F.3d 401, 406–07 (7th Cir. 2011), *as amended* (Jan. 28, 2011) ("[O]ur case law embodies the long-settled principle that we safeguard prosecutorial discretion by shielding it from judicial review"); *In re United States*, 398 F.3d 615, 618 (7th Cir. 2005) ("How the United States reaches its litigating positions, who said what to whom within the prosecutor's office, and so on, are for the Attorney General and the President to evaluate. The Judicial Branch is limited to assessing counsel's public deeds."); *United States v. Zingsheim*, 384 F.3d 867, 872 (7th Cir. 2004) (describing a "deliberative process" privilege).

Because discovery on a selective prosecution claim diverts prosecutors' resources and discloses prosecutorial strategy, the Supreme Court imposes a rigorous standard for discovery in aid of such a claim. *Armstrong*, 517 U.S. at 468; *see also Bond v. Atkinson*, 728 F.3d 690, 694 (7th Cir. 2013) (noting that *Armstrong* sets a high evidentiary standard before a court may order discovery into law-enforcement practices); *United States v. Johnson*, 900 F. Supp. 2d 949, 972 (N.D. Iowa 2012) (denying discovery related to government's exercise of discretion in death penalty case where defendant failed to provide any evidence of impermissible government action).

Under *Armstrong*, a defendant must present some evidence tending to show both discriminatory effect and intent. 517 U.S. at 469. To show discriminatory effect, a defendant must produce some evidence that the United States could have prosecuted cases involving similarly situated victims of other national origins, but did not. *Id.* (noting that " '[s]elective prosecution' implies that a *selection* has taken place") (emphasis added). If a defendant uses statistics, they must be relevant and reliable. *Barlow,* 310 F.3d

4

at 1011 (affirming district court denial of discovery after finding defendant's statistics were neither relevant nor reliable).

## RESPONSE

### I. The Defendant Has Not Shown Discriminatory Effect.

The defendant has not even attempted to show discriminatory effect, let alone done so sufficiently to warrant discovery or relief. To satisfy this element, he must show that the United States did not prosecute cases involving individuals of other national origins who were kidnapped and murdered in an especially heinous, cruel, and depraved manner after substantial planning and premeditation, where the offender used an instrumentality of interstate commerce. The defendant has failed to make even a threshold showing, let alone the required showing under *Armstrong*.

In fact, it is absurd to suggest the United States would not have prosecuted this defendant for this conduct, nor the Attorney General chosen to seek a sentence of death, if the victim had been, for example, Irish, Japanese, or Korean. The defendant presents no evidence to suggest otherwise. Therefore, the defendant's motion to dismiss the indictment and for discovery based on a claim of selective prosecution must be denied. *Cf. United States v. Davis*, 793 F.3d 712, 720 (7th Cir. 2015) ("To the extent that Davis and the other six defendants want information about how the United States Attorney has exercised prosecutorial discretion, *Armstrong* is an insuperable obstacle").

## II.     The Defendant Has Not Shown Discriminatory Intent.

Although his failure to show discriminatory effect dooms his claim, the defendant also has not shown discriminatory intent. He claims that the prosecution's reference to the victim being "a Chinese national, not an Illinois citizen," is an "unambiguous admission" that he was prosecuted federally based on the victim's national origin.[1] This is nonsense. First of all, the defendant incorrectly conflates citizenship or nationality with national origin. *See Fortino v. Quasar Co., a Div. of Matsushita Elec. Corp. of Am.*, 950 F.2d 389, 393 (7th Cir. 1991) (holding that citizenship distinction was not discrimination on basis of national origin). For example, a U.S. citizen (*i.e.,* national) could be of Chinese national origin, just as a Chinese national could of be of Korean, Indonesian, or some other national origin. *Id.*

In his prior motion to dismiss under the Tenth Amendment, the defendant advanced the red herring argument that the State of Illinois had a greater interest in prosecuting the defendant than the United States.[2] In his written and oral arguments, the defendant extensively stressed the interest of the State of Illinois in protecting its own citizens, implicitly to the exclusion of those who were not Illinois citizens. (R.117 at 35-43) In responding to this frivolous claim, the United States pointed out various federal interests in the prosecution, including, *inter alia,* that the victim was not an

---

[1] The instant allegation is in apparent conflict with the defendant's prior allegation, made during oral arguments on December 14, 2018, when he claimed that he knew the only reason his case was prosecuted federally was because of the availability of the death penalty.

[2] In denying the defendant's motion, the Court held that "[t]he question of whether the Tenth Amendment has been violated is therefore not one of interest balancing, but rather of the extent of Congress's enumerated powers." (R.207 at 4)

Illinois citizen, and was, in fact, a foreign national. This was an invited response and was entirely appropriate.

Since the ratification of the Constitution, federal courts have properly considered the citizenship or nationality (as opposed to national origin) of individuals in addressing federal jurisdiction without violating constitutional restrictions related to national origin. For example, district courts must take into account whether citizens are from different states or citizens or subjects of a foreign state in assessing diversity of citizenship. 18 U.S.C. § 1332(a).

In fact, the kidnapping statute itself has long reflected congressional concern with protecting foreign nationals visiting the United States. Section 1201 states that the statute may be applied when the victim "is a foreign official, an internationally protected person, or an official guest . . . ." 18 U.S.C. § 1201(a)(4). *Cf. United States v. Marcano-Garcia*, 622 F.2d 12, 15 (1st Cir. 1980) (affirming kidnapping conviction based on foreign-status of victim). An "official guest" is defined, in part, as "a citizen or national of a foreign country present in the United States . . . ." 18 U.S.C. § 1116(b)(6).

This federal concern was heightened following the murder of the Israeli Olympic athletes in Munich in 1972: "In reaction to this terrorist outrage, Senator McClellan . . . not[ed] that 'had the situs of the tragedy been the United States, no federal jurisdiction would exist despite the fact that our responsibilities would parallel those which exist vis-a-vis visiting diplomatic personnel.'" *United States v. Birk*, 797 F.2d 199, 203 (5th Cir. 1986). Thus, the "Committee . . . added in its committee report that the official guest provision . . . would 'also operate to protect the rights of visiting artists, academic and

7

scientific groups, and other groups *and individuals who ought not be beyond the pale of Federal concern.'" Id.* (quoting S.Rep. 1105, 92d Cong., 2d Sess. 9 1972, reprinted in U.S. Code Cong. & Ad. News 4316, 4319) (emphasis added). Based on this legislative history, the Fifth Circuit found that the United States had a legitimate interest in applying the kidnapping statute to foreign visitors:

> We are satisfied that Congress intended to extend federal prosecutorial jurisdiction to cases such as this one. An Indian dignitary was on United States soil. A Hindu, he was a member of a group that had been attacked by Sikh extremists in the recent past. Had harm come to him in the United States, such a thing was no matter of governmental indifference and might well have affected our foreign relations with India. In light of this, it would be both short-sighted and small-minded to turn the question of federal jurisdiction on the completion of a ministerial task, when Congress intended that federal prosecutorial machinery be available in matters implicating the conduct of this country's foreign affairs.

*Id.* at 204.

Notably, the victim here was a visiting academic scholar. While the victim's status as a foreign national and visiting academic scholar did not form the specific basis for federal jurisdiction in this case, the Court nonetheless could consider it in refuting the defendant's argument that the federal government had an insufficient interest in prosecuting this case vis-a-vis the State of Illinois. This has nothing to do with the victim's national origin. The defendant's claim to the contrary is frivolous and does not entitle him to discovery. *See United States v. Westmoreland*, 122 F.3d 431, 434 (7th Cir. 1997) ("In the absence of any evidence that would be probative of selective prosecution, the district court did not err in refusing to grant discovery. Westmoreland is not entitled to go on a fishing expedition."). Indeed, this Court has already rejected a similar request

for discovery by the defendant, finding that it was "the definition of a 'fishing expedition.'" (R.91 at 8)

Moreover, the defendant's claim that the victim's national origin improperly influenced the Attorney General's decision to seek a sentence of death is equally without merit. Under the Department of Justice Protocol, the national origin of a defendant or victim plays no role in the decision whether to seek a sentence of death. USAM § 9-10.030. The prosecutor's reference to the victim's foreign citizenship and lack of Illinois citizenship related solely to the federal interest in prosecution, not the basis for the Attorney General's decision to seek a sentence of death. Moreover, those comments were made well after the United States filed the NOI and well after this Court had already noted that there was no "evidence whatsoever that race played a role in the government's decision to seek the death penalty." (R.91 at 9 n.3)

There is no evidence – and the defendant has presented none – to rebut the presumption that the Attorney General properly and constitutionally exercised his discretion in choosing to seek a sentence of death. *See United States v. Slone*, 969 F. Supp. 2d 830, 837–38 (E.D. Ky. 2013) ("The DOJ's decision to pursue a death sentence is . . . within its unreviewable discretion.") (citation omitted); *see also United States v. Tsarnaev*, Case No. 13-10200, 2013 WL 5701582, at *2 (D. Mass. Oct. 18, 2013) (unpublished order) (denying defense motion intruding in DOJ's capital review process because it was "well beyond the scope of any inherent authority to manage judicial business").

### III. None of the Cases Cited by the Defendant Entitle Him to His Requested Relief.

The defendant cites various cases in his motion, but none of them actually granted the relief the defendant seeks here.[3] For example, in both *Armstrong,* 517 U.S. at 470-71, and *United States v. Bass,* 536 U.S. 862, 862 (2002) (per curiam), the Supreme Court reversed a district court's decision to grant a motion for discovery based on selective prosecution. In *McCleskey v. Kemp,* 481 U.S. 279, 319-20 (1987), the Supreme Court affirmed a court of appeals decision rejecting an Eighth Amendment challenge based on a claim of selective prosecution in application of the death penalty. *See also Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 270 (1977) ("Respondents simply failed to carry their burden of proving that discriminatory purpose was a motivating factor in the Village's decision").

In *Belmontes v. Brown*, 414 F.3d 1094, 1129 (9th Cir. 2005), the court found that the defendant's statistical evidence was insufficient to support his racial discrimination claim. (While the Ninth Circuit vacated the conviction based on an allegedly erroneous jury instruction, that decision was later reversed by the Supreme Court. *Ayers v. Belmontes*, 549 US 7, 24 (2006)). In *United States v. Watts,* No. 14-CR-400063 (S.D. Ill. Oct. 30, 2015), the district court denied the defendant's motion for discovery of information concerning the Department of Justice's operation of the federal death penalty based on his claim of selective prosecution. (R.256 at 11)

---

[3] The only case cited by the defendant in which a defendant prevailed was *United States v. Falk*, 479 F.2d 616 (7th Cir. 1975). That case involved the chilling of the exercise of free speech and not a defendant or victim who was a member of a protected class based on race or national origin. *Id.* at 624. Therefore, it is inapposite to the defendant's argument.

Moreover, each of the cases cited by the defendant alleged discrimination against persons of color – in other words, historic victims of discrimination -- in favor of white victims. *E.g., Armstrong,* 517 U.S. 459 (claim by the Office of Federal Public Defender that the defendant was prosecuted because he was black); *McCleskey,* 536 U.S. at 862 (defendant alleged that Georgia imposed the death penalty more often on black defendants and killers of white victims than on white defendants and killers of black victims); *Bass,* 536 U.S. at 862 (defendant alleged that the United States charges blacks with a death-eligible offense more than twice as often as it charges whites); *Belmontes*, 414 F.3d at 1129 (defendant alleged that killers whose victims were white were charged with a capital offense 30% of the time, compared to victims who were African American or Latino only 19% and 6% of the time, respectively).

In *Watts,* the defendant (represented by one of the same attorneys as the defendant in this case) alleged that the federal death penalty discriminates against people of color in favor of white victims:

> Watts believes the Government's decision to authorize pursuit of the death penalty in this case is infected with race and/or gender bias; Watts is an African-American man, and [A.G.] and [N.S.] were both white women. Specifically, he asserts that defendants who kill white female victims, especially African-American men who kill white women, receive the death penalty at a substantially higher rate than those who kill others. He argues the disparity is so high it cannot be due to mere chance. Therefore, Watts believes imposition of the death penalty would be arbitrary because it would rest, at least in part, on factors such as race or gender that are irrelevant and improper.

(R.256 at 2) That historical context of alleged discrimination against persons of color does not apply here.

11

Thus, the defendant – who is white and is accused of killing a person of color – relies solely on cases where the predicate for the selective prosecution argument was that the death penalty is disproportionately applied to persons of color who kill white victims. None of those cases support the defendant's motion to dismiss the indictment or his request for discovery.

WHEREFORE, the United States of America respectfully requests that this Court deny the Defendant's Motion to Dismiss Indictment and Notice of Intent for Unconstitutional Discrimination in the Decisions to Bring Federal Charges Against Defendant and to Seek the Death Penalty and for Discovery.

Respectfully submitted,

JOHN C. MILHISER
UNITED STATES ATTORNEY

s/ Eugene L. Miller
Eugene L. Miller, Bar No. IL 6209521
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone:  217/373-5875
Fax:  217-373-5891
eugene.miller@usdoj.gov

s/ James B. Nelson
James B. Nelson
Trial Attorney
Capital Case Section
United States Department of Justice
Washington, DC 20004
1331 F St. NW, Room 625
Washington, DC 20004
Phone: 202/598-2972
james.nelson@usdoj.gov

s/ Bryan D. Freres
Bryan D. Freres
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone:  217/373-5875
Fax:  217-373-5891
bryan.freres@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on January 25, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to all CM/ECF participants.

s/ Eugene L. Miller
Eugene L. Miller, Bar No. IL 6209521
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone:  217/373-5875
Fax:  217-373-5891
eugene.miller@usdoj.gov