UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>  )<br>Plaintiff,   )<br>  )<br>v.   )<br>  )<br>BRENDT A. CHRISTENSEN,   )<br>  )<br>Defendant.   ) | Case No. 17-cr-20037-JES-JEH |

## O<small>RDER</small>

Now before the Court is Defendant Brendt A. Christensen's Motion (Doc. 162) for Order Establishing Procedures Pursuant to Federal Rule of Criminal Procedure 12.2(c). The United States has filed a Response (Doc. 180), Defendant has filed a Reply (Doc. 198), and the United States has filed a Sur-reply (Doc. 212). Likewise, the United States has filed a Motion (Doc. 181) for a Psychiatric Exam of the Defendant Pursuant to Federal Rule of Criminal Procedure 12.2(c)(1)(B). The Court heard argument on these motions on December 14, 2018 and February 1, 2019.

For the following reasons, the Court hereby **GRANTS** Defendant's Motion (Doc. 213) for Extension of Time to File Amended 12.2 Notice, **GRANTS** Defendant's Motion (Doc. 162) for Order Establishing Procedures Pursuant to Fed. R. Crim. P. 12.2(c) to the extent that it is consistent with this Order, and **GRANTS** the United States' Motion (Doc. 181) for Psychiatric Exam of the Defendant Pursuant to Federal Rule of Criminal Procedure 12.2(c)(1)(B) to the extent that it is consistent with this Order.

### B<small>ACKGROUND</small>

On December 3, 2018, Defendant filed a Notice of Intent to Present Expert Evidence Relating to Mental Condition on the Issue of Punishment Pursuant to Fed. R. Crim. P. 12.2(b)(2).

1

Doc. 161. Specifically, Defendant notified the Government that he intends to introduce expert evidence that he suffers from a Schizophrenia Spectrum or Other Psychotic Disorder and that he exhibits neurocognitive deficits consistent with a psychotic disorder. *Id.* Defendant has only declared an intent to introduce this evidence as it pertains to the issue of punishment, not the issue of guilt. In the Notice, Defendant informed the Government that he intended to present evidence from a neuropsychologist, a psychiatrist, and a clinical psychologist. Doc. 161, p. 2. Defendant listed eleven tests the neuropsychologist had administered and stated that he would update the notice when the remaining two experts had conducted their tests. *Id.* Defendant requested an extension of time to February 3, 2019 to complete these assessments and amend the Notice. *Id.* at 3.

In response, the Government requested more details about the Defendant's experts pursuant to Fed. R. Crim. P. 16(b)(1)(C)(ii). Doc. 180, p. 22. The Government has also requested that the Court order Defendant to submit to psychiatric examination by Government experts to rebut Defendant's experts. Doc. 181. Both parties have proposed procedures to conduct this examination in order to provide the Government a reasonable opportunity to rebut the evidence while protecting Defendant's Fifth and Sixth Amendment rights, and the Court heard arguments on the proposed procedures on December 14, 2018.

On January 25, 2019, Defendant moved for a further extension of time to amend his 12.2 Notice, citing difficulties in retaining new service providers during the lapse in government appropriations. Doc. 213. The Court heard arguments on this Motion and the proposed examination procedures on February 1, 2019.

**ORDER**

The Court finds that an examination under the following conditions will not violate Defendant's Fifth or Sixth Amendment rights, pursuant to *Kansas v. Cheever*, 571 U.S. 87 (2013) and *Estelle v. Smith*, 451 U.S. 454 (1981). The Court hereby ORDERS the following:

1. Defendant's Motion (Doc. 213) for Extension of Time to File Amended 12.2 Notice is GRANTED. Defendant may file non-substantive amendments to his 12.2 Notice by February 25, 2019.

2. The Court will appoint standby firewall counsel to represent the interests of the Government with respect to the rebuttal examinations.[1] This attorney will advise the rebuttal expert(s) with regard to the scope of the examination if necessary, and will represent the Government in any legal disputes that arise with regard to the rebuttal examinations, once they have begun. Such disputes could include Defendant's failure to cooperate or the rebuttal expert's request to conduct further testing. The standby firewall counsel will not communicate with the prosecution team in this case once the first examination has begun, and firewall counsel will never become a part of the prosecution team.

3. The Clerk is directed to open a sealed miscellaneous case for the purposes of any proceedings involving the rebuttal examinations. The Clerk shall enter the appearance of Defense counsel in that case, as well as the appearance of standby firewall counsel when that attorney has been appointed. No attorney for the prosecution team will have access to the sealed miscellaneous case.

---

[1] At least one other court in this Circuit has permitted the use of firewall counsel over the defense's objection in a death penalty case. *See United States v. Watts*, 2016 WL 733798 (S.D. Ill. Dec. 19, 2016). The standby firewall counsel in this case will perform an even more limited role than the counsel appointed in *Watts*.

4. The Government will confer with Defense counsel before February 11, 2019 in an attempt to jointly recommend an attorney from outside of the Central District of Illinois U.S. Attorney's Office and the Department of Justice Capital Case Section as standby firewall counsel. If the parties cannot reach an agreement, the Government will provide the Court a list of recommended attorneys, and the Court will select one.

5. The Court will permit rebuttal examinations of Defendant's mental health. So long as the Government shows that multiple experts would not be duplicative, more than one expert may conduct these examinations. These examinations shall be completed by March 18, 2019. At least seven business days prior to each examination, the Government shall provide Defense counsel with the name of the rebuttal expert, the expert's position/area of expertise, the date and time of the proposed examination, the referral question, and a list of any tests to be conducted. Defendant shall file any objections based on that information at least five business days prior to the examination.

6. The scope of the rebuttal examinations will be limited to confirming or rebutting whether Defendant suffers from Schizophrenia or Other Psychotic Disorder as that term is understood in the Diagnostic and Statistical Manual of Mental Disorders 5th Edition, and whether he suffers from neurocognitive impairments consistent with a psychotic disorder. That scope permits inquiry into differential diagnoses for Schizophrenia or Other Psychotic Disorders, but it does not inherently allow inquiry into specifics of the alleged crime or Defendant's possible lack of remorse. Should a rebuttal expert seek to inquire into those areas or others, the expert must request leave from the Court through a motion filed by firewall counsel and explain how such an inquiry would bear on the presence or absence of Schizophrenia or Other Psychotic

Disorder. Said motion should be filed in the sealed miscellaneous case that the Clerk will open pursuant to paragraph 3 of this Order.

       7. No counsel from either side may be present during the examination. There will be no audio or video recording of any rebuttal examination. Defense counsel may be present nearby so that Defendant may be able to consult with them upon request during the examination, and standby firewall counsel may be present nearby or available by phone in case the rebuttal expert or Defense counsel considers it necessary to contact them. This option should not be abused to interrupt the examination.

       8. Over Defendant's objection, the Court orders the University of Wisconsin, the University of Illinois, the Macon County Jail, and the Livingston County Jail to disclose any of Defendant's mental health records in their possession to Defense counsel and to standby firewall counsel, by sending one copy of the records to Defense counsel and two copies of the records in sealed envelopes to the standby firewall counsel. Standby firewall counsel may not open or examine the contents of those records, but shall merely pass along the sealed documents to the rebuttal experts.[2] Defendant has waived the privilege associated with these records by putting his psychological state in issue. *See Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006); *Kronenberg v. Baker & McKenzie LLP*, 747 F.Supp.2d 983, 989 (N.D. Ill. 2010) ("[W]aiver is based upon the obvious principle of fairness that a party cannot inject his or her psychological treatment, conditions, or symptoms into a case and expect to be able to prevent discovery of information related to those issues."); *United States v. Wilson*, 2012 WL 3890951, at *7 (E.D.N.Y. Sept. 7, 2012) (applying the waiver rule in a criminal case where the defendant put his

---

[2] The Government has represented that they intend to retain two rebuttal experts. Thus, two copies of the records are necessary to avoid examination of the records by standby firewall counsel in reproducing the records for the second expert.

5

mental state at issue). Defendant has only raised the issue of his mental status with regard to the penalty phase of this case—accordingly, the Government will only be able to access these records if Defendant is convicted of a capital charge and Defendant reaffirms his intent to introduce mental health evidence after reviewing these records and the Government's expert report.

9. The Court denies the Government's request that Defendant disclose the names or records of any previously retained non-testifying experts.

10. When the examinations are complete, each rebuttal expert will create two copies of their report and put each in a labeled, sealed envelope. Standby firewall counsel will deliver the sealed envelopes to the Clerk, together with signed statements from the experts indicating their understanding that they are not to discuss the examination with anyone unless and until Defendant is convicted of a capital crime. The Clerk shall hold these sealed reports until a verdict is returned, without opening them or uploading them to the electronic filing system.

11. If Defendant is acquitted, the rebuttal expert reports may be destroyed upon order of the Court. If he is convicted of a capital crime, the reports will immediately be provided to Defendant. He will have 24 hours to confirm or withdraw his intent to offer mental health evidence. If he withdraws the intent, the report may be destroyed upon order of the Court and never provided to the Government. If he confirms the intent, the report will also be provided to the Government, at which time Defense counsel should also provide the Government with their own expert reports.

12. Defendant may withdraw a notice of intent to raise mental health evidence at any time before actually introducing evidence on it. In that event, neither the fact of the notice, nor the

results or reports of any mental examination by either party, nor any facts disclosed only therein shall be admissible against the Defendant.

    13. The Court finds that the procedures outlined above preserve Defendant's Fifth and Sixth Amendment rights and secures the Government's right to rebuttal.

    It is so ordered.

Signed on this 5th day of February, 2019.

                                                  /s James E. Shadid
                                                  James E. Shadid
                                                  Chief United States District Judge