# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-cr-20037-JES-JEH |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Now before the Court are Defendant Brendt A. Christensen's Motion (Doc. 158) to Require Potential Jurors to Complete Jury Questionnaires in Person at the Federal Courthouse; the parties' Agreed, Proposed Jury Questionnaire (Doc. 164-1); Defendant's Amended Motion (Doc. 179) in Support of Defendant's Proposed Supplement to the Joint Jury Questionnaire; and the United States' Response (Doc. 166) thereto.

For the reasons set forth below, Defendant's Motion (Doc. 158) to Require Potential Jurors to Complete Jury Questionnaires in Person at the Federal Courthouse is DENIED. The Court ADOPTS, with minor modifications, the parties' Agreed, Proposed Jury Questionnaire (Doc. 164-1). The Defendant's Amended Motion (Doc. 179) in Support of Defendant's Proposed Supplement to the Joint Jury Questionnaire is GRANTED as to questions 5 and 6 in Defendant's Sealed Proposed Supplement to the Joint Jury Questionnaire (Doc. 165) and DENIED in all other respects. Question 45 from the United States' Response (Doc. 166) will also be included in the questionnaire. This Order follows.

*(1) Defendant's Motion to Require Potential Jurors to Complete Jury Questionnaires in Person at the Federal Courthouse*

Defendant requests that potential jurors in this matter be required to travel to the Federal Courthouse in Peoria to complete a juror questionnaire. Doc. 158. Defendant's Motion is based, in part, on the assumption that the Court would adopt Defendant's Proposed Juror Questionnaire (Doc. 160) or Defendant's Proposed Supplement to the Joint Jury Questionnaire (Doc. 165), which were filed under seal "due to the sensitivity of the information contained therein." *Id.* Proceeding under that assumption, Defendant argues that the jury questionnaire should be kept out of public view in order to avoid tainting the jury pool. *Id.* (citing *Jones v. Bradshaw*, 489 F.Supp.2d 786, 840–41 (N.D. Ohio 2007)). In *Jones*, the petitioner brought a habeas corpus action seeking federal review of his state court conviction. *See* 28 U.S.C. § 2254. The relevant portion of that opinion stated only that Jones' counsel was not ineffective for failing to object when the trial court closed the courtroom during a *hearing* on the jury questionnaire. 489 F.Supp.2d at 840. *Jones* said nothing about whether the questionnaire itself should be available to the public before trial. If Defendant has concerns about whether in-court discussions regarding the questionnaire or *voir dire* should be open to the public, he may file an appropriate motion.

Defendant also argues that "allowing the jury questionnaires to be mailed out to potential jurors increases the likelihood that the prospective juror will consult other people and sources of information before responding to the questions," and that the Court's instruction to potential jurors not to do so will be more effective if the jurors hear the instruction in person. Doc. 158, at 2 ("Requiring the jury questionnaires to be filled out in person at the Courthouse not only imparts the sense of gravity and sobriety appropriate in this type of case, but also ensures that the information remains within the control of the parties and the Court."). Finally, Defendant asserts

that "there are several extremely sensitive factual matters which are currently the subject of pretrial motions, or will be the subject of upcoming motions *in limine*," and thus the Court should wait until those motions are filed and ruled upon before directing potential jurors to complete the questionnaire. *Id*. at 2–3.

The Court has carefully considered Defendant's arguments, but respectfully denies the Motion. First, Defendant's concerns regarding the sensitive nature of the questionnaire are based on the assumption that the Court will utilize Defendant's Proposed Juror Questionnaire or Defendant's Supplement to the Joint Jury Questionnaire. *See* Docs. 160, 165. Because the Court has decided against using Defendant's Proposed Jury Questionnaire or supplement, Defendant's concerns about the sensitive nature of those proposed questions are no longer at issue. Unlike Defendant's proposed questions, the Agreed, Proposed Jury Questionnaire does not contain sensitive information that would risk tainting the jury pool. The best evidence of this is the fact that the Agreed, Proposed Jury Questionnaire was not filed under seal and remains available on the public docket. *See* Doc. 164-1.

Second, Defendant overstates the risk that prospective jurors will be more likely to consult other people and sources of information before responding to the questions. That risk will also be mitigated by the Court's instruction not to discuss the case with anyone or read, listen to, or watch anything about the case. Moreover, to the extent that Defendant's concerns are related to mailing the questionnaire to potential jurors, the Court has decided that the questionnaire will be filled out online through the Court's eJuror system, which is used in every other civil and criminal case in this District.[1] Finally, the Court rejects Defendant's suggestion that the Court delay issuing the questionnaire until all pretrial motions and motions *in limine* are

---

[1] Those who fail to complete the online questionnaire within 10 days will be mailed a physical copy with instructions to complete and return the questionnaire within 10 days.

filed and ruled upon. The motions *in limine* will not be fully briefed until March 4, 2019. Delaying the issuance of the questionnaires until that time will not provide the Court or the parties with sufficient time to review the submissions, and the Court is unpersuaded that such delay is necessary.

*(2) Defendant's Amended Motion in Support of Defendant's Proposed Supplement to the Joint Jury Questionnaire*

Defendant's Amended Motion in Support of Defendant's Proposed Supplement to the Joint Jury Questionnaire incorporates the questions set forth in Defendant's previously filed Proposed Jury Questionnaire and Proposed Supplement to the Joint Jury Questionnaire, and includes arguments in support of each question or group of questions. *See* Docs. 160 (Proposed Questionnaire), 165 (Supplement to Joint Jury Questionnaire), 179 (Motion in Support of Supplement). The United States has filed a Response objecting to Defendant's proposed questions. Doc. 166.

"*Voir dire* examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges." *Mu'Min v. Virginia*, 500 U.S. 415, 431 (1991). "Because the obligation to impanel an impartial jury lies in the first instance with the trial judge, and because he must rely largely on his immediate perceptions, federal judges have been accorded ample discretion in determining how best to conduct the *voir dire*." *Rosales-Lopez v. United States*, 451 U.S. 182, 189 (1981). However, that discretion is not unlimited. *Witherspoon v. Illinois*, 391 U.S. 510 (1968), and its progeny "demand inquiry into whether the views of prospective jurors on the death penalty would disqualify them from sitting." *Morgan v. Illinois*, 504 U.S. 719, 731 (1992). On this subject, the inquiry must consist of more than "general questions of fairness and impartiality," which are insufficient to determine if

a potential juror's views on the death penalty would prevent him or her from following the law and considering all the evidence, both in aggravation and mitigation. *Id*. at 735. In other words, potential jurors who would automatically vote for or against the death penalty must be disqualified.

The issue currently before the Court concerns a subset of, or prelude to, the traditional *voir dire* procedures which are employed in all criminal cases. *See* Fed. R. Crim. P. 24(a). Given the serious nature of the offense Defendant is charged with (kidnapping) and the potential penalties if he is found guilty (life or death), the parties have requested that the Court require potential jurors to complete an extensive juror questionnaire prior to individual *voir dire* proceedings. The purpose of the questionnaire is to identify and disqualify those who are plainly unable to be impartial and also to elucidate the views and opinions of those who remain. In this respect, the questionnaires assist the Court and counsel with the task of deciding which of those in the venire should be struck for cause, inform counsel as to potential topics for follow-up questioning during individual *voir dire*, and guide counsel's later decision to exercise a peremptory challenge. However, the interrogatories are only a starting point, and no amount of written questioning can completely replace the individual *voir dire* process.

Having considered the parties' submissions and arguments, the Court finds that the Agreed, Proposed Jury Questionnaire, with the minor addition of three questions, is sufficient to achieve these goals. Of the three additional questions, two are taken from Defendant's Proposed Supplement to the Joint Jury Questionnaire (Doc. 165, questions 5 and 6), and the other is taken from the United States' Response (Doc. 166, question 45).[2] Those questions provide:

> [Def. 5] Have you formed an opinion regarding the guilt or innocence of Mr. Christensen based on what you have seen, read or heard? If yes, what is your

---

[2] This question was originally submitted by the United States in its own proposed questionnaire. *See* Doc. 157-1, at 13.

5

opinion?

[Def. 6] Have you formed an opinion regarding the appropriate punishment for Mr. Christensen based on what you have read, seen, heard or discussed? If yes, what is your opinion?

[Gov. 45] Which of the following best describes your feelings about the death penalty? Please read all of the statements carefully, take some time to think, and then mark all of the choices which you believe describe your feelings.

a) I am opposed to the death penalty, and I will never vote to impose the death penalty in any case, no matter what the facts.
b) I am opposed to the death penalty, and I would have a difficult time voting to impose the death penalty.
c) I am opposed to the death penalty, but could vote to impose the death penalty if I believed that the death penalty was called for in light of the facts and the law in the case.
d) I have no definite opinions for or against the death penalty. I could vote to impose the death penalty, or I could vote to impose a sentence of life imprisonment without possibility of parole, whichever I believed was called for in light of the facts and the law in the case.
e) I am in favor of the death penalty, but I could vote for a sentence of life imprisonment without possibility of parole if I believed that a sentence of life imprisonment without possibility of parole was called for in light of the facts and the law in the case.
f) I am strongly in favor of the death penalty, and I would have a difficult time voting for a sentence of life imprisonment without possibility of parole.
g) I am strongly in favor of the death penalty, and I would vote for the death penalty in every case in which the person charged is eligible for a death sentence.
h) None of the statements above correctly describes my feelings about the death penalty.

The Defendant's proposed questions 5 and 6 will be inserted to the parties' Agreed, Proposed Jury Questionnaire after question 111, under the heading "Questions Concerning Legal Principles and Evidence." The United States' proposed question 45 will be inserted after question 96, under the heading "Questions Concerning Punishment."

In sum, the Court has determined that the substance of the questions contained in parties' Agreed, Proposed Jury Questionnaire, as modified by the addition of the three questions addressed above, is sufficient to assist the parties and the Court to prepare for individual *voir dire*

proceedings. The Court's decision is final in this respect and the Court will not entertain further arguments as to the substance of these questions. However, because the Court has revised the numbering, pagination, and format of the questionnaire to align with the format in eJuror, the Court will provide the parties with a copy of the Court's Juror Questionnaire, Summons, and Order Instructing Potential Jurors prior to the hearing on February 11, 2019. At that time, the parties may bring to the Court's attention any typographical errors or formatting issues. Finally, the parties may submit additional questions to the Court for consideration prior to individual *voir dire* proceedings.

*(3) The Questionnaire will be Distributed Through eJuror*

As noted above, the Court has decided to distribute the questionnaire to potential jurors online using the Court's eJuror program. Summonses and the Order Instructing Potential Jurors will be mailed to potential jurors directing them to the Court's website to complete the questionnaire within 10 days from the date of mailing. Those who fail to complete the online questionnaire within 10 days will be mailed a physical copy with instructions to complete and return the questionnaire within 10 days. The summonses will also direct the potential jurors to call the Court's juror information phone number for information on when each potential juror must be present for *voir dire* proceedings.

**IT IS THEREFORE ORDERED:**

1. Defendant's Motion (Doc. 158) to Require Potential Jurors to Complete Jury Questionnaires in Person at the Federal Courthouse is DENIED;

2. The Court ADOPTS, with minor modifications, the parties' Agreed, Proposed Jury Questionnaire (Doc. 164-1);

3. The Defendant's Amended Motion (Doc. 179) in Support of Defendant's Proposed Supplement to the Joint Jury Questionnaire is GRANTED as to questions 5 and 6 in Defendant's Sealed Proposed Supplement to the Joint Jury Questionnaire (Doc. 165) and DENIED in all other respects; and

4. Question 45 from the United States' Response (Doc. 166) will also be included in the questionnaire.

Signed on this 6th day of February, 2019.

s/ James E. Shadid
James E. Shadid
Chief United States District Judge