UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 17-cr-20037-JES-JEH |
| ) | |
| BRENDT A. CHRISTENSEN, ) | |
| ) | |
| Defendant. ) | |

### ORDER AND OPINION

Now before the Court is Defendant Brendt A. Christensen's Motion (Doc. 118) to Exclude Expert Testimony Regarding Cadaver Sniffing Canine, and Request for *Daubert* Hearing. The United States has filed a Response (Doc. 224) under seal, in which they moved to vacate the scheduled hearing and preclude the testimony of Defendant's expert. Defendant has filed a Reply (Doc. 225). An evidentiary hearing was held on February 11, 2019. For the reasons set forth below, Defendant's Motion (Doc. 118) is GRANTED in part and DENIED in part.

### BACKGROUND

Defendant Brendt A. Christensen was arrested by federal agents on June 30, 2017, pursuant to a criminal complaint which charged him with the kidnapping of Yingying Zhang, a female Chinese national, in violation of 18 U.S.C. § 1201(a)(1). Doc. 1. Christensen was later indicted by a federal grand jury sitting in the Urbana Division of the Central District of Illinois. *See* Doc. 13 (Indictment), Doc. 26 (Superseding Indictment). The Superseding Indictment charged Christensen with kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1) (Count 1), and with making false statements to FBI agents investigating Ms. Zhang's disappearance, in violation of 18 U.S.C. § 1001(a)(2) (Counts 2, 3). Doc. 26. The Superseding Indictment returned by the grand jury also included a notice of special findings regarding the

nature of the offense charged in Count 1, including that the death of the victim was intentional, that it occurred during the commission of kidnapping, that it was committed in an especially heinous, cruel, or depraved manner, and that Defendant committed the offense after substantial planning and premeditation. *Id.* The special findings alleged in the Superseding Indictment made the case eligible for capital punishment. *See* 18 U.S.C. § 3591 *et seq*. On January 19, 2018, the United States filed its Notice of Intent to Seek a Sentence of Death ("NOI"). Doc. 54; *see also* 18 U.S.C. § 3593(a).

This Motion concerns a search of Defendant's apartment, executed pursuant to a warrant on June 30, 2017. The search was conducted jointly by FBI agents and the McHenry County Deputy Sheriff Jeremy Bruketta. Deputy Sheriff Bruketta brought his canine partner, Sage, who is trained to alert to the presence of cadavers. FBI records note that Sage "possibly indicated an alert upon the doors and base of the vanity in the apartment's full bathroom," and the Deputy Sheriff's report indicates that Sage alerted to the presence of a cadaver inside the bathroom along the base of the vanity. The Government has noticed Deputy Sheriff Bruketta and Lake County Deputy Sheriff Dwight Arrowood as expert witnesses, expected to testify about Sage's alert in Defendant's apartment and their search efforts elsewhere. Defense now moves to exclude these experts on the grounds that the canine alert evidence in this case is unreliable.

## LEGAL STANDARD

Rule 702 authorizes an expert witness—qualified by their knowledge, skill, experience, training, or education—to present opinion testimony if the testimony will help the trier of fact understand the evidence or determine a fact in issue, as long as the testimony is based on sufficient data, using reliable methods, and the expert has applied the principles reliably to the facts of the case. Fed. R. Evid. 702. Although Rule 702 was updated in 2000, *Daubert v. Merrell*

*Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), continues to be the "gold standard for evaluating the reliability of expert testimony and is essentially codified in the current version of Rule 702." *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013). *Daubert* requires the Court to evaluate "(1) the proffered expert's *qualifications*; (2) the *reliability* of the expert's methodology; and (3) the *relevance* of the expert's testimony." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017) (emphasis in original); *see also Hartman v. EBSCO Indus., Inc.*, 758 F.3d 810, 817 (7th Cir. 2014). The party seeking to introduce the expert testimony must meet the *Daubert* standard by a preponderance of the evidence. *Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 673 (7th Cir. 2017). The factors listed in *Daubert*, which are non-exhaustive, include whether a method has been tested, whether a theory or technique has been subject to peer review and publication, any known or potential error rates in a technique, and general acceptance within a scientific community. *Daubert*, 509 U.S. at 593–95.

The Supreme Court has expressly provided that defendants should have the opportunity to challenge the reliability of canine alerts in criminal investigations, such as by challenging the dog's reliability, the adequacy of the dog's training, the dog or handler's performance in the field, and the circumstances surrounding a particular alert. *Florida v. Harris*, 568 U.S. 237, 247 (2013). Although *Harris* involved a dog trained to alert to drugs, the inquiry remains the same for dogs trained to alert to other scents. *See, e.g., United States v. Burgos-Montes*, 786 F.3d 92, 117 (1st Cir. 2015) (noting that evidence presented by a cadaver-sniffing dog's handler involved "scientific, technical, or other specialized knowledge" warranting a *Daubert* inquiry); *United States v. Marji*, 158 F.3d 60, 63 (2d Cir. 1998) (finding no abuse of discretion in the admission of accelerant-sniffing canine evidence after a *Daubert* hearing).

## DISCUSSION

In his Motion, Defendant argues that the United States has failed to show that Sage is compliant with Illinois training standards, that the United States has failed to provide any information on Sage's proficiency and training more generally, and that the United States has failed to provide any information about Deputy Sheriff Arrowood's qualifications to testify. Doc. 118, at 5–6. Defendant further asserts that he has retained an expert who will challenge the reliability of the canine evidence based on a review of the information the United States provided regarding Sage, the certification program, and the training regimen. *Id.* at 6.

The United States responded that Sage and Deputy Sheriff Bruketta completed sufficient training and demonstrate sufficient accuracy to be considered reliable, noting that the pair have passed courses on recovering cadavers on land and in water, and that they undergo regular maintenance training. Doc. 224, at 4. The United States argued that no *Daubert* hearing should be granted on this issue, as Defendant was challenging the reliability of the witness, rather than the science underlying the testimony. *Id.* at 11. Additionally, the United States moved to preclude the testimony of Defendant's expert, Dr. Mary Cablk, on the grounds that her report was not disclosed until January 25, 2019, and that the report was too inconclusive to justify a hearing. *Id.* at 12. The Response did not mention Deputy Sheriff Arrowood.

In his Reply, Defendant argued Dr. Cablk would testify that Sage and Deputy Sheriff Bruketta were not properly trained in cadaver searching, that they do not adhere to the well-established standards of the scientific community, and that Sage "cannot tell the difference between items of evidentiary value." Doc. 225, at 1–2. For those reasons, Defendant claimed a *Daubert* hearing was necessary to resolve their challenge to Deputy Sheriff Bruketta's testimony.

An evidentiary hearing was held on February 11, 2019, and Dr. Cablk was permitted to testify, effectively granting that aspect of Defendant's Motion and denying the United States' request. At the hearing, the United States called Alex Rothacker, who testified that he runs the company that trained Sage and Deputy Sheriff Bruketta. He described the training procedures that all the police dogs they train go through, as well as the courses on cadaver searches that Bruketta and Sage completed. He stated that the pair continue to come in multiple times a week to conduct maintenance training. On cross-examination, Mr. Rothacker testified that SWGDOG[1] used to be the standard guidelines for Illinois, but that they are no longer controlling. He also stated that it was not improper to go months without training on a particular scent, as long as the dog is routinely being trained on scent work in general. According to Mr. Rothacker, the SWGDOG recommendations are not realistic for multipurpose dogs: 16 hours per month of training for each of eight skills would not be feasible.

The United States then called Deputy Sheriff Bruketta, who testified about the extensive training that he and Sage completed over the years,[2] their high accuracy rates, and specific work they have done in cadaver searching in the past. While he confirmed that he and Sage are not certified by any organization in cadaver work, he pointed out that Illinois does not have any requirement for cadaver dog certification. He stated that although he did not perform any cadaver training with Sage in 2016, he did conduct two training exercises on human remains in 2017, before the search in this case. Counsel for Defendant brought up a case in which Sage did not

---

[1] SWGDOG is an acronym for "Scientific Working Group on Dog and Orthogonal Detector Guidelines." A copy of the SWGDOG guidelines for human remains detection can be found in Defendant's Motion. Doc. 118, at 8–16.

[2] Deputy Sheriff Bruketta and Sage completed several months of preliminary training with high marks, took two 24-hour courses in cadaver searches on land and in water, and have performed at least 40 Odor Recognition Assessments on human remains. They have been deployed to the field to search for human remains at least 31 times since 2012.

alert to several garbage bags of human remains in a hot garage during the summer, and Deputy Sheriff Bruketta stated that he did not consider that occurrence a "miss" because it was not safe to bring Sage inside the garage during that investigation, so Sage could not get close enough to positively alert. When questioned about how many times Sage alerted to human remains during field deployments, he testified that remains were recovered in at least three of his thirty-one field deployments, but that agencies do not always update him on whether remains are recovered based on Sage's alerts.

      Defendant called Dr. Mary Cablk, who also performs canine searches for human remains and performs expert consultations on canine detection practices. Dr. Cablk testified that she could not objectively evaluate Sage's reliability because there were no records of a training exercise being conducted where Bruketta did not know whether there were human remains to find somewhere within the parameters of the search. She suggested that training a dog with something to find during every exercise conditions them to alert every time they are instructed to search. She listed organizations that certify dogs for cadaver work, although she agreed that Illinois does not require such certification. She testified that SWGDOG is the prevailing set of guidelines in the field, although revised national guidelines are available for public comment right now and should be finalized in the future. She acknowledged that Illinois does not mandate that law enforcement follow SWGDOG, but she suggests they remain the consensus guidelines. Those guidelines call for 16 hours per month of training in each odor the dog is trained to detect.

      Dr. Cablk suggested that dogs should not be trained to search for multiple unrelated odors, with different commands and different alerts, because they are prone to becoming confused and it is difficult to maintain adequate training in all of their specialties. She testified that a properly-trained dog would have smelled bags of remains in a hot garage and alerted when

restrained from getting closer. According to Dr. Cablk, 24 hours of course work is not enough time for a dog to learn to detect a new odor, because they have to simultaneously learn *not* to alert to other odors in which they've previously been trained. She therefore considered Sage's training insufficient to produce reliable results, and stated that training two or three times a year in a given specialty did not meet any standard anywhere.

Dr. Cablk further testified that there are many reasons why a dog, especially a multipurpose dog, would falsely alert in a bathroom: people may accidentally cut themselves and leave behind traces of blood, or the dog might pick up on menstrual blood or narcotic medications that prompt an alert. Additionally, she stated that dogs should be able to smell blood even after a surface has been bleached, so if there had been blood in multiple rooms of an apartment, she would expect a dog to alert in each room, even if it had been cleaned.

The Court finds that Sage and Deputy Sheriff Bruketta are reliable. Although Defendant has raised legitimate concerns about the practice of training a dog to detect multiple odors, the possibility of false alerts, and the frequency with which Sage was trained on human remains detection, dogs do not need to follow ideal best practices to be considered reliable. *See United States v. Bentley*, 795 F.3d 630, 636 (7th Cir. 2015) (noting that field-accuracy rates as low as 43% have been sufficient for courts to accept dogs as reliable, and finding a dog reliable despite a training policy the Court stated "seem[ed] like a terrible way to promote accurate detection"). In this case, the Court is persuaded that Sage's extensive training in cadaver work, his high accuracy rates during courses, training exercises, and assessments, his past experience, and his training in the months before the search in question are sufficient to establish that he was reliable. The Court therefore DENIES the Motion to exclude Deputy Sheriff Bruketta from testifying.

The United States did not mention Deputy Sheriff Arrowood in their Response. At the evidentiary hearing, Defendant represented that Deputy Sheriff Arrowood was a dog handler whose canine partner did not alert at all. Defendant argued that Deputy Sheriff Arrowood's testimony would therefore not be relevant to this proceeding, and the Court agrees. The Court therefore GRANTS the Motion to exclude Deputy Sheriff Arrowood's testimony.

## CONCLUSION

For the reasons set forth above, Defendant's Motion (Doc. 118) is GRANTED in part and DENIED in part.

Signed on this 15th day of February, 2019.

/s James E. Shadid
James E. Shadid
Chief United States District Judge