UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-cr-20037-JES-JEH |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Now before the Court is Defendant Brendt A. Christensen's Renewed Motion (Doc. 255) to Continue. The United States has filed a Response (Doc. 257). A motion hearing was held on February 25, 2019. For the reasons set forth below, Defendant's Motion (Doc. 255) is GRANTED in part and DENIED in part. The trial of this matter will begin on June 3, 2019.

### BACKGROUND

The facts of this case have been recounted in prior orders and will only be addressed here as necessary to resolve Defendant's Renewed Motion to Continue.

On February 14, 2018, the Court entered a scheduling order in this case. Doc. 67. That order set forth various deadlines for the parties, including a September 21, 2018 deadline for Defendant to give notice of intent to offer an *Atkins* defense or Rule 12.2 evidence during the guilt and/or penalty phase of the trial. It also set the matter for trial beginning on April 3, 2019.

On September 21, 2018, the defense filed a Motion for Adequate Time to Submit 12.2 Notice, asking the Court to set a time in December 2018 for counsel to inform the Court how much additional time they needed to retain a third expert and complete their 12.2 notice. Doc. 129. The Court ordered the United States to respond to the Motion and set the matter for hearing on October 11, 2018. At the hearing, the Court granted in part and denied in part Defendant's

Motion, extending the deadline to file the 12.2 notice to December 3, 2018. *See* Minute Entry (Oct. 11, 2018) ("As the Court intends to stay on schedule for the current trial, the defense is to make 12.2 disclosures by 12/3/18.").

The defense team retained their third expert on October 29, 2018. *See* Doc. 227, at 2. The expert spoke to some members of the defense team via telephone on November 3, 2018. Following the phone conference on November 3, 2018, the expert informed defense attorney Brain via email that he could not testify at a trial in April, and the earliest he could be available to testify would be the fall of 2019. Ms. Brain responded to the expert the same day via email, stating that "she saw very little chance the trial would actually proceed in April and the psychiatrist's unavailability would be an additional argument in favor of continuing the April trial date." *Id*. at 3.

Two days later, Ms. Brain met with the defense team and informed them that the psychiatrist was not going to be ready for a trial in April. On November 11, 2018, Ms. Brain informed the defense team that the psychiatrist could not be done until next summer at the earliest. *Id*. Rather than filing a motion to continue immediately, the defense team "decided to wait in order to see how much progress could be made." *Id*.

On December 3, 2018, the defense filed its Notice of Intent to Present Evidence Relating to Mental Condition on the Issue of Punishment Pursuant to Fed. R. Crim. P. 12.2(b)(2). Doc. 167. Therein, Defendant disclosed that if he is convicted of a capital offense, he intends to introduce expert evidence that he suffers from Schizophrenia Spectrum or Other Psychotic Disorder as defined in the fifth edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM-V"). Defendant also stated in the Notice that additional evaluation procedures needed to be conducted and requested that he be permitted to amend the Notice by February 3,

2019 if necessary. Defendant represented that the "results of these additional procedures, if presented, will only provide further support for the evidence outlined above" and "[t]here will be no substantive change to the existing notice and therefore not prejudice to the government as a result of any necessary addition at that time." *Id*. at 3.

The psychiatrist met with Defendant in November 2018 and again on February 5, 2019. The day before the second meeting, the defense team had a telephone conference with the expert to "impress upon him the April trial date and the need for him to be ready for that date if there was no continuance." *Id*. At this time, the expert informed the defense team that he made it clear when he was retained that he could not testify at a trial in April—a fact that Ms. Brain failed to communicate to the rest of the defense team. Later that same day, the psychiatrist informed the Federal Public Defender that "if he had been told the case would go to trial in April, or that that was a real possibility, he would not have agreed to act as an expert in the case." *Id*. at 4.

On February 8, 2019, the defense filed two documents. The first document was a Motion to Continue. Doc. 226. That publicly available document bases its argument for a continuance largely on the supposed "gargantuan effort" the defense team must put in to preparing to present expert mental health testimony in a capital case.

The defense separately filed a sealed portion of the Motion to Continue.[1] Doc. 227. In that document, the defense team acknowledged that the real reason for the requested continuance was because a member of the defense team retained a mental health expert knowing that the expert would not be ready or available to testify at the April trial. *Id*. at 3 (noting that "the psychiatrist's unavailability would be an additional argument in favor of continuing the April trial date"). The document concluded by stating that "[t]his matter has not been handled

---

[1] This portion of the Motion to Continue was subsequently unsealed by the Court. *See* Text Order (Feb. 25. 2019).

competently by the defense." *Id*. at 5. The defense requested the Court continue the trial date until October 2019. The Court promptly convened a hearing on the Motion to Continue. The Motion was denied for the reasons stated on the record at the February 11, 2019 hearing, but the Court indicated that it was open to a more reasonable proposal from the defense.

Shortly after the February 11, 2019 hearing, the defense informed the Court that its expert psychologist had "quit" and counsel was in the process of retaining another expert to replace him. On February 20, 2019, Defendant filed a Renewed Motion for Continuance of Trial. Doc. 255. Therein, the defense informed the Court that it had retained a new expert who could examine the Defendant in March, April, and May, prepare a final report by the end of June, and be ready to testify by the middle of July. "Because of the need for a consistent and unitary defense theory from voir dire through the penalty phase," the defense requested that the trial begin no sooner than July 1, 2019.

The United States filed a Response to Defendant's Renewed Motion. Doc. 257. Therein, the United States agreed that a brief continuance was necessary "to address any potential prejudice to the defendant from his counsel's acknowledged failure meet this Court's deadlines," but argued that a May 6, 2019 trial date was sufficient. *Id*. at 1–2. The Court again heard argument on the Motion at a February 25, 2019 hearing. This Order follows.

### LEGAL STANDARD

"[A] trial date once set must be adhered to unless there are compelling reasons for granting a continuance." *United States v. Farr*, 297 F.3d 651, 655 (7th Cir. 2002) (quoting *United States v. Reynolds,* 189 F.3d 521, 527 (7th Cir. 1999)). Thus, a trial court's denial of a continuance is reviewed for an abuse of discretion. *Id*. When evaluating a request for a continuance, "a trial court must weigh a number of factors: 1) the amount of time available for

preparation; 2) the likelihood of prejudice from denial; 3) the defendant's role in shortening the effective preparation time, 4) the degree of complexity of the case; 5) the availability of discovery from the prosecution; 6) the likelihood a continuance would satisfy the movant's needs; and 7) the inconvenience and burden to the court and its pending case load." *Id.* (citing *United States v. Avery,* 208 F.3d 597, 602 (7th Cir. 2000); *United States v. Windsor,* 981 F.2d 943, 947 (7th Cir. 1992)).

## DISCUSSION

The defense represented at the February 25, 2019 hearing that its newly retained expert would be available to examine Defendant on March 28, April 19, and May 16, 2019. Counsel further represented that their expert would be able to provide a diagnosis to the defense so that the 12.2 Notice could be amended on or before May 1, 2019.[2] Thus, a June 3, 2019 trial date allows the defense adequate time for their expert to examine the Defendant and inform the defense team of his or her findings. Further, although the defense has only noticed an intent to offer mental health evidence at the *penalty* phase, should one be necessary at all, a June 3, 2019 trial date will allow the Defendant to present "a consistent and unitary defense theory from voir dire through the penalty phase."[3] In sum, by continuing the trial to June 3, 2019, the Court has mitigated any potential prejudice to the Defendant stemming from his counsel's mistakes.

By continuing the trial to June 3, 2019, the Court has also attempted to mitigate any prejudice to the prosecution team. The Court is aware that attorney Nelson represents the United States in another capital case set to begin on October 1, 2019. The Court believes that a June trial

---

[2] The Court expresses no opinion on whether it will allow the defense to amend their 12.2 Notice.
[3] The defense failed to develop this argument in their Motion and at the hearing. Nonetheless, the Court has attempted to accommodate the defense's concerns by continuing the trial date until after the expert's examinations are completed.

5

date will allow attorney Nelson to attend to both matters. In sum, the Court arrived at the June trial date in an attempt to accommodate the interests of both the defense and the prosecution.

If trial of this matter was continued to July, as requested by the defense, it could have affected the Court's ability to summon jurors. The Jury Selection Plan for the Central District of Illinois provides that the Clerk shall begin selecting names for filling the qualified jury wheels from the newly filed master jury wheel no later than June 1, 2019. *See* Juror Selection Plan at 5. In addition to providing the defense with significant information[4] regarding the old 2015 jury wheel, the Court has coordinated with the Jury Administrator to ensure the number of potential jurors in the current qualified jury wheel is sufficient to meet the needs of a capital case. The Court believes that a June 3, 2019 trial setting strikes the appropriate balance between remedying the potential prejudice caused by Defendant's counsel and ensuring a prompt resolution of this matter because a June 3 trial date allows the potential jurors to be summoned prior to June, thus preserving the old jury wheel.

Finally, a long continuance of this matter would not accommodate the victim's family. The Crime Victim Rights Act affords victims, *inter alia*, the right to be heard and the right to proceedings free from unreasonable delay. 18 U.S.C. § 3771. The victim's family has already been inconvenienced by the change of venue. *See* Doc. 163, at 9 (noting that the factor weighing most heavily against transfer to Peoria was the inconvenience to the victim's family). Admittedly, a June trial will require the victim's family to wait for two more months in a foreign

---

[4] The Court made this information available to the defense on December 11, 2018 by leaving a compact disc containing the information with the Clerk's Office and informing all counsel via email. *See generally* Doc. 182. Counsel did not pick up the disc until the Court reminded counsel at the February 25, 2019 hearing. The Court considers any challenge to the jury wheel under the JSSA waived. *See* 28 U.S.C. § 1867(a) ("In criminal cases, before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, *by the exercise of diligence*, the grounds therefor, whichever is earlier, the defendant may move to dismiss.…") (emphasis added).

country while they continue to mourn the death of their daughter. The Court is also aware of the victim's family's preference for a trial date prior to the two-year anniversary of Yingying Zhang's kidnapping. Doc. 257, at 13. While it is perhaps a small consolation, June 3, 2019 trial date accommodates the family's wishes. A June 3 trial setting should also reduce the time between the guilt and penalty phase, thus further reducing inconvenience to the victim's family. The Court anticipates the United States will also continue to update the victim's family on the status of this case and accommodate the victim's family as much as possible.[5]

## CONCLUSION

For the reasons set forth above, Defendant's Renewed Motion (Doc. 255) to Continue is GRANTED in part and DENIED in part. The trial of this matter will begin on June 3, 2019. The Court will begin mailing summonses to potential jurors on March 4, 2019.

Signed on this 28th day of February, 2019.

s/ James E. Shadid
James E. Shadid
Chief United States District Judge

---

[5] The Court also intends to set up a viewing room in the Urbana Courthouse with a closed-circuit video stream of the court proceedings to further accommodate members of the public and the victim's family.