IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17-CR-20037 |
| ) | |
| BRENDT A. CHRISTENSEN, ) | |
| ) | |
| Defendant. ) | |

**THE UNITED STATES OF AMERICA'S MOTION
TO PRECLUDE THE TESTIMONY OF DR. PETER VOS
OR, IN THE ALTERNATIVE, FOR *DAUBERT* HEARING**

NOW COMES the United States of America, by John C. Milhiser, United States Attorney for the Central District of Illinois, Eugene L. Miller and Bryan D. Freres, Assistant United States Attorneys, and Department of Justice Trial Attorney James B. Nelson, and hereby moves the Court to preclude the proffered expert testimony of Dr. Peter Vos or, in the alternative, to conduct a *Daubert* hearing. The bases for the United States' motion are as follows.

**PROCEDURAL HISTORY**

The Court's scheduling order provided, among other things, that the defendant must give notice of his non-Rule 12.2 expert witnesses, including rebuttal witnesses, by August 24, 2018. (R.67). As the Court's docket reflects, the defendant has failed to give timely notice with regard to multiple expert witnesses. On February 15, 2019, based on the defendant's failure to provide complete notice of his expert witnesses' proposed testimony, the United States filed a motion *in limine* asking the Court to limit the

defendant's experts to the information provided by the defendant, and to preclude the defendant from calling any expert witnesses had not been timely noticed pursuant to the Scheduling Order. (R.241).

On February 20, 2019, defense counsel hand-delivered notice of three additional non-Rule-12.2 expert witnesses which they purportedly intends to call at trial.[1] Among these purported experts was Dr. Peter Vos, whom the defendant intends to call to testify on

> the issue of the interactions of alcohol and medication, including prescription and non-prescription drugs, all of which are referenced in the McKinley Health Center records, as well as nutritional supplements referenced in records we have received in discovery, both in isolation and in connection with an individual with a documented history of sleep disturbances since childhood.[2]

This "notice" merely states the topic of potential testimony and, as such, fails to satisfy Rule 16's notice requirement. Rule 16(b)(1)(C) requires the defendant's expert notice to "describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Though the defendant provided a copy of Dr. Vos' curriculum vitae, he did not provide either a report or a summary of his findings.

---

[1] Specifically, the defendant gave notice of his intent to call Drs. Susan Zoline, Jonathan Sorensen, and Peter Vos. Prior to February 20, 2019, the defendant had not given prior notice of his intent to either call these alleged experts or call experts in their respective fields. As such, the defendant's February 20, 2019, disclosure is in violation of the Scheduling Order and all three of these proposed experts should be precluded from trial. (R.241).

[2] The United States has done its best to decipher Dr. Vos' likely testimony, but cannot meaningfully respond or hire rebuttal witnesses until proper notice is given.

2

# ARGUMENT

## A. The Defendant Cannot Satisfy His Burden of Proving that Dr. Vos' Proposed Testimony Satisfies the *Daubert* Requirements for Admissibility

As the proponent of Dr. Vos' testimony, the defendant bears the burden of proving that the proffered testimony meets the standards for admissibility. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). The admissibility determination "'begins with Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert*, as together they govern the admissibility of expert witness testimony.'" *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 778 (7th Cir. 2017) (quoting *Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 673 (7th Cir. 2017)).

Federal Rule of Evidence 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training or experience" may offer opinion testimony if four prerequisite elements are met:

> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) The testimony is based on sufficient facts or data;
> (c) The testimony is the product of reliable principles and methods; and
> (d) The expert has reliably applied the principles and methods to the facts of the case.

The Supreme Court has noted that "[t]he adjective '*scientific*' implies a grounding in the methods and procedures of science. Similarly, the word '*knowledge*' connotes more than subjective belief or unsupported speculation." *Daubert v. Merrell Dow Pharrn., Inc.*, 509 U.S. 579, 590 (1993) (emphasis added). As *Daubert* held, the admission of expert testimony under Rule 702 depends on "the scientific validity – and thus the evidentiary

3

reliance and reliability – of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Id*. at 594.

Thus, the Court must take on a gatekeeping role and employ whatever questioning is necessary to make certain that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000) (quoting *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).  The proponent cannot meet his burden unless he demonstrates that the proffered testimony is grounded on reliable, accepted science, and that the proffered expert is qualified to testify about that accepted science – proving one, but not the other, is insufficient.  As the Seventh Circuit noted, "'[a] supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable and relevant under the test set forth by the Supreme Court in *Daubert*.'" *Lewis*, 561 F.3d at 705 (quoting *Clark v. Takata Corp.*, 192 F.3d 750, 759 n. 5 (7th Cir.1999); see also *United States v. Schiff*, 602 F.3d 152, 177 (3d Cir. 2010).  Likewise, an unqualified witness cannot waltz into the courtroom and render opinions about anything.

Taken together, FRE 702 and *Daubert*, as interpreted by both the Supreme Court and the Seventh Circuit, require the Court to evaluate three factors "(1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony." *Gopalratnam*, 877 F.3d at 779.  As noted more fully

below, the defendant cannot satisfy any of these three factors for Dr. Vos and his testimony should be precluded.

### 1. Dr. Vos is not Qualified to Testify as to the Subject Matter Described

The defendant apparently intends to call Dr. Vos to testify in mitigation that the defendnat should not be sentenced to death because his intentional kidnapping and murder of Ying Ying Zhang was influenced by the alcohol, Vicodin, Propecia, and creatine monohydrate that may have been in his bloodstream in the months preceding the crime.[3] Even assuming that accepted science supported such a hypothesis, which it does not, Dr. Vos is not qualified to testify about it.

It appears as though the defendant hired Dr. Vos because he obtained a Ph.D. in Pharmacology in 1990, and then performed a post-doc fellowship at the National Institutes of Health.[4] However impressive those credentials might appear on paper, Dr. Vos has never actually worked as a pharmacologist. After completing his fellowship,

---

[3] There is no evidence, other than the defendant's self-reporting, that he ever took any of these compounds. Those self-reports were made before the crime was committed as part of an effort to gain sobriety. There is no evidence that any of these compounds was present in the defendant's bloodstream, in any quantity, when he kidnapped and murdered Ying Ying Zhang.

[4] Dr. Vos participated in the IRTA, or Intramural Research Training Award program. "IRTA Trainees may not independently engage in patient care activities (any clinically-related activity must explicitly be under the direct supervision and control of an NIH employee), be assigned official supervisory responsibilities, or sign documents (e.g., requisitions) on behalf of the Government." National Institutes of Health, Office of Intramural Research, *available at https://oir.nih.gov/sourcebook/personnel/ipds-appointment-mechanisms/intramural-research-training-award-irta-hiring-mechanism-postdoctoral-pre* (last visited March 5, 2019). "An IRTA Fellowship is a non-Full-Time Equivalent Employment (FTE) position." *Id*.

Dr. Vos founded Firefly Communications - a "full-service Internet Presence Provider" whose business model was to "develop, deploy, host and promote commercial web sites . . . and provide[ ] strategic planning for online ventures, marketing and business procedures." *See* Vos CV (Attachment 1). Dr. Vos operated that business until 2006 when he began teaching at Montgomery College – a community college located in the suburbs of Washington, D.C.

According to his CV, Dr. Vos has not authored, or co-authored, a peer-reviewed scientific paper, on any topic, since 1991 – and none of his scholarly work involved drug combinations resulting in violent behavior. *Id.* There is no record that Dr. Vos has ever supervised, participated in, or even read a study involving the impacts of combining alcohol, Vicodin, Propecia and creatine – in any quantities. Dr. Vos has not worked in pharmacology, in any capacity, for twenty-five years. *Id.* Further, although Dr. Vos is a member of certain professional organizations, none of them is related to pharmacology. *Id.*

Moreover, Dr. Vos does not appear to have ever testified as an expert witness on any topic, and undersigned counsel has been unable to discover a single case in which Dr. Vos appeared. It would follow that Dr. Vos has never satisfied a *Daubert* inquiry into his qualifications – a fact which should give the Court considerable pause given the stakes of this case. In reviewing Dr. Vos' CV, the only apparent basis for his having been chosen as an expert witness in this case is that he is willing to accept taxpayer money to state the defendant's proffered position. Respectfully, *Daubert* requires quite a bit more than that.

**2.  Dr. Vos' Methodology Is Not Reliable**

The Court's determination of the reliability of an expert's methodology "is primarily a question of the validity of the methodology." *Gopalratnam*, 877 F.3d at 781 (quoting *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013)).  Here, Dr. Vos does not appear to have a "methodology" of his own.  He has never researched, or written on, this topic.  Thus, Dr. Vos' testimony will necessarily rely on speculative extrapolation of possible side effects of compounds that the defendant may, or may not, have ingested prior to committing the charged crimes.  Such speculation cannot form the basis of expert testimony.

Courts in the Seventh Circuit employ a combination of factors in evaluating the reliability of expert methodology:

> (1) whether the proffered theory can be and has been tested;
> (2) whether the theory has been subjected to peer review;
> (3) whether the theory has been evaluated in light of potential rates of error;
> (4) whether the theory has been accepted in the relevant scientific community";
> (5) whether "maintenance standards and controls" exist;
> (6) whether the testimony relates to "matters growing naturally and directly out of research they have conducted independent of the litigation," or developed "expressly for purposes of testifying";
> (7) "[w]hether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion";
> (8) "[w]hether the expert has adequately accounted for obvious alternative explanations";
> (9) "[w]hether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting"; and
> (10) "[w]hether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give."

*Gopalratnam*, 877 F.3d at 779–80 (internal citation and quotation omitted). Dr. Vos cannot testify meaningfully as to any of these factors, as he has not conducted any research on this topic himself. As noted above, Dr. Vos has not conducted pharmacological research on *any* topic since 1995 – he has never served as the lead researcher on any study, and he has never written a scholarly paper on drug interactions.

It is well-settled that an expert witness may not be called to "parrot" the findings of experts who are more experienced, better qualified, and who actually conducted the research. *Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 612-14 (7th Cir. 2002) (noting that "[a] scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty."); *see also Deutz Corp. v. City Light & Power, Inc.*, 2009 WL 2986415, at *6 (N.D. Ga. Mar. 21, 2009) ("Rule 703 . . . does not permit an expert to simply parrot the opinions of other experts."); *Brown v. Teledyne Cont'l Motors, Inc.*, 2007 WL 838918, at *3 (N.D. Ohio Mar. 15, 2007) (finding that expert "must himself be qualified to render any opinions he would testify to in court, or he would simply be parroting the opinions of others")).

The United States does not believe that any properly-conducted scientific study exists to support the premise of Dr. Vos' proffered expert testimony. Even if such studies exist, however, Dr. Vos has had no involvement in them and could not meaningfully testify as to the reliability of their methodology. At best, Dr. Vos would be serving as the mouthpiece for another scientist whose expertise would exceed his own. Allowing such testimony would defeat the purpose of both Rule 702 and *Daubert*.

### 3. **Dr. Vos' Testimony is Not Relevant, and Any Relevance is Outweighed by the Risk of Prejudice or Juror Confusion**

In considering whether particular evidence is "relevant," the Court applies the same standard in the penalty phase that it would in the guilt phase. *United States v. Lujan*, 603 F.3d 850, 854 (10th Cir. 2010) (citing 18 U.S.C. § 3593(c)).  Thus, evidence is "relevant" in the penalty phase "if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the [information]." *Id*. (quoting FRE 401).  Section 3593(c) also provides that relevant evidence should be excluded from the penalty phase if "its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." *Id*. (differentiating FRE 403 which provides that exclusion is proper if the probative value is *substantially outweighed* by unfair prejudice).

Assuming, for the sake of argument, that legitimate scientific research shows that some combination of alcohol, Vicodin, Propecia, and creatine could have affected the defendant's behavior sufficiently to justify its inclusion as a mitigating factor, the evidence would nevertheless be inadmissible under Section 3593(c).  This is true because there is no evidence that the defendant consumed any of these items – in any dosage – on the day of the offense.  Indeed, the only evidence that he *ever* consumed them rests on the self-serving hearsay statements of a man charged with lying to the FBI.  In the absence of evidence that these compounds were present in the defendant's

9

bloodstream, any testimony about what effect these compounds might have had on the defendant or his behavior would be wholly speculative.

Allowing Dr. Vos, or anyone else, to testify that the defendant's crimes were mitigated in any way by his use of alcohol, Vicodin, Propecia, and creatine would require the United States to call a rebuttal witness, and the penalty phase would devolve into a time-consuming battle of the experts on an ancillary issue for which there is little, if any, factual basis. This result would serve only to confuse the jurors as to the issues that are properly theirs to decide. The jurors' confusion would be amplified by the fact that there is no scientific basis for the defendant's position, which he intends to offer through an unqualified witness. Although the defendant is entitled to zealously argue proper mitigation in hopes that the jurors will spare his life, he is not entitled to sell them snake oil and call it medicine.

## CONCLUSION

There is no evidence to suggest that the defendant used any combination of alcohol, Vicodin, Propecia, or creatine on the date of the offense. There is no valid science to support the defendant's theory that the combination of these compounds affected his behavior. The defendant's proffered expert has had no exposure to the field of pharmacology in 25 years, and he is only qualified to parrot the research of more qualified persons. Allowing expert testimony under these circumstances would defy any reasonable interpretation of Rule 702 and the *Daubert* requirements.

WHEREFORE, the United States respectfully moves the Court to preclude the testimony of Dr. Peter Vos or, in the alternative, to schedule an immediate *Daubert* hearing.

Respectfully submitted,

JOHN C. MILHISER
UNITED STATES ATTORNEY

*/s/Eugene L. Miller*
Eugene L. Miller
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone: 217/373-5875
Fax: 217/373-5891
eugene.miller@usdoj.gov

*/s/ James B. Nelson*
James B. Nelson
Trial Attorney
Capital Case Section
United States Department of Justice
1331 F. Street NW, Room 625
Washington, DC  20004
Phone: 202/598-2972
james.nelson@usdoj.gov

*/s/Bryan D. Freres*
Bryan D. Freres, Bar No. IL 6294791
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone: 217/373-5875
Fax: 217/373-5891
bryan.freres@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

*/s/ James B. Nelson*
James B. Nelson
Trial Attorney
Capital Case Section
United States Department of Justice
1331 F. Street NW, Room 625
Washington, DC  20004
Tel: (202) 598-2872
james.nelson@usdoj.gov