IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17-CR-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

**THE UNITED STATES OF AMERICA'S MOTION
TO PRECLUDE THE TESTIMONY OF DR. SUSAN ZOLINE**

NOW COMES the United States of America, by John C. Milhiser, United States Attorney for the Central District of Illinois, Eugene L. Miller and Bryan D. Freres, Assistant United States Attorneys, and Department of Justice Trial Attorney James B. Nelson, and hereby moves the Court to preclude the proffered expert testimony of Dr. Susan Zoline. The bases for the United States' motion are as follows.

**PROCEDURAL HISTORY**

The Court's scheduling order provided, among other things, that the defendant must give notice of his non-Rule 12.2 expert witnesses, including rebuttal witnesses, by August 24, 2018. (R.67). As the Court's docket reflects, the defendant has failed to give timely notice with regard to multiple expert witnesses. On February 15, 2019, based on the defendant's failure to provide complete notice of his expert witnesses' proposed testimony, the United States filed a motion *in limine* asking the Court to limit the defendant's experts to the information provided by the defendant, and to preclude the

defendant from calling any expert witnesses had not been timely noticed pursuant to the Scheduling Order. (R.241).

On February 20, 2019, defense counsel hand-delivered notice of three additional non-Rule-12.2 expert witnesses which the defendant purportedly intends to call at trial.[1] Among these purported experts was Dr. Susan Zoline, whose proffered testimony was described as follows:

> It is expected that Dr. Zoline will testify that the treatment of Mr. Christensen by the University of Illinois Counseling Center did not comply with the applicable standards of care, including but not limited to the failure to provide appropriate services in response to the clinical concerns identified in the sessions; failure to seek client consent to notify and adequately coordinate with psychiatrists who were treating Mr. Christensen at the McKinley Health Center; failure to seek client consent to obtain medical records that would have assisted in evaluating and treating Mr. Christensen; failure to adequately assess and evaluate the specifics of the homicidal and suicidal ideations Mr. Christensen expressed in the sessions with regard to a thorough ongoing threat assessment, and failure to develop an adequate treatment and safety plan in light of Mr. Christensen's unique situation and vulnerable presentation; failure to make appropriate referrals for further treatment; and failure to conduct an adequate follow-up with Mr. Christensen. Dr. Zoline will base her testimony on her educational background; her professional experience as both a Licensed Clinical Psychologist and Professor of Psychology, as set out in her CV, and her familiarity with the standards of care in the mental health professions.

---

[1] Specifically, the defendant gave notice of his intent to call Drs. Susan Zoline, Jonathan Sorensen, and Peter Vos. Prior to February 20, 2019, the defendant had not given prior notice of his intent to either call these alleged experts or call experts in their respective fields. As such, the defendant's February 20, 2019, disclosure is in violation of the Scheduling Order and all three of these proposed experts should be precluded from trial. (R.241).

This "notice" merely states the topic of Dr. Zoline's potential testimony and, as such, fails to satisfy Rule 16's notice requirement. Rule 16(b)(1)(C) requires the defendant's expert notice to "describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Though the defendant provided a copy of Dr. Zoline's curriculum vitae, he did not provide either a report or a summary of her findings specific to this defendant.

## ARGUMENT

The FDPA permits the defendant to offer mitigating factors which tend to show that either the circumstances of the offense, the defendant's character and background, or the personal moral culpability of the defendant justify a sentence of life imprisonment without parole rather than a sentence of death. 18 U.S.C. § 3592. As noted more fully below, however, the proffered testimony of Dr. Zoline does not fit within that standard—the hypothetical and unproven civil liability of a third party is not proper mitigation in a death penalty case.

**A. The Proffered Testimony of Dr. Zoline Misstates the Law**

The defendant's assertion – that the University of Illinois Counseling Center's alleged failures in providing him mental health services mitigates the appropriateness of a death sentence for his intentional kidnapping, sexual assault, murder, and dismemberment of Ying Ying Zhang – is meritless.[2]

---

[2] The proffered testimony is tantamount to declaring that the University of Illinois was negligent. Such expert testimony is improper. *See Pless v. Cleveland Wrecking Co.*, 2006 WL 2690074, at *3 (W.D.N.Y. Sept. 18, 2006) ("[A]n expert may not

Illinois law clearly provides that there is no cause of action lies against mental health providers for their failure to respond to statements made in therapy unless the patient makes a specific threat against a specific and identified victim. *Charleston v. Larson*, 696 N.E.2d 793, 802 (Ill. App. 1998); *Eckhardt v. Kirts*, 534 N.E.2d 1339, 1344 (Ill. App. 1989); *Novak v. Rathnam*, 505 N.E.2d 773, 776 (Ill. App. 1987); *see also Rousey v. United States*, 115 F.3d 394, 399–400 (6th Cir. 1997). The defendant's mental health records, as provided to the United States by the defendant, clearly show that the defendant made no specific threat to harm anyone – indeed, he described his urge to commit homicide as a fantasy, and repeatedly downplayed that fantasy. Moreover, the defendant never mentioned Ying Ying Zhang, or any other intended victim. Thus, Dr. Zoline's proffered testimony that the University of Illinois Counseling Center failed in its duty is contrary to the evidence.

Even if the defendant had a valid claim that the University failed him in some way, the proper venue for that claim would be in a civil suit filed in the Champaign County Courthouse. No amount of factual manipulation could fabricate a legal duty by the University to protect Ying Ying Zhang, or anyone else, from the defendant's

---

testify that a defendant ... was negligent."); *Hermitage Indus. v. Schwerman Trucking Co.*, 814 F. Supp. 484, 487 (D.S.C. 1993) ("[T]he Court finds that the proffered testimony of defendant's expert witness that plaintiff was 'negligent' constitutes a legal conclusion and is therefore inadmissible."). At most, Dr. Zoline could testify as to what the applicable duty of care is for counseling centers in a higher education setting. *See Superior Aluminum Alloys, LLC v. U.S. Fire Ins. Co.*, 2007 WL 1850858, at *9–10 (N.D. Ind. June 25, 2007). This would accomplish nothing more than firing the first volley in a time-consuming battle of the experts on an irrelevant issue – a battle that the Court can, and should, prevent.

unforeseen and intentional crimes.  Since the University had no duty to protect the public from the defendant, it follows that their failure to do so cannot be argued as a mitigating factor.  Dr. Zoline's proffered testimony should be precluded.

**B.  <u>The Proffered Testimony of Dr. Zoline Is Not Proper Mitigation</u>**

Even if the University of Illinois Counseling Center had breached a duty of care in this case, which they did not, that fact would still not constitute proper mitigation

Though the defendant has wide latitude in presenting his m.itigation case, his latitude is not unlimited.  Mitigating evidence must be specifically tailored to show why this defendant should not be put to death.  *United States v. Johnson*, 223 F.3d 665, 675 (7th Cir. 2000) (Excluding evidence and argument that "life in prison without parole . . . achieves the objectives aimed at by the death penalty) (citing *Penry v. Lynaugh*, 492 U.S. 302, 328 (1989); *Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982); *Lockett v. Ohio*, 438 U.S. 586, 604 n. 12 (1978).  As the *en banc* Sixth Circuit noted "Mitigation evidence . . . is not an empty concept to be filled by whatever a lawyer or court thinks might persuade a single juror in a particular case."  *United States v. Gabrion*, 719 F.3d 511, 522 (6th Cir. 2013) (*en banc*).  Similarly, the Second Circuit has held that the broad standards for admissibility of mitigating evidence does "not mean that the defense has carte blanche to introduce any and all evidence that it wishes."  *United States v. Fell*, 531 F.3d 197, 219 (2nd Cir. 2008).

The Court has the authority to limit defendant's penalty phase presentation to evidence pertaining to him as an individual. In *Lockett v. Ohio*, 438 U. S. 586, 604 n.12 (1978), the Supreme Court wrote: "Nothing in this opinion limits the traditional

5

authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of the offense." In *Buchanan v. Angelone,* the Court reiterated the trial court's authority to limit the mitigation presentation, so long as it allowed for the presentation of *relevant* mitigation evidence.  522 U.S. 269, 276 (1998).  "'Relevant mitigating evidence is evidence which tends logically to prove or disprove some fact or circumstance which a fact-finder could reasonably deem to have mitigating value.'"  *Tennard v. Dretke* 542 U.S. 274, 284 (2004) (quoting *McKoy v. North Carolina*, 494 U.S. 433, 440 (1990).  Evidence bearing only a trivial connection to the defendant's character or the circumstances of the crime is unlikely to meet this standard.  *Rhoades v. Davis*, 914 F.3d 357, 366 (5th Cir. 2019) (citing *Tenard*, 542 U.S. at 286-87).

In considering and applying this panoply of guidance, courts routinely refuse to allow a capital defendant to assert mitigating evidence which serves only to lay blame for the offense at another party's feet.  *See, e.g.*, *Chambers v. Quarterman*, 191 F. App'x 290, 297 (5th Cir. 2006) (refusing to allow defendant to introduce his accomplice's criminal record in mitigation), *vacated on other grounds*, 550 U.S. 915 (2007), *opinion reinstated in part*, 260 F. App'x 706 (5th Cir. 2007); *United States v. Purkey*, 428 F.3d 738, 757 (8th Cir. 2005) (refusing to allow defendant to argue that his wife poisoned him, and that he was under the influence of that poison when he murdered his victim); *People v. Gonzales*, 281 P.3d 834, 877 (Cal. 2012) (refusing to allow defendant to assert his family members' actions in mitigation for his murder of family member)

This refusal to allow the defendant to point to an "empty chair" in the penalty phase is entirely consistent with the FDPA, which requires that mitigating factors be individualized to the defendant. 18 U.S.C. § 3592(a). The FDPA, in turn, reflects the Supreme Court's repeated emphasis on individualized sentencing, which demands that any expert testimony relating to mitigating factors focus on <u>this</u> <u>defendant</u>. *Eddings v. Oklahoma*, 455 U.S. 104, 112 (1982); *see also Zant v. Stephens*, 462 U.S. 862, 879 (1983) ("What is important at the selection stage is an individualized determination on the basis of the character of the individual and the circumstances of the crime"); *Jurek v. Texas*, 428 U. S. 262, 276 (1976) (it is "essential" that the jury "have before it all possible information about the individual whose fate it must determine"); *Gregg v. Georgia*, 428 U.S. 153, 189 n.38 (1976) ("in capital cases it is constitutionally required that the sentencing authority have information sufficient to enable it to consider the character and individual circumstances of a defendant prior to imposition of a death sentence"); *see, e.g., United States v. Davis*, 912 F. Supp. 938, 943 (E.D. La. 1996) (noting that, in the selection phase, "the goal is to individualize the sentence as much as possible.")

Dr. Zoline's proffered testimony does not fit within the FDPA's framework. Her testimony would be centered on the University of Illinois Counseling Center's failure to "do more" following the defendant's vague threats of violence. In so doing, Dr. Zoline would be addressing the acts and characteristics of *someone else*, not those of the defendant. This violates every applicable tenet of mitigation evidence. *Eddings*, 455 U.S. at 112; *Zant*, 462 U.S. at 879; *Lockett*, 438 U.S. at 604 n.12; *Gregg*, 428 U.S. at 189 n.38.

Given that Dr. Zoline's testimony cannot be reconciled with either the FDPA or the Supreme Court's guidance on mitigation evidence, it must be precluded.

C. **The Probative Value of Dr. Zoline's Testimony Would Be Outweighed by the Risk of Confusing the Jury**

The FDPA provides that "[i]nformation is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c)(differentiating FRE 403 which provides that exclusion is proper if the probative value is substantially outweighed by unfair prejudice); *see also United States v. Fell*, 360 F.3d 135, 145 (2d Cir. 2004).

If Dr. Zoline is allowed to testify, the United States will have no choice but to hire its own expert on campus threat assessment and the duties owed by campus counseling centers. The result would be a time-consuming battle of the experts on an issue which has no bearing on whether the defendant should be sentenced to death for his crimes.

Section 3593(c) weighs against this result. The jury is not being seated to determine whether the University of Illinois Counseling Center had a civil duty under Illinois law based on the defendant's non-specific statements during therapy. It is being seated to determine whether the defendant should be sentenced to death for his intentional crimes. Dr. Zoline's testimony adds nothing to this determination, and the

defendant should not be permitted to distract the jury by falsely accusing others of wrongdoing *in lieu* of proper mitigation evidence.

## CONCLUSION

The notice of the defendant's intent to call Dr. Zoline as an expert witness was given six months after the deadline. In addition to being legally incorrect, her proffered testimony would constitute improper mitigation and would serve only to confuse the jury. Even if everything that Dr. Zoline alleges were true, this issue should be determined in a civil lawsuit filed in the Champaign County Courthouse – not in the penalty phase of the defendant's death penalty trial.

/// /// ///

/// /// ///

/// /// ///

/// /// ///

/// /// ///

/// /// ///

/// /// ///

/// /// ///

/// /// ///

/// /// ///

// /// ///

/// /// ///

/// /// //

WHEREFORE, the United States respectfully moves the Court to preclude the testimony of Dr. Susan Zoline.

Respectfully submitted,

JOHN C. MILHISER
UNITED STATES ATTORNEY

*/s/Eugene L. Miller*
Eugene L. Miller
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone: 217/373-5875
Fax: 217/373-5891
eugene.miller@usdoj.gov

*/s/ James B. Nelson*
James B. Nelson
Trial Attorney
Capital Case Section
United States Department of Justice
1331 F. Street NW, Room 625
Washington, DC  20004
Phone: 202/598-2972
james.nelson@usdoj.gov

*/s/Bryan D. Freres*
Bryan D. Freres, Bar No. IL 6294791
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone: 217/373-5875
Fax: 217/373-5891
bryan.freres@usdoj.gov

## CERTIFICATE OF SERVICE

    I hereby certify that on March 13, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

                                       */s/ James B. Nelson*
                                       James B. Nelson
                                       Trial Attorney
                                       Capital Case Section
                                       United States Department of Justice
                                       1331 F. Street NW, Room 625
                                       Washington, DC  20004
                                       Tel: (202) 598-2872
                                       james.nelson@usdoj.gov