E-FILED
Wednesday, 13 March, 2019  05:22:19 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17-CR-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

### THE UNITED STATES OF AMERICA'S MOTION TO PRECLUDE
### THE TESTIMONY OF DR. JONATHAN SORENSEN

NOW COMES the United States of America, by John C. Milhiser, United States

Attorney for the Central District of Illinois, Eugene L. Miller and Bryan D. Freres,

Assistant United States Attorneys, and Department of Justice Trial Attorney James B.

Nelson, and hereby moves the Court to preclude the testimony of Dr. Jonathan

Sorensen.  The bases for the United States' motion follow.

### PROCEDURAL HISTORY

The Court's scheduling order provided, among other things, that the defendant

must give notice of his non-Rule 12.2 expert witnesses, including rebuttal witnesses, by

August 24, 2018.  (R.67).   As the Court's docket reflects, the defendant has failed to give

timely notice with regard to multiple expert witnesses. On February 15, 2019, based on

the defendant's failure to provide complete notice of his expert witnesses' proposed

testimony, the United States filed a motion *in limine* asking the Court to limit the

defendant's experts to the information provided by the defendant and to preclude the

defendant from calling any expert witnesses had not been timely noticed pursuant to the Scheduling Order. (R.241).

On February 20, 2019, defense counsel hand-delivered notice of three additional non-Rule-12.2 expert witnesses which the defendant purportedly intends to call at trial.[1] Among these purported experts was Dr. Jonathan Sorensen, whom the defendant intends to call to testify regarding future dangerousness:

> Dr. Sorensen will testify consistent with the studies that he co-authored and which are referenced in Defendant's Motion to Strike Aggravating Factor Alleging Future Dangerousness, Dkt 122, and other relevant studies, including the correlation of allegations of future dangerousness by the prosecution and others with the available data; studies of the ability to accurately predict future dangerousness; the low base rates of violence in prison and various erroneous factors that influence such decisions.

This "notice" merely states the topic of Dr. Sorensen's potential testimony and, as such, fails to satisfy Rule 16's notice requirement. Rule 16(b)(1)(C) requires the defendant's expert notice to "describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Though the defendant provided a copy of Dr. Sorensen's curriculum vitae, he did not provide either a report or a summary of his findings specific to this defendant.

---

[1] Specifically, the defendant gave notice of his intent to call Drs. Susan Zoline, Jonathan Sorensen, and Peter Vos. Prior to February 20, 2019, the defendant had not given prior notice of his intent to either call these experts or call experts in their respective fields. As such, the defendant's February 20, 2019, disclosure is in violation of the Scheduling Order and all three of these proposed experts should be precluded from trial. (R.241).

2

## ARGUMENT

1. **The Defendant Informed the Court and the United States on October 11, 2018, that this Testimony Would Not Be Utilized**

During oral argument on October 11, 2018, in justification of their requested continuance of the Rule 12.2 notice deadline, defense counsel informed the Court that their mitigation case was far too unique and complicated to hire someone like Dr. Mark Cunningham as an expert, and that they would not do so:

MS. BRAIN:   . . .

> We want to do it right. We want to have people who really know what they're talking about and that can be effective experts and witnesses for Mr. Christensen.

> We're not calling, you know, Mark Cunningham and all those people that testify over and over and over again. We're not doing that.

Hearing Tr. 40-41, Oct. 11, 2018.

There is no meaningful difference between the testimony of Drs. Cunningham and Sorensen.  As is evident from his resume, Dr. Sorensen is a frequent co-author of Dr. Cunningham's – including on the "studies" that defense counsel referenced in their letter to undersigned counsel on February 20.  *See* Mark D. Cunningham and Jon R. Sorensen, *Nothing to Lose? A Comparative Examination of Prison Misconduct Rates Among Life-Without-Parole and Other Long-Term High-Security Inmates*, CRIMINAL JUSTICE AND BEHAVIOR 2006 33: 683, *available at http:// cjb.sagepub.com/content/33/6 /683* (last visited March 9, 2019).

Dr. Sorensen, like Dr. Cunningham, regularly testifies in death penalty cases, always for the defense, and on an identical subject matter to that presented by Dr.

Cunningham.  *Compare United States v. Barnette*, 211 F.3d 803, 821-22 (4th Cir. 2000)

(discussing Dr. Cunningham's testimony) *with Mendoza v. State*, 2008 WL 4803471, at

*20-22 (Tex. Crim. App. Nov. 5, 2008) (discussing Dr. Sorensen's proposed testimony).

Capital defense counsel frequently rely on the testimony of Drs. Sorensen and

Cunningham to present evidence that the United States Bureau of Prison ("BOP") can

take steps to ensure that even the most violent offenders are not dangerous in prison.

Their testimony often consists of a lengthy slide show followed by a discussion of their

studies which consider groups of persons convicted of murder and later released from

prison; persons on death row who were later transferred to general population; and

persons who were held on death row.

Dr. Sorensen uses such studies to identify a "base rate" of violent misconduct

among such inmates and determines that, as compared with other groups, the general

"base rate" for a risk of violent misconduct among capital offenders is low.[2]  Drawing

on this base rate analysis, Dr. Sorensen then purports to provide an expert opinion that

whichever capital defendant he is testifying on behalf of would not pose a serious risk

of future dangerousness if he were given a life sentence rather than the death penalty.

The defendant gave notice to the Court and to the United States that he would

not present testimony such as this in the penalty phase.  The United States relied on the

defendant's statement and did not hire specific expert witnesses to rebut the "base rate"

---

[2] This conclusion is not particularly surprising given the degree of security and solitary confinement imposed on death row inmates, and the fact that all "rewards" available to death row inmates are based on good behavior.

theory frequently presented by capital defendants.  The United States respectfully suggests that defense counsel should be bound by his statement that he would <u>not</u> present such testimony – particularly in light of their violation of the scheduling order.

## 2. <u>Dr. Sorensen's Proffered Testimony is Improper Rebuttal</u>

The United States has alleged Future Dangerousness as a non-statutory aggravator.  It will meet its burden of proving Future Dangerousness by presenting evidence of relevant facts during the penalty phase and arguing to the jury that those facts prove that he will pose a danger in the future.  The United States' Future Dangerousness complies with the requirement that non-statutory aggravators individualize the selection of the appropriate sentence by calling the jury's attention to the individualized circumstances of the crime and character of the defendant.  *Zant v. Stephens*, 462 U.S. 862, 878 (1983); *see also United States v. Runyon*, 707 F.3d 475, 491 (4th Cir. 2013) (citing *Tuilaepa v. California*, 512 U.S. 967, 979-80 (1994)).

Dr. Sorensen's testimony, on the other hand, is not grounded on the defendant's individual circumstances of the crime and the character of the defendant – it is grounded on a self-serving statistical study which relies on the behavior of other defendants who committed other crimes in other jurisdictions.  In other words, Dr. Sorenson attempts to rebut the specific with the general.  Further, by relying on the behavior of other defendants, Dr. Sorensen's testimony runs afoul of the requirement that the penalty phase be focused on whether the defendant should be sentenced to death based on his personal characteristics and those of the crimes he committed.  *Id.*; *see also Lockett v. Ohio*, 438 U.S. 586, 604 n.12 (1978); 18 U.S.C. § 3592(a)(1)-(8). Thus, Dr.

5

Sorenson's testimony should be precluded. *See*, *e.g.*, *Mendoza v. Thaler*, 2012 WL 12817334, at *8 (E.D. Tex. June 19, 2012) (affirming the trial court's decision to disallow Dr. Sorensen's testimony), *report and recommendation adopted*, 2012 WL 12817333 (E.D. Tex. Nov. 8, 2012).

**3. <u>The Penalty Phase Evidence Must Be Personalized to the Defendant</u>**

The defendant seeks to call Dr. Sorensen to testify that, as compared with a statistical analysis of other inmates, the defendant poses a small risk of future dangerousness. This is no more acceptable than an FBI agent testifying that, based on a review of the applicable reports, the defendant has demonstrated less remorse than the average murderer.

The FDPA's statutory framework requires both aggravators and mitigating factors to be individualized to the defendant. 18 U.S.C. § 3592. There is no basis in the law to introduce evidence of the punishment, conduct, or background of other defendants by way of comparison – either in aggravation or in mitigation. *See* <u>United States' Motion *In Limine* to Preclude Proportionality Evidence</u> (R.247). Rather, the FDPA reflects the Supreme Court's repeated emphasis on *<u>individualized</u>* sentencing, which demands that any expert testimony relating to mitigating factors focus on *<u>this defendant</u>*. *Eddings v. Oklahoma*, 455 U.S. 104, 112 (1982); *see also Zant*, 462 U.S. at ("What is important at the selection stage is an individualized determination on the basis of the character of the individual and the circumstances of the crime"); *Jurek v. Texas*, 428 U. S. 262, 276 (1976) (it is "essential" that the jury "have before it all possible information about the individual whose fate it must determine"); *Gregg v. Georgia*, 428 U.S. 153, 189

n.38 (1976) ("in capital cases it is constitutionally required that the sentencing authority have information sufficient to enable it to consider the character and individual circumstances of a defendant prior to imposition of a death sentence"); *United States v. Davis*, 912 F. Supp. 938, 943 (E.D. La. 1996) ("the goal is to individualize the sentence as much as possible.").

Support for limiting generalized, base rate testimony is found in the Supreme Court's holding in *Dawson v. Delaware*, 503 U.S. 159 (1992). In *Dawson*, the Court found reversible error to exist where the prosecution was permitted to introduce evidence that the Aryan Brotherhood, to which the defendant belonged, existed in the state prison system because the evidence had no specific relationship to the defendant and his future dangerousness as an individual. The Court ruled that the lack of evidence regarding the gang's violent objectives, and specifically the chapter to which the defendant belonged, rendered the evidence irrelevant to individualized sentencing. *Id*. at 165-66. Just as the jury cannot rely on the existence of dangerous federal inmates to determine that the defendant is dangerous, it should not be allowed to rely on non-violent inmates to assume that the defendant is not a future danger.

The United States concedes that the defense may present information as to how this particular defendant may adjust to life in prison, but such testimony should not be based upon generalized studies of other inmates.[3] Conclusions based on generalized

---

[3] Respectfully, Dr. Sorensen is not competent to testify about this topic. Dr. Sorensen has no training in the field of psychology and is not qualified to testify about how the defendant's psychological state or adaptation to prison life. Moreover, the defendant has failed to give timely notice of such testimony. (R.67).

7

studies would be necessarily unrelated to a mitigating factor focused on this defendant.

Accordingly, this Court should follow the plain language of the FDPA and preclude

any testimony based on statistics and studies that have no bearing on the background

or behavior of this particular defendant.

4. **The Court Should Preclude All Testimony Relating to the BOP's Alleged Capabilities**

In prior appearances, Drs. Cunningham and Sorensen have attempted to testify

about the BOP's ability to manage and guard against inmate misconduct.  This has

included testimony about control and security procedures available at ADX Florence, a

state-of-the-art facility where repeated acts of violence would be extremely unlikely.

This testimony is offered to buttress the opinion that the defendant presents little

likelihood of future dangerousness.  This testimony must be precluded, as it is both

misleading and beyond the scope of Dr. Sorensen's actual knowledge and expertise.

Moreover, such testimony is prohibited in the Seventh Circuit.  *United States v. Johnson*,

223 F.3d 665 (7th Cir. 2000).

Dr. Sorensen is an academic.  He has never worked for BOP in any capacity, and

is not familiar with either its classification or its internal security mechanisms.  In

reality, there is no guarantee that the defendant will be housed at ADX Florence,

assuming he is not sentenced to death. The Bureau of Prisons alone controls where

inmates are designated, and an inmate cannot be placed directly in a control unit based

solely on the nature of his crime. *Id.* at 672 (discussing limitations in federal regulations

as to designation of inmates by BOP); 18 U.S.C. §§ 4001(b), 4042; 28 C.F.R. § 541.41.  Dr. Sorensen cannot testify competently on this topic.

Moreover, this is exactly the type of testimony Section 3593(c) forbids. The FDPA specifically provides that "information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury."  In *Johnson*, the Seventh Circuit cited its own knowledge from murders committed in the "control unit" at USP Marion and noted the following facts:

- Control units <u>cannot</u> be made totally secure;

- Federal law does not authorize the judge to sentence a defendant to life imprisonment in a control unit; and

- BOP must consider multiple circumstances in making housing decisions and, therefore, <u>any</u> prisoner not on death row may be housed in general population.

*Id*. at 673.  Thus, as *Johnson* noted, if the defendant is sentenced to life imprisonment he will be housed at whatever prison, and in whatever conditions, the BOP deems appropriate, and the further away he gets from death row, the less security there will be.  *Id*.  The *Johnson* Court's holding is not anecdotal – there are more than 50 open homicide cases wherein a non-death-row inmate was murdered another non-death-row inmate while housed in a BOP facility.

Dr. Sorensen cannot testify with any certainty regarding which prison the defendant will be designated to if he is not sentenced to death, nor can he testify with any certainty as to where within that prison the defendant would be housed.

Furthermore, given his lack of BOP expertise, it goes without saying that Dr. Sorensen could not testify competently about the conditions or capabilities of _any_ BOP facility.

Alternatively, it might have been[4] permissible for the defendant to offer testimony in mitigation that he himself has adjusted well to incarceration or how he has behaved while incarcerated. _See Skipper v. South Carolina_, 476 U.S. 1, 4 (1986). Any testimony beyond that point, however, would exceed the bounds of the FDPA.  As the Seventh Circuit noted in _Johnson_:

> The argument that life in prison without parole, especially if spent in the prison's control unit and thus in an approximation of solitary confinement, sufficiently achieves the objectives aimed at by the death penalty to make the latter otiose is an argument addressed to legislatures, not a jury. This is apparent from the fact that the list of mitigating factors in the federal death- penalty statute does not include the harshness or ugliness or (some would say) the immorality of the death penalty, but only factors specific to the defendant.  See 18 U.S.C. § 3592(a), and in particular subsection (a)(8) ("other factors _in the defendant's background, record, or character_ or any other circumstances _of the offense_ that mitigate against imposition of the death sentence") (emphasis added).

_Id._ at 674-75 (Supreme Court citations omitted) (original emphasis).

**5.  Dr. Sorensen' Testimony Would Confuse the Jury**

As noted above, in reliance on defense counsel's statements on the record on October 11, 2018, the United States has not retained an expert witness to respond to the Cunningham/Sorensen "base rate" evidence.  If Dr. Sorensen is not precluded, the United States will have no choice but to do so.  It would necessarily follow that the

---

[4] As noted, _supra_, such evidence would have to be presented through a qualified mental-health expert, which Dr. Sorensen is not.  Further, the time for giving notice of such an expert has passed. (R.67).

penalty phase would devolve into a time-consuming battle of the experts on acts of violence within federal prison.

Section 3593(c) weighs against this result.  The jury is not being seated to determine how many violent crimes are committed in federal prison, and what the crime of conviction was for each offender.  It is being seated to determine whether *this* defendant is, in their opinion, likely to pose a risk of future dangerousness.  They can, and should, make that determination without having to wade through multiple hours of expert testimony regarding statistics drawn from other criminals' commission of other crimes in other districts under other circumstances.

## CONCLUSION

The defendant should be precluded from calling Dr. Sorensen to testify.  He told the Court that such testimony would not be utilized, and he didn't change his mind until six months after the deadline lapsed.  Dr. Sorensen's proffered testimony is outside the bounds of acceptable rebuttal and would turn the penalty phase into a mini-trial on crimes committed by other defendants.  Further, Dr. Sorensen lacks sufficient personal knowledge to testify competently about either the security standards within BOP facilities or the defendant's personal adjustment to imprisonment.

WHEREFORE, the United States respectfully moves the Court to preclude the

testimony of Dr. Jonathan Sorensen.

Respectfully submitted,

JOHN C. MILHISER
UNITED STATES ATTORNEY

*/s/Eugene L. Miller*
Eugene L. Miller
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone: 217/373-5875
Fax: 217/373-5891
eugene.miller@usdoj.gov

*/s/ James B. Nelson*
James B. Nelson
Trial Attorney
Capital Case Section
United States Department of Justice
1331 F. Street NW, Room 625
Washington, DC  20004
Phone: 202/598-2972
james.nelson@usdoj.gov

*/s/Bryan D. Freres*
Bryan D. Freres, Bar No. IL 6294791
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone: 217/373-5875
Fax: 217/373-5891
bryan.freres@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

*/s/ James B. Nelson*
James B. Nelson
Trial Attorney
Capital Case Section
United States Department of Justice
1331 F. Street NW, Room 625
Washington, DC  20004
Tel: (202) 598-2872
james.nelson@usdoj.gov