UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Crim. No. 17-20037 |
| BRENDT A. CHRISTENSEN, | ) ) ) |
| Defendant. | ) |

RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE*
TO PRECLUDE A "MERCY" INSTRUCTION

Now comes the Defendant, BRENDT A. CHRISTENSEN, by his attorneys, and for his response to the Government's Motion *in Limine* to Preclude a "Mercy" Instruction, (R. #249), filed February 15, 2019, states as follows:

I.   **Introduction**

Relying entirely upon the Fourth Circuit's ruling in *United States v. Caro*, 483 F.Supp.2d 513, 518 (W.D.Va. 2007), *aff'd*, 597 F.3d 608 (4th Cir. 2010), the government contends that the "FDPA provides no mechanism for jurors to substitute mercy for their aggravating and mitigating analysis and impose a sentence less than that which is justified by their own deliberations." (R.#249, p. 3).

The government's motion, however, erroneously conflates two distinct concepts in federal capital jury instructions: first, that the FDPA, by its terms, never requires a jury to impose a death sentence prior to a discretionary finding that any aggravating

factors sufficiently outweigh the mitigating factors; and second, the separate argument that, following the weighing process and a finding that the death penalty is justified, jurors should be permitted to exercise mercy and impose a sentence of life without the possibility of release. The first instruction – that death is never required – is specifically authorized by almost every court that has ever considered the question; and the second instruction – that a jury may exercise mercy even after finding that aggravating factors sufficiently outweigh mitigating factors so as to justify the death penalty – is what is specifically foreclosed by Fourth Circuit precedent, but, as argued below, is contrary to Supreme Court and other appellate precedent.

Therefore, Mr. Christensen requests that the Court give the first "death is never required" instruction, and reserve ruling on the second "mercy" instruction until such time as the parties are directed by the Court to submit their proposed penalty phase instructions with supporting memoranda.

II.  **Argument**

   **A. The instruction that "death is never required" is an appropriate and legally correct instruction which should be given to the jury in this case.**

The government acknowledges in its pleading that, under the FDPA, death is never required: "The statutory scheme of the FDPA itself provides that the jury exercises complete discretion in determining whether aggravating factors (if found) sufficiently outweigh any mitigating factors to justify a sentence of death." (R.#249, p.

3). See 18 U.S.C. § 3593(e) (providing fact finder full authority to determine whether aggravating factors sufficiently outweigh mitigating factors to justify a death sentence).[1]

Further, the government cites to *United States v. Caro*, 483 F.Supp.2d 513, 518 (W.D.Va. 2007), *aff'd*, 597 F.3d 608 (4th Cir. 2010) for the proposition that "the FDPA does not preclude the jury from considering mercy when weighing the aggravating and mitigating factors. The FDPA merely precludes the jurors from arbitrarily disregarding its unanimous determination that a sentence of death justified." (*Id.*).

Indeed, the "death is never required" instruction is a common feature of federal capital cases. *See* Modern Fed. Jury Instr. 9A.02, 9A-19 (Lexis 2011); *United States v. Jones*, 527 U.S. 373, 384 (1999) (jury instructed that "regardless of your findings with respect to aggravating and mitigating factors, you are never required to recommend a death sentence"); *United States v. Sampson*, 335 F. Supp. 2d 166, 239-240 (D. Mass. 2004) (approving instruction); *United States v. Haynes*, 265 F. Supp. 2d 914, 921-922 (W.D. Tenn. 2003) (same); *United States v. Hammer*, 25 F. Supp. 2d 518, 521 (M.D. Pa. 1998) (verdict form required jurors to certify that "[w]e . . . understand that a jury is never

---

[1] In addition to its plain language, the FDPA's legislative history supports that the statute never requires the jury to impose the death penalty. As explained in detail in *United States v. Haynes*, 265 F. Supp. 2d 914, 917-20 ((W.D. Tenn. 2003), Congress actually considered and rejected a House-passed amendment to the FDPA that would have required the jury to impose a death sentence whenever it "unanimously finds at least one aggravating factor and no mitigating factor or if it finds one or more aggravating factors which outweigh any mitigating factors." See 140 Cong. Rec. H2333 (daily ed.) (April 14, 1994); 140 Cong. Rec. H7940 (daily ed.) (August 11, 1994).

required to impose a death sentence . . ."); *United States v. Battle*, 979 F.Supp.1442, 1482 (N.D. Ga. 1998) (same).[2]

In *Caro*, cited by the government for the proposition that the Fourth Circuit does not approve "mercy" instructions, the district court gave a "death is not required" instruction, which the Circuit quoted in its opinion:

> Whatever findings you make with respect to aggravating and mitigating factors, the result of the weighing process is never decided in advance. **For that reason, a jury is never required to impose a sentence of death. At this last stage of your deliberation ... it is up to you to decide whether, for any proper reason established by the evidence, you choose not to impose such a sentence on the defendant.**
>
> What constitutes sufficient justification for [a] sentence of death in this case is exclusively left to you. Your role is to be the conscience of the community in making a moral judgment about the worth of an individual life balanced against the societal value of what the Government contends is deserved punishment for the defendant's offense. **Whatever aggravating and mitigating factors are found, a jury is never required to conclude the weighing process in favor of a sentence of death**, but your decision must be a reasoned one, free from the influence of passion, prejudice, or arbitrary consideration.

597 F.3d at 692. (emphasis added). *Caro* approvingly distinguished this instruction from a "mercy" instruction, *id*. (noting that the district court gave the "death is never required" instruction instead of the requested "mercy" instruction), and rejected only the "mercy" instruction. *Id*. at 632-33.

---

[2] See also Decl. of Kevin McNally (September 16, 2016), attached at Exhibit 1 (collecting data on federal trials in which the "death is not required" instruction was given).

The federal courts' general practice of providing clear instructions on the discretionary nature of jury sentencing in capital cases has been validated by a large body of social science evidence showing that many actual jurors erroneously believe that death is mandatory once an aggravating factor has been found. See, e.g., U. Bentele and W.J. Bowers, "How Jurors Decide on Death: Guilt is Overwhelming; Aggravation Requires Death; and Mitigation is No Excuse," 66 BROOKLYN L.REV. 1011, 1031-41 (2001); W.S. Geimer & J. Amsterdam, "Why Jurors Vote Life or Death: Operative Factors in Ten Florida Death Penalty Trials," 15 AM. J. CRIM. L. 1, 41 (1989) ("In the cases in which the jury recommended death, over half of the jurors believed that death was to be the punishment for first degree murder, or at least that death was to be presumed appropriate unless defendant could persuade the jury otherwise"); W. S. Bowers, "The Capital Jury Project: Rationale, Design and Preview of Early Findings," 70 IND. L .J. 1043, 1091 n.32 (1995) ("Many jurors believe that the death penalty is mandatory if the crime is heinous or vicious"); W. J. Bowers, M. Sandys & B. Steiner, "Foreclosing Impartiality in Capital Sentencing: Jurors' Predispositions, Attitudes and Premature Decision-Making," 83 CORNELL L. REV. 1476 (1998) ("There appears to be a presumption that clear unequivocal proof of guilt justifies the death penalty); T. Eisenberg and M. T. Wells, "Deadly Confusion: Juror Instructions in Capital Cases," 79 CORNELL L. REV. 1, 12; 38, n. 12 (1992) ("There is a 'presumption of death'" creating a risk "that a defendant with a confused jury may receive the death sentence by default . . . . ").

This persistent and widespread confusion should not come as a complete surprise. Few jurors – or judges, for that matter –will be glad to learn that the life of a fellow human being has been consigned to their discretionary moral judgment. Faced with this prospect, it is simpler to believe – even if it is not true – that the law itself provides the answer to the momentous question of life and death. It will seem plausible to many jurors that on so grave a question, the law will have determined in advance what crimes and offenders are to be punished by death. And so many jurors will assume there is a legally-prescribed answer – a mandatory or at least presumed sentence – that the law does not actually provide.

There is substantial reason to believe that this failure to grasp the full extent of each juror's life-and-death power may persist even in the face of clear instructions. But unless such instructions are given – clearly and repeatedly – the risk of juror confusion on this critical point becomes a virtual certainty. For this additional reason, the Court should follow the overwhelming practice of the federal courts throughout the nation in instructing the jury that neither the law itself nor any particular quantum of evidence ever requires that the death penalty be imposed.

The defense expects to submit a "death is not required" instruction in its proposed penalty phase instructions, consistent with § 3593(e), controlling case precedent, and national practice. Given the government's position, as expressed in its motion in limine (R., 249), there should be no serious dispute over whether the Court should give it.

**B. This Court should give an instruction to the jury that "mercy" is an appropriate and legally sufficient reason for any juror not to vote for the death penalty.**

As discussed, in *Caro*, the Fourth Circuit held that the FDPA does not authorize a "mercy" instruction that would advise the jury that it may decline to impose the death penalty even after the jurors unanimously decide that any aggravating factors sufficiently outweigh the mitigating factors to justify a death sentence.[3]

However, the Eighth Circuit, in *United States v. Allen* 247 F.3d 741, 781-782 (8th 2001), which was cited with approval by the Fourth Circuit in *Caro,* stated as follows with respect to mercy in capital jury deliberations:

> Under the FDPA, the jury exercises complete discretion in its determination of whether the aggravating factors outweigh the mitigating factors. The jury was informed that whether or not the circumstances justify a sentence of death was a decision left entirely to them. **Mercy is not precluded from entering into the balance of whether the aggravating circumstances outweigh the mitigating circumstances.** The FDPA merely precludes the jurors from arbitrarily disregarding its unanimous determination that a sentence of death is justified. *See Johnson v. Texas*, 509 U.S. 350, 371-72, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993) (explaining that " 'it would be very difficult to reconcile a rule allowing the fate of a defendant to turn on the vagaries of particular jurors' emotional sensitivities with our longstanding recognition that, above all, capital sentencing must be reliable, accurate, and nonarbitrary' ") (*quoting Saffle v. Parks*, 494 U.S. 484,

---

[3] The defendant's proposed "mercy" instruction in *Caro,* that was refused by the district court, was as follows: "[W]hatever findings you make with respect to the aggravating and mitigating factors, you are never required to impose a sentence of death. For example, there may be something about this case or about Carlos David Caro that one or more of you are not able to identify as a special mitigating factor, but that nevertheless creates a reasonable doubt about the need for Carlos David Caro's death. In such a case, the jury should render a decision against a death sentence. Moreover, even when a sentence of death is fully supported by the evidence, Congress has nevertheless given each of you the discretion to temper justice with mercy. Any one of you is free to decide that a death sentence should not be imposed in this case for any reason that you see fit. You will not have to explain the reason. Indeed, I am specifically required by law to advise you that you have this broad discretion." 597 F.3d at 631.

493, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990)); *Saffle*, 494 U.S. at 493, 110 S.Ct. 1257 (stating that the government "must not cut off full and fair consideration of mitigating evidence; but it need not grant the jury the choice to make the sentencing decision according to its own whims or caprice"). Congress is free to pass a statute which confines arguments of mercy to the jury's consideration of mitigating circumstances and in its final determination of whether the aggravating factors "sufficiently outweigh" the mitigating factors. **We also note that Allen was not prohibited from urging the jury to be merciful in its deliberations and in its consideration of asserted mitigating factors**. The district court stated as follows:

**There will be no ruling by the Court that mercy is a factor that cannot be considered.** Certainly jury nullification cannot be argued nor any argument permitted beyond a statutory scheme. **So there's no doubt about it, the defense will not be precluded from arguing that the jury may be merciful in its deliberations.** (Trial Tr., Vol. XIX at 22-23.)

For these reasons, we conclude that the instructions given in this case adequately state the law and that the district court did not abuse its discretion by rejecting Allen's proposed mercy instruction.

247 F.3d at 781-782.

Therefore, contrary to the government's assertions in its motion to preclude a "mercy" instruction, there is a substantial body of death penalty law holding that "mercy" is a relevant and, indeed, a crucial consideration for a capital jury, and that prosecutorial argument or instructions that eliminate this factor from the jury's sentencing determination constitutes reversible error.

Indeed, federal law clearly holds that the Constitution prohibits imposition of the death penalty without adequate consideration of factors which might evoke mercy. *California v. Brown*, 479 U.S. 538, 554, 107 S.Ct. 837, 846, 93 L.Ed.2d 934 (1987). "Consideration of such evidence is a 'constitutionally indispensable part of the process

of inflicting the penalty of death." (quoting *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976). The Supreme Court has consistently held that "the sentencer may not refuse to consider or be precluded from considering 'any relevant mitigating evidence.' " *Skipper v. South Carolina*, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986); *Hitchcock v. Dugger*, 481 U.S. 393, 398-99, 107 S.Ct. 1821, 1824-25, 95 L.Ed.2d 347 (1987).

In *Morgan v. Illinois*, 504 U.S. 719 (1992), even the late Justice Scalia acknowledged that the Supreme Court's jurisprudence required mercy as a necessary consideration for a capital jury. There, Justice Scalia, writing in dissent, and lamenting the state of the law, nonetheless acknowledged: "Sixteen years ago, this Court decreed -- by a sheer act of will, with no pretense of foundation in constitutional text or American tradition -- that the People (as in We, the People) cannot decree the death penalty, absolutely and categorically, for any criminal act, even (presumably) genocide; the jury must always be given the option of extending mercy." (citing *Woodson*, 428 U.S. at 303-305).

Other cases have also recognized the importance of mercy in a capital case. *See Nelson v. Nagle*, 995 F.2d 1549 (11th Cir. 1993) (granting relief because prosecution's reading during closing sentencing argument of portion of a state case discouraging mercy rendered penalty phase of trial fundamentally unfair); *Wilson v. Kemp*, 777 F.2d 621, 624 (11th Cir. 1985) (prosecutor's suggestion "that a sense of mercy should not dissuade one from punishing criminals to the maximum extent possible ... is fundamentally opposed to current death penalty jurisprudence"); *Drake v. Kemp*, 762

9

F.2d 1449, 1460 (11th Cir. 1985) ("the suggestion that mercy is inappropriate was not only a misrepresentation of the law, but it withdrew from the jury one of the most central sentencing considerations, the one most likely to tilt the decision in favor of life"); *Buttrum v. Black*, 721 F. Supp. 1268, 1318 (N.D. Ga. 1989), aff'd, 908 F.2d 695 (11th Cir. 1990) (reversible error where jury led to believe "that the concept of mercy--the most significant factor which might point toward a choice of life imprisonment--is illegitimate"); *United States v. Thomas Steven Carter*, No. 10-CR-351 (W.D.La.)(special verdict form given in FDPA case which listed, as one of 106 mitigating factors, "Thomas Steven Sanders is deserving of mercy." (R.330, p. 16).

And finally, in *United States v. Duong*, 01-CR-20154 (N.D.Cal.), District Judge Jeremy Fogle gave the following instruction to the jury in a FDPA case that is consistent with controlling precedent discussed above:

> Even if you have unanimously found that the Aggravating Factors sufficiently outweigh the Mitigating Factors that a death sentence is justified in one or more of the murders, each of you must still determine whether to in fact impose that sentence. **No juror is ever required by the law to impose a death sentence.** The decision is yours as individuals to make. Any one of you may decline to impose a death sentence, even where your findings make imposition of the death penalty possible. You do not have to give a reason for your decision. **You may decline to impose a death sentence because of mercy or for any reason you deem to be relevant**. It is an individual and personal decision that is each juror's alone. The law has given each of you the discretion to temper justice with mercy.
>
> A death sentence shall be imposed only if it is the unanimous decision of the jury. That is, only if all the jurors make the individual decision that death is in fact the appropriate sentence.

(R., #1488, p. 15)(emphasis added).

In conclusion, the defense intends to submit a proposed "mercy" instruction with supporting memoranda when directed by the Court to submit all of its penalty phase instructions. Until then, this Court should deny the government's motion to preclude a "mercy" instruction to the jury as being contrary to controlling legal precedent discussed herein.

Respectfully submitted,

BRENDT A. CHRISTENSEN, Defendant

By: /s/Elisabeth R. Pollock  /s/ George Taseff
Assistant Federal Public Defender   Assistant Federal Public Defender
300 West Main Street   401 Main Street, Suite 1500
Urbana, IL 61801   Peoria, IL 61602
Phone: 217-373-0666   Phone: 309-671-7891
FAX:   217-373-0667   Fax:    309-671-7898
Email: Elisabeth_Pollock@fd.org   Email: George_Taseff@fd.org


/s/ Robert Tucker   /s/ Julie Brain
Robert L. Tucker, Esq.   Julie Brain, Esq.
7114 Washington Ave   916 South 2nd Street
St. Louis, MO 63130   Philadelphia, PA 19147
Phone: 703-527-1622   Phone: 267-639-0417
Email: roberttuckerlaw@gmail.com   Email: juliebrain1@yahoo.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorneys Bryan D. Freres and Eugene L. Miller and Trial Attorney James B. Nelson. A copy was also mailed to the defendant.

/s/Elisabeth R. Pollock  
Assistant Federal Public Defender  
300 West Main Street  
Urbana, IL 61801  
Phone: 217-373-0666  
FAX:   217-373-0667  
Email: Elisabeth_Pollock@fd.org

## DECLARATION OF KEVIN McNALLY
## REGARDING THE JURY BEING INSTRUCTED
## THAT A DEATH SENTENCE IS NEVER REQUIRED

1. I currently serve as the Director of the Federal Death Penalty Resource Counsel Project, assisting court-appointed and defender attorneys charged with the defense of capital cases in the federal courts. I have served as Resource Counsel since the inception of the Resource Counsel Project (RCP) in January, 1992. The Project is funded and administered under the Criminal Justice Act by the Defender Services Office of the Administrative Office of the United States Courts.

2. My responsibilities as federal resource counsel include the monitoring of all federal capital prosecutions throughout the United States in order to assist in the delivery of adequate defense services to indigent capital defendants in such cases. This effort includes the collection of data on the initiation and prosecution of federal capital cases.[1]

---

[1] The work of the Federal Death Penalty Resource Counsel Project is described in a report prepared by the Subcommittee on Federal Death Penalty Cases, Committee on Defender Services, Judicial Conference of the United States, FEDERAL DEATH PENALTY CASES: RECOMMENDATIONS CONCERNING THE COST AND QUALITY OF DEFENSE REPRESENTATION (May, 1998), at 28-30. www.uscourts.gov/file/originalspencerreportpdf. The Subcommittee report "urges the judiciary and counsel to maximize the benefits of the Federal Death Penalty Resource Counsel Project ..., which has become essential to the delivery of high quality, cost-effective representation in death penalty cases ...." *Id.* at 50.

An update to the Report stated: "Many judges and defense counsel spoke with appreciation and admiration about the work of Resource Counsel. Judges

# EXHIBIT 1

3. In order to carry out the duties entrusted to me, I maintain a comprehensive list of federal death penalty prosecutions and information about these cases. I accomplish this by internet news searches, by reviewing dockets and by downloading and obtaining indictments, pleadings of substance, notices of intent to seek or not seek the death penalty, orders and opinions by the District Court and by telephonic or in-person interviews with defense counsel or consultation with chambers. The Project's information regarding federal capital prosecutions has been relied upon by the Administrative Office of the United States Courts, by the Federal Judicial Center and by various federal district courts.

4. Federal capital juries have been instructed that the death penalty is never required in most federal capital trials, including the following:

**LIFE SENTENCES:** 1) *United States v. Phouc Nguyen* (D. KS No. 94-CR-10128-01); 2) *United States v. Terry Nichols* (W.D. OK CR No. M-95-98-H); 3) *United States v. Mohamed Rashed Al'Owhali and Khalfan Khamis Mohamed* (S.D. NY No. 98-CR-

---

emphasized their assistance in recruiting and recommending counsel for appointments and their availability to consult on matters relating to the defense, including case budgeting. Defense counsel found their knowledge, national perspective, and case-specific assistance invaluable."
http://www.uscourts.gov/FederalCourts/AppointmentOfCounsel/Publications/UpdateFederalDeathPenaltyCases.aspx

2

1023); 4) *United States v. Willis Haynes* (D. MD No. PJM-98-CR-0502); 5) *United States v. Kristin Gilbert* (D. MA No. 98-CR-30044-MAP); 6) *United States v. Lemond Garrett* (S.D. GA No. 4:99-CR-133); 7) *United States v. Jose Denis* (S.D. FL No. 99-CR-00714 (King)); 8) *United States v. Joseph Minerd* (W.D. PA No. 99-CR-215); 9) *United States v. Coleman Johnson* (W.D. VA No. 3:00-CR-00026); 10) *United States v. Rudy and William Sablan* (D. CO No. 00-CR-531); 11) *United States v. Samuel Stephen Ealy* (W.D. VA No. 00-CR-104-ALL); 12) *United States v. L.J. Britt* (N.D. TX No. 00-CR-260); 13) *United States v. Alan Quinones and Diego Rodriguez* (S.D. NY No. 00-CR-0761 (JSR)); 14) *United States v. Martin Aguilar and Gilberto Caraballo* (E.D. NY No. 01-CR-1367); 15) *United States v. Aaron Haynes* (W.D. TN No. 01-CR-20247-ALL); 16) *United States v. Andre Cooper and Jamain Williams* (E.D. PA No. 01-CR-512); 17) *United States v. Johnny Davis* (E.D. LA No. 01-CR-282-ALL); 18) *United States v. Michael O'Driscoll* (M.D. PA No. 4:01-CR-277) (2002 WL 32063824*3); 19) *United States v. Emile Dixon* (E.D. NY No. 01-CR-389-ALL); 20) *United States v. Jay Lentz* (E.D. VA No. 01-CR-150-ALL); 21) *United States v. Anh The Duong* (N.D. CA No. 5:01-CR-20154 JF); 22) *United States v. Luis Gonzalez-Lauzan* (S.D. FL No. 02-CR-20572-ALL); 23) *United States v. Lorenzo Catalan-Roman and Hernaldo Medina Villegas* (D. PR No. 3:02-CR-117-ALL); 24) *United States v. Keon Moses and Michael Lafayette Taylor* (D. MD No.

02-CR-410-ALL); 25) *United States v. Petro Krylov* (C.D. CA No. 02-CR-220 (A)-NM); 26) *United States v. Carlos L. Ayala-Lopez* (D. PR No. 03-CR-55); 27) and 28) *United States v. Barry Byron Mills, Tyler Bingham, Wayne Bridgewater and Henry Michael Houston* (C.D. CA No. 02-CR-00938-GHK); 29) *United States v. John Mayhew* (S.D. OH No. 2:03-CR-165); 30) *United States v. William Baskerville* (D. NJ No. 03-CR-836); 31) *United States v. Demetrius Hargrove* (D. KS No. 2:03-CR-20192-CM-DJW-ALL); 32) *United States v. Shawn Arnette Breeden and Michael Anthony Carpenter* (W.D. VA No. 03-CR-13-ALL); 33) *United States v. Kenneth Wilk* (SD. FL No. 04-CR-60216); 34) *United States v. Kenneth McGriff* (E.D. NY No. 04-CR-966 (ERK)); 35) *United States v. Peter Jordan* (E.D. VA No. 04-CR-58-ALL); 36) *United States v. Khalid Barnes* (S.D. NY No. 7:04-CR-00186-SCR); 37) *United States v. Brent Simmons* (W.D. VA No. 5:04-CR-00014-SGW-ALL); 38) *United States v. James McTier* (E.D. NY No. 05-CR-401); 39) *United States v. Vincent Basciano* (E.D. NY No. 05-CR-0060); 40) *United States v. Larry Lujan* (D. NM No. 05-CR-924); 41) *United States v. Dennis Cyrus* (N.D. CA No. 05-CR-00324-MMC); 42) *United States v. Lashaun Casey* (D. PR No. 3:05-CR-0277-JAG); 43) *United States v. Antonio Argueta* (D. MD No. 8:05-CR-00393-DKC); 44) *United States v. Timothy O'Reilly* (E.D. MI No. 05-CR-80025); 45) *United States v. Edison Burgos-Montes* (D. PR No. 06-009-JAG); 46) *United States v. Donna Moonda* (N.D. OH No.

1:06-CR-00395-DDD); 47) *United States v. Steven Green* (W.D. KY No. 5:06-CR-00019-TBR); 48) *United States v. Naeem Williams* (D. HI No. 1:06-CR-00079-DAE); 49) *United States v. Jermaine Julian* (M.D. FL No. 8:07-CR-9-T); 50) *United States v. Maurice Phillips* (E.D. PA No. 2:07-CR-00549-JCJ); 51) *United States v. Steven Northington* (E.D. PA No. 2:07-CR-00550-RBS); 52) *United States v. Patrick Albert Byers, Jr.* (D. MD No. 08-056); 53) *United States v. Brian Richardson* (N.D. GA No. 1:08-CR-139); 54) *United States v. Alexis Candelario-Santana* (D. PR No. 3:09-CR-00427-JAF); 55) *United States v. John Charles McCluskey* (D. NM No. 1:10-CR-02734); 56) *United States v. Juan Briseno* (N.D. IN No. 2:11-CR-077) and 57) *United States v. Ahmed Muse Salad, Abukar Osman Beyle and Shani Nurani Shiekh Abrar* (E.D. VA No. 2:11-CR-34).

**DEATH SENTENCES:** 58) *United States v. Bountaem Chanthadara* (D. KS No. 94-CR-10128-01); 59) *United States v. Len Davis and Paul Hardy* (E.D. LA No. 94-CR-381); 60) and 61) *United States v. Orlando Hall and Bruce Webster* (N.D. TX No. 4:94-CR-121-Y); 62) *United States v. Louis Jones* (N.D. TX No. 6:95-CR-0015-C); 63) *United States v. Anthony Battle* (N.D. GA No. 1:95-CR-528); 64) *United States v. Timothy McVeigh* (W.D. OK CR No. M-95-98-H); 65) *United States v. David Paul Hammer* (M.D. PA No. 4:96-CR-68-M) (1997 WL 312609 *43); 66) *United States v. Darryl Alamont Johnson* (N.D. IL CR No. 96 CR 379); 67) *United States v. Aquila Marcivicci Barnette*

5

(W.D. NC No. 3:97-CR-23-V); 68) *United States v. Dustin Higgs* (D. MD No. PJM-98-CR-0502); 69) *United States v. Donald Fell* (D. VT No. 00-CR-66-ALL); 70) *United States v. Julius Robinson* (N.D. TX No. 00-CR-260); 71) *United States v. Sherman Lamont Fields* (W.D. TX No. 01-CR-164); 72) and 73) *United States v. Dustin Honken and Angela Johnson* (N.D. IA No. 3:01-CR-03047-MWB); 74) *United States v. Gary Sampson* (D. MA No. 01-CR-10384-ALL); 75) *United States v. William Emmett LeCroy* (N.D. GA No. 02-CR-38-ALL); 76) and 77) *United States v. Chadrick Fulks and Branden Basham* (D. SC No. 02-CR-992-ALL); 78) *United States v. Jurijus Kadamovas and Iouri Mikhel* (C.D. CA No. 02-CR-220 (A)-NM); 79) *United States v. Meier Jason Brown* (S.D. GA No. 02-CR-53); 80) *United States v. Ronald Mikos* (N.D. IL No. 02-CR-137); 81) *United States v. Kenneth Eugene Barrett* (E.D. OK No. 04-100-CR-S); 82) *United States v. John Johnson* (E.D. LA No. 2:04-CR-00017-HGB-SS); 83) *United States v. Rejon Taylor* (E.D. TN No. 1:04-CR-00160-1); 84) *United States v. Ronell Wilson* (E.D. NY No. 1:04-CR-01016-NGG) (both trials); 85) and 86) *United States v. George Lecco and Valeri Friend* (S.D. WV No. 2:05-CR-00107); 87) *United States v. Ricardo Sanchez and Danny Troya* (S.D. FL No. 06:80171-CR-HURLEY/VITUNAC(s)(s)); 88) *United States v. Azibo Aquart* (D. CT No. 3:06-CR-160 (PCD)); *United States v. Kaboni Savage* (E.D. PA No. 2:07-CR-00550-RBS); 89) *United States v. Joseph Ebron* (E.D. TX No. 1:07-CR-142);

90) *United States v. David Runyon* (E.D. VA No. 4:08-CR-16); 91) *United States v. Alejandro Enrique Umana* (W.D. NC No. 3:08-CR-134-RJC); 92) *United States v. Mark Snarr and Edgar Garcia* (E.D. TX No. 1:09-CR-00015-MAC-KFG ALL); 93) *United States v. Wesley Paul Coonce, Jr. and Charles Michael Hall* (W.D. MO No. 10-03029-02/02-CR-S-GAF); 94) *United States v. Thomas Steven Sanders* (W.D. LA No. 1:10-CR-00351); 95) *United States v. Jorge Avila Torrez* (E.D. VA No. 1:11-CR-115) and 96) *United States v. Dzhokar Tsarnaev* (D. MA No. 1:13-CR-10200-GAO).

5. The information detailed herein is maintained in the ordinary course of business of the Federal Death Penalty Resource Counsel Project and is accurate to the best of my knowledge, ability and belief.

I declare under the penalty of perjury under the laws of the United States of American, 28 U.S.C. §1746, that the foregoing is true and correct.

Executed this 16th day of September, 2016.

/s/ Kevin McNally