IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 17-CR-20037 |
| | ) |
| BRENDT A. CHRISTENSEN, | ) |
| | ) |
| Defendant. | ) |

**THE UNITED STATES OF AMERICA'S SEALED REPLY TO THE
DEFENDANT'S SEALED RESPONSE TO ITS MOTION *IN LIMINE*
TO EXCLUDE EVIDENCE OR ARGUMENT OF PLEA NEGOTIATIONS**

NOW COMES the United States of America, by John C. Milhiser, United States Attorney for the Central District of Illinois, Eugene L. Miller and Bryan D. Freres, Assistant United States Attorneys, and Department of Justice Trial Attorney James B. Nelson, and pursuant to the Court's Sealed Order of March 20, 2019, (R.283) hereby replies to the Defendant's Sealed Response (R.278) to its Motion *In Limine* to Exclude Evidence or Argument of Plea Negotiations. (R.251)

## INTRODUCTION

On February 15, 2019, the United States requested that this Court exclude any questioning, evidence, or arguments related to plea negotiations from the guilt or penalty phases of the trial. The United States' sealed motion did not detail any plea negotiations between the parties, in consideration of the limitations placed on admitting such evidence pursuant to Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, as well as concerns with improperly

involving the Court in plea discussions in violation of Rule 11(c)(1) of the Federal Rules of Criminal Procedure.

In his reply, the defendant asserted that:

> Mr. Christensen made his offer to plead guilty and accept a sentence of life without possibility of release within six months of his arrest, before the Department of Justice had even authorized the United States Attorney to seek the death penalty against him. . . . In his proposed plea agreement, he stipulated that he would assist and fully cooperate with the United States in its efforts to recover the bodily remains of Ms. Zhang and that he would provide complete, truthful and verifiable information regarding the location of those remains.

(R.278 at 5)

Therefore, the Court has directed the United States to file a reply informing the Court whether (1) the defendant offered to plead guilty and assist the United States in locating the victim's remains in exchange for a sentence of life; and (2) if so, when the offer was made. The short answer is that in December of 2017, after becoming aware of the strength of the government's case, and while the Capital Case Committee was considering whether to recommend that the Attorney General seek a sentence of death, the defendant's attorneys took part in plea discussions wherein they sought to guarantee the defendant the minimum sentence. Defense counsel, however, refused to accept the condition that the plea agreement be made contingent on recovery of the victim's remains. In context, the totality of the circumstances demonstrate that these negotiations do not demonstrate any acceptance of responsibility, as claimed by the defendant.

## HISTORY OF PLEA NEGOTIATIONS

Yingying Zhang disappeared on June 9, 2017. Despite numerous efforts to locate her in the following days and weeks, she was not found. On June 15, 2017, the FBI interviewed the defendant, and agents told him "Brendt, I – I need to know why [Yingying's] getting into your car and I need to know where she went. If we could help her, we need it done now because we – we need to move on from this. It's – it's been like six days now." The defendant responded, "I don't know what to say. Sorry." He then lied to the agents and claimed he dropped the victim off a few blocks from picking her up. The defendant repeated his lie to agents on June 17.

On June 30, 2017, the FBI arrested the defendant for her kidnapping after he made recorded admissions that he had murdered her, that she would never be found, and that her family would return to China without her. He did not state on the recording, however, what he did with her remains. On July 3, 2017, the defendant first appeared in court with retained counsel. After that initial appearance, undersigned counsel approached retained defense counsel and explained their belief that the Attorney General might credit the defendant's willingness to provide information about the location of the victim's remains in his determination of whether to authorize seeking a sentence of death. Retained defense counsel met with undersigned counsel later that same day to inform them that he had discussed this with the defendant, and that the defendant denied his guilt and would not be providing any information.

A kidnapping indictment was filed on July 12, 2017. A superseding indictment charging kidnapping resulting in death was filed on October 3, 2017. At that time, the jury trial was scheduled to begin in February of 2018.

On October 24, 2017, the defendant's attorneys filed a motion to continue the case to give them more time to present a mitigation case to the Capital Case Committee in an attempt to convince the Attorney General not to seek the death penalty. In early November, the prosecution informed the defense that the Committee was planning to meet on December 4, 2017, to consider the defendant's case. Around that time, the victim's family also provided input to the Committee, including the following:

> We continue to desire that we may return Yingying to China. If there is anyway in the review process to obtain the necessary information to permit the decent and respectful return of her remains to achieve a peaceful end for our family's nightmare, we would earnestly ask that this be explored with the Defendant and his lawyers. In accordance with Chinese culture and tradition, we hope to bring her home for a dignified burial where her spirit may be at rest and we may have peace.

On November 30, 2017, the defense wrote a letter to the Committee stating, "[W]e appreciate the strength of the government's case and firmly believe that Ms. Zhang's family and both parties would be well-served by an early resolution. . . . [O]ur goal is to be in a position within three to four weeks to offer a formal resolution of this case."

On December 5, 2017, the United States notified the defense that the DOJ Capital Review Committee had completed their review, which would be forwarded to the Attorney General for further review. Therefore, on December 6, 2017, in accordance with the family's wishes, the United States forwarded to defense counsel a draft of a

conditional plea agreement, subject to the Attorney General's approval. In relevant part, the conditional plea agreement included the following paragraphs:

> The family of the victim of this crime has requested that the United States enter into this plea agreement for a sentence of life imprisonment contingent on locating and recovering their daughter's identifiable bodily remains. Locating and recovering their daughter's remains is of paramount interest to the victim's family to bring closure to the loss of their daughter and to return her remains to China.
>
> The defendant agrees to assist and fully cooperate with the United States, including law enforcement agents, to locate and recover all of the bodily remains of Yingying Zhang, the victim in this case. . . .
>
> This plea agreement is completely contingent upon the United States successfully locating and recovering all of the victim's identifiable bodily remains through the defendant's assistance and cooperation. If the efforts of the United States, with defendant's assistance, to locate and recover all of the victim's identifiable bodily remains proves to be unsuccessful, the United States has the right, in its sole discretion, to void this plea agreement.

Prior to the United States forwarding the conditional plea agreement to the defense on December 6, 2017, defense counsel had not suggested the terms of any "formal resolution," nor had they provided any information regarding the location of the victim's remains.

On December 13, 2017, defense counsel responded to the conditional plea agreement by suggesting various modifications. Relevant here, the defendant proposed the following modification to the third quoted paragraph above:

> This plea agreement is completely contingent upon the defendant providing complete, truthful, and verifiable information concerning the location of Ms. Zhang's remains. If the United States, in its sole discretion, determines that the defendant has not provided complete and truthful information concerning the location of Ms. Zhang's remains the United States has the right, in its sole discretion, to void this plea agreement.

5

The next day, December 14, 2017, the United States attempted to confirm defense counsel's position via e-mail:

> Thank you for sending us the suggested revisions. As we've discussed, it is very important to us to consult with the victim's family prior to submitting any conditional plea agreement to the Attorney General. Out of sensitivity to the family, however, I am sure you can appreciate that we want to minimize their burden during that consultation. To that end, we want to ensure that the modified language you've suggested regarding locating the victim's remains . . . is your client's last and best offer. As we read that language, you believe that it is unlikely that her remains will be recovered with the defendant's cooperation and assistance. We want to make sure we fully understand the revisions and the agreement so we can fairly and honestly present the agreement to the family.

That same day, defense counsel verbally confirmed that the United States correctly understood the position of defense counsel. The United States thereafter provided this information to the victim's family, which provided (through counsel) their wishes regarding the defendant's sentence. The prosecutors then forwarded this information and the family's wishes to the Capital Case Section for inclusion in its memorandum to the Attorney General. On January 15, 2018, defense counsel wrote a letter directly to the Capital Case Section stating that the defendant would agree to enter a plea of guilty in exchange for a sentence of life without parole. On January 18, 2018, the Attorney General directed the United States Attorney's Office for the Central District of Illinois to seek a sentence of death in this case.

To date, the victim's remains have not been recovered.

## REPLY

Based on the foregoing, the United States submits that in the days, weeks, and months following the kidnapping and murder of Yingying Zhang, the defendant

denied responsibility for his crime and demonstrated lack of remorse. Neither the defendant, nor his counsel, discussed pleading guilty or assisting in locating the victim's remains until after the Capital Case Committee began reviewing the case for the possibility of seeking a sentence of death, and after his attorneys were aware of the strength of the government's case. In fact, no such formal discussions took place until the United States forwarded a plea agreement to defense counsel at the request of the victim's family. Even then, his attorneys rejected a plea contingency that required successful recovery of the victim's identifiable bodily remains.

The defendant, naturally, characterizes this in his favor by saying he was willing to plead guilty, but his "offer" was rejected. (R.278 at 4) A more correct characterization is that the defendant rejected the conditional plea agreement drafted by the United States, but then suggested various modifications, which the Attorney General rejected.

I. **Evidence of the Defendant's Alleged Willingness to Plead Guilty.**

The defendant argues in his response that evidence of his willingness to plead guilty should be admissible during the guilt phase. The Unites States recognizes that the defendant himself has an absolute right to testify during the guilt and/or penalty phases, and that he may testify that he was willing to plead guilty, as long as he is subject to cross-examination regarding such a claim[1] and the United States is entitled to

---

[1] Such cross-examination may include why, if the defendant claimed he was willing to plead guilty, he did not actually do so. In this respect, he should not be allowed to claim that his attorneys would not permit him to do so or that he relied on their advice in proceeding to trial. The decision whether to plead guilty or not guilty belongs to the defendant, and the defendant alone. *McCoy v. Louisiana*, 138 S. Ct. 1500, 1508 (2018) (reaffirming that the decision whether or not to plead guilty in a capital case belongs solely to the defendant, not his attorney). Any claim

7

introduce evidence and argument in rebuttal. *See United States v. Fell*, 531 F.3d 197, 221 (2d Cir. 2008) (holding that, where the defendant put his offer to plead guilty into issue, the United States was entitled to put that evidence in context). Thus, the United States does not object to the defendant's request to admit such evidence to the extent he intends to introduce it through his own testimony.

Any attempt to introduce such evidence in any other manner, such as through a proffer, questioning, or argument of his defense attorneys, however, would be improper and should be precluded. First, presentation of such evidence, except through the testimony of the defendant, would be improper. The defendant himself did not personally engage with any agents of or attorneys for the government in any plea negotiations or make any proffer of information; moreover, a plea agreement was never signed, nor did the defendant actually plead guilty. Thus, from the perspective of the United States, all that the plea negotiations themselves demonstrate is that the defendant's attorneys were willing to explore a plea of guilty under the terms they proposed.

It is a giant evidentiary leap to suggest that unsuccessful plea negotiations by the defendant's attorneys demonstrated "acceptance of responsibility" by the defendant based on his alleged willingness to plead guilty. To bridge that gap (absent the defendant's own testimony) will require evidence that can only come from the defendant's attorneys. Since the United States should be allowed to challenge such a

---

to the contrary during the trial would be an incorrect statement of law, unfairly prejudicial, and misleading to the jury.

claim, the evidence must come from sworn testimony and be subject to cross-examination. Therefore, those attorneys would become trial witnesses. Moreover, these attorney witnesses could not rely on alleged statements made to them by the defendant to establish his acceptance of responsibility without waiving the attorney-client privilege related to those discussions and disclosing evidence of those discussions to the United States.

Second, in whatever manner such evidence of acceptance of responsibility is presented, the United States must be allowed to address or rebut it. Obviously, this would include evidence that the defendant's attorneys refused to accept the original plea agreement that made the plea contingent on the successful recovery of the victim's remains, which is of paramount interest to the victim's family. Less obviously, this would include introduction of other evidence inconsistent with the defendant's acceptance of responsibility, such as the defendant's attitude and demeanor during pretrial court proceedings and his presentation of frivolous arguments and false testimony during his pretrial proceedings.

In his response, the defendant claims there is no difference between pleading guilty and proceeding to trial, and then, appears to contradict himself. On one hand, he claims there is "no meaningful difference between pleading guilty unconditionally and proceeding with an uncontested culpability phase, and the government should be precluded from arguing to the contrary." (R.277 at n.2) On the other hand, he claims that if he concedes "his guilt at the culpability phase . . . it is inevitable jurors would wonder why they are nevertheless being compelled to sit through the presentation of

9

the government's case for guilt." (R.277 at 2) Thus, the defendant's own response acknowledges there is a very meaningful difference between pleading guilty and exercising his right to trial. The United States must and should be allowed to rebut any illogical claim by the defendant (if allowed by the Court) that proceeding to trial, challenging the government's evidence, requiring the jury to render a verdict, and preserving his right to appeal the verdict, is equivalent to the defendant simply pleading guilty. To rule otherwise would be to allow the defendant to make a strategic decision to proceed to trial, rather than plead guilty,[2] but then unfairly shelter him from the natural consequences that flow from that strategic decision.

## II.     The Timing and Nature of the Discussions Do Not Favor Admissibility.

Even assuming evidence of plea discussions might be admissible in some cases, it should not be admitted under the circumstances here. The defendant argues that he "offered" to plea guilty "early on in the prosecution and not at the last minute." (R.278 at 4) The United States disagrees. The defendant did not present the conditions under which he would plead guilty to the United States until December 13, 2017. This was

---

[2] In fact, one of the defendant's defense attorneys has advised that it is good capital litigation strategy to proceed to trial on the guilt phase to allow the jury to express and relieve its "anger" at the defendant by returning a guilty verdict, rather than to allow the jury to do so in the first instance during the penalty phase. Matthew Rubenstien, *Overview of the Colorado Method of Capital Voir Dire, available at* http://www.nhd.uscourts.gov/pdf/FPI/Overview%20CO%20Method%20Capital%20Voir%20Dire.pdf. ("Although most capital cases remain penalty phase cases, presenting a reasoned and vigorous defense theory at the guilt-innocence phase is useful because it permits jurors to express (and relieve) their anger at the defendant prior to the start of the penalty phase, and it can empower life-prone jurors to extract concessions from other jurors regarding a sentencing phase life verdict in exchange for a guilty vote in the first phase."). Thus, defense counsel's own writings directly contradict the defendant's claim that there is no meaningful difference between pleading guilty and proceeding to trial.

more than six months after his alleged crime, after the Capital Case Committee had met to discuss whether to recommend a sentence of death, and in the face of a looming February of 2018 trial date. Defense counsel noted in their November letter to the Capital Case Section that they appreciated the strength of the government's case. Thus, the defendant's "offer" is more properly viewed as an attempt to avoid a death sentence in the face of overwhelming evidence of guilt than a genuine attempt to take responsibility and avoid further anguish to the victim's family.

The defendant also claims the nature of the defendant's "offer" increases its mitigating value. Again, the United States disagrees. First of all, this case is distinguishable from the cases cited by the defendant that discuss only admitting a defendant's offer to plead guilty and not the government's response. Here, the United States actually made the first formal conditional offer, which the defendant rejected in favor of his own modifications. Thus, it would be impossible to convey the nature of the defendant's "offer" to the jury, without discussing the terms he first rejected.

More importantly, the defendant was aware from the beginning of the case of the victim's family's desire to locate her remains and return them to China. Nonetheless, he refused to agree to a contingency that those remains be successfully located. This makes the defendant's "offer" of questionable relevance to acceptance of responsibility, and if presented into evidence, the United States should be permitted to argue the nature of his position as an aggravating factor.

### III. The Weight of Federal Authority Is Against the Defendant's Position.

The defendant argues in his response that his attorney's unconsummated negotiations requesting that he be allowed to plead guilty to the minimum statutory sentence constitute relevant evidence of his acceptance of responsibility. (R.278 at 3) The United States concedes that the actual entry of a guilty plea prior to trial "combined with truthfully admitting the conduct comprising the offense of conviction" may constitute evidence of acceptance of responsibility, if the evidence is not "outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." *See* U.S.S.G. § 3E1.1, comment. (n.3). Simply engaging in plea negotiations, however, without actually pleading guilty, is not evidence of acceptance of responsibility. After all, a defendant always has the right to plead guilty, and the United States could not and did not prevent him from doing so.

In its original motion, the United States cited multiple federal circuit courts that have rejected the argument advanced by the defendant. *See, e.g., Wright v. Bell*, 619 F.3d 586, 598-601 (6th Cir. 2010) (capital defendant not entitled to raise plea negotiations during the penalty phase); *United States v. Caro*, 597 F.3d 608, 634-35 (4th Cir. 2010) (holding that "[b]ecause Caro's letter was calculated to persuade the government not to seek the death penalty, rather than expressing unqualified remorse, we cannot agree with Caro's argument that the letter shows acceptance of responsibility"); *Owens v. Guida*, 549 F.3d 399 (6th Cir. 2008) (capital defendant could not use failed plea negotiations in support of mitigating factor that he accepted responsibility for the crime, because he rejected the government's plea offer); *United States v. Fell*, 531 F.3d 197, 217

12

(2d Cir. 2008) (affirming district court's order excluding a draft agreement and statements made during pretrial negotiations from the penalty phase of capital case). The United States also cited a recent unpublished federal district court case that reached the same conclusion. *United States v. McCluskey*, Case No. 10-2734, (Docket 1060, at 25-29) (D.N.M. Jun. 23, 2013).

The defendant claims these circuit court cases "cannot be correct," and instead, relies on several distinguishable federal district court cases. For example, in *Johnson v. United States*, 860 F. Supp. 2d 663, 900 (N.D. Iowa 2012), the first case cited by the defendant, the court was examining 63 different claims raised on collateral attack by the defendant. One of those claims was that defense counsel was ineffective for not at least *attempting* to introduce the defendant's offer to plead guilty. After examining the law at that time, the district court found "there has been no consensus in the federal courts on the admissibility of evidence of plea negotiations as mitigating evidence in a capital case." *Id.* Nonetheless, it found no prejudice to the defendant because admission of the plea offers would merely "risk a further inference that the offers to plead guilty were just ploys to avoid death sentences, not genuine expressions of remorse or acceptance of responsibility." *Id.* at 905.

The defendant's citation to another *Johnson* case -- *United States v. Johnson*, 713 F. Supp. 2d 595, 612 (E.D. La. 2010) – is even less persuasive. That court did not even address the admissibility of an offer to plead guilty at trial. Instead, it simply noted that "the prosecution and defense stipulated that as of January 2004, Johnson had been willing to plead guilty to a life sentence without the possibility of release." *Id.* Given the

13

stipulation, the district court conducted no analysis of the admissibility of the evidence. *Id.* Two other district court cases cited by the defendant in his response contain no citation. Finally, the United States extensively discussed the *Fell* decisions in its original motion.

The weight of authority, as well as the more logical argument, is that unconsummated conditional plea discussions with a defendant's attorneys do not show acceptance of responsibility or remorse by the defendant himself. To rule otherwise would be to encourage capital defense attorneys in every case to discuss "offers" to plead guilty, regardless of the true intentions of the defendant, to create alleged evidence of acceptance of responsibility and remorse to use in mitigation at the penalty phase.

### III.   Conclusion.

Under these unique circumstances, it is beyond obvious that admitting such information "would authorize a confusing and unproductive inquiry into incomplete" negotiations. *Fell*, 531 F.3d at 219-20. Further, if the defendant is allowed to present such evidence, fairness would require that the United States be allowed to respond to claims that defense counsel's incomplete negotiations demonstrated acceptance of responsibility by the defendant. *See, e.g., Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000) (holding in capital case that "[c]ase law permits comments that are made in response 'to the argument and strategy of defense counsel.'"). Thus, if the defendant attempts to introduce the fact of plea negotiations in mitigation, the United States should be

allowed to present all facts related to those negotiations that are necessary to rebut any confusing, unfair, or misleading inferences.

WHEREFORE, the United States of America respectfully requests this Court to exclude any questioning, evidence, or arguments related to plea negotiations from the guilt or penalty phases of the trial.

Respectfully submitted,

JOHN C. MILHISER
UNITED STATES ATTORNEY

| | |
|---|---|
| s/Eugene L. Miller | s/ James B. Nelson |
| Eugene L. Miller | James B. Nelson |
| Assistant United States Attorney | Trial Attorney |
| 201 S. Vine St., Suite 226 | Capital Case Section |
| Urbana, IL 61802 | United States Department of Justice |
| Phone: 217/373-5875 | 1331 F. Street NW, Room 625 |
| Fax: 217/373-5891 | Washington, DC 20004 |
| eugene.miller@usdoj.gov | Phone: 202/598-2972 |
| | james.nelson@usdoj.gov |

s/Bryan D. Freres
Bryan D. Freres, Bar No. IL 6294791
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone: 217/373-5875
Fax: 217/373-5891
bryan.freres@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

                                              s/Eugene L. Miller
                                              Eugene L. Miller
                                              Assistant United States Attorney
                                              201 S. Vine St., Suite 226
                                              Urbana, IL 61802
                                              Phone: 217/373-5875
                                              Fax: 217/373-5891
                                              eugene.miller@usdoj.gov