IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17-CR-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

### THE UNITED STATES OF AMERICA'S REPLY TO THE DEFENDANT'S RESPONSE TO ITS MOTION TO PRECLUDE THE TESTIMONY OF DR. JONATHAN SORENSEN

NOW COMES the United States of America, by John C. Milhiser, United States Attorney for the Central District of Illinois, Eugene L. Miller and Bryan D. Freres, Assistant United States Attorneys, and Department of Justice Trial Attorney James B. Nelson, and hereby replies to the defendant's response to the United States' motion i*n limine* to preclude the testimony of Dr. Jonathan Sorensen, which the defendant re-characterized as a motion to preclude execution impact evidence or argument. (R.290) (hereinafter "Def.Rsp.").[1]

---

[1] On February 20, 2019, the defendant gave notice of his intent to call Dr. Peter Vos, as well as Dr. Sorensen and another doctor, as an expert. The United States moved this Court to preclude the testimony of those experts. (R. 263, 264, 265) The defendant opposed the United States' motions with regard to the other experts, but not Dr. Vos. (R.289, 290) The United States presumes the defendant does no longer intends to call Dr. Vos, given that he has not opposed the motion to preclude his testimony.

I. **Dr. Sorenson's Proffered Testimony is Based, In Part, on Improper Proportionality Evidence.**

In a response filed on March 18, 2019, the defendant conceded that he was not aware of any "basis in law or fact to present . . . 'proportionality' evidence." (R.274 at 1) In fact, courts have routinely held that the actions of other defendants, and the punishment they received, have no bearing on whether *this* defendant deserves the death penalty for *this* crime. *United States v. Johnson*, 223 F.3d 665, 675 (7th Cir. 2000) (citing *Penry v. Lynaugh*, 492 U.S. 302, 328 (1989); *Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982); *Lockett v. Ohio*, 438 U.S. 586, 604 n. 12 (1978)); *see also United States v. Taylor*, 583 F. Supp.2d 923, 933-36 (E.D. Tenn. 2008); *United States v. Sampson*, 335 F. Supp. 2d 166, 198 (D. Mass. 2004).

Despite this, it appears that Dr. Sorenson's testimony will be based on actuarial data regarding the post-conviction behavior of other inmates who committed other crimes in other jurisdictions. Their only relationship to the defendant is an alleged similarity in "age, education, lack of prior violent history, or criminal record." (Def.Rsp. at 12) Dr. Sorenson will classify federal inmates into groups based on their offense conduct and testify that, as compared to other federal inmates, the defendant presents less of a risk of future danger, and therefore, is less deserving of a death sentence. Although the defendant characterizes this as mitigation evidence, it is based on an improper proportionality analysis. *See Penry*, 492 U.S. at 328; *Eddings*, 455 U.S. at 110; *Lockett*, 438 U.S. at 604 n. 12; *Johnson*, 223 F.3d at 675; *Taylor*, 583 F. Supp. 2d at 933-36; *Sampson*, 335 F. Supp. 2d at 198.

## II. Dr. Sorenson's Proffered Testimony, Including the Bureau of Prisons' Ability to Control Inmates, Is Not Proper Mitigation Evidence.

The defendant contends that Dr. Sorenson's testimony is admissible both to rebut the future dangerousness aggravator and also in support of a mitigating factor that the defendant would not pose a risk if sentenced to life imprisonment. (Def.Rsp. at 4) In particular, the defendant states that Dr. Sorenson will testify regarding "the variety of security measures available [within the Bureau of Prisons] to control recalcitrant inmates." (Def.Rsp. n.3) The Seventh Circuit has previously held that such testimony should not be permitted as mitigation evidence:

> [The defendant] should not have been permitted to present to the jury, as he was, evidence of the existence of maximum-security federal prisons decked out with control units, in order to establish a mitigating factor. A mitigating factor is a factor arguing against sentencing *this* defendant to death; it is not an argument against the death penalty in general. The argument that life in prison without parole, especially if it is spent in the prison's control unit and thus in an approximation to solitary confinement, sufficiently achieves the objectives aimed at by the death penalty to make the latter otiose is an argument addressed to legislatures, not to a jury. This is apparent from the fact that the list of mitigating factors in the federal death-penalty statute does not include the harshness or ugliness or (some would say) the immorality of the death penalty, but only factors specific to the defendant.
>
> The argument is also illogical, as it amounts to saying that because this defendant is so dangerous, he does not deserve to be sentenced to death, since his dangerousness will assure his secure confinement. And its illogic shows that it is really an argument against the death penalty, period . . . .

*United States v. Johnson*, 223 F.3d 665, 674-75 (7th Cir. 2000) (emphasis in original) (citations omitted).

Similarly, to the extent Dr. Sorenson's testimony rests on comparing the defendant to other criminals,[2] it is improper because it is not grounded on the defendant's personal characteristics and those of the crimes he committed. *Lockett*, 438 U.S. at 604 n.12 ; 18 U.S.C. § 3592(a)(1)-(8); *see also Zant v. Stephens*, 462 U.S. 862, 878 (1983); *see also United States v. Runyon*, 707 F.3d 475, 491 (4th Cir. 2013) (citing *Tuilaepa v. California*, 512 U.S. 967, 979-80 (1994)). This is no more acceptable than an FBI agent testifying that, based on a review of the applicable reports, the defendant has demonstrated less remorse than the average murderer.

A defendant's ability to argue facts in mitigation is not unlimited. "Mitigation evidence . . . is not an empty concept to be filled by whatever a lawyer or court thinks might persuade a single juror in a particular case." *United States v. Gabrion*, 719 F.3d 511, 522 (6th Cir. 2013) (*en banc*); *see also United States v. Fell*, 531 F.3d 197, 219 (2nd Cir. 2008). The Supreme Court has specifically held that mitigation evidence must be limited to the defendant's crime or his own personal characteristics. *Zant*, 462 U.S. at 879 ("What is important at the selection stage is an individualized determination on the basis of the character of the individual and the circumstances of the crime.") (citing *Eddings*, 455 U.S. at 110–12; *Lockett*, 438 U.S. at 601–05.  The defendant concedes that Dr. Sorenson

---

[2] For example, while the defendant refers to a district court's order in *United States v. Con-Ui* (Def.Rsp. at 5 and n.4), *Con-Ui* is distinguishable since it involved the murder of a corrections officer by a federal inmate, not a kidnapping and murder that took place outside BOP. Even less applicable is the defendant's assertion that such testimony is required to counterbalance the depictions of prison violence on HBO's television series *Oz* (Def.Rsp. at n.8), given that the fictional television program has not aired since 2003. IMDB Episode List, *Oz*, *available at https://www.imdb.com/title/tt0118421/episodes* (last visited April 3, 2019).

4

has not met with the defendant and is not qualified to testify as to whether the defendant's personal characteristics make him dangerous in prison. (Def.Rsp. at 6).

Dr. Sorenson's proffered testimony would present the jury with proportionality and BOP dangerousness evidence that the courts have found are not only inadmissible, but illogical as mitigating evidence. It is a speculative, statistical guess about how the defendant will behave in prison based on how other defendants have behaved. Moreover, at its core is the suggestion that no one is dangerous in federal prison because BOP has effective safety measures. This contention, which has been rejected by the Seventh Circuit, is a thinly veiled argument that the death penalty is never necessary – a plea which should be made to legislators, not jurors. *Johnson*, 223 F.3d at 675.

**III. Permitting Dr. Sorenson's Improper Testimony Will Result in an Unnecessary and Misleading Mini-Trial on BOP Conditions and Comparing the Defendant to Other Capital Defendants, Including Determining Whether the Defendant is a Psychopath.**

If Dr. Sorensen's improper testimony is presented, the United States will be entitled and required to rebut it by presenting evidence[3] that "there can be no assurance that if the defendant were sentenced to life in prison he could not commit further

---

[3] Such evidence, including rebuttal experts, has not yet been obtained by the United States or disclosed to the defendant. While the United States noted the lateness of the defendant's disclosure of Dr. Sorenson in its original motion, it seeks to preclude his testimony because it is improper, not because it was disclosed after the Court's deadline. Nonetheless, given the timing of the defense disclosure, the defendant should not later complain of the timing of the United States' disclosure of its rebuttal evidence or request a continuance of the trial date based thereon. *See United States v. Buchbinder*, 796 F.2d 910, 915 (7th Cir. 1986) (timely notice of experts is "to enable the government to prepare for cross-examination of the defendant's expert witnesses and to present any rebuttal witnesses to counter the defense expert's testimony.").

serious crimes." *Johnson*, 223 F.3d at 672-73 ("We know from cases in this court involving murders by prisoners in the control units of federal prisons . . that such units cannot be made totally secure."). The United States could do so through instructions to the jury from the Court regarding relevant statutes and regulations relative to BOP policies that forbid it from controlling a prisoner based on the evidence presented at trial. *See Id.* at 671 ("When a legal proposition is relevant to the jury's consideration, the proper procedure is for the judge to instruct the jury on the proposition.")

The United States also could do so through testimony of BOP witnesses to establish that (1) the determination of which prison the defendant would be assigned to, and where within that prison the defendant would be housed, would be made by BOP after his conviction and would be subject to change at any time; and (2) the mere existence of control units or other secure housing within some prisons was not a guarantee that the defendant would be housed therein, and therefore, their existence could not be relied upon to show that the defendant would not be a danger in prison. *Id.* at 672-74.

Thus, Dr. Sorenson should not be allowed to offer improper testimony (in support of improper argument) "that life in prison without parole . . . sufficiently achieves the objectives aimed at by the death penalty." *Id.* at 675. If this improper testimony (and argument) is permitted, it will result in an unnecessary and misleading mini-trial on the safety of BOP facilities in general, rather than on factors specific to the defendant. *See id.* at 675 (citing 18 U.S.C. § 3592(a)(8) for the proposition that mitigation must be specific to the defendant and the offense, such as "other factors *in the*

*defendant's background, record, or character* or any other circumstances *of the offense* that mitigate against imposition of the death sentence.").

Additionally, if Dr. Sorenson is permitted to present this improper testimony, the United States will be required to hire a rebuttal expert witness. In particular, the United States may seek to hire a psychologist who is experienced in administering the PCL-R exam – which is used to screen patients for psychopathy. The PCL-R is used to rebut "base rate" testimony because criminal psychopaths do not fit within Dr. Sorensen's statistical analysis. *United States v. Barnette*, 211 F.3d 803, 822-26 (4th Cir. 2000) (identifying Dr. Cunningham as a "risk assessment expert, [who] testified about the risk of Barnette committing further violent acts in prison").[4] In other words, if the jury were to find that the defendant is a psychopath, Dr. Sorensen's statistical analysis would be moot.

---

[4] Unlike the Seventh Circuit, the Fourth Circuit appears to permit mitigation evidence regarding a defendant's speculative risk of committing violent acts while in BOP. The Fourth Circuit, however, found no fault with the use of the PCL-R in rebuttal to the "base rate" evidence presented in *Barnette*. The Court did, however, order a second penalty hearing because the district court did not allow sur-rebuttal on the issue of whether the defendant was, in fact, a psychopath. *Id*. On remand, the defendant was again sentenced to death. *United States v. Barnette*, 644 F.3d 192, 196 (4th Cir. 2011).  That issue would not present itself here, as the defendant would be aware in advance of the United States' intentions.

WHEREFORE, the United States of America respectfully requests that this Court preclude the improper proffered testimony of Dr. Jonathan Sorensen.

Respectfully submitted,

JOHN C. MILHISER
UNITED STATES ATTORNEY

s/Eugene L. Miller
Eugene L. Miller
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone: 217/373-5875
Fax: 217/373-5891
eugene.miller@usdoj.gov

s/ James B. Nelson
James B. Nelson
Trial Attorney
Capital Case Section
United States Department of Justice
1331 F. Street NW, Room 625
Washington, DC  20004
Phone: 202/598-2972
james.nelson@usdoj.gov

s/Bryan D. Freres
Bryan D. Freres, Bar No. IL 6294791
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone: 217/373-5875
Fax: 217/373-5891
bryan.freres@usdoj.gov

# CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

s/ James B. Nelson
James B. Nelson
Trial Attorney
Capital Case Section
United States Department of Justice
1331 F. Street NW, Room 625
Washington, DC  20004
Tel: (202) 598-2872
james.nelson@usdoj.gov
