UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-cr-20037-JES-JEH |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER AND OPINION

Now before the Court is the United States' Motion (Doc. 258) for Reconsideration of the Court's Order (Doc. 220) Establishing Rule 12.2 Procedures. Defendant filed a Response (Doc. 266), and the Court heard argument on this matter at a hearing on March 14, 2019. For the reasons that follow, the United States' Motion to Reconsider is GRANTED in part and DENIED in part.

### BACKGROUND

The United States has asked that the Court reconsider its order (Doc. 220) on the procedures for expert examinations under Rule 12.2. Namely, the United States requests that their experts be permitted to question the defendant about the offense and that Dr. Dietz be permitted to record his forensic interview with Defendant. Doc. 258, at 2–4. Defendant asserts that both requests should be denied. Doc. 266.

According to the United States, the government expert must be allowed to inquire about the offense conduct in order to fully rebut the defense expert—"the defendant's experts will almost certainly have asked about the facts of the offense to determine how the defendant's purported diagnoses affected his actions in a way that they mitigate the offense." *Id.* at 3. Additionally, the United States indicates that Dr. Dietz should be allowed to record his interview

1

with Defendant "[i]n order that he might proceed with interviewing the defendant efficiently, without having to pause the questioning to take notes." *Id.* at 4. An affidavit from Dr. Dietz indicates that his purposes for recording the interview would be the following:

> "to advance the quality of forensic mental health practice, improve the accuracy and quality of data collected for use in court, preserve evidence of what transpires during examinations, provide transparency of the methods used, protect both examiners and examinees from false accusations, [and] also to ensure that there is a faithful and accurate record of the examination … so that I can concentrate on the interview rather than on taking notes, and so that any errors I make in conducting or interpreting the interview are discoverable by all parties in the interest of justice."

Doc. 258-1, at 5. Defendant contends that none of these purposes would rise to the level of the specialized circumstances that most courts require in order to allow recording of psychiatric interviews. Doc. 266, at 5–7. Defendant further argues that any inquiry by government experts into the offense conduct would be outside of the scope of their rebuttal, since Defendant has specifically instructed the defense experts not to question him about the facts and circumstances of the crime. *Id.* at 2. According to Defendant, such inquiries would be beyond "matters he himself has put in dispute," and thus in violation of the Fifth Amendment. *Id.* (citing *Brown v. United States*, 356 U.S. 148, 156 (1958); *United States v. Johnson*, 383 F. Supp. 2d 1145 (N.D. Iowa 2005)).

## DISCUSSION

**1. Questioning About the Offense**

Generally speaking, when a defendant puts his mental condition into question and indicates that he will use psychiatric evidence to that effect, he waives his right to remain silent with respect to a rebuttal mental health examination. *See, e.g., United States v. Curtis*, 328 F.3d 141, 145 (4th Cir. 2003); *United States v. Taylor*, 320 F. Supp. 2d 790. 793 (N.D. Ind. 2004). The scope of this waiver has not been widely addressed in federal courts, but some authority indicates

that the permissibility of offense-specific questioning depends on the defendant's intended framework for the mitigation evidence. In *United States v. Johnson*, an Iowa district court surveyed the federal and state cases that had handled the issue and determined that an appropriate rule would be to allow offense-specific questioning where the mental health evidence bears on the offense (e.g. incapacity, duress, or severe emotional disturbance) and prohibit offense-specific questioning where the mental health evidence does not involve the offense (e.g. a post-offense mental condition or long-standing mental condition that did not affect the offense but might weigh against imposing the death penalty on this defendant). *United States v. Johnson*, 383 F. Supp. 2d 1145, 1161–62 (N.D. Iowa 2005); *see also United States v. Jackson*, 2015 WL 4885997 at *4–5 (C.D. Cal. Aug. 13, 2015) (applying the *Johnson* rule).

In *Johnson*, the defendant had represented that she would not rely on a "duress" or "lack of capacity" mitigation argument and the district court took note that she was "now foreclosed from asserting any offense-specific mental condition mitigating factor in the 'penalty phase,' if any, of these proceedings." *Johnson*, 383 F. Supp. 2d at 1165. Here, Defendant has not yet disclosed the mitigating factors he intends to rely upon should this case proceed to sentencing, only that Defendant's experts have been instructed not to question him about the offense conduct. However, even if the experts *themselves* do not question Defendant or opine about his condition during the offense, Defendant might still use evidence of, say, a long-standing condition to argue that he was operating with impaired capacity on the day of the offense. As such, at this time the Court cannot determine whether Defendant will offer offense-specific mental condition evidence.

The Government's expert himself indicated that he would not need to question Defendant about the offense if the only use of the mental health evidence would be to support a claim of "Other factors" rather than impaired capacity or disturbance. Doc. 258-1, at 7. Because

Defendant will not be required to disclose the specific mitigating factors he intends to rely upon until a later date, the Court cannot resolve that question in advance. However, if the Court bars the United States' expert from questioning Defendant on the offense conduct and Defendant later does offer offense-specific mental health arguments, these proceedings could become stalled while the United States attempts to re-examine Defendant with the appropriate scope. The alternative is to allow the United States' expert to question Defendant about the offense—if it later becomes clear that Defendant will not claim offense-specific mitigation, the Court can limit evidence based on offense questioning.

The Court finds this latter alternative preferable. Defendant's Fifth Amendment right against self-incrimination is sufficiently protected by the already-instituted procedure whereby the prosecution team will not receive any information disclosed during the rebuttal examination unless and until (1) Defendant is found guilty of the offense beyond a reasonable doubt and (2) Defendant reaffirms his intent to offer mental health evidence at the penalty phase. The Court may also restrict the rebuttal expert's testimony to non-offense-specific evidence and opinions, should Defendant choose only to pursue the mental health mitigation under the "Other factors" category rather than impairment, duress, or disturbance. The United States' Motion for this Court to reconsider its Rule 12.2 procedures is GRANTED, and the United States' rebuttal expert will be permitted to question Defendant on the offense.[1]

**2. Video or Audio Recording of the Examination**

Numerous federal courts have chosen not to allow recording of examinations when one party objects. *See United States v. Runner*, 2014 WL 4384379 at *2 (D.S.D. Sept. 3, 2014)

---

[1] The Court will also forward this Order to standby firewall counsel. The parties are reminded that if any issues or objections arise after the rebuttal examination has begun, standby firewall counsel and defense counsel shall address them by filing materials with the Clerk in sealed miscellaneous case 19-mc-1007.

4

(defendant's request to video record government's examination denied because "transparency" was not a sufficient justification); *United States v. Wilson*, 920 F. Supp. 2d 387, 306 (E.D.N.Y. 2012) ("The court agrees with the weight of authority that the recording of a mental examination changes its tenor and feel in such a way that could potentially undermine its effectiveness. And, because there are no specialized circumstances justifying a recording, the court will not permit it."); *United States v. Coyle*, 2013 WL 5508309 (E.D.N.C. Sept. 19, 2013) ("[R]espondent has failed to demonstrate sufficient justification to warrant the potential intrusiveness of recording [the examiner's] interview."). This is due in part to the effect that the recording would have on the integrity of the interview.[2]

To the extent that courts have allowed video recording of such examinations, it appears to have been for the benefit of Defendant. *See United States v. Fell*, 2015 WL 13781291 at *2 (D.Vt. Oct. 9, 2015) (allowing video recording of prosecution expert interview at defendant's request, but denying government's request for defense expert interviews to be recorded as well). The Court recognizes that recording the examination could serve the purposes that Dr. Dietz lists in his affidavit, including protecting Defendant from any false recollections that Dr. Dietz might have of the interview. Indeed, if the parties agreed to record the interview, the Court would likely allow it. The ABA Criminal Justice Mental Health Standards regarding the recording of

---

[2] The following civil cases, though discussing mental health examinations in a non-criminal context, are somewhat informative: *Gohl v. Livonia Public Schools*, 2015 WL 1469749 at *2 (E.D. Mich. Mar. 30, 2015) ("Plaintiffs' justification for the recording of an examination—maintaining the integrity of the testing procedure by keeping both the third-party observer and the neuropsychologist honest—would apply regardless of the [claimed special circumstances].") (denying Plaintiff's request for recording); *Pizzuto v. Hardison*, 2010 WL 672754 at *2 (D. Idaho Feb. 20, 2010) ("Dr. Moore claims that the presence of a third party or a recording device in the exam room would be disruptive to the testing environment and might corrupt the results. … [T]he Court does not find Dr. Moore's concerns to be implausible or patently unreasonable."); *Erickson v. Larson-Juhl, Inc.*, 2000 WL 3420417 (W.D. Wis. Nov. 14, 2000) ("Injecting a tape recording into a psychological interview is bound to change the dynamics of the session and interfere with the examiner's ability to perform his evaluation."); *Holland v. United States*, 182 F.R.D. 493, 495 (D.S.C. 1998) ("Clearly, the presence of a videographer could influence [the examinee], even unconsciously, to exaggerate or diminish his reactions … ."); *Tomlin v. Holecek*, 150 F.R.D. 628, 632 (D. Minn. 1993) ("In our view, the presence of third parties would lend a degree of artificiality to the interview technique which would be inconsistent with applicable professional standards.").

prosecution-initiated evaluations of the defendant are clearly oriented towards providing the defense with "the tools necessary to act if a government evaluation intrudes on [the defendant's] rights." *Fell*, 2015 WL 3791291 at *2.

In *Nelson v. United States*, a district court found that even though such a recording might protect the defendant, it was not warranted when the defense counsel objected to it. *Nelson v. United States*, 2010 WL 2010520 at *3 (W.D. Mo. May 18, 2010) ("The Court agrees and finds that since the purpose of the recording is to protect the defendant, if [his] counsel does not wish the examination to be recorded, the Government has no right to insist on this condition."). This Court agrees. Although the rebuttal expert indicates that recording the interview would protect both parties and ensure transparency, there are no special circumstances that justify recording the rebuttal expert's interview over Defendant's objection. The Court therefore DENIES the United States' request that the Court reconsider its prior ruling that the interview not be recorded.

## CONCLUSION

For the reasons stated above, the United States' Motion (Doc. 258) for Reconsideration is GRANTED in part and DENIED in part.

Signed on this 11th day of April, 2019.

/s James E. Shadid
James E. Shadid
United States District Judge