UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION FOR RECONSIDERATION OF COURT'S RULE 12.2 PROCEDURES**

NOW COMES the Defendant, BRENDT A. CHRISTENSEN, by and through his attorneys, and respectfully moves the Court to reconsider its April 11, 2019, Order granting permission for the government's mental health experts to question Mr. Christensen regarding the facts of the crimes with which he is charged, (R. 300). The Court's decision, which reversed its prior ruling that questioning Mr. Christensen about the crimes would not be allowed, is based upon authority that has been thoroughly discredited and should be vacated.

**I.  THE GOVERNMENT IS NOT ENTITLED TO ELICIT INFORMATION FROM MR. CHRISTENSEN THAT HIS OWN EXPERTS DO NOT HAVE.**

In its Order granting the government's experts permission to question Mr. Christensen about the crimes with which he is charged, the Court cited the holding of the district court in *United States v. Johnson*, 383 F. Supp. 2d 1145 (N.D. Iowa 2005), that "the permissibility of offense-specific questioning depends on the defendant's intended framework for the mitigation evidence." (R. 300 at 3.) Mr. Christensen respectfully

1

submits that the *Johnson* court erred in this respect. Whether the government may question a defendant about the offense should be determined based upon whether the defense experts conducted such an inquiry, regardless of the mitigating factors the defense will urge the jury to find at trial.

A court order directing Mr. Christensen to submit to a mental health examination by government experts implicates, among others, his constitutional rights under the Fifth Amendment. When he asserts and exercises his right to present expert mental health evidence on his own behalf, a defendant can be deemed to have at least partially waived his Fifth Amendment privilege. *Kansas v. Cheever*, 134 S. Ct. 596, 601 (2013); *Buchanan v. Kentucky*, 483 U.S. 402, 423-24 (1987). However, the scope of the waiver is only as broad as is necessary for the government to examine the defendant for "the limited purpose of rebutting the defendant's evidence." *Cheever*, 134 S. Ct. at 603. *See also Buchanan*, 483 U.S. at 424 (finding no Fifth Amendment violation where excerpts of report were used for "limited rebuttal purpose").

The scope of the defendant's waiver, and therefore what constitutes an appropriately limited rebuttal examination, is determined in the same way that courts determine the scope of the waiver when a defendant elects to take the stand at trial and testify on his own behalf. *Powell v. Texas*, 492 U.S. 680, 684 (1989) (per curiam) (holding that "defendant's use of psychiatric testimony might constitute a waiver of the Fifth Amendment privilege, just as the privilege would be waived if the defendant himself took the stand"); *Cheever*, 134 S. Ct. at 601 (allowing government to present limited rebuttal testimony "harmonizes with the principle that when a defendant chooses to

2

testify in a criminal case, the Fifth Amendment does not allow him to refuse to answer related questions on cross- examination"). Accordingly, a defendant waives the privilege "as to matters he himself has put in dispute." *Brown v. United States*, 356 U.S. 148, 156 (1958). The defendant "determines the area of disclosure and therefore of inquiry." *Id.* at 155. The "breadth of his waiver is determined by the scope of the relevant cross-examination." *Id.* at 154-55. In the case of mental health evidence, a defendant waives his Fifth Amendment privilege with respect to those issues that his own experts' testimony put in dispute. The Constitution then permits the government's expert witness to examine the defendant to the extent necessary to rebut those issues.

Put another way, the Fifth Amendment permits the government "access to the same information" that the defendant has. *Johnson*, 383 F. Supp. 2d at 1162-63 (citing *State v. Obstein*, 247 A.2d 5, 11-13 (N.J. 1968). As the court in *Obstein* held, if "the defense psychiatrists obtained [information about the crime] from [the defendant], in fairness and justice the State should be permitted to cover the subject also." *Id.* The Fifth Amendment does not, however, permit the government to obtain *more* information than the defense experts have, at least not by questioning the defendant.

For a variety of reasons, Mr. Christensen instructed his own experts not to question him about the facts and circumstances of the crimes with which he is charged. This decision is not without cost. The government will likely criticize it at trial and attempt to use it to undermine the credibility of the defense experts. This the government is free to do. However, the government should not be permitted to gain an

3

unfair advantage by allowing its experts to question Mr. Christensen about the crime when his own experts have not done so.

This constitutional principle applies no matter how Mr. Christensen intends to use his expert evidence at trial or which mitigating factors he will urge the jury to find. He likely will use evidence of his "long-standing condition to argue that he was operating with impaired capacity on the day of the offense." (R. 300 at 3.) The fact that he suffered from major mental illness at the time that the crime occurred is a reason for the jury to impose a sentence of less than death, and thus it is unquestionably admissible mitigating evidence. *See Lockett v. Ohio*, 438 U.S. 586, 604 (1978) (plurality opinion) ("[T]he Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.").

The government is, of course, free to rebut this mitigating factor by presenting its own expert testimony that Mr. Christensen is not mentally ill, or to criticize and dispute the weight that should be accorded to the defense experts' conclusions or defense counsel's arguments. It is, however, neither necessary nor fair that the government be provided with a "leg up" by also permitting its experts to access information that Mr. Christensen's experts do not have.

The *Johnson* court's erroneous conclusion that a defendant who declines to be questioned about the facts of the crime by either defense or government experts is "foreclosed from asserting any offense-specific mental condition mitigating factor" at

4

trial was the product of it being led astray by the constitutionally deficient performance of Ms. Johnson's counsel. The question before the court was framed by the defense's insistence from the start that it would not rely on the "duress" or "lack of capacity" statutory mitigating factors and would not argue for mitigation on the basis of any offense-specific mental condition. *Id.* at 1164. It was "based upon her representations" that the court found that she was precluded from invoking the statutory mitigating factors, not the court's independent conclusion that relying on those or similar factors would be impermissible. *Id.* at 1165.

Indeed, the same court later vacated Ms. Johnson's death sentences under 28 U.S.C. § 2255 based on her trial counsel's ineffective assistance in this regard. It found that counsel's decision to forego presenting evidence and argument connecting the defendant's mental condition to her conduct – "not just by forbidding the experts to *ask* Johnson pertinent questions, but by forbidding the experts to *opine* that there was any connection between Johnson's mental health and her conduct at the time of the offenses" – constituted deficient performance. *Johnson v. United States*, 860 F. Supp. 2d 663, 887 (N.D. Iowa 2012) (emphases in original). The court called counsel's decisions "foolish concessions" and noted that, had they not been made, it "would not have ruled that Johnson was foreclosed from asserting any offense-specific mental health mitigating factor in the penalty phase." *Id.* at 890-91.

Assessing whether the defendant was prejudiced by her counsel's performance, the court summarized the testimony of the mental health experts who testified during

5

the post-conviction proceeding regarding what they would have testified to at trial had they been permitted:

- Dr. Hutchinson testified at the evidentiary hearing about what she could have said, based on her own evaluation and the evaluations of Drs. Gelbort and Logan, **even without asking Johnson about the crimes themselves**, about Johnson's impaired capacity to conform her conduct, appreciate the wrongfulness of her conduct, duress, and severe mental and emotional disturbance.

- Dr. Logan testified that, **even without discussing the facts with Johnson**, he could have testified about several impairments and the impact of each of them on her behavior at the time of the offenses, including a possible diagnosis of borderline personality disorder from symptoms in Johnson's history, that her symptoms were also consistent with affective spectrum disorder, including bipolar disorder, that she was unable to see bad consequences, and that she suffered symptoms of PTSD.

- Dr. Cunningham testified that he could have discussed Johnson's conduct at the time of the crimes **without interviewing her about the crimes**, the effect of mental capacity in terms of moral culpability, Johnson's ability to appreciate the wrongfulness of her conduct, and other mitigating factors. Dr. Cunningham also testified as to what defense counsel removed from the Powerpoint presentation that he had prepared for Johnson's case, which tied the risk factors to specific events and people to demonstrate how she was at risk, and how these life circumstances impacted her behavior at the time of the crimes.

*Id.* at 888 (internal citations omitted).

Based in part on this evidence that trial counsel could have presented, the court found that Ms. Johnson had indeed been prejudiced by their deficient performance and vacated her sentences of death. *Id.* at 891. The 2005 opinion in *Johnson* accordingly constitutes no authority for the proposition that a defendant who declines to be questioned about the facts of the charged crimes is precluded from presenting evidence of how her mental condition impacted her conduct or relying upon offense-specific

mitigating factors. There is, in turn, no basis upon which to find that the government's experts may be permitted to question Mr. Christensen about the crime depending upon the mitigation case that he presents at trial, and such questioning should be precluded at this time.

WHEREFORE, Mr. Christensen respectfully requests that this Motion be granted and that the Court reconsider and rescind its Order permitting the government's experts to question him about the crimes with which he was charged.

Respectfully submitted,

/s/Elisabeth R. Pollock
Assistant Federal Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org

/s/ George Taseff
Assistant Federal Defender
401 Main Street, Suite 1500
Peoria, IL 61602
Phone: 309-671-7891
Fax:    309-671-7898
Email: George_Taseff@fd.org

/s/ Robert Tucker
Robert L. Tucker, Esq.
7114 Washington Ave
St. Louis, MO 63130
Phone: 703-527-1622
Email: roberttuckerlaw@gmail.com

/s/ Julie Brain
Julie Brain, Esq.
916 South 2nd Street
Philadelphia, PA 19147
Phone: 267-639-0417
Email: juliebrain1@yahoo.com

CERTIFICATE OF SERVICE

    I hereby certify that on April 22, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorneys Bryan D. Freres and Eugene L. Miller and Trial Attorney James B. Nelson. A copy was also mailed to the defendant.

/s/Elisabeth R. Pollock
Assistant Federal Public Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org