UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Crim. No. 17-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

RESPONSE TO NOTICE OF PENALTY PHASE EXPERTS AND TESTS IN RESPONSE TO THE DEFENDANT'S RULE 12.2(b)(2) NOTICE

NOW COMES the Defendant, BRENDT A. CHRISTENSEN, by and through his attorneys, and respectfully submits this Response the government's Notice of Penalty Phase Experts and Tests in Response to the Defendant's Rule 12.2(b)(2) Notice, (R. 303).

I.  **The Government's Expert Should be Precluded from Administering the WAIS-IV Because of the Risk of Generating Artificially Inflated Scores Due to Practice Effects.**

In its Notice, the government states that Dr. Robert Denney proposes to administer the Wechsler Adult Intelligence Scale – IV ("WAIS-IV"). (R. 303 at 7.) As the government is aware, Mr. Christensen's own expert administered that same instrument. (R. 161.) The defense expert's administration of the test occurred on October 22, 2018, only six months ago. Administration of the same instrument by the government's expert so close in time to a previous administration poses a significant risk of generating scores that are artificially inflated because of practice effects. "Practice effects reflect changes resulting from repeated administrations of neuropsychological tests.

1

This occurs when a patient's neuropsychological performance on an assessment improves due to the re-administration of the same instrument." Eduardo Estevis et al., *Effects of Practice on the Wechsler Adult Intelligence Scale-IV Across 3- and 6-Month Intervals*, 26 The Clinical Neuropsychologist 239, 240 (2012).

With respect to the WAIS-IV specifically, the practice effects associated with re-administrations of the test after a six-month interval are "significant" and the magnitude of the performance gains is "considerable." *Id.* at 250. The WAIS-IV generates a set of scores corresponding to different domains of intellectual functioning: Full scale IQ, Verbal Comprehension Index, Perceptual Reasoning Index, Working Memory Index, Processing Speed Index and General Ability Index. *Id.* at 244. The mean for each score is 100. The study by Estevis et al. found that, on re-administration after six months, all six scores were inflated. *Id.* The scores increased by 7, 5, 5, 4, 9 and 6 points, respectively. *Id.* Because intellectual ability is generally stable over time, these increases are attributable at least in part to practice effects and thus the scores fail to accurately reflect the testing subjects' true functioning. *Id.* at 240. The government's expert should be precluded from administering an instrument that will almost certainly give a misleading and inaccurate picture of Mr. Christensen's intellectual functioning.

II.     **The Government's Expert Should be Precluded from Administering the WCST Because of the Risk of Generating Artificially Inflated Scores Due to Practice Effects.**

Similar concerns should also preclude the government's expert from administering the Wisconsin Card Sorting Test ("WCST"). Mr. Christensen's own expert administered that instrument six months ago, also. (R. 161.) The WCST is a test of

2

executive function, a category of neuropsychological tests for which improvement over time due to practice effects may be "especially pronounced:"

> Measures of executive function tend to present examinees with novel problem-solving contexts, and they assess the capacity to generate appropriate solutions and to recognize abstract concepts. During the course of initial testing, examinees are apt to learn strategies for successful performance. With repeated exposure, test-taking strategies may be refined, yielding improved test scores across time. Furthermore, responses to test items may become more automatic and require less attention and concentration than during prior administrations. Thus, what is measures in a re-examination of executive function performance may be quite different from what is assessed during an initial examination.

Michael R. Basso, et al., *Practice Effects on Commonly Used Measures of Executive Function Across Twelve Months*, 13 The Clinical Neuropsychologist 283 (1999) (internal citations omitted). The study conducted by Basso et al. found that "test scores on the Wisconsin Card Sorting Test . . . improved significantly across 12 months. Moreover, the rate of improvement due to practice was generally quite large." *Id.* at 289. In this case the artificial inflation of scores can be expected to be even greater than in the study, given that only six months have elapsed since the prior administration. The government's expert should therefore be precluded from administering this test to Mr. Christensen.

**III.    The Government's Expert Should be Precluded from Administering the Connors' Adult ADHD Rating Scale Because ADHD is Not a Differential Diagnosis of Schizophrenia Spectrum Disorder.**

The government's expert should be precluded from administering to Mr. Christensen the Connors' Adult ADHD Rating Scale because Attention Deficit Hyperactivity Disorder ("ADHD") is not a differential diagnosis for Schizophrenia Spectrum Disorder. The Court has ordered that "[t]he scope of the rebuttal

3

examinations will be limited to confirming or rebutting whether Defendant suffers from Schizophrenia or Other Psychotic Disorder as that term is understood in the Diagnostic and Statistical Manual of Mental Disorders 5th Edition, and whether he suffers from neurocognitive impairments consistent with a psychotic disorder. That scope permits inquiry into differential diagnoses for Schizophrenia or other Psychotic Disorders." (R. 220 at 4.) Because ADHD is not a differential diagnosis for Schizophrenia Spectrum Disorder, the government's expert should be precluded from testing Mr. Christensen for this condition.

### IV. The Government Should be Required to Specify Which Validity Measures its Expert Proposes to Administer.

In its Notice, the government asserts that its expert proposes to administer "Validity Measures," but fails to specify which particular measures its expert intends to use. (R. 303 at 7.) The Court's Order directs that "the Government shall provide Defense counsel with . . . a list of any tests to be conducted" by the government's expert." (R. 220 at 4.) Mr. Christensen understands that some of the tests that the government's expert intends to give, e.g. the Minnesota Multiphasic Personality Inventory-2 and the WAIS-IV, contain validity measures embedded within them. To the extent that the expert also intends to administer separate validity tests, the government should be required to identify them in advance in order to provide Mr. Christensen an opportunity to raise any appropriate objections as contemplated by the Court's Order.

4

Respectfully submitted,

| | |
|---|---|
| /s/Elisabeth R. Pollock | /s/ George Taseff |
| Assistant Federal Defender | Assistant Federal Defender |
| 300 West Main Street | 401 Main Street, Suite 1500 |
| Urbana, IL 61801 | Peoria, IL 61602 |
| Phone: 217-373-0666 | Phone: 309-671-7891 |
| FAX:   217-373-0667 | Fax:     309-671-7898 |
| Email: Elisabeth_Pollock@fd.org | Email: George_Taseff@fd.org |
| | |
| /s/ Robert Tucker | /s/ Julie Brain |
| Robert L. Tucker, Esq. | Julie Brain, Esq. |
| 7114 Washington Ave | 916 South 2nd Street |
| St. Louis, MO 63130 | Philadelphia, PA 19147 |
| Phone: 703-527-1622 | Phone: 267-639-0417 |
| Email: roberttuckerlaw@gmail.com | Email: juliebrain1@yahoo.com |

CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorneys Bryan D. Freres and Eugene L. Miller and Trial Attorney James B. Nelson. A copy was also mailed to the defendant.

/s/Elisabeth R. Pollock
Assistant Federal Public Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org

5