E-FILED
Wednesday, 24 April, 2019  03:06:24 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-cr-20037-JES-JEH |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION

Now before the Court are the following:

- Defendant's Motion (Doc. 101) to Strike Non-Statutory Aggravating Factor of "Obstruction of Investigation," the United States' Omnibus Response (Doc. 150) to Defendant's Motion to Strike Non-Statutory Aggravators, and Defendant's Reply (Doc. 177);

- Defendant's Motion (Doc. 103) to Strike all Non-Statutory Aggravating Factors in their Entirety, and the United States' Response (Doc. 151);

- Defendant's Motion (Doc. 104) to Strike Non-Statutory Aggravating Factor of "Lack of Remorse" as Duplicative of "Future Dangerousness," and the United States' Response (Doc. 149);

- Defendant's Motion (Doc. 105) to Strike Non-Statutory Aggravating Factor of "Vulnerability of Victim," the United States' Omnibus Response (Doc. 150) to Defendant's Motion to Strike Non-Statutory Aggravators, and Defendant's Reply (Doc. 176);

1

- Defendant's Motion (Doc. 106) to Strike Non-Statutory Aggravating Factor of Victim Impact Evidence, and the United States' Omnibus Response (Doc. 150) to Defendant's Motion to Strike Non-Statutory Aggravators;

- Defendant's Motion (Doc. 107) to Strike "Substantial Planning and Premeditation" as an Aggravating Factor, and the United States' Consolidated Response (Doc. 152) to Defendant's Motions to Strike All Alleged Statutory Aggravating Factors;

- Defendant's Motion (Doc. 108) to Strike Non-Statutory Aggravating Factor of "Other Serious Acts of Violence," the United States' Omnibus Response (Doc. 150) to Defendant's Motion to Strike Non-Statutory Aggravators, and Defendant's Reply (Doc. 175);

- Defendant's Motion (Doc. 109) to Strike Non-Statutory Aggravating Factor of "Lack of Remorse," and the United States' Omnibus Response (Doc. 150) to Defendant's Motion to Strike Non-Statutory Aggravators;

- Defendant's Motion (Doc. 111) to Strike Statutory Aggravating Factor of "Especially Heinous, Cruel, or Depraved Manner" of Committing the Offense, and the United States' Consolidated Response (Doc. 152) to Defendant's Motions to Strike All Alleged Statutory Aggravating Factors;

- Defendant's Motion (Doc. 112) to Strike "Death During the Commission of Another Crime" as an Aggravating Factor, and the United States' Consolidated Response (Doc. 152) to Defendant's Motions to Strike All Alleged Statutory Aggravating Factors; and

- Defendant's Motion (Doc. 122) to Strike Aggravating Factor Alleging Future Dangerousness, and the United States' Omnibus Response (Doc. 150) to Defendant's Motion to Strike Non-Statutory Aggravators.

## BACKGROUND

Defendant Brendt A. Christensen was arrested by federal agents on June 30, 2017, pursuant to a criminal complaint which charged him with the kidnapping of Yingying Zhang, a female Chinese national, in violation of 18 U.S.C. § 1201. Doc. 1. Christensen was later indicted by a federal grand jury sitting in the Urbana Division of the Central District of Illinois. *See* Doc. 13 (Indictment), Doc. 26 (Superseding Indictment). The Superseding Indictment charges Christensen with kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1) (Count 1), and making false statements to FBI agents investigating Yingying Zhang's disappearance, in violation of 18 U.S.C. § 1001(a)(2) (Counts 2, 3). Doc. 26. The Superseding Indictment returned by the grand jury also included a notice of special findings regarding the nature of the offense charged in Count 1, including that the death of the victim was intentional, that it occurred during the commission of kidnapping, that it was committed in an especially heinous, cruel, or depraved manner, and that Defendant committed the offense after substantial planning and premeditation. *Id*. The special findings alleged in the Superseding Indictment made the case eligible for capital punishment. *See* 18 U.S.C. § 3591 *et seq.*

On January 19, 2018, the United States filed its Notice of Intent to Seek a Sentence of Death. Doc. 54; *see also* 18 U.S.C. §3593(a). The NOI alleges the following four intent factors: (1) Defendant intentionally killed Y.Z. (18 U.S.C. § 3591(a)(2)(A)); (2) Defendant intentionally inflicted serious bodily injury that resulted in the death of Y.Z. (18 U.S.C. § 3591(a)(2)(B)); (3) Defendant intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Y.Z. died as a result of the act (18 U.S.C. § 3591(a)(2)(C)); and (4) Defendant intentionally and specifically engaged in an act of violence, knowing that the

act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Y.Z. died as a result of the act (18 U.S.C. § 3591(a)(2)(D)). Doc. 54, at 1–2.

The NOI also alleged the following aggravating factors:

## II. STATUTORY AGGRAVATING FACTORS

1. Death during commission of another crime. The death, or injury resulting in death, occurred during the commission or attempted commission of, or during the immediate flight from the commission of, an offense under Title 18, United States Code, Section 1201 (kidnapping). (Title 18, United States Code, Section 3592(c)(1));

2. Heinous, cruel, or depraved manner of committing the offense. The defendant committed the offense in an especially heinous, cruel, or depraved manner, in that it involved torture or serious physical abuse to the victim, Y.Z. (Title 18, United States Code, Section 3592(c)(6));

3. Substantial planning and premeditation. The defendant committed the offense after substantial planning and premeditation to cause the death of a person. (Title 18, United States Code, Section 3592(c)(9)).

## III. NON-STATUTORY AGGRAVATING FACTORS

1. Victim impact evidence. The defendant caused injury, harm, and loss to Y.Z. and loss to her family, friends, and co-workers. The injury, harm, and loss caused by the defendant is evidenced by Y.Z.'s personal characteristics and by the impact of her death upon her family, friends, and co-workers.

2. Future dangerousness of the defendant. The defendant is likely to commit criminal acts of violence in the future that would constitute a continuing and serious threat to the lives and safety of others, as evidenced by, at least, his demonstrated lack of remorse for his acts of violence; his other serious acts of violence; his expressed desire to be known as a killer; and his claims of additional victims and expertise in avoiding detection.

3. Lack of remorse. The defendant has demonstrated, by statements he made following the offense, that he lacked remorse for the kidnapping resulting in the death of Y.Z.

4. Other serious acts of violence. The defendant has committed other serious acts of violence including, at least, the following: in or about 2013, the defendant choked and sexually assaulted M.D., in the Central District of Illinois.

5. Vulnerability of victim. The victim, Y.Z., was particularly vulnerable due to her small stature and limited ability to communicate in English.

6. Obstruction. The defendant attempted to obstruct the investigation of this offense by, at least, making false statements to investigators; destroying or concealing the victim's remains; and sanitizing the crime scene.

*Id*. at 2–4.

Defendant now moves to strike various aggravating factors. *See generally* Docs. 101, 103–09, 111–12, 122. The Court will address each Motion in turn, beginning with the challenges to the non-statutory aggravating factors.

LEGAL STANDARD

A constitutional capital sentencing scheme must "genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Zant v. Stephens*, 462 U.S. 862, 877 (1983). The capital sentencing process can be divided into two different aspects, the eligibility phase and the selection phase. *Tuilaepa v. California,* 512 U.S. 967, 971 (1994). "In the eligibility phase, the jury narrows the class of defendants eligible for the death penalty, often through consideration of aggravating circumstances." *Buchanan v. Angelone*, 522 U.S. 269, 275 (1998). "In the selection phase, the jury determines whether to impose a death sentence on an eligible defendant." *Id.*

The Federal Death Penalty Act accomplishes the narrowing objective by requiring the jury to find that the defendant possessed the requisite intent and by requiring the jury to find at least one statutory aggravating factor. *See* 18 U.S.C. § 3591(a)(2) (intent factors); § 3592(c) (statutory aggravating factors). The requirements of § 3591(a) narrow the class of persons eligible for the death penalty because they limit the specter of capital punishment to those who possess the requisite intent, excluding, for example, those convicted of felony murder. *United States v. McCluskey*, No. CR 10-2734 JCH, 2013 WL 12329344, at *2 (D.N.M. Oct. 7, 2013) (citing *United States v. Webster*, 162 F.3d 308, 355 (5th Cir. 1998); *United States v. Solomon*, 513 F. Supp. 2d 520, 534 (W.D. Pa. 2007); *United States v. Cooper*, 91 F. Supp. 2d 90, 97 (D.D.C. 2000)).

5

Additionally, the statutory aggravating factors in § 3592(c) narrow the range of conduct for which the death penalty may be considered. *United States v. Fields*, 516 F.3d 923, 944 (10th Cir. 2008). "At the eligibility stage, aggravators have a distinct constitutional function: narrowing the range of conduct for which the death penalty may even be considered." *Fields*, 516 F.3d at 944–45. Thus, a statutory aggravating factor may not be overbroad—i.e., it must not be applicable to every defendant convicted of murder. *Arave v. Creech,* 507 U.S. 463, 474 (1993). Additionally, statutory aggravators must not be vague. An aggravating factor is not unconstitutionally vague "if it has some 'common-sense core of meaning … that criminal juries should be capable of understanding.' " *Tuilaepa*, 512 U.S. at 973 (quoting *Jurek v. Texas*, 428 U.S. 262, 279 (1976) (White, J., concurrence)).

However, unlike the statutory aggravating factors in the eligibility stage, "non-statutory aggravators play no role in the eligibility determination under the FDPA, but are relevant only in the weighing process at the ensuing sentence-selection stage." *Fields*, 516 F.3d at 944–45; *United States v. Higgs*, 353 F.3d 281, 299 (4th Cir. 2003) ("Because nonstatutory aggravating factors do not increase the available punishment to which a defendant might be subjected, they are not required to be alleged in the indictment."). At the selection phase, "the critical constitutional imperative is no longer narrowing the range of potential defendants eligible for the death penalty but, rather, ensuring that the jury focuses on the particular case before it and makes 'an *individualized* determination' whether the death-eligible defendant 'should in fact receive that sentence ... on the basis of [his] character ... and the circumstances of the crime.' " *Id.* (emphasis original) (quoting *Tuilaepa,* 512 U.S. at 972).

**DISCUSSION**

A. MOTIONS TO STRIKE NON-STATUTORY AGGRAVATING FACTORS

**1. Motion to Strike Non-Statutory Aggravating Factor of "Obstruction of Justice" (Doc. 101)**

Defendant first moves to strike the non-statutory aggravating factor alleging obstruction of justice. Doc. 101. Recall that the NOI alleges that "[t]he defendant attempted to obstruct the investigation of this offense by, at least, making false statements to investigators; destroying or concealing the victim's remains; and sanitizing the crime scene." Doc. 54, at 4. Defendant alleges that this aggravator is overbroad, unconstitutionally vague, and irrelevant to the jury's sentencing determination.

*(a) Overbreadth*

Defendant argues that the aggravator is overbroad because the alleged conduct occurs too frequently in murder cases. "Rare, indeed, is the perpetrator of a murder who is indifferent to his chances of being apprehended and punished by authorities and who does not take steps to attempt to avoid that outcome." Doc. 101, at 5 (citing *United States v. Jacques*, No. 2:08-cr-117 at 58 (D. Vt. May 4, 2011) (as cited in Defendant's Motion), *but see* Doc. 177, at 1 (Defendant's Reply) ("Mr. Christensen plainly did not assert that the opinion [in *Jacques*] stands for the proposition that 'a murderer would naturally take steps to avoid being caught.' ")). *Jacques* is inapposite for two reasons. First, unlike the "deception of the justice system" aggravator in *Jacques*, which merely alleged that the defendant had manipulated the State into believing he was rehabilitated, the obstruction aggravator alleged by the United States here relies on alleged false statements to investigators, destroying or concealing the victim's remains, and sanitizing the crime scene. *Cf. United States v. Jacques*, No. 2:08-CR-117, 2011 WL 1675417, at *22 (D.

7

Vt. May 4, 2011), *aff'd in part, vacated in part,* 684 F.3d 324 (2d Cir. 2012). Not every murderer makes false statements to investigators, destroys or conceals the victim's remains, or sanitizes the crime scene. *See, e.g., United States v. Roof*, 225 F. Supp. 3d 413 (D.S.C. 2016). Thus, the obstruction of justice aggravator here does narrow the class of defendants potentially eligible for the death penalty, and is therefore not overbroad. *See Fields*, 516 F.3d at 944–45.

Second, non-statutory aggravating factors need not narrow the class of defendants eligible for the death penalty at all. "[N]on-statutory aggravators play no role in the eligibility determination under the FDPA, but are relevant only in the weighing process at the ensuing sentence-selection stage." *Fields*, 516 F.3d at 944–45; *United States v. Higgs*, 353 F.3d 281, 299 (4th Cir. 2003); *United States v. Solomon*, 513 F. Supp. 2d 520, 534 (W.D. Pa. 2007) ("Once the jury has narrowed the class of defendants by finding guilt, the gateway *mens rea,* and at least one statutory aggravating factor, the focus appropriately shifts to providing the sentencer with all possible relevant information to enable it to tailor its verdict to the individual before it."). " 'Obstruction of Justice' is a proper non-statutory aggravating factor, for acts committed either at the same time as the charged offenses or afterward." *McCluskey*, 2013 WL 12329344, at *21 (citing *United States v. Bolden*, 545 F.3d 609, 612-13, 624 (8th Cir. 2008)); *Higgs*, 353 F.3d at 322–23. Accordingly, the obstruction aggravator is not overbroad.

*(b) Vagueness*

Defendant next argues that the obstruction aggravator is unconstitutionally vague, reasoning that the proposed aggravator "offers the jury no guidance whatsoever on how to make the determination of whether Mr. Christensen's alleged conduct constitutes obstruction of an investigation." Doc. 101, at 6. Again, an aggravating factor is not unconstitutionally vague "if it has some common-sense core of meaning … that criminal juries should be capable of

8

understanding." *Tuilaepa*, 512 U.S. at 973 (internal quotations omitted). Here, the obstruction

aggravator alleged by the United States relies on alleged false statements to investigators,

destroying or concealing the victim's remains, and sanitizing the crime scene. The Court is

confident that the obstruction aggravator, as alleged here, has a commonsense meaning easily

understood by jurors. *McCluskey*, 2013 WL 12329344, at *21; *Bolden*, 545 F.3d at 624; *Higgs*,

353 F.3d at 322–23. Accordingly, the obstruction factor is not unconstitutionally vague.

*(c) Relevance*

Lastly, Defendant argues that the obstruction aggravator is not relevant to the jury's

sentencing determination because (1) the alleged conduct is insufficient to establish the crime of

obstruction, and (2) the alleged conduct is insufficient to justify an enhancement of a non-capital

sentence under the Sentencing Guidelines. Doc. 101, at 7–8. At a sentencing hearing under the

FDPA, "information may be presented as to any matter relevant to the sentence, including any

mitigating or aggravating factor permitted or required to be considered under section 3592." 18

U.S.C. § 3593(c). The FDPA does not define "relevance" itself, but at least two circuit courts

have applied the definition of relevance found in Federal Rule of Evidence 401. *See United*

*States v. Lujan*, 603 F.3d 850, 854 (10th Cir. 2010) ("Although § 3593(c) fails to define

'relevant,' we have interpreted it as 'the same standard used throughout the federal courts under

Federal Rule of Evidence 401.' "); *United States v. Basham,* 561 F.3d 302, 331–32 (4th Cir.

2009) (defining § 3593(c) relevance with the Federal Rule of Evidence 401 definition).

Defendant urges the Court to adopt a more demanding standard for relevance than

provided by FRE 401, but only for the United States. *See* Doc. 177, at 7 (citing *United States v.*

*Friend*, 92 F. Supp. 2d 534, 543 (E.D. Va. 2000) (defining relevance for evidence used to support

nonstatutory aggravating factor as "an issue which (a) is of sufficient seriousness in the scale of

9

societal values to be weighed in selecting who is to live or die; and (b) is imbued with a sufficient degree of logical and legal probity to permit the weighing process to produce a reliable outcome.")). The Court declines to do so. First, the Court sees no reason to define relevance one way for the United States and another way for Defendant. Rather, the relevance of evidence should depend on whether "it has any tendency to make a fact more or less probable than it would be without the evidence[,] and the fact is of consequence in determining the action." Fed. R. Evid. 401. Defendant's concerns about the probity and heightened reliability of such evidence are better addressed under 18 U.S.C. § 3593(c)'s balancing test. *See* § 3593(c) ("Information is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury."). Applying the above principles, Defendant's alleged conduct—false statements to investigators, destroying or concealing the victim's remains, and sanitizing the crime scene—is clearly relevant to the character of Defendant and the circumstances of the crime. *Higgs*, 353 F.3d at 323 ("[W]e have no doubt that Higgs's destruction of evidence and tampering with witnesses in order to cover his tracks, impede the investigation into the murders, and increase his chances of being acquitted were highly relevant aggravating circumstances which were properly submitted to the jury for its consideration in making the requisite individualized determination."); *Lujan*, 603 F.3d at 854.

For these reasons, Defendant's Motion (Doc. 101) to Strike Non-Statutory Aggravating Factor of "Obstruction of Justice" is DENIED.

**2. Motion to Strike all Non-Statutory Aggravating Factors in their Entirety (Doc. 103)**

Next, Defendant moves to strike every non-statutory aggravator alleged in the NOI. Specifically, Defendant argues that (1) the FDPA does not authorize the utilization of non-

10

statutory aggravating factors; (2) non-statutory aggravating factors do not constitutionally limit and guide the discretion of the jury, thus permitting wholly arbitrary and capricious death sentences in violation of the Eighth and Fourteenth Amendments; and (3) permitting the Department of Justice to define non-statutory aggravating circumstances after the crime but before trial violates the ban on ex post facto laws. Doc. 103 at 3–10.

*(a) The FDPA Allows Non-Statutory Aggravators*

Defendant argues that the use of non-statutory aggravating factors (with the exception of victim impact evidence) is not authorized by the FDPA. This is so, Defendant argues, because 18 U.S.C. § 3592(c), which provides that the jury "may consider whether any other aggravating factor for which notice has been given exists[,]" is contradicted by § 3591(a), which provides that a sentence of death may only be imposed after the jury considers the factors in § 3592. Defendant argues that because § 3592(c) contains only 16 statutory aggravating factors, a jury could not consider any nonstatutory aggravating factors, which are not "set out" in § 3592.

Defendant's construction of the FDPA is not persuasive. The plain meaning of § 3592 provides for non-statutory aggravating factors; any other reading of this provision would render it inoperative. As noted by Defendant, the district court in *Nguyen* reached the same conclusion. *United States v. Nguyen*, 928 F. Supp. 1525, 1536 (D. Kan. 1996). To the extent that additional discussion is necessary, the Court agrees with the district court's analysis in *Nguyen* and adopts it here.

*(b) Non-Statutory Aggravating Factors do not Violate the Eighth Amendment*

Defendant also argues that allowing the United States "to unilaterally expand the list of aggravating factors on a case-by-case basis injects into capital sentencing proceedings precisely the uncertainty and disparate case results that *Furman* found to violate the Eighth Amendment"

11

because the statute "provides no guidance to prosecutors in determining how to define or select

non-statutory aggravating circumstances [*sic*] factors in a particular case." Doc. 103, at 6. Again,

Defendant misunderstands the purpose of non-statutory aggravating factors in the FDPA

framework. Non-statutory aggravating factors need not narrow the class of defendants eligible

for the death penalty at all because they "play no role in the eligibility determination under the

FDPA, but are relevant only in the weighing process at the ensuing sentence-selection stage."

*Fields*, 516 F.3d at 944–45; *Higgs*, 353 F.3d at 299; *Solomon*, 513 F. Supp. 2d at 534. At the

selection phase, "the critical constitutional imperative is no longer narrowing the range of

potential defendants eligible for the death penalty but, rather, ensuring that the jury focuses on

the particular case before it and makes 'an *individualized* determination' whether the death-

eligible defendant 'should in fact receive that sentence ... on the basis of [his] character ... and

the circumstances of the crime.' " *Fields*, 516 F.3d at 944–45 (quoting *Tuilaepa*, 512 U.S. at

972). As the Supreme Court recognized in *Zant*,

> [S]tatutory aggravating circumstances play a constitutionally necessary function at
> the stage of legislative definition: they circumscribe the class of persons eligible for
> the death penalty. *But the Constitution does not require the jury to ignore other
> possible aggravating factors* in the process of selecting, from among that class,
> those defendants who will actually be sentenced to death. What is important at the
> selection stage is an *individualized* determination on the basis of the character of
> the individual and the circumstances of the crime.

*Zant v. Stephens*, 462 U.S. 862, 878–79 (1983) (emphasis added); *see also Simmons v. South

Carolina*, 512 U.S. 154, 162 (1994) ("[T]he State's evidence in aggravation is not limited to

evidence relating to statutory aggravating circumstances."). Thus, non-statutory aggravating

factors that relate to the character of the defendant or the circumstances of the crime do not

violate the Eighth Amendment.

12

*(c) Non-Statutory Aggravating Factors do not Violate the Prohibition on Ex Post Facto Laws*

Third, Defendant argues that permitting the Department of Justice to define non-statutory aggravating circumstances after the crime but before trial violates the constitutional ban on ex post facto laws. Doc. 103, at 7. This is so, Defendant argues, because "[t]he statutory scheme which the government hopes to use to deprive Mr. Fell [*sic*] of his life 'makes more burdensome the punishment for a crime, after its commission … .'" *Id.* (quoting *Beazell v. Ohio*, 269 U.S. 167 (1925)). Although Mr. Fell is not on trial here, the Second Circuit rejected a similar challenge in his case, *United States v. Fell*:

> Here, unlike in *Cunningham,* the jury, not a judge, found both the statutory and the non-statutory aggravating factors beyond a reasonable doubt. Regardless, the FDPA requires only that the jury sentencing Fell find mental culpability and at least one statutory aggravator, both charged in the superseding indictment, before finding him "eligible" for the death penalty. *See* 18 U.S.C. § 3593(e). Whether or not Fell *should* be sentenced to death was a calculation made by the jury based on a variety of statutory and non-statutory considerations. Accordingly, the factors that Fell's jury assessed when determining the permissibility of the death penalty in his case did not change the maximum sentence authorized under the statute.

*United States v. Fell*, 531 F.3d 197, 238 (2d Cir. 2008). Similarly, the Fourth Circuit rejected an ex post facto argument in *Higgs*. *See United States v. Higgs*, 353 F.3d 281, 322 (4th Cir. 2003) ("Although aggravating factors do make more burdensome the punishment for the crime, nonstatutory aggravating factors and mitigating factors are weighed by the jury to make the individualized determination to impose the death sentence upon a defendant who has already been found eligible. They do not increase the possible punishment or alter the elements of the offense.") (internal quotations omitted); *United States v. Montgomery*, 10 F. Supp. 3d 801, 821 (W.D. Tenn. 2014). Because non-statutory aggravating factors do not increase the punishment for a death-eligible defendant, they do not violate the ex post facto clause. Accordingly, Defendant's Motion (Doc. 103) to Strike all Non-Statutory Aggravating Factors in their Entirety is DENIED.

**3. Motion to Strike Non-Statutory Aggravating Factor of "Lack of Remorse" as Duplicative of "Future Dangerousness" (Doc. 104)**

Defendant argues that the non-statutory aggravating factors of "lack of remorse" and "other serious acts of violence" are duplicative of subparts of the non-statutory aggravating factor of "future dangerousness." Doc. 104, at 2. He asks the Court to strike the lack of remorse aggravator.[1] Defendant's argument is based on the Tenth Circuit's decision in *United States v. McCullah*, 76 F.3d 1087 (10th Cir. 1996). In *McCullah*, the district court allowed the jury to consider both the aggravating factor of "intentionally engaged in conduct intending that the victim be killed or that lethal force be employed against the victim, which resulted in death of the victim," and the non-statutory aggravating factor, "committed the offenses as to which he is charged in the indictment." *Id*. at 1111. The Tenth Circuit reasoned that these two factors substantially overlapped with each other because, "[i]n order for the jury to find that Mr. McCullah committed the offenses with which he was charged, the jury necessarily had to conclude that Mr. McCullah did intentionally kill an individual, or did intentionally counsel, command, induce, procure, or cause the killing of an individual, and such killing did result or happen." *Id*.

Additionally, the district court allowed the jury to consider both a statutory aggravating factor that requires that the defendant intentionally engages in conduct which he knows creates a grave risk of death and that such death results, and a statutory aggravating factor which refers to intentional conduct intending that the victim be killed. *Id*. The Tenth Circuit reasoned that the aggravating factor of intentional conduct intending that the victim be killed "necessarily

---

[1] Although the title and the concluding paragraph of his Motion seek only to strike the lack of remorse aggravator, Defendant makes a conflicting representation in the argument section of his Motion, asking the Court to strike *both* the lack of remorse and further dangerousness aggravators. *Cf*. Doc. 104 at 1, 7, *with* Doc. 104 at 2. Regardless, the Court's disposition of Defendant's Motion would not change even if Defendant sought to attack both aggravators.

subsume[d]" the aggravating factor of intentionally engages in conduct which he knows creates a grave risk of death and that such death results because "[a]ny intentional conduct aimed at producing death is by definition conduct done with knowledge of grave risk of death." *Id*. The Tenth Circuit concluded that "the use of duplicative aggravating factors creates an unconstitutional skewing of the weighing process which necessitates a reweighing of the aggravating and mitigating factors." *Id*. at 1112.

In *Jones v. United States*, the Supreme Court noted that it had "never before held that aggravating factors could be duplicative so as to render them constitutionally invalid, nor [had it] passed on the 'double counting' theory that the Tenth Circuit advanced in *McCullah* and the Fifth Circuit appears to have followed [below]." *Jones v. United States*, 527 U.S. 373, 398 (1999) (plurality opinion). Nevertheless, because the Court determined that there were issues with the lower courts' application of the double counting theory, it did not reach the issue of whether the double counting theory itself was valid.

In its Response, the United States asserts that even if *McCullah*'s double counting theory is valid, the aggravating factors alleged here are not duplicative. Doc. 149. The lack of remorse aggravating factor asks the jury to decide whether Defendant "demonstrated a lack of compunction for kidnapping and murdering Ms. Zhang" and will be supported by evidence of Defendants words and deeds. *Id*. at 3. In contrast, the future dangerousness aggravating factor "asks the jury to consider multiple facts and determine whether those circumstances establish that the defendant is likely to be dangerous is the future" and will be proven by evidence of Defendant's potentiality for future dangerous acts. *Id*. at 4 (citing *Johnson v. Gibson*, 169 F.3d 1239, 1252 (10th Cir. 1999)). Therefore, the United States argues, one factor does not "subsume" the other, and thus there is no double counting here.

15

The Court agrees with the United States that the lack of remorse and future dangerousness aggravating factors are not duplicative. Although the future dangerousness aggravating factor will rely, in part, on the same evidence used to support the lack of remorse aggravating factor—Defendant's alleged statements following the offense—each factor relates to a different purported characteristic of Defendant. *See Gibson*, 169 F.3d at 1252 (factor of past felony not duplicative of future dangerousness); *United States v. Umana*, 707 F. Supp. 2d 621, 638 (W.D.N.C. 2010) (factor for gang motivated killing not duplicative of future dangerousness). Lack of remorse concerns Defendant's state of mind following the alleged offense; future dangerousness concerns his propensity for violence in the future. "Two factors are *not* duplicative merely because they are supported by the same evidence." *United States v. Montgomery*, 10 F. Supp. 3d 801, 813 (W.D. Tenn. 2014) (quoting *United States v. Fell*, 531 F.3d 197, 236 (2d Cir. 2008)); *see also Jones,* 527 U.S. at 399, 119 S.Ct. 2090) ("[E]ven if the phrase "personal characteristics" as used in factor 3(C) *was* understood to include the specific personal characteristics listed in 3(B), the factors as a whole were not duplicative—at best, certain evidence was relevant to two different aggravating factors."). Accordingly, Defendant's Motion (Doc. 104) to Strike Non-Statutory Aggravating Factor of "Lack of Remorse" as Duplicative of "Future Dangerousness" is DENIED.

**4. Motion to Strike Non-Statutory Aggravating Factor of "Vulnerability of Victim (Doc. 105)**

Defendant argues that the non-statutory aggravating factor of "vulnerability of victim" should be stricken from the NOI. Doc. 105. Recall that the NOI alleges that "[t]he victim, Y.Z., was particularly vulnerable due to her small stature and limited ability to communicate in English." Doc. 54, at 4. Defendant argues that "small stature" and "limited English capability"

are vague and overbroad, the limited English component lacks any nexus to the crime, and the limited English component is without factual basis.

*(a) Overbreadth and Vagueness of Small Stature Component*

Defendant argues that the "small stature" component of the vulnerability of victim aggravator is vague and overbroad because it fails to inform the jury what it must find to impose the death penalty and fails to channel the jury's discretion. Doc. 105, at 4. Specifically, Defendant notes that a missing persons form approximated the victim's height and weight (albeit incorrectly, Defendant concedes) as falling within statistical averages for women. Defendant, operating under the assumption that the victim was in fact of average height and weight, proceeds to argue that this component would apply to almost every female victim of a male offender. *Id*. As already discussed, non-statutory aggravating factors are not susceptible to challenges for overbreadth. *Fields*, 516 F.3d at 944–45; *Higgs*, 353 F.3d at 299. Even if they were, not all murders involve exploiting the victim's particular vulnerabilities. *Cf. United States v. McVeigh*, 944 F. Supp. 1478 (D. Colo. 1996), *United States v. Kaczynski,* CR. No. 96-259, 1997 WL 716487 (E.D. Cal. 1997).  Moreover, to the extent that Defendant is making a sufficiency of the evidence challenge, that argument is premature. If Defendant believes that the victim did not have a small stature, he may make that argument to the jury. Thus, Defendant's overbreadth challenge is denied.

Defendant also argues that the "small stature" component of the vulnerability of victim aggravator is vague. Doc. 105, at 4. An aggravating factor is not unconstitutionally vague "if it has some common-sense core of meaning … that criminal juries should be capable of understanding." *Tuilaepa*, 512 U.S. at 973 (internal quotations omitted). The Court believes that a jury in this case will be more than capable of distilling the common-sense core meaning of the

"small stature" component of the vulnerability of victim aggravator. Accordingly, Defendant's vagueness challenge is denied.

*(b) Vagueness of Limited English Component*

Defendant next argues that the "limited ability to communicate in English" component of the vulnerability of victim aggravator must be stricken as unconstitutionally vague. Doc. 105, at 5. The Court believes that a jury in this case will be more than capable of distilling the common-sense core meaning of the "limited ability to communicate in English" component of the vulnerability of victim aggravator. Defendant's vagueness challenge to the "limited ability to communicate in English" component of the vulnerability of victim aggravator is denied.

*(c) Nexus to Crime; Factual Basis*

Defendant also argues that the victim's alleged limited English capacity lacks any nexus to the alleged offense. Doc. 105, at 5. Specifically, Defendant argues that "there exists no evidence whatsoever that Y.Z.'s alleged limited English ability contributed to her kidnapping or death." *Id*. at 7. In its Response, the United States notes that "it will prove the defendant employed a specific method to lure vulnerable victims into his car, and that Ms. Zhang was particularly susceptible to his methods." Doc. 150, at 13. Such information, if proven, would focus the jury's attention on the circumstances of the crime. *See Fields*, 516 F.3d at 944–45 (quoting *Tuilaepa,* 512 U.S. at 972).

Additionally, Defendant makes a related argument that the United States cannot show that Y.Z. struggled to communicate in English. Doc. 105, at 8. In support, Defendant references an English proficiency test Ms. Zhang was required to pass and emails Ms. Zhang authored regarding her academic studies. To the extent that Defendant is making a sufficiency of the evidence challenge, that argument is premature. If Defendant believes that the victim did not

have difficulty communicating in English, he may make that argument to the jury. Accordingly, Defendant's Motion (Doc. 105) to Strike Non-Statutory Aggravating Factor of "Vulnerability of Victim is DENIED.

## 5. Motion to Strike Non-Statutory Aggravating Factor of Victim Impact Evidence (Doc. 106)

First, Defendant argues generally that introduction of victim impact evidence at the penalty phase of a capital trial violates the Eighth Amendment. Doc. 106, at 2–7. The basis for this argument is that the Supreme Court's decision in *Payne v. Tennessee*, 501 U.S. 808 (1991), was wrongly decided and should be overruled. This Court will leave that decision to the Supreme Court. *See Agostini v. Felton,* 521 U.S. 203, 238 (1997); *see also United States v. Vaughn*, 722 F.3d 918, 926 (7th Cir. 2013) (following *Agostini*'s command to leave to the Supreme Court "the prerogative of overruling its own decisions").

Second, Defendant states that he will be filing a motion in limine to exclude improper victim impact evidence. Doc. 106, at 7–13. Additionally, Defendant has separately filed a renewed motion to compel victim impact evidence. *See* Doc. 167. Defendant's arguments relating to discovery or exclusion of anticipated victim impact evidence will be addressed in those orders. As presented, Defendant's Motion (Doc. 106) to Strike Non-Statutory Aggravating Factor of Victim Impact Evidence is DENIED.

## 6. Motion to Strike Non-Statutory Aggravating Factor of "Other Serious Acts of Violence" (Doc. 108)

Defendant next moves to strike the non-statutory aggravating factor of "other serious acts of violence" from the NOI. Doc. 108. Recall that this aggravator alleges "[t]he defendant has committed other serious acts of violence including … in or about 2013, the defendant choked

19

and sexually assaulted M.D., in the Central District of Illinois." Doc. 54, at 3. Defendant argues

that evidence of unadjudicated conduct that the United States intends to introduce in support of

the other serious acts of violence aggravator is false and unreliable, and allowing the jury to

consider the evidence would violate the Fifth and Eighth Amendments to the Constitution. Doc.

108, at 2. In his Reply, Defendant asserted that the United States noticed its intent to use the

alleged assault on M.D. as 404(b) evidence at the guilt/innocence phase of the trial, and therefore

requested a reliability hearing prior to trial. Doc. 175, at 7 n.3. However, on December 11, 2018,

the Court entered the following text order:

> TEXT ONLY ORDER as to Brendt A Christensen: At the 11/26/2018 telephone
> conference, the Court reserved ruling on whether to allow an evidentiary hearing
> on Defendant's Motion 108 . After careful review of the Motion, Response, and
> Reply, the Court finds that the Motion 108 is directed squarely at the penalty phase,
> and it is not until Defendant's Reply 175 that Defendant raises a challenge to the
> use of the evidence at issue during the guilty phase of the trial. If Defendant wishes
> to raise such a challenge, it should be included in a motion so that the United States
> has an opportunity to respond. No such motion is currently on file. Accordingly, the
> Court denies Defendant's request to present evidence relating to 108 at the
> December hearings.

Text Order, Dec. 11, 2018. Thereafter, Defendant filed a sealed motion seeking to preclude the

testimony of M.D., and the United States responded. Docs. 238, 282. In the United States'

Response, it indicates that it does not intend to call M.D. in the guilt phase of the trial. Doc. 282,

at 2 n.1. Thus, any issue related to M.D.'s testimony will be limited to the penalty phase of the

trial, if one is necessary.

"[E]very circuit to consider the issue has held that unadjudicated conduct may be

considered in the process of assessing aggravating factors[.]" *United States v. Corley*, 519 F.3d

716, 724 (7th Cir. 2008). However, "in determining whether such information may be

considered[,]" a district court "must consider a number of factors, including the reliability of the

evidence, the prejudicial and probative impact of the evidence, and the burden of proof both for

determining reliability and for a jury to determine whether the conduct may be considered." *Id*. At this point, it is unclear whether the United States intends to rely solely on M.D.'s testimony to support the other serious acts of violence aggravator, or whether it also intends to introduce evidence of Defendant's alleged killing of a guinea pig. *Cf*. Doc. 175, at 5 n.2 (Defendant assumes, based on United States' Response, that evidence in support of this aggravator will be limited to M.D.'s testimony); *with* Doc. 281, at 36 (United States argues that evidence of Defendant killing a guinea pig should not be excluded). If the Court allows M.D.'s testimony, the instant Motion would be denied. If the Court prohibits M.D. from testifying, it will likely strike the other serious acts of violence aggravator regardless of whether the United States also intends to rely on the alleged killing of a guinea pig.[2] These are decisions that the Court will be in a better position to evaluate, if necessary, following the guilt phase of the trial. Accordingly, the Court DEFERS RULING on Defendant's Motion (Doc. 108) to Strike Non-Statutory Aggravating Factor of "Other Serious Acts of Violence" until the conclusion of the guilt phase of the trial.

**7. Motion to Strike Non-Statutory Aggravating Factor of "Lack of Remorse" (Doc. 109)**

Defendant moves to strike the non-statutory aggravating factor of "lack of remorse" from the NOI. Doc. 109. Recall that the NOI alleges that "defendant has demonstrated, by statements he made following the offense, that he lacked remorse for the kidnapping resulting in the death of Y.Z." Doc. 54, at 3. Additionally, in the United States' May 18, 2018 letter to defense counsel, the United States informed Defendant that it intended to introduce the following evidence in support of the lack of remorse aggravator: Christensen's admissions; Christensen's academic

---

[2] In *United States v. Briseno*, 2015 WL 163526 at *14 (N.D. Ind. 2015), the district court, applying *Corley*, ordered the United States to notify the court in advance of any attempt to introduce at the sentencing phase evidence of unadjudicated criminal conduct (there, cruelty to ducks) not previously disclosed for an evaluation of admissibility. If a sentencing phase is necessary, the Court anticipates following that same approach here.

records; forensic evidence from his electronic devices, social media, and internet usage;

photographs or other documentation and testimony from persons with knowledge thereof; and

testimony of persons who interacted with Christensen at the University of Illinois. Doc. 109, at 7.

From this, Defendant postulates the United States will attempt to introduce evidence relating to

Defendant's alleged failure to apologize, or to show regret, or to acknowledge his

blameworthiness. *Id*. Defendant asserts that introduction of such evidence would violate the Fifth

Amendment. "[T]he Fifth Amendment … forbids either comment by the prosecution on the

accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v.*

*California*, 380 U.S. 609, 615 (1965); *but see United States v. Mikos*, 539 F.3d 706, 710 (7th Cir.

2008) ("Nothing in *Griffin* or its successors prevents a prosecutor from urging the jury to draw

inferences from events that can be established by evidence independent of the accused's

silence.") (citing *United States v. Robinson*, 485 U.S. 25 (1988); *United States v. Sblendorio*, 830

F.2d 1382, 1391–92 (7th Cir.1987)).

 In its Response, the United States disclaims any intent to rely on Defendant's silence and

asserts that it will prove this factor through evidence of Defendant's affirmative statements and

actions. Doc. 150, at 20. Given the United States' representation that it will not rely on

Defendant's silence to prove the lack of remorse aggravator, the Court DENIES AS MOOT

Defendant's Motion (Doc. 109) to Strike the Non-Statutory Aggravating Factor of "Lack of

Remorse."

## 8. Motion to Strike Aggravating Factor Alleging Future Dangerousness (Doc. 122)

 Defendant also moves to strike the non-statutory aggravating factor of future

dangerousness from the NOI as violative of the Fifth and Eighth Amendments and as unduly

prejudicial under 18 U.S.C. § 3593(c). Doc. 122. Recall that this factor alleges "[t]he defendant

is likely to commit criminal acts of violence in the future that would constitute a continuing and serious threat to the lives and safety of others, as evidenced by, at least, his demonstrated lack of remorse for his acts of violence; his other serious acts of violence; his expressed desire to be known as a killer; and his claims of additional victims and expertise in avoiding detection." Doc. 54, at 3.

*(a) Eighth Amendment Challenge*

Defendant begins his argument by noting that the Supreme Court has approved of the future dangerousness aggravating factor in two prior decisions—*Jurek v. Texas*, 428 U.S. 262, 274–75 (1976), and *Barefoot v. Estelle*, 463 U.S. 880, 897–98 (1983).[3] In *Jurek*, the Supreme Court concluded that future dangerousness was a permissible aggravating factor based on the following reasoning:

> [T]he petitioner argues that it is impossible to predict future behavior and that the question is so vague as to be meaningless. It is, of course, not easy to predict future behavior. The fact that such a determination is difficult, however, does not mean that it cannot be made. Indeed, prediction of future criminal conduct is an essential element in many of the decisions rendered throughout our criminal justice system. The decision whether to admit a defendant to bail, for instance, must often turn on a judge's prediction of the defendant's future conduct. And any sentencing authority must predict a convicted person's probable future conduct when it engages in the process of determining what punishment to impose. For those sentenced to prison, these same predictions must be made by parole authorities. The task that a Texas jury must perform in answering the statutory question in issue is thus basically no different from the task performed countless times each day throughout the American system of criminal justice. What is essential is that the jury have before it all possible relevant information about the individual defendant whose fate it must determine. Texas law clearly assures that all such evidence will be adduced.

*Jurek*, 428 U.S. at 274–76 (Stevens, J.). While *Jurek* addressed lay witness testimony in support of a future dangerousness aggravator, *Barefoot* extended *Jurek*'s reasoning to expert witness

---

[3] Defendant incorrectly cites the case name as *Barefoot v. Texas* (Doc. 122, at 2) and later incorrectly cites the year *Barefoot* was decided as 1963. The correct citation is *Barefoot v. Estelle*, 463 U.S. 880 (1983). Defendant also incorrectly cites (Doc. 122, at 2) 2017 as the year *Johnson* was decided. *See Johnson v. United States*, 135 S. Ct. 2551 (2015).

testimony on the subject. *Barefoot*, 463 U.S. at 898–99 ("If the jury may make up its mind about future dangerousness unaided by psychiatric testimony, jurors should not be barred from hearing the views of the State's psychiatrists along with opposing views of the defendant's doctors.").

Recognizing the above authority, Defendant argues that developments since *Jurek* and *Barefoot* were decided establish that admission of future dangerousness testimony violates the Eighth Amendment because it is inherently unreliable. Doc. 122, at 5–11. He relies on studies and articles that purport to demonstrate that capitally-charged defendants commit serious acts of violence in prison at a very low base rate and that neither the government nor juries have the ability to reliably predict whether a defendant is likely to commit a serious violent act in the future. In its Response, the United States simply cites to a list of cases allowing the future dangerousness aggravator and argues that Defendant's concerns about the reliability of such evidence can be addressed through the adversarial process at trial. Doc. 150, at 22.

"[L]ower courts have uniformly upheld future dangerousness as a non-statutory aggravating factor in capital cases under the FDPA, including instances where such factor is supported by evidence of low rehabilitative potential and lack of remorse." *United States v. Bin Laden*, 126 F. Supp. 2d 290, 303–04 (S.D.N.Y. 2001) (collecting cases), *aff'd sub nom. In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93 (2d Cir. 2008). Indeed, the argument presented by Defendant here is similar to the argument rejected by the district court in *Basciano*. In *Basciano*, the district court reasoned,

> The focus of Basciano's challenge is whether the measures taken by the Government to incapacitate Basciano have effectively nullified his future dangerousness while incarcerated. In this regard, Basciano points to the concern stated in *United States v. Diaz*, that "[i]f ... the government's incarceration protocols would nullify [a] defendant['s] dangerousness, presentation of [future dangerousness] evidence to the jury would not be relevant to the sentencing determination." 2007 WL 656831, at *23. The possibility that such protocols or other measures might serve to limit or undermine the safety threat posed by a

defendant does not require the Future Dangerousness Factor to be stricken in this case.

*United States v. Basciano*, 763 F. Supp. 2d 303, 353 (E.D.N.Y. 2011), *aff'd*, 634 F. App'x 832 (2d Cir. 2015). The Court agrees with the overwhelming weight of judicial authority on the subject. The non-statutory aggravating factor of future dangerousness is constitutional. *See Jurek*, 428 U.S. at 274–75; *Barefoot*, 463 U.S. at 897–98. To the extent that Defendant's argument challenges the evidentiary support for this factor, the Supreme Court has noted that the proper method for doing so is by bringing those concerns to the attention of the jury. *Barefoot*, 463 U.S. at 901 ("All of these professional doubts about the usefulness of psychiatric predictions can be called to the attention of the jury. Petitioner's entire argument, as well as that of Justice Blackmun's dissent, is founded on the premise that a jury will not be able to separate the wheat from the chaff. We do not share in this low evaluation of the adversary process."). Finally, Defendant notes that he incorporates into this Motion his discussion from a prior motion on the application of *stare decisis*. Again, this Court will leave that decision to the Supreme Court. *See Agostini v. Felton*, 521 U.S. 203, 238 (1997); *see also United States v. Vaughn*, 722 F.3d 918, 926 (7th Cir. 2013) (following *Agostini*'s command to leave to the Supreme Court "the prerogative of overruling its own decisions").

*(b) Fifth Amendment Challenge*

Next, Defendant argues that the future dangerousness aggravator is so vague as to violate the Fifth Amendment. Doc. 122, at 11–15. Therein, he argues that the "as evidenced by" language of the future dangerousness aggravator in the NOI is similar to language the Supreme Court found unconstitutionally vague in *Johnson v. United States*, 135 S. Ct. 2551 (2015). But *Johnson* did not alter the applicable test for determining whether an aggravating factor is

unconstitutionally vague. "As long as an aggravating factor has a core meaning that criminal

juries should be capable of understanding, it will pass constitutional muster."

*Jones v. United States*, 527 U.S. 373, 400 (1999); *Tuilaepa*, 512 U.S. at 973 (an aggravating

factor is not unconstitutionally vague "if it has some common-sense core of meaning … that

criminal juries should be capable of understanding"). Here, the United States intends to prove

this factor with individualized evidence purporting to show Defendant's "demonstrated lack of

remorse for his acts of violence; his other serious acts of violence; his expressed desire to be

known as a killer; and his claims of additional victims and expertise in avoiding detection." Doc.

54, at 3. The Court believes that the future dangerousness aggravator, as alleged here, has a

commonsense meaning that jurors will be able to understand. *McCluskey*, 2013 WL 12329344, at

*21; *Bolden*, 545 F.3d at 624; *Higgs*, 353 F.3d at 322–23. Accordingly, the future dangerousness

factor is not unconstitutionally vague.

*(c) 18 U.S.C. § 3593(c)*

　　　　Lastly, Defendant argues that evidence of future dangerousness should be excluded

because its probative value would be outweighed by the danger of creating unfair prejudice. Doc.

122, at 16–22. This section of Defendant's Motion largely reiterates arguments advanced in the

motions discussed *supra*. Additionally, Defendant's Motion was filed as a motion to strike the

aggravating factor of future dangerousness, not one to exclude evidence. To the extent Defendant

raises an argument that any evidence supporting the future dangerousness aggravator would be

more prejudicial than probative, the Court concludes that this balancing is best left until the

penalty phase, if this stage is reached, when the specific information, circumstances, and context

will be before the Court. *See United States v. McCluskey*, No. CR 10-2734 JCH, 2013 WL

12329344, at *30 (D.N.M. Oct. 7, 2013) (same). Accordingly, Defendant's Motion (Doc. 122) to Strike Aggravating Factor Alleging Future Dangerousness is DENIED.

B. MOTIONS TO STRIKE STATUTORY AGGRAVATING FACTORS

### 9. Motion to Strike "Substantial Planning and Premeditation" as an Aggravating Factor (Doc. 107)

A constitutional capital sentencing scheme must "genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Zant v. Stephens*, 462 U.S. 862, 877 (1983). Thus, a statutory aggravating factor may not be overbroad—i.e., it must not be applicable to every defendant convicted of murder. *Arave v. Creech,* 507 U.S. 463, 474 (1993). The Federal Death Penalty Act accomplishes the narrowing objective by requiring the jury to find that the defendant possessed the requisite intent and by requiring the jury to find at least one statutory aggravating factor. *See* 18 U.S.C. § 3591(a)(2) (intent factors); § 3592(c) (statutory aggravating factors). The statutory aggravating factors in § 3592(c) narrow the range of conduct for which the death penalty may be considered. *United States v. Fields*, 516 F.3d 923, 944 (10th Cir. 2008).

Defendant asserts that the statutory aggravating factor of substantial planning and premeditation must be stricken from the NOI because: (a) planning and premeditation by itself is inadequate to narrow the class of murders eligible for the death penalty; (b) the modifying phrase "substantial" fails to adequately inform juries what they must find to impose the death penalty; and (c) federal courts are unable to fashion a construction of "substantial" that would be both narrowing and specific. Doc. 107, at 1–2. Each of these arguments are unpersuasive.

Defendant's first argument—planning and premeditation by itself is inadequate to narrow the class of murders eligible for the death penalty—is of no moment, since the statutory aggravating factor requires the planning and premeditation to be *substantial*. *See* 18 U.S.C. § 3592(c)(9). Defendant also argues that the substantial planning and premeditation aggravator "is so broad as to apply to virtually all premeditated killings." Doc. 107, at 1. But that truism applies the incorrect standard. The prohibition on overbreadth of statutory aggravating factors requires that the factor not be applicable to every defendant convicted of murder. *Arave*, 507 U.S. at 474. Under Defendant's logic, the statutory aggravating factor of "multiple killings or attempted killings" (18 U.S.C. § 3592(c)(16)) would likewise be unconstitutionally broad because it would apply to virtually all murders of more than one person. That same specious argument would invalidate each of the 16 aggravating factors. Applying the correct standard, it is clear that § 3592(c)(9) narrows the class of persons eligible for the death penalty compared to others found guilty of murder because not all murderers substantially plan and premeditate their killings. *Arave*, 507 U.S. at 474. For example, a defendant who burgles a victim's apartment without knowledge that the victim is home, and then, upon discovering her presence, murders the victim, sets fire to the apartment, and then calls 911 to report a fire could not be said to have substantially planned or premeditated the murder. *See, e.g., People v. Henry*, 2011 IL App (3d) 100106-U, 2011 WL 10468068, *aff'd on collateral review, Henry v. Butler*, No. 15-4205, 2018 WL 1915485, at *1 (C.D. Ill. Apr. 23, 2018). Similarly, it is unlikely that a police officer who unjustifiably shoots an individual in the course of a traffic stop would be said to have substantially planned or premeditated the murder.

Defendant also argues that the substantial planning and premeditation aggravator is unconstitutionally vague. Doc. 107, at 6. But as one district court put it, "substantial is one of

those everyday words having a common sense core meaning that jurors will be able to understand." *McVeigh*, 944 F. Supp. at 1490 (citing *Tuilaepa,* 512 U.S. at 973). Indeed, the Seventh Circuit itself has noted that

> [t]he vagueness argument has been made and rejected in *United States v. Webster*, 162 F.3d 308, 354 (5th Cir. 1998), among others. After *Jones v. United States,* 527 U.S. 373 (1999), rejected a functionally identical vagueness challenge, there is no room for maneuver. We rely on these decisions and see no constitutional reason why Mikos cannot be sentenced to death for his premeditated murder of a witness.

*United States v. Mikos*, 539 F.3d 706, 715 (7th Cir. 2008) (parallel citations omitted). Every other federal court to consider the issue is in agreement. *See United States v. Bin Laden*, 126 F. Supp. 2d 290, 297 (S.D.N.Y. 2001); *United States v. McCullah*, 76 F.3d 1087, 1110 (10th Cir. 1996), *cert. denied*, 520 U.S. 1213 (1997); *Kaczynski*, 1997 WL 716487 at \*25–26; *McVeigh*, 944 F. Supp. at 1490; *Johnson*, 1997 WL 534163 at \*4; *United States v. Glover*, 43 F. Supp. 2d 1217, 1225–26 (D. Kan. 1999); *United States v. Davis*, 904 F. Supp. 554, 558 (E.D. La. 1995); *United States v. Spivey*, 958 F. Supp. 1523, 1531 (D.N.M. 1997); *Frank,* 8 F. Supp. 2d at 278. The Court agrees with the weight of authority on the issue and finds the substantial planning and premeditation aggravator is not unconstitutionally vague.

Lastly, Defendant argues that the United States cannot meet its burden of proof with respect to the substantial planning and premeditation aggravator. Doc. 107, at 10. Curiously, Defendant states:

> In order to determine whether there is sufficient evidence for a rational jury to find an aggravating factor beyond a reasonable doubt, this Court must, after viewing the evidence in a light most favorable to the government, decide whether any rational trier of fact could have found the existence of the aggravating circumstance beyond a reasonable doubt. *United States v. Bernard*, 299 F.3d 467, 481 (5th Cir. 2002).

Doc. 107, at 10. While Defendant identifies the correct legal standard, the Court is befuddled as to its inclusion in a pretrial motion. In short, Defendant asks the Court to weigh evidence it has

not yet seen to determine whether a verdict not yet rendered *could have been* (past tense) supported by a rational trier of fact. As previously explained, the Court cannot do so. *See* Doc. 202 (order denying as premature Defendant's sufficiency of the evidence argument); *United States v. Hill*, 700 F. App'x 235, 237 (4th Cir. 2017) ("[W]hether Hill's conduct sufficiently affects interstate commerce … may well depend on a consideration of facts, and because the facts proffered here may or may not be developed at trial, it is premature to determine the constitutional issues."). Had this passage not been followed by 4 pages of argument, the Court would have thought its inclusion was an anachronism from a prior brief. The Motion (Doc. 107) to Strike "Substantial Planning and Premeditation" as an Aggravating Factor is DENIED.

**10. Motion to Strike Statutory Aggravating Factor of "Especially Heinous, Cruel, or Depraved Manner" of Committing the Offense (Doc. 111)**

Defendant next moves to strike the statutory aggravator of "especially heinous, cruel, or depraved manner" of committing the offense. Recall that this factor alleges "[t]he defendant committed the offense in an especially heinous, cruel, or depraved manner, in that it involved torture or serious physical abuse to the victim, Y.Z. (Title 18, United States Code, Section 3592(c)(6))." Doc. 54, at 2. Defendant alleges this statutory factor is both unconstitutionally vague and overbroad, though he does not really develop these arguments. Doc. 111, at 2–10. Rather, Defendant provides a general overview of cases addressing this aggravator generally before arguing, without any prior citation to *Ring* or *Hurst*, that

> in the wake of *Ring v. Arizona*, 536 U.S. 584 (2002) and *Hurst v. Florida*, 136 S. Ct. 616 (2016), this Court's analysis of the "EHCD" aggravator requires, in effect, an effort to define the precise "sub-elements" of an aggravating factor that is, in and of itself, an element of the undefined and un-enacted offense of federal capital murder. And as *Ring* and *Hurst* both held, that effort to define the "sub-elements" of an aggravating factor is unconstitutional in violation of the Fifth and Eighth Amendments.

Doc. 111, at 9. The Court is unable to understand this portion of Defendant's argument. *Ring* and *Hurst* prohibit a judge from finding an aggravating factor which increases a defendant's sentence; they do not prohibit a jury from doing so. The Court finds this argument undeveloped and therefore rejects it without further discussion.

Defendant also concludes, with no analysis or application of the cited law to the anticipated facts of this case, that aggravating factor should be stricken because "the state of the law concerning the [especially heinous, cruel, or depraved manner] aggravator is in total disarray." *Id*. at 9–10. In its Response, the United States argues that the FDPA's especially heinous, cruel, or depraved manner statutory aggravator was drafted as specifically recommended by the Supreme Court to avoid the constitutional vagueness and overbreadth concerns Defendant advances here. Doc. 152, at 5; *see Maynard v. Cartwright*, 486 U.S. 356, 363–65 (1988); *Walton v. Arizona*, 497 U.S. 639, 654–55 (1990), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002) ("In *Maynard v. Cartwright*, we expressed approval of a definition that would limit Oklahoma's especially heinous, atrocious, or cruel aggravating circumstance to murders involving some kind of torture or physical abuse, but we also noted that such a construction was not the only one that would be constitutionally acceptable. The construction given by the Arizona Supreme Court to the cruelty aspect of the Arizona aggravating circumstance is virtually identical to the construction we approved in *Maynard.*"). The United States asserts that federal courts have rejected all vagueness challenges to § 3592(c)(6) because it expressly incorporates the limiting requirements of torture or serious physical abuse that the Supreme Court suggested in *Maynard. Id*. (citing, *inter alia*, *United States v. Mitchell*, 502 F.3d 931, 976–77 (9th Cir. 2007); *United States v. Chanthadara*, 230 F.3d 1237, 1262–63 (10th Cir. 2000); *United States v. Webster*, 162 F.3d 308, 354 (5th Cir. 1998)).

31

Additionally, the United States notes that although courts have rejected Defendant's argument that § 3592(c)(6) is overbroad because it includes physical abuse or mutilation of a victim's body after death (*see Mitchell*, *supra*), the United States intends to present evidence of torture and serious physical abuse to the victim that occurred prior to death. Doc. 152, at 6 (citing *United States v. Hall*, 152 F.3d 381, 414 (5th Cir. 1998); *United States v. Brown*, 441 F.3d 1330, 1362–63 (11th Cir. 2006); *Chanthadara*, 230 F.3d at 1261–62; *McCluskey*, 2013 WL 12329344 at *17).

The FDPA's especially heinous, cruel, or depraved manner statutory aggravator is not unconstitutionally overbroad because it limits the class of murderers potentially eligible for the death penalty to those who committed the murder in an especially heinous, cruel, or depraved manner involving torture or serious physical abuse to the victim. 18 U.S.C. § 3592(c)(6); *see also Fields*, 516 F.3d at 944–45; *Mitchell*, 502 F.3d at 976–77 ("[S]uch a factor plainly narrows the class of those eligible for the death penalty and rationally identifies those who are more blameworthy on account of their depravity or cold-bloodedness."). Nor is it vague. *Chanthadara*, 230 F.3d at 1262 ("The instruction … informed the jury that it was required to find that the defendant engaged in torture or serious physical abuse. Therefore, it was not unconstitutionally vague."); *Jones v. United States,* 527 U.S. 373, 400 (1999) ("Any vagueness in the language [of a heinous, cruel, and depraved aggravating factor] ... is cured by the limitation in the statute that the offense involve torture or serious physical abuse."). Finally, although *Mitchell* raised the possibility that the text of § 3592(c)(6) on its face does not encompass post-mortem mutilation, Defendant's Motion raises only constitutional issues; it does not purport to raise a statutory interpretation argument. *See Mitchell*, 502 F.3d at 977. Accordingly, Defendant's Motion (Doc.

111) to Strike Statutory Aggravating Factor of "Especially Heinous, Cruel, or Depraved Manner" of Committing the Offense is DENIED.

**11. Motion to Strike "Death During the Commission of Another Crime" (Doc. 112)**

Finally, Defendant argues that the death during the commission of another crime aggravator is duplicative of the essential elements of the charge alleging kidnapping resulting in death, and should be stricken as violative of the Eighth Amendment. Doc. 112, at 2. Recall that the statutory aggravating factor alleged in the NOI states "[t]he death, or injury resulting in death, occurred during the commission or attempted commission of, or during the immediate flight from the commission of, an offense under Title 18, United States Code, Section 1201 (kidnapping)." Doc. 54, at 2; 18 U.S.C. § 3592(c)(1). Count One of the Superseding Indictment alleges that Defendant kidnapped Y.Z. and used an instrumentality of interstate commence in furtherance of the commission of the offense, which resulted in the death of Y.Z. Doc. 26, at 1. Under the federal kidnapping statute, a person who commits the offense of kidnapping "shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment." *See* 18 U.S.C. § 1201(a). Defendant claims that "the substantive offense is that the kidnapping resulted in death, and the statutory aggravating factor is that the death occurred as a result of the kidnapping." Doc. 112, at 2. Defendant proceeds to argue that (1) "[w]here an aggravating factor simply restates an aspect of the offense charged in the indictment, its allegation violates the Eighth Amendment, because it fails to narrow the class of offenders subject to the death penalty," and (2) "asking the jury to weigh the same information risks skewing the penalty selection decision by permitting double counting." *Id* at 3.

Defendant's first argument is premised on distinguishing the Supreme Court's decision in
*Lowenfield v. Phelps*, 484 U.S. 231 (1988). In *Lowenfield*, the petitioner was found guilty of
capital murder under a Louisiana statute that defined capital murder to include the offender's
specific intent to kill or inflict great bodily harm upon more than one person. 484 U.S. at 242–43.
The only statutory aggravating factor found by the jury was that the offender knowingly created
a risk of death or great bodily harm to more than one person. *Id.* at 243. Responding to the
petitioner's claim that his sentence was unconstitutional because the aggravating factor did not
narrow the class of persons eligible for the death penalty but merely reiterated the elements of
the offense, the Supreme Court reasoned that:

> Here, the "narrowing function" was performed by the jury at the guilt phase when
> it found defendant guilty of three counts of murder under the provision that "the
> offender has a specific intent to kill or to inflict great bodily harm upon more than
> one person." The fact that the sentencing jury is also required to find the existence
> of an aggravating circumstance in addition is no part of the constitutionally required
> narrowing process, and so the fact that the aggravating circumstance duplicated one
> of the elements of the crime does not make this sentence constitutionally infirm.
> There is no question but that the Louisiana scheme narrows the class of death-
> eligible murderers and then at the sentencing phase allows for the consideration of
> mitigating circumstances and the exercise of discretion. The Constitution requires
> no more.

*Lowenfield*, 484 U.S. at 246.

Here, the death during the commission of another crime aggravator is not duplicative of
an element of the offense of kidnapping resulting in death. This is so because a jury could
convict Christensen of kidnapping with death *resulting* in the guilt phase of the trial and still
answer 'no' the statutory aggravating factor in the penalty phase if the jury were to find that
Christensen did not *cause* the death of the victim during the commission of the crime of
kidnapping. *United States v. Jones*, 132 F.3d 232, 249 (5th Cir. 1998), *aff'd,* 527 U.S. 373 (1999)
(finding death during commission of another crime aggravator not duplicative of kidnapping

resulting in death). In other words, a conviction for kidnapping resulting in death would not, by itself, render Christensen eligible for the death penalty—the jury would not consider whether Christensen possessed the requisite mental state, *see* 18 U.S.C. § 3591(a)(2), or whether he caused the death of the victim during the commission of the crime of kidnapping until the penalty phase of the trial. *Jones* at 249. *See also United States v. Rodriguez*, 389 F. Supp. 2d 1135, 1138 (D.N.D. 2005) (rejecting a similar argument, the court reasoned that "there are any number of factual scenarios with a sole defendant where the defendant would not have caused the death of his kidnapping victim. For example, the victim could die as a result of a risky escape, such as jumping out of a moving vehicle. In that situation, the kidnapper would not have "caused" the death. Therefore, the government's first statutory aggravating factor is not an unconstitutional duplication of an element of the crime."); *United States v. Madison*, 337 F. Supp. 3d 1186, 1201 (M.D. Fla. 2018) ("[T]he statutory aggravating factor *narrows* the class of death-eligible people § 1201 contemplates, as a finding in the guilt phase that kidnapping occurred and a death resulted does not automatically mean the statutory aggravating factor is met.") (emphasis original); *United States v. Duncan*, No. CR07-23-N-EJL, 2008 WL 711603, at *4 (D. Idaho Mar. 14, 2008) ("The statutory aggravating factor of death during the commission of another crime, § 3592(c)(1), is not duplicative of [the offense of kidnapping resulting in death] in this case.").

Moreover, even if the aggravating factor did duplicate an element of the offense, "[a]n aggravating factor which merely repeats an element of the crime passes constitutional muster as long as it narrows the jury's discretion." *Jones*, 132 F.3d at 248; *see also Higgs*, 353 F.3d at 315. The narrowing function may occur at the either the guilt or penalty phase. *Tuilaepa*, 512 U.S. at 971–72. As the Fifth Circuit noted in *Hall*, "a conviction under § 1201 does not of itself render a

defendant eligible for the death penalty." *United States v. Hall*, 152 F.3d 381, 416–17 (5th Cir. 1998), *overruled on other grounds by United States v. Martinez-Salazar*, 528 U.S. 304 (2000) (citing *Enmund v. Florida*, 458 U.S. 782, 797 (1982)). Rather, a jury must first find that the defendant possessed the requisite mental state, 18 U.S.C. § 3591(a)(2). Thus, "[t]he fact that the jury was not required to find that Hall acted with a sufficiently culpable mental state to render him eligible for the death penalty until the penalty phase provides no material basis for distinguishing the aggravating factor at issue here from the one at issue in *Lowenfield*." *Hall*, 152 F.3d at 417.

Defendant also argues that asking the jury to weigh the same information risks skewing the penalty selection decision by permitting double counting. As set forth above, the jury will not be asked to weigh the same information twice. Moreover, "there is no double counting or skewed weighing because the elements of the substantive offenses are not weighed along with aggravating factors under the FDPA." *McCluskey*, 2013 WL 12329344, at *21. Moreover, any risk that the weighing process will be skewed may be eliminated by the Court's instruction to the jury to "not simply count the number of aggravating and mitigating factors and reach a decision based on which number is greater" but rather to consider the weight and value of each factor." *Id.* at *3 (citing *Jones*, 527 U.S. at 398). Accordingly, Defendant's Motion (Doc. 112) to Strike "Death During the Commission of Another Crime" is DENIED.

## CONCLUSION

For the reasons set forth above,

- Defendant's Motion (Doc. 101) to Strike Non-Statutory Aggravating Factor of "Obstruction of Investigation" is DENIED;

- Defendant's Motion (Doc. 103) to Strike all Non-Statutory Aggravating Factors in their Entirety is DENIED;

- Defendant's Motion (Doc. 104) to Strike Non-Statutory Aggravating Factor of "Lack of Remorse" as Duplicative of "Future Dangerousness" is DENIED;

- Defendant's Motion (Doc. 105) to Strike Non-Statutory Aggravating Factor of "Vulnerability of Victim" is DENIED;

- Defendant's Motion (Doc. 106) to Strike Non-Statutory Aggravating Factor of Victim Impact Evidence is DENIED;

- Defendant's Motion (Doc. 107) to Strike "Substantial Planning and Premeditation" as an Aggravating Factor is DENIED;

- The Court DEFERS RULING on Defendant's Motion (Doc. 108) to Strike Non-Statutory Aggravating Factor of "Other Serious Acts of Violence" until the conclusion of the guilt phase of the trial;

- Defendant's Motion (Doc. 109) to Strike Non-Statutory Aggravating Factor of "Lack of Remorse" is DENIED AS MOOT;

- Defendant's Motion (Doc. 111) to Strike Statutory Aggravating Factor of "Especially Heinous, Cruel, or Depraved Manner" of Committing the Offense is DENIED;

- Defendant's Motion (Doc. 112) to Strike "Death During the Commission of Another Crime" as an Aggravating Factor is DENIED; and

- Defendant's Motion (Doc. 122) to Strike Aggravating Factor Alleging Future Dangerousness is DENIED.

      Signed on this 24th day of April, 2019.

<u>s/ James E. Shadid</u>
James E. Shadid
United States District Judge

37