UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 17-cr-20037-JES-JEH |
| ) | |
| BRENDT A. CHRISTENSEN, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION

Now before the Court is Defendant Brendt A. Christensen's Renewed Motion (Doc. 167) to Compel Discovery of Victim Impact Evidence. The United States has filed a Response (Doc. 194). For the reasons set forth below, Defendant's Motion (Doc. 167) is DENIED.

### BACKGROUND

Defendant Brendt A. Christensen was arrested by federal agents on June 30, 2017, pursuant to a criminal complaint which charged him with the kidnapping of Yingying Zhang, a female Chinese national, in violation of 18 U.S.C. § 1201. Doc. 1. Christensen was later indicted by a federal grand jury sitting in the Urbana Division of the Central District of Illinois. *See* Doc. 13 (Indictment), Doc. 26 (Superseding Indictment). The Superseding Indictment charges Christensen with kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1) (Count 1), and making false statements to FBI agents investigating Yingying Zhang's disappearance, in violation of 18 U.S.C. § 1001(a)(2) (Counts 2, 3). Doc. 26. The Superseding Indictment returned by the grand jury also included a notice of special findings regarding the nature of the offense charged in Count 1, including that the death of the victim was intentional, that it occurred during the commission of kidnapping, that it was committed in an especially heinous, cruel, or depraved manner, and that Defendant committed the offense after substantial planning and premeditation.

1

*Id.* The special findings alleged in the Superseding Indictment made the case eligible for capital punishment. *See* 18 U.S.C. § 3591 *et seq.* On January 19, 2018, the United States filed its Notice of Intent to Seek a Sentence of Death. Doc. 54; *see also* 18 U.S.C. §3593(a). On August 17, 2018, this case was reassigned to District Judge James E. Shadid.

Defendant previously moved to compel discovery on July 13, 2018. Doc. 82. In that Motion, Defendant made two requests. First, he requested that the United States be compelled to turn over any communications between the White House and the Department of Justice or between President Trump and President Xi concerning this case. That issue is not relevant to the disposition of the instant Motion. Second, Defendant requested the United States be compelled to turn over further details on the aggravating factors, including victim impact evidence, the United States intends to introduce at the sentencing phase of the trial. The United States responded to the second request by pointing out that it provided Defendant with a notice of aggravating evidence in a letter dated May 18, 2018. Doc. 84; *see also* Doc. 194-1 (Letter). The United States asserted that the letter provided to Defendant exceeded the notice required by the law and the Court's prior order (*see* Doc. 67), and any further information would be requiring the Government to preview its trial strategy and evidence presentation for Defendant.

Judge Bruce denied Defendant's Motion to Compel Discovery on August 15, 2018. Doc. 91. After a thoughtful review of the relevant case law on the subject, the Court concluded:

> The court acknowledges that the cases discussed above are not binding, but rather merely persuasive, and that there is no binding precedent on this specific issue from the Seventh Circuit. However, the court finds important the fact that all four of the circuit court decisions on this issue come down on the side of not requiring the government to provide an informational outline detailing the specific evidence it intends to present in support of the aggravating factors. Rather, all the circuit court decisions hold that the listing of the aggravating factors in the NOI is enough to satisfy the requirements of the Constitution and the statutory requirements of the FDPA. The court finds the circuit court decisions in *Battle*, *Lee*, *Higgs*, and *LeCroy* to be more persuasive than those district court cases cited by

> Defendant. The circuit court cases present a more reasoned analysis of the requirements of the FDPA and the Constitution. Therefore, the government is not required to preview its evidentiary support for the aggravating factors it has disclosed by providing a detailed outline for each factor. See *Briseno*, 2014 WL 12682281, at *2.
>
> The court also notes that in this case, the government has provided Defendant far more than just a bare listing of aggravating factors in the NOI. On May 18, 2018, the government sent a letter to defense counsel disclosing evidence in support of aggravating factors during the penalty phase (attached as an exhibit to Defendant's motion). The court will not repeat what evidence the government discussed in its letter. Suffice to say that the information provided in the letter, in the court's opinion, disclosed a reasonably detailed outline, a preview, of the evidence it intends to introduce in support of each of the listed aggravating factors. Moreover, this outline is certainly beyond what is required under the FDPA as held by the Circuit Courts of Appeal. Thus, Defendant's motion is DENIED.

Doc. 91, at 20–21.

In the instant Motion, Defendant notes that he did not specifically discuss victim impact evidence in his prior Motion to Compel, and the Court's order denying the Motion relied on decisions from four courts of appeal that did not involve a victim impact aggravator and two district court opinions that granted the defendants' requests for detailed information about victim impact evidence. Doc. 167, at 3. Defendant argues that,

> in order to enable defense counsel to assess the government's proposed evidence for admissibility and to prepare a meaningful motion *in limine* to exclude any items that they believe to exceed constitutional and statutory bounds, and for the Court to perform its gatekeeping function under 18 U.S.C. § 3593(c) and the Constitution, the Court should direct the government to provide defense counsel with an outline of its proposed victim impact evidence….

Doc. 167, at 11.

In its Response, the United States argues that: (1) Defendant's Motion is barred by the law of the case doctrine, and (2) the May 18, 2018 notice provided by the United States complied with the Court's order and exceeds both the letter and spirit of 18 U.S.C. § 3593. Doc. 194. This Order follows.

## LEGAL STANDARD

"[T]he Eighth Amendment requires that a sentence of death not be imposed arbitrarily." *Jones v. United States,* 527 U.S. 373, 381 (1999). "In order for a capital sentencing scheme to pass constitutional muster, it must perform a narrowing function with respect to the class of persons eligible for the death penalty and must also ensure that capital sentencing decisions rest upon an individualized inquiry." *Id.* The imposition of the federal death penalty is governed by the Federal Death Penalty Act of 1994 ("FDPA"), 18 U.S.C. §§ 3591–3599; *United States v. Montgomery*, 10 F. Supp. 3d 801, 809–10 (W.D. Tenn. 2014). The introduction of victim impact evidence is allowed by the FDPA and permissible under the Eighth Amendment. *See* 18 U.S.C. § 3593; *Payne v. Tennessee*, 501 U.S. 808 (1991).

## DISCUSSION

The United States advised Defendant as to the nature of victim impact evidence it intends to introduce on May 18, 2018, when it provided a letter to Defendant with the following information:

> 4. Victim-Impact Evidence
>
> The FDPA describes victim-impact evidence as "factors concerning the effect of the offense on the victim and the victim's family." 18 U.S.C. § 3593(a). The Act permits evidence in the form of testimony, a victim-impact statement, "and any other relevant information." *Id.* See also *United States v. Lawrence*, 735 F.3d 385, 405 (6th Cir. 2013) (allowing eight witnesses for the Government to testify as to their relationship with the victim and the effect of his death - including a fellow police officer who served with the victim); *United States v. Barnette*, 211 F.3d 803, 818 (4th Cir. 2000) (allowing seven witnesses to give victim impact testimony).
>
> The Supreme Court has sanctioned the use of victim-impact evidence in the penalty phase. "The Eighth Amendment. . . permits capital sentencing juries to consider evidence relating to the victim's personal characteristics and the emotional impact of the murder on the victim's family in deciding whether an eligible defendant should receive a death sentence." J*ones v. United States*, 527 U.S. 373, 395 (1999). "[T]he State has a legitimate interest in counteracting the mitigating evidence. . . by reminding the sentencer that just as the murderer should be considered as an individual, so too the victim is an individual whose death

represents a unique loss to society and in particular to his family." *Payne* v. *Tennessee*, 501 U.S. 808, 825 (1991) (quoting *Booth v. Maryland*, 482 U.S. 496, 517 (1987). In order "to assess meaningfully the defendant's moral culpability and blameworthiness," the jury should be permitted to consider the specific harm caused by the crime. *Id*.

Although the Supreme Court has recognized that victim-impact evidence may constitute a due process violation if it is "so unduly prejudicial that it renders the trial fundamentally unfair," no court has ever reversed a conviction on those grounds. *Barnette*, 211 F.3d at 818 (quoting *Payne*, 501 U.S. at 825). Indeed, the Supreme Court refused to grant certiorari to consider an alleged due process violation based on a "20-minute video consisting of a montage of still photographs and video footage. . . narrated by the victim's mother with soft music playing in the background . . . [which] ended with a view of her grave marker and footage of people riding horseback in Alberta, Canada — the `kind of heaven' in which her mother said she belonged." *Kelly v. California*, 555 U.S. 1020, 1020 (2008).

Accordingly, the Government expects to present victim-impact evidence as follows:

    A. Photographs, video, journals, essays, or other documentation detailing Y.Z.'s life in China, her matriculation to the University of Illinois, and her plans for the future.
    B. Testimony from family members and friends of Y.Z.[1]
    C. Christensen's admissions as to victim impact.

Doc. 194, at 6. Additionally, in a second letter sent on July 11, 2018, the Government added that it intends to present evidence regarding personal characteristics of Y.Z. that "include, but are not limited to, the victim's personality, character, work ethic, educational background, future plans, gender, race, national origin, immigration status, physical stature and appearance, marital status, family of origin, economic status, English as a second language, cultural experiences, and relationships with family, friends, colleagues, other students, and faculty."[2] Doc. 167, at 3.

In Judge Bruce's prior order, he reasoned that

> the information provided in the letter, in the court's opinion, disclosed a reasonably detailed outline, a preview, of the evidence it intends to introduce in support of each of the listed aggravating factors. Moreover, this outline is certainly beyond what is required under the FDPA as held by the Circuit Courts of Appeal. Thus, Defendant's motion is DENIED.

---

[1] The Letter contains a footnote stating "Victim impact evidence is not limited to family members. *Lawrence*, 735 F.3d at 405 (fellow law enforcement officer may give victim impact statement)." Doc. 194-1, at 3–4.

[2] This letter is not attached to Defendant's Motion or the United States' Response. Thus, the quoted language comes from Defendant's Motion. Doc. 167, at 3.

Doc. 91, at 20–21. The United States argues that Judge Bruce already considered the issue of whether Defendant is entitled to additional discovery of victim impact evidence when he issued an order denying Defendant's Motion to Compel Discovery. Doc. 91. Therefore, the United States argues that the Court should deny Defendant's Renewed Motion under the law of the case doctrine. Doc. 194, at 3.

The Seventh Circuit has described the law of the case doctrine as follows:

> Looking at matters from the perspective of the district court, law-of-the-case principles are applicable when a case is transferred to a new judge midway through litigation; in general, the successor judge is discouraged from reconsidering the decisions of the transferor judge. See *Brengettcy v. Horton,* 423 F.3d 674, 680 (7th Cir. 2005). The successor judge should depart from the transferor judge's decision only "if he has a conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not cause undue harm to the party that had benefitted from it." *HK Systems, Inc. v. Eaton Corp.,* 553 F.3d 1086, 1089 (7th Cir. 2009) (quoting *Avitia v. Metropolitan Club of Chicago, Inc.,* 49 F.3d 1219, 1227 (7th Cir. 1995)).

*Gilbert v. Illinois State Bd. of Educ.*, 591 F.3d 896, 902 (7th Cir. 2010). Because Judge Bruce previously denied Defendant's request for discovery of aggravating factor evidence—including victim impact evidence—the Court should depart from Judge Bruce's decision only if it has "a conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not cause undue harm to the party that had benefitted from it." *Gilbert*, 591 F.3d at 902 (quoting *HK Systems, Inc.*, 553 F.3d at 1089).

As Judge Bruce correctly noted, every court of appeal to decide the issue has found that the government is not required to provide an informational outline detailing the specific evidence it intends to present in support of the aggravating factors. *See United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003); *United States v. Lee*, 274 F.3d 485 (8th Cir. 2001); *United States v. Battle*, 173 F.3d 1343 (11th Cir. 1999); *United States v. LeCroy*, 441 F.3d 914 (11th Cir. 2006). Moreover, the Supreme Court in *Payne* noted that "[t]here is no reason to treat [victim impact]

6

evidence differently than other relevant evidence is treated." *Payne v. Tennessee*, 501 U.S. 808, 827 (1991). However, district courts addressing the issue have been more equivocal. *See, e.g., United States v. Montgomery*, 10 F. Supp. 3d 801, 830 (W.D. Tenn. 2014) (collecting cases). Judge Bruce took these cases into consideration as well, but found the appellate cases to be more persuasive and more reasoned than the cases cited by Defendant. *See* Doc. 91, at 21.

Given Judge Bruce's thorough analysis and the weight of authority on the issue, the Court cannot say that it has "a conviction at once strong and reasonable that the earlier ruling was wrong." *Gilbert*, 591 F.3d at 902. Therefore, Defendant's request should be denied under the law of the case doctrine. *Id*. Regardless, even if the Court were to ignore the law of the case doctrine entirely, it would reach the same result. The letter provided to the defense by the United States provided the defense with a reasonably detailed outline of the evidence it intends to produce with respect to each aggravating factor. Defendant is not entitled to anything more.

Two final issues must also be addressed. First, Defendant argues that the United Sates' July 11, 2018 letter indicates that the United States will urge the jury to vote for a death sentence based on Y.Z.'s gender, race, and national origin, in violation of 18 U.S.C. § 3593(f) and the Constitution. Doc. 167, at 10. According to Defendant, that letter provided the United States intends to present evidence regarding personal characteristics of Y.Z. that "include, but are not limited to, the victim's personality, character, work ethic, educational background, future plans, gender, race, national origin, immigration status, physical stature and appearance, marital status, family of origin, economic status, English as a second language, cultural experiences, and relationships with family, friends, colleagues, other students, and faculty."[3] Doc. 167, at 3. To be sure, § 3593(f) prohibits the jury from considering "the race, color, religious beliefs, national

---

[3] Again, the Court was not provided with the actual letter, and thus relies on the partial quote provided by Defendant.

7

origin, or sex of the defendant or of any victim" when determining whether a sentence of death is justified for a capital defendant. Thus, the Court will prohibit the United States from arguing that Defendant should receive the death penalty based on the victim's "race, color, religious beliefs, national origin, or sex of the defendant or of any victim." 18 U.S.C. § 3593(f). But the instant Motion is one to compel discovery, not to preclude testimony or evidence. Therefore, the Court need not address the bounds of permissible victim impact evidence in this order.

Second, Defendant implies that the Court must limit victim impact evidence to the victim's family:

> The [*Payne*] decision also maintained the limitation of permissible evidence to the impact on the victim's "family." *Payne*, 482 U.S. at 817; see also 18 U.S.C. § 3593(a)(2); *United States v. Fields*, 516 F. 3d 923, 946-47 (10th Cir. 2008) (holding that victim impact evidence should have been limited to the victim's family and it was error to permit testimony regarding co-workers)[.]

Doc. 167, at 6. Again, the instant Motion is one to compel discovery, not to preclude or limit testimony or evidence. However, the Court also notes that neither Defendant's citation to page 817 of *Payne*, nor *Payne* itself, supports Defendant's proposition that victim impact evidence is limited to the victim's family. And while *Payne* simply does not support Defendant's assertion, *Fields* directly contradicts it. Defendant cites *Fields* as "holding that victim impact evidence should have been limited to the victim's family…." Doc. 167, at 6. But the Tenth Circuit in *Fields*, applying its prior precedent in *United States v. Barrett,* 496 F.3d 1079 (10th Cir. 2007), explicitly reaffirmed the admissibility of victim impact evidence from friends of the victim:

> *Barrett* involved a challenge to victim-impact testimony from two friends of the victim regarding the effect his life and death had on them. The defendant objected to this testimony, arguing "that Congress has expressly limited impact evidence in federal death penalty cases to evidence concerning the effect of the offense on the victim and the victim's family." 496 F.3d at 1098. We recognized the FDPA's specific reference to "the effect of the offense on" and "loss suffered by" "the victim's family." *Id.* at 1098–99 (quoting 18 U.S.C. § 3593(a)). But, citing (1) the statute's additional inclusive reference to "any other relevant information," *id.* at

8

1099 (same), and (2) case law permitting evidence "giving the jury a glimpse of the victim's personality and the life he led," *id.,* we rejected the defendant's rigid view of victim-impact evidence. We approved the challenged evidence, including testimony by "a longtime friend of [the victim], describing ... the impact [the victim] had on his life," and by "a fellow Oklahoma Highway Patrol trooper, ... describing the impact [the victim's] death had on him." *Id.* Similar evidence from friends in this case was likewise admissible.

*Fields*, 516 F.3d at 946–47 (emphasis added). Simply put, Defendant's reliance on *Fields* is clearly misplaced.

## CONCLUSION

For the reasons set forth above, Defendant Brendt A. Christensen's Renewed Motion (Doc. 167) to Compel Discovery of Victim Impact Evidence is DENIED.

Signed on this 24th day of April, 2019.

s/ James E. Shadid
James E. Shadid
Chief United States District Judge