IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17-CR-20037 |
| ) | |
| BRENDT A. CHRISTENSEN, ) | |
| ) | |
| Defendant. ) | |

**THE UNITED STATES OF AMERICA'S REPLY TO THE DEFENDANT'S RESPONSE TO THE UNITED STATES' NOTICE OF EXPERTS AND TESTS**

NOW COMES the United States of America, by John C. Milhiser, United States Attorney for the Central District of Illinois, Eugene L. Miller and Bryan D. Freres, Assistant United States Attorneys, and Department of Justice Trial Attorney James B. Nelson, and files its reply to the defendant's response to the United States' Notice of Experts and Tests. (R.305) (hereinafter "Def.Response"). The defendant's response raised four objections to the United States' notice. (R.305) The Court denied two of those objections and directed the United States to respond to the remaining two. (R.307)

    1.    **ADHD Is A Differential Diagnosis To Disorders Contained In The Defendant's Notice**

The defendant contends that Dr. Denney should not be permitted to administer the Connors' Adult ADHD Rating Scale because, according to the defendant, ADHD is not a differential diagnosis. Def.Response at 3-4. The defendant is mistaken.

The defendant gave notice of his intent to rely on 12 separate disorders contained within the DSM-5 chapter on Schizophrenia Spectrum and other Psychotic Disorders. (R.161) (citing DSM-5, at 87-122). That chapter includes Schizophreniform Disorder. DSM-5, at 96-99. (Attachment One) ADHD is an enumerated differential diagnosis for Schizophreniform Disorder. *Id.* at 99. As such, Dr. Denney's administration of the Connors' Adult ADHD Rating Scale is authorized by the Court's Order. (R.220, at 4)

### 2.     There Is No Basis For Advance Notice Of The Validity Measures

The defendant next contends that he should be given advance notice of the "validity measures" that Dr. Denney will incorporate into his examination. Def.Response at 4. This argument is without merit.

In support of his argument, the defendant analogizes validity measures to "tests," but that is not correct. Validity measures are simplistic tasks that are designed to "appear" difficult but are actually simple. Validity measures are included in psychological test batteries at random intervals to ensure that the subject is paying attention and giving full effort. This is critical, because the accuracy of neuropsychological tests, including IQ tests, depends on the subject giving adequate effort.

Moreover, the defendant's effort level is relevant as a diagnostic tool. This is true because the enumerated differential diagnoses for Brief Psychotic Disorder, another of the defendant's noticed disorders, includes "malingering and factitious disorders."

DSM-5, at 96. (Attachment One). In other words, the defendant may have been demonstrating symptoms that were "intentionally produced." *Id*. As the DSM-5 notes, "[w]hen malingering involves apparently psychotic symptoms, there is usually evidence that the illness is being feigned for an understandable goal." *Id*. Here, the "understandable goal" is the desire to avoid the death penalty. Dr. Denney's use of validity measures will enable him to discover if the defendant is attempting to "feign" a mental illness by giving inadequate effort during the examination.

Importantly, the defendant cites no caselaw in support of his objection, and the United States is not aware of any. Rather, at least one district court has recognized the need for validity measures to be given without advance notice to the defense. In *United States v. Northington*, the Court noted that "administering tests that assess malingering is entirely reasonable. Moreover, defense counsel have failed to offer any reason why advance notice of the names of malingering tests is necessary to protect Defendant's rights." 2012 WL 4024944, at *6 (E.D. Pa. Sept. 12, 2012) (noting that defense counsel would have an opportunity to object before testimony). The same is true here.

Validity measures are necessary to ensure that neurocognitive tests are measuring the subject's actual cognitive ability rather than the subject's poor task engagement. Thus, their effectiveness is essential in guaranteeing that Dr. Denney's examination results are accurate, and also to ensure that the defendant is not feigning mental illness. There is no legal basis for giving advance notice to the defendant of the validity measures, and the failure to do so will not affect his rights.

### 3. The Defendant's Objections Point Out the Need for a Mutual Exchange of Raw Data Following Dr. Denney's Examination

The defendant's response raises an issue that the parties neglected to raise with this Court previously – namely, the exchange of raw data between experts. A comparison of the raw data for the defense psychologist's examination and Dr. Denney's examination is a necessary component of Dr. Denney's rebuttal report and, if the defendant proceeds with Rule 12.2 evidence, his rebuttal testimony.

Though Dr. Denney could prepare a report based exclusively on his own examination and the results thereof, such a report would be incomplete. Dr. Denney's rebuttal testimony will depend, in part, on a comparison of his examination to the defense expert's. An analysis of statistically significant differences in the defendant's performance during the two examinations might rule-in, or rule-out, certain diagnoses – including both "malingering and factitious disorders" and schizophrenia. *See*, *e.g.*, Robert L. Heilbronner, et al, *Official Position of the American Academy of Clinical Neuropsychology on Serial Neuropsychological Assessments: The Utility and Challenges of Repeat Test Administrations in Clinical and Forensic Contexts*, THE CLINICAL NEUROPSYCHOLOGIST, 1267, 1271-72 (Vol. 24) (2010) (noting that variable test scores can be used to diagnose malingering); James Everett, et al, *Performance of Patients with Schizophrenia on the Wisconsin Card Sorting Test*, JOURNAL OF PSYCHIATRY AND

NEUROSICIENCE 123, 124-25) (Vol. 26, No. 2) (2001) (noting that schizophrenics perform poorly on the WCST and do not improve over time without verbal reinforcement); Larry J. Seidman, et al, *Wisconsin Card Sorting Test Performance Over Time in Schizophrenia*, SCHIZOPHRENIA RESEARCH 233-42 (Vol. 5) (1991) (same).

    As the Court is aware, the firewall will "go up" between trial counsel and the United States' experts as of April 29, 2019. After that date, the experts will communicate exclusively with firewall counsel unless and until the defendant has been convicted and thereafter reaffirms his intent to present Rule 12.2 evidence in the penalty phase. As such, there is no danger of the United States' trial counsel being exposed to any of the defense experts' raw data. The most logical solution to the parties' oversight in failing to address this issue previously is for Dr. Denney and the defendant's psychologist to exchange their raw data after Dr. Denney has completed his examination.[1] This will allow both experts to compare each other's raw data as part of their report.

    Alternatively, the United States respectfully requests that this Court define the term "reports" to include raw data and notes with regard to paragraphs 10 and 11 of its Rule 12.2 Procedures Order. (R.220) Dr. Denney will prepare a report of his examination

---

[1] For ethical reasons, psychologists are encouraged to only disclose their raw data to other licensed psychologists. This Court has ordered that the defendant is not required to disclose the name of its experts to the United States. However, considering that the firewall will separate Dr. Denney from the United States' trial counsel, there is no cognizable harm for the exchange of raw data (and identity) between Dr. Denney and the defendant's expert.

5

and await the defendant's decision to reaffirm the presentation of Rule 12.2 evidence and disclosure of his expert's report and raw data. Upon receipt of that information, Dr. Denney will prepare an addendum to his report which will be disseminated to the defense when it is complete.

Respectfully submitted,

JOHN C. MILHISER
UNITED STATES ATTORNEY

/s/Eugene L. Miller
Eugene L. Miller
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone: 217/373-5875
Fax: 217/373-5891
eugene.miller@usdoj.gov

/s/ James B. Nelson
James B. Nelson
Trial Attorney
Capital Case Section
United States Department of Justice
1331 F. Street NW, Room 625
Washington, DC 20004
Phone: 202/598-2972
james.nelson@usdoj.gov

/s/Bryan D. Freres
Bryan D. Freres, Bar No. IL 6294791
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone: 217/373-5875
Fax: 217/373-5891
bryan.freres@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

/s/ James B. Nelson
James B. Nelson
Trial Attorney
Capital Case Section
United States Department of Justice
1331 F. Street NW, Room 625
Washington, DC 20004
Tel: (202) 598-2872
james.nelson@usdoj.gov