E-FILED
Friday, 03 May, 2019  11:05:01 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-cr-20037-JES-JEH |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

### SEALED ORDER AND OPINION

Now before the Court are Defendant's Sealed Omnibus Motions in Limine (Doc. 239) to Exclude Evidence at Trial. The United States has filed a Sealed Response (Doc. 281). The Court will address each of the 28 component motions according to the same structure (A., B., C., etc.) as Defendant's filing, for ease of reference. The Court will also address the United States' Sealed Motion (Doc. 250) to Admit the Testimony of the Defendant's Ex-Wife, to which Defendant has filed a Sealed Response (Doc. 277), as that Motion is closely linked to one of Defendant's.

### BACKGROUND

Defendant Brendt A. Christensen was arrested by federal agents on June 30, 2017, pursuant to a criminal complaint which charged him with the kidnapping of Yingying Zhang, a female Chinese national, in violation of 18 U.S.C. § 1201(a)(1). Doc. 1. Christensen was later indicted by a federal grand jury sitting in the Urbana Division of the Central District of Illinois. *See* Doc. 13 (Indictment), Doc. 26 (Superseding Indictment). The Superseding Indictment charged Christensen with kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1) (Count 1), and with making false statements to FBI agents investigating Ms. Zhang's disappearance, in violation of 18 U.S.C. § 1001(a)(2) (Counts 2, 3). Doc. 26. The Superseding Indictment returned by the grand jury also included a notice of special findings regarding the

1

nature of the offense charged in Count 1, including that the death of the victim was intentional, that it occurred during the commission of kidnapping, that it was committed in an especially heinous, cruel, or depraved manner, and that Defendant committed the offense after substantial planning and premeditation. *Id.* The special findings alleged in the Superseding Indictment made the case eligible for capital punishment. *See* 18 U.S.C. § 3591 *et seq.* On January 19, 2018, the United States filed its Notice of Intent to Seek a Sentence of Death ("NOI"). Doc. 54; *see also* 18 U.S.C. § 3593(a). A jury trial on these charges is scheduled to begin on June 3, 2019. The trial could involve multiple phases; if the Defendant is found guilty of kidnapping resulting in death, the trial will continue to a penalty phase before the same jury, where the jury would decide whether to impose a sentence of death. 18 U.S.C. § 3593(b)(1).

## A. Motion to Exclude Evidence of Starlight Bloodhound/Luminol Test Results

Defendant moves to exclude preliminary tests for blood that law enforcement conducted in Defendant's apartment on June 15, 2017. Defendant argues that these tests, which could not later be confirmed as identifying blood, should be excluded because they are irrelevant and because they are substantially more prejudicial than they are probative. Doc. 239, at 6–7; Fed. R. Evid. 401, 403. The United States correctly notes that the Court previously ruled that the preliminary tests for blood would not be excluded. Doc. 281, at 6. For the same reasons articulated in the Court's previous order (Doc. 237) denying the earlier motion to exclude this evidence, Defendant's Motion is DENIED.

## B. Motion to Exclude Evidence of Mr. Christensen's Statements Regarding a Desire to Look Intimidating

Defendant moves to exclude evidence that he told his then-wife and then-girlfriend that he enjoyed looking "intimidating" to the people around him. According to Defendant, this is irrelevant to the case at hand, especially because the United States is pursuing a theory that

Defendant tricked (rather than intimidated) Ms. Zhang into his car by pretending to be a police officer. Doc. 239, at 7; Fed. R. Evid. 401. The United States responds that this information is relevant because (1) taken together with other evidence about his fascination with serial killers, the statements make it more likely he killed Ms. Zhang, and (2) even taken on their own, they are relevant to show how he lured the victim into his car[1] and how he transported Ms. Zhang to his apartment. Doc. 281, at 10–11.

Rule 401 states that evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The Court finds that evidence of Defendant's alleged statements that he enjoyed seeming intimidating are part of a broader evidentiary picture—the statements make it more likely that Defendant used intimidation to commit the alleged crime, and they bear on possible motive. *See* Section C, *infra.* Defendant's Motion is therefore DENIED for the purposes of the guilt phase of the trial.[2]

**C. Motion to Exclude References to *American Psycho***

Defendant moves to exclude references to Defendant's alleged statements that *American Psycho* was his favorite book, and to exclude references to the content of *American Psycho*. Defendant claims that, because the facts of the alleged crime are significantly different from any events in the book, any evidence that he enjoyed the book is irrelevant in this case. Doc. 239, at 9. Defendant further claims that the content of the book is quite graphic, and any attempt by the United States to show that he committed this crime by quoting disturbing portions of the book would be substantially more prejudicial than probative under Federal Rule of Evidence 403. *Id.*

---

[1] "An intimidating police officer may have more success luring (or ordering) someone into his vehicle." Doc. 281, at 11.

[2] Throughout this Order, unless otherwise indicated, the Court reserves ruling on the admissibility of evidence at the possible penalty phase of the trial.

The United States concedes that admission of the book itself or its graphic excerpts would be needless and prejudicial. Doc. 281, at 13. However, the United States maintains evidence that Defendant's favorite book featured a main character "who engages in torture, sexual assault, and murder" makes it more likely that he committed the alleged crime, and such evidence tends to establish his motive, intent, and plan under Federal Rule of Evidence 404(b).

While Defendant's favorite book would likely be innocuous standing alone, the Court finds that it is relevant to establish his ability and motive to commit the alleged crimes, to the extent that these matters are in question. The United States has indicated that it will present a theory that Defendant's commission of the alleged murder was driven by a fascination with serial killers and fantasies about violence. *See, e.g.*, Doc. 281, at 12. In order to support that theory, the United States seeks the admission of a significant amount of evidence that might have less relevance if only one part were presented: Defendant's statements that *American Psycho* was his favorite book, Defendant's internet searches and statements on serial killers, Defendant's enrollment in a sociology class that involved serial killers, Defendant's participation in BDSM practices and related online forums, Defendant's interest in knife-sharpening, Defendant's possession of pornographic photographs of restrained women, and Defendant's listed interest in *American Psycho* on his Tinder profile.

The Court finds this evidence, taken together, is relevant to determining the probability of facts of consequence in this case. Even so, otherwise relevant evidence may be excluded when its prejudicial effect substantially outweighs its probative value. Fed. R. Evid. 403. Having carefully weighed the potential of this evidence to prejudice, confuse, or mislead the jury, the Court finds that the probative value is not substantially outweighed by that risk, especially given some limitations on such evidence. For this reason, Defendant's Motion is DENIED with respect

to referencing Mr. Christensen's interest in *American Psycho* and its general content, and GRANTED with respect to the specific, vivid details of the book.[3]

**D. Motion to Exclude Testimony of L.H. and C.B.**

Defendant moves to exclude the testimony of two residents of Defendant's apartment complex, both of whom claim to have heard screaming in the building around the beginning of June. Doc. 239, at 10. The United States indicates that it has no intention of introducing testimony from L.H. or C.B. during their case-in-chief of the guilt or potential penalty phase of the trial. The Motion is therefore GRANTED as presented.[4]

**E. Motion to Exclude Evidence of Internet Searches Involving Serial Killers, Statements Relating Generally or Specifically to Serial Killers, and the Class "Sociology of Deviance"**

Defendant moves to exclude evidence of three Google searches and two webpage views Defendant conducted in April 2017 that involved serial killers, evidence that he talked about serial killers on three occasions with his then-wife and then-girlfriend, evidence that he took a class called the "Sociology of Deviance" in the spring of 2017, and evidence that he downloaded an academic paper on serial killers in February 2017. For the same reasons set out in Section C, *supra*, the Court finds that such evidence is relevant and not unfairly prejudicial; the United States alleges that Defendant committed this crime in part because he wanted to be known as a serial killer, so evidence demonstrating his interest in the subject is highly probative as to a fact of consequence in this case. The Motion is DENIED.

---

[3] Defendant's Motions in parts E, H, M, N, and Z will be likewise denied for the reasons stated, with the understanding that the evidence in question is admissible for the limited purposes set out by the United States. The Court is open to further argument regarding the limitations of this evidence as the parties get closer to trial and the Court becomes aware of their theories of the case.

[4] The United States suggests that it "reserves the right, however, to introduce their testimony during its rebuttal case in both phases of the trial should the defendant advance a theory or present evidence that would make their testimony relevant." Doc. 281, at 14. Any rulings by the Court excluding evidence as irrelevant or unfairly prejudicial may certainly be revisited by the Court should events at trial warrant reconsideration.

**F. Motion to Exclude the Testimony of T.A.**

Defendant moves to exclude the testimony of T.A., a deputy coroner who went on a date with Mr. Christensen in April 2017. According to FBI records, during this date, T.A. discussed using lyme to cover up odors on a farm so that dogs would not dig up dead animals. Doc. 239, at 16–17. The United States seeks to use this evidence to shed light on Defendant's purported planning for the crime, disposal of the victim's body, and knowledge on the methods of concealing the odor of decomposition. Doc. 281, at 17. The Court finds that the evidence of T.A.'s conversation about covering up odors shall be admissible for the purpose of giving context to Mr. Christensen's actions that would involve the odor (or lack thereof) of human remains, such as his alleged request to the building manager that his bathroom be treated for mold and mildew after the victim's disappearance. Extraneous evidence involving T.A., such as the anonymous tip that Mr. Christensen had asked T.A. how to conceal a human body, will be excluded. Defendant's Motion is DENIED.

**G. Motion to Exclude References to Other Murder Victims and the VICAP Report**

Defendant seeks to exclude statements he made to his then-girlfriend on June 29, 2017 about Ms. Zhang being his 13th victim, as well as the ensuing VICAP report generated to determine if any similar crimes had been committed by someone of Defendant's description in the areas where Defendant had lived before. The United States does not intend to offer the VICAP report, but did not specify in their response whether they intend to offer the statements about Ms. Zhang being his 13th victim in the guilt phase of the trial. Doc. 281, at 18–19. The Court assumes that the United States does intend to offer such statements as further bolstering of their theory that Defendant committed this crime because of his desire to be known as a serial killer. While the statements would be relevant for that purpose, the Court finds that the

prejudicial effect of references to other murder victims substantially outweighs the evidence's probative value at the guilt phase of the trial—such evidence could confuse the jury about whether Defendant actually committed those crimes, and it could create a risk of undue delay while the United States explains that there is no evidence Defendant actually committed other murders, only that he allegedly bragged about it. For these reasons, Defendant's Motion is GRANTED.

**H. Motion to Exclude Evidence Relating to FetLife.com and BDSM Relationships**

Defendant moves to exclude the testimony of Defendant's then-girlfriend T.B. regarding her relationship with Defendant and their consensual BDSM practices. Defendant also moves to exclude his visits to the website FetLife.com, which provides social networking and forums for people interested in alternative sexual practices. According to Defendant, evidence of his interest in BDSM practices, sparked by his relationship with T.B., are irrelevant and will provoke the jury to view him as "perverse" and "deviant." Doc. 239, at 21–24.

The United States argues that this evidence goes to show how he began planning the crime (e.g. visiting pages on consensual abduction), and his escalating interest in restraints, kidnapping, and violence, all of which go to show his motive and the likelihood that he kidnapped, restrained, and sexually assaulted Ms. Zhang. Doc. 281, at 20. Additionally, the United States argues that the jury will need this context to understand the nature of Defendant's relationship and communications with T.B., and that any prejudice from the evidence regarding BDSM practices can be mitigated with limiting instructions and Defendant's disclosed expert on the prevalence of BDSM practices. *Id.* at 19–21.

Although Defendant's total time spent on FetLife.com appears to total about fifteen minutes, and although the Court is wary about drawing connections between consensual activity

7

and criminal activity, this evidence will be admissible for substantially the same purposes as addressed in Section C, *supra*—to provide evidence of Defendant's motive, intent, or plan to commit the alleged crime, and to provide an understandable context for his interactions with T.B. The Court will remain open to proposed limiting instructions and rebuttal evidence, but Defendant's Motion is DENIED.

## I. Motion to Exclude the Testimony of A.C.

Defendant moves to exclude evidence that he briefly pursued a romantic relationship with his colleague, A.C., in the spring of 2017. Defendant argues that there is no relevance in his short-lived attempt to initiate a romantic relationship with her, which he ceased pursuing when she expressed that she was not interested. Doc. 239, at 24. The United States argues that this evidence is relevant because Defendant's sexual interest in Asian women is a fact at issue in this case, given that he is accused of sexually assaulting Ms. Zhang. Doc. 281, at 22–23. However, unless Defendant opens the door to such argument, the Court finds that this interaction has no bearing on the matters at hand. Defendant's Motion is GRANTED.

## J. Motion to Exclude Testimony that Violates Marital Privilege

Defendant seeks to exclude testimony from M.Z., Defendant's then-wife, about any communications they had during their marriage, including her statements to the FBI and their recorded telephone conversations while he was in jail. The United States concedes that any statements by M.Z. involving privileged marital communications should be excluded, but the parties disagree about which communications are subject to that privilege. Doc. 281, at 23–24. The United States filed a related Sealed Motion (Doc. 250) to Admit the Testimony of the Defendant's Ex-Wife, laying out which communications the United States holds to be unprotected by privilege. Defendant filed a Sealed Response (Doc. 277) to that Motion. The

Court will address the United States' Motion to Admit together with Defendant's Motion to Exclude.

The marital communications privilege protects information "privately disclosed between husband and wife in the confidence of the marital relationship." *Trammel v. United States*, 445 U.S. 40, 51 (1980). This privilege survives the dissolution of the marriage, and either spouse may invoke the privilege to prevent the other from testifying about confidential communications that occurred during the marriage. *See United States v. Lofton*, 957 F.3d 476, 477 (7th Cir. 1992); *United States v. Lea*, 249 F.3d 632, 641 (7th Cir. 2001). As the Court noted in the Order (Doc. 205) addressing Defendant's Motion (Doc. 98) to Suppress Jail Communications, the marital communications privilege does not apply to recorded telephone conversations where one spouse is incarcerated, because there is no expectation of privacy in jail telephone calls. *United States v. Madoch*, 149 F.3d 596, 602 (7th Cir. 1998). Thus, while the Court will certainly exclude evidence of *confidential* communications that M.Z. and Mr. Christensen shared during their marriage, the jail telephone calls do not violate the marital communications privilege. Likewise, statements Defendant made to M.Z. in the known presence of third parties will not be excluded on the basis of marital privilege, as they were not made in the confidence of the marital relationship. *See United States v. Short*, 4 F.3d 475, 478 (7th Cir. 1993).

Additionally, the parties agree that M.Z.'s observations of Mr. Christensen's conduct are not "communications" and thus are not protected by the marital communications privilege. Doc. 239, at 26; Doc. 250, at 3–4. M.Z. will thus be permitted to testify about her observations of Defendant's behavior. The parties do not dispute that Defendant has waived the privilege with respect to any statements M.Z. recounted in her testimony during a prior hearing in this case, where Defendant did not object. Doc. 250, at 5; Doc. 277, at 1.

Defendant seeks to exclude statements that M.Z. made to the FBI regarding confidential communications she and Defendant shared. The United States argues that the Court should admit any statements that Defendant initially made in confidence to M.Z., but then later repeated to his then-girlfriend, asserting that he waived the privilege by doing so. Doc. 250, at 4. Specifically, the United States argues that the Court should admit (1) Defendant's descriptions of murderous fantasies, because he repeated the fantasies to T.B. and told her that he had told M.Z. the same things, and (2) Defendant's descriptions of his internet research on serial killers, which he independently confided in T.B. and M.Z. *Id.* at 6–7. Defendant argues that such disclosures do not waive the privilege, as sharing the privileged communication is different from sharing the contents of the privileged communication. Doc. 277, at 2 (citing *United States v. Rakes*, 136 F.3d 1, 5 (1st Cir. 1997)). Defendant further argues that the evidence suggests T.B. learned of his communications with M.Z. from the FBI, not from Defendant himself. Doc. 277, at 4.

The law is reasonably clear that spouses waive the marital communications privilege when they allow the *fact of the communication with their spouse* to become known to others. *See United States v. Brock*, 724 F.3d 817, 821 (7th Cir. 2013) (privilege waived by defendant's failure to object when his wife testified that he told her to move two guns from the house to the car); *Rakes*, 136 F.3d at 5 ("Ordinarily, deliberate disclosure of a privileged communication, where no privilege protects this further disclosure, waives a communications privilege."). However, when the same content is relayed to others without a disclosure that the speaker discussed that same content with their spouse, the principles of *Upjohn* and *Rakes* suggest that the privilege has not been waived. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (distinguishing between the disclosure of communications to an attorney and the disclosure of the underlying facts communicated to the attorney); *Rakes*, 136 F.3d at 5 (finding the privilege was not waived by the

defendant repeating one component of his prior marital communication to a third party, because the speaker never mentioned his communications with his spouse).

Here, the United States claims Defendant repeated to T.B. not only that he had murderous fantasies, but also that he told M.Z. about them. The Defendant argues that the evidence only shows that T.B. was "aware" that he relayed the same information to M.Z., without any indication that Defendant himself told T.B. about the communications with M.Z. Without sufficient evidence on the record at this time to resolve that dispute, the Court holds that M.Z. will not be permitted to testify about confidential marital communications with Defendant, even if he relayed the same underlying statements to a third party, unless the United States can establish that Defendant disclosed to the third party the fact that he had the same communications with M.Z.

Defendant's Motion to Exclude is therefore GRANTED with regard to privileged marital communications to the extent consistent with this Order, and the United States' Motion (Doc. 250) to Admit is GRANTED as to non-privileged marital communications defined above.

**K. Motion to Exclude Prejudicial Victim Impact Evidence**

This Motion bears only on the possible penalty phase of this trial. The Court therefore RESERVES ruling on the Motion until after a verdict is entered in the guilt phase. To the extent that this Motion is a request for disclosure of the United States' witnesses for the penalty phase, the United States will be directed to disclose a list of their penalty-phase witnesses at the same time as Defendant—the deadline for penalty phase witness list disclosures will be set after a discussion with the parties at the Final Pretrial Conference on May 13, 2019. Should the Defendant enter a plea of guilty, the Court may revisit the disclosure deadline, as the schedule for the penalty phase may change.

11

**L. Motion to Exclude Lay Opinion and Speculative Testimony Regarding Mr. Christensen's Alleged Lack of Remorse and Emotional State**

Defendant moves to exclude "any lay opinions, comments, or observations about Mr. Christensen's demeanor; emotions; characterizations of emotions; lack of reaction; lack of remorse; lack of emotion, including but not limited to during police interviews, jail telephone calls, and/or jail video recordings." Doc. 239, at 29. The United States contends that Rules 602 and 701 allow lay witnesses to testify on their observations and opinions, so long as they are rationally based on their own perception. Doc. 281, at 29–30 (citing *United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002)).

The Court holds that lay witnesses will be allowed to testify about their observations of Defendant's behavior, including his demeanor and their impressions of the significance of his actions, to the extent that such observations are relevant to the trier of fact. However, lay witnesses will not be permitted to speculate on matters beyond their personal knowledge, such as Defendant's inner feelings of remorse, during the guilt phase of this trial. Fed. R. Evid. 602; *Visser v. Packer Engineering Associates, Inc.*, 924 F.3d 655, 659 (7th Cir. 1991) ("[I]nferences and opinions must be based on first-hand personal experiences. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience."). Additionally, consistent with Defendant's right against self-incrimination, witnesses will not be permitted to use Defendant's silence in interactions with law enforcement against him. *See, e.g., United States v. Cooper*, 91 F. Supp. 2d 90, 113 (D.D.C. 2000); *see also* Doc. 330, at 22 (citing *Griffin v. California*, 380 U.S. 609, 615 (1965); *United States v. Mikos*, 539 F.3d 706, 710 (7th Cir. 2008)). Defendant's Motion is GRANTED in part and DENIED in part, consistent with these limitations.

**M. Motion to Exclude References to Lock-Picking and Knife Sharpening**

Defendant moves to exclude evidence that he purchased a lock-picking kit in March 2017 and then threw it away a few weeks later, on the grounds that such evidence is both irrelevant and substantially more prejudicial, confusing, and misleading than it is probative. Doc. 239, at 31–32. He also moves to exclude references to knife sharpening, although the Motion does not handle that issue in detail. The United States contends that the knife sharpening is obviously relevant because Defendant is alleged to have decapitated the victim, and that the lock-picking kit is relevant for the same reasons as Defendant's interests in serial killers, looking intimidating, and *American Psycho*. Doc. 281, at 31. Additionally, the United States holds that these activities are not prejudicial or confusing in themselves, but rather contribute to the theory of the case when taken as a whole.

The Court DENIES Defendant's Motion with respect to knife sharpening, given its connection to the alleged crime in this case and the Court's reasoning with respect to Section C, *supra*, but the Court GRANTS Defendant's Motion with respect to the lock-picking kit, as the United States has provided no evidence that it bears any connection to the alleged kidnapping.

**N. Motion to Exclude Evidence of Pornographic Photos**

Defendant moves to exclude evidence of hundreds of pornographic photographs found on his computer, including four depicting bondage, on the grounds that they are irrelevant and unfairly prejudicial. Doc. 239, at 33. The United States claims it does not intend to introduce evidence of any of the images except "multiple sexually explicit photos depicting restrained women that the defendant downloaded around April of 2017." Doc. 281, at 32. According to the United States, those images are evidence that Defendant was interested in holding and restraining

13

women, that he planned to restrain the victim, and that his motive for committing the crime was a desire for sexual violence. *Id.* at 32–33.

The Court finds that the photographs specified by the United States are admissible for the same reasoning set out in Section C, *supra*—taken together with the other evidence in this case, they go to show Defendant's motive, intent, or plan for the alleged crime. Defendant's Motion is DENIED with respect to the photographs identified by the United States and GRANTED with respect to the remaining pornographic photographs found on his computer.

## O. Motion to Exclude Lay Psychiatric Opinions and Speculation Evidence

Defendant moves to exclude the following opinions and statements from M.Z.: (1) that he was a psychopath, (2) that she was 80% sure he kidnapped and killed the missing student, (3) that if he killed the missing student, he "probably strangled her" and disposed of her body in water or in the woods somewhere, and (4) that he would not be remorseful for his actions. Doc. 239, at 33–34. Defendant further moves to exclude the following opinions from T.B.: (1) she felt he had a "grandiose idea that he could kill someone and get away with it," (2) if he was involved in Ms. Zhang's appearance, he would have "tied her up and raped her," and (3) if he had committed this crime, he would not be remorseful because he has "classic sociopathic tendencies." *Id*. at. 34.

The United States does not intend to use the comments on being "80% sure," Defendant being a "psychopath," or Defendant exhibiting "sociopathic tendencies." Doc. 281, at 35–36. However, the United States argues that M.Z. and T.B. may testify about their observations of Defendant and their personal knowledge of how he would commit a murder and dispose of a body. *Id.* at 35 (citing *United States v. Bogan*, 267 F.3d 614, 619–20 (7th Cir. 2001) ("[L]ay opinion testimony as to the mental state of another is indeed competent under [Rule 701].")

There is no blanket prohibition on the admissibility of lay witness testimony regarding the mental state of another. *See United States v. Guzzino*, 810 F.2d 687, 699 (7th Cir. 1987). However, courts may nonetheless prohibit such testimony if it is not rationally based on the witness's perception or helpful to understanding their testimony or a fact in issue. *See Bohannon v. Pegelow*, 652 F.2d 729, 732 (7th Cir. 1981). The Seventh Circuit affirmed the admission of such evidence in *Bogan*, where a witness testified as to his conclusions about the intent of an assailant. *Bogan*, 267 F.3d at 619. However, the Seventh Circuit has also affirmed the exclusion of such evidence, as it did in *Guzzino*, where a witness was *not* permitted to testify about his conclusions on the possible motives the defendant would have for committing the crime. *Guzzino*, 810 F.2d at 698–99.

In both *Bogan* and *Bohannon*, the Court allowed testimony about a person's motivation for an action where the witnesses personally observed that action. *Bogan*, 267 F.3d at 619; *Bohannon*, 652 F.2d at 732. Those situations are somewhat different from hypothetical statements about the specific physical methods a defendant would have used in the event that he had committed a crime. Neither M.Z. nor T.B. claim they actually witnessed Defendant's alleged commission the crime, so the argument that their testimony is "rationally based on the witness's perception" is more attenuated than the situations in *Bogan* and *Bohannon*. The Court will limit such testimony to M.Z. and T.B.'s personal observations and knowledge of his conduct, such as consensual choking and simulated violence with T.B., his own statements, and his emotive behavior after the alleged crime. The Court will exclude testimony that lacks a foundation in personal knowledge and therefore crosses into the realm of speculation.

Defendant's Motion is therefore GRANTED as to M.Z.'s statements that he was a psychopath, that she was 80% sure he had killed the victim in this case, and that he would not be

remorseful, and as to T.B.'s statements that Defendant had sociopathic tendencies. The Motion is also GRANTED as to T.B.'s conclusions that Defendant would have restrained and sexually assaulted the victim and M.Z.'s conclusions that Defendant would have choked the victim and disposed of her body in water or woods; both witnesses may testify about their activities with Defendant, behaviors of his they observed, and non-privileged statements he made to them, but they may not speculate about what he hypothetically would have done if he had committed the alleged crime. Based on the same principle, Defendant's Motion is DENIED as to T.B.'s observations that Defendant expressed grandiose ideas about getting away with a murder, since those observations are based on her personal knowledge.

**P. Motion to Exclude Testimony Regarding the Alleged Death of a Guinea Pig and Public Urination**

Defendant has moved to exclude evidence that he told T.B. he had killed a guinea pig and "got drunk and urinated all over a public, female restroom on campus," as well as testimony from R.V. that Defendant wanted to harm an animal. Doc. 239, at 37–38. The United States relies principally on the same arguments as their position to admit evidence about Defendant's interest in serial killers; they argue that his desire to kill animals is direct evidence of his intent to kill the victim, and that his vandalism of the women's restroom is evidence of his disdain for women, tending "to establish his motive in selecting a female victim." Doc. 281, at 36–37.

The Court finds there is no arguable connection between Defendant's claims that he killed a guinea pig or vandalized a women's restroom at some unspecified time in the past and the charged crime of kidnapping resulting in death. This evidence would be prejudicial without shedding useful light on the matter of Defendant's guilt or innocence. Defendant's Motion is therefore GRANTED.

**Q. Motion to Exclude Evidence of Properly Conducted Defense Interviews**

Defense moves to exclude references to defense investigator interviews of witnesses or argument that such interviews were improper. Doc. 239, at 39–40. The United States argues that those interviews might become relevant to attack or rehabilitate a witness's truthfulness, but concedes that they do not intend to argue any defense investigators acted improperly. Doc. 281, at 37–38. Defendant's Motion is GRANTED to the extent that the Court will not allow the United States to argue that the investigators acted improperly by attempting to interview potential witnesses, and the Court will instruct the jury that it is proper for both parties to interview witnesses. Evidence from prior interviews may be admissible as impeachment evidence.

**R. Motion to Exclude Statements Made During the "Memorial Walk" on June 29, 2017 that Do Not Concern the Alleged Kidnapping and Murder of Ms. Zhang**

Defendant moves to exclude statements he made to T.B. at the public memorial event for Ms. Zhang on June 29, 2017 about other offenses he claimed to have committed, unrelated to Ms. Zhang's death. Doc. 239, at 40. Defendant also seeks to exclude T.B.'s written narrative of those statements, which she provided to the FBI, as inadmissible hearsay. *Id.* The United States states that it will not seek to introduce Defendant's statements about committing other murders during the case-in-chief of the guilt phase, and that it will not seek to introduce the written narrative as a substitute for the recording and T.B.'s live testimony, although it may be used as a prior consistent statement or a recorded recollection under Federal Rules of Evidence 801(d)(1)(B) and 803(5). Doc. 281, at 38. The United States does intend to offer evidence of Defendant's statements about other serial killers as evidence that he "wanted to be known as a serial killer, which was a motive for kidnapping and murdering the victim." *Id.*

As discussed in Section G, *supra*, the risk that these statements would confuse or prejudice the jury may be considerable. At this time, the Court RESERVES ruling on Defendant's Motion and directs the parties to be prepared to argue their positions and provide evidentiary support at the Final Pretrial Conference on May 13, 2019.

### S. Motion to Exclude Testimony of J.F. Concerning Mr. Christensen's Presence on his Property in June 2017

Defendant moves to exclude testimony from a man who lived just south of Defendant's residence, who had four confrontations with Defendant about trespassing on his property to take a shortcut to the residence. Doc. 239, at 45–46. Defendant argues that this evidence would be irrelevant or substantially more prejudicial than probative. *Id.* The United States does not intend to use this evidence in its case-in-chief, although it may seek to introduce the evidence in rebuttal depending on how the trial unfolds. Doc. 281, at 40. Accordingly, Defendant's Motion is GRANTED.

### T. Motion to Exclude Evidence of the Lost Sheriff's Badge Found on 6/13/17

Defendant moves to exclude evidence of a badge belonging to a retired sheriff, which was found in the street by a motorist about 2.5 miles from Defendant's home. Doc. 239, at 47. Defendant argues that this evidence has no relevance or probative bearing on the case, in part because the badge that E.H. recalls being shown by a man who approached her on June 9, 2017 does not match the description of the recovered badge. *Id*. The United States concedes that it does not intend to offer this evidence in its case-in-chief during the guilt phase of this trial. Doc. 281, at 41. Defendant's Motion is GRANTED.

**U. Motion to Exclude Tape-Recorded Phone Calls Made by Mr. Christensen from the Macon and Livingston County Jails**

Although Defendant titled this motion as a motion to exclude the recorded phone calls, the request in the Motion is for a disclosure from the United States as to which specific phone calls they intend to offer, so that Defendant can challenge the admissibility of those particular calls. Doc. 239, at 49–50. The United States correctly notes that the Court previously ruled the recorded phone calls admissible (Doc. 205), and states that they will disclose the list of specific phone calls to Defendant by the time their exhibit list is complete. Doc. 281, at 41–42. The Court DENIES the "Motion to Exclude" the calls, but GRANTS Defendant's request for disclosure. The United States shall provide a preliminary list of the relevant recorded phone calls by May 28, 2019, when their exhibit list is due, for the purpose of aiding Defendant's trial preparation.

**V. Motion to Exclude the Testimony of S.T.**

Defendant moves to exclude as irrelevant testimony from a woman who posted publicly about seeing Defendant on a dating app and being uninterested in him because he looked "mean" and had a "weird mustache." Doc. 239, at 50. The United States concedes that they do not intend to offer this evidence in their case-in-chief. Doc. 281, at 42. Defendant's Motion is GRANTED.

**W. Motion to Exclude Summaries of Mr. Christensen's Library Rentals, YouTube Playlists, and Music Playlists**

Defendant moves to exclude evidence of his library rentals, music playlists, and video playlists, as they are generally innocuous and lack bearing on the case. Doc. 239, at 51. The United States concedes that they do not intend to offer evidence of his movie or music preferences during their case-in-chief. Doc. 281, at 42–43. Defendant's Motion is GRANTED.

19

**X. Motion to Exclude Testimony of C.R. and A.R.**

Defendant moves to exclude testimony from a married couple who considered going on a date with Defendant and his then-wife, since they never met up and the couple can contribute nothing relevant to the case. Doc. 239, at 51. The United States concedes that they do not intend to use this evidence in their case-in-chief. Doc. 281, at 43. Defendant's Motion is GRANTED.

**Y. Motion to Exclude Testimony of Elyse H. and R.R.**

Defendant moves to exclude the testimony of two people who worked out at the same gym as Defendant and his then-wife. Doc. 239, at 52. Defendant argues that these witnesses do not have anything probative to add to the case, as Elyse H.'s testimony would be limited to her opinion that Defendant and his wife were socially "strange" and R.R.'s testimony would be limited to his discussions with Defendant's then-wife about her depression. *Id.* at 52–53. The United States contends that these witnesses should be allowed to testify in order to establish that the Defendant regularly worked out in the months preceding the crime and "that he did not socially interact with others." Doc. 281, at 43. According to the United States, this evidence is relevant at the guilt phase of the trial in order to show that the Defendant's physical strength enabled him to transport the victim into his apartment, and that he was going to the gym not to socialize but "to get stronger as part of his plan and preparation for kidnapping and murdering the victim." *Id.* at 44. The United States concedes that the witnesses should not testify about prejudicial nicknames they used to refer to Defendant and his wife. *Id.*

To the extent that the United States seeks to establish Defendant's gym habits as part of their case-in-chief, Defendant's then-wife is capable of testifying about them, as she did previously at a pretrial hearing in this case. Elyse H. and R.R. had very limited interactions with Defendant, and their testimony about any social awkwardness on the part of Defendant poses a

risk of prejudicing the jury or presenting needlessly cumulative evidence that outweighs the minimal probative value their testimony may have. The Court therefore GRANTS Defendant's Motion.

### Z. Motion to Exclude Listed Interests on Tinder.com

Defendant moves to exclude evidence of his listed interests on his Tinder profile, which include a single reference to *American Psycho*. Doc. 239, at 53. The United States plans to use this evidence for the same reason that it plans to use Defendant's statements about it being his favorite book—to show his interest in serial killers and graphic violence, which goes to his motive for allegedly committing the crime. Doc. 281, at 45. For the same reasons set forth in Section C, *supra*, the Court DENIES Defendant's Motion.

### AA. Motion to Exclude Mr. Christensen's Suicide Note

Defendant moves to exclude evidence of a suicide note he wrote in the summer of 2017 while he was housed in the Macon County Jail. Doc. 29, at 54–55. Defendant argues that any reference to the suicide note would substantially prejudice him in this capital case, as a juror could assume that he desires an imposition of the death penalty, although he denied his guilt in the note. *Id*. The United States argues that the note should be admitted as evidence of consciousness of his guilt, which other federal courts have allowed, and that the note is admissible as a statement by an opposing party under Federal Rule of Evidence 801(d)(2)(A). Doc. 281, at 45 (citing *United States v. Cody*, 498 F.3d 582, 592 (6th Cir. 2007)).

In *Cody*, the Sixth Circuit held that suicidal ideation "may be admissible as relevant evidence of consciousness of guilt, but only after being screened through typical Rule 403 balancing in accordance with this court's jurisprudence on the admissibility of flight evidence." *Cody*, 498 F.3d at 592; *see also United States v. Workman*, 680 F. App'x 699, 702 (10th Cir.

2017) (applying the *Cody* reasoning to allow consideration of past suicidal ideation as a factor in deciding whether to detain a defendant pretrial). As the Seventh Circuit is silent on this particular admissibility issue, the Court will rely on the Sixth Circuit's holding. However, the Court lacks sufficient information about the note to adequately perform "typical Rule 403 balancing." *Cody*, 498 F.3d at 592. Thus, the Court RESERVES on Defendant's Motion until an offer of proof is made as to the contents and circumstances of the note. Should further argument be needed after that time, the matter may be addressed at the Final Pretrial Conference on May 13, 2019.

**BB. Motion to Exclude Statements Regarding "the Perfect Victim"**

Defendant moves to exclude testimony from T.B. about an alleged incident where Defendant saw an Asian woman while he was out shopping with M.Z., described the woman as the "perfect victim," and looked over her shoulder while she was checking out to observe her contact information. Doc. 239, at 54. Defendant also moves to exclude testimony from T.B. that he later drove past the woman's house. *Id.* According to Defendant, this evidence is irrelevant and speculative, and its probative value is substantially outweighed by the potential prejudice, especially considering the United States' theory that Defendant was driving around on June 9, 2017 attempting to select a victim at random. *Id.* at 55.

The United States contends that the evidence should be admitted for several reasons: (1) it is admissible under Federal Rule of Evidence 801(d) as an admission by a party opponent, (2) it provides useful context for Defendant's relationship with T.B., (3) it shows his motive, plan, and preparation to find a "victim" rather than a partner for a consensual abduction scenario, and (4) it shows his sexual interest in Asian women, which is relevant to his alleged selection of Ms. Zhang as a victim and the alleged sexual assault. Doc. 281, at 46–47 (citing, e.g., *United States v. Robinson*, 177 F.3d 643, 647 (7th Cir. 1999)). To the extent that Defendant challenges

T.B.'s credibility, the United States asserts that any such challenges are appropriately addressed by cross-examination. Doc. 281, at 46.

The Court lacks sufficient information at this time to determine the admissibility of this evidence. Neither the Motion nor the Response indicate when Mr. Christensen is alleged to have made the statements, whether T.B. claims to have observed them herself or heard about them from him later, or in what context the statements were relayed to T.B. The Court therefore RESERVES ruling on Defendant's Motion until an offer of proof is made about the specifics of the situation in question.

## CONCLUSION

For the reasons stated herein, Defendant's Sealed Omnibus Motions in Limine (Doc. 239) to Exclude Evidence at Trial are GRANTED in part and DENIED in part, and the United States' Sealed Motion in Limine (Doc. 250) to Admit the Testimony of the Defendant's Ex-Wife is GRANTED to the extent it is consistent with this Order.

Signed on this 3rd day of May, 2019.

/s James E. Shadid
James E. Shadid
United States District Judge