UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Crim. No. 17-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

**PROPOSED VOIR DIRE QUESTIONS, PROPOSED INTRODUCTION BY THE COURT, AND REQUEST FOR ATTORNEY-DIRECTED FOLLOW-UP QUESTIONS**

NOW COMES the Defendant, BRENDT A. CHRISTENSEN, by and through his attorneys, and for his Proposed Voir Dire Questions, Proposed Introduction by the Court, and Request for Attorney-Directed Follow-Up Questions states as follows:

**I.    Background**

On May 13, 2019, this Court directed the parties to file proposed voir dire questions for the general panel and for the first few groups of individual jurors by May 28, 2019. (Docket Entry 5/13/2019; R. 342) The proposal shall include both general inquiries and specific questions for the first 64 potential jurors. (R. 342 pg. 1)  Outlined herein is a proposed "Introduction" to be read by the Court to each panel of jurors reporting for voir dire, followed by a list of proposed general inquiries to be asked of the entire panel by the Court, and finally, a list of proposed inquiries to be directed to each juror once individual voir dire begins.

II.     **Proposed Introduction by the Court**

Pursuant to Rule 24(a) of the Federal Rules of Criminal Procedure, Mr.

Christensen requests the Court provide the following introduction to the panels of

prospective jurors. Significant portions of the language proposed below was given by

the Courts in *United States v. Briseno*, No. 2:11-cr-00077-PPS-APR (N.D. Ind. January 13,

2015) (Doc. 1315) and *United States v. Con-Ui*, No. 3:13-cr-00123-ARC (M.D. Pa. April 24,

2017) (Attached as Exhibits 1 and 2). The defense has also included a transcript from

*United States v. Brian Richardson*, No. 1:08-cr-00139-CC (N.D. Ga. March 2, 2012) in

which Judge Cooper's introduction to the panels of prospective jurors was video-taped

and then played to each panel. (Attached as Exhibit 3). The video file (file name: "J

Cooper pre voir dire instruction (Richardson 2012).m4v") is available for download at

the following link (file link: https://www.dropbox.com/s/ht4801d681cwwf9/J Cooper

pre voir dire instruction %28Richardson 2012%29.m4v?dl=0).

**DEFENDANT'S REQUESTED PROPOSED**
**COURT'S INTRODUCTION**

THE COURT: Good morning, everyone. It's a pleasure to welcome you to the Peoria

Division of the United States District Court for the Central District of Illinois. My name

is James Shadid, and I'm the judge that will be presiding during this trial. I want to

thank all of you very much for taking time to complete the lengthy questionnaire that

the Court sent to you several months ago. Your answers to those questions are really

going to help shorten the process of jury selection, and everyone involved in the case appreciates the time and the thought that each of you devoted to the questionnaire. Ladies and gentlemen, the Court and the parties are always interested in making sure that everybody who comes to this court receives a completely fair and impartial trial. And that means, in part, that the case has to be decided entirely based on evidence that's admitted here in court and not based on information that you receive outside of the courtroom.

And for that reason I'll be saying at every recess and at every break at the end of the day that you can only consider information that you hear inside this courtroom. So starting now, ladies and gentlemen, you are not to talk to anybody about this case, and you're not to be within listening distance of anybody who is talking about the case. That includes each other, your family, people you work with, anyone that you might know. This also includes talking about the case electronically via e-mail or texting or Facebook or any other similar services.

If you're excused from the case and you leave the courtroom and the courthouse, this instruction will no longer apply to you. But as long as you are either a juror or a potential juror in this case, please do not communicate with anybody in any way, shape, or form about this case.

Also, do not attempt to read about the case in any newspaper or on-line or listen to or watch any broadcast report about the case. Do not use your smart phones or attempt to otherwise access the Internet to search for information about the case. Do not

attempt to visit or go to any of the locations that are mentioned in the case. Again, what you learn about this case you must learn about it from this courtroom and from nowhere else.[1]

Ladies and gentlemen, one of the best things I get to do as a judge is to swear in new citizens to this country. It's a really fulfilling job that I get to do, and the reason is simple. Many people who didn't happen to be born in this country come here and they want to become part of our country. And for me it's a great joy to see people who want to be part of the American family, they want to be Americans. And during the swearing-in process, I talk to these new citizens and explain to them all of the benefits that are conferred upon them of citizenship; but I also tell them that there aren't just rights of citizenship. There are obligations as well.

And really when you think about it, the number of things that this country asks of citizens is really pretty limited. First, pay your taxes. Second, you have to defend your country if you are called upon to do so. It's been a long time since this country has had a draft, but many of our parents may have served in World War II or Korea or in the Vietnam conflict, so that's the second obligation. Defend your country when you are called upon to do so. The third obligation that we have as citizens is to serve as jurors in

---

[1]Note: The following language was utilized by Judge Simon in *United States v. Briseno*, No. 2:11-cr-00077-PPS-APR (N.D. Ind. January 13, 2015) (Doc. 1315). It is included here merely to provide an example of how the *Briseno* Court discussed jury service. Defense counsel do not presume to suggest this Court adopt this particular language.

our courts. You may be called once, twice, or maybe three times in an entire lifetime; but it's an obligation as a citizen. Trial by jury is a precious right that our forbearers fought for in the Revolutionary War.

Prior to the founding of this nation, the King of England was summarily jailing people without the protection of the jury trial. And so the concept of trial by jury became embedded in our constitution. And it's a treasured institution that we fought for. And so for that reason, again, it's an obligation of all citizens to serve when called upon. This is one of the few judicial systems in the world that allows juries to stand in judgment of other people on important issues. And the only way that this works, of course, is if we serve when we're called upon.

Now, because of that, ladies and gentlemen, you are going to see that I'm not going to be always particularly understanding in granting excuses to prospective jurors. All of us, I fully understand, would probably rather be somewhere else. But, again, I want to point out to you that this is an obligation as a citizen.

And although we have jobs and we have family responsibilities, this is what I would ask you to consider as we proceed throughout the day. Ask yourself this question: God forbid, what if on your way to work today you had a serious accident, you broke your back, and you're laid up in the hospital for four or six weeks. Ask yourself, would your job go on without you? I think all of you are very important, but I also think all of us and all of our jobs can go on without us. I don't think that I'm so important that somebody else couldn't replace me in the event of necessity; I'm sure

they could. And I think the same would probably apply to you. So I want you to think about that when we're talking about excuses from jury service. If there was a necessity, our lives and our responsibilities at work would go on. And so with that, let's begin the process.

I want to give you an overview of what will be happening today before getting into the details of the case. In a few moments I'm going to tell you about this case and explain to you some of the procedures that may be used during the trial. But once we get past those preliminary issues, I'm going to ask questions to all of you as a group regarding certain issues that we need to know about to select a fair and impartial jury. Once we're done questioning you as a group, I'll send all of you back to the jury deliberation room. Then what we'll do is each person from that group will be called into court individually so that we can ask you some more questions in private.

Some of these questions may relate to answers that you gave on your questionnaire that you filled out. And after each person in the group has been questioned individually, I'll let you know if you're going to be excused or not. Those of you who are excused, of course, are free to go, and your service will be completed. Those of you who are not excused will be given further instruction at the end of the day today about when we might need you again.

The jury selection in this case may take a couple of weeks, so it's not really possible for me to tell you today whether you've actually been selected as a juror in this case or when the trial will begin. But you'll receive further instruction from the clerk's

office once we do know. I do anticipate that once the trial begins – and our rough estimate is that trial may begin around June 10th or 17th – it will take about 6 to 8 weeks to try.

Now that you have an understanding of how things will work today, I want to tell you a little bit about this case.

The defendant in this case is Brendt Christensen, and he is presumed innocent. He has been charged by way of Indictment, and all that is the formal method by which charges are brought against a defendant. An Indictment is not evidence. It is merely an accusation, and it's nothing more.

In this case, Mr. Christensen is charged in a three-count indictment with kidnapping resulting in death and two charges of false statement. Mr. Christensen is charged in count one with kidnapping and murdering Yingying Zhang on June 9, 2017. Mr. Christensen is charged in count two and three with making false statements to Federal Bureau of Investigation ("FBI") Special Agents. Namely, in count two, that he stated he stayed at his apartment and slept and played video games all day on June 9, 2017, when he knew full well that he drove around the University of Illinois campus in the afternoon of June 9, 2017, and picked up Ms. Zhang as she was waiting for a bus, and in count three that he stated he dropped off an Asian female in a residential area shortly after picking her up in his Saturn Astra on June 9, 2017, when he knew full well that he did not drop the female off shortly after picking her up, but instead, took her back to his apartment.

7

Now, the defendant has pled not guilty to all counts of the Indictment, and this denial made by the defendant raises issues of fact to be tried in this case.

There are three basic principles of criminal law that I want you to keep in mind, and these are critical. First, as I've said, the defendant is presumed innocent of these charges, and that presumption of innocence stays with him throughout the case, throughout the trial, and it even continues during the jury's deliberation. Second, the government has the burden of proof. The defendant doesn't have to prove that he's innocent; it's the other way around. And, third, the government must prove that the defendant is guilty beyond a reasonable doubt.

As you know from some of the questions in the questionnaire that you filled out, the most serious charge in the Indictment, kidnapping resulting in death, is a capital charge which carries with it the possibility of the death penalty or life imprisonment without the possibility of release.

I will be asking you some questions about your views and feelings about the death penalty and life imprisonment without the possibility of release later on during the jury selection process. But before we continue with the jury selection process, I want to explain to you a little bit about how a capital case proceeds so you have some framework.

Potentially this case has two trials. The first trial – a "guilty / not guilty trial" - requires the jury to consider whether the government has proved the charges brought against the defendant beyond a reasonable doubt. In that stage of the proceeding the

jury should not consider any possible punishment that may be imposed upon the defendant.

If at the conclusion of that "guilty / not guilty trial", the jury reports that it does not find the defendant guilty of the capital charge, kidnapping resulting in death, then the jury's responsibilities are concluded, regardless of how the jury finds as to the other charges. And this is because it's my responsibility to decide the punishment for non-capital crimes.

If on the other hand, the jury reports that it has found the defendant guilty of kidnapping resulting in death, then we proceed to a second "sentencing trial" of these proceedings, at which the jury considers whether to impose life imprisonment without the possibility of release or death.

During a "sentencing trial," the government has the opportunity to introduce evidence of what are called aggravating factors. These are factors that the government alleges support a death sentence.

[Note: The defense has filed a motion requesting *Reconsideration of the Court's Order Deferring Hearing on Reliability of M.D.*. Depending on the Court's ruling on this motion, defense counsel may request the Court include the following paragraph in the requested proposed Court's introduction.]

One of the aggravating factors the government alleges is that Mr. Christensen has committed other serious acts of violence including, in or about 2013, the defendant choked and sexually assaulted a different woman.

No aggravating factor may be considered by the jurors unless all the jurors unanimously agree that the government has proved that aggravating factor beyond a reasonable doubt.

So, for example, if 11 jurors were to find that a particular aggravating factor existed and one juror found that it did not exist, then that aggravating factor cannot be considered by any juror in support of a death sentence.

The defendant has the opportunity to present to the jury what are called mitigating factors; and these are things about the defendant's character, background, mental state or conduct, or any other circumstances which might cause a juror to lean toward lifetime imprisonment as the appropriate punishment.

The burden of establishing the existence of any mitigating factor is on the defendant. However, the defendant need only prove the existence of a mitigating factor by what is known as a preponderance of the evidence. This is a different legal standard that I will explain carefully to you later if this case does proceed to a "sentencing trial." But essentially, a preponderance of the evidence means that the existence of a factor is more probably true than not true.

Also, unlike the case of aggravating factors, all 12 jurors do not have to agree. A finding with respect to a mitigating factor may be made by any one or more members of the jury. So, if a single member of the jury finds a mitigating factor, that individual member of the jury can weigh that factor in the process of deciding whether to vote for a sentence of death.

Once the process of deciding on the existence of aggravating and mitigating factors has been completed, each member of the jury is asked to balance the aggravating factors against the mitigating factors and decide whether the aggravating factors outweigh the mitigating factors, and if so, whether they sufficiently outweigh the mitigating factors to justify a sentence of death. Or even if there have been no mitigating factors found, whether the aggravating factor or factors standing alone justify a sentence of death.

Regardless of the findings with respect to aggravating and mitigating factors, no member of the jury is ever required to vote for a sentence of death. Each member of the jury must come to an individual reasoned moral judgment regarding the appropriate sentence, either life imprisonment without the possibility of release or the death penalty.

I want to impress upon you that this weighing process is not some mechanical process where you are simply counting up factors. It's a qualitative process. It is not a quantitative process. For example, one mitigating factor may be enough to outweigh several aggravating factors. And even if no one on the jury finds that any mitigating factors exist, the jury still cannot find in favor of the death penalty unless everyone on the jury finds that the aggravating factors that the jurors have unanimously found are sufficiently serious to justify a death sentence.

For a jury to impose a death sentence the prosecution must convince every member of the jury that death is the correct or appropriate sentence for the accused

11

under the circumstances of the case. The decision whether to impose a death sentence in any case is by law left up to those who serve on the jury. In other words, each member of the jury must decide individually whether the accused is sentenced to death or life without the possibility of release or parole. If even a single juror is not in agreement that the death penalty must be imposed, the result is a life sentence. Now, when I say "life imprisonment," I mean just that. There's no parole in the federal system.

I also want to emphasize the concept of respect. Every juror is entitled to his or her own assessment of the evidence, and how the balance between aggravating and mitigating factors should be struck. Every other juror is required to respect that opinion, even if he or she strikes a different balance. I expect you all will treat each other with respect, even when you don't agree.

I know that this process may sound complicated, and I can assure you that if we get to that point in this case in which we proceed to a "sentencing trial," I am going to give you more detailed instructions on the law and how you should proceed with the decision-making that you'll be asked to do as a juror. But, for now, I want you to understand the basic process so you have some framework.

Finally, ladies and gentlemen, I want to stress that this discussion about the possibility of the death penalty being considered by the jury in this case should not in any way be taken by you as an indication that the jury will end up having to make the sentencing decision in this case or, if the case proceeds to a "sentencing trial," that the Court or the law require or favor in any manner the jury impose a sentence of death. I

want to again remind you the defendant is presumed innocent and the questions about the appropriate penalty will only come into play if all of the jurors unanimously agree that the government has proved its case beyond a reasonable doubt. I ask you to keep an open mind throughout this process and remember that Mr. Christensen is presumed innocent.

Ladies and gentlemen, at this time I am going to give the lawyers an opportunity to introduce themselves and who might be sitting with them at counsel table throughout the trial.

### III.    Proposed General Voir Dire – To Be Directed To The Entire Panel

Pursuant to Fed. R. Crim. P. 24, and the Court's *Supplemental Order Establishing Juror Selection Procedures*, Dkt. 342, the defendant Brendt A. Christensen, requests the Court include the following questions in the voir dire examination of the respective panels. Pursuant to Rule 24(a)(2)(A), Mr. Christensen requests his attorneys be permitted to ask questions, where appropriate, in response to juror's answers to the questions put to the panel by the Court as well as to other questions raised by the juror's questionnaire. The Court is requested to invite jurors during the panel voir dire to approach the bench to respond outside the hearing of other prospective jurors (or to wait until individual questioning to respond to particular questions) if the prospective juror wishes to do so, or if the circumstances otherwise require it to avoid tainting the remaining panel.[2]

### A.  Proposed Questioning – New or Previously Undisclosed Hardship

The trial of this case, once the jury selection process is complete, may last approximately two months. Once the trial starts, this case will be in session generally speaking five days a week. We will be working Monday through Friday. We will usually sit from 8:45 in the morning until 4:30 in the afternoon with breaks in the morning and in the afternoon and a lunch hour.

---

[2] For example, Mr. Christensen may request that the Court allow his counsel to ask questions to clarify jurors' questionnaire responses regarding bias regarding culpability, knowledge of the case, relationships with and bias towards law enforcement.

14

We will observe all federal holidays. There are no plans to sequester the jury. That means that you will be able to go about your business at the end of each trial day and you will have weekends and federal holidays off. If this case proceeds to the penalty stage, we will take some time off between the two phases, the exact length of which is to be determined when and if we reach that juncture.

The very first communication you received from the Court was a questionnaire that asked, among other things, whether sitting as a juror in this case might present an unusual hardship for you.  Given that some time has passed since you completed those questionnaires, I want to ask you again.  Has anything changed in your life that might create an undue hardship for you if you were selected as a juror in this case?

### B.  Proposed Questioning - Familiarity with Witnesses

During orientation this morning, you should have been given a list of anticipated witnesses and asked to review that list. Did everyone review that list? Do any of you know or think you might know any of the witnesses on the list that you saw?

Please also note that Mr. Christensen, the attorneys in the case, and all of the witnesses have been or will be instructed not to speak to you at any time either before or during trial. Please do not be offended if you see any of them outside the courtroom and they do not speak with you, even to exchange pleasantries.

### C.  Proposed Questioning - Familiarity with Court Staff, Attorneys, Mr. Christensen, and the alleged victim in this case Yingying Zhang and her Family

In the questionnaire, we asked you about your knowledge of certain participants in this case, including the Court staff, the defendant, the attorneys, and the alleged victim and her family. Now that you have faces associated with the names, I want to ask some of those questions again.

Does anyone have any familiarity with myself, my staff, or anyone else working at the courthouse that was not already reported in your responses to the questionnaire?

Does anyone know the defendant, Brendt Christensen?

Mr. Christensen is represented by Robert Tucker, George Tassif, Elizabeth Pollock, and Julie Brain. Does anyone know these lawyers, either personally or by reputation?

The United States is represented by Eugene Miller, Bryan Freres, and James Nelson from the Department of Justice.  The United States Attorney for Central District of Illinois is John Milhiser. Do any of know counsel or the U.S. Attorney, Mr. John. Milhiser, either personally or by reputation?

Do any of you know any of the employees in their offices on any basis, social, professional or otherwise?

The United States will be assisted at counsel table by _____, who is with the FBI.  Does anyone know _____?  Do any of you know any of the employees in his office on any basis, social, professional or otherwise?

The alleged victim in this case was Yingying Zhang, who was from China and was a visiting scholar at the University of Illinois at Urbana–Champaign. Did anyone know Ms. Zhang or know members of her family?

### D. Proposed Questioning – Knowledge of the Case

The questionnaire you completed contained several questions regarding your knowledge of this case, and, if so, how this knowledge may have been the basis for any of you to have formed an opinion regarding the guilt or innocence of Mr. Christensen or the appropriate punishment for Mr. Christensen.[3] We may discuss your answers to those questions individually later in this process. For now, however, I would like to know if anyone has read, heard, or seen any additional news or other information about this case since filling out the questionnaire? If so, please raise your hand and we will ask you more about this later.

After receiving the questionnaire, did anyone research or try to find out more about the case?[4] If so, please raise your hand and we will ask you more about this later.

---

[3] 207 QUESTIONS CONCERNING LEGAL PRINCIPLES AND EVIDENCE: This part explains some of the fundamental legal principles on which the Court will give instruction during the trial. If you believe you cannot follow these principles, you are duty bound to let the Court know. Have you formed an opinion regarding the guilt or innocence of Mr. Christensen based on what you have seen, read or heard?

209 Have you formed an opinion regarding the appropriate punishment for Mr. Christensen based on what you have read, seen, heard or discussed?

[4] 211 CONCLUDING QUESTIONS: Please remember that you should not discuss this questionnaire or your answers with anyone, including family members, friends, or other prospective jurors. You must not make, or attempt to make, any investigation regarding this

Have you spoken to anyone about any aspects of this case or has anyone spoken to you about any aspects of this case since you filled out the questionnaire?

Have you made any comments or heard any other people talking about any aspects of this case here today at the courthouse?

### E.  Proposed Questioning – Any Changes, Modifications, or Additional Details to Answers in Questionnaire

Since filling out the questionnaire, has anybody had any new experience with the criminal justice system? For example, has anybody been accused, arrested or charged with a crime, been a victim, served on jury duty or had any other experiences positive or negative with the criminal justice system.

You each have a legal obligation to provide accurate, truthful, and complete responses to the questions in the questionnaire and during voir dire. Are there any answers you gave on your questionnaire that you think you should change, modify, or add additional detail in order to ensure your responses are accurate, truthful, and complete?

---

case. This includes conducting any internet research or reading any media reports. Thank you for following this directive. If you are selected as a juror in this case, the Judge will instruct you to continue to avoid all media coverage, and not to go on the internet with regard to this case for any purpose. That is, you will be forbidden from reading newspaper articles about this case, "googling" this case, blogging/tweeting about it or posting comments about it on any social media site, etc. Do you have any reservations or concerns about your ability or willingness to follow this instruction?

IV.      **Individual Voir Dire: Follow-Up Questions – Non-Death Penalty**

The defense respectfully proposes the following follow-up questions for individual voir dire by the Court. The defense will provide the Court with a table identifying the prospective jurors who have given answers on the questionnaire indicating that the particular follow up questions listed below are appropriate and necessary.

### A.  Accused, Arrested, Charged with a Crime (Q99-Q101)

You indicated that you or someone close to you has been accused, arrested, or charged with a crime?  Please tell us a little more about this.

### B.  Victim of a Violent Crime, Including Sexual Assault (Q102-124)

You indicated that you, a family member, someone close to you or someone you know whose family has been the victim of a violent crime and/or sexual assault? Can you tell us a little more about the circumstances, who was victimized, the relationship between the victim and the perpetrator, how did you learn about it, what was the outcome, what impact did the crime have on the victim?

### C.  Victim of a Sexual Assault

You indicated that you, a family member, or someone close to you has been sexually assaulted? Can you tell us a little more about the circumstances of the sexual assault, who was victimized, the relationship between the victim and the perpetrator, how did you learn about the sexual assault, what was the outcome, and what impact did the sexual assault have on the victim?

19

### D.  Know Anyone Whose Family Has Been Affected by Violent Crime

You indicated that you know someone whose family has been affected by violent crime. What were the circumstances of the crime, who was victimized, how did you learn about it, what was the outcome, how was the family affected by the violent crime.

### E.  Law Enforcement Connections (Q93-98), Views/ Experiences (Q127-132) and Testimony (Q133-137)

You indicated that you or someone close to you has been employed by, volunteered with, associated with or applied for work with law enforcement or corrections and/or that you have strong views or exceptionally positive experiences with law enforcement and/or that you would evaluate their testimony differently or  be more or less willing to believe the testimony of law enforcement.  Please tell us more about your experience and why you feel this way.

### F.  Legal Principles (Q155-Q160)

You indicated that you may have some qualms about, or think it may be unfair, or have some concerns that in our legal system Mr. Christensen is not required to prove his innocence, is not required to produce any evidence at all and/or that he has no obligation to testify in his own defense. Please tell us more about why you feel this way.

### G.  Formed Opinions (Q207-Q210)

You indicated that you may have formed an opinion regarding the guilt or innocence of Mr. Christensen. There is nothing inappropriate or wrong about having these views or feelings. In fact, we appreciate your honesty and you are fulfilling your

civic duty by sharing these honestly held beliefs and feelings. Please tell us more about your opinions.

You indicated that you may have formed an opinion regarding the appropriate punishment for Mr. Christensen. There is nothing inappropriate or wrong about having these views or feelings. In fact, we appreciate your honesty and you are fulfilling your civic duty by sharing these honestly held beliefs and feelings. Please tell us more about why you feel this way.

### H.  Concerns about the Nature of the Case (Q215-Q216)

You indicated that the nature of the case may affect your ability to be a completely objective and impartial juror in this case.   Please tell us more about why you feel this way.

### I.   Other Information (Q221-Q222)

You indicated that there is additional information that you wanted to share that had bearing on your service as a juror in this case.  Please tell us now.

### V.   Individual Voir Dire: Follow-Up Questions – Death Penalty Questions

Since completing the questionnaire, please share any additional thoughts or any things you have heard, seen, or watched, or any conversations you have had about the punishments of life imprisonment without the possibility of release or the death penalty.

Please let us know if and how your views about life imprisonment without the possibility of release or the death penalty have changed in any ways from what you expressed in the questionnaire.

Generally what are your views regarding life imprisonment without the possibility for release for someone convicted of intentionally and with premeditation killing another person after sexually assaulting and torturing the person.

Generally what are your views regarding the death penalty for someone convicted of intentionally and with premeditation killing another person after sexually assaulting and torturing the person.

## VI. Further Follow-Up Regarding Juror's Punishment Views – Attorney-Directed Voir Dire

The defense respectfully requests an opportunity for attorney conducted voir dire of the prospective jurors primarily focused on potential punishment bias.

WHEREFORE, Defendant requests that the Court adopt his Proposed Introduction, Proposed General Voir Dire Questions addressed to the panel as a whole, and Proposed Individual Voir Dire Questions addressed to each individual juror.

Respectfully submitted,

/s/Elisabeth R. Pollock                    /s/ George Taseff
Assistant Federal Defender            Assistant Federal Defender
300 West Main Street                     401 Main Street, Suite 1500
Urbana, IL 61801                            Peoria, IL 61602
Phone: 217-373-0666                     Phone: 309-671-7891
FAX:   217-373-0667                       Fax:     309-671-7898
Email: Elisabeth_Pollock@fd.org    Email: George_Taseff@fd.org

/s/ Robert Tucker                   /s/ Julie Brain
Robert L. Tucker, Esq.              Julie Brain, Esq.
7114 Washington Ave                 916 South 2nd Street
St. Louis, MO 63130                 Philadelphia, PA 19147
Phone: 703-527-1622                 Phone: 267-639-0417
Email: roberttuckerlaw@gmail.com    Email: juliebrain1@yahoo.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2019, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing

to Assistant United States Attorneys Bryan D. Freres and Eugene L. Miller and Trial

Attorney James B. Nelson. A copy was also mailed to the defendant.

/s/Elisabeth R. Pollock
Assistant Federal Public Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org

U.S. v. Christensen

Defense Proposed Follow-Up for the Court on Individual Jurors

prepared 5/26/2019

| 1 Name (Last,First) | ID# | | A.  Accused, Arrested, Charged  Crime (Q99-101) | B.  Victim or Someone close ( incl. violent crime, sex assualt) (Q102-Q124) | C.  Law Enforcement Connections (Q93-Q98); Views (Q127-138); Testimony (Q133-137) | E.  Difficulty with Legal Principles (Q155-160) | F.  Formed Opinions (Q207-Q210) | G.  Concerns Ability to be Objective (Q215-Q216) | H. Additional Infornation For Court (Q221) | I. Other Misc Follow-Up (Q#s) |
|---|---|---|---|---|---|---|---|---|---|---|
| Amundson, Kathy | 100384674 | | | | x | x | x | | | |
| Claus, Betty | 100384856 | | | | | | | | | |
| Duley, Holly | 100384905 | | | | x | | | | | |
| Nelson, Chad | 100384969 | | | | x | | | | | |
| Rackauskas, Analiesa | 100384978 | | | x | x | | | | | |
| Miller, Debora | 100384988 | | | x | x | | | | | |
| Naseim, Oktoer | 100385007 | | | x | x | | | | | Q218 |
| Hurckes, Yvonne | 100385051 | | | x | x | | | | | |
| Kresl, Timothy | 100385055 | | | | | | | | | |
| Washburn, Wesley | 100385084 | | | | x | | | | | |
| Brummitt, Mary | 100385090 | | | | x | | | | | |
| Perry, Christina | 100385281 | | | | x | | | | x | |
| Waldrop, Lynne | 100385651 | | | x | | | x | | | |
| Bernadini, Kim | 100385737 | | x | | | | | | | |
| Hanson, Brian | 100385774 | | | | x | | | | | |
| Wall, Aubrie | 100385777 | | | | x | | | | | |

U.S. v. Christensen      Defense Proposed Follow-Up for the Court on Individual Jurors      prepared 5/26/2019

| 1 Name (Last,First) | ID# | A.  Accused, Arrested, Charged  Crime (Q99-101) | B.  Victim or Someone close ( incl. violent crime, sex assualt) (Q102-Q124) | C.  Law Enforcement Connections (Q93-Q98); Views (Q127-138); Testimony (Q133-137) | E.  Difficulty with Legal Principles (Q155-160) | F.  Formed Opinions (Q207-Q210) | G.  Concerns Ability to be Objective (Q215-Q216) | H. Additional Infornation For Court (Q221) | I. Other Misc Follow-Up (Q#s) |
|---|---|---|---|---|---|---|---|---|---|
| Thompson, Peggy | 100385820 | | | x | x | | | | Q152 |
| Watson, Ronald | 100385844 | | | | | | | | Q152 |
| Heredia, Luis | 100385866 | x | | | | | | | |
| Janszen, Lisa | 100385879 | | x | x | | | | | |
| Ferguson, Stephanie | 100386087 | x | x | x | | | | | Q218 |
| Barnes, Jordan | 100386258 | | | | | | | | |
| Nelson, Kristina | 100386319 | | | x | x | | | | |
| Hetz, Jason | 100386381 | x | x | | | | | | |
| Zimmerman, Jodi | 100386432 | | | x | x | | | | |
| Reyling, Katherine | 100386453 | x | x | | | x | x | | |
| Higgins, Aiven | 100386456 | | x | | | | | | Q178 |
| Dixon, Lori | 100386570 | | x | x | | | | x | |
| Myers, Jillian | 100386877 | x | x | x | | x | | | |
| Potts, Carlton | 100386980 | | | x | | | | | |
| Cunningham, Daniel | 100386997 | | | | x | | | x | |
| Swearingen, Kimberly | 100387000 | | | | x | | | | |

U.S. v. Christensen — Defense Proposed Follow-Up for the Court on Individual Jurors — prepared 5/26/2019

| 1 Name (Last,First) | ID# | A. Accused, Arrested, Charged Crime (Q99-101) | B. Victim or Someone close ( incl. violent crime, sex assualt) (Q102-Q124) | C. Law Enforcement Connections (Q93-Q98); Views (Q127-138); Testimony (Q133-137) | E. Difficulty with Legal Principles (Q155-160) | F. Formed Opinions (Q207-Q210) | G. Concerns Ability to be Objective (Q215-Q216) | H. Additional Infornation For Court (Q221) | I. Other Misc Follow-Up (Q#s) |
|---|---|---|---|---|---|---|---|---|---|
| Jackson, Ronald | 100387022 | | | x | | | | | |
| Bryant, Robert | 100387104 | | | x | | | | | Q149,Q168 |
| Andrews, Rachel | 100387176 | x | | x | | | | | |
| Pradhan, Sudarshan | 100387182 | | x | x | | | | | |
| Salisbury, Janet | 100387232 | | | x | | | | | |
| Steinbrueck, David | 100387236 | | | | | | | | |
| Detherage, Brenden | 100387246 | | | x | | | | | |
| Shute, Michelle | 100387302 | | | | | | | | |
| Caldwell, Jamie | 100387392 | | | | | | x | | |
| Eilts, Amy | 100387419 | | | x | | | | | |
| Karl, Jonathan | 100387481 | | | | | | | | |
| Thompson, Angel | 100387560 | x | | x | | | | | |
| Puston, L. Sue | 100387602 | | x | x | | | x | x | |
| Fountain, Skyler | 100387603 | | x | | | | | | |
| Brewer, Shirley | 100387720 | x | x | | | | | x | |
| Schultheis, Donald | 100387821 | | | x | | | | | |

U.S. v. Christensen                    Defense Proposed Follow-Up for the Court on Individual Jurors                    prepared 5/26/2019

| 1 Name (Last,First) | ID# | A. Accused, Arrested, Charged Crime (Q99-101) | B. Victim or Someone close ( incl. violent crime, sex assualt) (Q102-Q124) | C. Law Enforcement Connections (Q93-Q98); Views (Q127-138); Testimony (Q133-137) | E. Difficulty with Legal Principles (Q155-160) | F. Formed Opinions (Q207-Q210) | G. Concerns Ability to be Objective (Q215-Q216) | H. Additional Infornation For Court (Q221) | I. Other Misc Follow-Up (Q#s) |
|---|---|---|---|---|---|---|---|---|---|
| Field, Kurt | 100387953 | | | x | | | | | Q152 |
| McCowan, Theresa | 100388011 | | | x | | | | | |
| Giffin, Amy | 100388061 | | x | x | | | | x | |
| Smull, Kimeri | 100388251 | | | x | | | | | |
| Cronk, Robert | 100388370 | x | x | | | | | | |
| Tiller, Mike | 100388372 | | | x | | | | | |
| Lowry, Rebecca | 100388555 | x | | x | | | | | |
| Kempher, Kevin | 100388587 | | x | | | | | | |
| Huss, Angela | 100388681 | | x | x | | | x | x | Q222 |
| Gaidos, Megan | 100388721 | | | x | | | | | |
| Johnson, Janet | 100388758 | | | x | | | | | |
| Plouzek, John | 100388775 | | | | | | x | | |
| Farrell, Michael | 100389050 | | x | x | | | | | |
| Nevius, Julia | 100389058 | | | x | | | | | |
| Latora, Andy | 100389150 | | | x | | | | | Q212,Q222 |
| Reeder, Kevin | 100389297 | | | x | | | | | |