UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: 17-CR-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

**THE UNITED STATES OF AMERICA'S MOTION REQUESTING
THE COURT TO MAKE ADEQUATE FINDINGS ON THE RECORD
REGARDING THE NEED FOR IN-CHAMBERS VOIR DIRE PROCEEDINGS**

NOW COMES the United States of America, by John C. Milhiser, United States Attorney for the Central District of Illinois, and Eugene L. Miller and Bryan D. Freres, Assistant United States Attorneys, and Department of Justice Trial Attorney James B. Nelson, and hereby requests that the Court make adequate findings on the record, pursuant to *Presley v. Georgia*, 558 U.S. 209, 213 (2010), regarding the need for in-chambers voir dire proceedings.

**RELEVANT PROCEDURAL HISTORY**

On February 6, 2019, the United States filed a motion requesting an order establishing jury selection procedures. (R.223) In the motion, the United States noted that the right to a public trial required jury selection to be conducted in the courtroom:

> Jury selection should be conducted in the courtroom and open to the public. "The process of juror selection is itself a matter of importance, not simply to the adversaries but to the criminal justice system." *Press-Enter. Co. v. Superior Court of California, Riverside Cnty.*, 464 U.S. 501, 505 (1984) ("Press-Enterprise I"). The right to a public trial flows from the First and Sixth

> Amendments of the Constitution and applies to every phase of the criminal trial, including pre-trial motions. *See Waller v. Georgia*, 467U.S. 39, 43 (1984); *Gannett Co. v. DePasquale*, 443 U.S. 368, 379 (1979); *In re Oliver*, 333 U.S. 257, 266-73 (1948). The explicit Sixth Amendment right of the defendant to a public trial is complemented by an implicit, albeit "qualified," First Amendment right of the press and public to attend the proceedings. *See Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 9 (1986) ("Press-Enterprise II"). The First Amendment privilege extends to jury selection. *Press-Enterprise I*, 464 U.S. 509-10.

(R.223 at 4) The United States further requested that the Court conduct panel voir dire in open court, rather than individual voir dire, noting that the Supreme Court grants great flexibility to district courts in determining how voir dire is conducted in a criminal case under *Mu'Min v. Virginia,* 500 U.S. 415, 425-26 (1991). (R.223 at 6)

On February 9, 2019, the defendant filed his motion to establish jury selection procedures. (R.229) In his motion, the defendant argued that "[i]ndividual and sequestered *voir dire* is . . . necessary in a capital case." (R.229 at 45) In support of their motion, the defense submitted the affidavit of Kevin McNally of the Federal Death Penalty Resource Counsel Project, who stated under penalty of perjury that "87% of federal judges conduct 'private' individual questioning of potential jurors . . ." (R.229 at 88-99). He claimed that panel questioning in open court carried a danger that potential jurors may "shade their answers." (R.229 at 89)

On April 12, 2019, the Court issued its Order establishing jury selection procedures. (R.301) The Order directed that the summoned jurors would be brought together into the courtroom, where the Court would conduct general voir dire. (R.301) The Order stated that following this general voir dire, the prospective jurors would be excused, for-cause challenges would be argued, and additional voir dire, if necessary,

would then commence for the remaining prospective jurors. (R.301) The Order did not specify whether any additional voir dire would be individual and/or sequestered or where it would take place, but stated that the Court would establish additional procedures regarding jury questioning at the final pretrial conference. (R.301)

On May 16, 2019, the Court issued a Supplemental Order establishing jury selection procedures. (R.342) The Supplemental Order reiterated that the summoned jurors would be brought together in the courtroom for general voir dire, but elaborated that individual voir dire would commence thereafter. (R.342 at 2) The Supplemental Order did not specify whether the additional voir dire would be sequestered or where it would take place. (R.342)

On the first day of jury selection, June 3, 2019, the Court stated that it intended to conduct individual voir dire by bringing each juror into the courtroom for additional questioning following general voir dire. The defendant objected to this procedure and requested that the Court conduct individual voir dire in chambers. The Court granted the defendant's request, and each of the potential jurors, including the 69 jurors that have been qualified and not excused, was subjected to individual, sequestered voir dire in chambers following general voir dire in open court. The defendant, his five attorneys, and his jury consultant were present during these in camera proceedings, which were conducted on the record.

## **RELEVANT LAW**

As the United States previously noted, the Sixth Amendment and First Amendment rights to a public trial apply to voir dire. *Presley v. Georgia*, 558 U.S. 209,

213 (2010) (holding it is well-settled that the Sixth Amendment right to a public trial extends to the voir dire of prospective jurors). Nonetheless, as *Presley* noted, exceptions to this general rule exist, because the right to an open trial may give way to other rights or interests, such as the defendant's right to a fair trial. *Id.* (quoting *Waller v. Georgia*, 467 U.S. 39, 45 (1984)). Thus, a court may exclude the public from voir dire, but only if (1) the party seeking private voir dire advances an overriding interest that is likely to be prejudiced; (2) the closure is no broader than necessary to protect that interest; (3) the court considered reasonable alternative to private voir dire; and (4) the district court makes findings adequate to support private voir dire. *Presley*, 558 U.S. at 213-14 (citing *Waller*); *see also United States v. Candelario-Santana*, 834 F.3d 8, 21-22 (1st Cir. 2016) (courtroom closure requires all four of the elements to be satisfied, and the "overriding interest" to be "articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered").

It is true that a Court may question potential jurors in camera regarding "trivial" matters without implicating Sixth Amendment public trial concerns. *See, e.g., United States v. Ivester,* 316 F.3d 955, (9th Cir. 2003) (holding in camera questioning of jurors to determine whether they felt safe was an administrative jury problem and trivial under Sixth Amendment); *People v. Jones,* 8 N.E.3d 470, 481 (1st Dist. 2014) (holding that brief questioning of potential jurors in chambers too trivial to implicate the Sixth Amendment). *Cf. United States v. Anderson*, 881 F.3d 568, 576 (7th Cir. 2018) (finding closure of courthouse after 5 pm while trial was still in progress was trivial and did not violate those Sixth Amendment rights); *Braun v. Powell*, 227 F.3d 908, 919 (7th Cir. 2000)

(holding that exclusion of prior member of venire from courtroom during trial did not rise to level of a Sixth Amendment violation). Nonetheless, the United States is concerned that the individual, sequestered voir dire conducted in chambers in this case may have been significant enough to implicate *Presley* and *Waller. But see Wilder v. United States*, 806 F.3d 653, 660-61 (1st Cir. 2015) (finding that closed door, individual voir dire following general voir dire was the functional equivalent of a sidebar conference, which does not constitute a complete closure violating the Sixth Amendment), *cert. denied* 136 S. Ct. 2031 (2016).

## DISCUSSION

In this case, the Court implicitly met the four *Waller* factors prior to granting the defendant's request for individual voir dire to be conducted sequestered and in chambers. First, although the United States did not agree with the defendant's position, the defendant did articulate an overriding interest that would be prejudiced by conducting individual voir dire in open court. Namely, the defendant argued in his motion to establish jury selection procedures that "private" voir dire was conducted by 87% of federal judges in capital cases and was necessary to obtain honest answers from potential jurors regarding their opinions on capital punishment. Without such honest answers, he argued, he would be unable to intelligently make for-cause challenges or exercise his peremptory strikes. As anticipated, the answers of individual jurors to questions during the general voir dire, which took place in the open courtroom, have

been reported in the press the next day, typically on the front page of the News-Gazette in Champaign-Urbana.[1]

Second, the individual voir dire conducted in chambers was no broader than necessary to protect the defendant's concerns about juror honesty. The Court conducted all of the general voir dire in the open courtroom and returned to open court after the individual voir dire was complete to announce jurors who had been excused and those who had been qualified. The questioning conducted in chambers was focused on the potential jurors' views about the death penalty and personal experiences (such as their experience as crime-victims) that courts routinely inquire about at sidebar, outside the hearing of both the public and the rest of the venire.

Third, the Court not only considered, but initially proposed a reasonable alternative to private voir dire. The Court stated it was going to have individual jurors return to the courtroom for sequestered questioning. The defendant objected to this

---

[1] *See, e.g.,* Adelbarto Toledo, *Christensen Trial Day Five / Initial Jury Selection One Short, For Now*, THE NEWS-GAZETTE, (June 8, 2019), *available at* http://www.news-gazette.com/news/local/2019-06-08/christensen-trial-day-5-initial-jury-selection-one-short-now.html; Ben Zigtermen, *Christensen Trial Day Four/ Prosecutors Want Audio Heard Over Headphones*, THE NEWS- GAZETTE, (June 7, 2019), *available at* http://www.news-gazette.com/news/local/2019-06-07/christensen-trial-day-4-prosecutors-want-audio-heard-over-headphones.html; Ben Zigterman, *Christensen Trial Day Three / Judge Expects Opening Statements Wednesday*, THE NEWS-GAZETTE, (June 6, 2019), *available at* http://www.news-gazette.com/news/local/2019-06-06/christensen-trial-day-3-judge-expects-opening-statements-wednesday.html; Ben Zigterman, *Christensen Trial Day Two / Jury Selection About Halfway Done*, THE NEWS-GAZETTE, (June 5, 2019), *available at* http://www.news-gazette.com/news/local /2019-06-05/christensen-trial-day-2-jury-selection-process-about-halfway-done.html; Ben Zigterman, *Christensen Trial Day One / 29 Potential Jurors Questioned; 13 Pre-Approved*, THE NEWS-GAZETTE, (June 4, 2019), *available at* http://www.news-gazette.com/news/local/2019-06-04/christensen-trial-day-1-29-potential-jurors-questioned-13-pre-approved.html.

procedure and requested it be conducted privately in chambers. Thus, in granting the defendant's request, the Court had already considered a reasonable alternative to conducting voir dire in chambers. No reasonable alternative existed between the Court's initial proposal and the in-chambers voir dire proposed by the defendant that would achieve the defendant's articulated "overriding interest" in having potential jurors provide candid answers to personal questions.

Finally, the Court implicitly made each of those findings prior to granting the defendant's request for the individual, sequestered voir dire to take place in chambers. Nonetheless, the United States is concerned that the Court did not specify its findings on the record prior to granting the defendant's request for the individual, sequestered portion of the voir dire to take place in chambers. Therefore, it hereby requests that the Court make, on the record, the findings required by *Presley* and *Waller* prior to proceeding with any additional individual, sequestered voir dire in chambers.[2]

Such a finding would resolve any potential First Amendment issues related to the public's access to the individual voir dire process. Nonetheless, an additional concern is whether the failure to make these specific findings on the record prior to conducting the voir dire in chambers renders those proceedings invalid or violates the defendant's Sixth Amendment right to a public trial. The United States submits that it

---

[2] The United States is not waiving its prior objection to individual, sequestered voir dire in chambers, and in fact, maintains that objection. *See* 28 C.F.R. § 50.9 (barring government attorneys from consenting to the closure of any judicial proceeding without the express prior authorization of the Deputy Attorney General.). Nonetheless, the United States understands and respects the Court's prior Order overruling its objection.

does not, given that the request to conduct the voir dire in chambers was made by the defendant himself. The Third Circuit rejected precisely such a claim in a case where the defendant failed to object to the procedure:

> The District Court conducted voir dire in this case according to the following procedures. First, prospective jurors were screened based upon their responses to general questioning in open court. Then, members of the voir dire panel were individually questioned about more sensitive subjects—in the presence of the defendants and attorneys for both sides—in a closed jury room adjacent to the courtroom. Neither party objected to these procedures at that time.
>
> Bansal contends that the closed-room questioning violated the Sixth Amendment's public trial guarantee. We disagree for several reasons. First, this is classic sandbagging of the trial judge, as Bansal complains for the first time on appeal about a decision by the trial court to which he did not object at the time. Second, at no time did anyone—Bansal, the press, or the public—request access to the closed jury-room. At most, the judge prevented the members of the voir dire panel from hearing other members' responses, and we are aware of no case holding that such procedures offend the Sixth Amendment. Third, to the extent Bansal complains about the right of the press to access his entire voir dire proceedings, Bansal likely lacks standing to challenge the District Court's action on the media's behalf. Finally, the entire jury selection process was transcribed and recorded; nothing was sealed or concealed from public view. Given these facts, we will not order Bansal a new trial on these grounds.

*United States v. Bansal*, 663 F.3d 634, 661 (3d Cir. 2011) (citations omitted).

As the Supreme Court recently held, "while the public-trial right is important for fundamental reasons, in some cases an unlawful closure might take place and yet the trial still will be fundamentally fair from the defendant's standpoint." *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1910 (2017). In *Weaver*, the courtroom was closed to the public for two days of the jury selection process, but defense counsel did not object to

the closure. The defendant later claimed his counsel was ineffective for failing to object to the closure.

The Supreme Court, noting that the courtroom closure was limited to the jury voir dire and the courtroom remained open during the evidentiary phase of the trial, found that "there is no suggestion that any juror lied during voir dire; no suggestion of misbehavior by the prosecutor, judge, or any other party; and no suggestion that any of the participants failed to approach their duties with the neutrality and serious purpose that our system demands." *Id.* at 1913. Under those circumstances, the Court concluded that, even assuming that the closure was a Sixth Amendment violation, the violation did not pervade the whole trial or lead to basic unfairness. *Id.* Thus, the Court held that the defendant was not entitled to a new trial. *Id.*

Given that the defendant not only requested the in chambers voir dire proceedings, but objected to them being conducted in open court due to concerns that the prospective jurors would "shade their answers," the jury selection proceedings that have occurred to date have not violated the defendant's Sixth Amendment right to a public trial.

The United States contacted defense counsel regarding this motion, and defense counsel stated that the defendant has no objection to this motion.

WHEREFORE the United States of America respectfully requests that this Court make adequate findings on the record, pursuant to *Presley v. Georgia*, 558 U.S. 209, 213 (2010), regarding the need for in-chambers voir dire proceedings.

Respectfully submitted,

JOHN C. MILHISER
UNITED STATES ATTORNEY

/s/Eugene L. Miller
Eugene L. Miller
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone: 217/373-5875
Fax: 217/373-5891
eugene.miller@usdoj.gov

/s/ James B. Nelson
James B. Nelson
Trial Attorney
Capital Case Section
United States Department of Justice
1331 F. Street NW, Room 625
Washington, DC  20004
Phone: 202/598-2972
james.nelson@usdoj.gov

/s/Bryan D. Freres
Bryan D. Freres, Bar No. IL 6294791
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone: 217/373-5875
Fax: 217/373-5891
bryan.freres@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

/s/Eugene L. Miller
Eugene L. Miller
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone: 217/373-5875
Fax: 217/373-5891
eugene.miller@usdoj.gov