UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 17-20037 |
| BRENDT A. CHRISTENSEN, ) | |
| ) | |
| Defendant. ) | |

MOTION TO COMPEL DISCLOSURE OF RECORDS PERTAINING TO MENTAL HEALTH TREATMENT OF GOVERNMENT WITNESS T.B.

Defendant Brendt A. Christensen, by and through undersigned counsel, hereby moves this Court for an order compelling the government to disclose records in its possession pertaining to recent mental health treatment provided to its witness, T.B., pursuant to the Fifth and Eighth Amendments. Mr. Christensen has requested access to the records from the government through the discovery process but his requests were denied.

**I. THE GOVERNMENT IS CONSTITUTIONALLY REQUIRED TO DISCLOSE MATERIAL EXCULPATORY EVIDENCE TO MR. CHRISTENSEN INCLUDING EVIDENCE RELEVANT TO IMPEACHMENT OF ITS WITNESSES.**

The government is constitutionally required to disclose to Mr. Christensen all material, exculpatory evidence, including evidence that may be used to impeach its witnesses. "Suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or punishment."

*Brady v. Maryland*, 373 U.S. 83, 87 (1963). Impeachment evidence, or evidence affecting the credibility of a government witness, "falls within this general rule." *Giglio v. United States*, 405 U.S. 150, 154 (1972). *See also Sims v. Hyatte*, No. 18-1573, slip op. at 16 (7th Cir. February 1, 2019) ("The Supreme Court has clearly established that strong and non-cumulative impeachment evidence related to an important trial witness is material under *Brady*.").

A witness's history of significant mental illness is frequently a proper subject of cross examination and impeachment of that witness at trial. *See, e.g., United States v. Allegretti*, 340 F.2d 254, 257 (7th Cir. 1965) (approving questioning of witness regarding his "extremely complex" mental history that included "loss of memory" and "auditory hallucinations" as pertinent to his credibility). "[T]he jury should, within reason, be informed of all matters affecting a witness's credibility to aid in their determination of the truth. It is just as reasonable that a jury be informed of a witness's mental incapacity at a time about which he proposes to testify as it would be for the jury to know that he then suffered an impairment of sight or hearing. It all goes to the ability to comprehend, know, and correctly relate the truth." *United States v. Partin*, 493 F. 2d 750, 762 (5th Cir. 1974) (holding defendant should have been permitted to cross examine witness regarding fact that he had checked himself into hospital complaining of auditory hallucinations and thinking he was some other person) (internal citation omitted).

Accordingly, a defendant should be permitted access to records concerning a witness's mental illness where there is reason to believe that they contain information relevant to credibility. In *United States v. Lindstrom*, 698 F.2d 1154, 1156-57 (11th Cir.

2

1983), the court found that the district court violated the defendant's rights of confrontation and cross examination by restricting his ability to review psychiatric records containing information bearing on the credibility of a government witness. The records showed that the witness suffered from psychiatric illnesses including delusions and hallucinations and that she had been hospitalized following a suicide attempt. *Id.* at 1159, 1161. Noting that "[c]ertain forms of mental disorder have high probative value on the issue of credibility" and "many types of emotional or mental defect may materially affect the accuracy of testimony," the court vacated the defendant's conviction. *Id.* at 1160.

Similar results have been reached by the D.C. Circuit, *see United States v, Smith*, 77 F.3d 511, 516-17 (D.C. Cir. 1996) (reversing conviction for *Brady* violation where government failed to disclose evidence of witness's psychiatric history, including an 18-month hospitalization for chronic depression, that "may reasonably cast doubt on the ability or willingness of a witness to tell the truth"); the Second Circuit, *see United States v. Vitale*, 459 F.3d 190, 195-96 (2d Cir. 2006) (noting that "[r]estricting access to medical or psychological records may deny a defendant the right to confrontation because evidence of a witness's psychological history may be admissible when it goes to her credibility," but finding no error as the pertinent information was in fact given to defendant) (internal quotation omitted); the Fourth Circuit, *see United States v. Soc'y of Indep. Gasoline Marketers of Am.*, 624 F.2d 461, 467-69 (4th Cir. 1980) (reversing defendant's conviction where district court refused to allow access to witness's psychiatric records that showed he was hospitalized twice and described as manic

3

depressed and in a psychotic state, delusional and hallucinatory); the Sixth Circuit, *see Brown v. Smith*, 551 F.3d 424, 430-31 (6th Cir. 2008) (finding trial counsel constitutionally ineffective for failing to seek access to sexual assault complainant's counseling records); and the Ninth Circuit, *see United States v. Parrish*, 83 F.3d 430 (9th Cir. 1996) ("Because some mental disorders are highly probative on the issue of credibility, federal courts may grant defendants access to witness medical and psychiatric records, so long as the information disclosed provides some significant help to the jury in its efforts to evaluate the witness's ability to perceive or to recall events or to testify accurately.").

T.B. is an extremely important witness for the government. For two months prior to the kidnapping of Ms. Zhang, T.B. was Mr. Christensen's girlfriend. They saw each other regularly and communicated often by telephone and text message. T.B. quickly introduced Mr. Christensen to the "BDSM" lifestyle, something with which he had previously been entirely unfamiliar and had expressed no interest in. At trial, she is likely to provide highly inflammatory testimony regarding her relationship and interactions with Mr. Christensen. However, there are strong indications that T.B. is an extremely damaged and unstable individual who has required mental health treatment at numerous times in her life.

For example, on April 25, 2017, T.B. sent a series of text messages to Mr. Christensen that included the following: "I want to see you.. I'm in a state of complete panic. I can't leave work because there is nobody to cover. But I already took a pill and it's not helping. What if I need to check myself in somewhere.. how do I know?" The

following day, April 26, 2017, following a dispute with her polyamorous family over housecleaning responsibilities, she wrote the following to him:

> Instead of going into the house after fight I walked to a park and curled up in a tree... I don't remember everything.. I was crying and had flashbacks in and out... beat myself up emotionally. Zack came to the park and coaxed me out of the tree and walked me home.. I'm still shakey... It might not be early tomorrow... I'm terrified of what is happening. I don't want to end up being institutionalized.

On May 1, 2017, T.B. wrote to Mr. Christensen: "I just woke up and immediately got sick twice.. anxiety and dysphoria are a lot worse today . . . I'm frustrated, not with anyone, just.. this is so unfair . . . It's more intense than I've ever experienced. Maybe I need to get insurance and see someone about it." He responded, "Yeah you need to talk to someone." T.B. wrote back: "I have a very good psychiatrist that I could make an appointment with, I don't know if I need to talk to someone or if I need meds . . . I will make an appointment today. It might be a couple weeks out, but she's better than any therapists." She then texted Peter, another of her boyfriends, asking for help paying for psychiatric treatment and telling him: "I think I need to see my psychiatrist. My anxiety and dysphoria and depression are completely out of control. I'm frightened."

T.B. later wrote again to Mr. Christensen later on the same day, saying: "I don't remember all of last night, and if I'm having short term memory issues then the dysphoria needs to be addressed for me to be safe. That hasn't happened for a long time. I'm rational still, just terrified," to which Mr. Christensen responded, "You were pretty out of it." She later texted that she had "talked to psych a bit" and had been told

that she may need "some type of psychiatric medication change," even though she had "been on just about every psych med . . . that would be recommended."

In a May 6, 2017, text message to Mr. Christensen T.B. again described problems with her memory that are caused by anxiety: "I'm not sure how much you remember of the end of last night,[1] but I think I had a panic attack.. it's not happened in a long time, but since there is a period of time I don't remember clearly and I don't remember going into the room, but was not drunk enough at that point for anything like that to happen, I think that's probably what happened. If you remember anything, it would help me to fill in some gaps in my memory.. I'm sorry, it's upsetting to me my to remember . . . My panic attacks are generally mild, but I lose memory still. It's something that scares me, but I trust you."

On May 14, 2017, in a text exchange with Mr. Christensen during which Mr. Christensen as her if she was okay, T.B. replied that she had a sensory panic attack during which she felt like things were crawling on her and Tommie made her take a pill. Two days later, on May 16, she told Mr. Christensen in another text message that if her mood stayed the way it was she was going to have to tell her psychiatrist. She didn't want to get out of bed in the morning and all she did was fantasize about suicide and self-harm.

Additionally, on the June 29, 2017, vigil walk, when T.B. was wearing a wire placed by the FBI in order to record her conversations with Mr. Christensen, the

---

[1] Mr. Christensen had been drinking heavily the night before and had become extremely intoxicated.

recording shows that she told him she had Stockholm Syndrome and was worried it might have affected her brain.

The government has in its possession, and has refused to disclose to the defense, significant evidence of mental health treatment that it has paid for T.B. to receive. At a minimum, the government has receipts for payments made for eight psychologist appointments, two instances of physician services and $586.86 for prescription medications for T.B. between July 6, 2017, and December 16, 2017. Because T.B.'s mental illness is directly relevant to both her competency to testify and her credibility and reliability, the government should be directed to disclose these documents, and any others in its possession that contain information relevant to T.B.'s mental condition, forthwith.

WHEREFORE, for the foregoing reasons, Mr. Christensen respectfully requests that the Court grant his Motion to Compel Disclosure of Records Pertaining to Mental Health Treatment of Government Witness T.B. and order the government to provide Mr. Christensen with copies of those records forthwith.

Respectfully submitted,

BRENDT A. CHRISTENSEN, Defendant

| | |
|---|---|
| /s/Elisabeth R. Pollock<br>Assistant Federal Defender<br>300 West Main Street<br>Urbana, IL 61801<br>Phone: 217-373-0666<br>FAX:   217-373-0667<br>Email: Elisabeth_Pollock@fd.org | /s/ George Taseff<br>Assistant Federal Defender<br>401 Main Street, Suite 1500<br>Peoria, IL 61602<br>Phone: 309-671-7891<br>Fax:     309-671-7898<br>Email: George_Taseff@fd.org |
| /s/ Robert Tucker<br>Robert L. Tucker, Esq.<br>7114 Washington Ave<br>St. Louis, MO 63130<br>Phone: 703-527-1622<br>Email: roberttuckerlaw@gmail.com | /s/ Julie Brain<br>Julie Brain, Esq.<br>916 South 2nd Street<br>Philadelphia, PA 19147<br>Phone: 267-639-0417<br>Email: juliebrain1@yahoo.com |

CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorneys Bryan D. Freres and Eugene L. Miller and Trial Attorney James B. Nelson. A copy was also mailed to the defendant.

/s/Elisabeth R. Pollock
Assistant Federal Public Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org