E-FILED
Tuesday, 11 June, 2019  03:29:30 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17-CR-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

## THE UNITED STATES OF AMERICA'S MOTION TO EXCLUDE EVIDENCE PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 12.2(d)

NOW COMES the United States of America, by John C. Milhiser, United States Attorney for the Central District of Illinois, Eugene L. Miller and Bryan Freres, Assistant United States Attorneys, and Department of Justice Trial Attorney James B. Nelson, and respectfully files this motion to preclude any and all evidence related to the University of Illinois Counseling Center pursuant to FEDERAL RULE OF CRIMINAL PROCEDURE 12.2(d). The bases for this motion follow.

## PROCEDURAL HISTORY

The defendant is alleged to have committed the charged offenses in June 2017, just over two years ago. (R.13) By October of 2017, the defendant requested additional time from the Court to conduct a mitigation investigation and to retain mental health experts. (R.29) On February 14, 2018, the Court granted the defendant's request for additional time and ordered the defendant to give notice by September 21, 2018, of his intent to raise an *Atkins* defense or to present Rule 12.2 evidence at the guilt or penalty

phases of trial. (R.67) On the day his notice was due, the defendant moved, over the United States' objection, for an unspecified extension of time to provide the *Atkins* and Rule 12.2 notice.  (R.129,136) On October 11, 2018, the Court denied the defendant's request for an open-ended extension, but extended the *Atkins* and Rule 12.2 notice deadline to December 3, 2018.

On December 3, 2018, the defendant filed a notice of his intent to present mental health evidence in the penalty phase. (R.161) In his notice, the defendant stated that his "retained experts have indicated that two additional evaluation procedures need to be conducted," but represented that the procedures "will only provide further support for the evidence outlined above. There will be no substantive change to the existing notice and therefore no prejudice to the government as a result of any necessary addition at that time."  (R.161 at 3) That same day, the defendant filed a motion requesting that the Court impose certain procedures in implementing Rule 12.2. (R.162) On December 10, 2018, the United States responded to the motion and proposed alternate Rule 12.2 procedures. (R.180) The United States also moved to examine the defendant. (R.181)

On February 8, 2019, the defendant filed his fourth motion to continue the trial, asserting that his psychiatrist was unavailable to testify in April. (R.226, 227) During a hearing on February 19, 2019, the defendant represented that his prior psychiatrist had "quit," but that he had identified another psychiatrist who could be ready if the trial were continued to July of 2019. Per the Court's order, the defendant filed another written motion to continue the trial, although the motion did not include a declaration from any defense expert. (R.255) Based on the defendant's request for more preparation

2

time for his Rule 12.2 expert, the Court continued the trial to June 3, 2019, with the

penalty phase of the trial not expected to begin until July 2019.

On February 15, 2019, the United States moved the Court *in limine* to limit the

defendant's presentation of expert witnesses to those already disclosed, and to limit the

testimony of those witnesses to the notices that had been provided.  (R. 241).  On

February 20, 2019, the defendant gave untimely notice of his intent to call Dr. Susan

Zoline as an expert witness in the penalty phase to testify that the University of Illinois

Counseling Center had breached the "standard of care" with regard to mental health

treatment provided to the defendant.[1]

On March 13, 2019, the United States moved the Court to preclude Dr. Susan

Zoline's testimony.  (R.264). The defendant filed a responsive pleading on March 29,

2019, and the United States replied on April 5, 2019.  (R.289, 294).  After hearing oral

argument regarding the scope of Dr. Zoline's proffered testimony, the Court issued a

minute entry order on April 8, 2019, granting the United States' motion to preclude with

regard to the issue of standard of care.  The Court gave the defendant until May 6, 2019,

to provide an amended disclosure with regard to Dr. Zoline's expert testimony to

describe alternative bases for her expert testimony.

On April 26, 2019, the defendant filed a Notice that he was withdrawing his

intent to present mental health evidence in mitigation pursuant to Rule 12.2(b)(2).

---

[1] In support of this notice, the defendant provided the United States with certain records
of the defendant's mental health treatment in March 2017.  The defendant obtained these
records sometime between September 2017 and February 2019.

(R.317). In that Notice, the defendant expressly refused to be examined by the United States' expert witnesses. *Id.* On April 30, 2019, the Court conducted an *in camera* and *ex parte* colloquy of the defendant and confirmed that it was the defendant's intent to withdraw his notice and refuse to be examined. The Court confirmed with the defendant, *in camera*, and with defense counsel in open court, that the defendant understood the consequences of his decision – including the possibility that certain evidence would be rendered inadmissible by the decision. *See also* (R.318, at 6).

On May 6, 2019, the defendant sent a letter to the United States, pursuant to the Court's Order of April 8, 2019. The defendant's letter did not follow the Court's instruction to provide an amended disclosure of testimony for Dr. Zoline. Quite the contrary – the defendant reiterated his intent to call Dr. Zoline to testify with regard to the "standard of care," notwithstanding the Court's order precluding that testimony.

On May 13, 2019, the United States moved the Court to clarify that its April 8, 2019, Order precluded Dr. Zoline's testimony regarding the standard of care. The United States further requested that the Court clarify that the defendant's May 6, 2019, proffer constituted "standard of care" testimony that had been precluded by the Court. (R.336). During the final pretrial conference on May 30, 2019, the United States further noted that Dr. Zoline's testimony should be prohibited under FED. R. CRIM. P. 12.2. The Court reserved ruling on the United States' motion.

At 9:50 pm on June 10, 2019, less than 12 hours before the parties were scheduled to exercise their preemptory strikes and complete jury selection, counsel for the defendant emailed undersigned counsel and stated that they intend to seek

4

reconsideration of the Court's order that "the Court's prior ruling that the civil liability

of the U of I is not relevant and therefore inadmissible[,]" and that they intend to ask for

"a brief continuance to allow us to brief the issue."  Defense counsel's email makes clear

that they envision presenting extensive evidence of the Defendant's mental health

status in March 2017 during the penalty phase, in addition to the previously excluded

evidence regarding the University of Illinois' civil liability in this case.  *Id.*

## ARGUMENT

The United States concedes that evidence that the defendant went to the

University of Illinois Counseling Center in March 2017 is relevant and admissible in

mitigation.  However, given the withdrawal of his Rule 12.2 Notice, any testimony or

evidence regarding a mental health diagnosis – or the University of Illinois Counseling

Center's compliance with any applicable standards of care – is inadmissible at trial.

FED. R. CRIM. P. 12.2(d); 18 U.S.C. § 3593(c).

## 1.  The Evidence that the Defendant Seeks to Introduce is not Relevant

Defendant apparently seeks to introduce evidence that the defendant

demonstrated suicidal ideations in March 2017, and that the University of Illinois

Counseling Center should have provided better mental health care as a result.  As has

been previously argued, mitigating evidence which shifts the burden of the defendant's

conduct onto a third-party's negligence is routinely rejected by the Courts.  *See Williams*

*v. Norris,* 612 F.3d 941, 947 (8th Cir.2010) (correctional expert properly excluded

concerning prison negligence because such evidence was irrelevant given that it did not

bear on the defendant's character, prior record, or the circumstances of his offense);

*Eaglin v. Florida*, 19 So.3d 935 (Fla.2009) (affirmed that security lapses and other failures in the prison where the defendant killed a guard and inmate were not relevant mitigating evidence); *United States v. Williams*, No. 06–00079, 2014 WL 2436199 (D. Haw. May 30, 2014) (granting the United States' motion *in limine* to preclude evidence that U.S. Army Child Protective Service was negligent in failing to protect child victim).

This is true because mitigation is limited to the defendant's character, prior record, or the circumstances of the offense. *Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982); *Lockett v. Ohio*, 438 U. S. 586, 604 n.12 (1978); *see also United States v. Purkey*, 428 F.3d 738, 756 (8th Cir. 2005) (noting that "[t]he trial court retains its traditional authority 'to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense.'") (quoting *Lockett*, 438 U.S. at 604 n.12). The defendant has previously tried, and failed, to articulate how this evidence would be relevant at either phase of trial.  (R.264, 289, 294, <u>Order</u> (April 8, 2019)).  This evidence is as irrelevant now as it was the first time the Court ruled on it.

The Sixth Circuit, sitting *en banc*, held that: "Mitigation evidence . . . is not an empty concept to be filled by whatever a lawyer or court thinks might persuade a single juror in a particular case." *United States v. Gabrion*, 719 F.3d 511, 522 (6th Cir. 2013). Similarly, the Second Circuit has held that the broad standards for admissibility of mitigating evidence do "not mean that the defense has *carte blanche* to introduce any and all evidence that it wishes." *United States v. Fell*, 531 F.3d 197, 219 (2nd Cir. 2008) (affirming exclusion of defendant's rejected plea agreement, which would have created a "confusing and unproductive inquiry").

The FDPA specifically addresses the scope of admissible evidence at a penalty phase hearing in a capital trial. 18 U.S.C. § 3593(c) provides:

> At the sentencing hearing, information may be presented as to any matter relevant to the sentence, including any mitigating or aggravating factor permitted or required to be considered under section 3592.

The FDPA itself provides a list of mitigating factors:

> (a)    Mitigating factors. In determining whether a sentence of death is to be imposed on a defendant, the finder of fact shall consider any mitigating factor, including the following:
>
> (1)    Impaired capacity. The defendant's capacity to appreciate the wrongfulness of the defendant's conduct or to conform conduct to the requirements of law was significantly impaired, regardless of whether the capacity was so impaired as to constitute a defense to the charge.
>
> (2)    Duress. The defendant was under unusual and substantial duress, regardless of whether the duress was of such a degree as to constitute a defense to the charge.
>
> (3)    Minor participation. The defendant is punishable as a principal in the offense, which was committed by another, but the defendant's participation was relatively minor, regardless of whether the participation was so minor as to constitute a defense to the charge.
>
> (4)    Equally culpable defendants. Another defendant or defendants, equally culpable in the crime, will not be punished by death.
>
> (5)    No prior criminal record. The defendant did not have a significant prior history of other criminal conduct.
>
> (6)    Disturbance. The defendant committed the offense under severe mental or emotional disturbance.
>
> (7)    Victim's consent. The victim consented to the criminal conduct that resulted in the victim's death.
>
> (8)    Other factors. Other factors in the defendant's background, record, or character or any other circumstance of the offense that mitigate against imposition of the death sentence.

18 U.S.C. § 3592(a).  While "[t]he defendant may present any information relevant to a mitigating factor" (§ 3593(c)),  it should be noted that the catch-all provision found in subsection (8) *limits* the scope of mitigation evidence to factors in the defendant's

background, record, or character or any other circumstance of the offense that mitigate

against imposition of the death sentence.

It is well-settled that Courts do not have unlimited authority to permit theories of

mitigation. Rather, valid mitigators must fall within a few select, albeit broadly-

defined, categories set forth in constitutional jurisprudence and codified in the FDPA.

The concept of constitutionally-mandated mitigators originates in *Woodson v. North*

*Carolina*, 428 U.S. 280 (1976). The controlling *Woodson* opinion held North Carolina's

mandatory death-penalty statute unconstitutional because, inter alia, it "fail[ed] to

allow the particularized consideration of relevant aspects of the character and record of

each convicted defendant." *Id.*, at 303. The opinion concluded that "consideration of the

character and record of the individual offender and the circumstances of the particular

offense" was "constitutionally indispensable." *Id.*, at 304.

Two years later, a plurality of four justices in *Lockett v. Ohio* addressed what they

perceived as *Woodson's* lack of specificity. The *Lockett* plurality concluded that the

Eighth Amendment "require[d] that the sentencer . . . not be precluded from

considering, as a mitigating factor, any aspect of a defendant's character or record and

any of the circumstances of the offense that the defendant proffers as a basis for a

sentence less than death." *Lockett v. Ohio*, 438 U.S. 586, 604 (1978) (emphasis original).

The *Lockett* plurality stressed that it did not intend to "limit[] the traditional authority of

a court to exclude, as irrelevant, evidence not bearing on the defendant's character,

prior record, or the circumstances of his offense." *Id.* at 604 n.12.

8

Numerous courts have considered the scope and admissibility of proffered

mitigating evidence and have rejected theories and evidence that do not relate to, or

bear on, the defendant's character, prior record, or the circumstances of his offense.  *See*

*Gabrion,* 719 F.3d at 523 (fact that the State of Michigan did not allow for the death

penalty is not a mitigating factor); *United States v. Taylor*, 583 F. Supp. 2d. 923, 936 (E.D.

Tenn. 2008) (evidence of comparative proportionality of other "similar" offenses not

proper mitigating evidence); *Owens v. Guida*, 549 F.3d 399 (6th Cir. 2008) (the

defendant's willingness to accept life sentence is not proper mitigation).

Moreover, even if evidence of third-party negligence were relevant, its

"probative value is outweighed by the danger of creating unfair prejudice, confusing

the issues, or misleading the jury."  18 U.S.C. § 3593(c).  Section 3593(c) provides the

Court with substantial authority to preclude evidence on this ground at the penalty

phase.  *See Purkey*, 428 F.3d at 756-59 (noting that Section 3593(c) provides require a

lower standard for exclusion of evidence than FRE 403, which requires that the

probative value be *substantially* outweighed by the danger of unfair prejudice, confusing

the issues, or misleading the jury).

All of the information provided by defense counsel relates to *suicide.*  The

defendant did not commit suicide.  Thus, even assuming the University of Illinois

Counseling Center failed to provide him with adequate mental health care, he has

suffered no harm as a result.  Whether or not the university has any sort of civil liability,

and whether the counselor violated any ethical rules or operated below a supposed

standard of care is simply a distraction from the jury's obligations in this case and such

matters offer no insight into how the jury should decide the matter.  Allowing this evidence will only serve to confuse the jurors as to their proper role – weighing the aggravating and mitigating evidence to determine "the defendant's moral culpability" for the crime charged.  *Franklin v. Lynaugh*, 487 U.S. 164, 185 (1985) (O'Connor, J., concurring).

## 2.  Rule 12.2 Prohibits the Defendant From Presenting Expert Testimony with Regard to the Defendant's Mental Health

In addition to being irrelevant, the proffered evidence is barred under Rule 12.2(d).  The defendant apparently seeks to argue that the University of Illinois Counseling Center's failure to take affirmative steps to hospitalize him for suicidal ideations mitigates his affirmative decision in June 2017 to kidnap and murder Yingying Zhang.  The defendant has forfeited the opportunity to raise this evidence in mitigation.

Rule 12.2(b)(2) requires advanced written notice if the defendant intends to present expert testimony with regard to a "mental disease or defect or any other mental condition" during the penalty phase of a capital trial. There can be no good faith argument that suicidal ideation does not constitute a "mental disease or defect or any other mental condition."  *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, FIFTH EDITION ("DSM-5"), at 131 (suicide risk as byproduct of Bipolar I Disorder); 138 (suicide risk as byproduct of Bipolar II Disorder); 164-67 (suicide risk as byproduct of Major Depressive Disorder); *see also* (R.180, at 13-14) (noting that both Bipolar Disorder and Major Depressive Disorder are differential diagnoses of

defendant's claimed mental illness).  Based on the defendant's withdrawal (R.317), there is no Rule 12.2 notice in this case.  In the absence of a properly filed notice, the defendant is barred from presenting expert testimony with regard to the fact that he suffered from suicidal ideations in the penalty phase. [2]

The defendant's attempt to divorce the "standard of care" with regard to the mental health care that he received from the diagnosis of a "mental disease or defect or any other mental condition" is logically flawed.  His argument that Dr. Zoline will only testify about the "standard of care" that the defendant should have received presupposes that he was diagnosed as someone who required specific care for that, but such care was not provided.  In reality, the defendant was not diagnosed with the condition.  As such, Dr. Zoline is not being called to testify about the "standard of care," she is being called to testify about a misdiagnosis.  There can be no argument that such testimony is governed by Rule 12.2.

Mental health treatment is not provided in a vacuum.  In order to determine that the defendant should have received more extensive mental health treatment with regard to suicidal ideation, the defendant will have to prove that he was actually suffering from suicidal ideation at that moment in time.  Had the defendant not

---

[2] In addition to Dr. Zoline, the United States submits that the following witnesses must also be precluded from the penalty phase pursuant to the defendant's withdrawal of his Rule 12.2 notice: Marybeth Hallett, Felicia Li, Jennifer Maupin, Tom Miebach, Carin Molenaar, and Peggy Pearson.  Each of these witnesses are trained mental health providers and as such their testimony would be governed by FRE 702.  Any testimony they might provide with regard to their opinions of the defendant's mental health condition in March 2017 is inadmissible absent a Rule 12.2 notice.  FED. R. CRIM. P. 12.2(d).  Moreover, even if their opinion as to his diagnosis was removed, any testimony they might provide with regard to the defendant's statements to them would be inadmissible as self-serving hearsay.  FRE 801.

withdrawn his Rule 12.2 notice, he would be free to call expert witnesses to testify that he suffered from suicidal ideation and that the fact that he did not receive more extensive mental health treatment weighed in favor of a life sentence rather than the death penalty.  FED. R. CRIM. P. 12.2(b)(2).

Had the defendant not withdrawn his Rule 12.2 notice, the United States would have the benefit of its own expert witnesses who could have examined the defendant and testified in rebuttal to such claims.  FED. R. CRIM. P. 12.2(c); *United States v. Buchbinder*, 796 F.2d 910, 915 (7th Cir. 1986) (noting that one purpose of Rule 12.2(b) is "to enable the government to prepare for cross-examination of the defendant's expert witnesses and to present any rebuttal witnesses to counter the defense expert's testimony."); *see also See United States v. Byers*, 740 F.2d 1104, 1153-54 n.95 (D.C. Cir. 1984) ("Those federal appellate courts that have considered the issue have held that the defendant who refuses to submit to a compelled examination is barred from introducing psychiatric testimony based on interviews with his own experts.") (citations omitted); *United States v. Johnson*, 362 F. Supp. 2d 1043, 1089 (N.D. Iowa 2005) ("The defendant could not present expert testimony on his mental condition and yet refuse, on Fifth Amendment grounds, to answer questions put to him by the government's experts.") (citation omitted).

The defendant knowingly and voluntarily withdrew his Rule 12.2 notice, and he did so for tactical reasons – namely to avoid having to participate in a rebuttal examination.  (R.317). The defendant now seeks the benefit of presenting Rule 12.2 evidence without allowing for proper rebuttal as provided by the rule.  FED. R. CRIM. P.

12.2(d); *Buchbinder*, 796 F.2d at 915.  The defendant gave notice of his intent to call Dr.

Zoline to testify on this issue more than two months before he withdrew his Rule 12.2

notice.  At the time of his withdrawal, he was well aware of the potential relevance of

the University of Illinois Counseling Center evidence with regard to the mental health

mitigation case that he spent 14-months investigating.[3]  Nevertheless, he made the

tactical decision to forego such evidence in the penalty phase in order to avoid being

examined by the United States' expert witnesses.  He should not be permitted to end-

run the procedural rules now simply because he has changed his mind.  *United States v.*

*Wagner*, 834 F.2d 1474, 1478-81 (9th Cir. 1987).

## CONCLUSION

The defendant has withdrawn his notice of intent to present mental health

evidence in mitigation at the penalty phase.  (R.317). As such, he is barred from

presenting any expert testimony with regard to a mental disease or defect, or other

mental condition, at the penalty phase.  Suicidal ideation is a mental disease or defect,

or other mental condition, and any testimony about treatment for that disorder must

necessarily include testimony that the defendant suffered from that disorder in the first

place.  The defendant was aware of this evidence at the time he withdrew his Rule 12.2

---

[3] The United States placed this precise issue before the Court as part of the colloquy as to
the defendant's withdrawal of his Rule 12.2 notice.  "It is clear that [the defendant's
withdrawal] would preclude the testimony of defendant's as-yet-unnamed Rule 12.2 experts on
any topic in the penalty phase.  The reasoning of these cases extends, however, to the testimony
of Dr. Zoline . . . because, absent a rebuttal examination pursuant to Rule 12.2(c), the United
States will not be able to rebut [her] testimony.  *Kansas v. Cheever*, 134 S. Ct. 596, 598 (2013);
*LeCroy v. United States*, 739 F.3d 1297, 1305 n.6 (11th Cir. 2014)."  (R.318, at 6).

notice, and both he and his counsel informed the Court that he was aware that withdrawing the notice would result in him being prohibited from presenting certain evidence in the penalty phase.

WHEREFORE, the United States respectfully requests that the Court preclude any and all evidence and testimony with regard to the defendant's mental health diagnoses, whether at the University of Illinois Counseling Center or elsewhere, to include both the adequacy of such diagnoses and any related treatment.

Respectfully submitted,

JOHN C. MILHISER
UNITED STATES ATTORNEY

/s/Eugene L. Miller
Eugene L. Miller
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone: 217/373-5875
Fax: 217/373-5891
eugene.miller@usdoj.gov

/s/ James B. Nelson
James B. Nelson
Trial Attorney
Capital Case Section
United States Department of Justice
1331 F. Street NW, Room 625
Washington, DC  20004
Phone: 202/598-2972
james.nelson@usdoj.gov

/s/Bryan D. Freres
Bryan D. Freres, Bar No. IL 6294791
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone: 217/373-5875
Fax: 217/373-5891
bryan.freres@usdoj.gov

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 11, 2019, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing

to counsel of record.

> */s/ James B. Nelson*
> James B. Nelson
> Trial Attorney
> Capital Case Section
> United States Department of Justice
> 1331 F. Street NW, Room 625
> Washington, DC  20004
> Tel: (202) 598-2872
> james.nelson@usdoj.gov

15