UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| vs. | ) Case No.17-20037 |
| BRENDT A. CHRISTENSEN, | ) |
| Defendant. | ) |

**MOTION FOR MISTRIAL OR LIMITING INSTRUCTION**

NOW COMES the Defendant, BRENDT A. CHRISTENSEN, by and through his attorneys, and moves this Court to declare a mistrial or, in the alternative, for a limiting instruction that there is no evidence that Mr. Christensen has twelve prior victims.

I. PROCEDURAL HISTORY

Prior to trial, the defense moved to exclude Mr. Christensen's statement to T.B. that Ms. Zhang was his thirteenth victim. *Sealed Omnibus Motions In Limine To Exclude Evidence At Trial*, Dkt. Entry 239 pp. 17-20. The defense noted that despite extensive investigation the government had found *no* evidence establishing Mr. Christensen had, in fact, committed *any* prior homicide. *Id*. The government responded by admitting "[t]he United States agrees with the defendant that, at this time, it has not obtained any additional credible evidence that the defendant murdered any victim other than Yingying Zhang. Thus, the defendant's statement may be characterized as braggadocio." *The United States of America's Response to the Defendant's Sealed Omnibus Motions In Limine to Exclude Evidence at Trial*, Dkt. Entry 281, p. 19.

Despite acknowledging that Mr. Christensen's statement was merely "braggadocio," the government argued "the fact that the defendant bragged about this to T.B. will be highly probative during the penalty phase of the trial. This statement, made during a memorial for the victim, tends to show his desire for more victims and strongly demonstrates his lack of remorse for his alleged crimes. Thus, any prejudice to the defendant would not be unfair and is greatly outweighed by the highly probative value of the evidence." *Id*.

The Court understood the government to be arguing that it could introduce the statement regarding Ms. Zhang being his thirteenth victim during the guilt phase of the trial to bolster its "theory that Defendant committed this crime because of his desire to be known as a serial killer." *Sealed Order and Opinion*, Dkt. Entry 324 p. 6. While the Court found the statement relevant for that purpose it barred the government from using the statement during the guilt phase because "the prejudicial effect of references to other murder victims substantially outweighs the evidence's probative value at the guilt phase of the trial—*such evidence could confuse the jury about whether Defendant actually committed those crimes, and it could create a risk of undue delay while the United States explains that there is no evidence Defendant actually committed other murders, only that he allegedly bragged about it.*" *Id*. at 6-7 (emphasis added).

After the Court's ruling the parties worked on trying to agree to a redacted version of the Memorial Walk recording and transcript that excised any reference to Ms. Zhang being Mr. Christensen's thirteenth victim. On the morning of jury selection the Court ruled the full recording and transcript admissible in the penalty phase as

requested by the government. The Court explained it's ruling as follows:

> I am, however, allowing the entire audio at the penalty phase, and there is a number of reasons for that. And one or two are because there are references in the way that I heard it that I think reasonable inferences could be drawn to argue that it might go to future dangerousness; it might back [sic] to lack of remorse; motivation to be known as a serial killer, comments could go to, you know, indication to intimidate, and, specifically, for instance, there is a conversation with T.B. that she says, I'm not in danger am I, unless I tell someone, or something to on [sic] that affect; and Mr. Christensen, if that's him, says that's true.
>
> So I think for those reasons and others, that it's proper for the entire audio to be played at the penalty phase so that would be my ruling on that.

Transcript of Voir Dire Volume 1A, June 3, 2019, p. 4-5.

Based on the Court's ruling that the jury would hear the entire recording during the penalty phase, Mr. Christensen, while preserving his objection to the statement coming in at all, in any phase of the trial, informed the Court he did not object to the government introducing the statement during the guilt phase of the trial as the jury would hear the recording during the penalty phase. Mr. Christensen was going to challenge the veracity of many of his statements on the recording and could not, after contesting the veracity of some of those statements during the guilt phase, risk the jury feeling in the penalty phase they had been sandbagged by the withholding of this very prejudicial but wholly unreliable additional piece of the statement. In addition, breaking the attack on the veracity of the statement into pieces, some done in the guilt phase and some during the penalty phase, would have substantially weakened Mr. Christensen's challenge to the entire statement. Finally, after having considered a portion of the statement during guilt phase deliberations on less than full information,

3

the jurors would not likely be willing to reconsider the accuracy of the portions of the statement they had previously heard and considered as part of the evidence of guilt.

But, of course, all of these considerations were based solely on the statement coming in to show Mr. Christensen's state of mind at the time of the Memorial Walk, not to try to prove, or suggest, Mr. Christensen had actually killed twelve people before killing Ms. Zhang. The government had already conceded there was no evidence to support the claim and that it was mere braggadocio, and the Court had already found the jury would have to be told there was no evidence Mr. Christensen actually committed any other murders.

The government chose to introduce the thirteenth victim evidence during the guilt phase. Based on the government's decision, the defense cross-examined both FBI case agents, Manganaro and Huckstadt about the FBI's investigation of Mr. Christensen's statement that Ms. Zhang was his thirteenth victim and the fact that the investigation produced *no* evidence to corroborate the claim. In response to this cross-examination, the government engaged in redirect examination which elicited testimony from both Agents that while the FBI had no evidence to corroborate the thirteenth victim claim, it was possible that Mr. Christensen had in fact murdered one or more people prior to killing Ms. Zhang.

Specifically, in the redirect of Agent Manganaro the government asked a series of questions suggesting that it was possible Mr. Christensen actually killed someone other than Ms. Zhang. Trial Transcript Vol 9B p. 233-235. The government attorney asked Agent Manganaro if he could account for "every day" or "every minute" of Mr.

4

Christensen's life which, of course, the Agent said he could not. *Id*. at 233. The government noted that some of the FBI's investigation was based on comparing Mr. Christensen's DNA to DNA samples from cold cases and then asked Agent Manganaro if it was possible for someone to "vanish[] without a trace," leaving no DNA evidence, making it difficult if not impossible to investigate the disappearance. Agent Manganaro testified that such a situation was possible. *Id*. at 234-235. All of these questions and answers were designed to suggest Mr. Christensen did in fact kill someone prior to killing Ms. Zhang and the FBI simply could not find any evidence to solve the murder.

Mr. Christensen moved for a mistrial based on the government's attempts to suggest the thirteenth victim statement might actually be true. Trial Tr. Vol. 10A p. 7-8. The government claimed no wrong doing, asserting it had acknowledged there is no evidence "linking the defendant to any other victims." *Id*. at 9. The Court denied the mistrial motion. The Court said it did not "understand the government to be asking the jury to find that it's true. And I haven't heard him say that yet." *Id*. at 10. The Court went on to state, "If you wish to have an instruction, you can propose one at the conclusion of the case, and we will address it." *Id*. at 11.

The government doubled down on its strategy of suggesting Mr. Christensen's statements might be true with Agent Huckstadt. On Huckstandt's redirect the government attorney asked him about the FBI's limitations on solving crimes. Huckstadt responded as follows:

> Yes, the point that I was trying to make is that we can only act on information that we have. There is a lot of times where law enforcement is not aware of things. There is other circumstances that we would have to

> look into where a person can travel, for example, in a car, maybe they traveled somewhere, maybe they went to a different state. So the –

Trial Transcript Vol. 11A p. 38-39.

The defense objected, arguing again for a mistrial as Huckstadt was clearly giving testimony that the thirteenth victim statement could actually be true. *Id*. at 39. The Court denied the motion and let Agent Huckstadt continue to suggest the statements might be true. *Id*. at 39. Huckstadt further testified:

> So the point that I'm trying to make is we can only act on information that we have. We have not corroborated, and we have said multiple times that we have not corroborated that he committed these other murders, *however, that's not the same that saying that it is completely impossible*, that's the only point that I'm making. We are continuing to investigate and that's as far as we can go at this point in time.

Vol. 11A p.40 (emphasis added).

Huckstandt's testimony explicitly states it is possible that Mr. Christensen's statements are true but the FBI just has not been able to find evidence to corroborate the statements. That testimony is in direct contradiction to the government's position in its response to the motion *in limine* that the statement was only "braggadocio."

## II. THE COURT MUST DECLARE A MISTRIAL

"A court may declare a mistrial if it determines that such a declaration is "occasioned by manifest necessity.'" *United States v. Taylor*, 569 F.3d 742, 746 (7th Cir. 2009) (quoting *United States v. Combs*, 222 F.3d 353, 358-59 (7th Cir. 2000)). Under this standard a court must declare a mistrial if a "scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings.'" *Camden v. Circuit Court of Second Judicial Circuit,*

*Crawford County, Ill.*, 892 F.2d 610, 614 (7th Cir. 1989) (quoting *United States v. Jorn*, 400 U.S. 470, 485 (1971)). The Supreme Court has described the "ends of public justice" as "the public's interest in fair trials designed to end in just judgments." *Illinois v. Somerville*, 410 U.S. 458, 463 (1973) (quoting *Wade v. Hunter*, 336 U.S. 684, 689 (1949)).

The government's improper conduct in having both Manganaro and Huckstadt suggest that Mr. Christensen may have in fact killed someone other than Ms. Zhang requires a mistrial. Basing a verdict on allegations for which there is *no* evidence frustrates the public's interest in fair trials designed to end in just judgments. While there is no *per* se bar on using other crimes evidence in capital cases, the Seventh Circuit has made clear the use of such evidence must be handled with great care and subjected to rigorous testing. None of that happened here.

In determining whether other crimes evidence may be considered in a particular case, a court "must consider a number of factors, including the reliability of the evidence, the prejudicial and probative impact of the evidence, and the burden of proof both for determining reliability and for a jury to determine whether the conduct may be considered." *United States v.* Corley, 519 F.3d 716, 724 (7th Cir. 2008). *See also United States v. Beckford*, 964 F. Supp. 993, 1000 (E.D. Va. 1997) (holding that "unadjudicated criminal conduct may be presented to the jury only if the Court has determined that it meets the threshold test of reliability"); *United States v Gilbert*, 120 F. Supp. 2d 147, 151 (D. Mass. 2000) (same). Before a court may admit such evidence, it must determine that it is "sufficient to allow a reasonable jury to find beyond a reasonable doubt" that the defendant in fact committed the alleged crimes. *United States v. Corley*, 348 F. Supp. 2d

970, 974 (N.D. Ind. 2004). The Court did not engage in any of those steps here.

First, the Court did not make any finding that Mr. Christensen's statement about twelve prior victims was reliable. At the time Mr. Christensen made the statement he had been diagnosed with a major mental illness, depression, and was on powerful medication to treat that illness. He was also drunk and bragging to his girlfriend. Again, the government itself described the statement as braggadocio. Finally, there is *no* corroborating evidence. None.

Second, while the Court found the probative impact of the statements outweighed its prejudicial impact, it did so based on the finding that the statement was not true and would be introduced to show state of mind, not for the truth of the statement. The Court *never* engaged in any balancing of the probative and prejudicial impact of the statement if it was introduced for the truth of the matter asserted.

Third, the Court never considered the burden of proof for determining reliability or the burden of proof for the jury to determine whether the conduct could be considered. In short, the Court failed to analyze any of the factors the Seventh Circuit found must be analyzed before other crimes evidence can be introduced in a capital prosecution.

Presumably, the reason the Court did not engage in any of the analysis required by *Corley* was the fact that the government's told the Court it would not introduced the statement to show Mr. Christensen actually killed someone other than Ms. Zhang. The government told the Court the statement was "braggadocio," relevant to Mr. Christensen's "desire for more victims and strongly demonstrates his lack of remorse

for his alleged crimes." *The United States of America's Response to the Defendant's Sealed Omnibus Motions In Limine to Exclude Evidence at Trial*, Dkt. Entry 281, p. 19.

But the government did not honor its assurance to the Court. Through its redirect examinations of Manganaro and Huckstadt the government has argued to the jury that Mr. Christensen may well have killed twelve other people but done such a good job of covering his tracks the FBI was not *yet* been able to solve those murders. That injects unreliable evidence of other crimes into this case. And, that unreliable evidence of other crimes has been introduced in a manner that shifts the burden of proof to Mr. Christensen.

The government, through Manganaro's and Huckstadt's testimony, has effectively told the jury it should find Mr. Christensen did kill twelve other people, or at least speculate that he might have, unless the defense proved it was impossible for Mr. Christensen to have committed the crimes. This argument shifts the burden of proof from the government to Mr. Christensen. Claiming Mr. Christensen might have killed other individuals but we have not yet been able to find the evidence turns the entire premise of our criminal justice system on its head. Mr. Christensen is presumed to be innocent of any crime the government claims he committed. The government cannot ask the jury to believe Mr. Christen might be guilty, even though there is no evidence, because he might have been so good at committing the crime he left no evidence. That is the stuff of a smear campaign, not admissible evidence in a capital murder prosecution.

Now that the government has been allowed to inject Mr. Christensen's guilt for as many as twelve prior murders into the trial the jurors will speculate as to whether

9

Mr. Christensen really did kill twelve people before killing Ms. Zhang. This despite the fact that there is *no* evidence, none whatsoever, to support the claim. That is why the evidence should have been excluded to start with. The jury has now heard Manganaro and Huckstadt state it is possible Mr. Christensen killed as many as twelve other people. That bell cannot be unrung. The government knew exactly what it was doing in its redirect examinations. This testimony was not an accident, not an isolated response to an unartful question. This was deliberate, planned redirect examination with the goal of convincing the jury Mr. Christensen really might have killed twelve other people.

The government's protestations that it has done nothing wrong because it acknowledged there is no evidence that Mr. Christensen actually killed twelve other people is meaningless as it has literally had the two FBI case agents testify "just because we don't have any evidence doesn't mean he didn't do it." Nor can a limiting instruction cure the unfair prejudice the government has injected into this case. "The naïve assumption that prejudicial effects can be overcome by instructions to the jury all practicing lawyers know to be unmitigated fiction." *Krulewitch v. United States*, 336 U.S. 440, 435 (1949) (Jackson, J., concurring) (internal citations omitted).

The ineffectiveness of limiting instructions is exacerbated by the Court's failure to act immediately in rebuking the government's conduct. The Court overruled Mr. Christensen's contemporaneous objection and motion for mistrial. Those decisions have resulted in the jury receiving the evidence as if it were proper and has already been integrated into each juror's mind. At this point it is completely unrealistic to believe a curative instruction can fix the harm that has been done.

The government has intentionally injected Mr. Christensen's guilt of twelve uncharged, unproven murders into this case. The government's actions require a mistrial. It is not possible for Mr. Christensen to receive a fair trial on his guilt and the appropriate punishment for his crime given the government's misconduct.

### III. IF THE COURT WILL NOT GRANT A MISTRIAL IT MUST GIVE A LIMITING INSTRUCTION

Despite the limited usefulness of limiting instructions discussed *supra*, if the Court refuses to grant a mistrial a limiting instruction must be given. That instruction must go far beyond a standard Federal Rule of Evidence 404(b) type instruction. A Rule 404(b) limiting instruction assumes the government has proven the defendant actually committed some other prior bad act and cautions the jury to consider the bad act for a limited purposes, not for propensity. Here the government has not proved that Mr. Christensen actually committed a prior bad act. Rather, it has acknowledged it has no evidence that Mr. Christensen committed a prior murder but asked the jury to speculate that Mr. Christensen really did commit a prior murder because he may have been so good at committing the murder the government has not been able to find evidence to prove he committed the crime. The jury must be clearly and forcefully told that it may not engage in that speculation.

Mr. Christensen proposes the following limiting instruction:

> You may consider Mr. Christensen's alleged statement that Ms. Zhang was his thirteenth victim only for purposes of evaluating his state of mind at the time he made it. There is no evidence that Mr. Christensen has twelve prior victims, and you are prohibited from considering any of Mr. Christensen's statements, the testimony of Agent Manganaro or Agent Huckstadt, or any other evidence you have heard as suggesting that he

11

did.  In short, there is no evidence that Mr. Christensen harmed anyone before Ms. Zhang, and you are strictly forbidden from considering or even wondering whether he did.

I remind you the government at all times bears the burden of proving its case beyond a reasonable doubt. It can only do so though reliable evidence. Speculation or unsupported opinions of its witnesses do not satisfy that high burden.

This instruction will also have to be given, perhaps in a slightly modified form, at the penalty phase.

WHEREFORE, the Defendant respectfully requests the Court declare a mistrial.

Respectfully submitted,

| | |
|---|---|
| /s/Elisabeth R. Pollock | /s/ George Taseff |
| Assistant Federal Defender | Assistant Federal Defender |
| 300 West Main Street | 401 Main Street, Suite 1500 |
| Urbana, IL 61801 | Peoria, IL 61602 |
| Phone: 217-373-0666 | Phone: 309-671-7891 |
| FAX:   217-373-0667 | Fax:     309-671-7898 |
| Email: Elisabeth_Pollock@fd.org | Email: George_Taseff@fd.org |
| | |
| /s/ Robert Tucker | /s/ Julie Brain |
| Robert L. Tucker, Esq. | Julie Brain, Esq. |
| 7114 Washington Ave | 916 South 2nd Street |
| St. Louis, MO 63130 | Philadelphia, PA 19147 |
| Phone: 703-527-1622 | Phone: 267-639-0417 |
| Email: roberttuckerlaw@gmail.com | Email: juliebrain1@yahoo.com |

CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorneys Bryan D. Freres and Eugene L. Miller. A copy was also mailed to the defendant.

/s/Elisabeth R. Pollock
Assistant Federal Public Defender
300 West Main Street
Urbana, IL  61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org