## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17-CR-20037 |
| ) | |
| BRENDT A. CHRISTENSEN, ) | |
| ) | |
| Defendant. ) | |

### THE UNITED STATES OF AMERICA'S MOTION
### TO PRECLUDE IMPROPER REMORSE EVIDENCE

NOW COMES the United States of America, by John C. Milhiser, United States Attorney for the Central District of Illinois, Eugene L. Miller and Bryan Freres, Assistant United States Attorneys, and Department of Justice Trial Attorney James B. Nelson, and respectfully files this motion to preclude the defendant from admitting "remorse" evidence during the penalty phase through improper means. The bases for the United States' motion follow.

### ARGUMENT

Based on those arguments, the United States anticipates that the defendant may attempt to introduce "remorse" evidence through other means that prevent the United States from effectively challenging that evidence. Such attempts should be disallowed.

1. **The Court Should Preclude the Defendant From Making an Unsworn Allocution**

As the Court is aware, an allocution is "[a]n unsworn statement from a convicted defendant to the sentencing judge or jury in which the defendant can ask for mercy,

explain his or her conduct, apologize for the crime, or say anything else in an effort to lessen the impending sentence." *United States v. Jackson*, 549 F.3d 963, 980 n. 22 (5th Cir. 2008) (citing BLACK'S LAW DICTIONARY (8th ed. 2004)).[1] The United States anticipates that the defendant may seek to give an unsworn allocution during the penalty phase. Any such request should be denied.

The United States concedes that a handful of district courts, while acknowledging that they are not required to do so, have permitted capital defendants with a limited opportunity to allocute during the penalty phase. The United States maintains, however, that these decisions were erroneous in light of the well-reasoned opinions from the Fourth, Fifth, Sixth, and Eighth Circuits, which have repeatedly affirmed decisions to exclude unsworn allocution.

Capital defendants have no right to give an unsworn allocution during the penalty phase. *See United States v. Hall*, 152 F.3d 381, 391-97 (5th Cir. 1998) (analyzing the history of allocution and concluding that no constitutional or statutory right to allocate exists in capital sentencing hearings), *abrogated on other grounds by United States v. Martinez-Salazar*, 528 U.S. 304 (2000). Notwithstanding its abrogation on other grounds, the Fifth Circuit continues to follow *Hall* on this point. *United States v. Jackson*, 549 F.3d 963, 980-81 (5th Cir. 2008); *see also United States v. Purkey*, 428 F.3d 738, 761 (8th

---

[1] The United States understands that the rules of evidence are relaxed in a penalty phase, and that other types of evidence, such as hearsay, are acceptable even though they would be precluded from a trial. 18 U.S.C. § 3593(c). As the Courts have held, however, a defendant's allocution is treated differently than other types of evidence.

Cir. 2005) (following *Hall*); *United States v. Barnette*, 211 F.3d 803, 820 (4th Cir. 2000) (same).

In *Purkey*, the Eighth Circuit upheld the district court's refusal to allow a capital defendant to make a statement to the jury without being subject to cross-examination. *Purkey*, 428 F.3d at 761. The Court reasoned as follows:

> First, our circuit previously has recognized that the right to allocution does not emanate from the Constitution. *See United States v. Patterson*, 128 F.3d 1259, 1260 (8th Cir. 1997) (*per curiam*); *see also Barnette*, 211 F.3d at 820; *Hall*, 152 F.3d at 396. Therefore, even if Mr. Purkey were correct that the district court denied him the right to allocution, the error would not be a constitutional one.
>
> Second, Mr. Purkey does not have a statutory right to make statements to a jury during the penalty phase of an FDPA trial without being subject to cross-examination. Rule 32(i)(4)(A)(ii) requires that "before imposing sentence," the district court must "permit the defendant to speak or present any information to mitigate the sentence." The district court satisfied Rule 32 when it allowed Mr. Purkey to speak "before imposing sentence." *See Hall*, 152 F.3d at 392. Although Mr. Purkey's allocution could not have mitigated his sentence because it followed the jury's recommendation of the death penalty, *see* 18 U.S.C. § 3594, nowhere does Rule 32 grant Mr. Purkey a right to allocution before a jury; Rule 32 speaks only of "the court." We agree with the Fifth Circuit that Rule 32(i)(4)(A)(ii) should not be interpreted to entitle Mr. Purkey to a right of allocution before the jury "when the plain language of the rule does not dictate such an interpretation." *Hall*, 152 F.3d at 393; *see also Barnette*, 211 F.3d at 820. As for the FDPA, nowhere does it mention a right to allocution or anything comparable; Mr. Purkey's claimed right on that ground therefore does not exist.

*Id.* Indeed, "[n]o circuit court of appeals has recognized a constitutional right to allocution before the jury during the sentencing phase of a federal capital trial. . . ." *United States v. Lawrence*, 735 F.3d 385, 407 (6th Cir. 2013).

3

As noted in *Purkey*, allocution is permitted in a limited setting – sentencing hearings before the court. *See* FED. R. CRIM. P. 32(i)(4). The rule provides no basis for concluding that capital defendants enjoy a right to allocute to the *jury. See, e.g., Purkey*, 428 F.3d at 761; *Barnette*, 211 F.3d at 820; *Hall*, 152 F.3d at 392. Neither does the FDPA permit an unsworn allocution. 18 U.S.C. § 3591, *et seq*. The FDPA was enacted after Rule 32; therefore, the rules of statutory construction dictate that the FDPA controls in the event of a conflict. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000).

To put it simply, there is no basis in the Constitution, Rule 32, or the FDPA to allow the defendant to make an unsworn allocution to the jury. In the absence of express statutory authorization, it is clear that an unsworn allocution would run afoul of 18 U.S.C. § 3593(c), which provides that evidence must be excluded "if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." An unsworn and unconfronted statement by the defendant would be, for want of any indicia of reliability, substantially more prejudicial than probative. *Cf. California v. Green*, 399 U.S. 149, 158 (1970) (referring to cross-examination as "the greatest legal engine ever invented for the discovery of truth").

Should the defendant wish to do so, he will have an opportunity to address the jury during the penalty phase. The law mandates, however, that he do so under oath from the witness stand, and with the understanding that his testimony will be subject to

4

cross-examination. The defendant should not be permitted to give an unsworn allocution.[2]

### 2. The Court Should Preclude the Defendant From Introducing Hearsay Conduit Evidence Through a Mitigation Specialist

In addition to his legal team, the defendant is represented by a "mitigation specialist" who has been engaged to gather information that might be useful in support of his penalty phase presentation. The defendant has listed her as a potential witness in the penalty phase. The mitigation specialist's role includes gathering records as well as interviewing any number of witnesses – including the defendant's family members, friends, or people who have known him at any point in his life. To the extent that any such statements are relevant to the penalty phase, they should be presented by available witnesses rather than allowing the mitigation specialist to act as a wholesale hearsay conduit for witnesses who would otherwise be subject to cross-examination.

The United States recognizes that any "information" relevant to the sentence, including any mitigating or aggravating factor, is admissible at sentencing "regardless

---

[2] Should the Court allow the defendant to give an unsworn allocution, the Court would be required to explain to the defendant that such an allocution constitutes a limited Fifth Amendment waiver "that allows the prosecution to argue for an adverse inference from a defendant's failure to testify as to that to which he has allocuted." *United States v. Whitten*, 610 F.3d 168, 199-200 (2d Cir. 2010) (citing *Booth v. State*, 507 A.2d 1098, 1114 (Md. 1986) (explaining that the defendant's allocution constitutes, "at a minimum, a waiver of any privilege to avoid comment by the prosecutor on the allocution"), *rev'd on other grounds*, *Booth v. Maryland*, 482 U.S. 496 (1987), *overruled by Payne v. Tennessee*, 501 U.S. 808 720 (1991)). As the Second Circuit noted, however, the navigation of this waiver and what the United States can, and cannot, say in comment on the defendant's decision not to testify creates a slippery slope on appeal. *Id*. at 200.

5

of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c). The United States also recognizes that information about the defendant's childhood and upbringing is at the core of any mitigation case. The United States does not challenge the defendant's statutory and Constitutional right to introduce evidence of his childhood. Rather, the United States challenges the vehicle for the introduction of such information.

Two principles inform the admissibility of evidence at a capital penalty phase. *United States v. Wilson*, 956 F. Supp. 2d 397, 399 (E.D.N.Y. 2013). First, the Supreme Court has noted that under the Constitution, "[t]he finality of the death penalty requires a 'greater degree of reliability' when it is imposed." *Murray v. Giarratano*, 492 U.S. 1, 8-9 (1989) (citation omitted); *see also United States v. Fell*, 531 F.3d 197, 207 (2d Cir. 2008) (recognizing the "heightened reliability standards required in capital trials"). Similarly, the Federal Death Penalty Act provides that "[i]nformation is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c); *see also United States v. Fell* ( Fell I ), 360 F.3d 135, 145 (2d Cir. 2004).

Second, the Supreme Court has indicated that so long as evidence is not unduly prejudicial, "it is desirable for the jury to have as much information before it as possible when it makes the sentencing decision." *Gregg v. Georgia*, 428 U.S. 153, 204, (1976); *see*

6

*also Fell I*, 360 F.3d at 143 ("[T]he Supreme Court has ... made clear that in order to achieve such 'heightened reliability,' more evidence, not less, should be admitted on the presence or absence of aggravating and mitigating factors . . . .") (original emphasis).

In *Wilson*, the District Court for the Eastern District of New York precluded the defendant from introducing his own statement made shortly after the murder in the penalty phase of trial. The defendant sought to present self-serving hearsay evidence of two statements he allegedly made to a convicted co-conspirator. *Id.* at 400. In finding the evidence unreliable, the Court held that the "statements, even if not being offered for their truth, are two levels removed: Wilson seeks to offer documentary proof of what [he] said Wilson said. Thus, [the] statements of are [*sic*] extremely limited probative value." *Id.* at 401-402.

Similarly, in *United States v. Catalan-Roman*, the Court precluded the defendant from introducing the results of exculpatory polygraph results during the penalty phase of a capital trial. 368 F. Supp. 2d 119, 121 (D.P.R. 2005). In preparation for the penalty phase, the defendant sought and was granted permission to conduct polygraph testing. He then moved to present the polygraph results, in support of his claim of non-participation in the attempted robbery. In holding the evidence inadmissible, the Court held:

> Although capital sentencing proceedings are released from the strictures of the Federal Rules of Evidence, *see* 18 U.S.C. § 3593(c), the trial judge retains his traditional role as gatekeeper of constitutionally permissible information, and must accordingly exclude any unreliable or prejudicial information that might render a trial fundamentally unfair. *See U.S. v. Fell*, 360 F.3d 135, 145 (2d Cir. 2004) (collecting cases). In addition, the Federal Death Penalty Act ("FDPA") circumscribes the right to present mitigating information by excluding any

7

> relevant information the probative value of which is "outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c). *These safeguards promote the imposition of an individualized sentence as required by constitutional parameters, while precluding the penalty phase of a capital trial from devolving into an evidentiary free-for-all. See e.g. Fell*, 360 F.3d at 146 (collecting cases).

*Id.* at 121-122 (emphasis added).

In much the same way, allowing the defendant to proffer evidence through his mitigation specialist, rather than through the appropriate witnesses, would not only create an "evidentiary free-for-all" by permitting unreliable double-hearsay *in lieu* of live testimony – it would confuse the issues and mislead the jury. Here, as in *Wilson* and *Catalan-Roman*, the Court should preclude the defendant from offering "twice-removed" statements and unreliable evidence in the penalty phase through the testimony of a mitigation specialist. There are other, more appropriate, methods of presenting the testimony of an unavailable witness – such as a videotaped statement. The United States does not object to the defendant raising mitigation evidence within the parameters of the FDPA, but such evidence should be admitted through the appropriate witness.

## CONCLUSION

The defendant is entitled to rebut the Lack of Remorse aggravating factor through proper evidence and testimony during its penalty phase case-in-chief. That rebuttal may not, however, include an unsworn allocution from the defendant *in lieu* of sworn testimony. Neither may the defendant's rebuttal rest on hearsay conduit testimony from a mitigation specialist or other such witnesses. If the defendant wishes

8

to introduce evidence of his statements or feelings in rebuttal to the aggravating factors, he will have the opportunity to do so from the witness stand.

Respectfully submitted,

JOHN C. MILHISER
UNITED STATES ATTORNEY

/s/Eugene L. Miller
Eugene L. Miller
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone: 217/373-5875
Fax: 217/373-5891
eugene.miller@usdoj.gov

/s/ James B. Nelson
James B. Nelson
Trial Attorney
Capital Case Section
United States Department of Justice
1331 F. Street NW, Room 625
Washington, DC  20004
Phone: 202/598-2972
james.nelson@usdoj.gov

/s/Bryan D. Freres
Bryan D. Freres, Bar No. IL 6294791
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone: 217/373-5875
Fax: 217/373-5891
bryan.freres@usdoj.gov

**CERTIFICATE OF SERVICE**

  I hereby certify that on June 24, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

               */s/ James B. Nelson*
               James B. Nelson
               Trial Attorney
               Capital Case Section
               United States Department of Justice
               1331 F. Street NW, Room 625
               Washington, DC  20004
               Tel: (202) 598-2872
               james.nelson@usdoj.gov