E-FILED
Tuesday, 25 June, 2019  07:07:11 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.17-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION *IN LIMINE* TO EXCLUDE IMPROPER VICTIM
## IMPACT EVIDENCE AND RENEWED MOTION FOR PRETRIAL DISCOVERY

NOW COMES the Defendant, BRENDT A. CHRISTENSEN, by and through his

attorneys, and respectfully moves this Court to exclude improper victim impact

evidence and to order pretrial discovery of all proposed victim impact evidence

pursuant to the Fifth Amendment Due Process Clause, the Eighth Amendment

prohibition on cruel and unusual punishment and the Federal Death Penalty Act.

## I.    PROCEDURAL HISTORY

On October 3, 2017, Mr. Christensen was charged in a superseding indictment

with kidnapping resulting in death. (R. 26.) The superseding indictment contained a

Notice of Special Findings making death an authorized sentence under the Federal

Death Penalty Act ("FDPA"). *Id.* On January 19, 2018, the government filed a Notice of

Intent to Seek the Death Penalty. (R. 54.) In the notice the government listed as a non-

statutory aggravating factor supporting a sentence of death: "*Victim impact evidence.* The

defendant caused injury, harm, and loss to Y.Z. and loss to her family, friends, and co-

workers. The injury, harm, and loss caused by the defendant is evidenced by Y.Z's personal characteristics and by the impact of her death upon her family, friends, and co-workers." *Id*.

The Court thereafter entered a scheduling order directing the government to disclose its expected evidence in support of aggravating factors by May 18, 2018. (R. 67.) With respect to victim impact evidence, the government responded to the scheduling order by identifying the following items in a letter sent to defense counsel on May 18, 2018:

> A. Photographs, video, journals, essays, or other documentation detailing Y.Z.'s life in China, her matriculation to the University of Illinois, and her plans for the future.
>
> B. Testimony from family members and friends of Y.Z.
>
> C. Christensen's admissions as to victim impact.

In a July 11, 2018, letter the government expanded its victim impact evidence by stating it intended to introduce evidence regarding personal characteristics of Ms. Zhang that "include, but are not limited to, the victim's personality, character, work ethic, educational background, future plans, gender, race, national origin, immigration status, physical stature and appearance, marital status, family of origin, economic status, English as a second language, cultural experiences, and relationships with family, friends, colleagues, other students, and faculty."

In a Motion to Compel Discovery, Mr. Christensen asked the Court to compel the government to provide more detailed notice of the victim impact evidence it would seek to introduce to support its proposed non-statutory aggravating factor. (R. 82.) The

Motion was denied. (R. 91.)

On December 7, 2018, Mr. Christensen filed a Renewed Motion to Compel Discovery of Victim Impact Evidence. (R. 167.) In response the government argued the Court was bound by Judge Bruce's prior ruling based on the law of the case doctrine. (R. 194.) The Court agreed with the government, but also found it would reach the same conclusion if it were to consider the issue anew. (R. 311 at 7.) The Court did state that it would "prohibit the United States from arguing that Defendant should receive the death penalty based on the victim's 'race, color, religious beliefs, national origin, or sex of the defendant or of any victim. 18 U.S.C. § 3593(f).'" *Id*. at 8.

Importantly, the Court limited its holding by stating, "the instant Motion is one to compel discovery, not to preclude testimony or evidence. Therefore, the Court need not address the bounds of permissible victim impact evidence in this order." *Id*. at 8. The Court must now address the bounds of permissible victim impact evidence.

## II. PERMISSIBLE VICTIM IMPACT EVIDENCE OFFERS NO MORE THAN A QUICK GLIMPSE OF THE LIFE OF THE VICTIM

In *Payne v. Tennessee*, 501 U.S. 808, 822-827 (1991), the Supreme Court held that victim impact evidence is admissible insofar as it provides a "'quick glimpse of the life'" of the victim, to ensure she does not become a "faceless stranger" amidst the mitigating evidence presented about the defendant. "[A] State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed." *Id.* at 827. In accordance with *Payne*, the FDPA permits the government to

notice an aggravating factor concerning "the effect of the offense on the victim and the victim's family." 18 U.S.C. §3593(a). "[This] may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information." *Id.*

"Victim impact statements were never intended to be—and should not be allowed to become—eulogies, which summarize the life history of the victim and describe all of his or her best qualities." *Malone v. State,* 168 P.3d 185, 210 (Okla. Crim. App. 2007). Rather, they should generally describe the victim's character and the pain the family survivors felt. *United States v. Hall*, 152 F.3d 381, 405 (5th Cir. 1998), *abrogated on other grounds by United States v. Martinez-Salazar*, 528 U.S. 304 (2000).

By its nature, victim impact testimony risks overwhelming a jury. Such evidence, and accompanying argument, "can of course be so inflammatory as to risk a verdict impermissibly based on passion, not deliberation." *Payne*, 501 U.S. at 836 (Souter and Kennedy, JJ., concurring). District courts must take care that prosecutors do not "cross[]" the "line" by presenting evidence that would render a capital sentencing hearing "fundamentally unfair." *Id.* at 831 (O'Connor, White, Kennedy, JJ., concurring). *Accord id.* at 836 (noting "trial judge's authority and responsibility" to "guard against the inflammatory risk") (Souter and Kennedy, JJ., concurring). government to notice an aggravating factor concerning "the effect of the offense on the victim and the victim's family." "[This] may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the

4

victim and the victim's family, and any other relevant information." 18 U.S.C. §3593(a).

### III.  NO TESTIMONY SHOULD BE PERMITTED CONCERNING THE RACE, COLOR, RELIGIOUS BELIEFS OR NATIONAL ORIGIN OF MS. ZHANG, HER FAMILY, OR HER FAMILY'S,OR MR. CHRISTENSEN

The FDPA expressly prohibits the jury from considering "the race, color, religious beliefs, national origin, or sex of the defendant or of any victim" as part of its sentencing determination. 18 U.S.C. § 3593(f). Accordingly, any evidence concerning a victim's race, color, religious beliefs, national origin or sex must be excluded. The Eighth Amendment also forbids sentencing based on such factors. Capital sentencing is instead required to be focused on facts about the defendant or the circumstances of the offense that make the case stand out among other murder cases. *See Zant v. Stephens*, 462 U.S. 862, 877 (1983). Thus, "[i]t would indeed be improper for a prosecutor to urge that the death penalty be imposed because of the race, religion or political affiliation of the victim." *South Carolina v. Gathers*, 490 U.S. 805, 821 (1989) (O'Connor and Kennedy, JJ, and Rehnquist, CJ, dissenting), *overruled on other grounds by Payne v. Tennessee*, 501 U.S. 808 (1991).

The Court should accordingly bar the government's proposed victim impact testimony regarding Ms. Zhang's "gender, race, national origin, immigration status, English as a second language, and cultural experiences." 7/8/2018 Ltr. From Govt. to Def. This includes any testimony concerning cultural or religious beliefs held by her family members regarding the proper handling of a deceased person's remains. The fact that Ms. Zhang's remains have not been found says nothing about her "uniqueness as an individual human being." *Payne*, 501 U.S. at 823. It says nothing about her at all. Nor

is the fact that Ms. Zhang's remains have not been located relevant to the impact of Ms. Zhang's *death* on her family. The Supreme Court held the impact of the murder on the victim's family is admissible, not the status of the victim's remains.

The Eighth Amendment also forbids sentencing based on such factors. Capital sentencing is instead focused on facts about the defendant or the circumstances of the offense that make stand out among other murder cases. *See Zant v. Stephens*, 462 U.S. 862, 877 (1983). Thus, "[i]t would indeed be improper for a prosecutor to urge that the death penalty be imposed because of the race, religion or political affiliation of the victim." *South Carolina v. Gathers*, 490 U.S. 805, 821 (1989) (O'Connor and Kennedy, JJ, and Rehnquist, CJ, dissenting), *overruled on other grounds by Payne v. Tennessee*, 501 U.S. 808 (1991).

## IV. TESTIMONY THAT CONSISTS OF MERE EMOTIONAL PLEAS OR THAT OFFERS OPINIONS ABOUT THE CRIME, THE DEFENDANT, THE APPROPRIATE SENTENCE, OR THE IMPACT OF THE COURT PROCEEDINGS SHOULD BE EXCLUDED

Prior to its decision in *Payne*, in *Booth v. Maryland*, 482 U.S. 496, 501-502 (1987), the Supreme Court banned at the penalty phase of a capital case "the admission of a victim's family members' characterizations and opinions about the crime, the defendant, and the appropriate sentence." Notwithstanding *Payne*, this holding from *Booth* remains good law. *Bosse v. Oklahoma*, 137 S. Ct. 1 (2016). Accordingly, the victim impact witnesses must not be allowed to express any opinions on the crime, about Mr. Christensen, or the appropriate sentence.

Nor may they be permitted to testify regarding the effect of the court

proceedings on them. In *United States v. McVeigh*, 944 F. Supp. 1478, 1491 (D. Colo. 1996), the district court, which dealt extensively with the issue of victim impact evidence in the context of the Oklahoma City bombing trial, ruled that "because victim impact evidence is relevant only to demonstrate the specific harm caused by a particular crime . . . it seems clear that the victims' testimony must reflect the harm caused by the criminal conduct, rather than the impact of the trial proceedings [or other factors]." Additionally, such testimony would exact a cost for Mr. Christensen's exercise of his right to jury trial in violation of the Constitution. *See Griffin v. California*, 380 U.S. 609, 614 (1965) (holding that comment on defendant's failure to testify at trial is unconstitutional because it is a "penalty for exerting a constitutional privilege").

Members of the Zhang family have made statements to the media that would be in clear contravention of these principles were they to be repeated in court. For example, in a recent television interview Ms. Zhang's mother was asked what she thought when she first heard Mr. Christensen's name. She replied "I really wanted to kill him. I would if I could." https://abcnews.go.com/US/trial-begins-illinois-man-missing-chinese-scholar-case/story?id=63447958. In the same joint interview, Ms. Zhang's father stated "I cannot believe there is such an evil person among us in this world." *Id.* He went on to express "I think he should definitely get the death penalty." *Id.*

As recently as yesterday, after the verdict was entered at the conclusion of the culpability phase, a lawyer for the Zhang family told reporters that the family "will ask a federal jury to recommend that Christensen be put to death for the murder." *See*

https://wgntv.com/2019/06/24/closing-arguments-set-for-missing-chinese-scholar-case/.  A different attorney for the family issued a statement the same day that read in part: "This has been a difficult process for Yingying's family. They have been traumatized . . .  by the delays in the case against the person who murdered Yingying and by the testimony they heard during the trial." *See*  http://www.news-gazette.com/news/local/2019-06-24/emotional-distress-has-been-unbearable.html. Such statements must be ruled inadmissible prior to any victim impact witnesses taking the stand.

V.    **VICTIM IMPACT TESTIMONY THAT IS INCONSISTENT WITH OBJECTIVE FACTS SHOULD BE EXCLUDED**

Out of deep respect for Ms. Zhang's family, and due to the inherently emotional nature of victim impact testimony in a case like this, Mr. Christensen wishes to avoid entirely the necessity of questioning the victim impact witnesses in the courtroom. However, in the media the Zhang family have made statements that are inconsistent with certain objective facts in this case. We accordingly move the Court to preclude in advance any testimony that includes such statements so as to obviate any need for impeachment.

For example, Ms. Zhang's mother stated in a recent television interview: "We hope the prosecutors can help find our daughter soon. We hope that bad person reveals the truth soon. We have been waiting for two years. Two entire years." https://abcnews.go.com/US/trial-begins-illinois-man-missing-chinese-scholar-case/story?id=63447958. If repeated in court, such testimony would clearly imply to the

jury that Mr. Christensen has refused to provide any information about what he did to
Ms. Zhang. In truth, however, within six months of his arrest Mr. Christensen agreed to
plead guilty to the charges against him, to cooperate fully with investigators and
provide all information in his possession regarding the crime and the location of the
victim's remains and to accept a sentence of life without possibility of release.

In another interview, Ms. Zhang's mother stated: "When the trial starts I just
hope it turns out that he didn't kill my daughter. I hope he gives my daughter back to
me." *Id.* Although eminently understandable, testimony of this type is flatly
inconsistent with the fact that the Zhang family has recently filed a wrongful death
lawsuit in this Court alleging that Ms. Zhang is deceased and that Mr. Christensen
caused her death. *See Deneen v. Miebach et al.*, No. 19-cv-02149-CSB-EIL ECF No. 1 (C.D.
Ill.). The Court should therefore preclude such testimony prior to the commencement of
the penalty phase.

## VI.   VICTIM IMPACT TESTIMONY SHOULD BE LIMITED TO MEMBERS OF MS. ZHANG'S FAMILY

The government should be permitted to present victim impact testimony from
members of Ms. Zhang's family only, and not from her "friends" as the government
proposes. Additionally, testimony regarding Ms. Zhang's "relationships with . . .
friends, colleagues, other students, and faculty" should be excluded. Both the Supreme
Court's decision in *Payne* and the language of the FDPA limit victim impact testimony
to the victim's family, not third parties or the community at-large. *See Payne*, 501 U.S. at

825; 18 U.S.C. §3593(a)[1]. As the Tenth Circuit observed in *United States v. Fields*, 516 F.3d 923, 946-47 (10th Cir. 2008), extending the limits of victim impact testimony beyond close familial relationships is unworkable:

> Including the community in the victim-impact inquiry is fraught with complication. It would involve not just the incremental extension from family to friends (and even to co-workers), but radical change in perspective: replacing a close-in focus on persons closely or immediately connected to the victim with a wide view encompassing generalized notions of social value and loss. Even if justified in principle, such an approach would be difficult to delimit and police to ensure it stayed within proper bounds.

*Id.* [2] Although those beyond Ms. Zhang's family undoubtedly mourned her loss, law and practicality require the Court to limit victim impact testimony to family members.

## VII.  EXHIBITS SUCH AS MS. ZHANG'S PERSONAL JOURNAL SHOULD BE EXCLUDED

The government has given notice that it intends to introduce "[p]hotographs, video, journals, essays, or other documentation" as part of its victim impact presentation.  5/18/2018 Ltr. From Govt. to Def. Mr. Christensen has not been informed as to which video, essays or other documentation the government will seek to introduce and thus, as described more fully below, he is not in a position to meaningfully address the admissibility of such items. He has, however, been furnished with a copy of Ms.

---

[1]Section 3593(a) reads:  "The factors for which notice is provided under this subsection may include factors concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information."

[2]Other circuits have permitted this testimony, though without the careful analysis of *Fields*. *See United States v. Whitten*, 610 F.3d 168, 187-190 (2d Cir. 2010); *United States v. Runyon*, 707 F.3d 475, 500-01 (4th Cir. 2013); *United States v. Lawrence*, 735 F.3d 385, 406 (6th Cir. 2013); *United States v. Mikhel*, 889 F.3d 1003 (9th Cir. 2018).

Zhang's personal journal and respectfully submits that this item is unduly prejudicial and should be excluded from evidence at the penalty phase.

Courts have found prejudicial the introduction of victims' writings as victim impact evidence. In *Washington v. State*, 989 P.2d 960, 977-78 (Okla. Crim. App. 1999), the Oklahoma Court of Criminal Appeals recognized that, even though a letter written by the victim may have reflected some of her personal characteristics, it exceeded the scope of proper victim impact evidence because it did not directly address the effect of the crime on her family members. And, in *Malone v. State*, 168 P.3d 185, 209 (Okla. Crim. App. 2007), the court found impermissible the reading aloud of cards written by the victim as unnecessarily cumulative of other evidence.

A special danger of presenting a first-person narrative by the victim is that it is likely to result in a dramatic reenactment, with the script in the victim's own words and the acting by a grieving family member. This creates an emotional environment that overtakes any probative value of the journals. *See State v. Dehaney*, 803 A.2d 267, 280 (Conn. 2002) (recognizing "heightened potential for prejudice" in "allowing surrogates to speak for the victim pointing back from the grave") (internal citation omitted). Considering the other victim impact evidence available to the government, presentation of Ms. Zhang's lengthy journal is unnecessary and carries with it the risk of injecting substantial prejudice.  *See Malone*, 168 P.2d at 210-11 (observing that victim impact testimony covering 36 pages of transcript was more than enough to provide a "quick glimpse" of the victim).

**VIII.   DISCOVERY IS REQUIRED TO PREVENT PREJUDICIAL ERROR IN THE PRESENTATION OF VICTIM IMPACT TESTIMONY IN THIS CASE**

The government's description of the victim impact evidence they intend to introduce includes "Christensen's admissions as to victim impact." Mr. Christensen's statements are, obviously, not "victim impact testimony." The defense and Court are left to speculate about what victim impact evidence the government intends to present regarding statements made by Mr. Christensen. Does the government intend to elicit testimony from Ms. Zhang's family members about their emotional reaction to or the feelings that were elicited when they read, heard, or were informed about statements made by Mr. Christensen? Or does the government intent to ask victim family members to opine about or share their feelings about Mr. Christensen, statements made by Mr. Christensen, their assessment or judgment of Mr. Christensen's mental state and expressions of remorse or lack thereof, or the manner in which Mr. Christensen described committing the offense? As noted above, this type of testimony is highly objectionable and is precluded by *Payne v. Tennessee*, 501 U.S. 808 (1991).

It is respectfully submitted that the only effective means to ensure Ms. Zhang's family is given an opportunity to testify regarding Ms. Zhang's "uniqueness as an individual human being" and to also ensure that the testimony does not stray into improper areas regarding Mr. Christensen or the offense (and thereby resulting in a fundamentally unfair trial violating the Eighth Amendment and the Due Process Clause), is to require the government provide written proposed victim impact statements for pretrial review by the Court and parties. The need for this preview of the

victim impact testimony is further necessary here because it is anticipated that some family members will be testifying in their native language, Mandarin, and the process of interpretation between English and Madarin and then from Madarin to English creates additional risk of misunderstanding of questions, instructions, and legal direction regarding the appropriate scope and content of the family's testimony.

Several reported cases approve the practice of requiring written statements in advance and discuss other precautionary techniques that would be well advised in a case like Mr. Christensen's, which has evoked great emotion and public attention:

- *United States v. Henderson*, 485 F. Supp. 2d 831, 849-850 (S.D. Ohio 2007): Court reviewed proposed victim-impact statements, redacted them, and had witnesses read them to jury without deviation. Government agreed to instruct witnesses to refrain from excessive emotion.

- *United States v. Glover*, 43 F. Supp. 2d 1217, 1221-22 (D. Kan. 1997): Court agreed to strictly limit victim impact by requiring that: all testimony be reduced to writing, which court will review in advance; victim's family be informed by court that they may not testify if unable to contain emotions; and court will remind witnesses that they may not present characterizations or opinions about the defendant, the crime, or the appropriate sentence. Court declines defendant's request that witnesses be permitted only to read their previously approved testimony.

- *United States v. Solomon*, 513 F. Supp. 2d 520, 535 (W.D. Pa. 2007): Court directed government to provide preview of victim-impact evidence it intended to offer at

13

trial so court could carefully review it and exclude evidence that is more prejudicial than probative.

The case of *United States v. Johnson*, 713 F. Supp. 2d 595, 624, 628 (E.D. La. 2010), demonstrates the importance of the Court's involvement in controlling victim impact evidence. There, the court was forced to grant a new trial after the "heart-wrenching" testimony of the widow of a slain police officer, who read a written statement containing "legally inadmissible portions," while clutching a teddy bear dressed in a law enforcement uniform. In so doing, the court commented on the importance of discovery procedures in preventing such error: "If the original statement or revised version from the widow been disclosed as required, the defense would have objected and the statement would have been edited so as not to contain erroneous comment." *Id.* at 629.

In addition to this request for written victim impact statements from each proposed witness, Mr. Christensen renews his request for an exhibit list and copies of all proposed exhibits. Without that information Mr. Christensen is prevented from raising objections to the material that may well be necessary to protect his constitutional rights.

The Court last considered Mr. Christensen's discovery requests for victim impact information several months before trial, in April, 2019. On the eve of the penalty phase, reconsideration is appropriate. Indeed, the Federal Death Penalty Resource Counsel Project has informed counsel that it is the practice in the majority of federal capital cases for courts to require discovery regarding victim impact evidence prior to

commencement of the penalty phase. Recent trials in which pre-penalty phase discovery occurred include: *United States v. Dzhokhar Tsarnaev*, 1:13-cr-10200-GAO-1 (D. Mass.); *United States v. Dylann Roof*, 2:15-cr-00472-RMG-1 (D.S.C.); *United States v. Jesse Con-Ui*, 3:13-cr-00123-ARC-1 (M.D. Pa.); and *United States v. Ricky Fackrell*, 1:16-cr-00026-MAC-ZJH-2 (E.D. Tex.). This practice recognizes, and serves to guard against, the particular dangers inherent in presentation of victim impact evidence.

In accord with *Booth* and *Bosse*, the Court should preclude family members from testifying that their sense of loss or their pain has been exacerbated because they have been reflecting on:

the pain and fear the victim experienced during her victimization (sexual assault and torture, and perhaps the details they have learned from the government, news reports, trial - e.g. restraints, stabbing in neck, struck on head with baseball bat, decapitation),

the manner in which the victim was abducted, assaulted, and killed, or

the manner in which the defendant disposed of the victim's remains and the fact that they have not been located or recovered.

WHEREFORE, the Defendant respectfully requests that this Motion be granted and that the Court order the government to disclose the aforementioned information so that Mr. Christensen can adequately challenge it; hold a hearing on the propriety of the government's proffered victim impact evidence; and rule on the admissibility of such prior to the commencement of the penalty phase.

Respectfully submitted,

 /s/Elisabeth R. Pollock
Assistant Federal Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org

/s/ George Taseff
Assistant Federal Defender
401 Main Street, Suite 1500
Peoria, IL 61602
Phone: 309-671-7891
Fax:    309-671-7898
Email: George_Taseff@fd.org

/s/ Robert Tucker
Robert L. Tucker, Esq.
7114 Washington Ave
St. Louis, MO 63130
Phone: 703-527-1622
Email: roberttuckerlaw@gmail.com

/s/ Julie Brain
Julie Brain, Esq.
916 South 2nd Street
Philadelphia, PA 19147
Phone: 267-639-0417
Email: juliebrain1@yahoo.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 25, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorneys Bryan D. Freres and Eugene L. Miller. A copy was also mailed to the defendant.

/s/Elisabeth R. Pollock
Assistant Federal Public Defender
300 West Main Street
Urbana, IL  61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org