UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Crim. No. 17-20037 |
| ) | |
| BRENDT A. CHRISTENSEN, ) | |
| ) | |
| Defendant. ) | |

## RENEWED MOTION TO STRIKE NON-STATUTORY AGGRAVATING FACTOR OF "VULNERABILITY OF VICTIM"

NOW COMES the Defendant, BRENDT A. CHRISTENSEN, by and through his attorneys, and respectfully moves the Court to Strike the Non-Statutory Aggravating Factor of "Vulnerability of Victim" pursuant to the Fifth Amendment Due Process Clause, the Eighth Amendment prohibition on cruel and unusual punishment and the Federal Death Penalty Act. In support of this Motion, Mr. Christensen states as follows:

**I.   Procedural History**

On July 12, 2017, Defendant BRENDT A. CHRISTENSEN was charged by Indictment with one count of kidnapping in violation of 18 U.S.C. § 1201(a)(1). (R. 13) A Superseding Indictment was filed on October 3, 2017, alleging one count of kidnapping resulting in death in violation of 18 U.S.C. § 1201(a)(1) and two counts of false statements in violation of 18 U.S.C. § 1001(a)(2). The Superseding Indictment also contained a Notice of Special Findings listing four gateway intent factors under 18

1

U.S.C. § 3591(a)(2) and three statutory aggravating factors under 18 U.S.C. § 3592(c): that Y.Z.'s death occurred during the commission of a kidnapping (Section 3592(c)(1)); that the defendant committed the offense in an especially heinous, cruel or depraved manner (Section 3592(c)(6)); and that the defendant committed the offense after substantial planning and premeditation (Section 3592(c)(9)). (R. 26.)

Count 1 of the Superseding Indictment was a death-eligible charge, and on January 19, 2018, the government filed its Notice of Intent to seek the death penalty (NOI). (R. 54.) The NOI re-alleged the four intent factors as well as the three statutory aggravating factors contained in the Superseding Indictment, and added six non-statutory aggravating factors: victim impact evidence, future dangerousness, lack of remorse, other serious acts of violence, vulnerable victim, and obstruction of justice. (R. 54.)

II.    **Argument**

In the NOI, the government has alleged that "[t]he victim, Y.Z., was particularly vulnerable due to her small stature and limited ability to communicate in English." (R. 54) Notably, the government did not allege the statutory aggravating factor of vulnerability of the victim, which requires that the victim be particularly vulnerable due to old age, youth, or infirmity. 18 U.S.C. § 3592(c)(11). Instead, it couches the vulnerability in terms related to Ms. Yhang's alleged a) small size and b) linguistic capability. For the reasons stated below, the aggravating factor should be stricken.

2

### A. The two components alleged as the victim's vulnerabilities, small stature and alleged limited English capability, are vague and overbroad.

Mr. Christensen continues to object to this non-statutory aggravating factor on the grounds that it is unconstitutionally vague and overbroad. *See* (R. 105), incorporated by reference as if fully set forth herein. He, of course, understands that the Court has previously declined to strike the aggravating factor on those bases. (R. 310 at 17-19.)

### B. Neither small stature nor alleged limited English capability have any nexus to the crime and the aggravating factor should therefore be stricken.

The plain language of the government's proposed non-statutory aggravating factor, as with its statutory counterpart, requires that there be a nexus between the alleged vulnerability and the particular crime to which the victim actually succumbed. In other words, the alleged "vulnerability" must have in fact rendered the victim "particularly vulnerable" given the circumstances under, and means by, which the crime was allegedly committed. *See United States v. Johnson*, 136 F. Supp. 2d 553, 560 (W.D. Va. 2001) (granting defendant's motion to strike vulnerable victim aggravator due to lack of nexus between victim's vulnerability, i.e. pregnancy, and the victim's death by an explosive device because "nothing about Ms. Baker's physical condition weakened her capacity to resist the fatal blast"); *United States v. Jacques*, No. 2:08-cr-117 at 53-54 (D. Vt. May 4, 2011) (holding that "in order for an aggravating factor alleging that the victim was vulnerable to be put before a jury, there must be a 'connection between the victim's vulnerability and the offense committed upon the victim'")

(quoting 1 Leonard Sand, *Modern Federal Jury Instructions*, ¶ 9A.14); *United States v. Savage*, No. 2:07-cr-550 at 16-17 (E.D. Pa. May 10, 2013) (same).

Cases in which a sufficient nexus between the vulnerability and the crime has been found to exist include: *United States v. Mikos*, 539 F.3d 706, 717 (7th Cir. 2008) (upholding vulnerable victim aggravator where victim "was immobile and could neither run nor fight back when an intruder broke into her apartment"); *United States v. Sampson*, 486 F.3d 13, 49 (1st Cir. 2007) (upholding vulnerable victim aggravator where victim had had a quintuple bypass, was overweight and had difficulty walking very far because "he would have had a more difficult time escaping from his assailant than the average person"); *United States v. Paul*, 217 F.3d 989, 1001 (8th Cir. 1999) (upholding vulnerable victim aggravating factor where victim was 82 years old and less physically able to resist his attackers); *Jacques*, No. 2:08-cr-117 at 54 (holding that evidence including "text messages allegedly used to lure [12 year-old victim] the Defendant's house by telling her there was to be a pool party there and that a boy she was fond of would attend" alleges "a sufficient nexus between the victim's youth and the offense of kidnapping resulting in death").

1. **Ms. Zhang's Alleged Small Stature Lacks Any Nexus to the Crime**

No evidence, much less proof beyond a reasonable doubt, has been presented to show that Ms. Zhang's stature contributed to her kidnapping or death. Indeed, at 5'4" Ms. Zhang's stature is precisely average for a woman in the United States. *See* https://www.cdc.gov/nchs/fastats/body-measurements.htm. Accordingly, by

definition Ms. Zhang would not have "had a more difficult time escaping from [her] assailant than the average person." *Sampson*, 486 F.3d at 49. *See also United States v. Esterman*, 324 F.3d 565, 573-74 (7th Cir. 2003) (holding that district court erred in applying vulnerable victim enhancement under sentencing guidelines in absence of evidence that victim "had a lower than normal ability to protect himself"); U.S.S.G. 3A1.1 cmt. n.2 (noting that enhancement for vulnerable victim under Guidelines applies only when victim "*unusually* vulnerable" or "*particularly susceptible* to the criminal conduct") (emphases added); *United States v. Scott*, 529 F.3d 1290, 1300 (10th Cir. 2008) (noting that [t]he theory behind the vulnerable victim enhancement is that conduct against the particular victim . . . is more blameworthy than the conduct of other offenders and thus deserves greater punishment," so it applies where "victim is less able to resist than the typical victim and requires greater societal protection") (internal quotations omitted).

    Moreover, the evidence has shown that the kidnapping in this case was effected by some sort of deception, or inveigling, and not by physical force. As the government argued in closing at the conclusion of the culpability phase: "Decoy generally means to lure or entice a person away from an intended course into perhaps a trap. And that's exactly what the defendant did here. Yingying Zhang, her intended course was to catch the 22 Limited bus on the way to One North, but the defendant lured her into his car, with the offer of a ride and began driving away." Tr. Trans. 6/24/19 Vol. 16A at 90-91.

    The government further argued: "Inveigled means to persuade someone to do

5

something by means of deception. We know that the defendant deceived her in a couple ways. First, he no doubt led her to believe that he would take her to One North, when he had no intention of doing that. Moreover, he persuaded her that it was safe for her to get in the car with him by pretending to be a police officer and showing a badge." *Id.* at 91. Plainly, then, Ms. Zhang's average physical stature played no special role in the offense and this aspect of the non-statutory aggravating factor must be stricken.

### 2. Ms. Yhang's Alleged Limited English Capacity Lacks Any Nexus to the Crime

Similarly no evidence, much less proof beyond a reasonable doubt, has been presented to show that Ms. Zhang's allegedly limited English language ability contributed to her kidnapping or death. *See Esterman*, 324 F.3d at 573-74 (holding that district court erred in applying vulnerable victim enhancement under sentencing guidelines in wire fraud case where, despite limited language capacity, there was no evidence that victim had lower than normal ability to protect himself). Indeed, as the government's closing argument demonstrates, the kidnapping affirmatively depended upon Ms. Zhang's ability to understand English – unless it could be communicated to her that she was being offered a ride to her appointment, and that it was safe to accept the offer because the driver was a police officer, the attempt to lure her into the car would have failed. In no sense, then, did a lack of ability to comprehend English contribute to the offense.

It is certainly possible to imagine cases in which a victim's limited English ability could render her vulnerable to becoming a victim of a crime. For example, in *United States v. Johnson*, 874 F. 3d 990, 1003-04 (7th Cir. 2017), the court upheld the enhancement of the defendants' sentences for crimes including wire fraud under the "vulnerable victim" enhancement contained in the United States Sentencing Guidelines § 3A1.1(b)(1). The defendants had engaged in fraudulent real estate transactions with 14 families who spoke little or no English. *Id.* The court found that the victim's lack of English was one of the factors that rendered them particularly vulnerable to being defrauded in such a manner. *Id. See also United States v. Monsalve*, 342 Fed. Appx. 451 (11th Cir. 2009) (upholding enhancement where victims were particularly vulnerable to being forced into prostitution due to, inter alia, their limited ability to speak English and lack of family or another place to live). This, however, is not such a case.

    **C.**    **The government has failed to prove beyond a reasonable doubt that Y.Z. struggled to communicate in English, therefore this aspect of the non-statutory aggravating factor should be stricken.**

In addition to being irrelevant to the crime, the government has failed to prove beyond a reasonable doubt that Ms. Zhang in fact had only a limited ability to communicate in English. Ms. Zhang was employed by the University of Illinois as a visiting scholar in the Department of Natural Resources and Environmental Science. Her tenure here was part of the J-1 Program administered by the U.S. State Department, which allows international scholars to conduct research or teach at sponsoring institutions. Prior to entering the United States, any J-1 scholar must meet certain

7

guidelines for English Language Proficiency. The University of Illinois Guidelines for Assessment of English Language Proficiency state as follows:

> Effective January 5, 2015, the Department of State will require program sponsors to assess *and document* the English language proficiency of each incoming J scholar before issuing a DS-2019 for him or her . . . At UIUC, the faculty host is required to conduct the English assessment unless there are extenuating circumstances, in which case the assessment may be conducted by the department head. As part of the DS-2019 application, the faculty host must provide information about and documentation of the assessment, and confirm that the prospective scholar has sufficient proficiency in the English language to successfully participate in his or her program and to function on a day-to-day basis in the United States.
>
> https://isss.illinois.edu/.../j1_english_proficiency_guidelines.pdf (last visited 8/7/2018) (emphasis added).

Ms. Zhang's professor and supervisor at the University of Illinois, Kaiyu Guan, testified during the culpability phase that "I think her English was good." Tr. Trans. 6/12/19 Vol. 8B at 140. He further testified that he had confirmed to the FBI in a recent interview that Ms. Zhang had above average English skills, a fact that was important to him in making the decision to hire her as he only speaks English to the students in his lab. *Id.* at 141. Accordingly, the "limited ability to communicate in English" component of the non-statutory vulnerable victim aggravating factor should be stricken for this reason also.

> **D.    The government has failed to prove beyond a reasonable doubt that Mr. Christensen had any prior knowledge of Ms. Zhang's alleged limited English ability, therefore this aspect of the non-statutory aggravating factor should be stricken.**

8

In order for it to have any relevance to the jury's determination of the appropriate punishment for Mr. Christensen, it must be proven beyond a reasonable doubt that Ms. Zhang's alleged limited English ability was known to him at the time he targeted her and decided to commit the crime. *See* U.S.S.G. 3A1.1(b)(1) (providing for enhancement of federal criminal sentence where "the defendant knew or should have known that a victim was a vulnerable victim"). Absent such a requirement of scienter, this non-statutory aggravating factor is based upon the "mere happenstance" that Ms. Zhang allegedly turned out to have less than perfect English language skills and thus it fails to provide a reasonable basis upon which to distinguish those who receive the death penalty and those who do not in violation of the Eighth Amendment. *See Arave v. Creech*, 507 U.S. 463, 474 (1993).

No proof of the requisite knowledge, much less proof beyond a reasonable doubt, has been presented in this case. There is no evidence that Mr. Christensen had ever previously met Ms. Zhang or had any other possible source of information regarding her language skills. Accordingly, the language component of this aggravating factor should be stricken on this ground also.

**E.  Should the aggravating factor not be stricken, the Court should issue an instruction to the jury stating the appropriate standard to consider in sentencing.**

A proposed instruction governing victim vulnerability is attached hereto as Exhibit A.

WHEREFORE, Defendant requests that this Court strike the non-statutory aggravating factor of "Vulnerability of the Victim" for the reasons stated herein.

Respectfully submitted,

/s/Elisabeth R. Pollock
Assistant Federal Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org

/s/ George Taseff
Assistant Federal Defender
401 Main Street, Suite 1500
Peoria, IL 61602
Phone: 309-671-7891
Fax:    309-671-7898
Email: George_Taseff@fd.org

/s/ Robert Tucker
Robert L. Tucker, Esq.
7114 Washington Ave
St. Louis, MO 63130
Phone: 703-527-1622
Email: roberttuckerlaw@gmail.com

/s/ Julie Brain
Julie Brain, Esq.
916 South 2nd Street
Philadelphia, PA 19147
Phone: 267-639-0417
Email: juliebrain1@yahoo.com

CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorneys Bryan D. Freres and Eugene L. Miller and Trial Attorney James B. Nelson. A copy was also mailed to the defendant.

/s/Elisabeth R. Pollock
Assistant Federal Public Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org

Question ** asks whether it's been proven to each and every one of you beyond a reasonable doubt that Yingying Zhang was particularly vulnerable due to small stature and limited ability to communicate in English. In essence, the Federal Death Penalty statute provides that a defendant is especially blameworthy if he murders someone who is particularly vulnerable to being killed because he has an infirmity which made him less able to escape or resist attack than most people. In this context, to be vulnerable means to be subject to subject to criminal conduct because of some weakness. To be particularly vulnerable means to be especially or significantly vulnerable or to be vulnerable to a particularly high degree.

The particular infirmities alleged by the government in this case are Ms. Zhang's alleged small stature and limited ability to communicate in English. To prove this aggravating factor, it must be proven beyond a reasonable doubt to each and every one of you that Ms. Zhang in fact had these infirmities. It must further be proven beyond a reasonable doubt that there was a connection between Ms. Zhang's alleged infirmities and her death. This means that any infirmity which you find made Ms. Zhang particularly vulnerable must somehow have contributed to her death.

EXHIBIT A - PROPOSED INSTRUCTION