UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BRENDT A. CHRISTENSEN, )<br>)<br>Defendant. ) | Case No. 17-20037 |

**UNITED STATES OF AMERICA'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO PRECLUDE THE GOVERNMENT FROM REPLAYING THE RECORDINGS FROM THE VIGIL WALK IN PENALTY**

COMES NOW the United States of America, by John C. Milhiser, United States Attorney for the Central District of Illinois, and Eugene L. Miller and Bryan D. Freres, Assistant United States Attorneys, and James B. Nelson, Department of Justice Trial Attorney, and hereby offers its response to the defendant's Motion *in Limine* to Preclude the Government From Replaying the Recordings from the Vigil Walk in Penalty [Phase]. (R.409) For the reasons stated herein, defendant's motion should be denied.

**BACKGROUND**

On October 3, 2017, the grand jury returned a superseding indictment charging the defendant with kidnapping resulting in Ms. Zhang's death, and two counts alleging that he made false statements to FBI agents investigating her kidnapping. (R.26) The superseding indictment also alleged four threshold intent factors, and three statutory aggravating factors. (R.26) The statutory aggravating factors alleged therein include that

1

Yingying Zhang's death occurred during the commission of kidnapping; that the defendant committed the offense in an especially heinous, cruel or depraved manner, in that it involved torture or serious physical abuse to the victim; and the defendant committed the offense after substantial planning and premeditation. (R.26)

On January 19, 2018, the United States filed its notice of intent to seek the death penalty (hereinafter "NOI"). (R.54) In addition to the threshold intent factors and statutory aggravating factors contained in the superseding indictment, the NOI also alleged multiple non-statutory aggravating factors. (R.54) Five of the alleged non-statutory aggravating factors are still at issue: (1) victim impact evidence; (2) future dangerousness of the defendant; (3) lack of remorse; (4) vulnerability of the victim; and (5) obstruction. (R.54)

The defendant's trial started on June 3, 2019. (d/e 06/03/2019) On June 24, 2019, the jury found the defendant guilty on all three counts of the superseding indictment. (d/e/ 06/24/2019) Following the verdict, the Court delayed the penalty phase for two weeks, to July 8, 2019, over the United States' objection.

## ANALYSIS

In his motion, the defendant seeks to prevent the United States from playing the Memorial Walk recording (Exhibit 29) during the penalty phase. The defendant argues playing the recording during the penalty phase would be "more prejudicial than probative." The recording has already been admitted into evidence and published without objection. For the reasons discussed herein, the defendant's motion should be denied.

Once a defendant charged with a capital crime is found guilty in the initial guilt-determination phase, capital cases proceed to a penalty phase. The Federal Death Penalty Act's (hereinafter "FDPA") penalty phase process requires the jury to first determine the defendant's eligibility for a death sentence and then select the appropriate sentence. *See Jones v. United States*, 527 U.S. 373, 376-79 (1999) (summarizing FDPA sentencing process); *United States v. Runyon*, 707 F.3d 475, 486-87 (4th Cir. 2013) (same).  The eligibility determination involves finding at least one threshold intent factor set forth in 18 U.S.C. § 3591(a)(2), and at least one of the sixteen statutory aggravating factors enumerated in 18 U.S.C. § 3592(c).  These factors render a defendant eligible to receive a greater sentence than the jury's guilty verdict alone would permit. As such, they are functionally equivalent to elements of an offense, and they must be both presented to the grand jury for inclusion in the indictment, and found by the petit jury unanimously and beyond a reasonable doubt.  *United States v. Higgs*, 353 F.3d at 281, 298 (4th Cir. 2003).

The United States has alleged three statutory aggravating factors, and five non-statutory aggravating factors. As noted, the United States must prove all of those factors beyond a reasonable doubt during the penalty phase. Exhibit 29 relates, in some fashion or another, to all of the aggravating factors the United States must prove. While the recording was played in its entirety at trial on June 14, and then parts were replayed using limited clips with a witness to clarify that witness's understanding and observations of the statements, the issues in the penalty phase are different from the guilt phase.

For example, the United States was required to prove certain elements during the guilt phase in order to satisfy the elements of Count One, namely that the defendant held the victim and that the kidnapping resulted in her death. During the penalty phase, the United States will be required to prove beyond a reasonable doubt that the crime was committed in a heinous, cruel, or depraved manner, that the defendant lacks remorse, that the defendant poses a risk of future dangerousness, and that the defendant obstructed the investigation. On other words, Exhibit 29 is important in each phase for different reasons, and the manner in which the parties will address and argue the recording will be different.

The defendant also objected to the jury reviewing the recordings or the transcripts during deliberations. After the verdict was returned, the Court delayed the penalty phase for two weeks at the defendant's request and over the United States' objection. By the time the penalty phase begins on July 8, 2019, it will have been over three weeks since the jury heard Exhibit 29 in its entirety. Forcing the jury to rely entirely on their memory for the nuances of an approximately 90-minute recording would limit their ability to meaningfully consider the evidence. *See Runyon*, 707 F.3d at 491 (noting that while a defendant in a capital case "may wish to severely cabin the jury's sentencing discretion by restricting the evidence it may hear and the inferences it may draw, the FDPA anticipates that the jury will confront a broad array of information and enjoy considerable leeway in assessing it.").

Limiting the presentation of evidence would also prejudice the United States in its ability to prove the statutory and non-statutory aggravating factors. *Id.* at 492

(noting courts "must avoid constraining unduly the prosecutor's ability to paint a complete picture of the defendant's crime and character, less the jury be less than fully and amply informed.").

Exhibit 29 has already been admitted into evidence. The defendant did not object to its admission or publication during the guilt phase. Any argument that the recording constitutes unfair prejudice is without merit or support. While evidence of the torture inflicted by the defendant on the victim is prejudicial, it is not unfairly so – the United States is required to prove the heinous and cruel nature of the defendant's crime beyond a reasonable doubt. *See Brogdon v. Butler*, 824 F.2d 338, 342 (5th Cir. 1987) (rejecting argument that admission of graphic photos in both guilt and penalty phases prejudiced defendant because the photos were relevant to heinousness aggravating factor, and "[i]f such photographs were concededly relevant and properly admitted at the guilt phase of petitioner's trial, then we cannot find that those and other similar photographs were improperly admitted at the sentencing phase[.]").

The defendant cites an unpublished decision from *United States v. Con-ui* for the proposition that the United States should not be allowed to play a graphic recording in both the guilt and penalty phases.[1] In *Con-ui*, the video recording in question showed

---

[1] Without analysis or discussion, the defendant also cites *United States v. Bailey*, 840 F.3d 99, 121-22 (3d Cir. 2016). *Bailey* is distinguishable from the facts of this case. In *Bailey*, the defendant was charged with a non-capital drug conspiracy, and the court excluded a graphic murder video where an individual shot someone in the head and casually rode away while a child left a building and saw the person dying. The *Bailey* court concluded the government had "introduced abundant evidence to prove the James murder and its relationship to the charged drug conspiracy" without the video. *Id.* at 122. In other words, "[t]he government had alternate, less prejudicial ways of presenting the James

Con-ui stabbing a prison guard approximately 200 times. While the defendant cites *Con-ui* as support for his request, his description of the case is incomplete. In *Con-ui*, the court allowed the government to play the graphic video in its entirety in the guilt phase, and to present clipped photographs from the video during the penalty phase in order to prove specific aggravating factors. *See United States v. Con-ui*, No. 3:13-CR-123, 2017 WL 783437, at *6 (M.D. Pa. Mar. 1, 2017) (noting a district court "is not required to scrub the trial clean of all evidence that may have an emotional impact[,]" and that the photographs "have particular probative value in light of the aggravating factors[.]"). While the United States does not agree with the *Con-ui* ruling, even *Con-ui* does not support the defendant's extreme request. The *Con-ui* court recognized the United States must be allowed to present evidence of its aggravators. In this case, the recording at issue includes a verbal description of the murder. This is less prejudicial, *per se*, than a video recording of the murder itself. Further, unlike a video recording, there is no way to present the evidence is a less graphic way.

Moreover, the United States does not intend to play Exhibit 29 in its entirety during the penalty phase. Instead, like in *Con-ui*, the United States intends to play clips that relate specifically to aggravating factors that the United States must prove beyond a reasonable doubt. The United States also will not play all of the clips that were played

---

murder[,]" which "reduced the probative value" of the video. *Id.* Not only does *Bailey*, as a non-capital case, not address the current situation, it does not support the defendant's argument. There is no "alternate, less prejudicial way[]" of understanding the full nature of the defendant's actions in this case without Exhibit 29, as the defendant's statements provide the context for the remainder of the evidence.

with Ms. Bullis, and those that would be replayed have been shortened to relate specifically to the issues for the penalty phase.

WHEREFORE, the United States respectfully requests that the Court deny Defendant Brendt Christensen's Motion in Limine to Preclude the Government From Replaying the Recordings from the Vigil Walk in Penalty [Phase]. (R.409)

Respectfully submitted,

JOHN C. MILHISER
UNITED STATES ATTORNEY

*/s/Eugene L. Miller*
Eugene L. Miller
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone: 217/373-5875
Fax: 217/373-5891
eugene.miller@usdoj.gov

*/s/ James B. Nelson*
James B. Nelson
Trial Attorney
Capital Case Section
United States Department of Justice
1331 F. Street NW, Room 625
Washington, DC  20004
Phone: 202/598-2972
james.nelson@usdoj.gov

*/s/Bryan D. Freres*
Bryan D. Freres
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone: 217/373-5875
Fax: 217/373-5891
bryan.freres@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on June 27, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

*/s/Bryan D. Freres*
Bryan D. Freres
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone: 217/373-5875
Fax: 217/373-5891
bryan.freres@usdoj.gov
