UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>BRENDT A. CHRISTENSEN, )<br>)<br>Defendant. ) | Case No.17-20037 |

**MOTION TO PRECLUDE IMPROPER CROSS-EXAMINATION OR REBUTTAL OF TESTIMONY OF DR. JONATHAN SORENSEN WITH IRRELEVANT AND/OR PREJUDICIAL ANECDOTAL EVIDENCE, OR FOR DISCOVERY AND A HEARING CONCERNING ADMISSIBILITY OF SUCH EVIDENCE**

**I. Background**

Paragraph III-2 of the Notice of Intent to Seek a Sentence of Death, Dkt. 54, alleges that Mr. Christensen "is likely to commit criminal acts of violence in the future that would constitute a continuing and serious threat to the lives and safety of others." Because the only alternative to death is a sentence of life without release, thus requiring that Mr. Christensen's future dangerousness be assessed through the lens of a lifetime of incarceration, *see Shafer v. South Carolina,* 532 U.S. 36 (2001)(in considering issue of future dangerousness, jury must be instructed that alternative to death sentence is life without parole); *Simmons v. South Carolina*, 512 U.S. 154 (1994); *Lynch v. Arizona*, 136 S. Ct. 1818 (2016) (due process right to *Simmons* instruction on parole ineligibility), on February 20, 2019, the defense provided the government notice that it intended to call an expert to rebut this aggravating factor.

1

The notice informed the government that Dr. Jonathan Sorensen will testify concerning studies and data which, *inter alia*, demonstrate the low base rates of violence in the Bureau of Prisons, as well as other factors, similarly suggesting the improbability of Mr. Christensen committing acts of violence in prison, constituting such "a continuing and serious threat." The notice referenced several published articles, authored by Dr. Sorensen, which had been previously cited in Mr. Christensen's *Motion to Strike Aggravating Factor Alleging Future Dangerousness*, Dkt. 122, at 7-8, n. 2-4, and offered to provide copies of the same upon request.[1] In response to the government's motion to exclude this evidence, *see* Dkt. 265, the defense noted that the Sorensen evidence was admissible both to rebut the future dangerousness aggravator, *see* Dkt. 290, at 6-11, and as affirmative evidence of mitigation. *Id*. at 12-14. After a hearing, the Court overruled the government's objection to the contemplated testimony of Dr. Sorensen. *See* Transcript 4-8 (Sealed), at 26-27.[2]

In response to the government's motion to exclude Dr. Sorensen, the defense

---

[1] Approximately three months later, the government requested copies of these and any other articles Dr. Sorensen may have relied upon in preparing his testimony. On May 16, 2019, copies of 39 such articles were provided to government counsel. At the same time, government counsel represented that in the event of determining to call an expert to rebut Dr. Sorensen's testimony, the government would provide copies of whatever articles or studies upon which the rebuttal expert relies. As noted below, government counsel has indicated they do not intend to call an expert to rebut Dr. Sorensen.

[2] The Court left the door open for the government to raise any additional objections after receipt of Dr. Sorensen's report/Power Point. The government filed a subsequent motion asserting that that Dr. Sorensen should not be permitted to reference a prison's ability to control inmate violence, alleging [without specification] that "some of his slides may broach" this topic. *See* Dkt. 333, at 4. Mr. Christensen responded that he did not intend to get into this topic during Dr. Sorensen's direct testimony and offered to discuss any legitimate concerns the government may have as to particular slides. *See* Dkt. 348, at 2. The government has never responded to this overture. At the same time, Mr. Christensen reserved the right to get into this area should it be opened up on cross-examination or rebuttal, *id*., at 3, an issue which may be presented, depending upon the government's ultimate approach to Dr. Sorensen's testimony.

noted that the government's remedy was not exclusion of the evidence but cross-examination and presentation of evidence rebutting his expected testimony.[3] Dkt. 290, at 8-9. Government counsel has recently informed the defense that the government does not intend to call an expert to rebut Dr. Sorensen while, suggesting without elaboration, that it contemplated a non-expert as rebuttal. This motion addresses the scope of cross-examination and rebuttal of Dr. Sorensen, as well as related discovery issues.

II.     **The Court Should Preclude Cross-Examination of Dr. Sorensen Beyond the Scope of His Direct Examination and Specifically Should Preclude Cross-Examination Concerning Specific Instances of Misconduct by Others in Prison**

In his response to the motion to exclude, Mr. Christensen presciently noted that the government would likely not attempt to rebut his evidence with other experts. "In reality, the base rate and other evidence which Dr. Sorensen will provide is basically uncontested and the government rarely embarks on a quixotic and ultimately pointless challenge to the statistical and demographic evidence which has been noticed and which it cannot successfully discredit." Dkt. 290, at 9. The Power Point summary of Dr. Sorensen's expected testimony provided the government on May 6, directly set out the substance of Dr. Sorensen's expected testimony, namely that in addition to the generally low base rate of violence in the Bureau of Prisons, published studies (many authored by Dr. Sorensen and his colleagues) indicate that several factors present in this case suggest Mr. Christensen is unlikely to present a significant risk of violence to others in the

---

[3] The government's motion to exclude suggested it was very familiar with the nature of Dr. Sorensen's expected testimony, as well as the basis of that testimony. *See* Dkt. 290, at 3-4. In addition, on May 6, 2019, the defense provided the government with a 58-page Power Point presentation outlining his expected testimony in this case.

future, including (1) the lower rate of violence engaged in by those serving sentences of life without release, as compared to base rates for other prisoners; (2) Mr. Christensen's age at the time of commitment; (3) Mr. Christensen's educational achievements; (4) Mr. Christensen's lack of affiliation with groups which pose additional security risks; (5) Mr. Christensen's lack of a criminal record; and (6) Mr. Christensen's adjustment during his incarceration.

The government has been aware of the substance of this expected testimony for over six weeks and thus should be in a position to provide notice at this time as to any witness it intends to call to rebut the same. Because such rebuttal witness is not an expert, and the government has neither requested a *Daubert* hearing nor taken issue with Dr. Sorensen's methodology, any rebuttal witness, as well as any cross-examination, is likely to focus on anecdotal evidence concerning violence in the Bureau of Prisons. In order to allow Mr. Christensen's counsel to properly address such evidence and to enable the Court to rule on evidentiary issues arising from the introduction of anecdotal evidence concerning prison violence, Mr. Christensen requests that the Court immediately order the government to provide notice of any rebuttal witness to Dr. Sorensen's expected testimony, as well as the substance of any anecdotal evidence concerning prison violence which the government intends to reference either through cross-examination of Dr. Sorensen or by rebuttal. Such notice is necessary to enable Mr. Christensen to effectively investigate and confront the significance and reliability of any such references during this capital sentencing proceeding.

(A) References to Specific Acts of Misconduct by Others is Irrelevant

Dr. Sorensen's testimony is research-based. He has not spoken to Mr. Christensen. As such, Dr. Sorensen is open to cross-examination concerning his testimony, the Power Point he produced and the 39 articles he relied on in preparing his testimony. He certainly can be cross-examined concerning the numbers of inmates who commit violent offenses in the Bureau of Prisons and, where applicable, general inquiry may be made concerning the significance of the applicable factors he has cited as suggesting it is highly unlikely Mr. Christensen will engage in violent conduct. Dr. Sorensen also may be cross-examined concerning factors applicable to Mr. Christensen's case that Dr. Sorensen has not cited or discussed.[4] But, the line must be drawn if the government intends to cross-examine (or reference in rebuttal) specific instances of violence by others in the Bureau of Prisons, or details concerning the same.

The general proposition is that violent acts by persons unrelated to the defendant and the charged offenses are not probative. This precept, coupled with the nature of such acts, suggests the evidence is unduly prejudicial, even if inhering some minimal relevance. *See United States v. Al-Moayad*, 545 F.3d 139 (2d Cir. 2008)(in material support case, court criticizes testimony of bus bombing unrelated to defendant); *see also United States v. Nelson-Rodriguez*, 319 F.3d 12, 35 (1st Cir. 2003) (trial court properly excluded impeachment evidence that government witness-informant had been involved in

---

[4]For instance, Mr. Christensen concedes that Dr. Sorensen may be cross-examined concerning whether his research has taken into account particular factors present in this case, although it is expected that his testimony will indicate that, other than an increased risk of violence *against* inmates convicted of certain crimes, there is no correlation between the nature of the offense and the risk of violence for defendants serving sentences of life without parole.

5

murders unrelated to the charged drug conspiracy); *United States v. Street*, 548 F.3d 618, 632 (8th Cir. 2008) (reversal where district court permitted "wide-ranging inquiry into the generic criminality and violent dispositions of gangs and their members," with whom the defendant had no connection, characterizing the testimony as "excessive, unduly prejudicial, and in great part completely irrelevant to the charged offenses."). These same principles have been applied to limit anecdotal testimony and similar references in capital cases. *See United States v. Sampson*, 335 F.Supp.2d 166, 227 (D. Mass. 2004) ("permitting only general testimony about the ability of the BOP to control inmates, including gross statistics regarding assaults and other misconduct, but did not permit testimony regarding specific other prisoners.").

Suggesting that the jury may infer Mr. Christensen's likelihood of future dangerousness because of specific acts of other inmates, as opposed to the general base rates of violence in prison and demographic evidence directly relevant to his status and situation, encourages a decision on an improper basis and raises a constitutionally unacceptable risk that the jury will find Mr. Christensen is likely to present a future danger because some other inmate engaged in a particular violent act at some time under unknown and likely irrelevant circumstances. It would be acceptable, for instance, for the government to cross-examine Dr. Sorensen or introduce rebuttal evidence that non-specific violent acts have been committed, for example, by older inmates, or educated inmates, or those unaffiliated with gangs or other risk groups. Indeed, Dr. Sorensen would readily admit this, as his testimony is not grounded in the idea that violence does not take place in prisons or is not, at times, associated with those

sharing the demographic characteristics that he cites as reducing the likelihood of such violence by Mr. Christensen. Thus, to the extent that the government wishes to challenge Dr. Sorensen's conclusions as to the whether the risk of violence is reduced by these factors, or by how much, this is fair game. But, to the extent the government wishes to reference specific acts of violence by other inmates, this type of prejudicial evidence rebuts nothing – Dr. Sorensen will freely admit on direct examination (or cross-examination) that violent acts obviously occur in prison (he will cite the statistics), and that they, at times, are committed by inmates sharing the same demographic characteristic(s) of Mr. Christensen. The proper function of rebuttal evidence is "to contradict, impeach or defuse the impact of the evidence offered by an adverse party." *See United States v. Grintjes*, 237 F.3d 876, 879 (7th Cir. 2001), *quoting United States v. Papia*, 560 F.2d 827, 848 (7th Cir.1977). In light of Dr. Sorensen's expected testimony, it is unlikely that anecdotal evidence of prison violence by others will satisfy this limitation.

**III.   Alternatively, the Court Should Require the Government to Immediately Disclose the Details of Any Specific Incident It Intends to Reference in Either Cross-Examination or Rebuttal, Including the Date and Location of Each Incident and Complete Case Histories of the Inmates and the Incidents**

In the event, the Court permits the government to reference anecdotal or specific incidents of violent acts by other inmates, Mr. Christensen's Fifth Amendment right to due process, Sixth Amendment right of confrontation and rights under both the Eighth Amendment and the Federal Death Penalty Act to a reliable capital sentencing hearing

require that such information be immediately provided in order for counsel to investigate the significance, or lack thereof, to Dr. Sorensen's testimony.

Respectfully submitted,

| | |
|---|---|
| /s/Elisabeth R. Pollock | /s/ George Taseff |
| Assistant Federal Defender | Assistant Federal Defender |
| 300 West Main Street | 401 Main Street, Suite 1500 |
| Urbana, IL 61801 | Peoria, IL 61602 |
| Phone: 217-373-0666 | Phone: 309-671-7891 |
| FAX:   217-373-0667 | Fax:    309-671-7898 |
| Email: Elisabeth_Pollock@fd.org | Email: George_Taseff@fd.org |
| | |
| /s/ Robert Tucker | /s/ Julie Brain |
| Robert L. Tucker, Esq. | Julie Brain, Esq. |
| 7114 Washington Ave | 916 South 2nd Street |
| St. Louis, MO 63130 | Philadelphia, PA 19147 |
| Phone: 703-527-1622 | Phone: 267-639-0417 |
| Email: roberttuckerlaw@gmail.com | Email: juliebrain1@yahoo.com |

CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorneys Bryan D. Freres and Eugene L. Miller and Trial Attorney James B. Nelson. A copy was also mailed to the defendant.

/s/Elisabeth R. Pollock
Assistant Federal Public Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org