UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 17-cr-20037-JES-JEH |
| ) | |
| BRENDT A. CHRISTENSEN, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Now before the Court is the United States' Motion (Doc. 333) to Limit the Testimony of Dr. Jonathan Sorensen and Defendant's Response (Doc. 348). Also before the Court is Defendant's Motion (Doc. 425) to Preclude Improper Cross Examination or Rebuttal of Testimony of Dr. Sorensen. The Court heard arguments on the Motions on June 27, 2019. For the reasons set forth below, the United States' Motion (Doc. 333) is GRANTED in part and DENIED in part and Defendant's Motion (Doc. 425) is GRANTED to the extent consistent with this Order.

### BACKGROUND

Defendant Brendt A. Christensen was arrested by federal agents on June 30, 2017, pursuant to a criminal complaint which charged him with the kidnapping of Yingying Zhang, a female Chinese national, in violation of 18 U.S.C. § 1201. Doc. 1. Christensen was later indicted by a federal grand jury sitting in the Urbana Division of the Central District of Illinois. *See* Doc. 13 (Indictment), Doc. 26 (Superseding Indictment). The Superseding Indictment charges Christensen with kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1) (Count 1), and making false statements to FBI agents investigating Yingying Zhang's disappearance, in violation of 18 U.S.C. § 1001(a)(2) (Counts 2, 3). Doc. 26. The Superseding Indictment returned

by the grand jury also included a notice of special findings regarding the nature of the offense charged in Count 1, including that the death of the victim was intentional, that it occurred during the commission of kidnapping, that it was committed in an especially heinous, cruel, or depraved manner, and that Defendant committed the offense after substantial planning and premeditation. *Id*. The special findings alleged in the Superseding Indictment made the case eligible for capital punishment. *See* 18 U.S.C. § 3591 *et seq.* On January 19, 2018, the United States filed its Notice of Intent to Seek a Sentence of Death. Doc. 54; *see also* 18 U.S.C. §3593(a). On June 24, 2019, the guilt phase of this matter concluded and the jury returned a verdict of guilty.

Defendant seeks to call Dr. Sorensen to testify as an expert witness during the penalty phase of this trial. Defendant expects Dr. Sorensen will

> testify consistent with the studies that he co-authored … and other relevant studies, including the correlation of allegations of future dangerousness by the prosecution and others with the available data; studies of the ability to accurately predict future dangerousness; the low base rates of violence in prison and various erroneous factors that influence such decisions.

See Doc. 265, at 2. In their Motion, the United States argues that: (1) pursuant to Rule 12.2(d), Dr. Sorensen's testimony should not reference any alleged mental condition of the Defendant, including during cross examination; (2) under *Johnson*, Dr. Sorensen's testimony should not reference any prison's alleged ability to control inmate violence, including during cross examination; and (3) the United States should be permitted to obtain and disclose its rebuttal expert after the Defendant provides the bases and reasons for Dr. Sorensen's Opinions.[1] Doc. 333, at 3–5.

In his Response, Defendant asserts that: (1) Dr. Sorensen's testimony will not address Defendant's mental condition; (2) the extent to which the United States' cross examination opens

---

[1] It appears that the third argument by the United States has since been resolved. Thus, this Order will address only the first two issues raised in the United States' Motion (Doc. 333).

doors cannot be determined at this time; and (3) Defendant has disclosed the bases and reasons for Dr. Sorensen's opinions.

Also before the Court is Defendant's Motion to Preclude Improper Cross Examination or Rebuttal of Testimony of Dr. Sorensen. Doc. 425. Therein, Defendant argues that the Court should preclude cross examination of Dr. Sorensen beyond the scope of his direct examination and should specifically preclude cross examination concerning specific instances of misconduct by others in prison. This Order follows.

## DISCUSSION

*(1) Dr. Sorensen's testimony should not reference any alleged mental condition of the Defendant, including during cross examination.*

In his Response, Defendant concedes that Dr. Sorensen's testimony will not address Defendant's mental condition. Accordingly, the Court will grant the United States' request to prohibit testimony from Dr. Sorensen regarding Defendant's mental condition.

*(2) Dr. Sorensen's testimony should not reference any prison's alleged ability to control inmate violence, including during cross examination.*

The United States next argues that, under *United States v. Johnson*, 223 F.3d 665, 674–75 (7th Cir. 2000), Dr. Sorensen should be precluded from testifying as to the Federal Bureau of Prisons' ability to control inmate violence, as such information would not relate to Defendant's character, background, or the circumstances of the offense. *See* 18 U.S.C. § 3592. In *Johnson*, the Seventh Circuit addressed this exact argument:

> [W]hile the defendant was of course entitled to counter the government's evidence that he would be a continued menace to society while in prison, that being evidence offered to establish an aggravating factor, 18 U.S.C. § 3593(c); cf. *Gardner v. Florida*, 430 U.S. 349, 362, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), he should not have been permitted to present to the jury, as he was, evidence of the existence of maximum-security federal prisons decked out with control units, in order to establish a mitigating factor. A mitigating factor is a factor arguing against sentencing *this* defendant to death; it is not an argument against the death penalty

> in general. See *Penry v. Lynaugh*, 492 U.S. 302, 328, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989); *Eddings v. Oklahoma*, 455 U.S. 104, 110, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *Lockett v. Ohio*, 438 U.S. 586, 604 n. 12, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality opinion). The argument that life in prison without parole, especially if it is spent in the prison's control unit and thus in an approximation to solitary confinement, sufficiently achieves the objectives aimed at by the death penalty to make the latter otiose is an argument addressed to legislatures, not to a jury. This is apparent from the fact that the list of mitigating factors in the federal death-penalty statute does not include the harshness or ugliness or (some would say) the immorality of the death penalty, but only factors specific to the defendant. See 18 U.S.C. § 3592(a), and in particular subsection (a)(8) ( "other factors *in the defendant's background, record, or character* or any other circumstances *of the offense* that mitigate against imposition of the death sentence") (emphasis added).
>
> The argument is also illogical, as it amounts to saying that because this defendant is *so* dangerous, he does not deserve to be sentenced to death, since his dangerousness will assure his secure confinement. And its illogic shows that it is really an argument against the death penalty, period, since if this defendant should be spared because he is unusually dangerous, surely less dangerous murderers should not be executed either, even though, because they are less dangerous, they are less likely to be confined securely.

*United States v. Johnson*, 223 F.3d 665, 674–75 (7th Cir. 2000). Defendant concedes in his Response that he does not intend to elicit testimony from Dr. Sorensen on this subject during direct examination, but asserts that it is premature for the Court to rule on whether such questioning may be appropriate in the event the United States' cross examination raises the issue. The Court agrees with the United States that *Johnson* prohibits the introduction of expert testimony concerning the Federal Bureau of Prisons' ability to control inmate violence, and will therefore prohibit Defendant from eliciting such information from Dr. Sorensen on direct examination. The Court reserves ruling on whether such information may be introduced on redirect examination until such time as it has heard the relevant testimony and has before it all the facts circumstances necessary to put the testimony in context.

*(3) Defendant's Motion to Preclude Improper Cross Examination or Rebuttal of Testimony of Dr. Sorensen*

In Defendant's Motion to Preclude Improper Cross Examination or Rebuttal of Testimony of Dr. Sorensen, Defendant argues that the Court should preclude cross examination of Dr. Sorensen beyond the scope of his direct examination and should specifically preclude cross examination concerning specific instances of misconduct by others in prison. Doc. 425. To the extent that specific instances of misconduct by prisoners are referenced in Dr. Sorensen's report or relied upon in his publications, the Court will erect no per se bar on the United States' ability to address such instances of misconduct on cross examination. However, if the United States intends to use specific instances of prisoner misconduct outside the scope of Dr. Sorensen's report or the studies he relies upon, the United States should provide Defendant with advance notice of its intent to do so.

*(4) Matters Addressed at Oral Argument*

At oral argument on June 27, 2019, the United States argued that Dr. Sorensen should be prohibited from relying upon statistics from state prisons as a basis for opining that Defendant will not be a future danger in federal prisons. It may well be that, given the myriad differences between federal and state prison systems, state prison statistics regarding base rates of violence may not accurately reflect the base rates of violence in federal prisons. However, the Court is hesitant to limit Dr. Sorensen's testimony and the studies he relies upon to federal prisons without knowing the contents of his report and whether such information could realistically be omitted from his report or statistics. Given the fact that the United States will have the opportunity to cross examine Dr. Sorensen on the bases underlying his opinions and relevance of

his statistics, the Court declines to prohibit Dr. Sorensen's use of state prison statistics at this time.[2]

## CONCLUSION

For the reasons set forth above, United States' Motion (Doc. 333) to Limit the Testimony of Dr. Jonathan Sorensen is GRANTED in part and DENIED in part, and Defendant's Motion (Doc. 425) to Preclude Improper Cross Examination or Rebuttal of Testimony of Dr. Sorensen is GRANTED to the extent consistent with this Order.

Signed on this 28th day of June, 2019.

s/ James E. Shadid  
James E. Shadid  
United States District Judge

---

[2] At oral argument, the United States indicated that it would file a response addressing the issue of the use of state prison statistics. Should the United States elect to file a response, the Court will consider the matter and hear further argument on July 8, 2019.