UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 17-cr-20037-JES-JEH |
| ) | |
| BRENDT A. CHRISTENSEN, ) | |
| ) | |
| Defendant. ) | |

### ORDER

Now before the Court are:

    1. The United States' Motion for Clarification Regarding the Proffered Testimony of Dr. Susan Zoline (Doc. 336) and Defendant's Response (Doc. 349),

    2. The United States' Motion to Exclude Evidence Pursuant to Fed. R. Crim. P. 12.2(d) (Doc. 373), Defendant's Response (Doc. 380), and the United States' Reply (Doc. 398),

    3. The United States' Motion to Preclude Improper Remorse Evidence (Doc. 397), and

    4. The United States' Motion to Exclude Improper Opinion Testimony Regarding Defendant's Mental Health as a Teenager (Doc. 403) and Defendant's Response (Doc. 416).

For the reasons set forth below, the United States' Motions for Clarification and to Preclude Improper Remorse Evidence (Docs. 336, 397) are GRANTED consistent with this Order. The United States' Motions to Exclude Evidence Pursuant to Fed. R. Crim. P. 12.2(d) and to Exclude Improper Opinion Testimony Regarding Defendant's Mental Health as a Teenager (Docs. 373, 403) are GRANTED in part and DENIED in part. The Court RESERVES ruling on the admissibility of testimony from Dr. Pearson.

## BACKGROUND

Defendant Brendt A. Christensen was arrested by federal agents on June 30, 2017, pursuant to a criminal complaint which charged him with the kidnapping of Yingying Zhang, a female Chinese national, in violation of 18 U.S.C. § 1201. Doc. 1. Christensen was later indicted by a federal grand jury sitting in the Urbana Division of the Central District of Illinois. *See* Doc. 13 (Indictment), Doc. 26 (Superseding Indictment). The Superseding Indictment charges Christensen with kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1) (Count 1), and making false statements to FBI agents investigating Yingying Zhang's disappearance, in violation of 18 U.S.C. § 1001(a)(2) (Counts 2, 3). Doc. 26. The Superseding Indictment returned by the grand jury also included a notice of special findings regarding the nature of the offense charged in Count 1, including that the death of the victim was intentional, that it occurred during the commission of kidnapping, that it was committed in an especially heinous, cruel, or depraved manner, and that Defendant committed the offense after substantial planning and premeditation. *Id*. The special findings alleged in the Superseding Indictment made the case eligible for capital punishment. *See* 18 U.S.C. § 3591 *et seq.* On January 19, 2018, the United States filed its Notice of Intent to Seek a Sentence of Death. Doc. 54; *see also* 18 U.S.C. §3593(a). On June 24, 2019, the guilt phase of this matter concluded and the jury returned a verdict of guilty.

These four motions concern the introduction of mental health evidence by the defense in the penalty phase of this trial. On December 3, 2018, Defendant had filed a notice of intent to present mental health experts in the penalty phase, pursuant to Fed. R. Crim. P. 12.2(b)(2). Doc. 161. Ultimately, in April 2019, Defendant elected to withdraw this notice, and acknowledged that the withdrawal of the 12.2 notice would mean that expert testimony regarding his mental condition would be barred. Doc. 317. The United States moves to bar certain witnesses whose

testimony would bear on Defendant's mental health condition—namely, Susan Zoline, Marybeth Hallett, Felicia Li, Jennifer Maupin, Tom Miebach, Carin Molenaar, Peggy Pearson, and the Defendant's mitigation specialist. Defendant contends that calling these witnesses in the penalty phase would be proper.

Defendant has created somewhat of a dilemma for the Court. He has withdrawn his notice of intent to introduce mental health experts on his mental condition, thus avoiding any possible rebuttal examination by the government. However, he maintains an intent to call witnesses (including counselors who spoke with him and a psychologist) and present evidence (past mental health records of himself and his family) that undoubtedly raise much of the same material that a 12.2 expert would. This Order seeks to preserve his right to a fair proceeding without disregarding the notice and possible rebuttal considerations built into Rule 12.2.

## DISCUSSION

*1. Testimony by Dr. Susan Zoline*

Having reviewed the extensive briefing and repeated argument on this subject, the Court rules that Dr. Zoline may testify in the penalty phase regarding the video of Defendant's counseling center visit, the steps taken by University Counseling staff, and the conformance of those steps to their internal policy manual. Dr. Zoline may not testify regarding the standard of care, possible negligence by the counseling center staff, or possible misdiagnosis by the counseling center staff. To the extent that Dr. Zoline does not state opinions about a possible diagnosis or underlying mental health status of Defendant, but rather discusses policy prescriptions given Defendant's recorded statements, the Court finds that her testimony does not violate Rule 12.2. The United States' Motion for Clarification (Doc. 336) is thus GRANTED consistent with this Order according to the above parameters, and the United States' Motion to

Exclude Evidence Pursuant to Fed. R. Crim. P. 12.2(d) is DENIED to the extent that Dr. Zoline will be permitted to testify.

2. *Testimony by Dr. Pearson*

Defendant has expressed an intention to call Dr. Peggy Pearson, a psychiatrist from the University of Illinois McKinley Health Center, to introduce her records of Defendant's treatment from 2016 through early 2017. Defendant expressed at a hearing on this matter on June 27, 2019 that Dr. Pearson has no independent recollection of Defendant, and would merely be testifying as to what the records indicate he told her, what her findings were, and what she did, including prescribing medication. This proposed testimony appears to the Court to resemble "expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on…the issue of punishment in a capital case." Fed. R. Crim. P. 12.2(b)(2). However, in the interest of preserving the fairness of this proceeding, the Court asks Ms. Brain to proffer information on the morning of July 8, 2019 regarding the timing of the disclosure, if any, of Dr. Pearson as an expert witness and the actual dates of the records of her treatment of the Defendant. The Court RESERVES ruling with respect to Dr. Pearson until that time.

3. *University Counseling Center Staff*

Despite the Court's concern that witnesses such as Jennifer Maupin and Tom Miebach, who worked at the University Counseling Center, may be called to testify about the mental condition of the Defendant as Rule 12.2 experts, their testimony may bear on relevant mitigators such as Defendant's actively seeking help when he experienced homicidal ideation or Defendant's awareness that such thoughts were problematic. The Court will therefore permit Defendant to call University Counseling Center staff who interacted with him. These witnesses may testify as to what they saw and heard from Defendant and what they did in response. The

United States' Motion to Exclude Evidence (Doc. 373) is DENIED with respect to the counseling center witnesses.

*4. Mitigation Specialist*

Defendant has indicated his intent to introduce numerous mental health records pertaining to him and to his extended family through the defense mitigation specialist who collected those records from their custodians. According to defense counsel at the June 27, 2019 hearing, the defense plans to call the mitigation specialist to the stand, explain that she collected these records, and publish them to the jury without further explanation or description of the records. Defense counsel contends that the records are "self-explanatory" and thus do not require expert testimony. Defense counsel would then argue to the jury that the records of past mental illness in his extended family make it more likely that he himself suffered from mental illness, as a matter of common sense. According to defense counsel, these records are the only evidence he seeks to introduce through the mitigation specialist.

The Court will not allow Defendant's mitigation specialist to testify in this way. To the extent that Defendant's family's mental health history is relevant, such as the effect relatives' mental illness had on Defendant's upbringing, his parents or other relatives are free to testify regarding their personal knowledge of those matters. But the Court will not send numerous medical records back to the jury without explanation. The United States' Motions to Exclude Evidence (Doc. 373) and Improper Opinion Testimony (Doc. 403) are GRANTED to the extent that the mitigation specialist may not testify regarding mental health records, and the United States' Motion to Preclude Improper Remorse Evidence (Doc. 397) is GRANTED in its entirety.[1]

---

[1] In this Motion, the United States moved to bar any unsworn allocution by the Defendant and the use of the mitigation specialist as a vehicle for introducing evidence. At the June 27, 2019 hearing, Defendant indicated that he would not seek unsworn allocution, so the Court's ruling that the mitigation specialist is barred resolves the Motion.

## CONCLUSION

For the reasons set forth above, the United States' Motions for Clarification and to Preclude Improper Remorse Evidence (Docs. 336, 397) are GRANTED consistent with this Order. The United States' Motions to Exclude Evidence Pursuant to Fed. R. Crim. P. 12.2(d) and to Exclude Improper Opinion Testimony Regarding Defendant's Mental Health as a Teenager (Docs. 373, 403) are GRANTED in part and DENIED in part. The Court RESERVES ruling on the admissibility of the testimony of Dr. Pearson.

Signed on this 28th day of June, 2019.

/s James E. Shadid
James E. Shadid
United States District Judge