IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-CR-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

**THE UNITED STATES OF AMERICA'S RESPONSE TO THE DEFENDANT'S MOTION TO STRIKE VICTIM IMPACT EVIDENCE BASED ON <u>VIOLATIONS OF THE FEDERAL RULES OF CRIMINAL PROCEDURE</u>**

NOW COMES the United States of America, by John C. Milhiser, United States Attorney for the Central District of Illinois, Eugene L. Miller and Bryan D. Freres, Assistant United States Attorneys, and James B. Nelson, Department of Justice Trial Attorney, and respectfully files this reply in opposition to the defendant's "Motion to Strike Victim Impact Evidence Based on Violations of the Federal Rules of Criminal Procedure. (R.438) For the reasons stated below, the United States respectfully submits that the defendant's motion should be denied without a hearing.

<u>ARGUMENT</u>

**A. Capital Defendants Have No Confrontation Right With Regard to Non-Statutory Aggravating Factors**

The defendant argues that the United States cannot introduce videotaped interviews of victim-witness interviews conducted in China because the interviews were not conducted in accordance with Federal Rule of Criminal Procedure 15. This

argument ignores controlling and persuasive precedent. As such, the defendant's motion can, and should be denied without a hearing.

Federal Rule of Criminal Procedure 15 provides that either party may request leave of Court to conduct a deposition of a material *trial* witness who is otherwise unavailable to testify at *trial*. Its obvious purpose is to protect the defendant's confrontation rights as against witnesses who would be unavailable to testify at trial. As stated more fully below, neither the defendant's Confrontation Clause rights, nor Rule 15, apply in this instance where videotaped interviews are played in a sentencing hearing to support a non-statutory aggravating factor.

Under the FDPA, capital sentencing has two aspects – an eligibility determination and a selection from among the eligible penalties – which are given "differing constitutional treatment." *Buchanan v. Angelone*, 522 U.S. 269, 275 (1998). Eligibility involves the consideration of discrete aggravating factors that determine whether the defendant falls into the narrow category of homicide defendants who qualify for the maximum penalty of death, while the selection decision involves a "broad inquiry" into all evidence relevant to the ultimate decision of what penalty to impose. *Id*. at 276. The selection phase entails "an *individualized* determination on the basis of the character of the individual and the circumstances of the crime" whether *this* defendant should receive a death sentence. *Zant v. Stephens*, 462 U.S. 862, 879 (1983) (citing cases) (original emphasis).

Likewise, the FDPA authorizes statutory and non-statutory aggravating factors, which serve separate and distinct purposes. The Court has repeatedly drawn strong distinctions between statutory aggravating factors and non-statutory aggravating factors. Statutory aggravating factors serve the dual purpose of narrowing the class of defendants eligible for the death penalty and individualizing the sentence. Accordingly, statutory aggravating factors must be relevant to the "narrowing" process, and must be proven before the defendant is *eligible* for the death penalty *See, e.g., Jones v. United States*, 527 U.S. 373, 402 (1999); *Tuilaepa v. California*, 512 U.S. 967, 972-73 (1994); *Zant*, 462 U.S. at 878. *Id.* at 878-79. Non-statutory aggravating factors, on the other hand, serve only to assist the jury in selecting an appropriate sentence, and they may not be considered until after the defendant has been found to be eligible for the death penalty. *Barclay v. Florida*, 463 U.S. 939, 967 (1983); *Zant*, 462 U.S. at 879. This difference in function is critically important for reviewing courts. Whereas many of the defendant's trial rights remain with regard to the "eligibility" phase, the "selection" phase is universally analogized to a sentencing hearing and is treated as such with regard to a consideration of the defendant's applicable rights.[1]

The Supreme Court has long held that no Confrontation right exists in a sentencing proceeding. *Williams v. New York*, 337 U.S. 241, 246 (1949). The Seventh Circuit has long been in accord. *See Szabo v. Walls*, 313 F.3d 392, 398 (7th Cir. 2003) ("The

---

[1] Although "eligibility" and "selection" are referred to as two separate phases, the FDPA does not require that the penalty hearing be bifurcated. Even in *Buchanan*, where the Supreme Court referred to eligibility and selection as separate "phases," the opinion describes an un-bifurcated penalty proceeding. 522 U.S. at 271-74.

Supreme Court has held that the Confrontation Clause does not apply to capital sentencing," and that the right to confrontation "applies through the finding of guilt, but not to sentencing, even when that sentence is the death penalty").

The Confrontation Clause limits the evidence that may be introduced at a criminal trial, but it does not limit the evidence that a judge or jury may consider in exercising sentencing discretion within statutory boundaries. The Confrontation Clause's guarantee "is most naturally read as a reference to the right of confrontation at common law, admitting only those exceptions established at the time of the founding." *Crawford v. Washington*, 541 U.S. 36, 54 (2004). The common-law confrontation right protected against the use of "testimonial" out-of-court statements at trial unless the witness was unavailable to testify and the defendant had a prior opportunity for cross-examination, *Crawford*, 541 U.S. at 68, but it did not limit the evidence that could be received at sentencing. *Williams*, 337 U.S. at 246. Instead, "both before and since the American colonies became a nation," the sentencing judge has been permitted "wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." *Id.* Courts have thus "treated the rules of evidence applicable to the trial procedure and the sentencing process differently, with "[o]ut-of-court affidavits . . . used frequently" at sentencing. *Id.* at 246 & n.4. In other words, the "right of confrontation at common law" to which the Sixth Amendment "is most naturally read as a reference," *Crawford*, 541 U.S. at 54, has never constrained the information that may be considered in exercising discretion to decide on an appropriate sentence following a conviction.

4

In *Williams v. New York*, the Supreme Court rejected a capital defendant's claim that a state court violated his right of confrontation by considering at sentencing evidence of unadjudicated crimes, concerning which the defendant had no opportunity for confrontation or cross-examination. 337 U.S. at 243-44. The Supreme Court declined to recognize a confrontation right at sentencing under the Due Process Clause, on the ground that it went beyond the traditional confrontation protection, *id*.at 246-47, and on the ground that rejecting the "age-old practice of seeking information from out-of-court sources to guide [courts'] judgment toward a more enlightened and just sentence" would run contrary to contemporary approaches to sentencing. *Id*. at 250-51; *see also Williams v. Oklahoma*, 358 U.S. 576, 584 (1959) (reaffirming, in review of a death sentence, that the sentencing judge "is not restricted to evidence derived from the examination and cross-examination of witnesses in open court but may . . . consider responsible unsworn or 'out-of-court' information").

More recently, the Supreme Court has explained that *Williams* establishes that "the Sixth Amendment does not govern" the "fact-finding used to guide judicial discretion in selecting a punishment 'within limits fixed by law.'" A*lleyne v. United States*, 133 S. Ct. 2151, 2161 n.2 (2013) (quoting *Williams*, 337 U.S. at 246); *see also e.g., Nichols v. United States*, 511 U.S. 738, 747 (1994) ("As a general proposition, a sentencing judge 'may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.") (quoting *United States v. Tucker*, 404 U.S. 443, 446 (1972)). The principles and holding of *Williams*, that the Confrontation Clause does not apply to sentencing, remains good law

5

today. *See, e.g., Witte v. United States*, 515 U.S. 389, 398-98 (1995); *Wisconsin v. Mitchell*, 508 U.S. 476, 485 (1993); *Gardner v. United States*, 430 U.S. 349, 353-58 (1977); *Tucker*, 404 U.S. at 446-47.

The tenets of *Williams*, though not specifically the Confrontation Clause, were addressed by the Second Circuit in *Fell I*. In that case, the court held that although the FDPA does not require application of the Federal Rules of Evidence to capital penalty hearings, the weighing standard set forth in the FDPA requiring the exclusion of evidence whose probative value is outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury, *see* 18 U.S.C. § 3593(c), met Constitutional requirements. *United States v. Fell*, 360 F.3d 135, 145-46 (2d Cir. 2004). In its analysis, the *Fell I* court underscored that under the reasoning of *Gregg v. Georgia*, 428 U.S. 153 (1976), the "heightened reliability" standard in the penalty phase of a capital proceeding requires "more evidence, not less" regarding "the presence or absence of aggravating and mitigating factors." *Id*. at 143.

The Second Circuit explained in *Fell I* that *Gregg* arose out of a long line of cases "emphasiz[ing] the importance of allowing the sentencing body to have full and complete information about the defendant," citing *Williams* as one such case. *Id*. Ultimately, the Second Circuit concluded that the FDPA weighing standard governing admissibility of evidence at a penalty hearing "comports with the reasoning of *Williams* and its progeny by excluding only evidence whose probative value is outweighed by the danger of unfair prejudice to the defendant. . . . [and] permits 'the jury to have before it all possible relevant information about the individual defendant whose fate it

6

must determine.'" *Id*. (quoting *Jurek v. Texas*, 428 U.S. 262, 276 (1976)). This principle, that more evidence heightens the reliability of the capital sentencing decision, is consistent with the conclusion that the Confrontation Clause does not apply to sentence selection.

Every post-FDPA Circuit that has considered the applicability of the Confrontation Clause to sentence selection has arrived at the same result, to wit: the Confrontation Clause does not apply to the sentence selection component of capital sentencing proceedings. *See Szabo*, 313 F.3d at 398 ("The Supreme Court has held that the Confrontation Clause does not apply to capital sentencing," and that the right to confrontation "applies through the finding of guilt, but not to sentencing, even when that sentence is the death penalty."); *see also United States v. Umana*, 750 F.3d 320, 346-48 (4th Cir.2014), *cert. denied*, 135 S. Ct. 2856 (2015) (holding that *Williams* "squarely disposes" of Umana's argument that the Sixth Amendment should apply to capital sentencing; "We conclude that the Confrontation Clause does not preclude the introduction of hearsay statements during the sentence selection phase of capital sentencing."); *Muhammad v. Secretary, Florida Dep't of Corrections*, 733 F.3d 1065, 1073-77 (11th Cir. 2013) (relying on *Williams* and *Gardner v. Florida*, 430 U.S. 349 (1977) (plurality opinion) to hold that because the hearsay testimony was presented in open court, and because Muhammad had the opportunity to present his own witnesses at the capital sentencing proceeding, "Muhammad's rights under the Confrontation Clause were not violated because Mohammad had an opportunity to rebut the hearsay information. The hearsay was admissible at Muhammad's capital sentencing hearings."); *United States v.*

7

*Fields*, 483 F.3d 313, 326 & 338 (5th Cir. 2007) ("[W]e conclude that the Confrontation Clause does not operate to bar the admission of testimony relevant only to a capital sentencing authority's [sentence] selection decision; [T]he principles underlying Williams are relevant, persuasive, and ultimately fatal to Field's Confrontation Clause challenge").

### B. The Cases Cited by the Defendant Are Inapposite

Ignoring controlling precedent from the Supreme Court and the Seventh Circuit, as well as persuasive caselaw from other circuits, the defendant relies instead on four cases that have no factual relationship to the issue at hand.

The defendant first cites to *United States v. Ahmed*, 2014 WL 7399298 *1 (EDNY 2014); *United States v. Abu Ghayth*, 2014 WL 144653 (SDNY 2014); and *United States v. Salim*, 855 F.2d 944, 949 (2d Cir. 1988). (R.438, at 3) None of these cases were prosecuted under the FDPA. As such, the consideration of Rule 15 and the defendants' Confrontation rights within those opinions offer no guidance to this Court in considering the defendant's motion.

Defendant next relies on *United States v. Becton*, 241 F.R.D. 433 (S.D.N.Y 2006) (R.438, at 3). Although *Becton* did involve a prosecution under the FDPA, this opinion merely considered the defendant's pretrial request for court funds for a videographer in anticipation of a potential penalty phase. *Id.* at 434. The Court neither cited, nor analyzed, Rule 15 nor the Confrontation Clause. *Id.* Moreover, Charod Becton pleaded guilty and was sentenced to life imprisonment plus five years. Order, *United States v. Becton*, Case No. 02-cr-451 (S.D.N.Y. November 29, 2018). Given that *Becton* did not

involve either Rule 15, the Confrontation Clause, or a penalty phase, this opinion offers no guidance for the Court in considering the Defendant's motion.

Finally, the defendant relies on *United States v. Mikhel*, 889 F.3d 1003, 1062 (9th Cir. 2018) (R.438, at 4) Defendant's reliance on *Mikhel* is both misleading and inapposite. First, the defendant mistakenly implies that the *Mikhel* court excluded all of the videotaped interviews offered by the defendant in his mitigation case. (R.438, at 4) This is not the case. Indeed, as the Ninth Circuit notes, the defendant was permitted to introduce "a number" of such videos in mitigation. *Mikhel*, 889 F.3d at 1062. Indeed, the trial court excluded only the interview from the defendant's former girlfriend, and a portion of another video. *Id.*

The defendant's argument further implies that the basis for exclusion was because the interviews were neither under oath nor subject to cross examination, but that was not the reason for their exclusion. (R.438, at 4) Indeed, the *Mikhel* court does not even mention Rule 15. *Mikhel*, 889 F.3d at 1003-68. Rather, the court excluded these particular issues because they consisted mostly of pleas for mercy and a sentence other than death. *Id.* at 1062-63. The court noted that such testimony was inadmissible, whether videotaped or live, because Ninth Circuit precedent requires trial courts to draw "'a fine, but appropriate, line' by admitting testimony regarding witnesses' 'affection for [the defendant] and their wish for his life to be spared,' while excluding testimony offering 'an opinion about what they thought the jury's verdict should be.'" *Id.* at 1063 (quoting *United States v. Mitchell*, 502 F.3d 931, 991 (9th Cir. 2007).

9

Thus, the cases cited by the defendant are either inapposite or their holding is something other than what he suggests. In any event, none of the cases cited by the defendant addresses the actual issue raised by his motion – whether the videotaped interviews of Yingying Zhang's friends infringe upon his Confrontation rights. The defendant has failed to cite to a single case holding that the Confrontation Clause extends to non-statutory aggravating factors. Rather, the full weight of the extensive precedent addressing the issue holds that it does not.

## **CONCLUSION**

The victim impact evidence complained of by the defendant will only be presented with regard to the non-statutory aggravating factor of victim impact. By law, the jury may not consider either this aggravating factor, or any evidence in support thereof, until they held that the defendant is eligible for the death penalty. As the Supreme Court has long held, the defendant holds no Confrontation right at that point of the penalty phase. Moreover, the cases and argument advanced by the defendant do not support his request.

WHEREFORE, the United States respectfully requests that the Defendant's Motion to Strike Victim Impact Evidence Based on Violations of the Federal Rules of Criminal Procedure (R.438), be denied without a hearing.

Respectfully submitted,

JOHN E. CHILDRESS
UNITED STATES ATTORNEY

*/s/Eugene L. Miller*
Eugene L. Miller
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
Phone: 217/373-5875; Fax: 217/373-5891
eugene.miller@usdoj.gov

| | |
|---|---|
| */s/Bryan D. Freres* | */s/ James B. Nelson* |
| Bryan D. Freres | James B. Nelson |
| Assistant United States Attorney | Trial Attorney, Capital Case Section |
| 201 S. Vine St., Suite 226 | United States Department of Justice |
| Urbana, IL 61802 | 1331 F. Street NW, Room 625 |
| Phone: 217/373-5875 | Washington, DC 20004 |
| Fax: 217/373-5891 | Phone: 202/598-2872 |
| bryan.freres@usdoj.gov | james.nelson@usdoj.gov |

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

>*/s/ James B. Nelson*
>James B. Nelson
>Trial Attorney
>Capital Case Section
>United States Department of Justice
>1331 F. Street NW, Room 625
>Washington, DC 20004
>Tel: (202) 598-2872
>james.nelson@usdoj.gov