E-FILED
Sunday, 07 July, 2019  12:42:39 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Crim. No. 17-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S PROPOSED PRELIMINARY SENTENCING PHASE
INSTRUCTIONS AND OBJECTIONS TO GOVERNMENT'S PROPOSED
PRELIMINARY SENTENCING PHASE INSTRUCTIONS**

Defendant Brendt A. Christensen, by his undersigned counsel, hereby submits his

proposed preliminary sentencing phase instructions and his objections to the

Government's proposed preliminary sentencing phase instructions, attached hereto as

Exhibits 1-5, inclusive.

Said exhibits are as follows:

Exhibit 1:    Defendant's Proposed Preliminary Sentencing Phase Instructions
Modeled upon *United States v. Juan Briseno,* No. 2:11-CR-0077 (N.D.
Ind. March 3, 2015), TR Vol. 25-AM, Page 6321-31, with Track
Changes.

Exhibit 2:    Defendant's Proposed Preliminary Sentencing Phase Instructions
Modeled upon *United States v. Juan Briseno*, No. 2:11-CR-0077 (N.D.
Ind. March 3, 2015), TR Vol. 25-AM, Page 6321-31, with Track
Changes Accepted.

Exhibit 3:    Defendant's Objections to Government's Proposed Preliminary
Sentencing Phase Instructions ((Instructions 1 (Introduction), 2
(Burden of Proof) and 3 (Evidence)) filed in Doc. #399.

1

Exhibit 4:      Transcript of Court's Preliminary Sentencing Phase Instructions in
                *United States v. Juan Briseno*, No. 2:11-CR-0077 (N.D. Ind. March 3,
                2015), TR Vol. 25-AM, Page 6321-31.

Exhibit 5:      Text of Court's Preliminary Sentencing Phase Instructions in *United
                States v. Juan Briseno*, No. 2:11-CR-0077 (N.D. Ind. March 3, 2015),
                TR Vol. 25-AM, Page 6321-31.


Respectfully submitted,

/s/Elisabeth R. Pollock             /s/ George Taseff
Assistant Federal Defender          Assistant Federal Defender
300 West Main Street                401 Main Street, Suite 1500
Urbana, IL 61801                    Peoria, IL 61602
Phone: 217-373-0666                 Phone: 309-671-7891
FAX:   217-373-0667                 Fax:    309-671-7898
Email: Elisabeth_Pollock@fd.org     Email: George_Taseff@fd.org


/s/ Robert Tucker                   /s/ Julie Brain
Robert L. Tucker, Esq.              Julie Brain, Esq.
7114 Washington Ave                 916 South 2nd Street
St. Louis, MO 63130                 Philadelphia, PA 19147
Phone: 703-527-1622                 Phone: 267-639-0417
Email: roberttuckerlaw@gmail.com    Email: juliebrain1@yahoo.com

2

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 7, 2019, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to

Assistant United States Attorneys Bryan D. Freres and Eugene L. Miller and Trial

Attorney James B. Nelson. A copy was also mailed to the defendant.

<u>/s/Elisabeth R. Pollock</u>
Assistant Federal Public Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org

**Exhibit 1**

DEFENDANT'S PROPOSED PRELIMINARY SENTENCING HEARING INSTRUCTIONS

The following defendant's proposed preliminary sentencing hearing instructions were modeled after the instructions given in the last federal capital case tried in the Seventh Circuit, *United States v. Juan Briseno*, No. 2:11-CR-0077 (N.D. Ind. March 3, 2015), TR Vol. 25-AM, Page 6321-31.

**Version Based Upon *Briseno* with Track Changes**

Members of the jury, you have unanimously found the defendant, Brent Christensen~~Juan Briseno~~, guilty of the capital offenses of Kidnapping Resulting in Death as charged in Count One of the indictment~~the murders in aid of racketeering of Luis Ortiz, Count 9; Michael Sessum, Count 13; Miguel Mejias, Count 15; Miguel Colon, Count 19; and Latroy Howard, Count 21, as charged in the Fourth Superseding Indictment~~.

You must now consider, after hearing additional evidence, whether Brent Christensen ~~Juan Briseno~~ should be sentenced to death or to life imprisonment without the possibility of release.

The law leaves this decision exclusively to you, the jury. Whichever sentence you choose, death or life imprisonment without the possibility of release, the Court,~~me, I'm~~ is required to impose that sentence.

I am now providing you some preliminary instructions to give you an overview of your role in making the penalty determination.

I will give you more detailed instructions after the sentencing hearing ~~penalty phase~~ evidence is concluded, and I will give you more -- and I will also provide you with a special verdict form that will function, in part, as a checklist which will help you make your decision that is required of you and will assist you in organizing your findings.

In making your penalty findings, you may consider all of the evidence that you heard at the earlier portion of the trial as well as any additional evidence to be presented at the sentencing phase.

You will also follow the same instructions I provided to you during the guilt phase regarding consideration of the evidence and witness credibility determinations, which I will restate for you after the evidence has been presented in the sentencing hearing ~~penalty phase~~ of the trial.

Now, as in the guilty / not guilty phase of the trial, you may take notes, but they are only aids to your memory. If your memory differs from your notes, you should rely on your memory and not on your notes.

The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection without being unduly influenced by the other jurors' notes. Notes are not entitled to any greater weight than each juror's recollection or impression of the evidence.

Now, as I advised you before the trial, not all defendants convicted of murder are legally eligible to receive the death sentence. The law does not presume that the death penalty is appropriate or required for any defendant.

So there's a procedure that you will follow at the start of your deliberations to determine if the defendant, Brendt Christensen Juan Briseno, is legally eligible for the death sentence.

If you find that he is not, then your deliberations will be over.

If, however, the government proves beyond a reasonable doubt the facts that make the defendant legally eligible for a death sentence, you will then enter a second stage of the procedure in which you will decide whether or not a death sentence should be imposed. That involves a weighing process in which you will consider information that's favorable to the defendant along with evidence against him. And then you'll decide whether a sentence of death is appropriate.

I will explain all of this to you in more detail after you've heard the evidence, but for now I want to give you an overview of the process.

Before you may consider whether to impose a sentence of death, you must make each of the following three findings unanimously and beyond a reasonable doubt:

First, you will decide if the government has proven beyond a reasonable doubt that on the various dates of the capital crimes charged in the Superseding Indictment the defendant was at least 18 years of age.; that's number one.

Second, you will decide whether the government has proven beyond a reasonable doubt at least one of the following gateway intent factors: Whether, A, the defendant intentionally killed Yingying Zhang any of the murder victims; B, intentionally inflicted serious bodily injury that resulted in the death of Yingying Zhang the victim; C, intentionally participated in an act contemplating that a person's life would be taken and intending that lethal force would be used in connection with a person and Yingying Zhang the victim died as a direct result of the act; or, D, intentionally and specifically engaged in an act of violence knowing that the act created a grave risk of death to a person such that participation in the

act constituted a reckless disregard for human life and Yingying Zhang~~the victim~~ died as a direct result of the act. ~~So that's the second inquiry.~~

Third, you will then decide whether the government has proven beyond a reasonable doubt the existence of at least one statutory aggravating factor. The factors you will consider at this point are called statutory aggravating factors because Congress specifically listed them in a statute. I will define the term "aggravating factor" for you in a few minutes.

~~But t~~The statutory aggravating factors that the government alleges are, one, that the ~~defendant~~ death, or injury resulting in death, occurred during the commission or attempted commission of, or during the immediate flight from the commission of, kidnapping.~~, in the commission of the offenses, knowingly created a grave risk of death to one or more persons in addition to the victims of the offense. This factor is alleged for Counts 13, 15, and 19.~~

Two, that the defendant committed the offense in an especially heinous, cruel, or depraved manner, in that it involved torture or serious physical abuse to the victim~~s after substantial planning and premedication to cause the death of a person. This factor is alleged as to all five of the counts~~.

Three, that the defendant committed the offense after substantial planning and premeditation to cause the death of a person.~~intentionally killed more than one person in a single criminal episode. This factor is alleged as to Counts 13 and 15.~~

If, after fair and impartial consideration of all of the evidence in this case, any one of you finds that the government did not prove the defendant's age, mental intent factor, or a statutory aggravating factor ~~these three things~~ beyond a reasonable doubt, your deliberations will be over.

However, if you do unanimously find that these three elements have been proved beyond a reasonable doubt, you will then proceed to determine whether you unanimously find that the government has proved the existence of any nonstatutory aggravating factors beyond a reasonable doubt.

The five~~our~~ nonstatutory aggravating factors[1] which the government alleges are, one, the defendant caused injury, harm, and loss to Yingying Zhang and loss to her family, friends, and co-workers.
~~that the defendant is a continuing danger to the lives and safety of other persons in the custody of or employed by the U.S. Bureau of Prisons and is likely to commit criminal acts of violence in prison in the future as evidenced by a low potential rehabilitation as demonstrated by his repeated violent acts, a willingness to take~~

---

[1] Note that the defense has moved to strike these nonstatutory aggravating factor. The language is proposed here only in the event the Court denies the defense motions on these issues.

~~human life and a lack of remorse for his acts of violence, and his stated desire to impose a rule requiring members of the Imperial Gangsters to shoot rivals on sight.~~

The second nonstatutory aggravating factor[2] is that the defendant~~–~~ is likely to commit criminal acts of violence in the future that would constitute a continuing and serious threat to the lives and safety of others. ~~faces contemporaneous convictions for other criminal activity, including additional murders and an attempted murder. Third, that the defendant has demonstrated an allegiance to and an active membership in the Imperial Gangsters. And, fourth, that the defendant has caused harm and loss to the victims and the victims' families~~.

The third nonstatutory aggravating factor is that the defendant has demonstrated, by statements he made following the offense, that he lacked remorse for the kidnapping resulting in the death of Yingying Zhang.

The fourth nonstatutory aggravating factor is that the victim, Yingying Zhang, was particularly vulnerable due to her small stature and limited ability to communicate in English.

The fifth nonstatutory aggravating factor is that the defendant attempted to obstruct the investigation of this offense by, at least, making false statements to investigators; destroying or concealing the victim's remains; and sanitizing the crime scene.

After you consider whether the government has proven the aggravating factors beyond a reasonable doubt, you will then decide whether any of you find that the defendant has proved any mitigating factors. The defendant has the burden of proving any mitigating factors. However, there's a different standard of proof as to mitigating factors.

You need not be convinced beyond a reasonable doubt about the existence of a mitigating factor. You need only be convinced that a mitigating factor exists by a preponderance of the evidence, which means that something is more likely true than not true.

Now, as I mentioned, a unanimous finding is not required regarding mitigating factors. Any one of you may find the existence of a mitigating factor regardless of the number of other jurors that may agree.

Now, the defendant has proposed 54 ~~24~~ mitigating factors for your consideration.

They are as follows:

---

[2] ~~Note that the defense has moved to strike this nonstatutory aggravating factor. The language is proposed here only in the event the Court denies the defense motion on this issue.~~

1.      Mr. Christensen has no prior criminal record, no prior arrests, and no prior incarcerations.
2.      Mr. Christensen's mother struggled with severe suicidal depression and anxiety when he was growing up.
3.      Mr. Christensen's mother became a chronic alcoholic during his childhood and required both inpatient and outpatient treatment for her alcoholism.
4.      There is an extensive history of mental illness on Mr. Christensen's mother's side of the family.
5.      There is an extensive history of mental illness on Mr. Christensen's father's side of the family.
6.      Mr. Christensen has demonstrated the capacity to be a loving and caring person.
7.      Mr. Christensen was a gentle child and displayed no aggressive or violent behavior towards others while growing up.
8.      Mr. Christensen provided emotional support to his sister, Andrea, while she was growing up.
9.      Mr. Christensen's mother, Ellen, loves him and cares about him and is willing to support him during a sentence of life without release.
10.     If Mr. Christensen is executed, his mother will suffer grief and loss.
11.     Mr. Christensen's father, Michael, loves him and cares about him and is willing to support him during a sentence of life without release.
12.     If Mr. Christensen is executed, his father will suffer grief and loss.
13.     Mr. Christensen's sister, Andrea, loves him and cares about him and is willing to support him during a sentence of life without release.
14.     If Mr. Christensen is executed, his sister will suffer grief and loss.
15.     Mr. Christensen has a long history of brain injury and dysfunction, including sleep disorders (including parasomnia, sleep terrors, and sleep paralysis), concussions, and chronic migraines.
16.     Mr. Christensen suffered from symptoms of depression throughout his life.
17.     Mr. Christensen suffered from symptoms of anxiety throughout his life.
18.     Mr. Christensen was first medicated for depression and anxiety as a teenager.
19.     Mr. Christensen struggled with addiction to alcohol beginning in college.
20.     Brendt struggled with addiction to prescription drugs, including Vicodin and Ambien, beginning in college.
21.     Mr. Christensen and his wife, Michelle, did not socialize with anyone else during their time together (2009-2017), and Michelle was Mr. Christensen's best and only friend.
22.     Mr. Christensen sought medical treatment, and ultimately prescription medication, for his psychiatric issues at the University of Illinois in January of 2016.
23.     Mr. Christensen accepted the advice of his wife, Michelle, and advisor in seeking psychiatric treatment in January of 2016.
24.     Mr. Christensen continued to suffer from depression, anxiety and sleep problems despite medical treatment from January 2016 through June of 2017.

25.     Mr. Christensen sought professional counseling for his alcohol and drug abuse in March of 2017 at the University of Illinois Counseling Center.

26.     During two separate meetings with the UICC Staff in March of 2017, Mr. Christensen repeated to the counselors that he was having thoughts of suicide and homicide.

27.     Mr. Christensen confessed to the counselors at the UICC that he had a plan for how to commit a murder, that he had purchased items to facilitate his plan to commit a murder, that he knew his thoughts were wrong and disturbing to others, and that he did not want to be that kind of person.

28.     Mr. Christensen sought professional psychological counseling for his alcohol and drug abuse in March of 2017 at the University of Illinois Counseling Center, where he told the counselor that he could not see a path forward without his wife Michelle.

29.     There is an extensive history of alcoholism and/or substance abuse on both sides of Mr. Christensen's family which is a factor suggesting his own predisposition to alcoholism and/or substance abuse.

30.     Mr. Christensen abused alcohol and prescription drugs in an attempt to self-medicate and control his psychological problems.

31.     The breakdown of Mr. Christensen's marriage caused him severe emotional stress.

32.     In order to save his marriage, Mr. Christensen agreed to his wifeMichelle's proposal that they both be free to date and have sex with other people.

33.     Mr. Christensen was particularly distressed the weekend of June 9, 2017, because his wife Michelle, went on a weekend trip with another man to the place where they spent their honeymoon.

34.     After Mr. Christensen sought help for his substance abuse and intrusive suicidal and homicidal thoughts in March of 2017, the University Counseling Center failed to provide appropriate services to him, including failing to refer and coordinate with mental health professionals at the University Health Center.

35.     After Mr. Christensen sought help for his substance abuse and intrusive suicidal and homicidal thoughts in March of 2017, the University Counseling Center failed to obtain medical records and develop an adequate treatment and safety plan to address the homicidal and suicidal ideations he expressed.

36.     After Mr. Christensen sought help for his substance abuse and intrusive suicidal and homicidal thoughts in March of 2017, the University Counseling Center failed to conduct an adequate follow-up with him.

37.     After Mr. Christensen sought help for his substance abuse and intrusive suicidal and homicidal thoughts in March of 2017, the University Counseling Center failed to adequately assess and evaluate the specifics of the homicidal and suicidal ideations he expressed.

38.     In December of 2017, Mr. Christensen offered to plead guilty to the kidnapping of Yingying Zhang, resulting in her death, to fully cooperate with law enforcement and assist them in their search for Ms. Zhang's

|       | remains, to waive all appeals, and accept a sentence of life imprisonment without release. |
|-------|----------------------------------------------------------------------------------------------|
| 39.   | While incarcerated following his arrest on June 30, 2017, Mr. Christensen has had no disciplinary reports or violations. |
| 40.   | During two years of pretrial incarceration, Mr. Christensen has never possessed a weapon. |
| 41.   | Mr. Christensen has never threatened jail staff while incarcerated in jail. |
| 42.   | Mr. Christensen has never threatened any other prisoners while incarcerated at the jail. |
| 43.   | Mr. Christensen has never attempted to engage in criminal activity with outside persons while at the jail. |
| 44.   | Mr. Christensen has been respectful to all male correctional officers when incarcerated at the jail. |
| 45.   | Mr. Christensen has been respectful to all female correctional officers when incarcerated at the jail. |
| 46.   | Mr. Christensen has been respectful to all of his fellow inmates and did not cause disturbances within the jail. |
| 47.   | Mr. Christensen has adapted very well to being incarcerated. |
| 48.   | Federal law mandates that if Mr. Christensen is not sentenced to death, he will spend the rest of his life in a United States prison, with no possibility of parole or release. |
| 49.   | Mr. Christensen is unlikely to commit a serious act of violence while serving a sentence of life without possibility of release |
| 50.   | Mr. Christensen behaved respectfully during the trial in this cause. |
| 51.   | The penalty of life without the possibility of release is a severe sentence. |
| 52.   | Under all the facts and circumstances, mercy is appropriate for Mr. Christensen. |
| 53.   | All lives are valuable, including Mr. Christensen's life. |
| 54.   | Executing Mr. Christensen will not undo the harm and suffering he has caused Ms. Zhang's family and loved ones. |

One, that if he is not sentenced to death, Mr. Briseno will be sentenced to life imprisonment without the possibility of release.

Two, that the Bureau of Prisons will impose appropriate conditions of confinement and security with regard to Mr. Briseno.

Three, that Mr. Briseno is the product of a childhood marked by chaos, abuse, and abandonment.

Four, that growing up, Mr. Briseno lacked positive male role models in his home.

Five, that his mother's poor choices in the men she brought into the family home had a negative impact on Mr. Briseno.

Six, that Mr. Briseno grew up in a neighborhood plagued with drugs, gangs, and violence.

Seven, that Mr. Briseno was raised in poverty.

Eight, that Mr. Briseno's basic needs were neglected when he was a young child.

Nine, that Mr. Briseno's older brother was a gang member and a poor role model.

Ten, that Mr. Briseno was recruited into the Imperial Gangsters when he was ten or 11 years old.

Eleven, that from an early age, Mr. Briseno was unable to keep up with his peers in school.

Twelve, that Mr. Briseno's father abandoned the family when Mr. Briseno was eight.

Thirteen, that Mr. Briseno's father and his associates abused drugs and alcohol in front of his children.

Fourteen, that Mr. Briseno participated in a rehabilitative program while he was incarcerated.

Fifteen, that Mr. Briseno donated his hair to cancer patients through the program Locks for Love.

Sixteen, that Mr. Briseno has a loving relationship with his nephews.

Seventeen, if Mr. Briseno were to be executed, others would suffer grief and loss.

Eighteen, if Mr. Briseno -- Mr. Briseno has made a positive adjustment to incarceration and is likely to do so in federal prison.

Nineteen, cooperating witnesses who have killed someone will not be sentenced to death.

Twenty, the five murder victims voluntarily chose to engage in dangerous and illegal activities, a circumstance that contributed to their death.

Twenty-one, that Mr. Briseno has behaved respectfully in court.

Twenty-two, Mr. Briseno's life has value.

Twenty-three, there are other circumstances that weigh against imposing a sentence of death.

~~And, twenty-four, another defendant or defendants equally culpable in the murders will not be punished.~~

Now, I have just used these terms "aggravating factors" and "mitigating factors," and will~~I'm gonna~~ define those terms for you now. Generally speaking, these are things that concern the circumstances of the crime or the personal traits, character, or background of the defendant.

The word "aggravate" means to make worse or more offensive or to intensify. The word "mitigate" means to make less severe or to moderate.

An aggravating factor is a factor or circumstance which would tend to support imposition of the death penalty.

A mitigating factor is any aspect of the defendant's character, record, or background, and any other circumstances of the offense or any other relevant fact or circumstance which might indicate that the defendant should not be sentenced to death but should instead be sentenced to life imprisonment without the possibility of release.

After making your findings about the aggravating and mitigating factors and whether they exist in this case, each of you will then engage in a weighing process. In doing so, you must unanimously decide whether the aggravating factor or factors that you have found to exist sufficiently outweigh the mitigating factor or factors that you have found so as to justify the imposition of a death sentence.

I will give you detailed instructions on this weighing of aggravating and mitigating factors before you begin your deliberations.  However, I instruct you now that you must not simply count the number of aggravating and mitigating factors and reach a decision based on which number is greater. You must instead consider the weight and the value of each factor.

After weighing the aggravating and mitigating factors, if any one of you determines that a sentence of life without the possibility of release is more appropriate than a sentence of death, you shall enter a decision on your special verdict form to that effect and the Court shall thereafter impose on the defendant a sentence of life imprisonment without the possibility of release.

Again, whether or not the circumstances in this case justify a sentence of death on the one hand or life imprisonment without the possibility of release on the other is a decision that the law leaves entirely to you. The law never requires you to find in favor of a death sentence.

You should not take anything that I have said or done during the guilt phase of this case or anything that I say or do during this sentencing phase as indicating what I think of the evidence or what I think your decision should be.

~~All right.~~ With that overview, we'll now commence with the <u>sentencing hearing portion</u> ~~penalty phase~~ of the trial.

And we'll do that by hearing brief opening statements from each side. Remember that what the lawyers say in opening statement is not evidence and you should disregard it unless it is supported by what the evidence, in fact, shows.

~~So with that, Mr. Nozick, you may proceed with your opening statement.~~

**Exhibit 2**

DEFENDANT'S PROPOSED PRELIMINARY SENTENCING HEARING INSTRUCTIONS

The following defendant's proposed preliminary sentencing hearing instructions were modeled after the instructions given in the last federal capital case tried in the Seventh Circuit, *United States v. Juan Briseno*, No. 2:11-CR-0077 (N.D. Ind. March 3, 2015), TR Vol. 25-AM, Page 6321-31.

**Version Based Upon *Briseno* <u>with Track Changes Accepted</u>**

Members of the jury, you have unanimously found the defendant, Brent Christensen, guilty of the capital offenses of Kidnapping Resulting in Death as charged in Count One of the indictment.

You must now consider, after hearing additional evidence, whether Brent Christensen should be sentenced to death or to life imprisonment without the possibility of release.

The law leaves this decision exclusively to you, the jury. Whichever sentence you choose, death or life imprisonment without the possibility of release, the Court, is required to impose that sentence.

I am now providing you some preliminary instructions to give you an overview of your role in making the penalty determination.

I will give you more detailed instructions after the sentencing hearing  evidence is concluded, and I will give you more -- and I will also provide you with a special verdict form that will function, in part, as a checklist which will help you make your decision that is required of you and will assist you in organizing your findings.

In making your penalty findings, you may consider all of the evidence that you heard at the earlier portion of the trial as well as any additional evidence to be presented at the sentencing phase.

You will also follow the same instructions I provided to you during the guilt phase regarding consideration of the evidence and witness credibility determinations, which I will restate for you after the evidence has been presented in the sentencing hearing of the trial.

Now, as in the guilty / not guilty trial, you may take notes, but they are only aids to your memory. If your memory differs from your notes, you should rely on your memory and not on your notes.

The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection without being unduly influenced by the other jurors' notes. Notes are not entitled to any greater weight than each juror's recollection or impression of the evidence.

Now, as I advised you before the trial, not all defendants convicted of murder are legally eligible to receive the death sentence. The law does not presume that the death penalty is appropriate or required for any defendant.

So there's a procedure that you will follow at the start of your deliberations to determine if the defendant, Brendt Christensen, is legally eligible for the death sentence.

If you find that he is not, then your deliberations will be over.

If, however, the government proves beyond a reasonable doubt the facts that make the defendant legally eligible for a death sentence, you will then enter a second stage of the procedure in which you will decide whether or not a death sentence should be imposed. That involves a weighing process in which you will consider information that's favorable to the defendant along with evidence against him. And then you'll decide whether a sentence of death is appropriate.

I will explain all of this to you in more detail after you've heard the evidence, but for now I want to give you an overview of the process.

Before you may consider whether to impose a sentence of death, you must make each of the following three findings unanimously and beyond a reasonable doubt:

First, you will decide if the government has proven beyond a reasonable doubt that on the date of the capital crime charged in the Superseding Indictment the defendant was at least 18 years of age.

Second, you will decide whether the government has proven beyond a reasonable doubt at least one of the following gateway intent factors: Whether, A, the defendant intentionally killed Yingying Zhang; B, intentionally inflicted serious bodily injury that resulted in the death of Yingying Zhang; C, intentionally participated in an act contemplating that a person's life would be taken and intending that lethal force would be used in connection with a person and Yingying Zhang died as a direct result of the act; or, D, intentionally and specifically engaged in an act of violence knowing that the act created a grave risk of death to a person such that participation in the act constituted a reckless disregard for human life and Yingying Zhang died as a direct result of the act.

Third, you will then decide whether the government has proven beyond a reasonable doubt the existence of at least one statutory aggravating factor. The

factors you will consider at this point are called statutory aggravating factors because Congress specifically listed them in a statute. I will define the term "aggravating factor" for you in a few minutes.

The statutory aggravating factors that the government alleges are, one, that the death, or injury resulting in death, occurred during the commission or attempted commission of, or during the immediate flight from the commission of, kidnapping.

Two, that the defendant committed the offense in an especially heinous, cruel, or depraved manner, in that it involved torture or serious physical abuse to the victim.

Three, that the defendant committed the offense after substantial planning and premeditation to cause the death of a person.

If, after fair and impartial consideration of all of the evidence in this case, any one of you finds that the government did not prove the defendant's age, mental intent factor, or a statutory aggravating factor beyond a reasonable doubt, your deliberations will be over.

However, if you do unanimously find that these three elements have been proved beyond a reasonable doubt, you will then proceed to determine whether you unanimously find that the government has proved the existence of any nonstatutory aggravating factors beyond a reasonable doubt.

The five nonstatutory aggravating factors[1] which the government alleges are, one, the defendant caused injury, harm, and loss to Yingying Zhang and loss to her family, friends, and co-workers.

The second nonstatutory aggravating factor is that the defendant is likely to commit criminal acts of violence in the future that would constitute a continuing and serious threat to the lives and safety of others. .

The third nonstatutory aggravating factor is that the defendant has demonstrated, by statements he made following the offense, that he lacked remorse for the kidnapping resulting in the death of Yingying Zhang.

The fourth nonstatutory aggravating factor is that the victim, Yingying Zhang, was particularly vulnerable due to her small stature and limited ability to communicate in English.

The fifth nonstatutory aggravating factor is that the defendant attempted to obstruct the investigation of this offense by, at least, making false statements to investigators; destroying or concealing the victim's remains; and sanitizing the crime scene.

---

[1] Note that the defense has moved to strike these nonstatutory aggravating factor. The language is proposed here only in the event the Court denies the defense motions on these issues.

After you consider whether the government has proven the aggravating factors beyond a reasonable doubt, you will then decide whether any of you find that the defendant has proved any mitigating factors. The defendant has the burden of proving any mitigating factors. However, there's a different standard of proof as to mitigating factors.

You need not be convinced beyond a reasonable doubt about the existence of a mitigating factor. You need only be convinced that a mitigating factor exists by a preponderance of the evidence, which means that something is more likely true than not true.

Now, as I mentioned, a unanimous finding is not required regarding mitigating factors. Any one of you may find the existence of a mitigating factor regardless of the number of other jurors that may agree.

Now, the defendant has proposed 54 mitigating factors for your consideration.

They are as follows:

1. Mr. Christensen has no prior criminal record, no prior arrests, and no prior incarcerations.
2. Mr. Christensen's mother struggled with severe suicidal depression and anxiety when he was growing up.
3. Mr. Christensen's mother became a chronic alcoholic during his childhood and required both inpatient and outpatient treatment for her alcoholism.
4. There is an extensive history of mental illness on Mr. Christensen's mother's side of the family.
5. There is an extensive history of mental illness on Mr. Christensen's father's side of the family.
6. Mr. Christensen has demonstrated the capacity to be a loving and caring person.
7. Mr. Christensen was a gentle child and displayed no aggressive or violent behavior towards others while growing up.
8. Mr. Christensen provided emotional support to his sister, Andrea, while she was growing up.
9. Mr. Christensen's mother, Ellen, loves him and cares about him and is willing to support him during a sentence of life without release.
10. If Mr. Christensen is executed, his mother will suffer grief and loss.
11. Mr. Christensen's father, Michael, loves him and cares about him and is willing to support him during a sentence of life without release.
12. If Mr. Christensen is executed, his father will suffer grief and loss.
13. Mr. Christensen's sister, Andrea, loves him and cares about him and is willing to support him during a sentence of life without release.
14. If Mr. Christensen is executed, his sister will suffer grief and loss.

15.   Mr. Christensen has a long history of brain injury and dysfunction, including sleep disorders (including parasomnia, sleep terrors, and sleep paralysis), concussions, and chronic migraines.

16.   Mr. Christensen suffered from symptoms of depression throughout his life.

17.   Mr. Christensen suffered from symptoms of anxiety throughout his life.

18.   Mr. Christensen was first medicated for depression and anxiety as a teenager.

19.   Mr. Christensen struggled with addiction to alcohol beginning in college.

20.   Brendt struggled with addiction to prescription drugs, including Vicodin and Ambien, beginning in college.

21.   Mr. Christensen and his wife, Michelle, did not socialize with anyone else during their time together (2009-2017), and Michelle was Mr. Christensen's best and only friend.

22.   Mr. Christensen sought medical treatment, and ultimately prescription medication, for his psychiatric issues at the University of Illinois in January of 2016.

23.   Mr. Christensen accepted the advice of his wife, Michelle, and advisor in seeking psychiatric treatment in January of 2016.

24.   Mr. Christensen continued to suffer from depression, anxiety and sleep problems despite medical treatment from January 2016 through June of 2017.

25.   Mr. Christensen sought professional counseling for his alcohol and drug abuse in March of 2017 at the University of Illinois Counseling Center.

26.   During two separate meetings with the UICC Staff in March of 2017, Mr. Christensen repeated to the counselors that he was having thoughts of suicide and homicide.

27.   Mr. Christensen confessed to the counselors at the UICC that he had a plan for how to commit a murder, that he had purchased items to facilitate his plan to commit a murder, that he knew his thoughts were wrong and disturbing to others, and that he did not want to be that kind of person.

28.   Mr. Christensen sought professional psychological counseling for his alcohol and drug abuse in March of 2017 at the University of Illinois Counseling Center, where he told the counselor that he could not see a path forward without his wife Michelle.

29.   There is an extensive history of alcoholism and/or substance abuse on both sides of Mr. Christensen's family which is a factor suggesting his own predisposition to alcoholism and/or substance abuse.

30.   Mr. Christensen abused alcohol and prescription drugs in an attempt to self-medicate and control his psychological problems.

31.   The breakdown of  Mr. Christensen's marriage caused him severe emotional stress.

32.   In order to save his marriage, Mr. Christensen agreed to his wifeMichelle's proposal that they both be free to date and have sex with other people.

33.   Mr. Christensen was particularly distressed the weekend of June 9, 2017, because his wife Michelle, went on a weekend trip with another man to the place where they spent their honeymoon.

34.    After Mr. Christensen sought help for his substance abuse and intrusive suicidal and homicidal thoughts in March of 2017, the University Counseling Center failed to provide appropriate services to him, including failing to refer and coordinate with mental health professionals at the University Health Center.

35.    After Mr. Christensen sought help for his substance abuse and intrusive suicidal and homicidal thoughts in March of 2017, the University Counseling Center failed to obtain medical records and develop an adequate treatment and safety plan to address the homicidal and suicidal ideations he expressed.

36.    After Mr. Christensen sought help for his substance abuse and intrusive suicidal and homicidal thoughts in March of 2017, the University Counseling Center failed to conduct an adequate follow-up with him.

37.    After Mr. Christensen sought help for his substance abuse and intrusive suicidal and homicidal thoughts in March of 2017, the University Counseling Center failed to adequately assess and evaluate the specifics of the homicidal and suicidal ideations he expressed.

38.    In December of 2017, Mr. Christensen offered to plead guilty to the kidnapping of Yingying Zhang, resulting in her death, to fully cooperate with law enforcement and assist them in their search for Ms. Zhang's remains, to waive all appeals, and accept a sentence of life imprisonment without release.

39.    While incarcerated following his arrest on June 30, 2017, Mr. Christensen has had no disciplinary reports or violations.

40.    During two years of pretrial incarceration, Mr. Christensen has never possessed a weapon.

41.    Mr. Christensen has never threatened jail staff while incarcerated in jail.

42.    Mr. Christensen has never threatened any other prisoners while incarcerated at the jail.

43.    Mr. Christensen has never attempted to engage in criminal activity with outside persons while at the jail.

44.    Mr. Christensen has been respectful to all male correctional officers when incarcerated at the jail.

45.    Mr. Christensen has been respectful to all female correctional officers when incarcerated at the jail.

46.    Mr. Christensen has been respectful to all of his fellow inmates and did not cause disturbances within the jail.

47.    Mr. Christensen has adapted very well to being incarcerated.

48.    Federal law mandates that if  Mr. Christensen is not sentenced to death, he will spend the rest of his life in a United States prison, with no possibility of parole or release.

49.    Mr. Christensen is unlikely to commit a serious act of violence while serving a sentence of life without possibility of release

50.    Mr. Christensen behaved respectfully during the trial in this cause.

51.    The penalty of life without the possibility of release is a severe sentence.

52.     Under all the facts and circumstances, mercy is appropriate for Mr. Christensen.

53.     All lives are valuable, including Mr. Christensen's life.

54.     Executing Mr. Christensen will not undo the harm and suffering he has caused Ms. Zhang's family and loved ones.

Now, I have just used these terms "aggravating factors" and "mitigating factors," and will define those terms for you now. Generally speaking, these are things that concern the circumstances of the crime or the personal traits, character, or background of the defendant.

The word "aggravate" means to make worse or more offensive or to intensify. The word "mitigate" means to make less severe or to moderate.

An aggravating factor is a factor or circumstance which would tend to support imposition of the death penalty.

A mitigating factor is any aspect of the defendant's character, record, or background, and any other circumstances of the offense or any other relevant fact or circumstance which might indicate that the defendant should not be sentenced to death but should instead be sentenced to life imprisonment without the possibility of release.

After making your findings about the aggravating and mitigating factors and whether they exist in this case, each of you will then engage in a weighing process. In doing so, you must unanimously decide whether the aggravating factor or factors that you have found to exist sufficiently outweigh the mitigating factor or factors that you have found so as to justify the imposition of a death sentence.

I will give you detailed instructions on this weighing of aggravating and mitigating factors before you begin your deliberations.  However, I instruct you now that you must not simply count the number of aggravating and mitigating factors and reach a decision based on which number is greater.You must instead consider the weight and the value of each factor.

After weighing the aggravating and mitigating factors, if any one of you determines that a sentence of life without the possibility of release is more appropriate than a sentence of death, you shall enter a decision on your special verdict form to that effect and the Court shall thereafter impose on the defendant a sentence of life imprisonment without the possibility of release.

Again, whether or not the circumstances in this case justify a sentence of death on the one hand or life imprisonment without the possibility of release on the other is a decision that the law leaves entirely to you. The law never requires you to find in favor of a death sentence.

You should not take anything that I have said or done during the guilt phase of this case or anything that I say or do during this sentencing phase as indicating what I think of the evidence or what I think your decision should be.

With that overview, we'll now commence with the sentencing hearing portion of the trial.

And we'll do that by hearing brief opening statements from each side. Remember that what the lawyers say in opening statement is not evidence and you should disregard it unless it is supported by what the evidence, in fact, shows.

**Exhibit 3**

The government's proposed preliminary instructions (Instructions 1 (Introduction), 2 (Burden of Proof), and 3 (Evidence)) were filed in Doc. 399. Portions of these instructions are copied with the defendant's objections and notes made in text boxes for the Court's review:

1. INTRODUCTION TO SENTENCING HEARING

Members of the jury, you have unanimously found the defendant guilty of the capital offense of Kidnapping Resulting in Death as charged in Count One of the indictment. You must now consider whether imposition of a sentence of death is justified, or whether the defendant should be sentenced to life imprisonment without the possibility of parole.

> Note: The government's language in these proposed introductory instructions is too lengthy and is unfairly tilted toward death. For example, in the following paragraph the government's proposed language only refers to sentencing the defendant to death.
>
> By way of contract, the government's proposed preliminary sentencing trial instruction in *United States v. Briseno*, No. 2:11-CR-0077 (N.D. Ind. 2015) corresponding to this paragraph is as follows:
>
> > The law leaves this decision exclusively to you, the jury. Whichever sentence you choose – **death, or life imprisonment without the possibility of release** – the Court is required to impose that sentence.
>
> Doc. 1206-3 at 1.

The law leaves this decision exclusively to you, the jury. If you determine that the defendant **should be sentenced to death, the court is required to impose that sentence. Before you may consider whether to impose a sentence of death**, you must make each of the following three findings unanimously and beyond a reasonable doubt:

> Note: The government's proposed language above and below is effectively prescriptive and directs the jury to make particular findings in favor of death.
>
> Above: "You must make each of the following three findings unanimously and beyond a reasonable doubt."
>
> Below: "FIRST, you must find unanimously and beyond a reasonable doubt . . ."
>
> By way of contract, the government's proposed preliminary sentencing trial instruction in *United States v. Briseno*, No. 2:11-CR-0077 (N.D. Ind. 2015) corresponding to this section is as follows:
>
>> I will explain all this to you in more detail after you've heard the evidence. But, as an overview, what you will consider in deciding if the Government has proven the defendant's legal eligibility for the death sentence is threefold.
>>
>> First, you will decide if the Government has proven beyond a reasonable doubt that on the various dates of the capital crimes charged in the indictment, the defendant was at least eighteen years of age.
>>
>> Second, you will decide whether . . .
>
> Doc. 1206-3 at 3.

FIRST, you must find unanimously and beyond a reasonable doubt, that the defendant was 18 years of age, or older, at the time of the offense.

> **Commented [A1]:** This language is inappropriate. The jurors will decide whether the Government has proven this issue.

SECOND, you must find unanimously and beyond a reasonable doubt that the government has proved the existence of at least one of the following factors set forth in the federal death penalty statute, which I will call and from now on refer to as "threshold intent factors":

> **Commented [A2]:** This language is inappropriate. The jurors will decide whether the Government has proven this issue.

\* \* \* \* \*

THIRD, you must also find unanimously and beyond a reasonable doubt that the government has proved the existence of at least one aggravating factor identified by the government and set forth in the federal death penalty statute, which I will call and from now on refer to as "statutory aggravating factors." I will define the term "statutory aggravating factor" for you shortly.

> **Commented [A3]:** This language is inappropriate. The jurors will decide whether the Government has proven this issue.

If you, the jury, unanimously find that the defendant was 18 years of age or older, and that at least one threshold intent factor and at least one statutory aggravating factor have been proved beyond a reasonable doubt, you will then proceed to determine whether you unanimously find that the government has proved the existence of any non-statutory aggravating factors beyond a reasonable doubt, and whether any of you finds that the defendant has proved any mitigating factors by a preponderance of the evidence. I will define the terms "non-statutory aggravating factor" and "mitigating factor" for you shortly.

* * * * *

The government alleges the following non-statutory aggravating factors:

1.      Victim impact. The defendant caused injury, harm, and loss to Yingying Zhang and loss to her family, friends, and co-workers. The injury, harm, and loss caused by the defendant is evidenced by Yingying Zhang's personal characteristics and by the impact of her death upon her family, friends, and co-workers, and the impact of the defendant's crime on Yingying Zhang's family tends to support the death penalty.

> **Commented [A4]:** This language improperly suggests that the Court is endorsing that this alleged aggravating factor supports imposition of the death penalty.

2.      Future dangerousness of the defendant. The defendant is likely to commit criminal acts of violence in the future that would constitute a continuing and serious threat to the lives and safety of others, as evidenced by, at least, his demonstrated lack of remorse for his acts of violence; his expressed desire to be known as a killer; and his claims of additional victims and expertise in avoiding detection, and his dangerousness tends to support the death penalty.

> **Commented [A5]:** The defense has filed a pleading objecting to this aggravating factor on several grounds.

> **Commented [A6]:** The defense has filed a pleading objecting to the inclusion of the language "at least."

3.      Lack of remorse. The defendant has demonstrated, by statements he made following the offense, that he lacked remorse for the kidnapping resulting in the death of Yingying Zhang, and his lack of remorse tends to support the death penalty.

> **Commented [A7]:** The defense has filed a pleading objecting to this aggravating factor on several grounds.

4.      Vulnerability of victim. The victim, Yingying Zhang, was particularly vulnerable due to her small stature and limited ability to communicate in English, and her vulnerability tends to support the death penalty.

> **Commented [A8]:** The defense has filed a pleading objecting to this aggravating factor on several grounds.

5.      Obstruction. The defendant attempted to obstruct the investigation of this offense by, at least, making false statements to investigators; destroying or concealing the victim's remains; and sanitizing the crime scene, and this obstruction tends to support the death penalty.

The defendant alleges the following mitigating factors: [List factors]

* * * * *

1          **MR. FOLEY:**  That's correct.

2          **THE COURT:**  But I think under *Corley*, what seems to

3    be the most prudent way to proceed, is to have a hearing

4    outside the presence of the jury so I can make a reliability

5    determination as to whether or not this would be even a matter

6    that would get to the jury.

7          **MR. NOZICK:**  Sure, Judge.  What time you think you

8    would do that?  He's coming at eleven.  I was gonna talk to him

9    over lunch.  There's a chance we won't even call him.  If we do

10   it after lunch and talk to him perhaps it will resolve itself.

11         **THE COURT:**  Okay.  Let's do it after lunch.  Okay.

12      (End of bench conference.)

13         **THE COURT:**  All right.  Pete, you can call the jury.

14      (Jury in at 10:38 a.m.)

15         **THE COURT:**  All right.  You may be seated.  Good

16   morning, everyone.  Please -- I sound like a broken record, but

17   please accept my apologies.  I really don't like keeping you

18   waiting, but I had a number of matters I had to take up outside

19   of your presence that are important matters.  It's nobody's

20   fault, so don't hold it against anybody.  But please accept our

21   apologies for running late.

22      All right.  Members of the jury, you have unanimously

23   found the defendant, Juan Briseno, guilty of the capital

24   offenses of the murders in aid of racketeering of Luis Ortiz,

25   Count 9; Michael Sessum, Count 13; Miguel Mejias, Count 15;

1    Miguel Colon, Count 19; and Latroy Howard, Count 21, as charged

2    in the Fourth Superseding Indictment.

3         You must now consider, after hearing additional evidence,

4    whether Juan Briseno should be sentenced to death or to life

5    imprisonment without the possibility of release.

6         The law leaves this decision exclusively to you, the jury.

7    Whichever sentence you choose, death or life imprisonment

8    without the possibility of release, the Court, me, I'm required

9    to impose that sentence.

10        I am now providing you some preliminary instructions to

11   give you an overview of your role in making the penalty

12   determination.

13        I will give you more detailed instructions after the

14   penalty phase evidence is concluded, and I will give you more

15   -- and I will also provide you with a special verdict form that

16   will function, in part, as a checklist which will help you make

17   your decision that is required of you and will assist you in

18   organizing your findings.

19        In making your penalty findings, you may consider all of

20   the evidence that you heard at the earlier portion of the trial

21   as well as any additional evidence to be presented at the

22   sentencing phase.

23        You will also follow the same instructions I provided to

24   you during the guilt phase regarding consideration of the

25   evidence and witness credibility determinations, which I will

 1    restate for you after the evidence has been presented in the

 2    penalty phase of the trial.

 3         Now, as in the guilt phase of the trial, you may take

 4    notes, but they are only aids to your memory.  If your memory

 5    differs from your notes, you should rely on your memory and not

 6    on your notes.

 7         The notes are not evidence.  A juror who has not taken

 8    notes should rely on his or her independent recollection

 9    without being unduly influenced by the other jurors' notes.

10    Notes are not entitled to any greater weight than each juror's

11    recollection or impression of the evidence.

12         Now, as I advised you before the trial, not all defendants

13    convicted of murder are legally eligible to receive the death

14    sentence.  The law does not presume that the death penalty is

15    appropriate or required for any defendant.

16         So there's a procedure that you will follow at the start

17    of your deliberations to determine if the defendant,

18    Juan Briseno, is legally eligible for the death sentence.

19         If you find that he is not, then your deliberations will

20    be over.

21         If, however, the government proves beyond a reasonable

22    doubt the facts that make the defendant legally eligible for a

23    death sentence, you will then enter a second stage of the

24    procedure in which you will decide whether or not a death

25    sentence should be imposed.  That involves a weighing process

```
 1    in which you will consider information that's favorable to the
 2    defendant along with evidence against him.  And then you'll
 3    decide whether a sentence of death is appropriate.
 4        I will explain all of this to you in more detail after
 5    you've heard the evidence, but for now I want to give you an
 6    overview of the process.
 7        Before you may consider whether to impose a sentence of
 8    death, you must make each of the following three findings
 9    unanimously and beyond a reasonable doubt:
10        First, you will decide if the government has proven beyond
11    a reasonable doubt that on the various dates of the capital
12    crimes charged in the Indictment the defendant was at least 18
13    years of age; that's number one.
14        Second, you will decide whether the government has proven
15    beyond a reasonable doubt at least one of the following gateway
16    intent factors:  Whether, A, the defendant intentionally killed
17    any of the murder victims; B, intentionally inflicted serious
18    bodily injury that resulted in the death of the victim; C,
19    intentionally participated in an act contemplating that a
20    person's life would be taken and intending that lethal force
21    would be used in connection with a person and the victim died
22    as a direct result of the act; or, D, intentionally and
23    specifically engaged in an act of violence knowing that the act
24    created a grave risk of death to a person such that
25    participation in the act constituted a reckless disregard for
```

 1    human life and the victim died as a direct result of the act.

 2    So that's the second inquiry.

 3         Third, you will then decide whether the government has

 4    proven beyond a reasonable doubt the existence of at least one

 5    statutory aggravating factor.  The factors you will consider at

 6    this point are called statutory aggravating factors because

 7    Congress specifically listed them in a statute.  I will define

 8    the term "aggravating factor" for you in a few minutes.  But

 9    the statutory aggravating factors that the government alleges

10    are, one, that the defendant, in the commission of the

11    offenses, knowingly created a grave risk of death to one or

12    more persons in addition to the victims of the offense.  This

13    factor is alleged for Counts 13, 15, and 19.

14         Two, that the defendant committed the offenses after

15    substantial planning and premedication to cause the death of a

16    person.  This factor is alleged as to all five of the counts.

17         Three, that the defendant intentionally killed more than

18    one person in a single criminal episode.  This factor is

19    alleged as to Counts 13 and 15.

20         If, after fair and impartial consideration of all of the

21    evidence in this case, any one of you finds that the government

22    did not prove these three things beyond a reasonable doubt,

23    your deliberations will be over.

24         However, if you do unanimously find that these three

25    elements have been proved beyond a reasonable doubt, you will

1  then proceed to determine whether you unanimously find that the

2  government has proved the existence of any nonstatutory

3  aggravating factors beyond a reasonable doubt.

4      The four nonstatutory aggravating factors which the

5  government alleges are, one, that the defendant is a continuing

6  danger to the lives and safety of other persons in the custody

7  of or employed by the U.S. Bureau of Prisons and is likely to

8  commit criminal acts of violence in prison in the future as

9  evidenced by a low potential rehabilitation as demonstrated by

10  his repeated violent acts, a willingness to take human life and

11  a lack of remorse for his acts of violence, and his stated

12  desire to impose a rule requiring members of the Imperial

13  Gangsters to shoot rivals on sight.

14      The second nonstatutory aggravating factor is that the

15  defendant faces contemporaneous convictions for other criminal

16  activity, including additional murders and an attempted murder.

17      Third, that the defendant has demonstrated an allegiance

18  to and an active membership in the Imperial Gangsters.

19      And, fourth, that the defendant has caused harm and loss

20  to the victims and the victims' families.

21      After you consider whether the government has proven the

22  aggravating factors beyond a reasonable doubt, you will then

23  decide whether any of you find that the defendant has proved

24  any mitigating factors.  The defendant has the burden of

25  proving any mitigating factors.  However, there's a different

1    standard of proof as to mitigating factors.

2         You need not be convinced beyond a reasonable doubt about

3    the existence of a mitigating factor.  You need only be

4    convinced that a mitigating factor exists by a preponderance of

5    the evidence, which means that something is more likely true

6    than not true.

7         Now, as I mentioned, a unanimous finding is not required

8    regarding mitigating factors.  Any one of you may find the

9    existence of a mitigating factor regardless of the number of

10   other jurors that may agree.

11        Now, the defendant has proposed 24 mitigating factors for

12   your consideration.  They are as follows:

13        One, that if he is not sentenced to death, Mr. Briseno

14   will be sentenced to life imprisonment without the possibility

15   of release.

16        Two, that the Bureau of Prisons will impose appropriate

17   conditions of confinement and security with regard to

18   Mr. Briseno.

19        Three, that Mr. Briseno is the product of a childhood

20   marked by chaos, abuse, and abandonment.

21        Four, that growing up, Mr. Briseno lacked positive male

22   role models in his home.

23        Five, that his mother's poor choices in the men she

24   brought into the family home had a negative impact on

25   Mr. Briseno.

1        Six, that Mr. Briseno grew up in a neighborhood plagued

2   with drugs, gangs, and violence.

3        Seven, that Mr. Briseno was raised in poverty.

4        Eight, that Mr. Briseno's basic needs were neglected when

5   he was a young child.

6        Nine, that Mr. Briseno's older brother was a gang member

7   and a poor role model.

8        Ten, that Mr. Briseno was recruited into the Imperial

9   Gangsters when he was ten or 11 years old.

10       Eleven, that from an early age, Mr. Briseno was unable to

11  keep up with his peers in school.

12       Twelve, that Mr. Briseno's father abandoned the family

13  when Mr. Briseno was eight.

14       Thirteen, that Mr. Briseno's father and his associates

15  abused drugs and alcohol in front of his children.

16       Fourteen, that Mr. Briseno participated in a

17  rehabilitative program while he was incarcerated.

18       Fifteen, that Mr. Briseno donated his hair to cancer

19  patients through the program Locks for Love.

20       Sixteen, that Mr. Briseno has a loving relationship with

21  his nephews.

22       Seventeen, if Mr. Briseno were to be executed, others

23  would suffer grief and loss.

24       Eighteen, if Mr. Briseno -- Mr. Briseno has made a

25  positive adjustment to incarceration and is likely to do so in

1    federal prison.

2        Nineteen, cooperating witnesses who have killed someone

3    will not be sentenced to death.

4        Twenty, the five murder victims voluntarily chose to

5    engage in dangerous and illegal activities, a circumstance that

6    contributed to their death.

7        Twenty-one, that Mr. Briseno has behaved respectfully in

8    court.

9        Twenty-two, Mr. Briseno's life has value.

10       Twenty-three, there are other circumstances that weigh

11   against imposing a sentence of death.

12       And, twenty-four, another defendant or defendants equally

13   culpable in the murders will not be punished.

14       Now, I have just used these terms "aggravating factors"

15   and "mitigating factors," and I'm gonna define those terms for

16   you now.  Generally speaking, these are things that concern the

17   circumstances of the crime or the personal traits, character,

18   or background of the defendant.

19       The word "aggravate" means to make worse or more offensive

20   or to intensify.  The word "mitigate" means to make less severe

21   or to moderate.

22       An aggravating factor is a factor or circumstance which

23   would tend to support imposition of the death penalty.

24       A mitigating factor is any aspect of the defendant's

25   character, record, or background, and any other circumstances

1  of the offense or any other relevant fact or circumstance which

2  might indicate that the defendant should not be sentenced to

3  death but should instead be sentenced to life imprisonment

4  without the possibility of release.

5      After making your findings about the aggravating and

6  mitigating factors and whether they exist in this case, each of

7  you will then engage in a weighing process.  In doing so, you

8  must unanimously decide whether the aggravating factor or

9  factors that you have found to exist sufficiently outweigh the

10  mitigating factor or factors that you have found so as to

11  justify the imposition of a death sentence.

12      I will give you detailed instructions on this weighing of

13  aggravating and mitigating factors before you begin your

14  deliberations.  However, I instruct you now that you must not

15  simply count the number of aggravating and mitigating factors

16  and reach a decision based on which number is greater.  You

17  must instead consider the weight and the value of each factor.

18      After weighing the aggravating and mitigating factors, if

19  any one of you determines that a sentence of life without the

20  possibility of release is more appropriate than a sentence of

21  death, you shall enter a decision on your special verdict form

22  to that effect and the Court shall thereafter impose on the

23  defendant a sentence of life imprisonment without the

24  possibility of release.

25      Again, whether or not the circumstances in this case

 1   justify a sentence of death on the one hand or life

 2   imprisonment without the possibility of release on the other is

 3   a decision that the law leaves entirely to you.  The law never

 4   requires you to find in favor of a death sentence.

 5       You should not take anything that I have said or done

 6   during the guilt phase of this case or anything that I say or

 7   do during this sentencing phase as indicating what I think of

 8   the evidence or what I think your decision should be.

 9       All right.  With that overview, we'll now commence with

10   the penalty phase of the trial.

11       And we'll do that by hearing brief opening statements from

12   each side.  Remember that what the lawyers say in opening

13   statement is not evidence and you should disregard it unless it

14   is supported by what the evidence, in fact, shows.

15       So with that, Mr. Nozick, you may proceed with your

16   opening statement.

17           **MR. NOZICK:**  Thank you, Your Honor.

18       Ladies and gentlemen, during the course of the next couple

19   of days, my partner Bruce Hegyi and I are gonna change how you

20   think about this case.

21       The five murders that you have held the defendant

22   accountable for were charged as murder in aid of racketeering.

23   And up until now we have talked about and considered each

24   victim as either a Latin King, a member of the Two Six, or an

25   independent drug dealer.

**Exhibit 5**

*United States v. Juan Briseno*, (N.D. Ind. March 3, 3015), TR Vol. 25-AM, Page 6321-31:

Members of the jury, you have unanimously found the defendant, Juan Briseno, guilty of the capital offenses of the murders in aid of racketeering of Luis Ortiz, Count 9; Michael Sessum, Count 13; Miguel Mejias, Count 15; Miguel Colon, Count 19; and Latroy Howard, Count 21, as charged in the Fourth Superseding Indictment.

You must now consider, after hearing additional evidence, whether Juan Briseno should be sentenced to death or to life imprisonment without the possibility of release.

The law leaves this decision exclusively to you, the jury. Whichever sentence you choose, death or life imprisonment without the possibility of release, the Court, me, I'm required to impose that sentence.

I am now providing you some preliminary instructions to give you an overview of your role in making the penalty determination.

I will give you more detailed instructions after the penalty phase evidence is concluded, and I will give you more -- and I will also provide you with a special verdict form that will function, in part, as a checklist which will help you make your decision that is required of you and will assist you in organizing your findings.

In making your penalty findings, you may consider all of the evidence that you heard at the earlier portion of the trial as well as any additional evidence to be presented at the sentencing phase.

You will also follow the same instructions I provided to you during the guilt phase regarding consideration of the evidence and witness credibility determinations, which I will restate for you after the evidence has been presented in the penalty phase of the trial.

Now, as in the guilt phase of the trial, you may take notes, but they are only aids to your memory. If your memory differs from your notes, you should rely on your memory and not on your notes.

The notes are not evidence.   A juror who has not taken notes should rely on his or her independent recollection without being unduly influenced by the other jurors' notes. Notes are not entitled to any greater weight than each juror's recollection or impression of the evidence.

Now, as I advised you before the trial, not all defendants convicted of murder are legally eligible to receive the death sentence.The law does not presume that the death penalty is appropriate or required for any defendant.

So there's a procedure that you will follow at the start of your deliberations to determine if the defendant, Juan Briseno, is legally eligible for the death sentence.

If you find that he is not, then your deliberations will be over.

If, however, the government proves beyond a reasonable doubt the facts that make the defendant legally eligible for a death sentence, you will then enter a second stage of the procedure in which you will decide whether or not a death sentence should be imposed. That involves a weighing process in which you will consider information that's favorable to the defendant along with evidence against him. And then you'll decide whether a sentence of death is appropriate.

I will explain all of this to you in more detail after you've heard the evidence, but for now I want to give you an overview of the process.

Before you may consider whether to impose a sentence of death, you must make each of the following three findings unanimously and beyond a reasonable doubt:

First, you will decide if the government has proven beyond a reasonable doubt that on the various dates of the capital crimes charged in the Indictment the defendant was at least 18 years of age; that's number one.

Second, you will decide whether the government has proven beyond a reasonable doubt at least one of the following gateway intent factors: Whether, A, the defendant intentionally killed any of the murder victims; B, intentionally inflicted serious bodily injury that resulted in the death of the victim; C, intentionally participated in an act contemplating that a person's life would be taken and intending that lethal force would be used in connection with a person and the victim died as a direct result of the act; or, D, intentionally and specifically engaged in an act of violence knowing that the act created a grave risk of death to a person such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act. So that's the second inquiry.

Third, you will then decide whether the government has proven beyond a reasonable doubt the existence of at least one statutory aggravating factor. The factors you will consider at this point are called statutory aggravating factors because Congress specifically listed them in a statute. I will define the term "aggravating factor" for you in a few minutes.

But the statutory aggravating factors that the government alleges are, one, that the defendant, in the commission of the offenses, knowingly created a grave risk of

death to one or more persons in addition to the victims of the offense. This factor is alleged for Counts 13, 15, and 19.

Two, that the defendant committed the offenses after substantial planning and premedication to cause the death of a person. This factor is alleged as to all five of the counts.

Three, that the defendant intentionally killed more than one person in a single criminal episode. This factor is alleged as to Counts 13 and 15.

If, after fair and impartial consideration of all of the evidence in this case, any one of you finds that the government did not prove these three things beyond a reasonable doubt, your deliberations will be over.

However, if you do unanimously find that these three elements have been proved beyond a reasonable doubt, you will then proceed to determine whether you unanimously find that the government has proved the existence of any nonstatutory aggravating factors beyond a reasonable doubt.

The four nonstatutory aggravating factors which the government alleges are, one, that the defendant is a continuing danger to the lives and safety of other persons in the custody of or employed by the U.S. Bureau of Prisons and is likely to commit criminal acts of violence in prison in the future as evidenced by a low potential rehabilitation as demonstrated by his repeated violent acts, a willingness to take human life and a lack of remorse for his acts of violence, and his stated desire to impose a rule requiring members of the Imperial Gangsters to shoot rivals on sight.

The second nonstatutory aggravating factor is that the defendant faces contemporaneous convictions for other criminal activity, including additional murders and an attempted murder. Third, that the defendant has demonstrated an allegiance to and an active membership in the Imperial Gangsters. And, fourth, that the defendant has caused harm and loss to the victims and the victims' families.

After you consider whether the government has proven the aggravating factors beyond a reasonable doubt, you will then decide whether any of you find that the defendant has proved any mitigating factors. The defendant has the burden of proving any mitigating factors. However, there's a different standard of proof as to mitigating factors.

You need not be convinced beyond a reasonable doubt about the existence of a mitigating factor. You need only be convinced that a mitigating factor exists by a preponderance of the evidence, which means that something is more likely true than not true.

Now, as I mentioned, a unanimous finding is not required regarding mitigating factors.Any one of you may find the existence of a mitigating factor regardless of the number of other jurors that may agree.

Now, the defendant has proposed 24 mitigating factors for your consideration. They are as follows:

One, that if he is not sentenced to death, Mr. Briseno will be sentenced to life imprisonment without the possibility of release.

Two, that the Bureau of Prisons will impose appropriate conditions of confinement and security with regard to Mr. Briseno.

Three, that Mr. Briseno is the product of a childhood marked by chaos, abuse, and abandonment.

Four, that growing up, Mr. Briseno lacked positive male role models in his home.

Five, that his mother's poor choices in the men she brought into the family home had a negative impact on Mr. Briseno.

Six, that Mr. Briseno grew up in a neighborhood plagued with drugs, gangs, and violence.

Seven, that Mr. Briseno was raised in poverty.

Eight, that Mr. Briseno's basic needs were neglected when he was a young child.

Nine, that Mr. Briseno's older brother was a gang member and a poor role model.

Ten, that Mr. Briseno was recruited into the Imperial Gangsters when he was ten or 11 years old.

Eleven, that from an early age, Mr. Briseno was unable to keep up with his peers in school.

Twelve, that Mr. Briseno's father abandoned the family when Mr. Briseno was eight.

Thirteen, that Mr. Briseno's father and his associates abused drugs and alcohol in front of his children.

Fourteen, that Mr. Briseno participated in a rehabilitative program while he was incarcerated.

Fifteen, that Mr. Briseno donated his hair to cancer patients through the program Locks for Love.

Sixteen, that Mr. Briseno has a loving relationship with his nephews.

Seventeen, if Mr. Briseno were to be executed, others would suffer grief and loss.

Eighteen, if Mr. Briseno -- Mr. Briseno has made a positive adjustment to incarceration and is likely to do so in federal prison.

Nineteen, cooperating witnesses who have killed someone will not be sentenced to death.

Twenty, the five murder victims voluntarily chose to engage in dangerous and illegal activities, a circumstance that contributed to their death.

Twenty-one, that Mr. Briseno has behaved respectfully in court.

Twenty-two, Mr. Briseno's life has value.

Twenty-three, there are other circumstances that weigh against imposing a sentence of death.

And, twenty-four, another defendant or defendants equally culpable in the murders will not be punished.

Now, I have just used these terms "aggravating factors" and "mitigating factors," and I'm gonna define those terms for you now.        Generally speaking, these are things that concern the circumstances of the crime or the personal traits, character, or background of the defendant.

The word "aggravate" means to make worse or more offensive or to intensify. The word "mitigate" means to make less severe or to moderate.

An aggravating factor is a factor or circumstance which would tend to support imposition of the death penalty.

A mitigating factor is any aspect of the defendant's character, record, or background, and any other circumstances of the offense or any other relevant fact or circumstance which might indicate that the defendant should not be sentenced to death but should instead be sentenced to life imprisonment without the possibility of release.

After making your findings about the aggravating and mitigating factors and whether they exist in this case, each of you will then engage in a weighing process. In doing so, you must unanimously decide whether the aggravating factor or factors

that you have found to exist sufficiently outweigh the mitigating factor or factors that you have found so as to justify the imposition of a death sentence.

I will give you detailed instructions on this weighing of aggravating and mitigating factors before you begin your deliberations.  However, I instruct you now that you must not simply count the number of aggravating and mitigating factors and reach a decision based on which number is greater. You must instead consider the weight and the value of each factor.

After weighing the aggravating and mitigating factors, if any one of you determines that a sentence of life without the possibility of release is more appropriate than a sentence of death, you shall enter a decision on your special verdict form to that effect and the Court shall thereafter impose on the defendant a sentence of life imprisonment without the possibility of release.

Again, whether or not the circumstances in this case justify a sentence of death on the one hand or life imprisonment without the possibility of release on the other is a decision that the law leaves entirely to you. The law never requires you to find in favor of a death sentence.

You should not take anything that I have said or done during the guilt phase of this case or anything that I say or do during this sentencing phase as indicating what I think of the evidence or what I think your decision should be.

All right. With that overview, we'll now commence with the penalty phase of the trial.

And we'll do that by hearing brief opening statements from each side. Remember that what the lawyers say in opening statement is not evidence and you should disregard it unless it is supported by what the evidence, in fact, shows.

So with that, Mr. Nozick, you may proceed with your opening statement.