UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Crim. No. 17-20037 |
| BRENDT A. CHRISTENSEN, | ) ) ) |
| Defendant. | ) |

**RESPONSE TO MOTION TO PRECLUDE DR. SORENSEN FROM PRESENTING POWERPOINT SIDES, AND REQUEST FOR PRODUCTION OF INFORMATION RELATIVE TO THE REBUTTAL TO THE TESTIMONY OF DR. SORENSEN**

The government has once again filed a motion on the eve of the mitigation hearing in this case to exclude or substantially censor the testimony of Dr. Sorensen. See *Motion*, Dkt 441. The focus of this motion seems to be its contention that Dr. Sorensen should not be permitted to testify concerning studies that he has authored or considered involving state inmates, which corroborate those relative to federal inmates as well as his opinions. This very contention was denied by the Court only a few days ago, and the government offers nothing new on the point. Thus, this part of the motion should be summarily denied. Second, the government's attempt to reduce and reframe its burden of proof with respect to the future dangerousness aggravator it has alleged, as reflected in its discussion of Slide 47, should be rejected.

I. **The Government Offers No Reason or Authority for the Court to Reconsider Its Ruling that Dr. Sorensen May Use State Prison Statistics and Studies to Explain and Corroborate His Opinions**

The principal claim in the government's motion is that the Court should preclude Dr. Sorensen from testifying concerning any state studies which corroborate his conclusions, and thus the accompanying slides should either be withdrawn from his PowerPoint presentation or, in some instances, excised. Thus, the government claims that Slides 8, 11, 12, 13, 16, 17, 18, 19, 20, 21, 25, 26, 27, 29, 31, 322, 34, 35, 36, 37, 40, 43, 48, 50, 51, 52, 53, 54, 55 and 58 should be eliminated. For each of these slides, the pleading simply repeats verbatim the same mantra: "Given that this slide is not based on studies of federal inmates, any testimony thereon will necessarily lead to misleading and confusing testimony about comparative conditions of confinement." *Id.*, *in passim*. As to slides 25, 29, 34, 40 and 44, the government claims references to state studies or statistics should be redacted. *Id*. This very contention was argued by the government in the hearing of July 27, 2019, and denied by the Court in its Order the following day. *See* Dkt. 431, Order (July 28, 2019) ("Given the fact that the United States will have the opportunity to cross-examine Dr. Sorensen on the bases underlying his opinions and relevance of his statistics, the Court declines to prohibit Dr. Sorensen's use of state prison statistics at this time.").

Nothing in the government's motion suggests any authority or reason to reconsider.

In support of its argument, the government only cites this Circuit's holding in *United States v. Johnson*, 223 F.3d 665, 672-675 (7th Cir. 2000), that evidence of the

existence of control units in maximum-security institutions is not mitigating within the meaning of the Federal Death Penalty Act. Although Mr. Christensen does not believe *Johnson* is correctly decided insofar as it is interpreted as limiting a capital defendant's right to respond to allegations of future dangerousness, as opposed to affirmatively proving proposed mitigating factors,[1] he has repeatedly signaled he has no intention to elicit any testimony from Dr. Sorensen concerning prison conditions, the mechanisms available to prison officials to prevent or control violence, or evidence of the type referenced in *Johnson*, unless the topic is opened by the government.[2] Thus, consistent with the Court's Order of June 28, Dkt. 431, at 3-4, as well as counsel's prior representations, in eliciting testimony from Dr. Sorenson concerning the relevant studies outlined in his PowerPoint, the defense does not intend to get into, on direct examination, the issue of particular security measures available in either state or federal prisons.

---

[1] The Supreme Court has never ruled on the issue decided in *Johnson*. The language from *Johnson* cited by the Court in its Order, Dkt. 431, at 3-4, addresses the issue of such evidence to establish a *mitigating factor*. As discussed in Mr. Christensen's response to the government's initial motion in limine, there are two issues involved here: rebuttal of the aggravating factor alleged by the government, which must be proven by the government beyond a reasonable doubt, and proof of the corresponding mitigating factor alleged by the defendant, which must be proven by a preponderance of the evidence. *See* Dkt 290, at 6-11 (discussing Sorensen testimony in connection with rebutting aggravating factor of future dangerousness) and 12-14 (discussing issue in terms of mitigation). It is true that the discussion at pages 671-675 in *Johnson* began with a recital that the government had alleged future dangerousness as an aggravating factor, *id.*, at 671, but the language at the end of this section of the opinion suggested an analysis in terms of establishing mitigation rather than rebutting aggravation. Regardless, the distinction is of no moment here, in light of Mr. Christensen's representation that he does not intend to elicit on direct examination any evidence of the kind discussed at pages 674-75 of *Johnson*.

[2] *See* Dkt. 290, at 14; Dkt, 348, at 2; Transcript 4-28-19 (Sealed), at 7-8. Mr. Christensen's initial response to the government's motion in limine left open the possibility that Dr. Sorensen would perhaps give "one sentence" of testimony, describing the variety of security measures available within BOP to control recalcitrant inmates, but withdrew even this limited intention in the hearing of April 28. *Id.*, at 8.

As it is wont to do, the government presents an *in terrorem* argument that testimony based on state studies "cannot be presented without requiring a detailed [sic] of the conditions of confinement between the United States Penitentiaries and prisons in those states." *Motion*, at 3. Of course, this isn't true. To the extent that the government wants to make the point that security conditions may vary from prison to prison (which would be the case even if the testimony was limited to BOP data) and between state and federal prisons, Dr. Sorensen will likely readily concede that issue for whatever it is worth – which, logically isn't much. If Dr. Sorensen proposed to testify, concerning material *differences* in the data between state and federal prisons, alleged cross-examination concerning the possible differences in security procedures might have some logical import. But, where, as reflected in the numerous studies set out in Dr. Sorensen's PowerPoint and expected corresponding testimony, the data is basically the *same*, any alleged material difference in security measures is basically meaningless – whether the state's security measures are less stringent, basically the same (likely the case), or more stringent makes no difference. As stated, any material differences (if they exist) might explain different data outcomes, but not the same.

Thus, the government's assertion that admission of this testimony would require a "detailed" inquiry into the different conditions of confinement between federal and state prisons is bombast, likely injected for the purpose of misleading the Court into ruling on the basis of irrelevant considerations of delay or time, which, in any event are specifically excluded under § 3593(c), as reasons for excluding evidence in the penalty

phase of a capital trial.[3] While the government claims that the evidence would potentially mislead the jury or confuse the issues, nowhere does it explain why this is so, or why a straightforward cross-examination pointing out the fact that some of the studies involve state rather than federal prisons and that the security measures may not be identical would not suffice.[4] To the extent that the government elects to unnecessarily go further, Mr. Christensen reserves the right to appropriately respond through re-direct examination.

## II. The Government's Objection to Slide 47 is Misplaced

The government's objects to Slide 47 on the additional ground that it improperly states that there is "no scientific model" that accurately predicts whether a defendant is likely to commit "serious prison violence" in the future. According to the government, this misstates what it is required to prove, namely that, in its view, a defendant is only likely to commit an act of violence in the future that "would constitute a continuing and serious threat to the lives and safety of others." The government thus complains that it need not prove that Mr. Christensen is either likely to commit an act of violence in the future or that such act need itself be "serious." *Motion*, at 20.

---

[3] Contrast § 3593, permitting exclusion of evidence with Fed. R. Evid. 403.

[4] In light of the Court's ruling, there is no need to get into a detailed discussion of applicable evidentiary rules, which ensure the threshold reliability of the evidence. *See generally United States v. Scheffer*, 523 U.S. 303, 309 (1998) (pointing out that particular provisions of Federal Rules of Evidence are designed to address reliability concerns, including those related to expert testimony. It is hardly surprising that an expert such as Dr. Sorensen would consider and rely on other studies corroborating his expected testimony on the relationship of the six factors which the defense has noticed as suggesting Mr. Christensen would not present a danger in the future if serving a sentence of life without release. *See* Transcript, 6-27, at 18-19.

5

As to the latter contention, the attempt to draw this distinction as to what constitutes a "continuing and serious threat to the lives and safety of others" is unconstitutionally vague, as explained in Mr. Christensen's *Motion to Strike Aggravating Factor Alleging Future Dangerousness*, Dkt. 122, at 12-15. Particularly problematic is how is the jury to measure the *risk* that Mr. Christensen will commit a violent act in the future without further guidance and *how much* risk must be present to support a finding that Mr. Christensen will pose such a risk – the very two same problems that, *inter alia*, the Court found vague in *Johnson v. United States*, 135 S. Ct. 2551 (2015).

As to the complaint about Slide 47, as argued elsewhere, the "likely to commit" language of ¶ III-2 of the Notice of Intent, *see* Dkt. 54, unconstitutionally dilutes the reasonable doubt burden of proof required by the FDPA and the Fifth and Eighth Amendments, s*ee e.g.* 18 U.S.C. § 3593(c) (aggravating factors must be proven beyond a reasonable doubt), by injecting a preponderance standard into the determination of whether Mr. Christensen will commit crimes of violence in the future. The language of the future danger aggravating factor drafted was not created by Congress. None of other aggravating factors defined by Congress suggest that a jury may base a sentence of death on a forecast of criminal conduct in the *future*, as opposed to focusing on past convictions and conduct. *See e.g.* 18 U.S.C. § 3592. The "likely" language of ¶III-2 is entirely government-created, the effect of which, if not the purpose, is to lessen its burden of proving what Dr. Sorensen's testimony demonstrates is essentially unprovable and unreliable. In addition to all the other problems with the future dangerousness aggravator, the direction to the jury that its mission is to determine

6

beyond a reasonable doubt whether something is probable is as incomprehensible and vague as other aggravating factors found unconstitutionally vague. *See e.g. Maynard v. Cartwright*, 486 U.S. 356 (1988).

Slide 47 simply states a fact the government cannot disprove: that "no scientific model" has been able to accurately predict what whether an inmate will commit a serious act of violence in prison in the future. To the extent the government wishes to nonetheless attempt to challenge this, it is free to cross-examine Dr. Sorensen as to the existence and substance of such a model, as well as try to convince direct the jury's attention in argument to whatever instruction the Court ultimately gives in reference to the issue of future dangerousness.

**III.   The Court Should Require the Government to Immediately Disclose Information Concerning Any Specific Act of Violence Committed by an Inmate at BOP if it Intends to Reference Such Either in Cross-Examination of Dr. Sorensen or Through Rebuttal Testimony of Warden Bayless.**

Mr. Christensen previously moved to exclude such evidence. *See* Dkt. 425. The issue was discussed, at length, in the hearing last week, *see* Transcript, June 27, 2019, 20-35. As the Court indicated, government counsel seemingly acknowledged that he did not intend to reference in either cross-examination of Dr. Sorensen or through the testimony of a rebuttal witness (that had not been disclosed at that point) any specific instances of violent conduct by an inmate at BOP, but would just attempt to counter the anticipated statistical presentation of Dr. Sorensen. *Id.*, at 27 (The Court: "I didn't hear Mr. Nelson say he was going to bring up specific instances. I heard him say he would bring up his own statistics . . . "). Nonetheless, government counsel was later somewhat

vague on this point when, in response to defense counsel's reference to issues that have arisen when specific instances are brought up for the first time in the sentencing hearing without prior notice, he stated that he had "no interest in falsifying my question," implying an intent to perhaps reference specific incidents. *Id*. 33.

The Court's Order the following day directed the government to provide "advance notice" of its intent to "use specific instances of prisoner misconduct outside the scope of Dr. Sorensen's report or studies," Dkt. 431, at 5, but did not establish a deadline to do so. Inasmuch as the penalty phase is scheduled to begin on July 8, 2019, counsel requests that the Court order the government to make any such disclosure by the end of the business day of July 8.

**IV.    The Court Should Preclude Any Rebuttal Testimony of Dr. Bayless Based on "BOP Records Regarding Rates of Violence in United States Prisons" That Have Not Been Previously Produced and Should Bar Cross-Examination of Dr. Sorensen Based on Such Records**

On June 14, 2018, Mr. Christensen requested that the government produce "[s]tudies conducted by the Bureau of Prisons or the Department of Justice, suggesting that attempts to predict future dangerousness in prison of defendants convicted of capital murder and serving a sentence of life without parole are unreliable, including any studies concerning the rate of violence in prison for inmates against whom the government has alleged future danger in prison if serving a sentence of life without parole."

On July 11, 2018, the government responded: "Regarding your specific requests regarding future dangerousness (1) we will attempt to locate any BOP or DOJ studies

8

regarding future dangerousness in prison . . . "   Despite the government's representation that information has never been provided.

Three days ago, on July 3, 2019, the government indicated that the information they indicated last year they would produce (but never did), has long been in their possession, when they announced their intention to call Associate Warden, Melissa J. Bayless from FCI Seagoville, who, according to their letter, "is in the process of analyzing BOP records regarding rates of violence in United States Prisons, and preparing a PowerPoint Report. The report and PowerPoint data will be provided to you as soon as her work is complete."

The government has been aware of the general nature of Dr. Sorensen's testimony for over four and a half months (disclosed on February 20, 2019),[5] and had possession of his detailed PowerPoint for over two months (disclosed on May 6, 2019), *Motion*, at 2, Attachment 1, yet has not disclosed any of this data, as previously represented. The Court should not permit this kind of trial by ambush and, accordingly, should preclude the government from using any of the data it has withheld or ensuing reports generated from that data in the cross-examination of Dr. Sorensen, as he is entitled to have access to, and consider in forming his opinions, all of the information

---

[5] The disclosure on February 20, 2019: "Dr. Sorensen will testify consistent with the studies that he co-authored and which are referenced in Defendant's Motion to Strike Aggravating Factor Alleging Future Dangerousness, Dkt 122, and other relevant studies, including the correlation of allegations of future dangerousness by the prosecution and others with the available data; studies of the ability to accurately predict future dangerousness; the low base rates of violence in prison and various erroneous factors that influence such decisions. Assuming you have access to these articles and are familiar with the nature of this evidence, we have not enclosed the articles of Dr. Sorensen referenced in the cited motion, but are happy to provide them if requested."

that the defense initially requested that the government produce. Further, the Court should preclude the testimony of Warden Bayless, based on this information, which still, as of this date, has not been disclosed.

If the Court is inclined to permit Warden Bayless to testify in rebuttal, Mr. Christensen requests that the Court order the government to produce all data concerning any misconduct committed by prisoners in BOP during the past ten years, involving inmates with college degrees, no known affiliation with security threat groups such as gangs or terrorist organizations, who also had no prior criminal record or disciplinary violations before entering the Bureau of Prisons, as well as the age and sentence of any inmates fitting this profile.

Respectfully submitted,

/s/Elisabeth R. Pollock
Assistant Federal Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org

/s/ Robert Tucker
Robert L. Tucker, Esq.
7114 Washington Ave
St. Louis, MO 63130
Phone: 703-527-1622
Email: roberttuckerlaw@gmail.com

/s/ George Taseff
Assistant Federal Defender
401 Main Street, Suite 1500
Peoria, IL 61602
Phone: 309-671-7891
Fax:    309-671-7898
Email: George_Taseff@fd.org

/s/ Julie Brain
Julie Brain, Esq.
916 South 2nd Street
Philadelphia, PA 19147
Phone: 267-639-0417
Email: juliebrain1@yahoo.com

CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorneys Bryan D. Freres and Eugene L. Miller and Trial Attorney James B. Nelson. A copy was also mailed to the defendant.

/s/Elisabeth R. Pollock
Assistant Federal Public Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org