UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Crim. No. 17-20037 |
| ) | |
| BRENDT A. CHRISTENSEN, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S CONSOLIDATED REPLY
REGARDING VICTIM IMPACT EVIDENCE
(RESPONDING TO DOCS. 439, 442, 443)**

NOW COMES the Defendant, BRENDT A. CHRISTENSEN, through his attorneys, and responds to the government's filings regarding victim impact evidence (Docs. 439, 442, and 443). The government filings primarily address the admissibility of the government's late-noticed, video-taped, secret interviews of seven witnesses in China, and a plethora of associated physical evidence the government seeks to admit. Mr. Christensen also address here the government's effort to limit the defense cross-examination of those victim impact witnesses the government will present to the jury in person.

**Factual Background**

Since the spring, the defense has been trying to understand the scope and content of the government's anticipated victim impact evidence—evidence that courts agree is the most fraught in capital trials, *see infra* at 3. The government has resisted sharing this

1

information, despite collecting it since at least October 2018, primarily from China and assisted by Chinese law enforcement. The defense only learned of the government's secret foreign investigation following the culpability phase, when the government disclosed hours of videotapes and voluminous transcripts—and accompanying exhibits—of Mandarin-speaking witnesses who will not appear at trial. The Court denied the defense motion for a continuance to enable the defense an opportunity to properly prepare for this testimony. The parties continue to litigate both the admissibility of the late-noticed evidence and the propriety of its content. Should the Court decline to preclude the videotaped testimony, the defense anticipates making detailed objections to the evidence offered at trial.

> I. **The government's late disclosure of secret, private interviews of seven witnesses, conducted in China in tandem with Chinese law enforcement, is more than just a Confrontation Clause problem.**

The government defends its last-minute disclosure of secret interviews of key prosecution witnesses who will not appear by asserting that the Confrontation Clause does not apply in capital sentencing. As discussed below, the Supreme Court's evolving Sixth Amendment jurisprudence leaves that far from clear. But the Confrontation Clause violation was only one concern raised by the defense in Docs. 418, 419, 434, 436, 438), and the government fails to address the others—likely because its secret interviews are so indefensible. Mr. Christensen maintains that:

- The lack of notice prevented Mr. Christensen's attorneys from investigating or otherwise preparing a defense to these witnesses, in violation of the Sixth Amendment;

- The inability to investigate or question the witnesses, and obtain independent translations, undermines the heightened reliability of this proceeding, in violation of the Eighth Amendment; and

- Conducting secret interviews in a country with an authoritarian regime whose own law enforcement officers participated with the prosecutors and FBI agents violates both Due Process and the Eighth Amendment.

For these independent reasons, the video tapes and any other evidence obtained in connection with the secret interviews should be precluded.

The government's claim that Federal Rule of Criminal Procedure 15 does not apply in the penalty phase of capital trials is absurd. Neither the rule nor the commentary makes such a distinction—they simply refer to "trial." As the government well knows, deposition of foreign (and domestic) witnesses are commonly taken in Federal Death Penalty Act cases. This is based on the recognition that the penalty phase of a capital trial is an adversarial proceeding, at which both sides should have the opportunity to examine witnesses. That is particularly so—as here—when the government is sponsoring the evidence and bears the burden of proof.

To minimize its wrongdoing, the government suggests that because the victim impact is a non-statutory aggravating factor, no harm accrues. The videotaped

witnesses are not merely "victim impact" witnesses, however. On the videotapes, the government inquires of each witness about facts intended to demonstrate Ms. Zhang's vulnerability (her stature, her frame, her struggles in America), — a *statutory* aggravating factor. Even if these *were* "merely" victim impact witnesses, courts—including the Supreme Court—have recognized that victim impact evidence is among the most powerful evidence in a capital case. *See* Doc. 411 at 4-5. *See also United States v. Johnson*, 362 F. Supp. 2d 1043, 1107 (N.D. Iowa 2005) ("I can say, without hesitation, that the "victim impact" testimony . . . was the most forceful, emotionally powerful, and emotionally draining evidence that I have heard in any kind of proceeding in any case, civil or criminal, in my entire career as a practicing trial attorney and federal judge spanning nearly 30 years."). Depriving the defense of any opportunity to address such evidence cannot be tolerated when the evidence will be weighed in the life or death decision. The government's gamesmanship should not be rewarded.

    **II.    Sixth Amendment Protections should apply fully in the penalty phase of a capital trial, not just to eligibility questions.**

The government's Sixth Amendment arguments are not dispositive. It remains an open question whether and, if so, to what extent, the Sixth Amendment's Confrontation Clause applies to a federal capital sentencing hearing, and thus, for example, prohibits the government from introducing testimonial hearsay, under *Crawford v. Washington*, 541 U.S. 36 (2004). Only three circuits have ruled on this issue—none since the Supreme Court's decision in *Hurst v. Florida*, -- U.S. --, 136 S. Ct. 616 (2016)—and all in split decisions or with some exception. *See United States v. Umana*, 750

F.3d 320 (4th Cir. 2013) (Gregory, J., dissenting), *rehearing en banc denied* (8-5) 762 F.3d 413 (4th Cir. 2014); *Muhammad v. Sec'y, Fla. Dep't of Corrections*, 733 F.3d 1065, 1073–77 (11th Cir. 2013); *United States v. Fields*, 483 F.3d 313, 324-326 (5th Cir. 2007) (Benavides, J., dissenting). The Seventh Circuit has not decided the issue.[1] The government's discussion in Doc. 443 conveniently ignores all this, citing case law predating *Hurst* and failing to acknowledge adverse authority.

Defense Sixth Amendment challenges to charging and sentencing procedures under the Federal Death Penalty Act have renewed vigor after *Hurst*. In *Hurst*, the Supreme Court held that, under *Apprendi* and *Ring v. Arizona*, 536 U.S. 584 (2002), sentencing procedures that Florida had used for over forty years violated the Sixth Amendment right to jury trial. Before *Hurst*, some state courts had held that weighing aggravating and mitigating circumstances is a determination of fact for purposes of *Apprendi*, whereas federal courts reached the opposite conclusion (though sometimes over dissenting opinions). In *Hurst*, however, Justice Sotomayor spoke for seven Justices in characterizing the weighing required by Florida law as a finding of *fact*. 136 S. Ct. at 619-21. This warrants considering again the proper treatment under the Constitution of non-statutory aggravating factors, the weighing required by the FDPA, and other procedural protections in the penalty phase. In light of *Hurst*, there is no sound basis for treating any part of the penalty phase as outside the scope of the Sixth Amendment.

---

[1] We discuss the government's misleading citation to *Szabo v. Walls*, below, in Point III.

It follows from *Hurst,* and the reality that weighing is fact-finding, that non-statutory aggravating factors must be treated no differently from statutory aggravating factors. A death verdict may only be returned after the jury has determined the presence of aggravating factors – both statutory and non-statutory – and determined that they sufficiently outweigh any mitigating factors. *See* 18 U.S.C. § 3593(e). As a practical matter, non-statutory aggravating factors are critical to juries' imposition of death in FDPA cases. *Cf.* Scott E. Sundby, *A life and Death Decision: A Jury Weighs the Death Penalty* 19-20, 121 (2005) (describing examples of influence of non-statutory aggravating factors).

Because of *Hurst*, any adverse Sixth Amendment precedent cited by the government (whether about non-statutory aggravating factors or about the Confrontation Clause) must be reexamined. *See United States v. Wahi*, 850 F.3d 296, 302 (7th Cir. 2017). That reexamination is underway in other jurisdictions. Indeed, the Delaware Supreme Court, which had previously held that "Ring does not extend to the weighing phase," *Brice v. State*, 815 A. 2d 314, 322 (Del. 2003), has decided that the Sixth Amendment requires that weighing be conducted by a jury, unanimously beyond a reasonable doubt. *See Rauf v. State*, 145 A.3d 430 (2016).

### III. Confrontation Clause precedent is not settled, whether before or after Hurst, and the Seventh Circuit has not decided the question in the FDPA context.

The government incorrectly implies that Confrontation Clause precedent in the FDPA context is settled in its favor. Both before and since *Hurst*, however, multiple

district courts had decided that *Crawford* does apply to the penalty phase of a capital trial. *See, e.g.*, *United States v. Fell*, 2017 WL 9938048 (D. Vt. May 1, 2017) ("The constitutional requirement of *Ring* and *Apprendi* is not satisfied by applying Crawford to the threshold jury determination of eligibility and conducting the selection or 'weighing' phase according to different rules. . . . *Hurst* takes the analysis one step further. Not only eligibility but selection must also be determined by jurors . . . . If the Sixth Amendment applies and if aggravating factors are the responsibility of the jury for purposes of *Apprendi*, then they must also be subject to *Crawford*"); *United States v. Sampson*, 2016 WL 5024194 (D. Mass. Sept. 16, 2016) (holding that government BOP witnesses "lacking in personal knowledge may not offer hearsay testimony to prove what happened"); *United States v. Pleau*, 2013 WL 1673109, at **4, 6 (D.R.I. Apr. 17, 2013) (unpublished) (ordering hearing because government indicated intent to rely on police reports and witness statements to help establish other-acts-of-violence and future-dangerousness aggravators, whereas "[t]he Supreme Court has, however, emphasized the need for "heightened reliability in such proceedings" and that some district courts "have required the government to prove aggravating factors without relying on hearsay evidence"); *United States v. Taveras*, 585 F. Supp. 2d 327, 340 (E.D.N.Y. 2008) ("The court will not permit the government's expert [] to present communicated out-of-court testimonial statements of cooperating witnesses and confidential informants directly to the jury in the guise of an expert opinion."); *United States v. Mills*, 446 F. Supp. 2d 1115, 1135-1139 (C.D. Cal. 2006) (prohibiting introduction of testimonial hearsay at penalty

phase, because Confrontation Clause and *Crawford* apply to both the eligibility phase and the selection phase of a capital sentencing hearing); *United States v. Sablan*, 2008 WL 700172, at **1-2 (D. Colo. Mar. 13, 2008) (unpublished) (same).

The Seventh Circuit has not decided this issue. *Szabo v. Walls*, relied upon by the government, Doc 443 at 3-4, does not in fact address the point, other than by citation to *Williams v. New York*, 337 U.S. 241 (1949), and other cases that predated *the 1985 sentencing at issue* in this collateral review case. Indeed, the *Szabo* court acknowledges the changes that the *Apprendi* doctrine would likely bring. 313 F.3d 392, 399 (7th Cir. 2003) ("*Apprendi* and *Ring* may portend more changes and may eventually be applied to the balancing phase of capital sentencing . . . . *Williams v. New York* shows that in 1985 Illinois was entitled to proceed as it did."). The evidence at issue here—secret interviews by the government, conducted in tandem with an authoritarian regime on foreign soil, some nine months before they were disclosed to the defense on the eve of the penalty phase—is not the otherwise reliable information that makes the case that truth-seeking can be accomplished without confrontation. *Compare Williams*, 337 U.S. at 244 (relying on presentencing investigation report).

**IV.    The victim impact evidence being offered here is unnecessarily extensive and cumulative for a one-victim case, where live witnesses are available.**

The defense is still reviewing the extraordinary volume of evidence dumped by the government in the waning days of the break between the culpability and penalty phases—evidence which the government has had in its possession at least since October

2018. We hope to make further objections before and during the presentation of the evidence in open court.[2] We note, however, the difficult position this presents for the defense, when timely disclosure of the evidence should have permitted appropriate motions practice.

In response to Mr. Christensen's objection to the volume of the evidence, the government compares the size of the victim impact case to the size of the defense penalty case. This gravely misunderstands the purpose of a capital sentencing trial and of victim impact evidence. Mr. Christensen has explained that victim impact evidence is not intended to create parity between the victims and the defendant before the jury. To the contrary, the Supreme Court was clear in *Payne* that victim impact evidence was to be just a piece of a proceeding designed to give a "quick glimpse" of the victim's life, to assure she did not become a "faceless stranger" to the jury. *See* 501 U.S. 808, 822-827 (1991). *See also* 501 U.S. at 8830-3 (O'Connor, White, and Kennedy, J.J., concurring) (830-31) ("We do not hold today that victim impact evidence must be admitted, or even that it should be admitted. We hold merely that if a State decides to permit consideration of this evidence, 'the Eighth Amendment erects no per se bar.' Ante, at 2609. If, in a particular case, a witness' testimony or a prosecutor's remark so infects the sentencing

---

[2] We note, for example, that although the government pledged that its victim impact evidence would not include comment on the defendant's character or opinion regarding punishment, *see* Doc. 442 at 3, our review to date has revealed that several of the videotape clips the government intends to introduce include such testimony.

proceeding as to render it fundamentally unfair, the defendant may seek appropriate relief under the Due Process Clause of the Fourteenth Amendment.").

Courts have therefore taken care to assure that the victim impact evidence does not overwhelm the proceeding. Here, for a one-victim case, the government proposes eleven witnesses, and as-yet untold exhibits. By contrast, in the Oklahoma City bombing case, Timothy McVeigh was convicted for killing 168 people, but just 38 victim impact witnesses testified. *See United States v. McVeigh*, 153 F.3d 1156, 1216 (10th Cir. 1998). In *United States v. Tsarnaev*, the Federal Death Penalty Resource Counsel Project has informed counsel that thirteen victim family members and survivors testified on behalf of the three victims and 264 survivors. And, in *United States v. Moussaoui*, the press reported that the prosecutors kept victim impact testimony to just thirty minutes per witness, but that Judge Brinkema warned them nonetheless that they should avoid overly prejudicial evidence. *See* Joel Roberts, "Moussaoui at Trial: 'Burn in the USA'", CBSNews (Apr. 10, 2006), *available at* http://www.cbsnews.com/news/moussaoui-at-trial-burn-inthe-usa/.

Our cursory review of the evidence indicates that besides being extensive, it will be cumulative. Each witness will testify to substantially similar information: that Ms. Zhang was a devoted daughter and sister, that she was a kind and generous friend, that she was a hard working student, and that she had an infectious energy and spirit. Repeating this testimony through eleven witnesses—and countless photographs of Ms. Zhang with friend and of gifts she gave to friends—is unnecessary, unfair, and violates

the Fifth and Eighth Amendments, and § 3593(c). The government should be instructed to limit its evidence accordingly.

### V. The video of Ms. Zhang singing should be excluded.

The defense is informed—but has not yet been able to locate amongst all the recently disclosed material—that the government has disclosed and intends to offer a videotape of the victim singing. For the same reasons that the victim's journals should be excluded, her singing should be excluded, as well. *See* Doc. 411 at 10-11. In addition, the singing should be excluded because it is effectively described by several witnesses in their proposed testimony, making admission of the tape unnecessary. Other courts have excluded such evidence. *McVeigh*, 153 F.3d at 1221-22 (excluding wedding videos).

### VI. The Court should not determine the limits of cross-examination before hearing the direct testimony.

The government asks the Court to limit the defense cross-examination of the victim impact witnesses. The Court should not consider limiting cross-examination without knowing the scope of direct examination, which the government has refused to proffer (and the Court has declined to order).

WHEREFORE, Mr. Christensen requests that, having denied his continuance motion, the court limit the victim impact testimony as previously requested.

Respectfully submitted,

| | |
|---|---|
| /s/Elisabeth R. Pollock<br>Assistant Federal Defender<br>300 West Main Street<br>Urbana, IL 61801<br>Phone: 217-373-0666<br>FAX:   217-373-0667<br>Email: Elisabeth_Pollock@fd.org | /s/ George Taseff<br>Assistant Federal Defender<br>401 Main Street, Suite 1500<br>Peoria, IL 61602<br>Phone: 309-671-7891<br>Fax:    309-671-7898<br>Email: George_Taseff@fd.org |
| /s/ Robert Tucker<br>Robert L. Tucker, Esq.<br>7114 Washington Ave<br>St. Louis, MO 63130<br>Phone: 703-527-1622<br>Email: roberttuckerlaw@gmail.com | /s/ Julie Brain<br>Julie Brain, Esq.<br>916 South 2nd Street<br>Philadelphia, PA 19147<br>Phone: 267-639-0417<br>Email: juliebrain1@yahoo.com |

## CERTIFICATE OF SERVICE

I certify that on July 7, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorneys Bryan D. Freres and Eugene L. Miller and Trial Attorney James B. Nelson. A copy was also mailed to the defendant.

/s/Elisabeth R. Pollock
Assistant Federal Public Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org