E-FILED
Wednesday, 10 July, 2019 08:50:59 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Crim. No. 17-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | |
| | ) | |
| Defendant. | ) | |

<u>MOTION FOR MISTRIAL: A MOTION FOR MISTRIAL MUST BE GRANTED IN THIS CASE GIVEN THE PROFOUNDLY PREJUDICIAL IMPACT OF JUROR NUMBER 100384905 LEAVING THE COURTROOM IN TEARS ON THE OTHER MEMBERS OF THE JURY DURING THE GOVERNMENT'S EMOTIONAL VICTIM IMPACT EVIDENCE PRESENTATION OF THE VICTIM'S MOTHER</u>

NOW COMES the Defendant, BRENDT A. CHRISTENSEN, by and through his attorneys, and moves this Court for a mistrial, pursuant to his fundamental right to a fair trial under the Fifth, Sixth and Eighth Amendments to the United States Constitution, given the profoundly prejudicial impact of juror number 100384905 leaving the courtroom in tears on the other members of the jury during the government's emotional victim impact evidence presentation of the victim's mother.

On Tuesday, July 9, 2019, the government presented victim impact testimony of the victim's mother, Lifeng Ye, via a pre-recorded video of an interview of Ms. Ye by Assistant United States Attorney Eugene Miller. Ms. Ye was distraught and emotional in describing her pain and suffering brought about by the loss of her daughter.

1

Abruptly and without any notice or other communication to Judge Shadid or courtroom staff, juror number 100384905 stood up crying and walked briskly out the door of the courtroom leading to the jury room. Judge Shadid recessed the trial and directed the remaining jurors to exit the courtroom.

During voir dire defense counsel had moved to excuse this juror based upon hardship grounds after the juror had shared strong feelings of concern for her daughter that defense counsel anticipated might parallel testimony at trial of the victim's parents' feelings for their daughter. The motion was denied.

This scene in the courtroom was described in a WTTW online news report headlined, *Christensen Breaks Down During Emotional Testimony from Yingying Zhang's Family* and a Chicago Tribune online news report headlined, *Slain Chinese scholar's parents testify as jurors mull death penalty for killer: 'It's completely unbearable'* both dated July 9, 2019.

> As he looked down at a photo of his daughter, Yingying, just before she left for the U.S. – the last time he saw her alive – Ronggao Zhang could not contain himself. He turned away, inhaled sharply and began crying on the witness stand.
>
> Then the man convicted of killing Yingying Zhang did the same.
>
> Emotional testimony from Zhang's family got the better of many observers Tuesday in Peoria, the second day of sentencing in Brendt Christensen's capital case. He was convicted last month in the 2017 kidnapping and death of Chinese scholar Yingying Zhang and faces either life in prison or a death sentence.
>
> A red-faced Christensen wiped away tears in court after Zhang's father broke down during his testimony Tuesday afternoon. Minutes later, a

<u>female juror stood and exited the courtroom while crying as the court
watched pre-recorded testimony from Zhang's mother, Lifeng Ye,
describing how she wanted to be a grandmother.</u>

U.S District Court Judge James Shadid immediately called for a brief recess
to let the juror collect herself. After individual questioning in chambers, she
was allowed to remain on the jury.

Speaking through a translator, both Zhang's parents and her younger
brother described for jurors how she was innocent and happy, always
trying to make others smile as much as she did.

Zhang's parents said they've fallen into a deep depression and have barely
slept in the two years since she was last seen alive.

"She is part of me as if my life without her would not be complete,"
Ronggao Zhang testified. "To tell you the truth, I do not know how to live
the rest of my life."

"This wonderful daughter of mine, she is my everything," Ye said in her
video testimony. "Our entire family does not know how to carry on."

. . . .

Matt Masterson, *Christensen Breaks Down During Emotional Testimony from Yingying
Zhang's Family*, WTTW online, June 9, 2019 (last accessed July 9, 2019, at
https://news.wttw.com/2019/07/09/brendt-christensen-breaks-down-
emotional-testimony-yingying-zhang-family).

Slain Chinese scholar Yingying Zhang's father burst into tears Tuesday
when he was asked if a photo shown on the courtroom screen was taken on
the day he last saw his daughter.

Zhang was bound for the United States to study at the University of Illinois
at Champaign-Urbana, and she stood smiling, arm-in-arm with her parents.

Ronggao Zhang sobbed for a few moments before continuing to answer
questions in Chinese, which was translated into English for the jury.

"It's completely unbearable," Ronggao Zhang said through a translator.
"To tell you the truth, I do not know how to live the remainder of my life."

3

The emotional testimony from Ronggao Zhang and other family members came in the penalty phase of the trial of Brendt Christensen, 30, who was found guilty last month in Yingying

Zhang's June 2017 kidnapping and slaying. The same jury is now deciding whether he should be sentenced to death or serve a life sentence in prison.

Yingying Zhang's younger brother, Zhengyang Zhang, 25, said his sister always took care of him, trying to help him find a job even after she had left for college.

"What Yingying is to me is, she is a sister, she is a friend and she's also a teacher," Zhengyang Zhang said. "Since I lost her, I feel lost because I no longer have my teacher to guide me."

Prosecutors played a video interview with Zhang's mother, Lifeng Ye, that was translated into English. Christensen sat with his head bowed and eyes closed, and appeared to cry just before the video was played.

Ye, who also traveled to Peoria for the trial with her husband, son and Yingying Zhang's fiancé, was not in the courtroom on Tuesday. In the video interview, she said she doesn't know how to carry on without her daughter.

"This wonderful daughter of mine, she is my everything," Ye said.

"It is really, really painful. It is really, really hard," Ye said. "It is so, so difficult. Our entire family do not know how to carry on. It is just so, so hard these two years."

<u>As the recorded interview played, a juror abruptly left the courtroom, and U.S. District Judge James Shadid immediately called for a recess.</u>

The juror appeared to be crying, and defense attorney Elisabeth Pollock said she had "serious concerns" the juror's ability to be fair and impartial was compromised.

"That's the first time I've seen a juror get up and run out of the courtroom because she couldn't contain her emotions," Pollock said.

The juror met with the judge and lawyers from each side in Shadid's chambers. The judge said the juror gave "satisfactory" answers related to impartiality, and testimony continued.

Ye cried during her interview as she recounted how she hoped for her daughter to have a family of her own.

"I also so much wanted to see her in a wedding dress," she said.

Tuesday was the second day of the trial's penalty phase. Jurors have also been shown recorded interviews with some of Yingying Zhang's closest friends from high school and college, as well as video of the Zhang family home and photos of Zhang giving a presentation about her research at Peking University in China, and on her graduation day.

Xiaolin Hou said he and Yingying Zhang planned to marry in October 2017 and eventually planned to return to China, where she wanted to teach at a university.

"It totally changed my track of life," Hou said of Zhang's disappearance.

Her parents have struggled to sleep and eat, and are especially troubled over not being able to bring their daughter home for an "honorable burial," Hou said. Zhang's body has not been found.

Prosecutors also played some of the conversations between Christensen and his then-girlfriend, Terra Bullis, who wore a wire for the FBI. Christensen detailed how he killed Zhang and told Bullis that no one would find the body. In text messages, he told Bullis that the victim spoke in broken English.

Prosecutors also played phone calls between Christensen and his parents and ex-wife that were recorded while he was in jail. During one talk with his mother, Christensen speculated that Zhang was probably "a sex slave somewhere."

The prosecution is expected to formally rest their case in the sentencing phase Wednesday morning, and Christensen's defense attorneys expect to call his father, Michael Christensen, as their first witness on Wednesday.

Jamie Munks, *Slain Chinese scholar's parents testify as jurors mull death penalty for killer: 'It's completely unbearable'*, July 9, 2019 (last accessed July 9, 2019, at

https://www.chicagotribune.com/news/breaking/ct-brendt-christensen-chinese-scholar-family-20190709-epksnhul7vhd3kcexdtqupzp7e-story.html).

Strong pro-death jurors tend to have as their driving force during the deliberations a perceived need to be the voice for the victim and her survivors. Scott E. Sundby, *War and Peace in the Jury Room: How Capital Juries Reach Unanimity*, 62 Hastings L.J. 103, 105 (2010). In some instances this motivation becomes so powerful and overcomes the juror's ability to consider any other evidence when the juror identifies with and personalizes what the juror hears during victim impact testimony. Scott E. Sundby, *A Life and Death Decision: A Jury Weighs the Death Penalty* (2005). In his book Professor Sundby synthesizes interviews with numerous capital jurors who provide a first-hand account of the inner workings of jury deliberations, both on a group level and on the individual level. Juror Frank, the Twelfth Juros in *A Life and Death Decision*, personalized the decision to vote for death based on the victim impact testimony in exactly this manner. *Id.* The risk of identifying with and personalizing the victim impact testimony in a manner that overwhelms a juror's ability to consider other evidence is very real.

According to the Courtroom clerk, juror number 100384905 left the courtroom in tears and went to the jury room. After the Court called a recess, the remaining jurors were released to the jury room where they joined juror number 100384905. The jurors

where in the jury room for approximately 15 minutes before the Court called juror number 100384905 into chambers and conducted its voir dire.

The Court brought the juror into chambers with one prosecutor and one defense counsel present to question her. The juror explained her daughter had recently joined the United States Air Force and the juror had recently visited her daughter. During the visit the juror slept in the same bed with her daughter. The juror explained that hearing Ms. Zhang's mother speak about sleeping with Ms. Zhang triggered her memory of sleeping with her daughter and this caused her to lose control of her emotions and leave the courtroom. Despite the clear evidence that the juror's actions were in direct response to the government's evidence in aggravation, the juror told the Court she could still be fair and impartial. In this instance, juror number 100384905 – who not only began crying in open court but then was compelled to remove herself from the setting where the victim's mother was seen and heard on video describing her pain and suffering – cannot adequately set aside her emotions to objectively consider the evidence in this case.

In this capital sentencing hearing, the risk that juror number 100384905  has been emotionally overwhelmed by the government's evidence in aggravation and can no longer serve as an impartial juror is too great. The defense respectfully requests that this juror be excused and replaced with an alternate juror. Mr. Christensen acknowledges he previously agreed to allow juror number 100384905 to remain on the jury following the Court's voir dire of the juror. Upon further reflection Mr. Christensen sees no way in

7

which juror number 100384905 can remain on the jury. Despite juror number 100384905's good faith attempts to be fair, and Mr. Christensen in no way challenges her good faith, it is simply not realistic to believe she can actually remain fair and unbiased.

Given the context of what occurred in open court and then in the jury room when the other members of the jury rejoined juror number 100384905, the impact upon the entire jury is so great that a mistrial must be granted. Juror number 100384905's intense personalization of the pain and loss experienced by Ms. Zhang's parents, Mr. Zhang and Ms. Ye, and the manner in which the other jurors directly observed this and then spent time with this juror as she composed herself (in effect together as the community of jurors in this case), means that this incident and juror number 100384905 herself will be introducing into the jury room a factor that the other jurors simply cannot effectively evaluate or respond to. Even if juror number 100384905 is expressly directed by the Court not to bring up her emotional response and breakdown brought about by this personalization of the evidence – her identification with the victim impact testimony – during deliberations, the other jurors saw her leave and spent time with her during the break and will surmise along those lines if she starts arguing vehemently for death in the name of remembering the victim and her survivors. Under these circumstances, the basic requirement of due process and the need for heightened reliability in a capital sentencing hearing will be violated given the likelihood that the

8

jury's ultimate sentencing decision will be influenced by these extra-judicial factors that

the other jurors – let alone the defense – cannot effectively evaluate or respond to.

> In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process. *In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682; *Tumey v. State of Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749. 'A fair trial in a fair tribunal is a basic requirement of due process.' *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942. In the ultimate analysis, only the jury can strip a man of his liberty or his life. In the language of Lord Coke, a juror must be as 'indifferent as he stands unsworne.' *Co.Litt.* 155b. His verdict must be based upon the evidence developed at the trial. *Cf. Thompson v. City of Louisville*, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654. This is true, regardless of the heinousness of the crime charged, the apparent guilt of the offender or the station in life which he occupies. It was so written into our law as early as 1807 by Chief Justice Marshall in 1 *Burr's Trial* 416(1807).[3] 'The theory of the law is that a juror who has formed an opinion cannot be impartial.' *Reynolds v. United States,* 98 U.S. 145, 155, 25 L.Ed. 244.

*Irvin v. Dowd*, 366 U.S. 717, 722, 81 S. Ct. 1639, 1642, 6 L. Ed. 2d 751 (1961).

## LEGAL STANDARD

"A court may declare a mistrial if it determines that such a declaration is

"occasioned by manifest necessity.'" *United States v. Taylor*, 569 F.3d 742, 746 (7th Cir.

2009) (quoting *United States v. Combs*, 222 F.3d 353, 358-59 (7th Cir. 2000)). Under this

standard a court must declare a mistrial if a "scrupulous exercise of judicial discretion

leads to the conclusion that the ends of public justice would not be served by a

continuation of the proceedings.'" *Camden v. Circuit Court of Second Judicial Circuit,*

*Crawford County, Ill.,* 892 F.2d 610, 614 (7th Cir. 1989) (quoting *United States v. Jorn*, 400

U.S. 470, 485 (1971)). The Supreme Court has described the "ends of public justice" as

"the public's interest in fair trials designed to end in just judgments." *Illinois v.*

*Somerville*, 410 U.S. 458, 463 (1973) (quoting *Wade v. Hunter*, 336 U.S. 684, 689 (1949)).

THE SENTENCING HEARING CAN NO LONGER BE FAIR AND END IN A JUST
DETERMINATION OF WHETHER MR. CHRISTENSEN LIVES OR DIES.

Juror number 100384905's actions appear to be unprecedented. No defense

counsel or member of the Federal Death Penalty Resource Counsel Project – involved in

virtually every federal capital case tried under the modern federal death penalty – has

ever heard of a juror running from the courtroom in tears during the sentencing hearing

in a federal capital trial. Mr. Christensen in no way blames the juror for her response to

the evidence. As she explained to the Court, she became overwhelmed. Despite the

assurances to the Court that she can still be fair and impartial it is impossible for her

and the remaining jurors to do so. They have literally watched one of their colleagues be

so impacted by victim impact testimony that she totally lost control, burst into tears and

had to exit herself from the courtroom.

There is no way to inform the other jurors of the reason why juror number

100384905 lost control that will not make the prejudice worse than it already is.

Explaining that juror number 100384905 became so overwhelmed thinking of her

daughter while listening to Ms. Zhang's mother speak of losing her daughter is not an

acceptable option as that would be the equivalent of giving the government more

evidence in aggravation. Not saying anything is not an acceptable option as that leaves

the other jurors to wonder what happened, inevitably concluding that the strength of

the government's victim impact evidence was enough to literally push one of their own over the edge emotionally. For all the Court and the parties know juror number 100384905 has already told the other jurors why she ran from the courtroom in tears. There is no way to undue the prejudice Mr. Christensen has suffered.

The jury in this case must decide if Mr. Christensen lives or dies. During the government's presentation of the victim impact testimony one of its members has burst into tears and run from the courtroom. Continuing this proceeding is will not result in a "fair trial[] designed to end in just judgment[]." *Somerville*, 410 U.S. at 463.

If the Court will not declare a mistrial, juror number 100384905 must be excused. Mr. Christensen acknowledges that his counsel agreed to allow juror number 100384905 to remain on the jury following the Court's voir dire of the juror. Upon further reflection Mr. Christensen sees no way in which juror number 100384905 can remain on the jury. Despite juror number 100384905's good faith attempts to be fair. Additionally, each juror must be individually questioned about their feelings about what happened, whether they have spoken to juror number 100384905 about why it happened, and that they cannot consider juror number 100384905's conduct in any way in reaching their verdict.

WHEREFORE, the Defendant respectfully requests the Court declare a mistrial.

Respectfully submitted,

/s/Elisabeth R. Pollock
Assistant Federal Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org

/s/ Robert Tucker
Robert L. Tucker, Esq.
7114 Washington Ave
St. Louis, MO 63130
Phone: 703-527-1622
Email: roberttuckerlaw@gmail.com

/s/ George Taseff
Assistant Federal Defender
401 Main Street, Suite 1500
Peoria, IL 61602
Phone: 309-671-7891
Fax:    309-671-7898
Email: George_Taseff@fd.org

/s/ Julie Brain
Julie Brain, Esq.
916 South 2nd Street
Philadelphia, PA 19147
Phone: 267-639-0417
Email: juliebrain1@yahoo.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 10, 2019, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing

to Assistant United States Attorneys Bryan D. Freres and Eugene L. Miller and Trial

Attorney James B. Nelson. A copy was also mailed to the defendant.

<u>/s/Elisabeth R. Pollock</u>
Assistant Federal Public Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org
