UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Crim. No. 17-20037 |
| ) | |
| BRENDT A. CHRISTENSEN, ) | |
| ) | |
| Defendant. ) | |

**PENALTY PHASE OFFER OF PROOF**
**REGARDING TESTIMONY AND RECORDS OF PEGGY PEARSON, M.D.**

NOW COMES the Defendant, BRENDT A. CHRISTENSEN, by and through his attorneys, and for his Offer of Proof Regarding Testimony and Records excluded from the penalty phase of his trial, states as follows:

1.  By oral order in open court on July 11, 2019, the Court excluded from the penalty phase of Mr. Christensen's trial the testimony and records of Dr. Peggy Pearson, a psychiatrist at the University of Illinois McKinley Health Center who treated Mr. Christensen from February 4, 2016, through February 16, 2017. The basis for the ruling was that defense counsel failed to disclose Dr. Pearson as a witness to the government under Fed. R. Crim. P. 12.2(b).[1]

---

[1] Defense counsel did disclose Dr. Pearson's records to the government in full on March 14, 2019, almost three months before the penalty phase began. Dr. Pearson's name was also included on our witness list which was provided to the government on May 28, 2019, and her name was included on the witness list that was read to the first panel of prospective jurors as part of voir dire on June 3, 2019. Further, the government stated in open court on July 11th that it was ready to conduct an hours-long cross examination of

2. Had she been permitted, it is expected that Dr. Pearson would have testified as follows:

    A. She is a staff psychiatrist at the McKinley Health Center of the University of Illinois – Urbana-Champaign. In that capacity she evaluates and treats students who present to the Health Center with concerns that may be psychiatric in nature.

    B. She received her undergraduate degree, a Bachelor of Arts, from Harvard College. She received her M.D. degree from the University of Cincinnati College of Medicine. She thereafter completed a residency in Adult Psychiatry at the Harvard University Beth Israel Hospital. She is board-certified by the American Board of Psychiatry and Neurology. She is a licensed physician in the State of Illinois.

    C. In her capacity as a staff psychiatrist at the McKinley Health Center, she provided mental health treatment to Brendt Christensen from February 4, 2016, through May 22, 2017. Attachment 1 is a true and accurate copy of the records of her treatment of Mr. Christensen.[2]

    D. She first saw Brendt Christensen at the McKinley Health Center on February 4, 2016. He was referred to her by Alex Brandt, APN, of the McKinley

---

Dr. Pearson using the DSM-5 as well as to present its own expert witness to rebut her testimony, and so the government suffered no prejudice from the nature and timing of the disclosure.

[2] Counsel would then have moved to admit those records into evidence.

Medical Clinic after he came to that clinic on January 21, 2016, reported that he had been feeling depressed for two years and asked that he receive tests of his thyroid function. Thyroid function tests were given and the results were negative. Mr. Christensen was therefore referred to the McKinley Mental Health Clinic and Dr. Pearson saw him on February 4, 2016.

      E.      During his initial evaluation, Brendt told her that both his wife and his Ph.D. advisor had suggested to him that he seek mental health services. He reported that he had been depressed for almost two years, beginning in the Summer of 2014. He had previously tried to manage his symptoms himself by reducing his alcohol consumption, exercising more, improving his diet and reducing the amount of time he spent playing competitive videogames. However, he reported that his symptoms persisted.

      F.      The depressive symptoms that Brendt reported to her were: Sad mood; low motivation; slightly decreased appetite; low energy; poor memory; poor concentration; and a decreased interest in sexual activity over the preceding two years. She observed that Brendt's affect was mildly depressed, meaning that his appearance and emotional reactivity looked to her to be slightly depressed. Brendt reported that he felt depressed. He said he had occasional thoughts of suicide but would never act on those thoughts. He had no thoughts of harming others.

      G.      Brendt also reported symptoms of anxiety to her. He stated that he was having episodes in which his mind was racing and he felt pressure in his

chest. He reported that these episodes occurred a few times a week and impaired his ability to do his work. He also stated that at times he wakes up in the middle of the night feeling anxious and with a pounding heart. He stated that these episodes lasted 10-15 minutes and had been occurring since age 14.

  H. She asked Brendt whether he was experiencing stress in his life and responded that his graduate program was stressful for him and he felt like he was making slow progress. He stated that he had asked his advisor to allow him some extra time to recover from his mental health difficulties. Brendt also reported that his stress level was increased by his concern regarding a wrist injury he received in 2008 as the result of a workplace accident.

  I. She asked Brendt some questions regarding his family history. She did so as a method of assessing the adequacy of his network of social support. Brendt reported that he had two siblings, an older brother and a younger sister, but he was not close to either one. He stated that his brother was now in Asia and his sister was reportedly living in a van in the Pacific Northwest. Brendt stated that his parents divorced in 2013 and that he was in contact only with his mother who he described as an active alcoholic. He had been married for several years and his wife was working as a loan officer at Busey Bank. He reported no relationship distress.

  J. Brendt reported that he was currently drinking about six beers once per month. He admitted to drinking more heavily the previous year, 2015, which

resulted in weight gain, depression and difficulty functioning at work. He denied recreational drug use.

  K. At the conclusion of her evaluation I diagnosed Brendt with Persistent Depressive Disorder with symptoms of anxiety. She asked him if he would like to try medication to treat that disorder and he concurred. She prescribed a medication called sertraline which is a generic version of a drug with the brand name Zoloft. Sertraline is a medication used to treat symptoms of depression and anxiety. She instructed Brendt to start taking 25mg per day, and after a week to increase the dose to 50mg per day. She also reviewed with him the common side effects of the medication and asked him to come back and see her in two weeks.

  L. Two weeks later, on February 18, 2016, Brendt came to see her for the second time. He had increased is dose of sertraline from 20mg to 50mg as directed. Brendt reported that there had been no improvement in his significant symptoms of depression and he continued to be anxious. She instructed him to increase his dose of sertraline to 75mg and asked him to return in two weeks.

  M. Brendt came in to see me again on March 3, 2016, two weeks later. He reported that he had had one episode of alcohol ingestion since his last appointment and was getting enough sleep. His affect appeared to be bright. She made no changes to his medication following that visit.

  N. Brendt's next appointment with her was on April 22, 2016. After talking with him she felt that his symptoms were possibly slightly improved.

However, his mood continued to be slightly depressed and his energy level was somewhat low. Brendt reported that his progress at his lab was still slow and that he had made mistakes in his work. He also told her that he and his wife were now discussing divorce after five years of marriage. She noted that he was under significant stress. She instructed Brendt to increase his sertraline dose from 75mg per day to 100mg per day and to come back to see her in six to eight weeks.

    O.    Brendt came back to see her for the fifth time on June 7, 2016. On that occasion he reported that his mood had improved and his anxiety had also improved but he had begun to have problems sleeping. He stated that he was waking up in the middle of the night and having difficulty falling back asleep. He reported that his marriage situation had improved. He had decided to accept a master's degree instead of continuing to pursue a Ph.D. and he appeared relieved. She prescribed him trazodone 50mg to take in addition to the sertraline. Trazodone is an antidepressant medication that is frequently used as a sleep aid.

    P.    When she next saw Brendt, on July 21, 2016, he was still having problems sleeping. He reported early insomnia every other night and waking up at 1:00am every night. His total sleep time was between five and seven hours per night. He stated that he tried taking trazodone but it left him feeling sedated in the morning. She therefore discontinued him on trazodone and prescribed zolpidem 5mg as needed instead. Zolpidem is a generic medication used as a sleep aid. The brand name of the drug is Ambien. She instructed Brendt not to

consume any alcohol on days that he took a dose of zolpidem and asked him to return for another appointment in two months' time.

    Q.    She next saw Brendt on September 26, 2016, and he was doing significantly worse than he had been in the preceding months. He reported that he had been more depressed for over a month, with poor motivation and poor concentration. She noted that his affect looked depressed. Brendt also stated that he had been doing the bare minimum at school and was suffering stress around the prospect of trying to find a job. He reported that he had been drinking heavily until approximately a week before she saw him and noted that once he started drinking on any given day it was hard for him to stop. She decided to try a different antidepressant medication in the hope of better controlling his symptoms. She discontinued the sertraline and prescribed venlafaxine instead. Venlafaxine is also a generic drug; its brand name is Effexor. She instructed Brendt to start taking 37.5mg of enlafaxine each day, then after a week to increase the dose to 75mg a day and after another week to increase the dose again to 112.5mg per day. She also continued to prescribe zolpidem. At that time Brendt reported that he was taking it approximately half the nights.

    R.    On November 22, 2016, Brendt came back for his eighth appointment with her. Her diagnosis of him was still Persistent Depressive Disorder with anxious distress, but she also added "rule out Alcohol Use Disorder." This notation indicated that she suspected Alcohol Use Disorder might be present but needed further observation of Brendt before she could

make a final determination. Brendt told her that he had been drinking up to 750ml of liquor daily until three weeks prior to his appointment. He noted that his wife did not like it when he drank. He described his mood as "okay" and his energy as "okay," but he was still having sleep disturbance. He reported sleeping five to six hours a day with early and min-insomnia. He had run out of zolpidem.

  S. Brendt next came back to see her on January 19, 2017. He described his mood as good at that time. She noted that his depressive symptoms were under reasonable control with the venlafaxine and the zolpidem, although he had increased his use of zolpidem to two out of every three nights. He was also still having bouts of problem drinking. He said he had only drank on two or three occasions during the preceding two months and had not had any alcohol for two weeks, but when he did drink he drank a half to two-thirds of a bottle of liquor in one sitting. He also told her that he drank alone and that his drinking made it difficult for him to function the next day. She referred Brendt to the Alcohol and Other Drug Program to get help with developing strategies to avoid binge drinking. The Alcohol and Other Drug Program is a university service located within the University Counseling Center.

  T. The last time she saw Brendt was a month later, on February 16, 2017. On that date She had him complete a Mental Health Unit Visit Questionnaire in which he was asked if he had been bothered by certain problems over the preceding two weeks. One item was "feeling nervous, anxious

or on edge." Brendt reported that had been bothered by that nearly every day. Another item was "feeling down, depressed or hopeless." Brendt reported that he had experienced that on several days during the preceding two weeks. Brendt reported that he had increased his use of zolpidem again and was now taking it almost every night. He described his sleep as okay and his mood as also just okay. He again reported feeling stress in connection with his school program and his job search. He reported that he had not been drinking. She adjusted her diagnosis to Unspecified Depressive Disorder. She kept him on the same medications and asked him to come back to see me in two to three months. She did not see him again. Her prescriptions of venlafaxine and zolpidem remained in effect and Brendt last refilled both medications on May 22, 2017.

     U.    If a patient of hers stated to a counselor at the Counseling Center that he was having thoughts of suicide; that if he did it he would not simply make a gesture and expect to be rescued; he would do it in a manner that made sure he would die before he was found; that the manner he had thought about to accomplish this was inhaling concentrated nitrogen gas; that his wife had told him three days previously that she wanted to leave him and that he could not see any reason to live without her; she would want to be notified. She would expect that the counselor would seek the student's permission to share that information with her and then to provide her with that information. If she received such information about one of her patients she would explore it in depth with them. She would also carefully monitor the patient's medication compliance, consider

whether an adjustment in the medication regimen needed to be made and assess whether a referral to a specialized treatment provider was warranted.

    V.    She would also want to be notified if a patient of hers told a counselor at the Counseling Center that he had been ruminating about committing a murder; that he had developed a fascination with serial killers; that he thought he knew how to commit such a crime and did not think it would be hard; that he had gotten pretty far along in planning to commit murder; and that he had purchased items to use to transport and dispose of a body. If she received such information about one of her patients she would again explore it in depth with them. She would also carefully consider whether an adjustment in the medication regimen needed to be made and whether a referral to a specialized treatment provider was warranted.

Respectfully submitted,

/s/Elisabeth R. Pollock
Assistant Federal Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org

/s/ George Taseff
Assistant Federal Defender
401 Main Street, Suite 1500
Peoria, IL 61602
Phone: 309-671-7891
Fax:    309-671-7898
Email: George_Taseff@fd.org

/s/ Robert Tucker
Robert L. Tucker, Esq.
7114 Washington Ave
St. Louis, MO 63130
Phone: 703-527-1622
Email: roberttuckerlaw@gmail.com

/s/ Julie Brain
Julie Brain, Esq.
916 South 2nd Street
Philadelphia, PA 19147
Phone: 267-639-0417
Email: juliebrain1@yahoo.com

CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorneys Bryan D. Freres and Eugene L. Miller and Trial Attorney James B. Nelson. A copy was also mailed to the defendant.

/s/Elisabeth R. Pollock
Assistant Federal Public Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org