UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>BRENDT A. CHRISTENSEN, )<br>)<br>Defendant. ) | Crim. No. 17-20037 |

**PENALTY PHASE OFFER OF PROOF**
**REGARDING MEDICAL AND MENTAL HEALTH RECORDS**

NOW COMES the Defendant, BRENDT A. CHRISTENSEN, by and through his attorneys, and for his Offer of Proof Regarding Medical and Mental Health Records excluded from the penalty phase of his trial, states as follows:

1.  By order dated June 28, 2019, the Court excluded from Mr. Christensen's trial medical and mental health records of Mr. Christensen and his family members, except as to "the effect relatives' mental illness had on Defendant's upbringing," if Mr. Christensen's parents or other testifying relatives have "personal knowledge of these matters." Doc. 432 at 5. The Court's stated reason for this ruling was that "the Court will not send numerous medical records back to the jury without explanation." *Id.*

2.  The defense intended to present the records through a mitigation specialist, Heather Heumann Sweeney, M.S.W., M.A.,[1] who would describe how the

---

[1] Ms. Sweeney's curriculum vitae is included as Exhibit A to this proffer. All exhibits are being provided on a removable thumb drive, due to their volume.

1

records were collected and highlight pertinent portions. "We're just going to be introducing small pieces, select portions of them that the jury can review and draw appropriate inferences, which we will point out in argument." Tr. 6/27/19 at 58.

3.  Filed with this pleading, as an offer of proof, is a removable thumb drive containing the PowerPoint presentation that the defense intended to use with the mitigation specialist in introducing the records. We have also submitted a set of the records, in the form in which they would have been submitted to the jury. All of these records were provided to the government in discovery.

4.  Mr. Christensen's records are direct evidence of medical and mental health conditions he experienced at various times in his life, including as a child and young adult.

5.  The family records reveal an extensive history of medical and mental health issues: seventeen of Mr. Christensen's family members suffered mental illness or experienced psychiatric symptoms, sixteen had substance use disorders, nine were comorbid (both mentally ill and substance abusers), and two have a history of seizures. Six family members were hospitalized or in long-term treatment.

6.  It is a reasonable inference from these records that, as counsel put it in oral argument, "there is a noticeable history of family illness throughout the family, and the jury should be able to take that into account in deciding whether or not Mr. Christensen is or is not deserving of a sentence of death". Tr. 6/27/19 at 62-63.

7.      Indeed, given that research conducted or endorsed by the United States supports that Mr. Christensen's family's medical and mental health history is directly relevant to his own likelihood of experiencing medical and mental health impairments or related adverse consequences, the government is not in a position to dispute this inference.

(a)     Psychiatric disorders run in families

The fact that "many psychiatric disorders tend to run in families" (aphorism: the apple doesn't fall from the tree) is widely accepted in the community and introducing medical and mental health records documenting these disorders is critical to establishing the prevalence of mental illness in Brendt's family and his predisposition for mental illness.

> https://www.nih.gov/news-events/nih-research-matters/common-genetic-factors-found-5-mental-disorders
> Scientists have long recognized that many psychiatric disorders tend to run in families, suggesting potential genetic roots. Such disorders include autism, attention deficit hyperactivity disorder (ADHD), bipolar disorder, major depression and schizophrenia. Symptoms can overlap and so distinguishing among these 5 major psychiatric syndromes can be difficult. Their shared symptoms suggest they may also share similarities at the biological level. In fact, recent studies have turned up limited evidence of shared genetic risk factors, such as for schizophrenia and bipolar disorder, autism and schizophrenia, and depression and bipolar disorder.

(b)     Adverse Childhood Experiences influence future outcomes

It is well established that Adverse Childhood Experiences (ACEs) have a tremendous impact on lifelong health and opportunity, including violence victimization

and perpetration. Medical and mental health records documenting Brendt's exposure to multiple household challenges and neglect are important to explaining his life trajectory.

> https://www.cdc.gov/violenceprevention/childabuseandneglect/acestudy/index.html
> The CDC-Kaiser Permanente Adverse Childhood Experiences (ACE) Study is one of the largest investigations of childhood abuse and neglect and household challenges and later-life health and well-being. The original ACE Study was conducted at Kaiser Permanente from 1995 to 1997 with two waves of data collection. Over 17,000 Health Maintenance Organization members from Southern California receiving physical exams completed confidential surveys regarding their childhood experiences and current health status and behaviors.

(c)  <u>Traumatic brain injury may affect functioning</u>

Traumatic brain injury may cause a range of short- or long-term functional problems. Brendt's medical records demonstrate falls, concussions, and potentially related effects that may help explain his downward spiral from 2014-2017.

> https://www.cdc.gov/traumaticbraininjury/outcomes.html
> Short- and long-range functional problems associated with TBI include changes in thinking, sensation, language and emotion. Emotional effects including depression, anxiety, personality changes, aggression, acting out, and social inappropriateness. A TBI can also cause brain disorders including epilepsy and other seizure disorders.

(d)  <u>Alcohol use disorder has a genetic component</u>

As with psychiatric disorders, alcohol use disorder also runs in families, and research shows that genetics strongly influence the likelihood of developing AUD. Records showing the prevalence of alcoholism in Brendt's family are therefore

important to demonstrating his risk for developing AUD (and countering the commonly held belief that addiction is a moral failing).

> https://www.niaaa.nih.gov/alcohol-health/overview-alcohol-consumption/alcohol-use-disorders/genetics-alcohol-use-disorders
> Research shows that genes are responsible for about half of the risk for AUD.

(e)   <u>Substance abuse also has a strong genetic component</u>

Like alcohol abuse, substance abuse also has a strong genetic component. Records showing the prevalence of alcoholism in Brendt's family are therefore important to demonstrating his risk for abusing other substances (and countering the commonly held belief that addiction is a moral failing).

> https://www.drugabuse.gov/publications/drugfacts/understanding-drug-use-addiction
> Research shows that the genes that people are born with account for about half of a person's risk for addiction. Gender, ethnicity, and the presence of other mental disorders may also influence risk for drug use and addiction.

(f)   <u>Seizure conditions may be inherited</u>

Seizure conditions may be inherited. Records documenting behavior attributable to, or comparable to, seizure conditions in Brendt's family members is important to establishing his own predisposition to such conditions, given his experience of related symptoms.

> https://www.ninds.nih.gov/Disorders/Patient-Caregiver-Education/Hope-Through-Research/Epilepsies-and-Seizures-Hope-Through#3109_8
> Genetic mutations may play a key role in the development of certain epilepsies. Many types of epilepsy affect multiple blood-related family members, pointing to a strong inherited genetic component.

8. Had the records been admitted at trial, the defense would have had available in closing—in addition to the compelling facts contained in the records—arguments, including, but not limited to, the following:

- This is a complicated situation—it is more than just a case of a cold-blooded killer.

- Evidence, including statements by Brendt himself, on which the government relies to argue lack of remorse may be attributable to factors that neither he, nor we, can understand.

- A sentence of life in prison without the possibility of release is appropriate because Brendt was genetically predisposed to one or more psychiatric illnesses of which he demonstrated symptoms.

- Examples from Brendt's family history show that people with some of the symptoms he experienced required institutionalization or repeated, long-term treatment.

- With better or different treatment and supervision, Brendt's life trajectory might have looked different.

- A sentence of life in prison without the possibility of release is appropriate because Brendt faced household challenges and neglect as a child and teenager, and because his family was unable to provide help when he needed it as a young adult.

- A sentence of life in prison without the possibility of release is appropriate because Brendt suffered traumatic brain injury which may have affected his functioning, since his symptoms are consistent with those experienced by TBI survivors.

- A sentence of life in prison without the possibility of release is appropriate because Brendt was genetically predisposed to substance use disorder of which he demonstrated symptoms.

- A sentence of life in prison without the possibility of release is appropriate because Brendt was genetically predisposed to a seizure disorder of which he demonstrated symptoms.

- Brendt is unlikely to present a future danger in the structured environment of federal prison, where competent medical professionals will be able to monitor and care for him and where he will not have access to substances.

9. The records are uniquely important to establishing these points because: They predate the offense and were created by independent reporters; in some cases, they are the only evidence of these facts; and, in other cases, they corroborate accounts of witnesses whom the government is likely to portray as biased (*e.g.*, family members).

10. As illustrated in paragraph seven, the records support numerous mitigating factors to be considered by the jury in reaching its penalty phase verdict.

WHEREFORE, Defendant submits his offer of proof.

Respectfully submitted,

/s/Elisabeth R. Pollock
Assistant Federal Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org

/s/ George Taseff
Assistant Federal Defender
401 Main Street, Suite 1500
Peoria, IL 61602
Phone: 309-671-7891
Fax:    309-671-7898
Email: George_Taseff@fd.org

/s/ Robert Tucker
Robert L. Tucker, Esq.
7114 Washington Ave
St. Louis, MO 63130
Phone: 703-527-1622
Email: roberttuckerlaw@gmail.com

/s/ Julie Brain
Julie Brain, Esq.
916 South 2nd Street
Philadelphia, PA 19147
Phone: 267-639-0417
Email: juliebrain1@yahoo.com

CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorneys Bryan D. Freres and Eugene L. Miller and Trial Attorney James B. Nelson. A copy was also mailed to the defendant.

/s/Elisabeth R. Pollock
Assistant Federal Public Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org