2:17-cr-20037-JES-JEH  #475  Page 1 of 15
2:17-cr-20037-JES-JEH  #445  Page 14 of 41
E-FILED
Wednesday, 17 July, 2019  04:50:02 PM
Clerk, U.S. District Court, ILCD

Exhibit 2

DEFENDANT'S PROPOSED PRELIMINARY SENTENCING HEARING INSTRUCTIONS

The following defendant's proposed preliminary sentencing hearing instructions were modeled after the instructions given in the last federal capital case tried in the Seventh Circuit, *United States v. Juan Briseno*, No. 2:11-CR-0077 (N.D. Ind. March 3, 2015), TR Vol. 25-AM, Page 6321-31.

### Version Based Upon *Briseno* with Track Changes Accepted

Members of the jury, you have unanimously found the defendant, Brent Christensen, guilty of the capital offenses of Kidnapping Resulting in Death as charged in Count One of the indictment.

You must now consider, after hearing additional evidence, whether Brent Christensen should be sentenced to death or to life imprisonment without the possibility of release.

The law leaves this decision exclusively to you, the jury. Whichever sentence you choose, death or life imprisonment without the possibility of release, the Court, is required to impose that sentence.

I am now providing you some preliminary instructions to give you an overview of your role in making the ~~penalty~~ [sentencing] determination.

I will give you more detailed instructions after the sentencing hearing evidence is concluded, and I will give you more -- and I will also provide you with a special verdict form that will function, in part, as a checklist which will help you make your decision that is required of you and will assist you in organizing your findings.

In making your ~~penalty~~ [sentencing] findings, you may consider all of the evidence that you heard at the earlier portion of the trial as well as any additional evidence to be presented at the sentencing phase.

You will also follow the same instructions I provided to you during the guilt phase regarding consideration of the evidence and witness credibility determinations, which I will restate for you after the evidence has been presented in the sentencing hearing of the trial.

Now, as in the gu~~i~~lty / not guilty trial, you may take notes, but they are only aids to your memory. If your memory differs from your notes, you should rely on your memory and not on your notes.

[handwritten: as you were previously told you ~~may~~ ~~not~~ take notes but you will receive written instructions]

The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection without being unduly influenced by the other jurors' notes. Notes are not entitled to any greater weight than each juror's recollection or impression of the evidence.

Now, as I advised you before the trial, not all defendants convicted of murder are legally eligible to receive the death sentence. The law does not presume that the death penalty is appropriate or required for any defendant.

So there's a procedure that you will follow at the start of your deliberations to determine if the defendant, Brendt Christensen, is legally eligible for the death sentence.

If you find that he is not, then your deliberations will be over.

If, however, the government proves beyond a reasonable doubt the facts that make the defendant legally eligible for a death sentence, you will then enter a second stage of the procedure in which you will decide whether or not a death sentence should be imposed. That involves a weighing process in which you will consider information that's favorable to the defendant along with evidence against him. And then you'll decide whether a sentence of death is appropriate.

I will explain all of this to you in more detail after you've heard the evidence, but for now I want to give you an overview of the process.

Before you may consider whether to impose a sentence of death, you must make each of the following three findings unanimously and beyond a reasonable doubt:

First, you will decide if the government has proven beyond a reasonable doubt that on the date of the capital crime charged in the Superseding Indictment the defendant was at least 18 years of age.

Second, you will decide whether the government has proven beyond a reasonable doubt at least one of the following gateway intent factors: Whether, A, the defendant intentionally killed Yingying Zhang; B, intentionally inflicted serious bodily injury that resulted in the death of Yingying Zhang; C, intentionally participated in an act contemplating that a person's life would be taken and intending that lethal force would be used in connection with a person and Yingying Zhang died as a direct result of the act; or, D, intentionally and specifically engaged in an act of violence knowing that the act created a grave risk of death to a person such that participation in the act constituted a reckless disregard for human life and Yingying Zhang died as a direct result of the act.

Third, you will then decide whether the government has proven beyond a reasonable doubt the existence of at least one statutory aggravating factor. The

factors you will consider at this point are called statutory aggravating factors because Congress specifically listed them in a statute. I will define the term "aggravating factor" for you in a few minutes. [set out in bullet form]

The statutory aggravating factors that the government alleges are, one, that the death, or injury resulting in death, occurred during the commission or attempted commission of, or during the immediate flight from the commission of, kidnapping.

Two, that the defendant committed the offense in an especially heinous, cruel, or depraved manner, in that it involved torture or serious physical abuse to the victim, [Ying Ying Zhang].

Three, that the defendant committed the offense after substantial planning and premeditation to cause the death of a person.

If, after fair and impartial consideration of all of the evidence in this case, ~~any one of you~~ find[s] that the government ~~did not~~ prove[d] the defendant's age, mental intent factor, or a statutory aggravating factor beyond a reasonable doubt, your deliberations will be over. [unanimously] [statutory factor] [You do not ... was 18 yrs of age and repeat the statutory factors and statutory factors.]

However, if you do unanimously find that these three elements have been proved beyond a reasonable doubt, you will then proceed to determine whether you unanimously find that the government has proved the existence of any nonstatutory aggravating factors beyond a reasonable doubt.

The five nonstatutory aggravating factors[1] which the government alleges are, one, the defendant caused injury, harm, and loss to Yingying Zhang and loss to her family, friends, and co-workers.

The second nonstatutory aggravating factor is that the defendant is likely to commit criminal acts of violence in the future that would constitute a continuing and serious threat to the lives and safety of others. .

The third nonstatutory aggravating factor is that the defendant has demonstrated, by statements he made following the offense, that he lacked remorse for the kidnapping resulting in the death of Yingying Zhang.

[to support the position that a sentence of death is appropriate]

The fourth nonstatutory aggravating factor is that the victim, Yingying Zhang, was particularly vulnerable due to her small stature and limited ability to communicate in English.

The fifth nonstatutory aggravating factor is that the defendant attempted to obstruct the investigation of this offense by, at least, making false statements to investigators; destroying or concealing the victim's remains; and sanitizing the crime scene.

---

[1] Note that the defense has moved to strike these nonstatutory aggravating factor. The language is proposed here only in the event the Court denies the defense motions on these issues.

After you consider whether the government has proven the aggravating factors beyond a reasonable doubt, you will then decide whether any of you find that the defendant has proved any mitigating factors. The defendant has the burden of proving any mitigating factors. However, there's a different standard of proof as to mitigating factors.

You need not be convinced beyond a reasonable doubt about the existence of a mitigating factor. You need only be convinced that a mitigating factor exists by a preponderance of the evidence, which means that something is more likely true than not true.

~~Now, As I mentioned, A~~ unanimous finding is not required regarding mitigating factors. Any one of you may find the existence of a mitigating factor regardless of the number of other jurors that may agree.

~~Now,~~ The defendant has proposed 54 mitigating factors for your consideration.

They are as follows:

1. Mr. Christensen has no prior criminal record, no prior arrests, and no prior incarcerations.
2. Mr. Christensen's mother struggled with severe suicidal depression and anxiety when he was growing up.
3. Mr. Christensen's mother became a chronic alcoholic during his childhood and required both inpatient and outpatient treatment for her alcoholism.
4. There is an extensive history of mental illness on Mr. Christensen's mother's side of the family.
5. There is an extensive history of mental illness on Mr. Christensen's father's side of the family.
6. Mr. Christensen has demonstrated the capacity to be a loving and caring person.
7. Mr. Christensen was a gentle child and displayed no aggressive or violent behavior towards others while growing up.
8. Mr. Christensen provided emotional support to his sister, Andrea, while she was growing up.
9. Mr. Christensen's mother, Ellen, loves him and cares about him and is willing to support him during a sentence of life without release.
10. If Mr. Christensen is executed, his mother will suffer grief and loss.
11. Mr. Christensen's father, Michael, loves him and cares about him and is willing to support him during a sentence of life without release.
12. If Mr. Christensen is executed, his father will suffer grief and loss.
13. Mr. Christensen's sister, Andrea, loves him and cares about him and is willing to support him during a sentence of life without release.
14. If Mr. Christensen is executed, his sister will suffer grief and loss.

15. Mr. Christensen has a long history of brain injury and dysfunction, including sleep disorders (including parasomnia, sleep terrors, and sleep paralysis), concussions, and chronic migraines.
16. Mr. Christensen suffered from symptoms of depression throughout his life.
17. Mr. Christensen suffered from symptoms of anxiety throughout his life.
18. ~~Mr. Christensen was first medicated for depression and anxiety as a teenager.~~
19. Mr. Christensen struggled with addiction to alcohol beginning in college.
20. Brendt struggled with addiction to prescription drugs, including Vicodin and Ambien, beginning in college.
21. Mr. Christensen and his wife, Michelle, did not socialize with anyone else during their time together (2009-2017), and Michelle was Mr. Christensen's best and only friend.
22. Mr. Christensen sought medical treatment, and ultimately prescription medication, for his psychiatric issues at the University of Illinois in January of 2016.
23. Mr. Christensen accepted the advice of his wife, Michelle, and advisor in seeking psychiatric treatment in January of 2016.
24. Mr. Christensen continued to suffer from depression, anxiety and sleep problems despite medical treatment from January 2016 through June of 2017.
25. Mr. Christensen sought professional counseling for his alcohol and drug abuse in March of 2017 at the University of Illinois Counseling Center.
26. During two separate meetings with the UICC Staff in March of 2017, Mr. Christensen repeated to the counselors that he was having thoughts of suicide and homicide.
27. Mr. Christensen confessed to the counselors at the UICC that he had a plan for how to commit a murder, that he had purchased items to facilitate his plan to commit a murder, that he knew his thoughts were wrong and disturbing to others, and that he did not want to be that kind of person.
28. Mr. Christensen sought professional psychological counseling for his alcohol and drug abuse in March of 2017 at the University of Illinois Counseling Center, where he told the counselor that he could not see a path forward without his wife Michelle.
29. There is an extensive history of alcoholism and/or substance abuse on both sides of Mr. Christensen's family which is a factor suggesting his own predisposition to alcoholism and/or substance abuse.
30. Mr. Christensen abused alcohol and prescription drugs in an attempt to self-medicate and control his psychological problems.
31. The breakdown of Mr. Christensen's marriage caused him severe emotional stress.
32. In order to save his marriage, Mr. Christensen agreed to his wifeMichelle's proposal that they both be free to date and have sex with other people.
33. Mr. Christensen was particularly distressed the weekend of June 9, 2017, because his wife Michelle, went on a weekend trip with another man to the place where they spent their honeymoon.

34. After Mr. Christensen sought help for his substance abuse and intrusive suicidal and homicidal thoughts in March of 2017, the University Counseling Center failed to provide appropriate services to him, including failing to refer and coordinate with mental health professionals at the University Health Center.
35. After Mr. Christensen sought help for his substance abuse and intrusive suicidal and homicidal thoughts in March of 2017, the University Counseling Center failed to obtain medical records and develop an adequate treatment and safety plan to address the homicidal and suicidal ideations he expressed.
36. After Mr. Christensen sought help for his substance abuse and intrusive suicidal and homicidal thoughts in March of 2017, the University Counseling Center failed to conduct an adequate follow-up with him.
37. After Mr. Christensen sought help for his substance abuse and intrusive suicidal and homicidal thoughts in March of 2017, the University Counseling Center failed to adequately assess and evaluate the specifics of the homicidal and suicidal ideations he expressed.
38. In December of 2017, Mr. Christensen offered to plead guilty to the kidnapping of Yingying Zhang, resulting in her death, to fully cooperate with law enforcement and assist them in their search for Ms. Zhang's remains, to waive all appeals, and accept a sentence of life imprisonment without release.
39. While incarcerated following his arrest on June 30, 2017, Mr. Christensen has had no disciplinary reports or violations.
40. During two years of pretrial incarceration, Mr. Christensen has never possessed a weapon.
41. Mr. Christensen has never threatened jail staff while incarcerated in jail.
42. Mr. Christensen has never threatened any other prisoners while incarcerated at the jail.
43. Mr. Christensen has never attempted to engage in criminal activity with outside persons while at the jail.
44. Mr. Christensen has been respectful to all male correctional officers when incarcerated at the jail.
45. Mr. Christensen has been respectful to all female correctional officers when incarcerated at the jail.
46. Mr. Christensen has been respectful to all of his fellow inmates and did not cause disturbances within the jail.
47. Mr. Christensen has adapted very well to being incarcerated.
48. Federal law mandates that if Mr. Christensen is not sentenced to death, he will spend the rest of his life in a United States prison, with no possibility of parole or release.
49. Mr. Christensen is unlikely to commit a serious act of violence while serving a sentence of life without possibility of release
50. Mr. Christensen behaved respectfully during the trial in this cause.
51. The penalty of life without the possibility of release is a severe sentence.

*[handwritten: No — will give an instruction on this — how could you put in evidence?]*

No — ~~52.~~ Under all the facts and circumstances, mercy is appropriate for Mr. Christensen.

53. All lives are valuable, including Mr. Christensen's life. *[handwritten: to death]*

*[handwritten: Sentency]* 54. ~~Executing~~ Mr. Christensen will not undo the harm and suffering he has caused Ms. Zhang's family and loved ones. — *[handwritten: what evidence will be put on to establish this as opposed to just argument]*

Now, I have just used these terms "aggravating factors" and "mitigating factors," and will define those terms for you now. Generally speaking, these are things that concern the circumstances of the crime or the personal traits, character, or background of the defendant.

The word "aggravate" means to make worse or more offensive or to intensify. The word "mitigate" means to make less severe or to moderate.

*[handwritten: Save as gov't]*

An aggravating factor is a factor or circumstance which would tend to support imposition of the death penalty.

A mitigating factor is any aspect of the defendant's character, record, or background, and any other circumstances of the offense or any other relevant fact or circumstance which might indicate that the defendant should not be sentenced to death but should instead be sentenced to life imprisonment without the possibility of release.

After making your findings about the aggravating and mitigating factors and whether they exist in this case, each of you will then engage in a weighing process. In doing so, you must unanimously decide whether the aggravating factor or factors that you have found to exist sufficiently outweigh the mitigating factor or factors that you have found so as to justify the imposition of a death sentence.

I will give you detailed instructions on this weighing of aggravating and mitigating factors before you begin your deliberations. However, I instruct you now that you must not simply count the number of aggravating and mitigating factors and reach a decision based on which number is greater. You must instead consider the weight and the value of each factor.

~~After weighing the aggravating and mitigating factors, if any one of you determines that a sentence of life without the possibility of release is more appropriate than a sentence of death, you shall enter a decision on your special verdict form to that effect and the Court shall thereafter impose on the defendant a sentence of life imprisonment without the possibility of release.~~

~~Again,~~ Whether or not the circumstances in this case justify a sentence of death on the one hand or life imprisonment without the possibility of release on the other is a decision that the law leaves entirely to you. The law never requires you to find in favor of a death sentence.

You should not take anything that I have said or done during the guilt phase of this case or anything that I say or do during this sentencing phase as indicating what I think of the evidence or what I think your decision should be.

With that overview, we'll now commence with the sentencing hearing portion of the trial.

And we'll do that by hearing brief opening statements from each side. Remember that what the lawyers say in opening statement is not evidence and you should disregard it unless it is supported by what the evidence, in fact, shows.

Members of the jury, you have unanimously found the defendant, Brent Christensen, guilty of the capital offenses of Kidnapping Resulting in Death as charged in Count One of the indictment.

You must now consider, after hearing additional evidence, whether Brent Christensen should be sentenced to death or to life imprisonment without the possibility of release.

The law leaves this decision exclusively to you, the jury. Whichever sentence you choose, death or life imprisonment without the possibility of release, the Court, is required to impose that sentence.

I am now providing you some preliminary instructions to give you an overview of your role in making the sentencing determination.

I will give you more detailed instructions after the sentencing hearing evidence is concluded, and I will give you more -- and I will also provide you with a special verdict form that will function, in part, as a checklist which will help you make your decision that is required of you and will assist you in organizing your findings.

In making your sentencing findings, you may consider all of the evidence that you heard at the earlier portion of the trial as well as any additional evidence to be presented at the sentencing phase.

You will also follow the same instructions I provided to you during the guilt phase regarding consideration of the evidence and witness credibility determinations, which I will restate for you after the evidence has been presented in the sentencing hearing of the trial.

As you were previously told you may take notes, but they are only aids to your memory. If your memory differs from your notes, you should rely on your memory and not on your notes.

The law does not presume that the death penalty is appropriate or required for any defendant or that every defendant convicted of murder is legally eligible to receive a sentence of death.

There is a procedure that you will follow to determine if the defendant, Brendt Christensen, is legally eligible for the death sentence.

If you find that he is not legally eligible for death, then your deliberations will be over.

If, however, the government proves beyond a reasonable doubt the facts that make the defendant legally eligible for a death sentence, you will then enter a second stage of the procedure in which you will decide whether or not a death sentence

should be imposed. That involves a weighing process in which you will consider information that's favorable to the defendant along with evidence against him. And then you'll decide whether a sentence of death is appropriate.

I will explain all of this to you in more detail after you've heard the evidence, but for now I want to give you an overview of the process.

Before you may consider whether to impose a sentence of death, you must make each of the following three findings unanimously and beyond a reasonable doubt:

First, you will decide if the government has proven beyond a reasonable doubt that on the date of the capital crime charged in the Superseding Indictment the defendant was at least 18 years of age.

Second, you will decide whether the government has proven beyond a reasonable doubt at least one of the following gateway intent factors: Whether,
A, the defendant intentionally killed Yingying Zhang;

B, the defendant intentionally inflicted serious bodily injury that resulted in the death of Yingying Zhang;

C, the defendant intentionally participated in an act contemplating that a person's life would be taken and intending that lethal force would be used in connection with a person and Yingying Zhang died as a direct result of the act; or,

D, the defendant intentionally and specifically engaged in an act of violence knowing that the act created a grave risk of death to a person such that participation in the act constituted a reckless disregard for human life and Yingying Zhang died as a direct result of the act.

Third, you will then decide whether the government has proven beyond a reasonable doubt the existence of at least one statutory aggravating factor. The factors you will consider at this point are called statutory aggravating factors because Congress specifically listed them in a statute. I will define the term "aggravating factor" for you in a few minutes.

The statutory aggravating factors that the government alleges are,

One, that the death, or injury resulting in death, occurred during the commission or attempted commission of, or during the immediate flight from the commission of, kidnapping.

Two, that the defendant committed the offense in an especially heinous, cruel, or depraved manner, in that it involved torture or serious physical abuse to the victim, YingYing Zhang.

Three, that the defendant committed the offense after substantial planning and premeditation to cause the death of a person.

If, after fair and impartial consideration of all of the evidence in this case, you do not unanimously find that the government proved the defendant's age, at least one gateway intent factor, and at least one statutory aggravating factor beyond a reasonable doubt, your deliberations will be over.

However, if you do unanimously find that these three elements have been proved beyond a reasonable doubt, you will then proceed to determine whether you unanimously find that the government has proved the existence of any nonstatutory aggravating factors beyond a reasonable doubt.

The five nonstatutory aggravating factors which the government alleges to support their position that a sentence of death is appropriate are,

One, the defendant caused injury, harm, and loss to Yingying Zhang and loss to her family, friends, and co-workers.

The second nonstatutory aggravating factor is that the defendant is likely to commit criminal acts of violence in the future that would constitute a continuing and serious threat to the lives and safety of others. .

The third nonstatutory aggravating factor is that the defendant has demonstrated, by statements he made following the offense, that he lacked remorse for the kidnapping resulting in the death of Yingying Zhang.

The fourth nonstatutory aggravating factor is that the victim, Yingying Zhang, was particularly vulnerable due to her small stature and limited ability to communicate in English.

The fifth nonstatutory aggravating factor is that the defendant attempted to obstruct the investigation of this offense by, at least, making false statements to investigators; destroying or concealing the victim's remains; and sanitizing the crime scene.

After you consider whether the government has proven the aggravating factors beyond a reasonable doubt, you will then decide whether any of you find that the defendant has proved any mitigating factors. The defendant has the burden of proving any mitigating factors. However, there's a different standard of proof as to mitigating factors.

You need not be convinced beyond a reasonable doubt about the existence of a mitigating factor. You need only be convinced that a mitigating factor exists by a preponderance of the evidence, which means that something is more likely true than not true.

==A unanimous finding is not required regarding mitigating factors.== Any one of you may find the existence of a mitigating factor regardless of the number of other jurors that may agree.

The defendant has proposed the following mitigating factors for your consideration. They are as follows:

*[Handwritten margin notes: "Deborah Mitchell", "Mike - Maybe - Deborah Mitchell", "Mark", "Tom Mitchell / Ellen", "Mike Mitchell", "Tom Mitchell", "Mike", "Ellen?"]*

1. ✓ Mr. Christensen has no prior criminal record, no prior arrests, and no prior incarcerations.
2. ✓ Mr. Christensen's mother struggled with severe suicidal depression and anxiety when he was growing up.
3. ✓ Mr. Christensen's mother became a chronic alcoholic during his childhood and required both inpatient and outpatient treatment for her alcoholism.
4. ✓ There is an extensive history of mental illness on Mr. Christensen's mother's side of the family. *[handwritten: "Aunt May institutionalized"]*
5. ✓ There is an extensive history of mental illness on Mr. Christensen's father's side of the family.
6. ✓ Mr. Christensen has demonstrated the capacity to be a loving and caring person.
7. ✓ Mr. Christensen was a gentle child and displayed no aggressive or violent behavior towards others while growing up.
8. ✓ Mr. Christensen provided emotional support to his sister, Andrea, while she was growing up.
9. ✓ Mr. Christensen's mother, Ellen, loves him and cares about him and is willing to support him during a sentence of life without release.
10. ✓ If Mr. Christensen is executed, his mother will suffer grief and loss.
11. ✓ Mr. Christensen's father, Michael, loves him and cares about him and is willing to support him during a sentence of life without release.
12. ✓ If Mr. Christensen is executed, his father will suffer grief and loss.
13. ✓ Mr. Christensen's sister, Andrea, loves him and cares about him and is willing to support him during a sentence of life without release.
14. ✓ If Mr. Christensen is executed, his sister will suffer grief and loss.
15. ? Mr. Christensen has a long history of brain injury and dysfunction, including sleep disorders (including parasomnia, sleep terrors, and sleep paralysis), concussions, and chronic migraines.
16. ? Mr. Christensen suffered from symptoms of depression throughout his life.
17. ? Mr. Christensen suffered from symptoms of anxiety throughout his life.
18. ✓ Mr. Christensen struggled with addiction to alcohol beginning in college.
19. ? Brendt struggled with (addiction) to prescription drugs, including Vicodin and Ambien, beginning in college.
20. ✓ Mr. Christensen and his wife, Michelle, did not socialize with anyone else during their time together (2009-2017), and Michelle was Mr. Christensen's best and only friend.

[margin: ? would have been Pearson]

✓ 21. Mr. Christensen sought medical treatment, and ultimately prescription medication, for his psychiatric issues at the University of Illinois in January of 2016.

[margin: Michelle testifying?]

✓ 22. Mr. Christensen accepted the advice of his wife, Michelle, and advisor in seeking psychiatric treatment in January of 2016.

? 23. Mr. Christensen ~~continued~~ [ed] to suffer [symptoms of] from depression, anxiety and sleep problems despite medical treatment from January 2016 through ~~June~~ [March] of 2017.

✓ 24. Mr. Christensen sought professional counseling for his alcohol and drug abuse in March of 2017 at the University of Illinois Counseling Center.

✓ 25. During two separate meetings with the UICC Staff in March of 2017, Mr. Christensen repeated to the counselors that he was having thoughts of suicide and homicide.

[margin: asked Li if she knew? he told Karen this — she said NO]

26. Mr. Christensen confessed to the counselors at the UICC that he had a plan for how to commit a murder, that he had purchased items to facilitate his plan to commit a murder, that he knew his thoughts were wrong and disturbing to others, and that he did not want to be that kind of person.

✓ 27. Mr. Christensen sought professional psychological counseling for his alcohol and drug abuse in March of 2017 at the University of Illinois Counseling Center, where he told the counselor that he could not see a path forward without his wife Michelle.

? 28. There is an extensive history of alcoholism and/or substance abuse on both sides of Mr. Christensen's family which is a factor suggesting his own predisposition to alcoholism and/or substance abuse.

? 29. Mr. Christensen abused alcohol and prescription drugs in an attempt to self-medicate and control his psychological problems.

✓ 30. The breakdown of Mr. Christensen's marriage caused him severe emotional stress.

✓ 31. In order to save his marriage, Mr. Christensen agreed to his wife Michelle's proposal that they both be free to date and have sex with other people.

✓ 32. Mr. Christensen was particularly distressed the weekend of June 9, 2017, because his wife Michelle, went on a weekend trip with another man to the place where they spent their honeymoon.

[margin: arguably — but in dispute but will be allowed]

✓ 33. After Mr. Christensen sought help for his substance abuse and intrusive suicidal and homicidal thoughts in March of 2017, the University Counseling Center did not refer and coordinate with mental health professionals at the University Health Center.

✓ 34. After Mr. Christensen sought help for his substance abuse and intrusive suicidal and homicidal thoughts in March of 2017, the University Counseling Center did not obtain medical records and did not develop a treatment and safety plan to address the homicidal and suicidal ideations he expressed.

✓ 35. After Mr. Christensen sought help for his substance abuse and intrusive suicidal and homicidal thoughts in March of 2017, the University Counseling Center did not conduct a follow-up with him.

✓ 36. After Mr. Christensen sought help for his substance abuse and intrusive suicidal and homicidal thoughts in March of 2017, the University Counseling Center did not assess and evaluate the specifics of the homicidal and suicidal ideations he expressed.

✓ 37. While incarcerated following his arrest on June 30, 2017, Mr. Christensen has had no disciplinary reports or violations. — *had a report but no action*

✓ 38. During two years of pretrial incarceration, Mr. Christensen has never possessed a weapon.

✓ 39. Mr. Christensen has never threatened jail staff while incarcerated in jail.

✓ 40. Mr. Christensen has never threatened any other prisoners while incarcerated at the jail.

✓ 41. Mr. Christensen has never attempted to engage in criminal activity with outside persons while at the jail. — *arguably telling wife to tell TB not to speak could be obstruction but will be allowed*

✓ 42. Mr. Christensen has been respectful to all male correctional officers when incarcerated at the jail.

✓ 43. Mr. Christensen has been respectful to all female correctional officers when incarcerated at the jail.

✓ 44. Mr. Christensen has been respectful to all of his fellow inmates and did not cause disturbances within the jail.

45. Mr. Christensen has adapted very well to being incarcerated.

46. Mr. Christensen is unlikely to commit a serious act of violence while serving a sentence of life without possibility of release

47. Mr. Christensen behaved respectfully during the trial in this cause.

48. The penalty of life without the possibility of release is a severe sentence.

49. All lives are valuable, including Mr. Christensen's life.

50. Sentencing Mr. Christensen to death will not undo the harm and suffering he has caused Ms. Zhang's family and loved ones.

Now, I have just used these terms "aggravating factors" and "mitigating factors," and will define those terms for you now. Generally speaking, these are things that concern the circumstances of the crime or the personal traits, character, or background of the defendant.

The word "aggravate" means to make worse or more offensive or to intensify. The word "mitigate" means to make less severe or to moderate.

An aggravating factor is a factor or circumstance which would tend to support imposition of the death penalty.

A mitigating factor is any aspect of the defendant's character, record, or background, and any other circumstances of the offense or any other relevant fact or circumstance which might indicate that the defendant should not be sentenced to death but should instead be sentenced to life imprisonment without the possibility of release.

After making your findings about the aggravating and mitigating factors and whether they exist in this case, each of you will then engage in a weighing process. In doing so, you must unanimously decide whether the aggravating factor or factors that you have found to exist sufficiently outweigh the mitigating factor or factors that you have found so as to justify the imposition of a death sentence.

I will give you detailed instructions on this weighing of aggravating and mitigating factors before you begin your deliberations. However, I instruct you now that you must not simply count the number of aggravating and mitigating factors and reach a decision based on which number is greater. You must instead consider the weight and the value of each factor.

Whether or not the circumstances in this case justify a sentence of death on the one hand or life imprisonment without the possibility of release on the other is a decision that the law leaves entirely to you. The law never requires you to find in favor of a death sentence.

You should not take anything that I have said or done during the guilt phase of this case or anything that I say or do during this sentencing phase as indicating what I think of the evidence or what I think your decision should be.

With that overview, we'll now commence with the sentencing hearing portion of the trial.

And we'll do that by hearing brief opening statements from each side. Remember that what the lawyers say in opening statement is not evidence and you should disregard it unless it is supported by what the evidence, in fact, shows.