E-FILED
Thursday, 03 October, 2019  01:35:34 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Crim. No. 17-20037 |
| | ) | |
| BRENDT A. CHRISTENSEN, | ) | Hearing Requested |
| | ) | |
| Defendant. | ) | |

SEALED MOTION TO PRECLUDE THE TESTIMONY OF ███████████ ,
AND FOR A PRETRIAL RELIABILITY HEARING

NOW COMES the Defendant, BRENDT A. CHRISTENSEN, by and through his attorneys, and for his Sealed Motion to Preclude the Testimony of ████████ and in support of a pretrial reliability hearing states as follows:

**I.      Procedural History**

On July 12, 2017, Defendant BRENDT A. CHRISTENSEN was charged by Indictment with one count of kidnapping in violation of 18 U.S.C. § 1201(a)(1). (R. 13) A Superseding Indictment was filed on October 3, 2017, alleging one count of kidnapping resulting in death in violation of 18 U.S.C. § 1201(a)(1) and two counts of false statements in violation of 18 U.S.C. § 1001(a)(2). The Superseding Indictment also contained a Notice of Special Findings listing four gateway intent factors under 18 U.S.C. § 3591(a)(2) and three statutory aggravating factors under 18 U.S.C. § 3592(c): that Y.Z.'s death occurred during the commission of a kidnapping (Section 3592(c)(1));

1

that the defendant committed the offense in an especially heinous, cruel or depraved manner (Section 3592(c)(6)); and that the defendant committed the offense after substantial planning and premeditation (Section 3592(c)(9)). (R. 26)

Count 1 of the Superseding Indictment was a death-eligible charge, and on January 19, 2018, the government filed its Notice of Intent to seek the death penalty (NOI). (R. 54) The NOI re-alleged the four intent factors as well as the three statutory aggravating factors contained in the Superseding Indictment and added six non-statutory aggravating factors: victim impact evidence, future dangerousness, lack of remorse, other serious acts of violence, vulnerable victim, and obstruction of justice. (R. 54)

## II. ████████████ Story

The "other serious acts of violence" aggravator concerns the allegation that in 2012 or 2013, Mr. Christensen choked and sexually assaulted ████████. Mr. Christensen categorically denies that allegation, and significant investigation by the defense team supports that denial. From all of the evidence gathered to date, it is clear that at best ████████ is mistaken, and at worst, she is outright lying about her claims against Mr. Christensen.

### A. ████████ Statements to the FBI

After learning of Mr. Christensen's arrest and viewing his photograph in media reports, ████████ called the FBI Public Access Line on the day of his arrest, June 30, 2017, and reported that he had sexually assaulted her four years earlier, in 2013, in a

cemetery in Champaign-Urbana after she met him for a coffee date. Special Federal

Officer Barbara Robbins interviewed ████████ by telephone later that day. ███

████ told Officer Robbins that she met Mr. Christensen on the OK Cupid dating

website when she was 17 years old and agreed to have coffee with him. She claimed

that Mr. Christensen was aware that she was 17 at the time. ████████ recounted that

Mr. Christensen picked her up at her home in Chillicothe, Il, and they went to a coffee

shop in Champaign-Urbana, the name of which she could not recall.[1] Later that

evening, she reported that he drove her to a cemetery, again in Champaign-Urbana,

Illinois, and raped and choked her. After the assault, ████████ reported that Mr.

Christensen never spoke to her again, but he did send her a message about a month

later, saying that he missed her.

On July 21, 2017, FBI agents interviewed ████████ in Denton, Texas, where

she was then living. During this interview, ████████ clarified that the incident with

Mr. Christensen occurred in the fall of 2013, when she was 17 years old. She specifically

recalled her age at the time of the incident because although she had lied when opening

the OK Cupid account, claiming she was 18 rather than 17, she had directly told Mr.

Christensen her true age when talking with him on OK Cupid. She reported that Mr.

---

[1]Google maps indicates that Chillicothe, Il. is 116 miles from Champaign, Il, and a drive of 2 hours and 9 minutes. Nothing in these initial accounts of ████████ suggests that they rode over two hours to have coffee and then two hours back after the alleged rape. Apparently later realizing the improbability of this account, ████████ did some online research and came up with the name of another coffee shop nearer her home. *Infra*.

Christensen picked her up on a Sunday evening, around 7:00 pm, at her residence, and that they had tea together at a coffee shop in *Washington, Illinois*, called "The Blend." After they finished, ███████ reported that Mr. Christensen took her to a cemetery in *Washington,* Illinois, where he sexually assaulted her. ███████ claimed she had erased all her internet contacts with her rapist and eventually moved to Texas in order to cope with what took place that evening.

On April 30, 2018, approximately three months after death authorization, ███ ███ was interviewed in Denton, Texas, by FBI agent Huckstadt and one of the prosecutors. ███████ again reported that the incident with Mr. Christensen took place when she was 17 years old and a senior in high school. She repeated the story about "The Blend" in Washington, Illinois. She had also viewed photographs of Mr. Christensen's car on-line and now claimed that he picked her up in the same black car with a gray interior, she had seen in these accounts. ███████ told the interviewers that that she did not report Mr. Christensen's attack to law enforcement because she was afraid. She did claim, however, that the following day she told a male P.E. teacher at her high school about the rape. She also claimed to have told one of her girlfriends about the assault.

Barely more than a week later, on May 8, 2018, ███████ initiated contact with FBI Special Agent Huckstadt again to report she had learned that Mr. Christensen had a FetLife account and she now recalled having previously seen his profile picture on the website. This information obviously suggested that *she* also had a FetLife account. ███

███████ then admitted that she had opened the Fetlife account at the same time as her

OK Cupid account.[2] In response to further inquiry, ████████ then admitted to Agent

Huckstadt that one of her preferences she listed in her Fetlife profile was *abduction/rape*

*fantasies*. When Agent Huckstadt inquired whether her FetLife account was still open,

she told him she had deleted the account after learning about Mr. Christensen's

connection to the website. Agent Huckstadt asked ████████ if she could reopen the

account. When Agent Huckstadt called back two days later, ████████ had not done

so. While she claimed she would attempt to re-establish the Fetlife account (so the

agents could review it), there is no evidence suggesting she did so.[3]

     In the call on May 10, 2018, ████████ added another startling new fact. She

now claimed that a few months before the alleged assault by Mr. Christensen, she was

the victim of another sexual assault – this time by a "grade school teacher," whom she

had also met on OK Cupid. She did not report this alleged assault to authorities, either.

---

[2] Records from Fetlife show that ████████ account was opened on September 21, 2012, not 2013, which corresponds to ████████ recital that she was 17 years old and a senior in high school.

[3] At the end of his 302 reporting these contacts on May 8 and 10, 2018, Agent Huckstadt noted that Mr. Christensen did not open his Fetlife account until April 11, 2017, and that there is no indication that he ever communicated with ████████ using the website.

B. ████████      **Claims Are Demonstrably False**

    i.   *The inconsistencies relative to the date of the alleged assault:  Did it take place in the fall of 2012 or 2013? Either way* ██ ███████ *story falls apart:*

████████ has told law enforcement on at least three occasions that the alleged assault occurred in September of 2013. At the same time, she has consistently asserted that the assault happened when she was 17 years old and a senior in high school. Both recitals cannot be true, as it is clear that ████████ was 17 years old and a senior in high school in the fall of *2012*, not 2013.[4] Independent of her own accounts, the only arguable corroboration of any sexual assault upon ████████ suggests that it would have occurred in the fall of 2012.[5] The circumstances suggest that ████████ locked herself into a date in the Fall of 2013, after learning that Mr. Christensen began attending the University of Illinois at that time. But, the other details she has repeatedly provided[6] demonstrates that whatever event she is referring to, if it occurred, took place in 2012.

---

[4] ████████ birthday is ██████. Thus, she was 17 years old in September of 2012. This is further corroborated by the yearbook from Illinois Valley Central High School, which lists her as a senior during the 2012-2013 academic year. Additionally, she continuously references being a senior in high school in messages obtained from OK Cupid in the fall of 2012.

████████ recalls that during the first semester of their senior year in high school, ████████ told her that she had been sexually assaulted by an unidentified person.

[6] Among which at her age at the time of the attack (17); her status as a senior in high school; and the relation of the attack to the opening of her OK Cupid account (September 21, 2012).

It is highly unlikely that Brendt Christensen ever met up with ████████████ in the Fall of 2012. Mr. Christensen graduated from the University of Wisconsin in May of 2013, and only moved to Champaign, Illinois, that August to attend graduate school at the University of Illinois. In the fall of 2012, Brendt was taking a full load of courses in his senior year at the University of Wisconsin in Madison, Wisconsin, while also working on complex research projects for a physics professor. There is not a scintilla of evidence suggesting that Mr. Christensen suddenly drove almost 200 miles to meet some high school girl at a small coffee shop in another state. Such a hypothesis becomes even more implausible in light of the evidence that ████████ could not have made his acquaintance through OK Cupid, since the evidence shows that Mr. Christensen *didn't have an account* until March 2017. Further, an exhaustive review of all of the Christensens' financial records, including credit cards and bank statements in the possession of the government, reveals no charges or expenditures in Washington or Chillicothe, Illinois, or any charge at all in the State of Illinois during the Fall of 2012.

      ii.    ████████  *Claim of Fresh Outcry to Her P.E. teacher is false*:

In an attempt to corroborate her story, in the May 18, 2018, interview ████ ████ claimed that the day following the incident with Mr. Christensen, she told one of her male P.E. teachers about the attack. Asked to identify the PE teacher, she described him only as a "big bald man." The discovery gives no indication that the FBI

ever attempted to corroborate this information.[7] Following up on this allegation, defense investigators have interviewed all six P.E. teachers who worked at Illinois Valley Central High School in Chillicothe, Illinois, from 2012 to 2013. Each has categorically denied receiving a report from a high school student that she had been forcibly raped the preceding day and each stated that, had they received such a report, they would have immediately reported it to appropriate school and/or law enforcement authorities, as well as the Department of Children and Family Services, as mandated by Illinois law.

        iii.      █████████ *documented actions in the aftermath of the alleged attack are inconsistent with her allegations:*

As noted, █████████ insistence that the incident with Mr. Christensen occurred when she was 17 and a senior in high school, coupled with the recollection of her friend, ███████████, that ██████████ told her of a sexual attack in the fall of their senior year, squarely places the alleged incident in the Fall of 2012. Yet, ███

█████████ OK Cupid account shows that she sent approximately 260 texts and messages on the account between September and October 2012, and continued to be active on the account throughout 2013.

---

[7]We have repeatedly been told that we have virtually everything in the government's files. If an unsuccessful attempt has been made to corroborate this claim, we are confident that this would have been disclosed as *Brady* material.

iv.   ███████ *Has Already Knowingly and Willfully Obstructed Justice in this Case*

As recounted in the relevant FBI 302's, ███████ violated federal law by knowingly deleting her FetLife account shortly after the April 30 interview, with full knowledge of its potential importance in this case. Because Mr. Christensen did not even have a FetLife account before the Spring of 2017, the irresistible inference is that ███████ deleted her Fetlife account to hide own her activities on FetLife, including those related to her stated preference of abduction and rape fantasies, and not, as she claimed, because she had just learned from her internet research that Mr. Christensen had "ties to Fetlife." Also, left unexplained by her explanation to Agent Huckstadt is a message she sent to an unidentified recipient a few days later on her OK Cupid account that for a "super legitimate reason [] I had to delete my FetLife." (Note the Sender's folder has been deleted).[8]

v.   ███████ *has accused multiple other individuals of sexual assault, none of which have been substantiated*

The defense has undertaken an extensive investigation to learn more about ███████. The result is a disturbing picture.

---

███████ told Agent Huckstadt on May 8 that the reason she opened the FetLife account and listed abduction/rape fantasies as one of her preferences was this was "a way for her to cope with things that had happened to her in real life (including the assault by Mr. Christensen.)" However, ███████ admits that she opened the Fetlife and Ok Cupid accounts on the same day, which was September 21, 2012, and so the alleged sexual assaults by the grade school teacher and Mr. Christensen necessarily occurred, if ever, *after* she had opened the account.

Investigation has shown that ███████ has claimed to be the victim of prior sexual attacks on at least five different occasions, perhaps more. ███████ moved from Illinois to Texas and continued to report incidents of sexual assault.[9]

The reason that, except for the one incident below, ███████ has not reported these explosive claims to law enforcement agencies is that they likely never occurred, or certainly not as she describes. This begs the question as to why she did report one of the incidents to the police in Denton? ███████ stated reason for doing so is as outlandish and suggestive of mental impairments as her frequent allegations. She explained to the Denton police that she decided to report that particular "sexual assault" because she wanted to get *food stamps*. Her reasoning was that she needed a drug test which, if negative, would allow her to get food stamps. If the test was indeed negative, she said, she no longer wanted to pursue the case.

---

[9]It is difficult to know where fact and fantasy or delusion end with ███████. In 2014, she told a friend that she had been sexually assaulted in the past when she was tied up in a basement for several days and repeatedly raped. In 2016, she told a man she was dating that she had been raped three times, including an incident where she was held hostage in an apartment for several days. Both these individuals have been interviewed by defense investigators. Police reports in 2015 in Denton, Texas, quote ███████, as claiming yet another sexual assault, telling the officers that she had been "kidnapped and held as a sexual slave" in Illinois in 2014. Indulging the assumption that these allegations refer to the same "incident," it appears that ███████ has claimed *at least four additional attacks*: the alleged attack at the fraternity party in Denton, Texas in 2015, *infra*; an incident in 2014, where she claimed that a former boyfriend stalked and repeatedly raped and sodomized her (*see* Motion to Strike Other Serious Acts of Violence, Dkt. 112, at 8-9); the sexual attack by the school teacher, as described to Agent Huckstadt on May 8, 2018, which also would have been in 2012; and her allegation against Mr. Christensen - making *at least* five known allegations of rape. It is noteworthy that ███████ apparently mentioned none of these other incidents to Agent Huckstadt on May 8, 2018, when she first disclosed the alleged school teacher attack.

The officer who first took ███████ complaint concluded that she was, in his words, a "bit off" and emotionally disturbed, a conclusion easily understood in light of ███████ actual description of the incident, as recorded in the Incident Report.[10] When the officer inquired about her "mental well-being," ███████ admitted that she "suffers from PTSD with hallucinations," purportedly as a result of one of her claimed sexual assaults in Illinois in 2014. *Id.* at 2. (No mention was made of the purported 2012 assaults). When the investigator tracked her down two months later, ███████ told him that she had been committed to a mental facility in Dallas for a month after getting on top of a parking garage and threatening to jump off. Further investigation into the alleged sexual assault incident was closed after ███████ failed to cooperate by refusing to identify one of the men with whom she had previously claimed forced her to have sex because "she was attracted to him and would have had sex with him, anyway."

---

[10]The police report indicates that this incident occurred after ███████ was accessing a social media website called YickYack around 3:00 a.m. one morning, learned there was a party at an apartment complex and invited herself over. The description of what took place relative to this "attack" speaks for itself and, as noted, justified the officer's question to ███████ as to whether her account was based in reality. When one of the attendees was later contacted, a student at the University of North Texas, he recalled a woman who had "messaged back and forth" about attending the party and who seemed "out of it" when she arrived.

### III. ██████████ Testimony Must Be Precluded, or Alternatively, a Pretrial Hearing Must be Held

The testimony of ████████ is so unreliable and so substantially prejudicial that it should be precluded from both the guilt/innocence phase and penalty phase of Mr. Christensen's trial.

While courts have held that there is no per se bar on the use of unadjudicated criminal conduct in a capital sentencing proceeding, "[t]hat does not mean that such conduct may be considered in all cases." *United States v. Corley*, 519 F.3d 716, 724 (7th Cir. 2008). In determining whether this type of evidence may be considered in a particular case, a court "must consider a number of factors, including the reliability of the evidence, the prejudicial and probative impact of the evidence, and the burden of proof both for determining reliability and for a jury to determine whether the conduct may be considered." *Id. See also United States v. Beckford*, 964 F. Supp. 993, 1000 (E.D. Va. 1997) (holding that "unadjudicated criminal conduct may be presented to the jury only if the Court has determined that it meets the threshold test of reliability"); *United States v Gilbert*, 120 F. Supp. 2d 147, 151 (D. Mass. 2000) (same). Before a court may admit such evidence, it must determine that it is "sufficient to allow a reasonable jury to find beyond a reasonable doubt" that the defendant in fact committed the alleged crimes. *United States v. Corley*, 348 F. Supp. 2d 970, 974 (N.D. Ind. 2004).

The Seventh Circuit upheld the admission of the unadjudicated murder in *Corley* where the district court recognized the significance of those factors in assuring that the

defendant's rights were protected by conducting a two-day hearing to determine the reliability of the evidence, *before* it allowed the evidence to go to the jury. *Corley.* 519 F.3d at 724. The district court found that the evidence linking the defendant to the other uncharged murder was sufficient to allow a reasonable jury to find, beyond a reasonable doubt, that he in fact committed the other murder. *Id.* As such, the Seventh Circuit declined to reverse because an appellate court does not "reweigh" evidence. *Id.* at 725. Rather, it reviews whether or not there was sufficient evidence for a jury to find guilt beyond a reasonable doubt; and there was. *Id.*

Unlike in *Corley,* where the defendant was linked to the crime scene by witnesses and had circumstantial evidence in his vehicle, in addition to incriminating statements made by the defendant himself, no corroborating evidence exists in this case. In fact, the only evidence that exists is ███████████ statement, for which there is no corroboration whatsoever. To allow such unreliable evidence before the jury at either the guilt or the penalty phase is substantially prejudicial, in violation of FRE 403 and 18 U.S.C. § 3593(c).

WHEREFORE, Mr. Christensen requests that this Court preclude the testimony of ███████████ at both the guilt and penalty phases of this trial, or alternatively, hold a pretrial reliability hearing to assess the admissibility of said testimony.

Respectfully submitted,

/s/Elisabeth R. Pollock
Assistant Federal Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org

/s/ George Taseff
Assistant Federal Defender
401 Main Street, Suite 1500
Peoria, IL 61602
Phone: 309-671-7891
Fax:     309-671-7898
Email: George_Taseff@fd.org

/s/ Robert Tucker
Robert L. Tucker, Esq.
7114 Washington Ave
St. Louis, MO 63130
Phone: 703-527-1622
Email: roberttuckerlaw@gmail.com

/s/ Julie Brain
Julie Brain, Esq.
916 South 2nd Street
Philadelphia, PA 19147
Phone: 267-639-0417
Email: juliebrain1@yahoo.com

14

CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2019, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system which will send notification of such

filing to Assistant United States Attorneys Bryan D. Freres and Eugene L. Miller and

Trial Attorney James B. Nelson. A copy was also mailed to the defendant.

/s/Elisabeth R. Pollock
Assistant Federal Public Defender
300 West Main Street
Urbana, IL 61801
Phone: 217-373-0666
FAX:   217-373-0667
Email: Elisabeth_Pollock@fd.org

# INCIDENT REPORT

**LOCATION**

| AGENCY | ORI #: | INCIDENT #: | REPORT DATE |
|---|---|---|---|
| DENTON POLICE DEPARTMENT | TX0610200 | 15002884 | 3/19/2015 9:22:02 PM |

| DATE(S) OF INCIDENT: | TIME(S) OF INCIDENT: | REPORT TYPE: | INCIDENT STATUS: | EXCEPTIONAL CLEARANCE DATE | EXCEPTIONAL CLEARANCE |
|---|---|---|---|---|---|
| Start 03-19-2015 | Start 21:22 | ☑ INITIAL REPORT ☐ SUPPLEMENT | ☐ UNFOUNDED ☐ CLEARED BY ARREST ☐ CLEARED EXCEPTIONAL ☐ PENDING ☑ INACTIVE | | |
| End | End | | | | |

| LOCATION OF INCIDENT | COUNTY CODE | WEATHER: | LIGHTING: |
|---|---|---|---|
| W EAGLE DR | 061 | 1 CLEAR | DARK |

**OFFENSE**

| | Statute / UCR CODE | Statute DESCRIPTION / UCR CODE DESCRIPTION | CJIS | STATUS COMPLETED | ATTEMPTED | OFFENDER |
|---|---|---|---|---|---|---|
| 1 | 22.011(a)(1) 11A | SEXUAL ASSLT 11A RAPE | 11990001 | ☑ | ☐ | |
| 2 | | | | ☐ | ☐ | |
| 3 | | | | ☐ | ☐ | |

| BIAS MOTIVATION (OFFENSE 1 - 3) | LOCATION OF OFFENSE (OFFENSE 1 - 3) |
|---|---|
| 1 88 NONE (NO BIAS) | 1 W EAGLE DR# |
| 2 | 2 |
| 3 | 3 |

| TYPE CRIMINAL ACTIVITY: | TYPE WEAPON/FORCE INVOLVED |
|---|---|
| 1 | 1 40 PERSONAL WEAPON   ☐ AUTOMATIC |
| 2 | 2   ☐ AUTOMATIC |
| 3 | 3   ☐ AUTOMATIC |

| (For Burglary Only) NUMBER OF PREMISES ENTERED | METHOD OF ENTRY: | OFFENDER(S) USED: | | |
|---|---|---|---|---|
| | F ☐ FORCIBLE | A ☑ ALCOHOL | D ☑ DRUGS | ☐ CARGO THEFT |
| | N ☑ NO FORCE | C ☐ COMPUTER EQUIP | | |

**VICTIM**

| VICTIM NAME: | | | | PHONE: | |
|---|---|---|---|---|---|

| ADDRESS (Street, City, State, Zip) | TRANSIENT DENTON TX |
|---|---|

| TYPE OF VICTIM I PERSON/INDIVIDUAL (NOT A LAW ENFORCEMENT OFFICER) | RACE: WHITE | SEX: FEMALE | RESIDENT STATUS: R RESIDENT | ETHNICITY: N NOT HISPANIC/LATI | AGE: 20 |
|---|---|---|---|---|---|
| | | | | | DOB: |
| | | | | | CONNECTED TO OFFENSE: 11A |

| AGGRAVATED ASSAULT CIRCUMSTANCES | JUSTIFIABLE HOMICIDE CIRCUMSTANCE | INJURY TYPE |
|---|---|---|
| 1 | | B ☐ BROKEN BONES    N ☑ NONE |
| | | I ☐ POSS. INT INJURIES    M ☐ MINOR INJURY |
| 2 | | L ☐ SEVERE LACERATION    O ☐ MAJOR INJURY |
| | | U ☐ UNCONSCIOUSNESS    T ☐ LOSS OF TEETH |

| RELATIONSHIP OF VICTIM TO OFFENDER 1 - 10 |
|---|
| 1 AQ ACQUAINTANCE   2   3   4   5 |
| 6   7   8   9   10 |

**ADMIN**

| MCDONOUGH, APRIL DAWN 45028 | 03-19-2015 | |
|---|---|---|
| REPORTING OFFICER | ID | DATE | REPORTING OFFICER SIGNATURE |
| DOOLEY, VERNELL | 40488 | 03-20-2015 | |
| APPROVING SUPERVISOR | ID | DATE | APPROVING SUPERVISION SIGNATURE |
| SMITH, KEITH L | 05152 | | |
| INVESTIGATOR | ID | ASSISTING OFFICER | ID | ASSISTING OFFICER | ID |

# INCIDENT REPORT
## NARRATIVE

| AGENCY<br>DENTON POLICE DEPARTMENT | ORI #:<br>TX0610200 | INCIDENT #:<br>15002884 | REPORT DATE<br>3/19/2015 9:22:02 PM |
|---|---|---|---|

SUMMARY

On 03/19/15 around 2200 I was dispatched to Presbyterian Hospital of Denton in reference to a
sexual assault that occurred in the    block of W Eagle.  I contacted the victim in the ER.

# INCIDENT REPORT
# NARRATIVE

| AGENCY<br>DENTON POLICE DEPARTMENT | ORI #:<br>TX0610200 | INCIDENT #:<br>15002884 | REPORT DATE<br>3/19/2015 9:22:02 PM |
|---|---|---|---|

15002884

On 03/19/15 around 2200 I, Officer McDonough was dispatched to Presbyterian Hospital of Denton in reference to a sexual assault that occurred at      W Eagle. I co4ntacted the victim in ER

VICTIM/COMPLAINANT CONTACT:
　　　　　　　　' w/f　　　　　　VERBAL ID

I contacted      in ER   at Presbyterian.      told me that she is a transient and was staying with a friend at '    W Eagle, in an unknown apartment. She was on a website called YickYack and saw that there was supposed to be a party at the apartment complex. She contacted the host,      and was given the apartment number

   invited her over and told her to bring other females.   She went to the above apartment around 0300. She said that there were "frat guys" at the party. They were listening to music and talking.      was bored and decided that she wanted to leave and go back to her friend apartment. Before leaving,      asked her to take a shot of whiskey.      said that she immediately felt "drunk". Everything started "moving really fast".

   sat on the couch, next to      and said that she saw      whispering to a couple of the guys, but could not hear what they were saying. One of the guys told      , "she's cute, but I'm not trying to get into trouble". Soon after everyone left, but      was unable to leave, because of her level of intoxication.

She was unable to remember everything and said that she thinks she's remembering things out of order. She remember having sex with      . on the couch, then the chair in the living room. She does not remember taking her clothes off or how her clothes had been taken off.   She said that      was getting frustrated because "he kept falling out", so they went into his bedroom. I asked her to explain what she meant and asked her if his penis was fully erect. She told me that .      was erect and he was trying to have vaginal intercourse with her, but his penis was "too wide" and he was unable to get it inside of her. He started to use his fingers to penetrate her, and then was able to put his penis inside of her. He attempted to have anal sex with her, but "he came before he could get it in". I asked her where he ejaculated. She told me that he ejaculated on his own stomach.

   a told me that there was another male sleeping in the bedroom while they were having sex. She would not identify that male. After      ejaculated he told her to wake the other male up, which she did. She said that she and that male were "messing around". When I asked her to elaborate, she told me "we were doing things". I explained that I needed her to be as specific as possible. She told me that he "fingered me and went down on me". She explained that by going down, she means that he performed oral sex on her. I confirmed that all of this occurred after she had sex with      , she said that it did.   She doesn't remember if they had sexual intercourse, but said that she remembered that he "came" on her chest. After he ejaculated they took a shower, he carried her and he washed her off.

   i said that she remember someone banging on the front door. When they went to the door, it was her friends     ,     . and a "big black guy". They were there to check on her, but she didn't

# INCIDENT REPORT
## NARRATIVE

| AGENCY<br>DENTON POLICE DEPARTMENT | ORI #:<br>TX0610200 | INCIDENT #:<br>15002884 | REPORT DATE<br>3/19/2015 9:22:02 PM |
|---|---|---|---|

15002884

leave with them.

    slept in the bed with both      and the unidentified male, she slept in the middle.

Around 0900 she woke up to head to     . .     got up with her. When she asked him what happened, he told her that they got naked and cuddled. She told him that she knew that they had sex; he replied that, that explained the condom and wrapper. I asked him if he used a condom, since she had told me that he ejaculated on his stomach. She told me that initially he did, and she doesn't know when he took it off.

I asked      why she didn't leave with her friends and why she decided to spend the night. She told me that she didn't know. She explained that she wasn't sure. She said that she was confused and couldn't explained anything that happened.

SUSPECT CONTACT:
I made no contact with      or any of the residents at _    W Eagle #    .      does not have a phone number for      and does not have a working phone. They only communicate through the YickYack application.

EVIDENCE/ADDITIONAL INFORMATION:
SANE kit
Blood and Urine evidence collection kit
Victim clothing

CONCLUSION:
     would not provide the name of the second suspect. She explained that she was attracted to him and would have had sex with him anyway. I explained to her that even if she didn't consider him a suspect in the assault, he would at least be a witness to the assault. She still refused to involve him.

     told me that she wanted a SANE kit completed, because she wanted to get food stamps. I asked her, what that had to do with the assault. She said that if there are drugs in her system, she will be unable to get food stamps. I asked her again, what that had to do with the assault.     told me that she doesn't do drugs and that if there are drugs in her system, it was because she had been drugged at the party. She also said that, that will also determine whether she files charges or not. If she does not have drugs in her system, she is not interested in pursuing the case. When I asked her why, she told me that she was an active participant. She voluntarily ingested the alcohol (whiskey shot) and "didn't fight" and doesn't know if she said "no" or told      to "stop". I explained that just because she didn't physically "fight", that doesn't mean that she was not assaulted.

I received the SANE kit, blood and urine collection kit and the victim's clothing around 0345. All of the evidence was given directly to Property/Evidence Technician, Katrina Torres.

There was trauma noted to      Labia Minor ("extreme redness") and cervix ("redness"),

# INCIDENT REPORT
# NARRATIVE

| AGENCY<br>DENTON POLICE DEPARTMENT | ORI #:<br>TX0610200 | INCIDENT #:<br>15002884 | REPORT DATE<br>3/19/2015 9:22:02 PM |
|---|---|---|---|

15002884

however no noted trauma to            anus.            story to Julie, the SANE differed from the story
that she told me, slightly.  When she told Julie about the attempted anal sex, she said that she
crawled under the bed to get away.  She also told Julie that she performed oral sex on the
unidentified male; however she told me that he "went down" on her, after she had sex with

    did tell me from the beginning that she was confused about what happened.  It's possible that
she was able to remember more information or different information when she was speaking with
the SANE.            was unable to provide a phone number or an address to follow up.  He only way of
communicating with people is through social media type sites (YickYack).

# INCIDENT REPORT
# NARRATIVE

| AGENCY | ORI #: | INCIDENT #: | REPORT DATE |
|---|---|---|---|
| DENTON POLICE DEPARTMENT | TX0610200 | 15002884 | 3/19/2015 9:22:02 PM |

Investigative supplement #80


Denton Police Department
Investigative Follow-up Report
Case # 15002884
Offense- Sexual Assault
Assigned- 4-1-15
Victim-
Suspect-                , w/m,
Investigator- K. Smith #80
Case Status- Inactive
Case Background
3-19-15- 2200 hours- Officer McDonough was dispatched to Presbyterian Hospital on a report of
sexual assault. There she met              who reported that she was transient and staying
with a friend at       W. Eagle Drive. On 3-18-15 she was on a website and found that a party was
going on in apartment #       in the same complex (                    ). She got to the party about 0300
hours. She met              there and several of his fraternity friends. She took a shot of "honey
whiskey" and she began to feel dizzy and disoriented. There was a Hispanic male there as well as a
male named       . She described        trying to have vaginal sex with her but he kept "falling out"
and she then has intercourse with        . She threw up at some point during the incident. The next
morning she gathered her clothing and went back to the apartment where she was staying. The
following evening she made the police report.
Investigation
4-1-15- I was assigned this case.
4-2-15- 0922 hours- I tried to call the victim but her number was disconnected.
4-5-15- I tried again but it was still not in service.
4-15-15- 1047 hours-The victim called. Her phone had been turned off for a while. I scheduled an
appointment for her for 4-16-15 at 1400 hours to come by for an interview.
4-16-15-1400 hours- The victim called to cancel the appointment. She could not get a ride to the
station. I told her to get back with me when she could get here and we would re-schedule.
4-21-15- 1539 hours-I had not heard from the victim so I called her again and left a message.
4-26-15- The victim had called in the middle of the night and left me a message. Her number had
changed and she provided it to me.
4-30-15-1601 hours-I called and spoke to the victim. An appointment was set for 5-1-15.
5-1-15-1530 hours- I had to pick her up at another place she was staying since she did not have a
ride.
At the station I recorded the interview. She told me that she had become pregnant from the incident
and had a miscarriage at the end of April. The victim seemed nervous and animated at times when
we spoke. She told me some information she found out about        and his friends by going onto
some blog and posting information about him. She said that there were many other girls who he had
done this to and she was going to get me the information. As she spoke she seemed very caught up
in this detail of a conspiracy. I asked her to provide me with this person's information so that I could
speak to her and she told me that she would get her contact info to me. She then went into details of
the night of the incident. She said that she felt like she had to be drugged because she felt
powerless to move but also sick to her stomach. She said that        tried to have intercourse with
her but he was "too big" and could not get it inside her. He ejaculated on her stomach. She then had
sex with        who was asleep on the bed. She was reluctant to tell me his name at first as she did

# INCIDENT REPORT
# NARRATIVE

| AGENCY<br>DENTON POLICE DEPARTMENT | ORI #:<br>TX0610200 | INCIDENT #:<br>15002884 | REPORT DATE<br>3/19/2015 9:22:02 PM |
|---|---|---|---|

Investigative supplement #80

not want to press charges against him because he was nice and had compassion on her. He carried her to the shower and washed the "come" off her. She thought that she heard a conversation between        and an unknown Hispanic male who said "she cute but I don't want to get into trouble". She said that one of her friends she was staying with came to the door but was told she was ok and he left. About 0800 hours the next day she got her clothes and left back to the apartment she was staying at. She slept the following day all day and woke up still groggy. She told me she was staying with        and   in #'   along with    , and        Based on her demeanor and some of the comments which seemed a bit off I asked about her mental well being and if she was currently under diagnosis for any type of emotional disorders. She told me that she suffers from PTS with hallucinations related to an aggravated sexual assault in
Illinois in 2014. She said that she was kidnapped and held as a sexual slave by
               were witnesses to the incident. She admitted that 'sne was a "cutter"
in the past but that was mostly her "copy catting" other girls. I asked her if she could provide me with contact info on any of these people and she said that she thought she could. No police report was made. I asked her if she thought it was possible that she hallucinated this event and she was certain she did not.
5-7-15- I had some follow-up questions for the victim and I tried to call her but the number was disconnected.
5-14-15- I tried to call her again and the number was not in service. I drove to ·     Wisteria where she had been staying. There was no answer at the door and I left a card for her to call me.
5-15-15- I went to 33 degrees north apartment complex and met with the manager Andre Wells. He provided me with contact numbers for   ·'   and      ι (            ·         and
          ). He also provided me with information on .            , w/m, ,
) He is a UNT student and his contact number is            His home address is ·
                    'He escorted me to        apartment and I knocked on the door.
Another occupant allowed me into the common area and I knocked on        door. I left a card for him to contact me.
5-19-15- I tried to call the numbers for        .. and        but both phones were out of service.
5-21-15- 1540 hours- I had not heard from        . I called and left him a message. At 1630 hours he called back. I recorded the conversation. He said that he remembered meeting the victim. She had messaged back and forth about coming to the party. He said that when she arrived she seemed "out of it". It was past midnight when she arrived. He said that he remembered seeing her at the party but he was not paying attention to her. He did not recall having any type of sexual contact with her. I explained the allegation. He was not sure but he thought that one of his frat brothers got together with her. She left the following morning and seemed fine. He said that he recalled someone knocking on the door and asking about her but she told them she was fine and stayed. He did not remember her staggering or anything like that. She seemed distant but had her wits about her. I asked him if he would volunteer a saliva sample if needed and he said that he was uncomfortable with it but if needed to get with him later and we could discuss it.
I tried on multiple occasions to contact the victim for follow-up but her number was not in service and I never got any response with my card on the door.
8-7-15- 1401 hours-The victim called. She said that she had been drifting around from place to place but she had a new address of            ʲ           Her new number is
She said that she wound up in Green Oaks mental facility ın Dallas for a month because she got on top of a parking garage and was contemplating suicide by jumping off. A friend intervened and she

# INCIDENT REPORT
# NARRATIVE

| AGENCY DENTON POLICE DEPARTMENT | ORI #: TX0610200 | INCIDENT #: 15002884 | REPORT DATE 3/19/2015 9:22:02 PM |
|---|---|---|---|

Investigative supplement #80

wound up being committed. She said that she really did not belong there and I had some doubts about her mental stability. I updated her on the investigation. She said that she was continuing to investigate           separately and had found some additional people who claim to have been sexually assaulted by him. I told her that I could use the information to contact these people to see if there was anything to it. She gave me her email (
<ı                               :>).
I sent her a test email so she could get me the information.
8-11-15- I got no response back from her.
8-14-15- 1000 hours- I called and spoke to her. I asked about the email and she said she did not get it. I gave her mine and told her to send me an email so that we could share the information. She said that she could use some counseling. I told her that I would speak to Godoy and have her reach out to her. I also reminded her that I needed the contact numbers of the people in Illinois who witnessed the assault.
8-25-15- To date there has been no email from the victim. I asked Godoy to contact her for follow-up.
Conclusion
The lab report came back with no alcohol showing in her system. The drug screen is still pending. At this point I have insufficient evidence to support a criminal charge against           I have been unable to substantiate what the victim was doing at the time since I cannot reach the people she was staying with at the time of the report. I checked TDEX and could not find any previous reports made by the victim. The fact that she talks about but fails to follow-up on any of the previous witnesses to substantiate her claims is a problem.
I believe based on her recent thoughts on suicide and time spent in a mental facility that she is suffering from some form of emotional problem. She admitted that she hallucinates but claims that this was not a delusion.
There is insufficient data to conclude whether an assault occurred at this time. Based on the victim's spotty contact and failure to follow-up I am hampered in continuing the investigation.
Case inactivated pending the lab results.

# INCIDENT REPORT
## PERSONS INVOLVED

| AGENCY DENTON POLICE DEPARTMENT | ORI#: TX0610200 | INCIDENT#: 15002884 | REPORT DATE 3/19/2015 9:22:02 PM |
|---|---|---|---|

| INVOLVEMENT: COMPLAINANT | OFFENSES INVOLVED WITH: | | |
|---|---|---|---|

| NAME: | | DOB | AGE 20 |
|---|---|---|---|
| ADDRESS: TRANSIENT | | SOCIAL SECURITY NUMBER | |
| CITY: DENTON | STATE: TX | ZIP: | HOME PHONE NUMBER |
| EMPLOYER: | OCCUPATION: 01   01 UNEMPLOYED | | WORK PHONE NUMBER |

| DRIVERS LICENSE NUMBER/STATE/CLASS: | RACE: WHITE | SEX: FEMALE | HEIGHT: 502 | WEIGHT: 100 | ETHNICITY: N NOT |
|---|---|---|---|---|---|

| HAIR COLOR: 3 BROWN | HAIR LENGTH: | HAIR STYLE: | EYE COLOR: | COMPLEXION: LIGHT | FACIAL HAIR: | BUILD: LIGHT | TEETH: | SPEECH/VOICE: |
|---|---|---|---|---|---|---|---|---|

| CLOTHING: | BODY MARKS: | SUSPECT STATUS: | SID: |
|---|---|---|---|

| NCIC# (PCN Missing Person) | ARREST NUMBER: YEAR:        NUMBER: | JACKET NUMBER: | MONIKER: |
|---|---|---|---|

RESIDENCY: R RESIDENT

| INVOLVEMENT:SUSPECT | OFFENSES INVOLVED WITH:11A RAPE | | |
|---|---|---|---|

| NAME: | | DOB | AGE 20 |
|---|---|---|---|
| ADDRESS: | | SOCIAL SECURITY NUMBER | |
| CITY: DENT0N | STATE: TX | ZIP: | HOME PHONE NUMBER |
| EMPLOYER: | OCCUPATION: 10   10 UNKNOWN OR NOT STATED | | WORK PHONE NUMBER |

| DRIVERS LICENSE NUMBER/STATE/CLASS: | RACE: WHITE | SEX: MALE | HEIGHT: | WEIGHT: 0 | ETHNICITY: N NOT |
|---|---|---|---|---|---|

| HAIR COLOR: 1 BLACK | HAIR LENGTH: LONG | HAIR STYLE: | EYE COLOR: | COMPLEXION: | FACIAL HAIR: | BUILD: | TEETH: | SPEECH/VOICE: |
|---|---|---|---|---|---|---|---|---|

| CLOTHING: | BODY MARKS: | SUSPECT STATUS: | SID: |
|---|---|---|---|

| NCIC# (PCN Missing Person) | ARREST NUMBER: YEAR:        NUMBER: | JACKET NUMBER: | MONIKER: |
|---|---|---|---|

RESIDENCY: R RESIDENT