UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

                                    Docket No. 17-20037

              Plaintiff,

    vs.                              Urbana, Illinois
                                     February 25, 2019
                                     11:05 a.m.

BRENDT A. CHRISTENSEN,

              Defendant.


                    MOTION TO CONTINUE

         BEFORE THE HONORABLE JAMES E. SHADID
          CHIEF UNITED STATES DISTRICT JUDGE



A P P E A R A N C E S :

For the Plaintiff:        EUGENE L. MILLER, ESQUIRE
                          BRYAN D. FRERES, ESQUIRE
                          Assistant United States Attorneys
                          201 South Vine Street
                          Urbana, Illinois 61802
                          217-373-5875

                          JAMES B. NELSON, ESQUIRE
                          U.S. DEPARTMENT OF JUSTICE
                          Capital Case Section
                          1331 F Street NW, Suite 625
                          Washington, DC 20004
                          202-598-2872



For the Defendant:        ROBERT L. TUCKER, ESQUIRE
                          Robert L. Tucker, Esq
                          7114 Washington Avenue
                          St. Louis, Missouri 63130
                          703-527-1622

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

A P P E A R A N C E S (Continued):


For the Defendant:          JULIE C. BRAIN, ESQUIRE
                            Attorney at Law
                            916 South 2nd Street
                            Philadelphia, Pennsylvania 19147
                            267-639-0417

                            ELISABETH R. POLLOCK, ESQUIRE
                            Assistant Federal Public Defender
                            300 West Main Street
                            Urbana, Illinois 61801
                            217-373-0666


Court Reporter:             LISA KNIGHT COSIMINI, RMR-CRR
                            U.S. District Court
                            201 South Vine, Suite 344
                            Urbana, Illinois 61802

Proceedings recorded by mechanical stenography; transcript
produced by computer.

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

```
 1                    (In open court; 11:05 a.m.)

 2            THE COURT:  Good morning.

 3            This is in United States of America versus

 4   Brendt Christensen, Case Number 17-CR-20037.

 5            Mr. Christensen is present in open court,

 6   present with Mr. Tucker, Ms. Brain, and Ms. Pollock.

 7            Present at the government table:  Mr. Freres,

 8   Mr. Nelson, and Mr. Miller.

 9            This matter is scheduled today for further

10   argument on the motion for continuance of trial, docket

11   255, filed by the defense on February 20th.  The

12   government has responded with document 257 on

13   February 22nd.

14            Who shall we hear from first from the defense?

15   Mr. Tucker?

16            MR. TUCKER:  Good morning, Your Honor.

17            Well, as we indicated in our renewed motion

18   here, in looking at all the problems here that we admit

19   were -- or that were, to some extent, created by

20   ourselves -- I do want to start out, Your Honor, by first

21   of all making one correction in Government's 257 at

22   page -- and I think the record's already clear on this,

23   but I want to make sure that the record is clear.

24            At page 16, the government says -- and I think

25   a couple other times in the motion -- ". . . certainly
```

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1    after November 11, 2018," starting on the second line,

2    "when all defense counsel were aware of the

3    psychiatrist's purported unavailability."

4          That is incorrect.  That is absolutely

5    incorrect.  All defense counsel were not aware.  One was.

6    The other three became aware on Monday, February 4th,

7    that the psychiatrist had indicated at the outset that he

8    could not do a trial in April and that -- I think we've

9    already indicated that and given the Court information on

10   that, and we can do more if the Court needs, needs it.

11   But that's the situation.

12          Now, to the extent that the government

13   throughout its motion implies "the team" -- maybe they're

14   using imputed, some kind of imputed theory that if one,

15   one person knows, the team knows.  I get it.  But I want

16   to make sure that the record is absolutely clear on that.

17          So the government says throughout that this was

18   some team strategy.  It was not.  It absolutely was not.

19   And the government criticizes us for not having filed a

20   motion to continue earlier.  We, we made it clear, Your

21   Honor -- not only in our latest pleadings, but earlier --

22   we made it clear that we thought we would need to, to

23   file a continuance motion.

24          All counsel were aware of that, that a

25   continuance motion would need to be filed.  Most -- three

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1  of us thought that we had a psychiatrist; and if it

2  didn't get granted, it didn't get granted.  We would just

3  have to deal with that.  But all of us knew from the

4  outset -- we've said that; we've said it in pleadings --

5  we thought we needed more time.  But we were unaware --

6  three of us -- we were stuck without a psychiatrist at

7  all.  So that's the situation.

8         The government criticizes us for that strategy.

9  But, Your Honor, that was a perfectly reasonable

10  strategy.  That's what any lawyer would do.  A lawyer

11  would not think that, "Okay, I got a trial set in April.

12  I think I'm gonna need to file a motion to continue this

13  because I don't think we can be ready," but you don't

14  file that motion in December.

15         Now, that's distinguished from the issue of

16  whether you notify the Court when you know you don't have

17  a psychiatrist at all.  That's a different issue.  Okay?

18  That's totally different.  We'll concede on that.

19         But this idea that we should have filed

20  before -- you know, if the Court would have said -- every

21  Court that I know would probably say, "Well," as you'd

22  said earlier, "I want the trial go in April.  Keep

23  working.  Keep working towards it."

24         That's what we did.  That's what we did.  At

25  the end of December, we got in touch with the

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1   psychiatrist; said, "Look, we got a trial date.  We got a

2   trial date in April.  You need to get back here and see

3   him.  You've seen him one time.  One time."  That's what

4   we were doing.

5           And this is not a situation where we came in a

6   week before trial.  This is not a situation where we came

7   in three weeks before trial.  We came in almost two

8   months before.  That's at least calculated -- well, okay,

9   we'll at least have the psychiatrist see him again, see

10  where we are.  And it was only that, when he was going to

11  see him on February 5th and we had a conference with him

12  the day before, where three of us learned that he'd

13  absolutely said on the front end there was no way he

14  could do it.

15          THE COURT:  Mr. Tucker, let me just ask one

16  question initially.  I don't want to interrupt you.  But

17  you say that you always knew that you were going to need

18  to ask for a continuance.  But what was that continuance

19  going to be necessary for?  Because the only requests for

20  continuance now are in relation to the psychiatrist, you

21  know, that we got stumbled up with along the way here.

22          MR. TUCKER:  Well, that is not the only reason.

23  We said in the first pleading, the motion to continue, I

24  believe, in February, the, the -- I think it's docket

25  226, if I'm not mistaken, where we said for other reasons

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1  we need a continuance.  You know, we have a lengthy

2  social history.  People have worked very hard on this.

3  It's not like people haven't been working.  Spread out --

4  family spread out all over the country.  People traveling

5  everywhere to try to put this together in a proper way --

6           THE COURT:  Okay.

7           MR. TUCKER:  -- to get to this psychiatrist.

8           THE COURT:  All right.

9           MR. TUCKER:  So we were always going to argue

10  that.  Then we got onto this, where we are now.

11           THE COURT:  Okay.

12           MR. TUCKER:  We haven't even got a -- we think

13  we have a psychiatrist now.  Well, we do have one.

14           So I've tried, Your Honor, to put this together

15  the way that I thought -- and, and the suggestion of

16  July 1st -- right? -- July 1st is the date that would

17  really work and avoid all of the problems that I can

18  foresee coming up.

19           And I would think that the government would

20  want to get this hashed out now, this 12.2 issue.  It's

21  obviously never going to -- it's not just going to go

22  away if it doesn't get litigated here.  So, July 1st

23  works for several reasons, Your Honor.  And I do think,

24  you know, it's halfway between the April 1st and the

25  October 1st date.

1    But if you, if you look forward -- looking

2    forward, July 1st -- and I'm picking, like -- I'm

3    estimating six to seven weeks before you get to the

4    penalty phase.  That's built in with the two weeks that I

5    think I was hearing the Court say that you were thinking

6    about a break between the guilt phase and the penalty

7    phase.  So if we start out:  two weeks of voir dire --

8    the government started out one week; we said two to three

9    weeks.  Let's say two weeks.  Say three weeks guilt --

10   two to three weeks, I believe, from the government; I

11   think they may have even said two weeks.  Let's say three

12   weeks.  That's five.  Two weeks break.  That would start,

13   if you start July 1st, the penalty phase around the

14   middle of August.

15        Now, the government, I notice in their last

16   response, doesn't want a two-week break and for various

17   reasons.  So that would have to be hashed out.

18        But that's basically where we would be, and we

19   should be through by end of August, I would think.  So

20   that works.

21        The reason that works, also, is this, Your

22   Honor.  There are all sorts of issues lurking here.  For

23   instance, the 12.2 notice.  Now we have found somebody to

24   do this.  We don't have -- you probably read the

25   government's declarations; and they have these, these

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1   doctors who are basically on call that have testified for

2   years and years and years in case and case and case for

3   the government.  That's how they get those declarations

4   together in a day or two.

5         The -- we have found somebody who's never

6   testified in a federal capital case.  That's okay.  We'll

7   deal with it.  We've got somebody.  They can come, travel

8   here, and see the defendant on March 28th for a day, on

9   April 19th for a day, on May 16th for a day.

10        That psychiatrist will -- needs to have her own

11  diagnosis.  I mean, it could be the same schizophrenic

12  spectrum.  It could be bipolar with psychotic features.

13  There's all sorts of possibilities lurking here.

14        So the first issue you have to look at and why

15  I think July 1st works, Your Honor, is the 12.2 notice.

16  The 12.2 notice will have to --

17        THE COURT:  Could change.

18        MR. TUCKER:  -- could -- definitely, we don't

19  know.  It could.

20        THE COURT:  Where did the first disclosure come

21  from then?  Obviously not the psychiatrist retained in

22  October.

23        MR. TUCKER:  I believe it was from the

24  psychiatrist retained in October.  I'll -- Ms. Brain

25  filed that.  I believe it was conferred.

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1          THE COURT:  Because he saw --

2          MR. TUCKER:  He saw the defendant on November

3  15th, --

4          THE COURT:  Okay.

5          MR. TUCKER:  -- and that was filed December --

6  what? -- 3rd or 4th or whatever.

7          THE COURT:  Okay.

8          MR. TUCKER:  So he'd seen him.

9          And if you recall, the 12.2 notice had language

10  in there that was the result of -- I don't know if it

11  says of one meeting, but it definitely said that this

12  could be -- you know, might have to be altered.

13          So the way, the way I see this, Your Honor, is

14  that we have to build that in.  And there's also the

15  issue that our psychiatrist would -- what's the date I

16  said?  March 28th, April 16th, and May whatever I set

17  back on the table there -- that the government

18  psychiatrist will -- our psychiatrist has to see him

19  first.

20          So the government's psychiatrist, I think I saw

21  from the pleadings, were, wanted to come May eight--

22  March 18th, I'm sorry.  That was based on the April 1st

23  trial date.

24          So I, I believe what I -- the way this would

25  work -- and it would satisfy -- you know, there's, the

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1   government cited the Seventh Circuit cases with the

2   various factors, three of which weigh heavily in our

3   favor -- that the, the -- we should be allowed to amend

4   the 12.2 notice by May -- well, our doctor would see him

5   for the third time on May 16th.  But let's assume that

6   after the second, second visit, by May 1, that we could

7   amend, if necessary, the 12.2 notice.

8          The government doctors could then go in to see

9   him, and then we would be in a situation that -- there's

10  another factor here, too.  We don't want to start this

11  trial, Your Honor, without having our doctor's report in

12  hand, not only for the penalty phase; but, also, there's

13  issues that are related to the guilt phase here with the

14  mental condition, too.  Because of the fact that even,

15  regardless of whether we call an expert at the guilt

16  phase -- even if we're going to use our expert at the

17  penalty phase, the defendant's mental condition, the

18  government has said over and over that they are going to

19  use, both at the guilt phase and the penalty phase,

20  statements made by the defendant.

21          THE COURT:  So the 12.2 disclosure that you

22  asked to amend by May 1st could, in your mind, include

23  now revisiting whether there will be mental health issues

24  at the guilt phase?  Is that what you're saying?

25          MR. TUCKER:  No, no.  I'm not saying --

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1           THE COURT:  Because there's something in the --

2           MR. TUCKER:  No, no.

3           THE COURT:  -- response, maybe, from the

4    government that made me think that somehow there's mental

5    health experts, or issues going to be raised in your case

6    in the, in the guilt phase.

7           MR. TUCKER:  No.  That -- we're not talking

8    about a 12(a) insanity notice or anything like that.

9           THE COURT:  Okay.

10          MR. TUCKER:  No.

11          But anytime the government introduces a

12   statement of a defendant -- as you know from instructing

13   juries and stuff -- obviously, the defendant's mental

14   condition is always a big factor for credibility.  How

15   much do you credit that?  And there's going to be

16   evidence here that statements were made.  The government

17   is going to say we're going to introduce those at the

18   guilt phase, at the penalty phase.  There's also going to

19   be evidence that some, those statements are not true;

20   they're absolutely not true.  The defendant's mental

21   condition could be an issue there.

22          Now, we're not planning on calling our expert

23   at the guilt phase.  We haven't even given a Rule 16

24   notice of that.  But before we start the trial, we need

25   to know what our expert is going to say about that.

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1    Just -- we need to coordinate our presentation from voir

2    dire, opening statements, through the penalty phase.  Our

3    expert says that "I can get you that report by the end of

4    June."

5            We start July 1st.  The trial can end by the

6    end of August, number one.  Number two, the government

7    expert can get in and see him in May.  That was -- that

8    would be over a month before the trial, the same thing

9    they're doing now.  Right now the trial is set April 1st.

10   They say, "We only need a day."  We're going to see him

11   May 18th.  So you've got that.

12           You also got the fact that it gives our --

13   their experts have been retained for a couple of months.

14   We know that.  And they've also started their work.

15           So that date actually works.  That date, the

16   Seventh Circuit -- Seventh Circuit has three, three --

17   well, there's six or seven factors they set out, but

18   three of them -- one of the biggest ones is the, the

19   likelihood of denial to the defense -- if the motion to

20   continue is denied, it would be prejudice, extreme

21   prejudice if this is denied.

22           It may be our fault.  We can take our hits from

23   the government.  They can -- whatever.  But the fact of

24   the matter is we're still in the same situation.  This

25   young man whose life is on the line here, his Fifth

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1    Amendment right -- his Sixth Amendment right to the

2    effective assistance, his Fifth Amendment right to due

3    process, his Eighth Amendment right are all affected

4    here.

5              So his lawyers messed up.  Okay.  But we're

6    still in that same situation, and we're not coming in

7    trying to ask the Court to give us an eight-month

8    continuance or anything like that.  Ninety days will take

9    care of it.  That, that's another factor.

10             What is the likelihood that the motion to

11   continue would satisfy the movant's needs?  That will

12   satisfy us.  We're not thrilled about it because we

13   always think that we needed more time; we still believe

14   that.  But we can, we can operate in that framework.  We

15   have to.  We can do it.  Okay?  We would like more time.

16   You can see all the stuff that's going on in this case,

17   Your Honor.  You see that.

18             THE COURT:  Then the new jury wheel comes into

19   effect June 1st.  That, that seems to me to be an issue

20   as well.

21             MR. TUCKER:  I thought I waived that on the

22   record.

23             THE COURT:  You did, but I guess I don't

24   understand how or why, --

25             MR. TUCKER:  I waived it.

1            THE COURT:  -- given that you filed a motion

2    for jury info as to grand jury and petit jury in the

3    first place --

4            MR. TUCKER:  Well, the grand jury would still

5    be in operation.

6            THE COURT:  Right.

7            MR. TUCKER:  But we haven't, we haven't

8    followed up on that.

9            But the petit jury, we will waive that simply

10   because this is more important to us.  So we had said we

11   will waive any statutory or constitutional claim based on

12   the composition of the new jury wheel.  We're fine with

13   that.  This is much more important.  This gets right down

14   to the heart of our ability to defend this case.

15           THE COURT:  But, obviously, it was important to

16   file that motion initially.

17           MR. TUCKER:  It was.

18           THE COURT:  So what --

19           MR. TUCKER:  Well, I think we're just -- it's

20   not -- you know, the reason -- I think it should be

21   fairly clear.  The reason we're doing it is we need a

22   continuance.  That's what we need.  And to the extent

23   that Defendant has to make choices at times, that's a

24   choice that we make.  We need it.  All right?  I mean, I

25   don't know how to say that any clearer, that that's just,

1    just what we're willing to do.  We need the time to

2    prepare this case properly.  That's the bottom-line

3    issue.

4              And the third factor that weighs heavily for us

5    is the degree of complexity.  This is a very complex --

6    complex material, Your Honor.  Very complex.  And the

7    government psychiatrist tried to say, "Well, it's not

8    that complex."  But it is.  You can read their own, own

9    resumes and understand how complex it is.

10             Plus, if you look, look at what they say, Your

11   Honor, if you look at, for instance, Dr. Dietz's

12   declaration, he says:  Well, you know, I was hired --

13   what? -- December 18th maybe, or maybe I was contacted in

14   November.  I got materials January 4th, and I'll get it

15   done by April 1st.  Three months.

16             That's what we're asking for.  Our doctor --

17   and, you know, we had to go out and get somebody.  We

18   haven't got these doctors that are essentially on

19   retainer.  They can characterize it however they want.

20   We see them all the time.  They're there all the time.

21   That's what they do.

22             We haven't got that.  We had to really scrounge

23   around here.  And, you know, we brought it on ourselves;

24   I get it.  But that's the way it is.  And we need that

25   time.  The government's -- you know, we can go through

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1    some of their, their objections.

2              But, you know, the jury wheel's fine.

3              We understand the family's interest.  You know,

4    the family has, basically, some rights.  Whether they're

5    substantive or not is a different issue, and there seems

6    to be a difference on the cases.  But the defendant's

7    constitutional rights would control.

8              But we don't even have to go there because the

9    family wanted, for symbolic reasons, the trial to start

10   before June 9th.  So, really, the difference in that

11   respect would be June 8th versus July 1st, which is

12   729 days versus 752 days -- hardly a lot of significance.

13   I understand the family's symbolic interests.  But in

14   terms of -- the statute provides that they just have a --

15   whether it's a substantive right or not -- to, to

16   proceedings that are not unreasonably delayed.  So the

17   difference between 729 and 752 would not be significant

18   legally, I don't believe.

19             You know, there's the issue of Mr. Nelson's

20   trial in Alaska.  I understand that, and it's -- it's

21   probably a little, in some ways, a little inappropriate,

22   perhaps, for me because I don't know all the ins and outs

23   of this.  But we did look at -- there are presently six

24   attorneys for the government who are getting notices, who

25   entered notices of appearance.  There were seven

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1   originally, and one is terminated.  Whether that case

2   could be continued for a couple weeks or whether it's

3   even necessary or not I don't know because we should be

4   able to be finished a month before that.

5           So I think that covers most of the issues.  Let

6   me ask my colleagues here if there's anything else I

7   should address.  I'm happy to answer any other questions,

8   Your Honor.

9           THE COURT:  See if there's anything else you

10  want to address.  I just have another question or two.

11          (Brief pause in proceedings.)

12          MR. TUCKER:  That's fine.

13          THE COURT:  The, so -- let me understand.

14  July 1st is your request.  You think that that would --

15  if we started July 1st, we'd be six or seven weeks before

16  the penalty phase.  Your analysis is maybe two weeks for

17  voir dire, two to three weeks on the guilt phase, and

18  then, depending on the verdict -- it could end there; or

19  if we went into the penalty phase, we would probably

20  start the penalty phase, which would last two to

21  three weeks in mid August; so ending at some point,

22  maybe, 1st of September.

23          You think the 12.2 notice is one of the reasons

24  why, because that could very well change.

25          And that you ask leave to amend your 12.2

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1  notice by May 1, 2019.  And you would waive the, any

2  request for information about the new jury wheel as it

3  pertains to the petit jurors.

4          That, that last one -- obviously, you felt it

5  important to file.  Was that -- I don't know who authors

6  things, but I assume they're all supervised or approved

7  by you; is that correct?

8          MR. TUCKER:  They're supposed to be.

9          THE COURT:  Okay.  All right.  Let me hear from

10 Mr. Miller or -- from the government, and then I may have

11 some more questions.

12         MR. MILLER:  Thank you, Your Honor.

13         Our, our main concern, after hearing Mr.

14 Tucker's argument, is that we're moving a little bit

15 backwards.  We'll explain why that is.

16         First, I do want to address a couple of issues.

17 Any of the facts regarding the, who knew what on the

18 defense side obviously comes from the defense.  We don't

19 pretend to have any of that, know any of that

20 information.  We were simply citing the information that

21 had been disclosed by the defense.  And so that's, that's

22 what we were relying on.

23         And particularly we didn't know that -- Mr.

24 Tucker says the government's criticizing the strategy.

25 We believe we just were explaining their strategic

1  position.  I don't believe we took a position on

2  criticizing the strategy.  In fact, if Mr. Tucker carries

3  the day, then the strategy has been a successful one.  So

4  we're not criticizing the strategy, but it is a factor in

5  both its unavailability of a witness for whether to

6  change the trial, whether the shortness of the delay was

7  caused by the defendant, and also whether the

8  unavailability of the witness is related to the

9  defendant.  And so I think those are important factors

10  for the Court to take into account, and we think the

11  Court would be -- could place weight and should place

12  weight on that factor in determining whether to grant the

13  defendant's continuance.

14          Again, we didn't oppose any continuance in this

15  case.  We do believe that the continuance we've proposed

16  can satisfy the prejudice.  That's, that's the issue

17  here.  From the government's perspective -- and we think

18  the Court shares it -- we want this case to be tried

19  without any unnecessary delay, and we don't want any

20  prejudice to the defendant.

21          And we believe that our recommendation serves

22  both those means.  We take some issue with the idea that,

23  that the July 1st trial is halfway between October 1st

24  and April 1st.  Well, the October date is just a date

25  that was just thrown out by the defense.

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1           Maybe this is inappropriate; but when I was in

2    law school, there was a guy -- when someone would say how

3    much they -- when someone was selling stuff, he'd ask how

4    much they wanted.  Then he would give a price that was

5    far off, below what it was worth.  And then he'd say,

6    "Look, if we just met halfway, this would be a good

7    price."

8           And that was sort of what was done with that

9    throwing out of October; so I don't know that that

10   carries any weight that it's halfway, and I don't think

11   the Court gives that any grounds either.  The Court wants

12   to try this case as quickly as possible without the

13   defendant being prejudiced.

14          The, the reason we say that we're afraid about

15   this case, maybe, moving backwards is because of the

16   comment we've heard for the first time here, after

17   representations to the contrary, that the Rule 12.2

18   notice may be amended.  Now, I understand that's a

19   product, as I would understand it, of now asking for a

20   different psychologist.

21          But despite the representations that we have

22   these, the government has these experts on retainer,

23   that's not correct.  The fact is, these experts were

24   sought after the defense revealed in December what their

25   12.2 notice was.  If that notice would change, that could

1   obviously change the government experts that would be

2   required to rebut whatever their psychiatrist is going to

3   say, which is a little bit troubling because our

4   understanding was --

5          THE COURT:  Is it the statute or case law or

6   what that has it play out this way where the defense

7   discloses and then the government comes up with a

8   rebuttal expert, as --

9          MR. MILLER:  I believe that's --

10          THE COURT:  -- opposed to why both sides just

11   simply can't have their experts and give all the, the

12   opinions they think?

13          MR. MILLER:  Yeah.  I believe it's Rule 12.2,

14   Your Honor, and the case law because the idea is, again,

15   if, if -- there may be an expert, and I think this is

16   what the expert, when they disclose -- there may be an

17   expert in schizophrenia that is not an expert in whatever

18   DSM-5 claim they're going to make now, so the government

19   would need a different expert to rebut that claim.

20          More importantly, we think that, if you look at

21   the -- they've said they were always going to ask for

22   more time; but if you look at most of the previous

23   filings, the idea was just psychosocial history.  It

24   wasn't that the psychiatrist needed time.  It was the

25   psychosocial history, the mitigation investigation, the

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1    psychologist.  All that's been done.  The Court asked at

2    the last hearing if there was any other basis for the

3    continuance; they said no.

4         So we're really just talking about the

5    psychiatrist; and after all that information was done, we

6    have a psychiatrist who examines the defendant and makes

7    a diagnosis.  So it is a little bit troubling to suggest

8    this is all, can just be -- it can be a completely

9    different diagnosis after we have one expert who has

10    already examined and said it is this.  I mean, I suppose

11    that would raise some issues of whether, in fact, at

12    least in that phase, whether the prior disclosure would

13    in any way be relevant and now we have someone else who's

14    seen him and coming to a completely different diagnosis.

15         Now, that may or may not happen, right?  At

16    this point, it may very well be that we get the same

17    diagnosis from our psychiatrist, and we'll absolutely be

18    in a position to move forward.

19         But we would suggest that, if the Court is

20    going to allow the defense to amend the Rule 12.2 notice,

21    that, in fact, that would go in favor of, again, a

22    shorter date for now because it may very well be that, if

23    they change the Rule 12.2 notice, the government will

24    have to address the Court to make sure that we'll be in a

25    position to respond.  We certainly would hope to be able

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1   to do that.

2           But we just wanted to point out that, that

3   issue to the Court because, as they have aptly pointed

4   out, our experts will examine their -- examine the

5   defendant after we get their -- if there's going to be an

6   amended Rule 12.2 notice because they -- our scope is

7   limited, as you know, Judge.  I mean, if -- perhaps we

8   could do what the Court suggested earlier, which is each

9   side can just make their diagnosis.  But if that's the

10  case, then our experts have to have complete free range

11  when they go in to examine the defendant, and the defense

12  has objected very strongly to that and we are limited in

13  our experts to the areas that have been raised by their

14  expert.

15          So, since they're talking about amending,

16  possibly trying to amend that 12.2 notice, that would

17  clearly also then limit our experts; and so that would

18  have to take place after they've made that disclosure.

19  So, so those issues are lurking.

20          We also do agree with the Court.  It's somewhat

21  a little bit troubling --

22          THE COURT:  Well, that's why I asked the

23  question about why it has to be in that order.  Why is

24  it?  You said 12.2.  I know 12.2, and it does use the

25  word "rebuttal."  But is "rebuttal" specific to the

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1   already disclosed?  Or can "rebuttal" mean he has

2   something else as opposed to this?

3           MR. MILLER:  I, I think it could mean that,

4   Your Honor.  I think it could mean that so --

5           THE COURT:  So wouldn't that solve this issue?

6   You have your expert.  Mr. Tucker goes in there; and if

7   he comes up with a different, another diagnosis, then

8   that's his diagnosis.  And the government expert

9   evaluates and comes up with their diagnosis; that's their

10  diagnosis.

11          MR. TUCKER:  You want a response?

12          THE COURT:  Yeah.

13          MR. TUCKER:  No.  That would violate Buchanan

14  v. Kentucky, number one.  They're clearly limited,

15  subject to rebuttal.  That seems perfectly clear.  I

16  don't think they'd even challenge that, but that's what

17  the case law is.  So they, they can't have free range as

18  to go in and make any diagnosis they want.

19          THE COURT:  Okay.

20          MR. TUCKER:  I would note that -- I suspect --

21  I don't know what the phrase would be since he's alive;

22  he wouldn't turn over in his grave.  But to suggest that

23  Dietz -- you read his declaration and seen his

24  qualifications -- would not be qualified to rebut another

25  DSM diagnosis, I'm sure he would find that --

1          MR. MILLER:  Well, and that may be correct; and

2     if it's limited to a DSM diagnosis, which I presume it

3     will be, we would probably be fine, Your Honor.

4          But we just want to point this out, that we're

5     dealing with a moving target, Your Honor.  And we think,

6     for those reasons, it would make sense to have, at least

7     at this time, the, the earlier trial date suggested by

8     the government that will move things forward.

9          If we get that amended 12.2 notice, like I

10    said, we'll do everything we can to keep that trial date

11    and be able to move --

12         THE COURT:  So lay out for me, if we start the

13    trial May 6, where, where -- how it plays out.

14         MR. MILLER:  We believe by -- well, before that

15    May 6th date, their expert will have examined the

16    defendant.

17         Our experts then will be able to examine the

18    defendant based on their amended Rule 12.2 disclosure.

19    Assuming, again, no -- that our experts are able to

20    address that amended Rule 12.2 disclosure, then we

21    would -- each side would have had their experts do the

22    examination and, at the very least, have rendered an

23    opinion, even if it's not in a written report, prior to

24    the beginning, beginning of the trial on May 6.  So they

25    would, they would have the information from their expert,

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1   which we wouldn't have yet, of course, but they -- and we

2   wouldn't have our expert's opinion, but they would have

3   that prior to trial beginning May 6, even though it only

4   goes to the penalty phase.

5           We would start the selection on May 6th.  I

6   think everyone's been estimating one and a half to two

7   weeks for jury selection.  And then three weeks for the

8   guilt phase.  We think during those -- if the report

9   wasn't drafted by then, once we're five weeks into the

10  trial, the report would be drafted.  At that point, we

11  would then go straight to the penalty phase, assuming a

12  guilty verdict.  If there were a guilty verdict, then the

13  Rule 12.2 would kick in; and then we would finally, for

14  the first time, get the report from the defense expert,

15  as well as, then, the report from our rebuttal experts.

16          THE COURT:  Respond to Mr. Tucker's point about

17  wanting to know their expert's opinion before they start

18  jury selection.

19          MR. MILLER:  Well, and we do -- we don't

20  disagree with that, Your Honor.  But I don't believe it

21  would have to be in the form of a written report for them

22  to see that.  I think that -- certainly, you could make

23  an argument that, because this solely is going to the

24  guilt phase and the government isn't even going to know

25  about this information, it doesn't seem that the defense

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1  is -- would be entitled to know the information prior to

2  trial beginning when, again, it only goes to guilt phase

3  and they're not going to be presenting evidence of the

4  defendant's mental condition during the guilt phase.

5          But we, we've -- even granting them that, Your

6  Honor, they will certainly have from their psychiatrist

7  an opportunity to consult with the psychiatrist and know

8  what that opinion is going to be before the report is

9  even written, which we believe, based on the declarations

10 that we've submitted, can take place easily before the

11 trial would begin on May 6th.

12         The last -- and I think we share the Court's

13 concern -- is on this waiver of the jury wheel issue.

14 The extent this continuance, as the defense -- Mr.

15 Tucker, I believe, acknowledged, is somewhat due to the

16 defense.  Then it becomes a concern, then, that they're

17 going to waive an issue that they've raised previously to

18 obtain a continuance.  I think it could be an issue later

19 as courts would look back on this.

20         And so if we can avoid the jury wheel issue,

21 which I think we could do as long as the questionnaires

22 and the jury was selected prior to -- well, we think as

23 long as the questionnaires went out -- the jurors that

24 were going to come in were from that prior jury wheel,

25 then we would avoid that issue; and that could happen

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1  with a trial May 6th, or even sometime after that.  But I

2  don't know if that could occur -- we'll obviously leave

3  that to the Court -- if that would occur if the trial

4  began July 1st.

5          Any further questions, Your Honor?

6          And I will ask Mr. Nelson if he has anything he

7  wants to add to the 12.2 notice, because he certainly

8  deals with that on a more regular basis than I do.

9          THE COURT:  Go ahead.

10          MR. NELSON:  Just briefly, Your Honor, to echo

11  what Mr. Tucker mentioned, the, the structure of the law

12  is set up that we have to have notice from them to rebut.

13  We don't have any basis in the law to examine the

14  defendant for any reason until they give notice, which

15  they've done.

16          I would note, Your Honor, there's no support in

17  the law for amending it substantively either.  They've

18  now given their notice.  So the, the redoing, so to

19  speak, of that Rule 12.2 notice puts us basically back

20  where we were December 3rd in terms of having to set

21  up -- let's say, for example, they change diagnoses.

22  Well, now we have to talk about what the structure of our

23  rebuttal examination can and can't be and what, you

24  know -- as Your Honor's aware, we had a substantial

25  amount of litigation about what we could and couldn't ask

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1   about and under what circumstances.

2          And they want to have access to what questions

3   we are going to ask in advance; and, certainly, if we're

4   doing that while we're in trial and we don't have access

5   to any -- you know, we can't talk to the doctors for any

6   reason about this, this is going to create a substantial

7   amount of litigation through the standby firewall

8   counsel, which I think is something that, if I recall

9   correctly, the Court was hoping to avoid by setting it up

10  the way that he did.

11         So I want to put all of that before Your Honor,

12  that I'm not -- I'm not aware of any case or anything in

13  the statute which says you can just, you know, go ahead

14  and amend your 12.2 notice later on and reset the trial

15  date.  There doesn't seem to be a basis for that.

16         THE COURT:  Mr. Tucker, you want to respond to

17  that?  In other words, why not just leave things as they

18  are?  You've made your disclosure; and if that were to

19  change, then you'd have to file a motion for leave to

20  amend it, I guess.

21         MR. TUCKER:  Well, we would.  But I think that

22  it's inherent that the defendant would have an

23  opportunity -- if we could show good cause to amend,

24  which I think we may already have shown, that we would be

25  allowed to do that.  If there's -- the government doesn't

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

```
 1   cite any, any law that says that a defendant can't amend
 2   either.  So that just would seem to follow from normal,
 3   almost, legal practice.  If there's good cause to amend a
 4   pleading, you do it.
 5           One thing that Mr. Nelson brought up that was
 6   on my list that I didn't discuss, which I think is an
 7   important point, is the procedure that we're suggesting,
 8   Your Honor, also avoids this issue.  If you start when
 9   the government wants to, the government psychiatrist is
10   talking to the defendant during the trial, trying to
11   interview -- and what about the, what about legal issues
12   that come up with firewall counsel?  All this would be
13   litigated -- all, all these issues would be coming up at
14   the same time, where I think the way we, we suggested is
15   very orderly.  It -- you know, the government
16   psychiatrist will be able to go in and talk to him plenty
17   in advance.  If there are legal issues concerning that
18   that come up, we can handle it through firewall counsel.
19   The examinations will be well before the trial date.  And
20   that just seems the most orderly way, not to mention the
21   fact that also -- what we mentioned on the phone -- it's
22   probably, I would suggest, the best way to proceed to, to
23   build in a little bit of, a couple of weeks here and
24   there.  We don't know things that could come up --
25           THE COURT:  That's actually why I think
```

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1    starting earlier rather than later is a good idea because

2    starting earlier does give us some time to -- we can

3    always slow it down, --

4           MR. TUCKER:  But --

5           THE COURT:  -- but we can't speed it up.  In

6    other words, if we start it earlier, we could build in

7    time for things that need to be addressed as we go along.

8           So, I'm a little concerned that if we don't get

9    started -- I mean, I, I don't know what the strategy is.

10   I'm not commenting on strategy.  But I'm, you know,

11   beginning to wonder about -- you know, I think -- I think

12   we need to get started; let's just put it that way.

13          I'm not -- and, and I don't want you to -- I

14   don't think much of the waiver of the, of the jury

15   information, to tell you the truth, because I don't -- I

16   have reason to think it was never reviewed.  The

17   information we supplied was never reviewed in the first

18   place.

19          MR. TUCKER:  We haven't forgot about that

20   because you are correct --

21          THE COURT:  Because I brought the disk.  It's

22   been sitting in the Clerk's Office since December 11th.

23          MR. TUCKER:  You are correct.

24          THE COURT:  I just want to finish.

25          MR. TUCKER:  Okay.

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1          THE COURT:  That was a motion that required us

2    to work with the Clerk's Office, work with IT, work with

3    the supplier; and my Clerk, I asked him to go back and

4    examine his computer.  So between -- in the months of

5    August, September, October, November, and December before

6    we got the order out, he spent 73 hours compiling this

7    information so that it was accessible, reviewable, easy

8    to understand, and gave you almost everything you asked

9    for; and it was done -- and pursuant to the statute,

10   which says that it has, it has to be done so that you can

11   raise challenges if you wish.  That time has come and

12   gone to raise challenges.  It was never reviewed.  So I'm

13   having a little trouble with the representations -- okay?

14   -- that you make to rely on.

15          So counter that with knowing in October that

16   Ms. Brain knew that you didn't have an expert that would

17   be able to testify until October of 2019 and not brought

18   to any of your attention, apparently.  Clearly not

19   brought to mine.  If that had been -- and I realize this

20   is hindsight -- maybe you -- and when you did find out

21   and you did file the motion to continue and I denied it,

22   your expert quit.  But within four days, you found

23   somebody else who now can be ready within 90 or 120 days.

24          If maybe the thought had been at the time in

25   October when your expert said he couldn't be available --

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1  or she -- until October of 2019 you had then gone and

2  found another expert, we wouldn't be having this

3  conversation today again either, or we wouldn't be having

4  it as it occurs to July.

5         So all that I'm getting at is:  When we add

6  this all up, I'm having a hard time relying on your

7  representation that this will go as you even say it would

8  go if I granted you everything you requested today.

9         MR. TUCKER:  Okay.  Well, let me respond in

10  various ways.

11         I have to say I've been practicing 44 years,

12  and a Court has never accused me of making a

13  misrepresentation, and I'm not making --

14         THE COURT:  I said I'm having a hard time --

15         MR. TUCKER:  I understand.

16         THE COURT:  -- relying on the representation.

17  I can't imagine that you would ask for information and

18  not pick it up --

19         MR. TUCKER:  I'll address that.

20         THE COURT:  -- or review it.

21         MR. TUCKER:  I'll address that.

22         There, there is -- the explanation might not be

23  sufficient, but I will explain, explain what happened.

24         I believe that what happened -- recently, the

25  issue came up:  What about that jury, the jury motion?  I

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1    thought -- and I think if we look, we will see that your

2    order came down, I believe, either the day of

3    December 12th or 13th.  I missed it.  And I'll tell you

4    what happened was we were arguing -- we were preparing

5    for the jurisdiction argument, the jurisdiction of -- the

6    Tenth Amendment argument.  I missed that.

7         Recently, I brought it up and said I thought

8    that you had never ruled on it.  I went looking for it.

9    And then I saw, oh, my gosh, and I think -- I can't tell

10   off the back -- off the top of my head; but I think if

11   you check, you will see that order was issued either the

12   day before or that day of those, of the argument.  And so

13   I just skipped -- I just skipped -- I missed it.

14        So we have discussed the fact that somebody

15   needs to go there and look at the data to see if there

16   was anything there.  So that's what happened there.  That

17   was a mistake.  But that's the explanation.  I just

18   missed it because I was, I was preparing for those

19   arguments on the jurisdiction.  It was just a mistake.

20        So, so you're saying -- so the last point you

21   made, Your Honor, was that, that you're having a hard

22   time relying on our representation that this would go on

23   July 1st.  We will -- we gave some real thought to this,

24   how this would work.  We -- it will go.  We -- it will

25   go.  I can tell you we will be prepared to go.  We will

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1   not file any motion to continue.  We will litigate as

2   it -- if there's an issue with the firewall counsel or

3   whatever.  But we're not -- the only, the only purpose

4   of, of -- that we have --

5         THE COURT:  Mr. Tucker, I'm not asking you to

6   say you won't file another motion to continue.  I know

7   that you have a job to do.

8         MR. TUCKER:  Right.

9         THE COURT:  And I know if that entails another

10  motion to continue or a motion for this or that, then you

11  have to do it.  You should do it.  I agree with it.  And,

12  and I would support the fact that you have to do that.  I

13  get that.

14        I'm just saying that given what we've gone

15  through over the last couple months, given the fact that

16  the jury information, which was compiled at your request,

17  was never picked up -- so never looked at, so

18  obviously -- whatever -- given the fact that the expert

19  situation has played out the way it's played out where

20  you're -- even your, your own counsel table didn't have

21  all the information, I just think we need to get this

22  trial, for your client's sake, for the victim's sake, for

23  the public's sake -- we need to get this matter tried.

24  At least get the guilt phase tried.

25        I'm just concerned if we don't get the guilt

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1   phase started that there will be one thing after another.

2   I don't understand why we can't get the guilt phase of

3   this trial started; and if that then means delay for the

4   experts for disclosures, for amendment of disclosures,

5   that's fine.  But I just don't understand why we can't

6   get step one done but for so that you can -- if you want

7   to say have this unitary consistent theory.  But I don't,

8   I don't know -- I don't see it.  I don't know how, how

9   crucial that is.

10          MR. TUCKER:  Two responses.  I believe the ABA

11  standards do speak in terms of it should be a unitary

12  approach to the guilt and penalty phase.  That doesn't

13  seem a strange concept to me.

14          But in regard to, Your Honor, when you said,

15  with all respect, when you said that "it's in your

16  client's best interests" and you indicated the public and

17  everything, if we didn't think it was in our client's

18  best interests, that would be fine.  We're absolutely --

19  we're charged with that.  That's our sworn duty to, to

20  take steps that we think is in our client's best

21  interests.  And we're clear, clear in our mind that it's

22  in our client's best interests.

23          We need the time.  We wouldn't ask for it if we

24  didn't need it.  You know, and people -- you know, the

25  government says October, like we've made that up out of

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1   thin air.  We didn't make that up out of thin air.  That

2   was when the expert said he would be able to do it, the

3   original expert.  Even that, even that continuance, Your

4   Honor, would have been completely within the realm of the

5   time period in which capital cases are tried.  That would

6   have been completely reasonable.  You made it clear as a

7   bell you weren't going to grant that.  We understood

8   that.  We are reacting the best we can to that.

9           But we are the ones charged -- and I understand

10  that the Court has, has lots of things you have to

11  balance.  I understand that.  But we are charged,

12  constitutionally and ethically, with making the

13  determination of what's in our client's best interests.

14  You may not agree.  But that's why we've asked you for

15  the time.  We need the time for the reasons that we

16  stated.  We're not trying to play any games with anybody.

17  We set these dates right out here.  We made a mistake.

18  We apologize for it.  But that's the time we feel we need

19  for this young man on trial for his life to get his

20  rights under the Fifth, Sixth, and Eighth Amendments and

21  just as a matter of fairness.

22          And it is our mistake, but he shouldn't be

23  punished for it.

24          THE COURT:  Mr. Miller or Mr. Nelson, anything

25  else?

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1          MR. MILLER:  No, Your Honor.  We have nothing

2    additional.

3          THE COURT:  Well, let's take a five-, five- or

4    ten-minute recess.  Let me think this through.

5              (Recess, 11:52 a.m. to 12:11 p.m.)

6          THE COURT:  Okay.  Mr. Miller, I get to -- let

7    me follow up with a question or two.

8              With regard to the government's expert, if the

9    motion -- if the disclosure is amended, or leave to amend

10   or whatever -- if I were to agree with you as to a trial

11   date or something close to that, what about the

12   government then -- so that -- because Mr. Tucker has a

13   concern about evaluating the defendant during the trial.

14   What about evaluating the defendant after the guilt

15   phase?

16         MR. MILLER:  The -- our position, which we've

17   put in our response, is that we are -- we would propose

18   as short a delay between the guilt phase and the penalty

19   phase as possible, Your Honor, for the reasons we set

20   forth in our motion.

21             And so that process of having an evaluation

22   done, then having -- I think they would demand a, some

23   type of written report from that expert.

24             While, again, we have said, you know, 90 days

25   is plenty of time in between the trial and the guilt

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

```
 1   phase, the fear would be that that would extend that
 2   period to a longer period, so our -- because -- and
 3   because the interesting thing is -- well, yeah, we
 4   would -- our position would be, Your Honor, is that we
 5   would want that evaluation to take place prior to trial.
 6            And, plus, I believe the defense would actually
 7   want to see the government's evaluation before the
 8   penalty phase began because they're going to, I believe,
 9   get to see that evaluation to make their final decision
10   whether they're going to present the 12.2 defense.
11            So if they present the defense -- as the
12   Court --
13            THE COURT:  Well, help me --
14            MR. MILLER:  -- that would be an issue; that
15   would be a problem --
16            THE COURT:  Help --
17            MR. MILLER:  -- because I believe they wouldn't
18   have that information at the start of the --
19            THE COURT:  Help me out here though.
20            As Mr. Tucker says, their expert is scheduled
21   to see Mr. Christensen March 28, April 19, and May 16.
22            And because Mr. Tucker has asked for an amended
23   disclosure cutoff of November 1 -- or May 1, 2019, then
24   Mr. Tucker, I assume -- I can assume that you'll have
25   some kind of an oral report after at least the second
```

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1  visit so that you would know what the disclosure would

2  be, correct?

3          MR. TUCKER:  That's what I envisioned, Your

4  Honor, in attempting to be reasonable.  Obviously, in an

5  attempt to be reasonable -- in a more perfect world for

6  us, we would like to make the amendment after the third

7  visit.  But I suggested May 1 because I thought that

8  would fit into the schedule that we were, we were

9  proposing.

10         So, anyway, does that answer the --

11         THE COURT:  Yes, --

12         MR. TUCKER:  -- Court's question?

13         THE COURT:  -- it does.

14         So that would -- if we went with what you're

15 saying, Mr. Miller -- propose that Mr. Christensen would,

16 might be evaluated by your expert while we're in trial.

17 Do you see any issues about that?

18         MR. MILLER:  Well, we do, Your Honor.  On the

19 issue regarding -- and you're talking about during the --

20         THE COURT:  Guilt phase.

21         MR. MILLER:  Oh, during the guilt phase, our

22 experts -- I'm going to let Mr. Nelson --

23         THE COURT:  Yeah.

24         MR. MILLER:  -- just respond to that because he

25 had the contact with the --

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

```
1              THE COURT:  That's why I'm asking the

2    question --

3              MR. MILLER:  Absolutely.

4              THE COURT:  -- about whether that, we might be,

5    if we're able to move this up and get it started, better

6    served if the expert were to examine him after the guilt

7    phase.

8              But go ahead, Mr. Nelson.

9              MR. NELSON:  Your Honor, I think that,

10   frankly -- I'm not sure there's a precedent for having

11   our experts interview the defendant while the guilt phase

12   is taking place.  I'm also certain that the defense would

13   rightly object to that; that there's really -- I've

14   never even -- I've never heard of that.

15             I think that if we -- we've basically got two

16   choices.  We've got the procedure that is in place, or we

17   could do it the other way.  Then, obviously, firewall

18   counsel would be completely unnecessary.

19             THE COURT:  Right.

20             MR. NELSON:  The concern there would be --

21   let's, let's assume, for the sake of argument, that the

22   timing is the same as in the Court's procedures order,

23   that roughly two to three weeks after the first

24   examination, there is a report.  Okay?  Then the defense

25   gets a week to review the report and then decide whether
```

1  or not to raise a Rule 12.2 defense in the penalty phase.

2          THE COURT:  It wasn't a week, though, was it?

3          MR. NELSON:  I believe the order is a week,

4  Your Honor; they have a week after --

5          THE COURT:  I think it's, like, 24 hours.

6          MR. NELSON:  Okay.  I'm sorry, Your Honor.  I

7  was being awfully generous on your behalf.

8          Let's say it's 24 hours.  That's fine.  It's

9  still three weeks of time now between the guilt phase and

10  the penalty phase; and at that point, the defense may

11  elect to not go forward at all with the Rule 12.2

12  defense.  And now we've created all of the problems

13  inherent in a delay with the jury -- and they all go to

14  their homes and are inundated with the press and their,

15  you know, their opinions of other people, or now they

16  decide they're unavailable to continue.  And it may have

17  been for nothing all along.  And that would be a very

18  profound concern.

19          I think that if --

20          THE COURT:  But, now, you know, I'm thinking

21  whether that's a one-week delay or a two-week or a

22  three-week, I agree -- I understand that the longer the

23  delay is not good.

24          But it seems to me in all these cases that it

25  is, it is some -- at least two weeks.  I'm just -- I'm

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1   trying to fashion something that would, that addresses

2   both of the issues -- all the issues that both sides are

3   raising here that eliminates any prejudice to the defense

4   but gets this guilt phase under way.

5          MR. NELSON:  Well, I would, I would suggest

6   this, Your Honor, and this is sort of on the fly; so I

7   apologize if it's, --

8          THE COURT:  That's okay.

9          MR. NELSON:  -- you know, doesn't cover all the

10  bases.

11         But we have a plan in place.  We have a notice.

12  They've given notice.  I would respectfully submit that

13  if they file leave to amend the notice -- I don't think

14  we should plan around filing leave to amend the notice

15  unless they've decided ahead of time that they're going

16  to amend the notice, which I think is problematic in and

17  of itself.  So we have a notice.  We're all entitled to

18  rely on it.  We can go forward as planned.

19         And if there is a basis to amend the notice,

20  then we can litigate that at the time.  That will create

21  a whole host of other problems in terms of retesting,

22  perhaps, or going back into the Pawlyk argument with

23  regard to whether now that first psychiatrist finding,

24  which is on the record in the court, now becomes

25  impeachment evidence for the new psychiatrist who says

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1   it's something else.  You know, in that -- if there

2   are -- we can't play musical diagnoses.  Either he has

3   something or he doesn't.

4          So I think that building in a system in this

5   trial schedule for an amended --

6          THE COURT:  So --

7          MR. NELSON:  -- notice and new orders creates

8   more problems than it solves.

9          THE COURT:  So you think your expert can, based

10  on the initial disclosure, evaluate Mr. Christensen

11  before the trial date, even though the defense expert,

12  according to their schedule, may not have completed his

13  evaluation?

14         MR. NELSON:  Yes, Your Honor, on the

15  understanding that the diagnosis isn't going to change.

16         THE COURT:  Okay.  And then if they change, we

17  address it at the time we -- it gets raised.

18         MR. NELSON:  Yeah.  And I think that that issue

19  is going to require a substantial amount of briefing if

20  they do change it.  And I think that -- I, I guess what

21  I'm -- it's tough, Your Honor, because, frankly -- it's

22  always a good day for the government, as I was told by a

23  very young prosecutor.  We're ready to go on April 1st.

24  So we are, we are standing here --

25         THE COURT:  All right.

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1          MR. NELSON:  -- trying to obey our obligations.

2          If, if the marshals were to put a gun to my

3  head and say, "Pick:  A gap between guilt and penalty

4  phase or a delayed trial date," we'd probably take the

5  delayed trial date just because of all of the issues.

6  The last thing any of us wants to do is set this up to

7  try it twice.  And I'm afraid that, that having a longer

8  gap and creating an opportunity to sort of change the

9  minutia of what we're doing in between the two phases of

10  the trial is a very real problem that we're going to be

11  sorry that we did.

12          THE COURT:  Okay.  Mr. Tucker, let me ask this.

13  You have a new expert.  He has -- is going to meet

14  March 28, April 19th, and May 16th, according to your

15  schedule.

16          First of all, why was that so hard to have put

17  in the declaration that I asked you to put in as part of

18  the motion?  Why -- you said you guys -- you said -- you

19  just said "March, April, and May."  What -- you know the

20  dates.  What was so hard about that?

21          MS. POLLOCK:  Your Honor, that was a strategic

22  decision to not put in the specific dates because we want

23  the identity of our expert to remain confidential until

24  such time as it needs to be disclosed.

25          THE COURT:  Okay.

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1        MS. POLLOCK:  And we didn't want any

2   information coming out about who that person was and what

3   dates they were visiting exactly.

4        THE COURT:  All right, fair enough.

5        Then I can assume -- or can I assume, Mr.

6   Tucker, that he is at least -- he or she is at least

7   aware of the disclosure that was made as to what the

8   mental health issues are that were disclosed?

9        MS. POLLOCK:  Your Honor, I was the individual

10  who was talking with our proposed psychiatrist, and they

11  do know about our prior 12.2 notice.

12        I would state for the record that our research

13  indicates that if there is a spectrum diagnosis such as

14  this, it actually could fit into -- it's not -- they may

15  have a different name, but it's not altogether different

16  from -- we're not talking about now all of a sudden

17  saying something so outside of the scope of what was

18  previously disclosed that it would sandbag the government

19  in any way.  It may be another spectrum within that

20  period.  So we just don't know the answer to that until

21  she renders her opinion -- his or her opinion.

22        THE COURT:  Okay.  And, finally, Mr. Tucker,

23  I'm going to make a correction here.  The motion -- as to

24  when the entire defense team knew.  The motion indicates

25  the entire defense team knew on November 11, 2018, that

USA v. BRENDT CHRISTENSEN, No. 17-20037 -- 2/25/2019 (#255)

1   the psychiatrist could not be done until next summer at

2   the earliest.  So, but -- I'm done with those issues, at

3   least for now.

4           Anything else from either side?  And then what

5   I'm going to do is actually take this matter under

6   advisement for a day and try to fashion something that I

7   think accommodates everybody.  So anything else before we

8   recess on this issue?

9           MR. MILLER:  Nothing from the United States,

10  Your Honor.  Thank you.

11          THE COURT:  Okay.  Anything else from the

12  defense?

13          MR. TUCKER:  No, Your Honor.

14          THE COURT:  All right.  And I think, then --

15  that was that.  Okay.  I think that's all we're going to

16  do today.

17          Thank you.  We'll be in recess.

18          (Hearing concludes, 12:23 p.m.)

19          *  *  *  *  *  *  *  *  *  *  *

20              REPORTER'S CERTIFICATE

21      I, LISA KNIGHT COSIMINI, RMR-CRR, hereby certify
    that the foregoing is a correct transcript from the
22  record of proceedings in the above-entitled matter.

23      Dated this 7th day of May, 2019.

24
            _____s/Lisa Knight Cosimini_____
25          Lisa Knight Cosimini, RMR-CRR
            Illinois License # 084-002998