1        UNITED STATES DISTRICT COURT
         CENTRAL DISTRICT OF ILLINOIS
2


3


4   UNITED STATES OF AMERICA,  ) Docket No. 17-cr-20037
                               )
5          Plaintiff,          )
    vs.                        )  Peoria, Illinois
6                              )  April 30, 2019
    BRENDT A. CHRISTENSEN,     )
7                              )
           Defendant.          )
8   _____)


9


10


11


12              RECORD OF PROCEEDINGS
                **MOTION HEARING**
13                  **REDACTED**
         BEFORE THE HONORABLE JAMES E. SHADID
14         UNITED STATES DISTRICT JUDGE


15


16


17


18


19


20


21
                Nancy Mersot, CSR, RPR
22      United States District Court Reporter
                100 N.E. Monroe Street
23              Peoria, IL  61602


24

    Proceedings recorded by mechanical stenography,
25  transcript produced by computer-aided transcription.

1
2
<u>THE APPEARANCES</u>

3
EUGENE L. MILLER, ESQ.
4
BRYAN DAVID FRERES, ESQ.
Assistant U.S. Attorney
201 South Vine
5
Urbana, IL 61802
On behalf of the Plaintiff
6

7
JAMES B. NELSON, ESQ.
United States Department of Justice
8
Criminal Division Capital Case Section
Suite 625
9
1331 F. Street NW
Washington, DC  2004
10
On behalf of the Plaintiff

11

12
ELISABETH R. POLLOCK, ESQ.
Federal Public Defender
13
300 W. Main Street
Urbana, IL  61801
14
On behalf of the Defendant

15
GEORGE F. TASEFF, ESQ.
16
401 Main Street, Suite 1500
Peoria, IL  61602
17
On behalf of the Defendant

18
ROBERT L. TUCKER, ESQ.
19
7114 Washington Avenue
St. Louis, MO  63130
20
On behalf of the Defendant

21

22
JULIE C. BRAIN, ESQ.
916 S 2nd Street
23
Philadelphia, PA  19147
On behalf of the Defendant
24
(via telephone)

25

1           (Proceedings were held in open court.)

2           THE COURT:  All right.  Good afternoon.

3           This is the United States v. Brendt

4   Christensen.

5           Mr. Christensen is present in open court in

6   17-20037 with Mr. Tucker, Miss Pollock, and

7   Mr. Taseff.  Miss Brain present by telephone.

8           The government is present by Mr. Nelson,

9   Mr. Miller, and Mr. Freres.

10          This matter is called for hearing today

11  pursuant to a filing, Docket 317, Notice Of

12  Withdrawal Of Intent To Present Expert Evidence

13  Related To The Mental Condition On The Issue of

14  Punishment, Pursuant To Federal Rules of Criminal

15  Procedure 12.2(b)(2).

16          The government's response on Docket Number

17  318 requesting Clarification and Colloquy from the

18  Court.

19          The Court did conduct on Saturday at 2:00 a

20  telephone conference with the parties to get some

21  clarification, given the government's expert was due

22  to examine Mr. Christensen this week.  The phone

23  conference was for the purpose of the Court to set a

24  hearing such as we are doing today and to give the

25  parties a heads up that the Court thought a colloquy

was in order; and the Court learned at the time that
the defense had not had an opportunity to visit with
Mr. Christensen about this, so we set the matter for
hearing today at 2:00.

Now, because I'm not sure what
Mr. Christensen is going to say, and because of --
or what response might be to some of my questions
and whether some of my questions might involve
circumstances or answers that have anything to do
with privileged communications, I'm -- or concerned
about privileged communications, I believe it
appropriate, as a cautionary matter, first to go in
chambers with the defense team and with
Mr. Christensen and with the court reporter so that
there will be a record of this, for a few minutes,
before returning to open court; and based upon the
discussions in chambers, then either have a colloquy
or address any other issues that need to be
addressed.

So with that in mind, does the government
have any objection to proceeding this way?

MR. MILLER:  No, Your Honor.

THE COURT:  Does the defense?

MR. TUCKER:  No, as far as the procedure,
no.

1      THE COURT:  Okay.  Then let's recess to my

2  chambers for a few minutes.

3                    *****































\*\*\*\*\*

21 **(Proceedings held in open court.)**

22 THE COURT:  All right.  We will give it a

23 second until we get her back on.

24 THE CLERK:  Miss Brain, are you there?

25 Miss Brain, are you on the line?

1            MS. BRAIN:  I am.

2            THE COURT:  Okay.  We are back in open court

3    on the record.

4            All parties are present in the United States

5    v. Mr.  Christensen, 17-20037.

6            We were currently in chambers.  I'm going to

7    summarize it, if I may, without all of the details.

8    But the Court did conduct an inquiry, that frankly

9    did involve some -- I don't know -- no detailed

10   privileged discussion, but some of it might be

11   considered to border on it, so I think that it was

12   appropriate to go in chambers.

13           The summary is as recited in open court, the

14   Court went over Docket 317, the Notice of the

15   Withdrawal.

16           And the summary is this:  Parties have

17   indicated, or Mr. Tucker indicated, that they have

18   consulted with each other as a team; they have

19   consulted with their mental health experts as to

20   findings to this point; they have consulted with

21   their mitigation specialist; they have consulted

22   with Mr. Christensen.  And based upon all those

23   discussions, they have come to the conclusion they

24   came to in the filing of the Notice Of Withdrawal Of

25   Intent To Present Expert Evidence Relating To Mental

1  Condition On the Issue of Punishment as filed in

2  317.

3           I asked or made aware and they acknowledged

4  that they are as well aware that if there is a

5  change of mind that results in a request for a

6  continuance, that that continuance could be denied,

7  and that the other option would be to not allow

8  experts from testifying.  Those aren't at issue

9  today, so they don't need to be addressed any

10  further.

11          So with that in mind then, ultimately, I

12  asked Mr. Christensen, and we will ask him in open

13  court, after hearing all of the representations and

14  the discussion in chambers, Mr. Christensen, are you

15  satisfied still with the representation that you

16  have?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Okay.  With that in mind,

19  I'm not -- I don't believe any further inquiry is

20  necessary.  I think a record has been made.  And the

21  Notice of Withdrawal then is in effect and there is

22  currently no disclosure pursuant to 12.2(b) of the

23  intent to present expert testimony or evidence.

24          Now, with that in mind, as far as scheduling

25  is concerned, going forward from here, is there

1  anything else the parties wish to be heard on today

2  or would the government have any position that they

3  think any further colloquy is required?

4          MR. MILLER:  Not that a colloquy would be

5  required with the defendant, Your Honor, but we do

6  want to elaborate on the Motion For Clarification.

7          I think the Court is well aware, as the

8  defense is, that our experts have been retained,

9  were scheduled to examine the defendant beginning

10 yesterday, pursuant to the Court's order.  Their

11 schedules are such that if the defendant would

12 attempt to later reassert a mental health defense,

13 that those examinations would have to take place

14 with them next week to allow them to examine him and

15 prepare their reports.

16         Obviously, during the trial itself in June

17 or July the defendant wouldn't be available to be

18 examined, and so then if it were reasserted after

19 this date, it would -- if the Court allowed it, it

20 would necessitate some type of continuance to allow

21 those examinations to take place, which Rule 12.2 is

22 specifically designed to avoid by allowing the

23 government to do the examination without that

24 information being transmitted to the defense

25 attorneys.  And it's obviously, whether a mental

1  health defense is raised or not, is up to the

2  defendant.  We certainly take no position on that,

3  the Rule 12.2 is to make sure that notice is given

4  in a timely fashion and that the defendant submits

5  to an examination or order by the Court.

6        So the position of the United States is such

7  that if there is any possibility that this -- that

8  the defendant would intend to reassert the defense,

9  that the examination of the government's experts

10  should take place next week because that would

11  result in no prejudice to the defense and would

12  avoid any continuance.

13        If there is no possibility of that under

14  Rule 12.2(d), our position would be then this is in

15  essence the defendant failing to give notice under

16  Rule 12.2 because they have withdrawn it and the

17  defendant refusing to submit to an examination, so

18  we would be objecting at any later date then if

19  those examinations don't take place next week with

20  the defendant presenting any expert evidence on the

21  issue of his mental condition.

22        THE COURT:  Understood.  Do both sides agree

23  that as far as any scheduling matters or scheduling

24  order, that 12.2 disclosure time has come and gone

25  now?  Do both sides agree with that?

1         MR. MILLER:  Yes, Your Honor.

2         MR. TUCKER:  Yes.

3         THE COURT:  So with that in mind then any

4  12.2 disclosure from here on out would be untimely.

5  And I'm not going to speak for Mr. Tucker, he can

6  speak to his thoughts if he wishes.

7         I would say from my discussion in chambers

8  that the defense is aware that it may be barred and

9  that any request for a continuance would be -- or

10 that no expert testimony on mental health issues

11 would be allowed or may not be allowed, and that a

12 request for a continuance could be denied.

13        Mr. Tucker, if you wish to address it any

14 further, go ahead.

15        MR. TUCKER:  I don't.

16        THE COURT:  I don't know that anybody --

17 about any possibility, Mr. Miller.  I understand

18 where you're coming from.  But I'm not sure that --

19 well, I'm not going to answer that.  I will leave it

20 at that.

21        I just know that I believe the defense is

22 aware of my position as well, which I just stated in

23 open court.

24        So, on that matter, that would -- let's say,

25 as far as scheduling, that would clearly change

things.  I would gather that will shorten the
penalty phase, if we are in fact in a penalty phase,
but doesn't change anything as far as the guilt
phase.  So we are still scheduled for a May 13
pretrial.

You have received the jury questionnaires
and within a week I would expect some responses from
both sides.  I would hope that the responses have
been -- have been able to agree on a lot of things
as far as who might be excused just based on the
questionnaires so that we can widdle this down.

I do fully expect us to pick a jury within
the first week and be prepared to put on evidence or
the government's case-in-chief beginning June 10th.

Any other issues as to scheduling today as
far as -- now, let me say this again.  If -- and I
said it before, but I'm not sure it was as
articulate as it should have been or as clear as it
should have been.  I'm not entering in any way,
shape, or form in any kind of Rule 11 colloquy.  But
the fact of the matter is that when you conduct a
trial court that there is a possibility that there
would be a plea, and if there is going to be a plea
in this matter, that would still mean that we have a
penalty phase.  I do believe that we would have a

1  lot more flexibility if it does help the parties in

2  getting the penalty phase underway.  But for now, my

3  goal is to get the guilt phase started and get us

4  towards that so we will still be in place for trial

5  on June 3rd.  I don't need to say anything more

6  about that.

7          Anything else the parties think we should

8  address as far as scheduling while we are altogether

9  here?

10          Do we have in place a scheduling order that

11  would have a disclosure of witnesses for the guilt

12  phase and then for the penalty phase?

13          MS. POLLOCK:  Your Honor, I believe the last

14  order that was entered by the Court anticipates the

15  disclosure of witness lists along with proposed voir

16  dire questions in writing on Tuesday, May 28th.

17          THE COURT:  Witness list for the guilt

18  phase?

19          MS. POLLOCK:  Correct.  Actually, I don't

20  believe the order was crystal clear as to which.  I

21  would assume that would be for the guilt phase; that

22  we could set a later deadline for potential penalty

23  phase disclosures.  There is also no current date

24  for an exhibit list disclosure, which is generally

25  due at the final pretrial, but if we can make the

1 exhibits also around that time that would be I think
2 most appropriate.
3          THE COURT:  Around the pretrial or around --
4          MS. POLLOCK:  Around May 28th, Your Honor,
5 when the witness lists are due.
6          THE COURT:  So witness list for guilt phase,
7 at least, May 28.  Exhibit list -- government wish
8 to be heard on that exhibit list?
9          MR. MILLER:  Your Honor, we are fine with
10 May 28th for, if I understood the colloquy
11 correctly, witness list, exhibit list, jury
12 instructions, proposed voir dire questions,
13 statement of the case; I don't know if the Court
14 wants that in this case.  We could draft one.
15          THE COURT:  Do you see the way that we set
16 up the jury matter that -- you won't have any
17 trouble with proposed voir dire questions, I'm sure
18 of that.
19          Okay.  Do you think that you can agree on a
20 statement of the case?
21          MR. MILLER:  Hopefully, Your Honor.
22          THE COURT:  Okay.
23          MS. POLLOCK:  We can certainly try.
24          THE COURT:  All right.  Should we have then
25 between May 13 and June 3 another date where we

1  revisit, like, would it be May 28th or May 29th that

2  -- what is May 29, a Wednesday?  Do you think that

3  would be a prudent thing to do?

4      MS. POLLOCK:  I think so, Your Honor.  Only

5  if there are potential objections to the exhibit and

6  witness list and developing at that time any

7  projection to the proposed voir dire.  I'm not sure

8  if the Court wishes to go through primarily jury

9  instructions at that time or if you prefer to wait

10 until the end of trial.

11      THE COURT:  We can decide.  I gather there

12 will be -- we will just see what's agreed upon

13 first, okay?

14      What time works for everybody on May 29th?

15      MS. POLLOCK:  I request if it is on the

16 30th, that it be in the afternoon; I have oral

17 argument with the Seventh Circuit that day.

18      THE COURT:  Oral argument?

19      MS. POLLOCK:  Seventh Circuit, Chicago, in

20 the morning.

21      THE COURT:  If we did it in the afternoon on

22 the 29th, would that interfere with your oral

23 argument preparation?

24      MS. POLLOCK:  Not unless you mean the travel

25 where I get to eat my steak dinner in Chicago, no.

 1          THE COURT:  Okay.  What time do you need to
 2  be in Chicago?
 3          MS. POLLOCK:  For dinner, Your Honor?  If I
 4  get there by 7:00, I would be set.
 5          THE COURT:  I'm going to look at your
 6  schedule -- would you prefer to do it in the
 7  afternoon on Wednesday or the morning -- I mean, the
 8  afternoon on the 29th or the morning --
 9          MS. POLLOCK:  The morning of the 30th is the
10  argument, so it would have to be --
11          THE COURT:  So would you prefer the
12  afternoon on the 30th or the afternoon on the 29th?
13          MS. POLLOCK:  Either.
14          THE COURT:  Let's do it on the afternoon --
15  all right.  Let's do 1:30 on the 29th.
16          All right.  Now let's address disclosure of
17  witnesses for the penalty phase.  What are the
18  parties' preferences?
19          Let me hear first from the government.
20          MR. MILLER:  We would be fine, Your Honor,
21  especially because I think there will be some
22  substantial overlap, at least from the government's
23  point of view, to disclose those on the 28th as
24  well.
25          THE COURT:  From the defense?

1          MS. POLLOCK:  Your Honor, may I inquire?
2    Does the Court still intend to have a short recess
3    between the potential penalty phase and the guilt
4    phase, if required?
5          THE COURT:  Yes, I do.
6          MS. POLLOCK:  Okay.  In that case, Your
7    Honor, I saw the Court's ruling that there may be a
8    need for a liability hearing with regards to one
9    witness.  We would request disclosure of our
10   witnesses for potential penalty phase during that
11   week recess, the week prior to the beginning of the
12   penalty phase.  There are some things that could
13   change between now and then, we just don't want to
14   be locked into a witness list that might require
15   amendment.
16         MR. MILLER:  We would certainly not object
17   to an amendment of the list if there were reasons
18   during that phase, but obviously to continue to
19   allow for preparation would be more helpful if the
20   list could be disclosed with the initial list on the
21   penalty phase disclosed on the 28th with the
22   understanding that, obviously, anything that
23   happened during trial that require an amendment of
24   the list, we wouldn't be objecting to during the
25   break between the guilt phase and the penalty phase.

 1          THE COURT:  Miss Pollock, do you want to
 2   visit with Mr. Tucker and then let me know what you
 3   think of that?
 4          (Counsel conferring.)
 5          THE COURT:  Okay.
 6          MS. POLLOCK:  Your Honor, we would persist
 7   in our request that we be given additional time
 8   between the guilt and the penalty phase to make
 9   those final decisions.  We will be preparing -- the
10   guilt phase witnesses are only going to be disclosed
11   approximately four days ahead of trial.  It
12   shouldn't be prejudice to anyone to have it a week
13   before any potential penalty phase, if necessary, to
14   allow us to make those decisions.
15          THE COURT:  What is the government's
16   position?
17          MR. MILLER:  We would obviously stand on our
18   prior position that it would be -- we don't want to
19   have trial by surprise to the extent that the
20   parties are already aware of any witnesses on the
21   28th of the penalty phase that could be disclosed
22   and if new witnesses become known between then and
23   the beginning of the penalty phase that the list
24   could be amended.
25          MS. POLLOCK:  Your Honor, if I may?

1      THE COURT:  You may.

2      MS. POLLOCK:  If that's the case, then the

3  witness list that the government gets is going to be

4  almost nothing, because unlike the government, which

5  has a force of FBI agents and other people at their

6  behest to serve and locate to interview witnesses,

7  we do not have those resources.  So we are filing

8  petitions for witnesses that may need to appear that

9  are going to be granted periodically between now and

10  then.  We don't even know who is going to be served

11  or when they are going to be served or when we are

12  going to be able to get out to interview them.  It

13  is possible that we will have very little to give

14  the government at that time, not to mention the fact

15  that strategy will likely change between the guilt

16  phase and the penalty phase if one needs to occur.

17  So we persist in our position that we be given a

18  deadline a week prior to the penalty phase.

19      It's not going to be trial by surprise

20  because the government already probably has a good

21  idea of the number of people that we will be

22  calling, and we are going to be disclosing those and

23  working on getting in contact with all of those

24  people over the next 30 days.  We will not be in a

25  position to divulge even part of a witness list at

1  that time.

2      THE COURT:  Let's leave it as is for now.

3  Witness list for guilt phase by May 28, along with

4  exhibit list, jury instruction, proposed voir dire

5  questions, statement of the case.  We can regroup on

6  the penalty phase either on that date or as the

7  trial goes.  It's likely then it will be that the

8  witnesses for the penalty phase would be disclosed

9  after the guilt phase is concluded given that we are

10  likely to take a short break depending on when the

11  guilt phase ends.

12      I do want to address two issues though that

13  are still out there.  The disclosure for 12.2 has

14  come and gone now and there are no 12.2 mental

15  health experts disclosed from the defense side; is

16  that correct?

17      MS. POLLOCK:  Correct, your Honor.

18      THE COURT:  Doctor Sorensen, the defense has

19  ordered disclosed his report by May 6, so that is

20  just a few days away.  And then we also set that

21  time for any amended disclosure as it pertained to

22  Dr. Zoline.  So if issues arise with the two of

23  those, we have time yet to address those as well on

24  May 13 or on May 29th.  So May 29th is at 1:30.

25  Right now we are set for May 13 at 11:00 a.m.

```
 1              Okay.  Anything else to address today?
 2              MS. POLLOCK:  No, Your Honor, not from the
 3  defense.
 4              THE COURT:  Okay.  Thank you, everybody.
 5              Let's go back on the record one second.
 6              Hold Mr. Christensen.
 7              Okay.  Back on the record one second.
 8              There are some new submitted questionnaire
 9  responses that are going to be forthcoming to you
10  that we are receiving, and as I make excusals on
11  matters that you already have, we are going to
12  notify you of the number, the juror number, so that
13  you can scratch them off your list.  Fair enough?
14              MS. POLLOCK:  Yes.
15              MR. MILLER:  Thank you, Your Honor.
16                          ****
17
18      I certify that the foregoing is a correct
19  transcript from the record of proceedings in the
20  above-entitled matter.
21
22  s/Nancy Mersot          Date: May 5, 2019
23  Court Reporter
24
25
```